January 21, 2021

<u>VIA ECF</u>
<u>PURSUANT TO SECTION 4(c) OF THE</u>
<u>COURT'S STANDING ORDER RE CIVIL CASES</u>

The Honorable Virginia K. DeMarchi
United States District Court for the Northern District of California
San Jose Courthouse, Courtroom 2 – 5th Floor
280 South 1st Street
San Jose, CA 95113

> **Re:** **Joint Discovery Letter Brief re Motion to Quash Celestron Acquisition
> LLC's Subpoena –** *Spectrum Scientifics, LLC et. al. v. Celestron Acquisition*,
> **LLC et. al. (5:20-cv-03642-EJD**)

Your Honor:

Non-party Optronic Technologies, Inc. ("Orion") and Defendant Celestron Acquisition
LLC ("Celestron") respectfully submit this discovery letter brief pursuant to Section 4(c) of the
Court's Standing Order for Civil Cases.  Discovery cut-off dates for fact and expert discovery
have not yet been set.  Lead counsel for both parties met and conferred on January 11, 2020 via
telephone conference.  Timothy Flaherty participated in the conference on behalf of Orion and
Christopher Frost and Amber Henry participated on behalf of Celestron.

**STATEMENT OF ISSUE**

On November 13, 2020, Celestron served a subpoena on non-party Orion. Orion objected
that the subpoena is overbroad and violates Federal Rule of Civil Procedure 45(d)(3)(A), which
imposes an affirmative duty on parties to "take reasonable steps to avoid imposing undue burden
or expense on a person subject to the subpoena." On that basis, Orion demanded that Celestron
withdraw the subpoena. Celestron declined for the reasons it states below, prompting this motion
to quash.

**ORION'S POSITION**

Orion respectfully requests an order quashing Celestron's facially overbroad Subpoena
and issuing sanctions for Celestron's failure to comply with the Federal Rules of Civil
Procedure.[1]

The Court "must quash or modify a subpoena that . . . subjects a person to undue
burden."  Fed. R. Civ. P. 45(d)(3)(A).  The Rules also impose on Celestron and its counsel an
affirmative duty to "take reasonable steps to avoid imposing undue burden or expense on a

---

[1] Celestron substantially mischaracterizes the parties' meet and confer efforts. Orion is willing to submit the
correspondence record demonstrating the falsity of Celestron's assertions.

-1-

person subject to the subpoena." Fed. R. Civ. P. 45(d)(1).  The Court "must enforce this duty and impose an appropriate sanction—which may include . . .  reasonable attorney's fees—on a party or attorney who fails to comply."  *Id.*

Far from taking reasonable steps to *avoid* imposing undue burden or expense on Orion, Celestron has done the opposite—its subpoena appears crafted and *designed* to maximize burden on Orion in apparent retaliation for Orion's prevailing in the Orion Action, which exposed aspects of Celestron's relationship with a telescope manufacturer now found to have violated antitrust laws.  In specific, Celestron seeks virtually every communication, document, and scrap of data in Orion's possession; it demands production despite Orion's explanations of the burden and expense involved; and it flatly refuses to advance any reimbursement of the significant fees and costs Orion will incur in doing so.

***First***, Celestron's subpoena is massively overbroad on its face.  For example, Celestron demands that Orion produce not only the actual fact and expert discovery from the Orion Action, but also all documents that "relate to" that discovery.  *See* Attachment A at 4 (RFPs 1 and 2).  These requests would require Orion and its litigation counsel from the Orion Action to review all of its internal correspondence, memoranda, and data to identify all materials with any connection to discovery in the Orion Action, and then to further review those materials for privilege, work product, and other issues.  These requests alone would impose on Orion hundreds of thousands of dollars in expenses.

Celestron also demands categories of documents that would require Orion to produce virtually every document related to its business operations.  For example, RFP 8 requests all documents and communications between Orion and anyone else relating to any telescope products Orion purchased that were manufactured, supplied, or distributed by any defendant in this action since January 1, 2010.  Attachment A at 5.  Conversely, RFP 9 requests the same material for telescope products Orion purchased that were *not* manufactured, supplied, or distributed by any defendant.  *Id.*  These two RFPs require Orion to produce all documents and communications with anyone else relating to any telescope products Orion purchased from ***anyone*** since January 1, 2010.  RFPs 10 and 11 in turn request the same materials for telescope-related products that Orion sold rather than purchased.  *Id.* at 5–6.  Together, RFPs 8–11 effectively seek production of literally every document and communication relating to all telescope products that were in Orion's possession in the past eleven years.

In the same vein, RFPs 14 and 15 request all documents relating to any manufacturer or seller of telescopes that Orion purchased, RFP 19 requests documents that identify all of Orion's customers, RFP 20 requests documents relating to Orion's entire inventory of telescopes, and RFP 22 requests documents that identify Orion's profit margin, all for the past eleven years.  *Id.* at 6–7.  And some of Celestron's requests are not limited to *any* time period.  *See, e.g., id.* at 5–7 (RFPs 6, 13, 18, 25).  The scope and invasiveness of these requests exceeds any reasonable proportionality given Orion's status as a non-party, especially when Orion is a Celestron competitor.

***Second***, Celestron requests documents not relevant to any claim or defense and therefore impose a burden that is "by definition 'undue.'"  *Unsworth v. Musk*, No. 19-mc-80224-JSC,

2019 WL 5550060, at *5–6 (N.D. Cal. Oct. 28, 2019) (quoting *Compaq Comput. Corp. v. Packard Bell Elecs., Inc.*, 163 F.R.D. 329, 335 (N.D. Cal. 1995)).  For instance, Celestron requests all documents relating to Orion's "website postings, public comments, or media interviews concerning any" of the defendants.  Attachment A at 7.  Orion's public statements regarding the defendants (if any) are not relevant to any claim or defense in this litigation— Celestron cannot elucidate any legitimate justification for imposing discovery expenses on Orion to collect and produce evidence of it exercising its First Amendment rights.  This request (and the Subpoena itself) is nothing more than a strategic act to punish Orion for asserting its rights in court and prevailing against bad actors in the U.S. telescope market who engaged in illegal anticompetitive conduct and implicates the same concerns that animate anti-SLAPP statutes.  The Court should not condone such misuse of discovery.

*Third*, Celestron demands materials that are not discoverable even *from parties*, let alone *non-parties* like Orion.  "The Ninth Circuit has long held that nonparties subject to discovery requests deserve extra protection from the courts."  *Free Stream Media Corp. v. Alphonso Inc.*, No. 17-cv-02107-RS, 2017 WL 6209309, at *3 (N.D. Cal. Dec. 8, 2017) (citing *United States v. C.B.S., Inc.*, 666 F.2d 364, 371–72 (9th Cir. 1982) ("Nonparty witnesses are powerless to control the scope of litigation and discovery, and should not be forced to subsidize an unreasonable share of the costs of a litigation to which they are not a party")).

Rule 26(b)(2)(B) expressly relieves even parties to a litigation of any obligation to produce "electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost."  Yet Celestron's demand for "DOCUMENTS" requires Orion produce data that, by Celestron's own terms, are not in a reasonably accessible format and instead purport to require Orion to use "detection devices" to "translate[ the data] . . . into reasonable usable form."  Attachment A at 2.

Complying with Celestron's subpoena would require Orion to expend hundreds of thousands of dollars.  Court regularly hold that subpoenas like Celestron's are overbroad, impose undue burdens, and cannot be enforced.  *See Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 813 (9th Cir. 2003) (affirming order quashing third-party subpoena and imposing sanctions under present Rule 45(d)(1)); *Free Stream*, 2017 WL 6209309, at *6 (granting motion to quash third-party subpoena because of "the scope and breadth of the discovery requests" and where third-party "assert[ed] that its document production in response . . . exceeded $50,000").

*Fourth*, Orion twice offered (in a December 18, 2020 letter and during the January 11, 2021 meet and confer) to produce all documents that Celestron is even arguably entitled to— namely, documents and records that were actually produced or exchanged by parties or third parties in the Orion Action—if Celestron agreed to reimburse the significant fees and costs Orion will incur in doing so, and to provide a retainer against that amount.  Celestron did not agree, despite the fact that Orion is entitled as of right to reimbursement of these significant expenses under the Federal Rules. *See Fed.* R. Civ. P. 45(d)(2)(B)(ii); *Legal Voice v. Stormans Inc.*, 738 F.3d 1178, 1184 (9th Cir. 2013) (holding that $20,000 was a "significant cost" incurred

responding to a subpoena and reversing as abuse of discretion the district court's refusal to award those fees and costs under Rule 45(d)).[2]

**Finally**, the Court should require Celestron to reimburse Orion for its costs and fees expended responding to the subpoena in light of its failure to comply with Rule 45(d)(1) or, in the alternative, grant Orion leave to move for sanctions to recover its fees and costs incurred in connection with this subpoena. *See, e.g.*, *Beaver Cnty. Employee's Ret. Fund v. Tile Shop Holdings, Inc.*, No.16-mc-80076-JSC, 2016 WL 7212308, at *4 (N.D. Cal. Dec. 13, 2016) (issuing sanctions and awarding fees and costs incurred in defending against a motion to compel enforcement of third-party subpoenas that were "overbroad and sought irrelevant information," and "issued for an improper purpose").

When Orion raised these issues with Celestron during the meet and confer, Celestron refused to withdraw its subpoena and refused to accept Orion's offer to produce discovery exchanged in the Orion Action provided that Celestron would reimburse Orion.

Orion therefore respectfully requests an order quashing Celestron's subpoena and sanctioning Celestron for its failure to comply with Rule 45(d)(1) or, in the alternative, grant Orion leave to move for sanctions to recover its fees and costs incurred in connection with this subpoena.

## DEFENDANT'S POSITION

Orion's Motion is unmerited and dishonest. On January 11, counsel for Celestron and Orion met and conferred concerning the subject subpoena. After some discussion, the parties agreed to continue the meet and confer so the parties could discuss their positions with their clients and reconvene. Celestron believed that by the end of the parties' call, the parties were making good progress. Then with no notice, Orion's counsel sent an email unilaterally declaring an "impasse" and providing its portion of this letter brief. Simply put, the parties were in the middle of discussions when Orion's counsel pulled the proverbial plug and cried foul.

Orion's portion of the letter brief is not accurate. For instance, Orion claims that Celestron refused any payment of expenses. Not true. Celestron asked for a basis for the $75,000 demand Orion made. When Orion's counsel admitted he had no idea what documents his client has or the actual expense it would take to produce such documents, the parties agreed to table that discussion until Orion's counsel could get better information—information Orion's counsel never provided before serving this brief.

---

[2] Celestron does not address *any* of the authorities cited by Orion, thus conceding that Orion is entitled to reimbursement.

Celestron intentionally ignores that the $75,000 Orion seeks is a *retainer*, which is necessary because Celestron has repeatedly refused to pay Orion assets to which it is due—including when it defrauded this Court by smuggling $4.2 million of Ningbo Sunny receivables out of the U.S., despite actual knowledge of Orion's judgment against Ningbo Sunny.

Orion will be satisfied if the $75,000 were escrowed with the Court pending approval of Orion's compliance expenses.

Information relating to Orion is relevant to the issues in this litigation, largely because Plaintiffs and their counsel put Orion squarely at issue. Orion does not claim otherwise in its objections. Nor can it, given Orion and the Orion Litigation are repeatedly referenced in this Complaint (four mentions) and the coordinated IPP Complaint (27 mentions). The Complaint in this action even references Orion documents at Paragraphs 5 and 81. *See, e.g.,* ¶81 ("Documents and testimony from the Orion Litigation reveal…."). Yet Plaintiffs claim that the documents from the Orion Litigation are not in "their" possession (even though the documents are in Plaintiff counsel's office), leaving Celestron no choice but to either subpoena the documents from Orion, as it has done, or serve a subpoena on current counsel.

Plaintiffs have even served discovery relating to Orion. In their first set of RFPs to Celestron, Plaintiffs served seven separate requests concerning Orion, communications concerning Orion, the Orion Litigation, credit terms to Orion, and Orion's credit line. Clearly everyone—except apparently Orion—understands the relevance of Orion documents.

Documents concerning Orion are also relevant because Orion's favorable supply agreement disproves Plaintiffs' theory that Defendants have fixed supracompetitive prices that are not available to competitors. Prior to Celestron's service of this subpoena, even the IPP Plaintiffs in the coordinated action have served (or are attempting to serve) a subpoena on Orion seeking many of the exact same documents that Celestron seeks here.

Against this backdrop, it is remarkable that Orion seeks to quash the entire subpoena, without even giving the parties the chance to complete a meet and confer and see if they can reach agreement and narrow categories where appropriate. The demand that, instead, Celestron start over and serve an entirely new subpoena, under threat of sanctions, is neither appropriate nor in good faith.

RFP Nos 1 and 2 ask for files from the Orion Litigation—files even Plaintiffs will want and that are already housed at DPP counsel's office. Thus, it is impossible to imagine how producing such records could conceivably cost $75,000. If Plaintiffs are concerned that the requests also ask for documents "relating to," Celestron will agree to remove those words, and Orion simply produce the files from the Orion Litigation itself. Celestron's counsel could have made that offer had Orion not terminated the meet and confer.

Orion raises no issue in this Motion with the following requests:

RFP No. 3 requests documents introduced in the Orion Litigation—which Plaintiffs have made relevant and will want themselves, and which are again in Plaintiff counsel's possession. Orion's counsel had even agreed at the meet and confer that he could produce those documents that were entered into evidence at the trial in the Orion Litigation—a fact that was left out of Orion's portion of this letter brief.

RFP Nos. 4-5 ask for Orion's supply agreements. These are critical because those supply agreements have especially favorable terms (even a most favored nation provision) and are therefore relevant to refute the claim that Defendants manipulated the market to the detriment of competitors and based on allegedly more favorable terms than competitors.

-5-

RFP No. 7 requests communications between Orion and Plaintiffs discussing the Orion Litigation.  These documents are relevant to: (i) the timing of Plaintiffs' knowledge in light of their fraudulent concealment argument; and (ii) Plaintiffs' own claim that they only knew of the alleged wrongdoing because of the Orion Litigation.

RFP Nos. 16-17 seek documents sufficient to identify the amount and price of product Orion purchased from defendants from 2010 to the present.  These documents are relevant to the claim that product was not available outside of or supracompetitively priced for Defendants.

RFP No. 21 asks for price lists for product sold that was manufactured or distributed by Defendants, which is relevant again to availability and pricing among competitors).

RFP Nos. 23-24 seek communications from 2005 to the present between Orion and any Plaintiff concerning alleged anticompetitive activity by Defendants (or Ningbo Sunny's purchase of Meade), which are relevant to Plaintiffs' knowledge during the time it alleges that fraudulent concealment prevented Plaintiffs from timely filing their stale claims.

The fact that Orion raised no objection in its Motion to any of these categories itself justifies denying the Motion.

Plaintiffs' only objections to RFP Nos. 6, 13, and 18 is that they are overbroad as to time.  Nonsense.  They are self-limiting (such as RFP No. 6 concerning communications regarding defendants), but Celestron will agree to limit the requests to 2005 to the present—the time period prescribed by Plaintiffs in the operative complaint.

RFP Nos. 8-11 regard telescopes purchased and sold by Orion since 2010.  This sales data, which even Plaintiffs have agreed to produce for their own purchases and sales, relates to the issue of whether competition has been harmed, and also whether Defendants have utilized supracompetitive pricing.

RFP Nos. 14 and 15 request all documents identifying or relating to any manufacturer or seller of telescopes from whom Orion purchased—an issue that relates to availability and competition.  Celestron is willing to limit these to documents "identifying."

RFP No. 19 requests documents "sufficient to identify" Orion's customers from 2010 to the present.  This is not overbroad or burdensome.  It ought to be a simple effort of a printout.  It is relevant because, among other things: (i) those customers are IPP class members; (ii) it relates to sales by competitors, which Plaintiffs allege have been harmed; and (iii) Plaintiffs have asked for the exact same information from Celestron, but for a longer period of time.

RFP No. 20 requests documents relating to Orion's inventory of telescopes, and RFP No. 22 requests documents that identify Orion's profit margin from 2010 to the present.  These requests relate to Plaintiffs' claims of favorable availability and supracompetivity to defendants and claims that competitors have been harmed.  Again, the evidence will show that Orion

received "most favored nation" terms—undercutting the claim that Defendants favored their own and harmed competition.

RFP No. 25 asks for website posts or public comments about Defendants.  These documents relate to Plaintiffs' knowledge of the alleged wrongdoing (or availability of access to information detailing such alleged wrongdoing)—which Orion repeatedly posted on its website.[3]

Again, Plaintiffs made Orion and the Orion Litigation relevant.  Any burden is a necessary function of litigation, and any expense can be discussed when Orion's counsel actually understands what documents its client has, and has a legitimate figure, not the $75,000 he made up.  Needless to say, sanctions are not warranted.  Celestron only seeks the records it reasonably needs to defend itself, from the only apparent available source of the Orion records.

## HEARING REQUEST

Orion and Celestron both request a hearing.

Respectfully submitted,

*/s/ Timothy M. Flaherty*
Counsel for Non-Party
Optronic Technologies, Inc.


## ATTESTATION

Pursuant to Civil Local Rule 5-1(i)(3), I, Timothy Flaherty, attest that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

*/s/ Timothy M. Flaherty*

---

[3] Celestron is also substantially concerned that this litigation has been spearheaded by Orion and, like Orion's website, is being used to foster anti-Chinese rhetoric and prejudices.  For instance, Orion posted the following to its website:

> Foreign manufacturers, particularly those in China, have begun to hijack American brands, while breaking US and EU antitrust laws established to preserve competition.
> ***
> Chinese manufacturers have learned that it is good to dominate both sides of commerce: both the supply of goods and their sale to consumers.
> ***
> Orion is a 100% American-owned, California-based and Employee-owned Company. Defendant's actions were viewed as an existential threat to Orion and could not be ignored.

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Northern District of California

| | | |
|---|---|---|
| In re Telescopes Antitrust Litigation | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   5:20-cv-03642-EJD |
| | ) | |
| | ) | |
| *Defendant* | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:     Optronic Technologies, Inc. d/b/a Orion Telescopes & Binoculars, 89 Hangar Way, Watsonville, CA 95076

*(Name of person to whom this subpoena is directed)*

✔ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:
     See Attachment A

| Place: EISNER, LLP<br>        9601 Wilshire Blvd., 7th Floor<br>        Beverly Hills, California 90210 | Date and Time:<br><br>        12/15/2020 10:00 am |
|---|---|

     ⌐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

     The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:     11/10/2020

| | | |
|---|---|---|
| | *CLERK OF COURT* | OR |
| | | /s/ Amber Henry |
| | *Signature of Clerk or Deputy Clerk* | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
Defendant Celestron Acquisition, LLC _____ , who issues or requests this subpoena, are:

 Amber Henry, 9601 Wilshire Blvd., 7th Floor, Beverly Hills, California 90210; ahenry@eisnerlaw.com; 310-855-3200

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.  5:20-cv-03642-EJD

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____   on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**ATTACHMENT A**

**DEFINITIONS**

A.     The terms "COMMUNICATION" and "COMMUNICATIONS" include but are not limited to emails, texts, faxes, letters, memos, and notes, and also refer to any DOCUMENT that comprises, embodies, reflects, or refers to any transmission of information from one person to another, including, without limitation, by personal meeting, conversation, letter, telephone, facsimile, electronic mail, instant messaging, text messaging, or development notes.  Each request that encompasses information relating in any way to COMMUNICATIONS to, from, or within a business or corporate entity is hereby designated to mean, and should be construed to include, all COMMUNICATIONS by and between representatives, employees, agents, or servants of the business or corporate entity.  Any request for "COMMUNICATIONS" includes all DOCUMENTS that REFER OR RELATE TO COMMUNICATIONS.

B.     The term "DEFENDANTS" means all defendants named in the *In re Telescopes Antitrust Litigation*, Case Nos. 5:20-cv-03642-EJD and 5:20-cv-03639-EJD (consolidated) (collectively, the "ACTION") , and anyone else acting, or who has so acted, on their behalf including, but not limited to, any of their agents, representatives, employees (current and former), affiliates, principals, managers, and each and every person acting on their behalf or at their direction or on whose behalf they were acting with respect to the matters referred to herein.

C.     The term "PLAINTIFFS" means all plaintiffs named in the ACTION, and anyone else acting, or who has so acted, on their behalf including, but not limited to, any of their agents, representatives, employees (current and former), affiliates, principals, managers, attorneys, and each and every person acting on their behalf or at their direction or on whose behalf they were acting with respect to the matters referred to herein

D.     The term "DOCUMENT" or "DOCUMENTS" means and includes documents in the broadest sense, and includes all "electronically stored information" as defined in Rule 34 of the Federal Rules of Civil Procedure, including, but not limited to, all written printed, typed, recorded, or graphic matter, however produced or reproduced, of every kind and description, in whatever form (e.g., final and draft version) in the actual constructive possession, custody, care or control of

1   the responding party, and including, without limitation, all writings, communications,

2   correspondence, e-mails, text messages, letters, telegrams, notes, mailgrams, agenda, memoranda,

3   inter-office communications, agreements, contracts, summaries, reports, interviews, forecasts,

4   projects, analyses, working papers, charts, requests for authorization, expense account reports,

5   charge or credit account vouchers, calendars, appointment books, diaries, brochures, pamphlets,

6   circulars, press releases, drawings, graphs, photographs, sound reproduction tapes, data

7   compilations from which information can be obtained or can be translated through detection

8   devices into reasonably usable form, computer inputs or outputs, or any other tangible thing.  The

9   term "DOCUMENT" or "DOCUMENTS" shall include not only originals but also copies or

10  reproductions of all such written, printed, typed, recorded, or graphic matter upon which notations

11  in writing, print or otherwise have been made which do not appear in the originals.

12          In addition to the foregoing items, any comment, notation, strike-out, interlineation, or

13  other alterations appearing on any DOCUMENT or any copy of any DOCUMENT, and not a part

14  of the original text of such DOCUMENT, is considered a separate DOCUMENT, as is any draft or

15  preliminary form of any DOCUMENT.

16          DOCUMENT(S) shall not be limited in any way as to the form of storage (such as paper,

17  microfiche, magnetic tape, magnetic disk, CD-ROM, DVD, optical disk, or other electronic-

18  storage device).

19          E.      The term "PERSON" means any natural person, association, company, corporation,

20  partnership, governmental entity, governmental agency, or any other legal or fictitious entity.

21          F.      The terms "RELATE(S) TO," "RELATED TO" and "RELATING TO" mean to

22  refer to, concern, summarize, reflect, constitute, comprise, state, contain, explain, embody, pertain

23  to, identify, be involved with, mention, discuss, consist of, show, analyze, comment upon,

24  evidence, support, respond to, deal with, describe, refute, contradict, or in any way be pertinent to

25  the subject in question, directly or indirectly, in whole or in part.

26          G.      The term "YOU" and/or "YOUR" means responding party Optronic Technologies,

27  Inc. d/b/a Orion Telescopes & Binoculars and anyone else acting, or who has so acted, on their

28  behalf including, but not limited to, any of their agents, representatives, employees (current and

1  former), affiliates, predecessors, successors, assigns, principals, independent contractors,

2  managers, attorneys, and each and every person acting on their behalf or at their direction or on

3  whose behalf they were acting with respect to the matters referred to herein.

4  **INSTRUCTIONS**

5      1.    All DOCUMENTS are to be produced whether in your possession, custody or

6  control, or the possession, custody or control of your attorneys, investigators, agents or

7  representatives.

8      2.    With respect to any DOCUMENT maintained or stored electronically, please

9  collect it in a manner that maintains the integrity and readability of all data, including all metadata,

10  and please produce all DOCUMENTS maintained or stored electronically with all relevant

11  metadata intact.

12      3.    If any of the requested DOCUMENTS cannot be produced in full, then produce

13  them to the extent possible, and specify the reasons for your inability to produce the remainder,

14  stating whatever information, knowledge or belief you have concerning the unproduced portion.

15      4.    In the event that any DOCUMENT called for by these requests is to be withheld on

16  the basis of a claim of privilege or immunity from discovery, that document is to be identified by

17  stating (a) any addressor and addressee; (b) any indicated or blind copy; (c) the document's date,

18  subject matter, number of pages, and attachments or appendices; (d) all persons to whom the

19  document was distributed, shown or explained; (e) the document's present custodian; and (f) the

20  nature of the privilege or immunity asserted.

21      5.    If your response to any request is that the DOCUMENTS are not in your

22  possession, custody or control, describe in detail the efforts you made to locate such documents.

23      6.    If any responsive DOCUMENT was at one time in your possession, custody or

24  control but has been disposed of, lost, discarded, destroyed, or is no longer in your possession,

25  custody or control for any other reason, then do the following with respect to each and every such

26  document: (a) describe the nature of the document; (b) state the date of the document; (c) identify

27  the persons who sent and received the original and copies of the document, specifying its author,

28  addressee, and all persons to whom copies were furnished, or who otherwise saw the document;

1  (d) state in as much detail as possible the subject matter and contents of the document; (e) state the

2  last known location of the disposed document and the last known location of any alternative

3  copies of the lost, discarded or destroyed document; (f) state the identity and location of other

4  documents from which information contained in the discarded or otherwise disposed of document

5  may be obtained; (g) state the date or approximate time of the disposition, loss, destruction, or

6  discarding; (h) state the manner and date of the disposition of the document; (i) state the reason for

7  the disposition, loss, destruction or discarding; and (j) state the identity of all persons who are

8  likely to be responsible therefor.

9     7.     Reference to the singular in any of these Requests shall also include a reference to

10  the plural, and reference to the plural also shall include a reference to the singular.

11    8.     Unless otherwise stated, the relevant time period for these Requests is from January

12  1, 2010 to and through the date of the written responses to the Requests.

13              **REQUESTS FOR PRODUCTION**

14  **REQUEST FOR PRODUCTION NO. 1:**

15    All DOCUMENTS RELATING TO any fact discovery, including but not limited to,

16  discovery responses, deposition transcripts, and documents produced by the parties, and

17  documents produced by third parties in response to subpoenas, conducted in the following

18  litigation: *Optronic Techs., Inc. v. Ningbo Sunny Elec. Co., Ltd.*, No 5:16-cv-06370-EJD (N.D.

19  Cal. Nov. 1, 2016).

20  **REQUEST FOR PRODUCTION NO. 2:**

21    All DOCUMENTS RELATING TO any expert discovery, including but not limited to,

22  expert disclosures, expert reports, discovery responses, deposition transcripts, and documents

23  produced by the parties or their respective experts, conducted in the following litigation: *Optronic

24  Techs., Inc. v. Ningbo Sunny Elec. Co., Ltd.*, No 5:16-cv-06370-EJD (N.D. Cal. Nov. 1, 2016).

25  **REQUEST FOR PRODUCTION NO. 3:**

26    All DOCUMENTS offered, marked, or introduced at the trial conducted in the following

27  litigation: *Optronic Techs., Inc. v. Ningbo Sunny Elec. Co., Ltd.*, No 5:16-cv-06370-EJD (N.D.

28  Cal. Nov. 1, 2016).

1   **REQUEST FOR PRODUCTION NO. 4:**

2        All of YOUR supply agreements with any DEFENDANT from January 1, 2010 to present.

3   **REQUEST FOR PRODUCTION NO. 5:**

4        All of YOUR supply agreements with any telescope manufacturer, trading company,

5   distributor, or retailer since January 1, 2010.

6   **REQUEST FOR PRODUCTION NO. 6:**

7        All COMMUNICATIONS between YOU and any PLAINTIFF discussing

8   DEFENDANTS.

9   **REQUEST FOR PRODUCTION NO. 7:**

10        All COMMUNICATIONS at any time between YOU and any PLAINTIFF discussing the

11   following litigation: *Optronic Techs., Inc. v. Ningbo Sunny Elec. Co., Ltd.*, No 5:16-cv-06370-EJD

12   (N.D. Cal. Nov. 1, 2016).

13   **REQUEST FOR PRODUCTION NO. 8:**

14        All DOCUMENTS, including COMMUNICATIONS between YOU and any PERSON,

15   RELATING TO all telescopes, components, and accessories YOU purchased that were

16   manufactured, supplied or distributed by DEFENDANTS since January 1, 2010.

17   **REQUEST FOR PRODUCTION NO. 9:**

18        All DOCUMENTS, including COMMUNICATIONS between YOU and any PERSON,

19   RELATING TO all telescopes, components, and accessories YOU purchased that were not

20   manufactured, supplied or distributed by DEFENDANTS since January 1, 2010.  The

21   DOCUMENTS YOU produce should include the date and location of the transaction, the name of

22   the PERSON YOU purchased from, the quantity of products purchased, the price charged per unit,

23   the amount of any discounts or coupons that YOU received, and the total amount paid.

24   **REQUEST FOR PRODUCTION NO. 10:**

25        All DOCUMENTS, including COMMUNICATIONS between YOU and any PERSON,

26   RELATING TO all telescopes, components, and accessories YOU sold that were manufactured,

27   supplied or distributed by DEFENDANTS since January 1, 2010.

28

**REQUEST FOR PRODUCTION NO. 11:**

All DOCUMENTS, including COMMUNICATIONS between YOU and any PERSON, RELATING TO all telescopes, components, and accessories YOU sold that were not manufactured, supplied or distributed by DEFENDANTS since January 1, 2010. The DOCUMENTS YOU produce should include the date and location of the transaction, the name of the PERSON YOU purchased from, the quantity of products purchased, the price charged per unit, the amount of any discounts or coupons that YOU received, and the total amount paid.

**REQUEST FOR PRODUCTION NO. 12:**

All DOCUMENTS sufficient to identify the price YOU paid for all telescopes YOU purchased since January 1, 2010.

**REQUEST FOR PRODUCTION NO. 13:**

All of YOUR COMMUNICATIONS with any telescope manufacturer, trading company, distributor or retailer discussing any other telescope retailers.

**REQUEST FOR PRODUCTION NO. 14:**

All DOCUMENTS identifying or RELATING TO the manufacturer of the telescopes YOU purchased since January 1, 2010.

**REQUEST FOR PRODUCTION NO. 15:**

All DOCUMENTS identifying or RELATING TO the seller of all telescopes YOU purchased since January 1, 2010.

**REQUEST FOR PRODUCTION NO. 16:**

DOCUMENTS or data sufficient to identify the amount of product manufactured, supplied or distributed by DEFENDANTS that YOU purchased since January 1, 2010.

**REQUEST FOR PRODUCTION NO. 17:**

DOCUMENTS or data sufficient to identify the price YOU paid for any product manufactured, supplied or distributed by DEFENDANTS since January 1, 2010, including all applicable offsets, or discounts RELATING TO the product YOU purchased.

**REQUEST FOR PRODUCTION NO. 18:**

All DOCUMENTS RELATING TO YOUR direct or indirect customers' resale of any

1  product manufactured, supplied or distributed by DEFENDANTS. The DOCUMENTS YOU

2  produce should include all available information for each sale such as the date and location of the

3  transaction, the name of the customer, the quantity of product sold, the price charged per product,

4  and the amount of any discounts, coupons, or offsets YOUR customer received.

5  **REQUEST FOR PRODUCTION NO. 19:**

6        DOCUMENTS sufficient to identify all of YOUR customers of telescopes, components, or

7  accessories since January 1, 2010.

8  **REQUEST FOR PRODUCTION NO. 20:**

9        DOCUMENTS identifying or RELATING TO YOUR inventory of telescopes since

10  January 1, 2010.

11  **REQUEST FOR PRODUCTION NO. 21:**

12        All price lists RELATING TO YOUR sale of any product manufactured, supplied or

13  distributed by DEFENDANTS since January 1, 2010.

14  **REQUEST FOR PRODUCTION NO. 22:**

15        DOCUMENTS sufficient to identify YOUR profit margin since January 1, 2010.

16  **REQUEST FOR PRODUCTION NO. 23:**

17        All COMMUNICATIONS between YOU and any PLAINTIFF, telescope retailer, or

18  telescope customer concerning any alleged antitrust or anticompetitive activity by any

19  DEFENDANT since January 1, 2005.

20  **REQUEST FOR PRODUCTION NO. 24:**

21        All COMMUNICATIONS between YOU and any PLAINTIFF, telescope retailer, or

22  telescope customer concerning Ningbo Sunny Electronic Co. Ltd's purchase of Meade

23  Instruments Corp.

24  **REQUEST FOR PRODUCTION NO. 25:**

25        All DOCUMENTS RELATING TO or constituting YOUR website postings, public

26  comments, or media interviews concerning any DEFENDANTS.

27

28

1

Timothy M. Flaherty, Esq., SBN 99666
**CLARK HILL LLP**

2

One Embarcadero Center, Suite 400
San Francisco, CA 94111

3

Telephone:     (415) 984-8500
Facsimile:      (415) 984-8599

4

tflaherty@ClarkHill.com

5

Attorneys for Non-Party
Optronic Technologies, Inc.

6

7

8

**UNITED STATES DISTRICT COURT**

9

**NORTHERN DISTRICT OF CALIFORNIA**

10

**SAN JOSE DIVISION**

11

SPECTRUM SCIENTIFICS LLC, RADIO
CITY, INC., and those similarly situated,

Case No. 5:20-cv-03642-EJD

12

Plaintiffs,

**NON-PARTY OPTRONIC
TECHNOLOGIES, INC.'S OBJECTION
AND RESPONSE TO DEFENDANT
CELESTRON ACQUISITION, LLC'S
SUBPOENA**

13

14

v.

15

CELESTRON ACQUISITION, LLC,
SYNTA CANADA INT'L ENTERPRISES
LTD., SKY-WATCHER USA, SKY-
WATCHER CANADA, SW TECHNOLOGY
CORP., OLIVON USA, LLC, COREY LEE,
SYLVIA SHEN, JEAN SHEN, JOSEPH
LUPICA, DAVE ANDERSON, LAURENCE
HUEN; and DOES 1-50,

16

**CLASS ACTION**

17

**JURY TRIAL DEMANDED**

18

19

Defendants.

20

21

**INSTRUCTIONS AND DEFINITIONS**

22

Non-Party Optronic Technologies, Inc. ("Orion") objects to all of the instructions and

23

definitions in Attachment A to Defendant Celestron Acquisition, LLC's ("Celestron") subpoena[1] to

24

the extent they purport to impose any duty or obligation on Orion beyond those specifically

25

imposed and set forth in the Federal Rules of Civil Procedure.  The subpoena and Orion's response

26

27

28

_____

[1] Attachment A is cited herein as ("Attach.").

1    thereto is governed by Rule 45, and Orion rejects and will not comply with any instruction that

2    contravenes or exceeds the requirements of that Rule.

3    Orion also objects to the definitions of "plaintiffs" and "defendants" in the subpoena, which

4    do not name the persons or entities that populate these categories. The requests that incorporate

5    these definitions are therefore incomplete and incurably vague. The definitions are further

6    objectionable because they purport to include a host of other persons besides the actual persons or

7    entities that (presumably) are plaintiffs and defendants, such as former employees, attorneys, and

8    the like. If ordered to respond to any request, Orion's responses will be limited to the actual parties

9    once known.

10   Orion further objects to the definition of "you" and "your" set forth in the subpoena. The

11   definitions improperly include persons not under Orion's control, such as former employees. The

12   definition also improperly purports to include Orion's counsel, which is unduly burdensome and

13   harassing and intended to drive up Orion's costs even further. Orion's response, if ordered by the

14   Court, will not include these persons, but rather will be limited to Orion's principals, employees,

15   and independent contractors.

16   Orion further objects to the definitions of "communications" and "documents" to the extent

17   they exceed the definition of writings as set forth in Rule 34 of the Federal Rules of Civil

18   Procedure. Orion's response, if ordered, will be limited to the definition set forth in Rule 34.

19                                           **RESPONSES**

20   **REQUEST FOR PRODUCTION NO. 1:**

21   All DOCUMENTS RELATING TO any fact discovery, including but not limited to,

22   discovery responses, deposition transcripts, and documents produced by the parties, and

23   documents produced by third parties in response to subpoenas, conducted in the following

24   litigation: *Optronic Techs., Inc. v. Ningbo Sunny Elec. Co., Ltd.,* No 5:16-cv-06370-EJD (N.D.

25   Cal. Nov. 1, 2016).

26

27   / / /

28

**RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

Orion objects to this request on the grounds that Celestron and its counsel have failed to comply with their duty, imposed by Rule 45(d)(1), "to take reasonable steps to avoid imposing undue burden or expense on a person subject to [a] subpoena."

Here, Celestron has requested "all" documents that simply "relate to" fact discovery in Orion's four-year long antitrust suit against Ningbo Sunny.[2] If that were not overbroad enough, Celestron has defined "documents" so broadly that it purports to include data that is not even presently stored in a reasonably accessible format; rather, Celestron demands that Orion use "detection devices" to "translate" such data "into reasonably useable form." (Attach. 2:6-8). Such material is not discoverable from *parties* under Rule 26(b)(2)(B), let alone from *non-parties* like Orion.

The scope and invasiveness of Celestron's request exceeds any reasonable proportionality given Orion's status as a non-party. On its face, the request purports to require Orion (and realistically, Orion's litigation counsel in the *Orion* Action) to review at Orion's expense *all* of its internal correspondence, memoranda, and data (including any that is not presently accessible) relating to a four-year antitrust suit for privilege, work product, and a host of other issues. Such a review will easily run into the hundreds of thousands of dollars. Rule 45(d)(i) and its companion Rule 45(d)(2)(B)(ii) exist to protect non-parties from this kind of abusive third-party discovery and the significant costs it imposes.

In sum, Celestron's request is vastly overbroad, unduly burdensome, and a clear abuse of the Rule 45 subpoena power intended to harass Orion. Orion is not a party to this suit and Celestron's attempt to use this subpoena to inflict costs upon its competitor violates its duties under Rule 45(d)(1).

For the foregoing reasons, Orion will not produce documents responsive to the request as drafted. Rather, Orion will only produce documents actually produced by parties or third parties in

---

[2] *Optronic Techs., Inc. v. Ningbo Sunny Elec. Co., Ltd.,* No 5:16-cv-06370-EJD (N.D. Cal. Nov. 1, 2016) (the "*Orion* Action").

1  the *Orion* Action, and only after Celestron confirms in writing and issues an advance to reimburse

2  the significant fees and costs Orion will incur responding to Celestron's subpoena, as required by to

3  Rule 45(d)(1) and Rule 45(d)(2)(B)(ii). *See Legal Voice v. Stormans Inc.*, 738 F.3d 1178, 1184 (9th

4  Cir. 2013) (holding that $20,000 was a "significant cost" incurred responding to a subpoena and

5  reversing as abuse of discretion failure to award those fees and costs pursuant to Rule 45(d)).

6  **REQUEST FOR PRODUCTION NO. 2:**

7          All DOCUMENTS RELATING TO any expert discovery, including but not limited to,

8  expert disclosures, expert reports, discovery responses, deposition transcripts, and documents

9  produced by the parties or their respective experts, conducted in the following litigation: *Optronic*

10  *Techs., Inc. v. Ningbo Sunny Elec. Co., Ltd.,* No 5: 16-cv-06370-EJD (N.D. Cal. Nov. 1, 2016).

11  **RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

12          Orion objects to this request on the grounds that Celestron and its counsel have failed to

13  comply with their duty, imposed by Rule 45(d)(1), "to take reasonable steps to avoid imposing

14  undue burden or expense on a person subject to [a] subpoena."

15          Here, Celestron has requested "all" documents that simply "relate to" expert discovery in

16  Orion's four-year long antitrust suit against Ningbo Sunny. If that were not overbroad enough,

17  Celestron has defined "documents" so broadly that it purports to include data that is not even

18  presently stored in a reasonably accessible format; rather, Celestron demands that Orion use

19  "detection devices" to "translate" such data "into reasonably useable form." (Attach. 2:6-8). Such

20  material is not discoverable from *parties* under Rule 26(b)(2)(B), let alone from *non-parties* like

21  Orion.

22          The scope and invasiveness of Celestron's request exceeds any reasonable proportionality

23  given Orion's status as a non-party. On its face, the request purports to require Orion (and

24  realistically, Orion's litigation counsel in the *Orion* Action) to review at Orion's expense *all* of its

25  internal correspondence, memoranda, and data (including any that is not presently accessible)

26  relating to a four-year antitrust suit for privilege, work product, and a host of other issues. Such a

27  review will easily run into the hundreds of thousands of dollars. Rule 45(d)(i) and its companion

28

1  Rule 45(d)(2)(B)(ii) exist to protect non-parties from this kind of abusive third-party discovery and

2  the significant costs it imposes.

3      In sum, Celestron's request is vastly overbroad, unduly burdensome, and a clear abuse of

4  the Rule 45 subpoena power intended to harass Orion. Orion is not a party to this suit and

5  Celestron's attempt to use this subpoena to inflict costs upon its competitor violates its duties under

6  Rule 45(d)(1).

7      For the foregoing reasons, Orion will not produce documents responsive to the request as

8  drafted. Rather, Orion will only produce documents actually produced by parties or third parties in

9  the *Orion* Action, and only after Celestron confirms in writing and issues an advance to reimburse

10  the significant fees and costs Orion has and will incur responding to Celestron's subpoena, as

11  required by to Rule 45(d)(1) and Rule 45(d)(2)(B)(ii). *See Legal Voice v. Stormans Inc.*, 738 F.3d

12  1178, 1184 (9th Cir. 2013) (holding that $20,000 was a "significant cost" incurred responding to a

13  subpoena and reversing as abuse of discretion failure to award those fees and costs pursuant to Rule

14  45(d)).

15  **REQUEST FOR PRODUCTION NO. 3:**

16      All DOCUMENTS offered, marked, or introduced at the trial conducted in the following

17  litigation: *Optronic Techs., Inc. v. Ningbo Sunny Elec. Co., Ltd.,* No 5:16-cv-06370-EJD (N.D.

18  Cal. Nov. 1, 2016).

19  **RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

20      Orion objects to this request on the grounds that Celestron and its counsel have failed to

21  comply with their duty, imposed by Rule 45(d)(1), "to take reasonable steps to avoid imposing

22  undue burden or expense on a person subject to [a] subpoena."

23      Here, Celestron has requested "all" documents that were "offered, marked, or introduced" at

24  trial in the *Orion* Action. It is not clear what Celestron means by this. If Celestron is referring to

25  exhibits that were admitted into evidence in the *Orion* Action trial, those exhibits are available to

26  the public through the Clerk of this Court and Celestron should obtain them there rather than harass

27  Orion.

28

To the extent that Celestron means any document referenced in the trial transcript of the *Orion* Action—which ran for six weeks and exceeds 3000 pages—the scope and invasiveness of Celestron's request exceeds any reasonable proportionality given Orion's status as a non-party. So construed, the request purports to require Orion (and realistically, Orion's litigation counsel in the *Orion* Action) to review the entirety of the *Orion* Action trial transcript, attempt to discern which document is referenced, and then produce it. Such a review will easily run into the hundreds of thousands of dollars. The request is also duplicative, given that Orion has already indicated that it would produce documents actually produced by the parties and non-parties to the *Orion* Action (after Celestron agrees in writing and advances Orion's significant costs to do so).

In sum, Orion is not a party to this suit. Rule 45(d)(i) and its companion Rule 45(d)(2)(B)(ii) exist to protect non-parties from this kind of abusive third-party discovery and the significant costs it imposes.

For the foregoing reasons, Orion will not search for or produce documents responsive to the request, and expressly reserves the right to seeks its fees and costs incurred responding to the subpoena pursuant to Rule 45(d).

**REQUEST FOR PRODUCTION NO. 4:**

All of YOUR supply agreements with any DEFENDANT from January 1, 2010 to present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

Orion objects to this request on the grounds that Celestron and its counsel have failed to comply with their duty, imposed by Rule 45(d)(1), "to take reasonable steps to avoid imposing undue burden or expense on a person subject to [a] subpoena." Orion also objects to the term "supply agreement" as vague and ambiguous and construes the term to mean a written contract signed by Orion and a manufacturer governing the terms upon which the manufacturer will supply product to Orion for a specified period of time.

Here, Celestron has requested "all" supply agreements with any Defendant in a period spanning ten years. But since *Celestron's counsel represents all but one of the Defendants* in this case—Ningbo Sunny, with whom Orion has not done business with since 2016 and with whom

1   Orion has never had a supply agreement—Celestron cannot show any need to take this discovery

2   from a third party. To the extent any such agreements exist, Celestron and its counsel already

3   possess them.

4        Moreover, the request is hopelessly overbroad and unduly burdensome because it is

5   untethered to any subject matter and seeks materials irrelevant to Celestron's defense to the price-

6   fixing, market division, and monopolization claims asserted against it. Celestron is not entitled to

7   all of Orion's supply agreements regarding any product Orion purchases simply because Celestron

8   has been sued for conspiring with its competitors. We are unaware of any case in which a

9   defendant to an antitrust suit has sought such broad third-party discovery against its competitors,

10  nor any legal basis for Celestron to do so here.

11       Accordingly, the only purpose in propounding this discovery is to harass and retaliate

12  against Orion for its successful efforts to enforce this Court's judgment against Celestron's and

13  Ningbo Sunny's attempt to avoid the judgment by shipping through a straw third party, ViewWay.

14  But Orion is not a party to this suit, and Rule 45(d)(i) and its companion Rule 45(d)(2)(B)(ii) exist

15  to protect non-parties from this kind of abusive third-party discovery and the significant costs it

16  imposes.

17       For the foregoing reasons, Orion will not produce documents responsive to the request, and

18  expressly reserves the right to seeks its fees and costs incurred responding to the subpoena pursuant

19  to Rule 45(d).

20  **REQUEST FOR PRODUCTION NO. 5:**

21       All of YOUR supply agreements with any telescope manufacturer, trading company,

22  distributor, or retailer since January 1, 2010.

23  **RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

24       Orion objects to this request on the grounds that Celestron and its counsel have failed to

25  comply with their duty, imposed by Rule 45(d)(1), "to take reasonable steps to avoid imposing

26  undue burden or expense on a person subject to [a] subpoena." Orion also objects to the term

27  "supply agreement" as vague and ambiguous and construes the term to mean a written contract

28

1  signed by Orion and a manufacturer governing the terms upon which the manufacturer will supply

2  product to Orion for a specified period of time.

3      Here, Celestron has requested "all" supply agreements with "any telescope manufacturer,

4  trading company, distributor, or retailer." Indeed, the request is hopelessly overbroad and unduly

5  burdensome because it is untethered to any subject matter and seeks materials irrelevant to

6  Celestron's defense to the price-fixing, market division, and monopolization claims asserted

7  against it. Celestron is not entitled to all of Orion's supply agreements regarding any product Orion

8  purchases simply because Celestron has been sued for conspiring with its competitors. We are

9  unaware of any case in which a defendant to an antitrust suit has sought such broad third-party

10  discovery against its competitors, nor any legal basis supporting Celestron's attempt to do so here.

11      For the foregoing reasons, Orion will not produce documents responsive to the request, and

12  expressly reserves the right to seeks its fees and costs incurred responding to the subpoena pursuant

13  to Rule 45(d).

14  **REQUEST FOR PRODUCTION NO. 6:**

15      All COMMUNICATIONS between YOU and any PLAINTIFF discussing

16  DEFENDANTS.

17  **RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

18      Orion objects to this request on the grounds that Celestron and its counsel have failed to

19  comply with their duty, imposed by Rule 45(d)(1), "to take reasonable steps to avoid imposing

20  undue burden or expense on a person subject to [a] subpoena."

21      Here, Celestron has requested "all" communications between Orion and any of the dozens

22  of proposed representative plaintiffs in these proceedings that "discuss" Defendants (whatever that

23  may mean). Given the lack of any time limitation on the request, Celestron apparently wants Orion

24  to search all of its records from today to the date it opened its doors for such communications.

25      Once again, the scope and invasiveness of Celestron's request exceeds any reasonable

26  proportionality given Orion's status as a non-party. The collection and review of literally all of

27  Orion's communications will easily run into the hundreds of thousands of dollars, if not more. And

28

1   to what end? To the extent that any such communications exist—and, though Orion has not and

2   will not conduct a search, Orion is not presently aware of any—they cannot possibly provide

3   Celestron any defense to the price-fixing, market-division, and monopolization claims asserted

4   against it by consumers and other retailers.

5        Orion is not a party to this suit. Rule 45(d)(i) and its companion Rule 45(d)(2)(B)(ii) exist

6   to protect non-parties from this kind of abusive third-party discovery and the significant costs it

7   imposes. Accordingly, Orion will not search for or produce documents responsive to the request,

8   and expressly reserves the right to seeks its fees and costs incurred responding to the subpoena

9   pursuant to Rule 45(d).

10  **REQUEST FOR PRODUCTION NO. 7:**

11       All COMMUNICATIONS at any time between YOU and any PLAINTIFF discussing the

12  following litigation: *Optronic Techs., Inc. v. Ningbo Sunny Elec. Co, Ltd.,* No 5: 16-cv-06370-EJD

13  (N.D. Cal Nov. 1, 2016).

14  **RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

15       Orion objects to this request on the grounds that Celestron and its counsel have failed to

16  comply with their duty, imposed by Rule 45(d)(1), "to take reasonable steps to avoid imposing

17  undue burden or expense on a person subject to [a] subpoena."

18       Here, Celestron has requested "all" communications between Orion and any of the dozens

19  of proposed representative plaintiffs in these proceedings that "discuss" (whatever that may mean)

20  the *Orion* Action. Given the lack of any time limitation on the request, Celestron apparently wants

21  Orion to search all of its records from today to the date it opened its doors for such

22  communications.

23       Once again, the scope and invasiveness of Celestron's request exceeds any reasonable

24  proportionality given Orion's status as a non-party. The collection and review of literally all of

25  Orion's communications will easily run into the hundreds of thousands of dollars, if not more. And

26  to what end? To the extent that any such communications exist—and, though Orion has not and

27  will not conduct a search, Orion is not presently aware of any—they cannot possibly provide

28

1 Celestron any defense to the price-fixing, market-division, and monopolization claims asserted

2 against it by consumers and other retailers.

3     Orion is not a party to this suit. Rule 45(d)(i) and its companion Rule 45(d)(2)(B)(ii) exist

4 to protect non-parties from this kind of abusive third-party discovery and the significant costs it

5 imposes. Accordingly, Orion will not search for or produce documents responsive to the request,

6 and expressly reserves the right to seeks its fees and costs incurred responding to the subpoena

7 pursuant to Rule 45(d).

8 **REQUEST FOR PRODUCTION NO. 8:**

9     All DOCUMENTS, including COMMUNICATIONS between YOU and any PERSON,

10 RELATING TO all telescopes, components, and accessories YOU purchased that were

11 manufactured, supplied or distributed by DEFENDANTS since January 1, 2010.

12 **RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

13     Orion objects to this request on the grounds that Celestron and its counsel have failed to

14 comply with their duty, imposed by Rule 45(d)(1), "to take reasonable steps to avoid imposing

15 undue burden or expense on a person subject to [a] subpoena."

16     Here, Celestron has requested "all" documents and communications between Orion and

17 literally anyone else that "relat[es] to" any product Orion bought and that Defendants—who

18 collectively represent 80% of the world's telescope manufacturing output—even touched, for an

19 eleven-year period.  So, between this request and Request 9 (which seeks the same documents

20 relating to non-Defendants), and Requests 10 and 11 (which are identical except for relating to

21 Orion's sales) Celestron is seeking production of literally every communication, document, or data

22 relating to telescopes in Orion's possession.  This is nothing more than sanctionable bad faith

23 discovery misconduct by Celestron against Orion.

24     That demand purports to include data that is not even presently stored in a reasonably

25 accessible format; rather, Celestron demands that Orion use "detection devices" to "translate" such

26 data "into reasonably useable form." (Attach. 2:6-8). Such material is not discoverable from *parties*

27 under Rule 26(b)(2)(B), let alone from *non-parties* like Orion.

28

1       Once again, the scope and invasiveness of Celestron's request exceeds any reasonable

2 proportionality given Orion's status as a non-party. The collection and review of literally all of

3 Orion's communications, documents, and data will easily run into the hundreds of thousands of

4 dollars, if not more. Celestron's attempt to impose the distraction and expense of such a fishing

5 expedition on its competitor Orion is improper. The request is also duplicative, given that Orion

6 has already indicated that it would produce documents actually produced by the parties and non-

7 parties to the *Orion* Action (after Celestron agrees in writing and advances Orion's significant costs

8 to do so).

9       Orion is not a defendant in this case—Celestron and its co-conspirators are.  Rule 45(d)(i)

10 and its companion Rule 45(d)(2)(B)(ii) exist to protect non-parties from this kind of abusive third-

11 party discovery and the significant costs it imposes. Accordingly, Orion will not search for or

12 produce documents responsive to the request, and expressly reserves the right to seeks its fees and

13 costs incurred responding to the subpoena pursuant to Rule 45(d).

14 **REQUEST FOR PRODUCTION NO. 9:**

15       All DOCUMENTS, including COMMUNICATIONS between YOU and any PERSON,

16 RELATING TO all telescopes, components, and accessories YOU purchased that were not

17 manufactured, supplied or distributed by DEFENDANTS since January 1, 2010. The

18 DOCUMENTS YOU produce should include the date and location of the transaction, the name of

19 the PERSON YOU purchased from, the quantity of products purchased, the price charged per unit,

20 the amount of any discounts or coupons that YOU received, and the total amount paid.

21 **RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

22       Orion objects to this request on the grounds that Celestron and its counsel have failed to

23 comply with their duty, imposed by Rule 45(d)(1), "to take reasonable steps to avoid imposing

24 undue burden or expense on a person subject to [a] subpoena."

25       Here, Celestron has requested "all" documents and communications between Orion and

26 literally anyone else that "relat[es] to" any product that Orion brought from anyone other than

27 Defendants for an eleven-year period. So, between this request and Request 8 (which seeks the

28

1   same documents, but relating to purchases from Defendants), and Requests 10 and 11 (which are

2   identical except for relating to Orion's sales) Celestron is seeking production of literally every

3   communication, document, or data relating to telescopes in Orion's possession. This is nothing

4   more than sanctionable bad faith discovery misconduct by Celestron against Orion.

5        Celestron's demand purports to include data that is not even presently stored in a reasonably

6   accessible format; rather, Celestron demands that Orion use "detection devices" to "translate" such

7   data "into reasonably useable form." (Attach. 2:6-8). Such material is not discoverable from *parties*

8   under Rule 26(b)(2)(B), let alone from *non-parties* like Orion.

9        Once again, the scope and invasiveness of Celestron's request exceeds any reasonable

10  proportionality given Orion's status as a non-party. The collection and review of literally all of

11  Orion's communications, documents, and data will easily run into the hundreds of thousands of

12  dollars, if not more. Celestron's attempt to impose the distraction and expense of such a fishing

13  expedition on its competitor Orion is improper. The request is also duplicative, given that Orion

14  has already indicated that it would produce documents actually produced by the parties and non-

15  parties to the *Orion* Action (after Celestron agrees in writing and advances Orion's significant costs

16  to do so).

17       Orion is not a defendant in this case—Celestron and its co-conspirators are.  Rule 45(d)(i)

18  and its companion Rule 45(d)(2)(B)(ii) exist to protect non-parties from this kind of abusive third-

19  party discovery and the significant costs it imposes. Accordingly, Orion will not search for or

20  produce documents responsive to the request, and expressly reserves the right to seeks its fees and

21  costs incurred responding to the subpoena pursuant to Rule 45(d).

22  **REQUEST FOR PRODUCTION NO. 10:**

23       All DOCUMENTS, including COMMUNICATIONS between YOU and any PERSON,

24  RELATING TO all telescopes, components, and accessories YOU sold that were manufactured,

25  supplied or distributed by DEFENDANTS since January 1, 2010.

26  **RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

27

28

1    Orion objects to this request on the grounds that Celestron and its counsel have failed to

2    comply with their duty, imposed by Rule 45(d)(1), "to take reasonable steps to avoid imposing

3    undue burden or expense on a person subject to [a] subpoena."

4    Here, Celestron has requested "all" documents and communications between Orion and

5    literally anyone else that "relat[es] to" any product Orion sold for an eleven-year period. So,

6    between this request and Request 11, (which seeks the same documents relating to sales for non-

7    Defendant products), and Requests 8 and 9 (which are identical except for relating to purchasing)

8    Celestron is seeking production of literally every communication, document, or data relating to

9    telescopes in Orion's possession. This is nothing more than sanctionable bad faith discovery

10   misconduct by Celestron against Orion.

11   Celestron's demand purports to include data that is not even presently stored in a reasonably

12   accessible format; rather, Celestron demands that Orion use "detection devices" to "translate" such

13   data "into reasonably useable form." (Attach. 2:6-8). Such material is not discoverable from *parties*

14   under Rule 26(b)(2)(B), let alone from *non-parties* like Orion.

15   Once again, the scope and invasiveness of Celestron's request exceeds any reasonable

16   proportionality given Orion's status as a non-party. The collection and review of literally all of

17   Orion's communications, documents, and data will easily run into the hundreds of thousands of

18   dollars, if not more. Celestron's attempt to impose the distraction and expense of such a fishing

19   expedition on its competitor Orion is improper. The request is also duplicative, given that Orion

20   has already indicated that it would produce documents actually produced by the parties and non-

21   parties to the *Orion* Action (after Celestron agrees in writing and advances Orion's significant costs

22   to do so).

23   Orion is not a defendant in this case—Celestron and its co-conspirators are.  Rule 45(d)(i)

24   and its companion Rule 45(d)(2)(B)(ii) exist to protect non-parties from this kind of abusive third-

25   party discovery and the significant costs it imposes. Accordingly, Orion will not search for or

26   produce documents responsive to the request, and expressly reserves the right to seeks its fees and

27   costs incurred responding to the subpoena pursuant to Rule 45(d).

28

**REQUEST FOR PRODUCTION NO. 11:**

All DOCUMENTS, including COMMUNICATIONS between YOU and any PERSON, RELATING TO all telescopes, components, and accessories YOU sold that were not manufactured, supplied or distributed by DEFENDANTS since January 1, 2010. The DOCUMENTS YOU produce should include the date and location of the transaction, the name of the PERSON YOU purchased from, the quantity of products purchased, the price charged per unit, the amount of any discounts or coupons that YOU received, and the total amount paid.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**

Orion objects to this request on the grounds that Celestron and its counsel have failed to comply with their duty, imposed by Rule 45(d)(1), "to take reasonable steps to avoid imposing undue burden or expense on a person subject to [a] subpoena."

Here, Celestron has requested "all" documents and communications between Orion and literally anyone else that "relat[es] to" any product Orion sold for an eleven-year period. So, between this request and Request 11, (which seeks the same documents relating to sales of Defendant products), and Requests 8 and 9 (which are identical except for relating to purchasing) Celestron is seeking production of literally every communication, document, or data relating to telescopes in Orion's possession. This is nothing more than sanctionable bad faith discovery misconduct by Celestron against Orion.

Celestron's demand purports to include data that is not even presently stored in a reasonably accessible format; rather, Celestron demands that Orion use "detection devices" to "translate" such data "into reasonably useable form." (Attach. 2:6-8). Such material is not discoverable from *parties* under Rule 26(b)(2)(B), let alone from *non-parties* like Orion.

Once again, the scope and invasiveness of Celestron's request exceeds any reasonable proportionality given Orion's status as a non-party. The collection and review of literally all of Orion's communications, documents, and data will easily run into the hundreds of thousands of dollars, if not more. Celestron's attempt to impose the distraction and expense of such a fishing expedition on its competitor Orion is improper. The request is also duplicative, given that Orion

has already indicated that it would produce documents actually produced by the parties and non-parties to the *Orion* Action (after Celestron agrees in writing and advances Orion's significant costs to do so).

Orion is not a defendant in this case—Celestron and its co-conspirators are.  Rule 45(d)(i) and its companion Rule 45(d)(2)(B)(ii) exist to protect non-parties from this kind of abusive third-party discovery and the significant costs it imposes. Accordingly, Orion will not search for or produce documents responsive to the request, and expressly reserves the right to seeks its fees and costs incurred responding to the subpoena pursuant to Rule 45(d).

**REQUEST FOR PRODUCTION NO. 12:**

All DOCUMENTS sufficient to identify the price YOU paid for all telescopes YOU purchased since January 1, 2010.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 12:**

Orion objects to this request on the grounds that Celestron and its counsel have failed to comply with their duty, imposed by Rule 45(d)(1), "to take reasonable steps to avoid imposing undue burden or expense on a person subject to [a] subpoena."

Here, Celestron has requested documents showing all of Orion's purchasing prices for telescopes for an eleven-year period. Celestron's demand purports to include data that is not even presently stored in a reasonably accessible format; rather, Celestron demands that Orion use "detection devices" to "translate" such data "into reasonably useable form." (Attach. 2:6-8). Such material is not discoverable from *parties* under Rule 26(b)(2)(B), let alone from *non-parties* like Orion.

Once again, the scope and invasiveness of Celestron's request exceeds any reasonable proportionality given Orion's status as a non-party. The collection and review of literally all of Orion's data on costs will easily run into the hundreds of thousands of dollars, if not more. Celestron's attempt to impose the distraction and expense of such a fishing expedition on its competitor Orion is improper. The request is also duplicative, given that Orion has already

1  indicated that it would produce documents actually produced by the parties and non-parties to the

2  *Orion* Action (after Celestron agrees in writing and advances Orion's significant costs to do so).

3       Orion is not a defendant in this case—Celestron and its co-conspirators are.  Rule 45(d)(i)

4  and its companion Rule 45(d)(2)(B)(ii) exist to protect non-parties from this kind of abusive third-

5  party discovery and the significant costs it imposes. Accordingly, Orion will not search for or

6  produce documents responsive to the request, and expressly reserves the right to seeks its fees and

7  costs incurred responding to the subpoena pursuant to Rule 45(d).

8  **REQUEST FOR PRODUCTION NO. 13:**

9       All of YOUR COMMUNICATIONS with any telescope manufacturer, trading company,

10 distributor or retailer discussing any other telescope retailers.

11 **RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

12      Orion objects to this request on the grounds that Celestron and its counsel have failed to

13 comply with their duty, imposed by Rule 45(d)(1), "to take reasonable steps to avoid imposing

14 undue burden or expense on a person subject to [a] subpoena."

15      Here, Celestron has requested all of Orion's communications with others in the telescope

16 industry regarding any other participant in the industry for an eleven-year period. Celestron's

17 demand purports to include data that is not even presently stored in a reasonably accessible format;

18 rather, Celestron demands that Orion use "detection devices" to "translate" such data "into

19 reasonably useable form." (Attach. 2:6-8). Such material is not discoverable from *parties* under

20 Rule 26(b)(2)(B), let alone from *non-parties* like Orion.

21      Once again, the scope and invasiveness of Celestron's request exceeds any reasonable

22 proportionality given Orion's status as a non-party. The collection and review of literally all of

23 Orion's communications, documents, and data will easily run into the hundreds of thousands of

24 dollars, if not more. Celestron's attempt to impose the distraction and expense of such a fishing

25 expedition on its competitor Orion is improper. The request is also duplicative, given that Orion

26 has already indicated that it would produce documents actually produced by the parties and non-

27

28

1    parties to the *Orion* Action (after Celestron agrees in writing and advances Orion's significant costs

2    to do so).

3          Orion is not a defendant in this case—Celestron and its co-conspirators are.  Rule 45(d)(i)

4    and its companion Rule 45(d)(2)(B)(ii) exist to protect non-parties from this kind of abusive third-

5    party discovery and the significant costs it imposes. Accordingly, Orion will not search for or

6    produce documents responsive to the request, and expressly reserves the right to seeks its fees and

7    costs incurred responding to the subpoena pursuant to Rule 45(d).

8    **REQUEST FOR PRODUCTION NO. 14:**

9          All DOCUMENTS identifying or RELATING TO the manufacturer of the telescopes

10   YOU purchased since January 1, 2010.

11   **RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

12         Orion objects to this request on the grounds that Celestron and its counsel have failed to

13   comply with their duty, imposed by Rule 45(d)(1), "to take reasonable steps to avoid imposing

14   undue burden or expense on a person subject to [a] subpoena."

15         Here, Celestron has requested all of Orion's relating to any of its suppliers for an eleven-

16   year period. Celestron's demand purports to include data that is not even presently stored in a

17   reasonably accessible format; rather, Celestron demands that Orion use "detection devices" to

18   "translate" such data "into reasonably useable form." (Attach. 2:6-8). Such material is not

19   discoverable from *parties* under Rule 26(b)(2)(B), let alone from *non-parties* like Orion.

20         Once again, the scope and invasiveness of Celestron's request exceeds any reasonable

21   proportionality given Orion's status as a non-party. The collection and review of literally all of

22   Orion's communications, documents, and data will easily run into the hundreds of thousands of

23   dollars, if not more. Celestron's attempt to impose the distraction and expense of such a fishing

24   expedition on its competitor Orion is improper. The request is also duplicative, given that Orion

25   has already indicated that it would produce documents actually produced by the parties and non-

26   parties to the *Orion* Action (after Celestron agrees in writing and advances Orion's significant costs

27   to do so).

28

Orion is not a defendant in this case—Celestron and its co-conspirators are.  Rule 45(d)(i) and its companion Rule 45(d)(2)(B)(ii) exist to protect non-parties from this kind of abusive third-party discovery and the significant costs it imposes. Accordingly, Orion will not search for or produce documents responsive to the request, and expressly reserves the right to seeks its fees and costs incurred responding to the subpoena pursuant to Rule 45(d).

**REQUEST FOR PRODUCTION NO. 15:**

All DOCUMENTS identifying or RELATING TO the seller of all telescopes YOU purchased since January 1, 2010.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 15:**

Orion objects to this request on the grounds that Celestron and its counsel have failed to comply with their duty, imposed by Rule 45(d)(1), "to take reasonable steps to avoid imposing undue burden or expense on a person subject to [a] subpoena."

Here, Celestron has requested all of Orion's relating to any of its suppliers for an eleven-year period. Celestron's demand purports to include data that is not even presently stored in a reasonably accessible format; rather, Celestron demands that Orion use "detection devices" to "translate" such data "into reasonably useable form." (Attach. 2:6-8). Such material is not discoverable from *parties* under Rule 26(b)(2)(B), let alone from *non-parties* like Orion.

Once again, the scope and invasiveness of Celestron's request exceeds any reasonable proportionality given Orion's status as a non-party. The collection and review of literally all of Orion's communications, documents, and data will easily run into the hundreds of thousands of dollars, if not more. Celestron's attempt to impose the distraction and expense of such a fishing expedition on its competitor Orion is improper. The request is also duplicative, given that Orion has already indicated that it would produce documents actually produced by the parties and non-parties to the *Orion* Action (after Celestron agrees in writing and advances Orion's significant costs to do so).

Orion is not a defendant in this case—Celestron and its co-conspirators are.  Rule 45(d)(i) and its companion Rule 45(d)(2)(B)(ii) exist to protect non-parties from this kind of abusive third-

1  party discovery and the significant costs it imposes. Accordingly, Orion will not search for or

2  produce documents responsive to the request, and expressly reserves the right to seeks its fees and

3  costs incurred responding to the subpoena pursuant to Rule 45(d).

4  **REQUEST FOR PRODUCTION NO. 16:**

5      DOCUMENTS or data sufficient to identify the amount of product manufactured, supplied

6  or distributed by DEFENDANTS that YOU purchased since January 1, 2010.

7  **RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

8      Orion objects to this request on the grounds that Celestron and its counsel have failed to

9  comply with their duty, imposed by Rule 45(d)(1), "to take reasonable steps to avoid imposing

10  undue burden or expense on a person subject to [a] subpoena."

11      Here, Celestron has requested all of Orion's relating to any of its suppliers for an eleven-

12  year period. Celestron's demand purports to include data that is not even presently stored in a

13  reasonably accessible format; rather, Celestron demands that Orion use "detection devices" to

14  "translate" such data "into reasonably useable form." (Attach. 2:6-8). Such material is not

15  discoverable from *parties* under Rule 26(b)(2)(B), let alone from *non-parties* like Orion.

16      Once again, the scope and invasiveness of Celestron's request exceeds any reasonable

17  proportionality given Orion's status as a non-party. The collection and review of literally all of

18  Orion's communications, documents, and data will easily run into the hundreds of thousands of

19  dollars, if not more. Celestron's attempt to impose the distraction and expense of such a fishing

20  expedition on its competitor Orion is improper. The request is also duplicative, given that Orion

21  has already indicated that it would produce documents actually produced by the parties and non-

22  parties to the *Orion* Action (after Celestron agrees in writing and advances Orion's significant costs

23  to do so).

24      Orion is not a defendant in this case—Celestron and its co-conspirators are.  Rule 45(d)(i)

25  and its companion Rule 45(d)(2)(B)(ii) exist to protect non-parties from this kind of abusive third-

26  party discovery and the significant costs it imposes. Accordingly, Orion will not search for or

27

28

1 produce documents responsive to the request, and expressly reserves the right to seeks its fees and

2 costs incurred responding to the subpoena pursuant to Rule 45(d).

3 **REQUEST FOR PRODUCTION NO. 17:**

4      DOCUMENTS or data sufficient to identify the price YOU paid for any product

5 manufactured, supplied or distributed by DEFENDANTS since January 1, 2010, including all

6 applicable offsets, or discounts RELATING TO the product YOU purchased.

7 **RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

8      Orion objects to this request on the grounds that Celestron and its counsel have failed to

9 comply with their duty, imposed by Rule 45(d)(1), "to take reasonable steps to avoid imposing

10 undue burden or expense on a person subject to [a] subpoena."

11      Here, Celestron has requested Orion's cost for any product Defendants' have touched for an

12 eleven-year period. Celestron's demand purports to include data that is not even presently stored in

13 a reasonably accessible format; rather, Celestron demands that Orion use "detection devices" to

14 "translate" such data "into reasonably useable form." (Attach. 2:6-8). Such material is not

15 discoverable from *parties* under Rule 26(b)(2)(B), let alone from *non-parties* like Orion.

16      Once again, the scope and invasiveness of Celestron's request exceeds any reasonable

17 proportionality given Orion's status as a non-party. The collection and review of literally all of

18 Orion's communications, documents, and data will easily run into the hundreds of thousands of

19 dollars, if not more. Celestron's attempt to impose the distraction and expense of such a fishing

20 expedition on its competitor Orion is improper. The request is also duplicative, given that Orion

21 has already indicated that it would produce documents actually produced by the parties and non-

22 parties to the *Orion* Action (after Celestron agrees in writing and advances Orion's significant costs

23 to do so).

24      Orion is not a defendant in this case—Celestron and its co-conspirators are.  Rule 45(d)(i)

25 and its companion Rule 45(d)(2)(B)(ii) exist to protect non-parties from this kind of abusive third-

26 party discovery and the significant costs it imposes. Accordingly, Orion will not search for or

27

28

1  produce documents responsive to the request, and expressly reserves the right to seeks its fees and

2  costs incurred responding to the subpoena pursuant to Rule 45(d).

3  **REQUEST FOR PRODUCTION NO. 18:**

4       All DOCUMENTS RELATING TO YOUR direct or indirect customers' resale of any

5  product manufactured, supplied or distributed by DEFENDANTS. The DOCUMENTS YOU

6  produce should include all available information for each sale such as the date and location of the

7  transaction, the name of the customer, the quantity of product sold, the price charged per product,

8  and the amount of any discounts, coupons, or offsets YOUR customer received.

9  **RESPONSE TO REQUEST FOR PRODUCTION NO. 18:**

10       Orion objects to this request on the grounds that Celestron and its counsel have failed to

11  comply with their duty, imposed by Rule 45(d)(1), "to take reasonable steps to avoid imposing

12  undue burden or expense on a person subject to [a] subpoena."

13       Here, Celestron has requested documents regarding Orion's customer's "resale" of their

14  telescopes for an indefinite period. It is not clear why Celestron believes Orion would have such

15  information.

16       Moreover, Celestron's demand purports to include data that is not even presently stored in a

17  reasonably accessible format; rather, Celestron demands that Orion use "detection devices" to

18  "translate" such data "into reasonably useable form." (Attach. 2:6-8). Such material is not

19  discoverable from *parties* under Rule 26(b)(2)(B), let alone from *non-parties* like Orion.

20       Once again, the scope and invasiveness of Celestron's request exceeds any reasonable

21  proportionality given Orion's status as a non-party. The collection and review of literally all of

22  Orion's communications, documents, and data will easily run into the hundreds of thousands of

23  dollars, if not more. Celestron's attempt to impose the distraction and expense of such a fishing

24  expedition on its competitor Orion is improper. The request is also duplicative, given that Orion

25  has already indicated that it would produce documents actually produced by the parties and non-

26  parties to the *Orion* Action (after Celestron agrees in writing and advances Orion's significant costs

27  to do so).

28

1   Orion is not a defendant in this case—Celestron and its co-conspirators are.  Rule 45(d)(i)

2   and its companion Rule 45(d)(2)(B)(ii) exist to protect non-parties from this kind of abusive third-

3   party discovery and the significant costs it imposes. Accordingly, Orion will not search for or

4   produce documents responsive to the request, and expressly reserves the right to seeks its fees and

5   costs incurred responding to the subpoena pursuant to Rule 45(d).

6   **REQUEST FOR PRODUCTION NO. 19:**

7   DOCUMENTS sufficient to identify all of YOUR customers of telescopes, components, or

8   accessories since January 1, 2010.

9   **RESPONSE TO REQUEST FOR PRODUCTION NO. 19:**

10   Orion objects to this request on the grounds that Celestron and its counsel have failed to

11   comply with their duty, imposed by Rule 45(d)(1), "to take reasonable steps to avoid imposing

12   undue burden or expense on a person subject to [a] subpoena."

13   Here, Celestron has requested the identity of all of Orion's customers for an eleven-year

14   period. It is unclear why Celestron believes Orion's customers' identity—which is protected by the

15   right to privacy under federal and California law—is relevant here.

16   In any event, Celestron's demand purports to include data that is not even presently stored

17   in a reasonably accessible format; rather, Celestron demands that Orion use "detection devices" to

18   "translate" such data "into reasonably useable form." (Attach. 2:6-8). Such material is not

19   discoverable from *parties* under Rule 26(b)(2)(B), let alone from *non-parties* like Orion.

20   Once again, the scope and invasiveness of Celestron's request exceeds any reasonable

21   proportionality given Orion's status as a non-party. The collection and review of literally all of

22   Orion's communications, documents, and data will easily run into the hundreds of thousands of

23   dollars, if not more. Celestron's attempt to impose the distraction and expense of such a fishing

24   expedition on its competitor Orion is improper. The request is also duplicative, given that Orion

25   has already indicated that it would produce documents actually produced by the parties and non-

26   parties to the *Orion* Action (after Celestron agrees in writing and advances Orion's significant costs

27   to do so).

28

NON-PARTY OPTRONIC TECHNOLOGIES, INC.'S OBJECTION RESPONSE TO DEFENDANT CELESTRON
ACQUISITION, LLC'S SUBPOENA
22

1   Orion is not a defendant in this case—Celestron and its co-conspirators are.  Rule 45(d)(i)

2   and its companion Rule 45(d)(2)(B)(ii) exist to protect non-parties from this kind of abusive third-

3   party discovery and the significant costs it imposes. Accordingly, Orion will not search for or

4   produce documents responsive to the request, and expressly reserves the right to seeks its fees and

5   costs incurred responding to the subpoena pursuant to Rule 45(d).

6   **REQUEST FOR PRODUCTION NO. 20:**

7   DOCUMENTS identifying or RELATING TO YOUR inventory of telescopes since

8   January 1, 2010.

9   **RESPONSE TO REQUEST FOR PRODUCTION NO. 20:**

10   Orion objects to this request on the grounds that Celestron and its counsel have failed to

11   comply with their duty, imposed by Rule 45(d)(1), "to take reasonable steps to avoid imposing

12   undue burden or expense on a person subject to [a] subpoena."

13   Here, Celestron has requested Orion's inventory status for an eleven-year period.

14   Celestron's demand purports to include data that is not even presently stored in a reasonably

15   accessible format; rather, Celestron demands that Orion use "detection devices" to "translate" such

16   data "into reasonably useable form." (Attach. 2:6-8). Such material is not discoverable from *parties*

17   under Rule 26(b)(2)(B), let alone from *non-parties* like Orion.

18   Once again, the scope and invasiveness of Celestron's request exceeds any reasonable

19   proportionality given Orion's status as a non-party. The collection and review of literally all of

20   Orion's communications, documents, and data will easily run into the hundreds of thousands of

21   dollars, if not more. Celestron's attempt to impose the distraction and expense of such a fishing

22   expedition on its competitor Orion is improper. The request is also duplicative, given that Orion

23   has already indicated that it would produce documents actually produced by the parties and non-

24   parties to the *Orion* Action (after Celestron agrees in writing and advances Orion's significant costs

25   to do so).

26   Orion is not a defendant in this case—Celestron and its co-conspirators are.  Rule 45(d)(i)

27   and its companion Rule 45(d)(2)(B)(ii) exist to protect non-parties from this kind of abusive third-

28

NON-PARTY OPTRONIC TECHNOLOGIES, INC.'S OBJECTION RESPONSE TO DEFENDANT CELESTRON
ACQUISITION, LLC'S SUBPOENA

ClarkHill\63716\417285\261530942.v1-12/18/20

1  party discovery and the significant costs it imposes. Accordingly, Orion will not search for or

2  produce documents responsive to the request, and expressly reserves the right to seeks its fees and

3  costs incurred responding to the subpoena pursuant to Rule 45(d).

4  **REQUEST FOR PRODUCTION NO. 21:**

5      All price lists RELATING TO YOUR sale of any product manufactured, supplied or

6  distributed by DEFENDANTS since January 1, 2010.

7  **RESPONSE TO REQUEST FOR PRODUCTION NO. 21:**

8      Orion objects to this request on the grounds that Celestron and its counsel have failed to

9  comply with their duty, imposed by Rule 45(d)(1), "to take reasonable steps to avoid imposing

10  undue burden or expense on a person subject to [a] subpoena."

11      Here, Celestron has requested all of Orion's price lists for products Defendants touched for

12  an eleven-year period. Celestron's demand purports to include data that is not even presently stored

13  in a reasonably accessible format; rather, Celestron demands that Orion use "detection devices" to

14  "translate" such data "into reasonably useable form." (Attach. 2:6-8). Such material is not

15  discoverable from *parties* under Rule 26(b)(2)(B), let alone from *non-parties* like Orion.

16      Once again, the scope and invasiveness of Celestron's request exceeds any reasonable

17  proportionality given Orion's status as a non-party. The collection and review of literally all of

18  Orion's communications, documents, and data will easily run into the hundreds of thousands of

19  dollars, if not more. Celestron's attempt to impose the distraction and expense of such a fishing

20  expedition on its competitor Orion is improper. The request is also duplicative, given that Orion

21  has already indicated that it would produce documents actually produced by the parties and non-

22  parties to the *Orion* Action (after Celestron agrees in writing and advances Orion's significant costs

23  to do so).

24      Orion is not a defendant in this case—Celestron and its co-conspirators are.  Rule 45(d)(i)

25  and its companion Rule 45(d)(2)(B)(ii) exist to protect non-parties from this kind of abusive third-

26  party discovery and the significant costs it imposes. Accordingly, Orion will not search for or

27

28

1    produce documents responsive to the request, and expressly reserves the right to seeks its fees and

2    costs incurred responding to the subpoena pursuant to Rule 45(d).

3    **REQUEST FOR PRODUCTION NO. 22:**

4         DOCUMENTS sufficient to identify YOUR profit margin since January 1, 2010.

5    **RESPONSE TO REQUEST FOR PRODUCTION NO. 22:**

6         Orion objects to this request on the grounds that Celestron and its counsel have failed to

7    comply with their duty, imposed by Rule 45(d)(1), "to take reasonable steps to avoid imposing

8    undue burden or expense on a person subject to [a] subpoena."

9         Here, Celestron has requested all of Orion's costs, expenses, revenue, sales and price lists

10   for products Defendants touched for an eleven-year period. Celestron's demand purports to include

11   data that is not even presently stored in a reasonably accessible format; rather, Celestron demands

12   that Orion use "detection devices" to "translate" such data "into reasonably useable form." (Attach.

13   2:6-8). Such material is not discoverable from *parties* under Rule 26(b)(2)(B), let alone from *non-*

14   *parties* like Orion.

15        Once again, the scope and invasiveness of Celestron's request exceeds any reasonable

16   proportionality given Orion's status as a non-party. The collection and review of literally all of

17   Orion's communications, documents, and data will easily run into the hundreds of thousands of

18   dollars, if not more. Celestron's attempt to impose the distraction and expense of such a fishing

19   expedition on its competitor Orion is improper. The request is also duplicative, given that Orion

20   has already indicated that it would produce documents actually produced by the parties and non-

21   parties to the *Orion* Action (after Celestron agrees in writing and advances Orion's significant costs

22   to do so).

23        Orion is not a defendant in this case—Celestron and its co-conspirators are.  Rule 45(d)(i)

24   and its companion Rule 45(d)(2)(B)(ii) exist to protect non-parties from this kind of abusive third-

25   party discovery and the significant costs it imposes. Accordingly, Orion will not search for or

26   produce documents responsive to the request, and expressly reserves the right to seeks its fees and

27   costs incurred responding to the subpoena pursuant to Rule 45(d).

28

NON-PARTY OPTRONIC TECHNOLOGIES, INC.'S OBJECTION RESPONSE TO DEFENDANT CELESTRON
ACQUISITION, LLC'S SUBPOENA

25

1

2   **REQUEST FOR PRODUCTION NO. 23:**

3        All COMMUNICATIONS between YOU and any PLAINTIFF, telescope retailer, or

4   telescope customer concerning any alleged antitrust or anticompetitive activity by any

5   DEFENDANT since January 1, 2005.

6   **RESPONSE TO REQUEST FOR PRODUCTION NO. 23:**

7        Orion objects to this request on the grounds that Celestron and its counsel have failed to

8   comply with their duty, imposed by Rule 45(d)(1), "to take reasonable steps to avoid imposing

9   undue burden or expense on a person subject to [a] subpoena."

10        Here, Celestron has requested all of Orion's communications with anyone in the telescope

11   industry regarding "alleged antitrust or anticompetitive activity by Defendants" for an sixteen-year

12   period. Celestron's demand purports to include data that is not even presently stored in a

13   reasonably accessible format; rather, Celestron demands that Orion use "detection devices" to

14   "translate" such data "into reasonably useable form." (Attach. 2:6-8). Such material is not

15   discoverable from *parties* under Rule 26(b)(2)(B), let alone from *non-parties* like Orion.

16        Once again, the scope and invasiveness of Celestron's request exceeds any reasonable

17   proportionality given Orion's status as a non-party. The collection and review of literally all of

18   Orion's communications, documents, and data will easily run into the hundreds of thousands of

19   dollars, if not more. Celestron's attempt to impose the distraction and expense of such a fishing

20   expedition on its competitor Orion is improper. The request is also duplicative, given that Orion

21   has already indicated that it would produce documents actually produced by the parties and non-

22   parties to the *Orion* Action (after Celestron agrees in writing and advances Orion's significant costs

23   to do so).

24        Orion is not a defendant in this case—Celestron and its co-conspirators are.  Rule 45(d)(i)

25   and its companion Rule 45(d)(2)(B)(ii) exist to protect non-parties from this kind of abusive third-

26   party discovery and the significant costs it imposes. Accordingly, Orion will not search for or

27

28

1   produce documents responsive to the request, and expressly reserves the right to seeks its fees and

2   costs incurred responding to the subpoena pursuant to Rule 45(d).

3   **REQUEST FOR PRODUCTION NO. 24:**

4        All COMMUNICATIONS between YOU and any PLAINTIFF, telescope retailer, or

5   telescope customer concerning Ningbo Sunny Electronic Co. Ltd's purchase of Meade

6   Instruments Corp.

7   **RESPONSE TO REQUEST FOR PRODUCTION NO. 24:**

8        Orion objects to this request on the grounds that Celestron and its counsel have failed to

9   comply with their duty, imposed by Rule 45(d)(1), "to take reasonable steps to avoid imposing

10  undue burden or expense on a person subject to [a] subpoena."

11       Here, Celestron has requested all of Orion's communications with anyone in the telescope

12  industry regarding Ningbo Sunny's acquisition of Meade, without any limitation as to time.

13  Celestron's demand purports to include data that is not even presently stored in a reasonably

14  accessible format; rather, Celestron demands that Orion use "detection devices" to "translate" such

15  data "into reasonably useable form." (Attach. 2:6-8). Such material is not discoverable from *parties*

16  under Rule 26(b)(2)(B), let alone from *non-parties* like Orion.

17       Once again, the scope and invasiveness of Celestron's request exceeds any reasonable

18  proportionality given Orion's status as a non-party. The collection and review of literally all of

19  Orion's communications, documents, and data will easily run into the hundreds of thousands of

20  dollars, if not more. Celestron's attempt to impose the distraction and expense of such a fishing

21  expedition on its competitor Orion is improper. The request is also duplicative, given that Orion

22  has already indicated that it would produce documents actually produced by the parties and non-

23  parties to the *Orion* Action (after Celestron agrees in writing and advances Orion's significant costs

24  to do so).

25       Orion is not a defendant in this case—Celestron and its co-conspirators are.  Rule 45(d)(i)

26  and its companion Rule 45(d)(2)(B)(ii) exist to protect non-parties from this kind of abusive third-

27  party discovery and the significant costs it imposes. Accordingly, Orion will not search for or

28

NON-PARTY OPTRONIC TECHNOLOGIES, INC.'S OBJECTION RESPONSE TO DEFENDANT CELESTRON
ACQUISITION, LLC'S SUBPOENA

ClarkHill\63716\417285\261530942.v1-12/18/20

1    produce documents responsive to the request, and expressly reserves the right to seeks its fees and

2    costs incurred responding to the subpoena pursuant to Rule 45(d).

3    **REQUEST FOR PRODUCTION NO. 25:**

4          All DOCUMENTS RELATING TO or constituting YOUR website postings, public

5    comments, or media interviews concerning any DEFENDANTS.

6    **RESPONSE TO REQUEST FOR PRODUCTION NO. 25:**

7          Orion objects to this request on the grounds that Celestron and its counsel have failed to

8    comply with their duty, imposed by Rule 45(d)(1), "to take reasonable steps to avoid imposing

9    undue burden or expense on a person subject to [a] subpoena."

10         Here, Celestron has requested all of Orion's documents relating to any public posting or

11   comment regarding any defendant, without any limitation as to time. Celestron's demand purports

12   to include data that is not even presently stored in a reasonably accessible format; rather, Celestron

13   demands that Orion use "detection devices" to "translate" such data "into reasonably useable

14   form." (Attach. 2:6-8). Such material is not discoverable from *parties* under Rule 26(b)(2)(B), let

15   alone from *non-parties* like Orion.

16         Once again, the scope and invasiveness of Celestron's request exceeds any reasonable

17   proportionality given Orion's status as a non-party. The collection and review of literally all of

18   Orion's communications, documents, and data will easily run into the hundreds of thousands of

19   dollars, if not more. Celestron's attempt to impose the distraction and expense of such a fishing

20   expedition on its competitor Orion is improper. The request is also duplicative, given that Orion

21   has already indicated that it would produce documents actually produced by the parties and non-

22   parties to the *Orion* Action (after Celestron agrees in writing and advances Orion's significant costs

23   to do so).

24         Orion is not a defendant in this case—Celestron and its co-conspirators are.  Rule 45(d)(i)

25   and its companion Rule 45(d)(2)(B)(ii) exist to protect non-parties from this kind of abusive third-

26   party discovery and the significant costs it imposes. Accordingly, Orion will not search for or

27

28

1   produce documents responsive to the request, and expressly reserves the right to seeks its fees and

2   costs incurred responding to the subpoena pursuant to Rule 45(d).

3

4    Dated:  December 18, 2020                    CLARK HILL LLP

5

6                                                 By: _____
                                                       Timothy M. Flaherty
7                                                 Attorneys for Non-Party
                                                  Optronic Technologies, Inc.
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

***In Re: Spectrum Scientifics LLC, et al. vs. Celestron Acquisition, LLC, et al.***
**U.S. District Court Northern Division Case No. 5:20-cv-03642-EJD**

## PROOF OF SERVICE

I am a citizen of the United States and resident of the State of California. I am employed in San Francisco, State of California, in the office of a member of the bar of this Court, at whose direction the service was made. I am over the age of eighteen years and not a party to the within action.

On December 18, 2020, I served the following documents in the manner described below:

**NON-PARTY OPTRONIC TECHNOLOGIES, INC.'S OBJECTION**
**AND RESPONSE TO DEFENDANT CELESTRON ACQUISITION,**
**LLC'S SUBPOENA**

☑ (BY U.S. MAIL): I am personally and readily familiar with the business practice of Clark Hill LLP for collection and processing of correspondence for mailing with the United States Parcel Service, and I caused such envelope(s) with postage thereon fully prepaid to be placed in the United States Postal Service at San Francisco, California.

On the following part(ies) in this action:

Christopher Frost                                           ***Attorneys for Defendant***
EISNER, LLP                                                **CELESTRON ACQUISITION, LLC**
9601 Wilshire Blvd., 7th Floor
Beverly Hills, CA 90210
Tel: (310) 855-3200
Fax: (310) 855.3201

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on December 18, 2020, at San Francisco, California.

_Teresa L. Steen_
_____
TERESA L. STEEN