[Counsel Listed on Signature Page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

**IN RE TELESCOPES ANTITRUST LITIGATION**

**THIS DOCUMENT RELATES TO:**

**All Actions**

**Case No. 5:20-cv-03639-EJD**
**Case No. 5:20-cv-03642-EJD**

**CORRECTED STIPULATION AND ORDER REGARDING THE PRODUCTION OF ESI AND HARD COPY DOCUMENTS**

This Production Stipulation and Order Regarding Production of Electronically Stored Information and Hard Copy Documents ("Production Stipulation and Order") shall govern the parties in the above-captioned case and all actions that are later coordinated or consolidated with that case (collectively, the "Litigation").

## I. GENERAL PROVISIONS

**A.** This Production Stipulation and Order will only govern the production of electronically stored information ("ESI") and certain hard copy documents (collectively, "Document" or "Documents"). This Production Stipulation and Order shall not apply to, and creates no obligation upon any party to reprocess or reproduce, any Documents that were processed and produced in connection with this or any other matter prior to the Court's entry of this Order.

Any party that wishes to produce Documents in these cases that were already collected and processed, but not produced, in connection with *Optronic Technologies, Inc. v. Ningbo Sunny Electronic Co., Ltd., et al.*, No. 5:16-cv-06370-EJD-VKD (N.D. Cal.) in a form that is not consistent with the provisions of this Order and would require a party to re-collect additional data from the originating source in order to comply with the form of production, shall, prior to any production:

i. Identify the types of load files, if any, associated with the previously processed and produced documents, all differences between the production requirements in Sections I.C.iii. and I.D., all differences between the production delivery requirements set forth in Appendix 1 of this Production Stipulation and Order and the protocol under which the Documents were previously processed and produced, and all differences between the ESI Metadata and Coding Fields set forth in Appendix 2 of this Production Stipulation and Order and the protocol under which the Documents were previously processed and produced.

The Receiving Party shall then have ten (10) business days from the time that the information described in paragraph (i) above has been provided to advise the Producing Party of any objection to the production of the Documents in the form in which they were previously collected and processed, or of any request to meet and confer concerning the form in which the

Documents were previously collected and processed. In the absence of any such objection or request, the producing party may produce the Documents in the form in which they were previously collected and processed. In the event that any objection and/or meet and confer is initiated, the parties shall either resolve their concerns or seek resolution from the Magistrate. To the extent the procedures set forth in this Paragraph would affect any discovery deadline in this matter, the parties shall stipulate to extend that deadline as necessary.

This exception for previously collected and processed Documents to the protocol set forth herein applies only to the production format, not the scope of responses to discovery requests.

**B. TIFF Image Files**: The parties agree that all Documents, with the exception of the hard copy documents and previously produced ESI discussed in subsection A, above, and documents produced in accordance with Section III.C., below, will be produced as single-page black and white Group IV TIFF image files of at least 300 dpi resolution. Page size shall be 8.5 x 11 inches unless in the reasonable judgment of the producing party, a particular item requires a different page size. Each image file will use the Bates number of the page as its unique file name. Original document orientation as displayed in the native file should be maintained in the TIFF image (i.e., portrait to portrait and landscape to landscape).

**C. Text Files**: Each Document produced under this Production Stipulation and Order shall be accompanied by a single, multipage text file containing all of the text for that item, not one text file per page. Each text file shall be named to use the Bates number of the first page of the corresponding production item.

i. OCR: The parties will provide searchable OCR text of any paper documents, including spreadsheets maintained in paper form, that were scanned or otherwise converted into electronic form prior to the time the documents are first produced in this litigation. The parties acknowledge, however, that not all documents lend themselves to the generation of accurate OCR.

ii. ESI: The text of each ESI item shall be extracted directly from the ESI native file. For contacts and calendars collected and/or processed after the execution date of this

Production Stipulation and Order, user-modifiable fields should be extracted and produced as text.

iii. Redacted Documents: The parties will provide searchable OCR text for any redacted TIFF files.

iv. Foreign Language Text: The parties will use industry standards, software, and techniques, or their reasonable equivalents, to attempt to ensure that all technologies and processes used to collect, process and produce the text of any Document – including all TIFF conversion and OCR processes, and the extraction of text from native files – preserves all foreign language text, punctuation and other characteristics as they exist in the source native file.

**D. Bates Numbering:**

i. Each TIFF image produced under this Production Stipulation and Order should be assigned a Bates number that must always: (1) be unique across the entire document production; (2) maintain a constant length of nine numeric digits (including 0-padding) across the entire production; (3) contain only alphanumeric characters, no special characters or embedded spaces; and (4) be sequential within a given document. This requirement shall not apply to documents processed for production prior to the entry of this Production Stipulation and Order.

ii. The producing party will identify the Bates number range of each production in a cover letter or production log accompanying the production. If a producing party skips a Bates number or set of Bates numbers in a production, the producing party will identify and note the gap in the cover letter or production log accompanying the production.

iii. The producing party will brand all TIFF images in the lower right-hand corner with its corresponding Bates number, using a consistent font type and size. The producing party will take reasonable care to ensure that the Bates number does not obscure any part of the underlying image. If the placement in the lower right-hand corner will result in obscuring the underlying image, the Bates number should be placed as near to that position as possible while preserving the underlying image.

**E. Parent-Child Relationships**: Parent-child relationships for all embedded ESI documents (e.g., the association between an attachment and its parent e-mail, or a spreadsheet

embedded within a word processing document), must be preserved by assigning sequential Bates numbers to all items within the parent-child group, and identifying those Bates numbers in the relevant ESI metadata and coding fields specified in Appendix 2. For example, if a party is producing an e-mail with embedded attachments, the attachments must be processed and assigned Bates numbers in sequential order, following consecutively behind the parent e-mail.

**F.** **Color**: If an original ESI document contains color text, markings or graphics, and the receiving party believes it is necessary to view such document in its original color to understand its full meaning or content, then the receiving party may request that the ESI document be produced in color format. Such request shall not be refused by the producing party absent good cause. The production of such documents and/or ESI in color shall be made in single-page JPEG format or, if the original color image is not in JPEG format, the producing party may produce either in native or in TIFF format. All requirements for productions stated in this Production Stipulation and Order regarding productions in TIFF black and white format apply to any productions of documents and/or ESI made in color JPEG or TIFF format.

**G.** **Confidentiality Designations**: If a particular paper document or ESI item has a confidentiality designation, the designation shall be stamped on the face of all TIFF images pertaining to such item/document, in the lower left-hand corner of the document as specified in section I.D.iii, or as close thereto as possible while preserving the underlying image. No party may attach to any filing or any correspondence addressed to the Court, Magistrate, or any adverse or third party, or submit as an exhibit at a deposition or any other judicial proceeding, a copy (whether electronic or otherwise) of any native format document produced by any party without ensuring that the corresponding Bates number and confidentiality legend, as designated by the producing party, appears on the document.

**H.** **Load Files**: All productions will be provided with data load files and image load 9 file as detailed in Appendix 1. The load file should be in standard, delimited format (e.g., Concordance, IPRO, Summation DII, or the like). The image load file must reference each TIFF file in the corresponding production, and the total number of TIFF files referenced in the load file must match the total number of image files in the production. The total number of documents

referenced in a production's data load file should match the total number of designated document breaks in the corresponding image load file for that production. Each deliverable volume should limit directory contents to approximately 5000 files per folder.

## II. PRODUCTION OF CERTAIN HARD COPY DOCUMENTS

**A. Coding Fields**: All coding information defined in Appendix 2 as applicable to "All Items" shall be produced in the data load file accompanying production of paper documents that were scanned or otherwise converted into electronic form prior to the time the documents are first produced in this litigation. Nothing in this Production Stipulation and Order shall be deemed to require manual coding of documents, or to otherwise require any producing party to scan or otherwise convert hard copy documents into ESI for purposes of production.

**B. Unitization of Paper Documents**: Paper documents should be logically unitized for production. Therefore, when scanning or producing paper documents, distinct documents should not be merged into a single file or database record, and distinct documents shall not be split into multiple files or database records. The parties will make their reasonable best efforts to unitize documents correctly. This provision does not obligate any party to produce documents in a manner other than which those documents were kept in the ordinary course of business.

**C. File/Binder Structures (Parent-Child Unitization)**: Where multiple documents were organized into groups, such as folders, clipped bundles and binders, each distinct document shall be unitized as described in Section II.B. above. With respect to documents processed after the entry of this Production Stipulation and Order, the parties shall make reasonable efforts to unitize parent-child groups as specified in Section I.E.

**D. Identification**: Where a document or a document group such as folder, clipped bundle, or binder has an identification spine, "post-it note," or any other label, the information on the label shall be scanned and produced as the first page of the document or grouping.

**E. Custodian Identification**: The parties will utilize reasonable best efforts to ensure that paper records for a particular custodian, which are included in a single production, are produced in consecutive Bates stamp order.

## III.   PRODUCTION OF ELECTRONICALLY STORED INFORMATION

**A.     System Files**:  ESI productions shall be de-NISTed using the industry standard list of such files maintained in the National Software Reference Library by the National Institute of Standards & Technology.  The parties recognize that to reduce the document review population, additional file types will need to be excluded.  Upon request of a receiving party, a producing party shall identify any additional standard, readable, and reviewable file types which have been excluded from its document review population for any production made prior to the date of this stipulation.

i.      If a party excludes from review a standard, readable, and reviewable file type not within the industry standard, that party must disclose such an exclusion to the other parties.  Any party to whom such disclosure is made will have five business days to object.  Any objection not made in this period will be waived.  If objections are made, the relevant parties will meet and confer to resolve them.

**B.     Metadata Fields and Processing**:

i.      ESI items processed after the execution date of this Production Stipulation and Order shall be processed in a manner that preserves the source native file and all metadata without modification, including their existing time, date and time-zone metadata consistent with the requirements provided in this Production Stipulation and Order.

ii.     **Auto date/time stamps**:  ESI items processed after the execution date of this Production Stipulation and Order shall be processed so as to preserve and display the date/time shown in the document as it was last saved or modified by the custodian or end user, not the date of collection or processing.  If this is not technically possible, the producing party shall use its reasonable best efforts to display the field code in the document.

iii.    **Hidden text**:  ESI items processed after the execution date of this Production Stipulation and Order shall be processed, to the extent practicable, in a manner that preserves hidden columns or rows, hidden text or worksheets, speaker notes, tracked changes and comments.

iv.     ESI items shall be produced with all of the metadata and coding fields set forth in Appendix 2.

v.     This Production Stipulation and Order does not create any obligation to create or manually code fields that are not automatically generated by the processing of the ESI, or that do not exist as part of the original metadata of the document; provided, however, that the producing party must populate the (a) BegBates, (b) EndBates, (c) BegAttach, (d) EndAttach, (e) Custodian, (f) SourceParty, (g) NativeFileLink fields, if applicable and necessary, and (h) TextPath.  These fields should be populated for all produced ESI, as well as paper Documents converted to electronic form subsequent to the Court's entry of this Production Stipulation and Order, regardless of whether the fields can be populated pursuant to an automated process.  However, a producing party shall have no obligation to provide TextPath information in response to a receiving party's specific request for documents.

vi.     No party shall modify the date or time as contained in any original ESI.

**C.     Production of Native Items**:

i.     The parties agree in sections I.B. and III.B.iv that ESI shall be produced as TIFF images with an accompanying data load file, which will contain the ESI metadata listed in Appendix 2 hereto.  The exception to this rule shall be presentation-application files (e.g., MS PowerPoint), spreadsheet-application files (e.g., MS Excel), personal databases (e.g., MS Access), and multimedia audio/visual files such as voice and video recordings (e.g., .wav, .mpeg, and .avi), for which all ESI items shall be produced in native format.  In the case of personal database (e.g. MS Access) files containing confidential or privileged information, the parties shall meet and confer to determine the appropriate form of production.  In addition to producing the above file types in native format, the producing party shall produce a single-page TIFF slipsheet indicating that a native item was produced.  The corresponding load file shall include NativeFileLink information for each native file that is produced.  Further, the parties agree to meet and confer prior to producing native file types other than MS PowerPoint, MS Excel, and multimedia audio/visual file types such as .wav, .mpeg and .avi.

ii. The parties agree to meet and confer to the extent that there is data in database-application files, such as SQL and SAP, to determine the best reasonable form of production of usable data.

iii. Through the pendency of this Litigation, the producing party shall exercise reasonable, good faith efforts to maintain all preserved and collected native files in a manner that does not materially alter or modify the file or the metadata.

**D. Requests for Other Native Files**: A receiving party may request that the producing party produce the native file corresponding to a static image, and the producing party shall respond reasonably and in good faith to any such request. The request for production of any specific native file(s) shall include Bates numbers of the TIFF documents to identify the corresponding native file. Any subsequent production of the native file will include the Bates number of the first page of the Bates range that corresponds to the previously produced TIFF image which should be applied as a prefix to the file name.

**E. Redaction**:

i. The parties agree that where ESI items need to be redacted, they shall be produced solely in TIFF with each redaction clearly indicated. Any unaffected data fields specified in section III.B.v, *supra*, shall be provided.

ii. If the items redacted and partially withheld from production are PowerPoint- type presentation decks or Excel-type spreadsheets as addressed in section III.D., *supra*, and the native items are also withheld, the entire ESI item must be produced in TIFF format, including all unprivileged pages, hidden fields and other information that does not print when opened as last saved by the custodian or end-user. For PowerPoint-type presentation decks, this shall include, but is not limited to, any speaker notes. For Excel-type spreadsheets, this shall include, but is not limited to, hidden rows and columns, all cell values, annotations and notes. The producing party shall also make reasonable efforts to ensure that any spreadsheets produced only as TIFF images are formatted so as to be legible. For example, column widths should be formatted so that the numbers in the column will display rather than "##########."

iii.     If the items redacted and partially withheld from production are audio/visual files, the producing party shall provide the unredacted portions of the content.  If the content is a voice recording, the parties shall meet and confer to discuss the appropriate manner for the producing party to produce the unredacted portion of the content.

**F.     Password-Protected or Encrypted Files**:  With respect to any ESI items that are password-protected or encrypted, the Producing Party will take reasonable steps based on industry standards to break the protection so that the document can be reviewed and/or produced. In the event that encrypted or password-protected documents, which are reasonably likely to be responsive to Plaintiffs' document requests, remain for a particular custodian after such reasonable efforts have been made, the Producing Party shall let the Receiving Party know the total number of such documents and each individual Producing Party shall meet and confer with the Receiving Party.

**G.     De-duplication**:

i.     The producing party need only produce a single copy of a particular ESI item, and may de-duplicate ESI vertically by custodian, or horizontally (globally) across the population of records.

ii.     Duplicates shall be identified by using industry standard MD5 or SHA-1 algorithms only to create and compare hash values for exact matches only.  Any other methodology for identification of duplicates must be discussed with the receiving party and approved in writing before implementation.  The resulting hash value for each item shall be reflected in the HashValue field specified in Appendix 2.

iii.     If a producing party elects to de-duplicate horizontally, all custodians who were in possession of a de-duplicated document must be identified in the CustodianOther metadata field specified in Appendix 2.  Additionally, all BCC recipients whose names would have been included in the BCC metadata field but are excluded because of horizontal/global de-duplication, must be identified in the BCC metadata field specified in Appendix 2.  In the event of rolling productions of documents or ESI items, the producing party will supplement the load files with updated CustodianOther and BCC information as needed.

## IV. SEARCH AND REVIEW

**A. Meet and Confer**:

i. The Parties will meet and confer to discuss the use of search terms, filters and date ranges or the use of advanced search and retrieval technologies. A Producing Party shall specify the technique or techniques it will use to search for material it reasonably anticipates will be responsive to Requests for Production. If the Requesting Party objects to the particular technique or techniques, the parties will timely meet and confer regarding the matter and submit any unresolved disputes to the Court for resolution.

ii. A Party who intends to use search terms will describe a Search Protocol that will include: (a) the criteria to be used to identify the universe of documents to which search terms will be applied (e.g., date range), and (b) proposed search terms to be applied to that universe of documents, subject to revision based on, for example, meet and confer of the Parties and the number of hits returned by each term. A Requesting Party may also suggest search terms to be applied. Any Search Protocol will include a requirement for the Producing Party to provide hit reports for proposed search terms prior to utilizing the search terms to narrow the universe of documents to be searched. Any Search Protocol shall include a requirement to review one random sample of documents that does not hit on the search terms that are agreed upon by the Parties (the "Null Set"). The Null Set shall be generated after all document processing is substantially complete. The total number of documents within the Null Set shall be determined by a statistician through the use of stratified sampling. Upon request by the Receiving Party, the Disclosing Party shall provide information from the statistician regarding the methodology for drawing the sample. Regardless of the number of documents in the Null Set, the documents should be derived from each custodian and should include documents throughout the entire date range. Producing Party should then review the Null Set and produce any non-privileged responsive documents therefrom. If any non-privileged responsive documents are found in the Null Set, the parties shall meet and confer as to the number and reason with the potential for modification of the search terms previously agreed upon. The Parties agree to meet and confer

regarding the Search Protocol and to raise any disputes regarding the Search Protocol for resolution by the Court.

iii. A Producing Party electing to use search terms shall not use them in combination with technology assisted review ("TAR") on the same set of documents, whether to cull before or after application of TAR, and vice versa. If a Producing Party seeks to use search terms on one set of documents and TAR on a different set of documents, the Producing Party will identify each set of documents and state the rationale for the difference in method applied. The Producing Party does not, in providing such a statement, waive any applicable privilege or work product protections. If the Requesting Party objects to such an approach, the parties will timely meet and confer regarding the matter and submit any unresolved disputes to the Court for resolution.

iv. A Party who intends to use TAR will describe a TAR Protocol that will include: (a) the TAR system to be used; (b) the criteria to be used to identify the universe of documents to which TAR is to be applied (the "TAR Universe"); (c) its methodology for training the TAR model and identifying responsive documents; (d) the methodology for validation testing to be used; (e) the subject-matter expert who will oversee the implementation of the TAR Protocol; and (f) the process by which documents excluded as not conducive to categorization (e.g. multimedia files, primarily numerical spreadsheets, database files) will be reviewed for production.

**B. Culling:** If a party is using technology, criteria or methods to cull documents from manual review, the producing party agrees to disclose details in advance to the receiving party along with the sources across which it plans to apply the culling techniques. The parties must also provide written information regarding the use of any other advanced culling techniques they employ in connection with their culling of the documents if they are using such technology to exclude documents from manual review.

## V. MISCELLANEOUS PROVISIONS

**A. Objections Preserved**: Nothing in this Production Stipulation and Order shall be interpreted to require disclosure of either irrelevant information or relevant information protected

by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. Except as provided expressly herein, the parties do not waive any objections as to the production, discoverability, authenticity, admissibility, or confidentiality of documents and ESI.

**B. Modifications**: Recognizing that each producing party may experience production issues due to, among other things, individual and/or proprietary electronic mail or other data systems that may not be fully compatible with the technical specifications set forth herein, any practice or procedure set forth herein may be varied by agreement of the parties, confirmed in writing, to accommodate such issues and/or where such variance is deemed appropriate to facilitate the timely and economical production of documents or ESI. No party shall unreasonably object to any such variance and any dispute as to a variance shall be resolved through a meet and confer process and, if agreement cannot be reached, by presentation to the Court for resolution.

**C. Cost Allocation**: The parties agree to bear their own costs relating to the production, storage, and maintenance of ESI as provided in this stipulation. The parties expressly reserve the rights to seek costs under the Federal Rules of Civil Procedure in connection with disputes unaddressed by this stipulation and with respect to proposed variances therefrom.

**D. Hard Copy Document Storage**: During the pendency of this litigation, the parties shall make reasonable efforts to preserve the originals of all hard copy documents as to which there may be issues of legibility of all or any part of the production copy. Each party reserves the right to request to inspect such original documents of the opposing party or parties, which request shall not be unreasonably denied. If such request to inspect is denied, the party may seek relief from the Court.

**IT IS SO ORDERED.**

Dated: February ___, 2021

________________________________________
EDWARD J. DAVILA
United States District Judge

- 13 -

CORRECTED STIPULATION AND ORDER REGARDING THE PRODUCTION OF ESI AND HARD COPY DOCUMENTS
CASE NOS. 5:20-CV-03639-EJD; 5:20-CV-03642-EJD

**APPENDIX 1**
**PRODUCTION DELIVERY REQUIREMENTS**

## I. GENERAL PRODUCTION PROVISIONS

**A.** The parties have agreed that ESI should be produced as TIFF images and in Native format where applicable with accompanying data and image load files.

**B.** **TIFF Image Files**: The parties agree that all Documents, with the exception of Documents produced in Native Format, will be produced as single-page black and white Group IV TIFF image files of at least 300 dpi resolution with 1 bit depth. Page size shall be 8.5 x 11 inches, unless in the reasonable judgment of the producing party, a particular item requires a different page size. Each image file will use the Bates number of the page as its unique file name. Original document orientation as displayed in the native file should be maintained in the TIFF image (i.e., portrait to portrait and landscape to landscape).

**C.** **Text Files**: Each Document produced under this Order shall be accompanied by a document level text file containing all of the text for that document, not one text file per page. Each text file shall be named to use the Bates number of the first page of the corresponding document. The text files shall be generated by extracted text from native files and OCR text files from hard copy scanned documents as applicable. The .DAT load file shall include a link to the corresponding text file.

**D.** **OCR Text Files**: The parties will provide searchable OCR text of any paper or imaged Documents, unless the party determines that the utility of the OCR is outweighed by the expense. In that case, the producing party will produce the documents as they are kept in the ordinary course of business.

**E.** **Extracted Text Files from ESI**: The parties shall extract the text of each ESI item directly from the ESI native file, where extracted text is reasonably available. For contacts and calendars collected and/or processed after the execution date of this Order, fields should be extracted and produced as text.

**F.** **OCR Text for Redacted Documents**: The parties will provide searchable OCR text for any redacted files.

**G.     Bates Numbering**:

i.      Each TIFF image produced under this Order should be assigned a Bates number that must: (1) be unique across the entire document production; (2) maintain a constant length of nine numeric digits (including 0-padding) across the entire production; (3) contain only alphanumeric characters, no special characters or embedded spaces; and (4) be sequential within a given Document.  The producing party will identify the Bates number range of each production in a cover letter or production log accompanying the production.  If a producing party skips a Bates number or set of Bates numbers in a production, the producing party will identify and note the gap in the cover letter or production log accompanying the production.

ii.     The producing party will brand all TIFF images in the lower right-hand corner with its corresponding Bates number, using a consistent font type and size.  If the receiving party believes that a Bates number obscures the content of a Document, then the receiving party may request that the Document be produced with the Bates number in a different position.

**H.     Re-Production of Prior or Other Litigation Documents**.  Where a requesting party seeks re-production of a set of documents produced in a prior litigation or any other proceeding, or where a prior production of documents or ESI by a party in a prior litigation or any other proceeding is the only reasonably accessible source of those documents or ESI to be produced by a party in this litigation, the producing party may re-produce such documents in the manner in which they were produced in the prior case, including all objective coding or metadata fields required by this protocol to the extent reasonably available to the producing party as part of the productions set. For any such re-production in accordance with this Paragraph, the producing party is not obligated to re-format the prior production in accordance with the production specifications in ESI stipulation, but must provide Bates numbering and confidentiality designations specific to this litigation.

**I.      Parent-Child Relationships**:  Parent-child relationships for all embedded ESI documents (e.g., the association between an attachment and its parent email, or a spreadsheet embedded within a word processing document), must be preserved by assigning sequential Bates

numbers to all items within the parent-child group, and identifying those Bates numbers in the relevant ESI metadata and coding fields specified in Appendix 2. For example, if a party is producing an email with embedded attachments, the attachments must be processed and assigned Bates numbers in sequential order, following consecutively behind the parent email. Not all attachments may be produced – for example, privileged or nonresponsive attachments may be removed, but all documents within responsive families will be Bates numbered prior to production.

**J. Color Documents**: If an original ESI Document contains color text, markings or graphics, and the receiving party believes it is necessary to view such Document in its original color to understand its full meaning or content, then the receiving party may request that the ESI Document be produced in color format. The producing party shall then reproduce such Document(s) and/or ESI in color JPEG format, or in native format. This section also applies to documents that are produced as TIFF images.

**K. Confidentiality Designations**: If a particular Document has a confidentiality designation, the designation shall be stamped on the face of all TIFF images pertaining to such Document, in the lower left-hand corner of the Document, or as close thereto as possible while preserving the underlying image. If the receiving party believes that a confidentiality designation obscures the content of a Document, then the receiving party may request that the Document be produced with the confidentiality designation in a different position. No party may attach to any filing or any correspondence addressed to the Court (including any Magistrate Judge), or any adverse or third party, or submit as an exhibit at a deposition or any other judicial proceeding, a copy (whether electronic or otherwise) of any native format Document produced by any party without ensuring that the corresponding Bates number and confidentiality legend, as designated by the producing party, appears on the Document. For each document that is marked confidential, a Confidentiality field will be populated with the word "Confidential" in the .dat file. Also, any documents marked Confidential must be handled in accordance with the Protective Order entered in this case.

## II. PRODUCTION OF HARD COPY DOCUMENTS

**A.** All hard copy Documents that are scanned as described in Section IV.B above will be produced in electronic form. Where necessary and practicable, hard copy Documents in color will be scanned in color to ensure full information is communicated in the scanned copy. Scanned color documents will be provided in JPG file format.

**B.** **Unitization of Paper Documents**: To the extent practicable, hard copy Documents shall be unitized using logical document determinations or "LDD."

**C.** **Identification**: Where a Document or group of Documents has an identification spine, "post-it note," or any other label, the information on the label shall be scanned and produced to the extent practicable.

**D.** **Custodian Identification**: The parties will utilize reasonable best efforts to ensure that paper records for a particular custodian or department level custodian, which are included in a single production, are produced in consecutive Bates stamp order.

**E.** **Metadata:** The metadata associated with each hard copy Document need only identify the Bates number, the custodian associated with that hard copy Document, and any Confidential Designation or Redaction applied to that Document.

## III. PRODUCTION OF "ESI"

**A.** **De-NISTING and System Files**: ESI productions shall be de-NISTed using the industry standard list of such files maintained in the National Software Reference Library by the National Institute of Standards & Technology. De-NISTED files need not be produced. The parties may mutually agree upon any additional file types that can be excluded from review and production. A producing party shall identify any additional standard, readable, and reviewable file types which have been excluded from its document review population for any production made following the date of this Order, and will utilize reasonable best efforts to do the same with respect to any productions made prior to the date of this Order.

If a party excludes from review a standard, readable, and reviewable file type not within the industry standard, that party must disclose such an exclusion to the other parties.

**B.     Native Files**:  Certain files types, such as presentation-application files (e.g., MS PowerPoint), spreadsheet-application files (e.g., MS Excel, .csv), and multimedia audio/visual files such as voice and video recordings (e.g., .wav, .mpeg, and .avi), shall be produced in native format.  For files produced in native format, the producing party shall provide a single-page TIFF slipsheet with the applicable Bates stamp indicating that a native item was produced.  The corresponding load (.DAT) file shall include a NativeFilelink which provides the relative path linking information for each native file that is produced.   In addition, the confidentiality designation will be indicated in the name of the native file where reasonably feasible.

**C.     Metadata Fields and Processing**:

i.     ESI shall be processed in a manner that preserves the source native file and relevant metadata without modification, including their existing time, date, and time-zone metadata consistent with the requirements provided in this Order.   The producing party will provide information on the time zone the data was processed in to the receiving party.

ii.     **Hidden text**:  ESI shall be processed, to the extent practicable, in a manner that preserves hidden columns or rows, hidden text, notes, or worksheets, speaker notes, tracked changes, redlines and comments. Upon request, a producing party will produce files with any such information in native format.

iii.     **Compressed Files and Encrypted Files**:  Compressed file types (i.e., .CAB, .GZ, .TAR .Z, .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual files. The Producing Party will take reasonable steps, prior to production, to unencrypt any discoverable electronically stored information that exists in encrypted format (e.g., because password-protected) and that can be reasonably unencrypted.

iv.     **Microsoft "Auto" Feature and Macros**:  For Microsoft Excel (.xls), Microsoft Word (.doc), and Microsoft PowerPoint (.ppt) documents that contain "auto" features, (e.g., where documents have an automatically updated date and time in the document), the metadata associated with such files shall accurately reflect the automatically populated fields (*i.e.*,

the metadata date or other automatically populated field will reflect the date and/or entry for how the document was used or held in the ordinary course of business).

v. **Metadata and Coded Fields**: ESI items shall be produced with all of the metadata and coding fields set forth in Appendix 2.

**D.** This Order does not create any obligation to create or manually code fields that are not automatically generated by the processing of the ESI, or that do not exist as part of the original metadata of the Document; provided, however, that the producing party must populate, where possible, the (a) BegBates, (b) EndBates, (c) BegAttach, (d) EndAttach, (e) Custodian, (f) NativeFileLink fields, if applicable, (g) TextPath, (h) Redaction status, and (i) Confidentiality designation. These fields should be populated for all produced ESI, as well as paper Documents converted to electronic form, regardless of whether the fields can be populated pursuant to an automated process.

## IV. DATABASES, STRUCTURED, AGGREGATED OR APPLICATION DATA

The Parties will produce documents collected from databases or other structured databases in a reasonably useable format. If the data cannot be produced in a reasonably useable format, the parties will meet and confer to address the production format. Prior to or during any such meet and confer, the producing party will provide sufficient information to enable the receiving party to evaluate the best method and format of production, If the parties cannot reach agreement, the matter will be decided by the Court or its designee.

## V. RESPONSIVENESS, PRIVILEGE & REDACTIONS.

**A.** The parties agree that if an attachment to an e-mail is wholly nonresponsive to the discovery requests, it need not be produced, but must be Bates numbered prior to removal. Non-privileged cover e-mails to responsive documents, however will be deemed responsive and produced.

**B.** To the extent that a Defendant reasonably determines that e-mail or related attachments that are responsive to Plaintiff's document request are not discoverable because they are subject to a Privilege, Defendant shall produce a log treating each e-mail and attachment withheld separately that sets forth: (a) the nature of the privilege(s) or other protection claimed;

(b) the date of the document; (c) the name of the author(s)/addresser, addressee(s) and all recipients of the document (with respect to e-mail threads, the author/addresser, addressee(s) and recipients of only the top e-mail in the chain will be set forth in the author/addressee, addressee(s) and recipient fields of the log) and whether any person identified is an attorney or an employee of any Defendants' legal department; (d) a description of the general subject matter contained in the document and the type of document (e.g., letter, memorandum, handwritten notes) sufficient to allow the receiving party to assess the claimed Privilege and/or to allow the Court to rule upon the applicability of the claimed protection; and (e) the custodian and/or location of the document. For redacted documents with multiple redactions, one log entry can be used to describe the multiple redactions, so long as a single entry is sufficient to adequately identify the basis for all redactions, as described in this paragraph. Names of counsel shall be designated with an asterisk.

**C. Redactions**: The parties agree that where ESI items need to be redacted, they shall be produced in TIFF format with each redaction clearly indicated or where TIFF format is not practicable, in redacted native format, as noted below. Any unaffected data fields shall be provided. The redaction of any material for privilege or other reason shall be governed by the applicable rules and case law regarding privilege and the provisions contained in the Protective Order entered in this action. Documents that are to be produced in native format, but that require redactions may be produced as TIFF images with the relevant portions redacted, or if a TIFF image production is not practicable (e.g., the file is a video or very large spreadsheet), the producing party may produce a copy of the native file with the relevant portions replaced with "REDACTED" or a similar mark. If modification of a native file is required for redaction purposes, metadata information associated with that file should remain unchanged, unless it also requires redaction. For each document that is redacted, a Redaction field will be populated with the word "REDACTED" in the .DAT file. Also, the producing party will keep a pristine original copy of the native document.

**D. Printing Specifications for Excel and PowerPoint files**.

i. For Excel and PowerPoint type files that are printed to TIFF for redaction and redacted, the following printing options shall be enabled:

| Excel Print to TIFF Options |
| --- |
| • Unhide columns and rows<br>• Unhide worksheets<br>• Autofit columns and rows, settings to be over by columns first and, then down by rows<br>• Wrap text<br>• Print gridlines<br>• Do not apply Autofilter<br>• Display headings<br>• Display comments<br>• Header and Footer filename field handling: Show field code |
| PowerPoint Print to TIFF Options<br>• Print notes pages<br>• Print hidden slides<br>• Print comments |

ii. The producing party shall also make reasonable efforts to ensure that any spreadsheets produced only as TIFF images because of redactions are formatted so as to be legible. For redacted items which were originally ESI, all metadata fields noted in this protocol that do not contain privileged or protected information will be provided and will include all non-redacted data. A document's status as redacted does not relieve the producing party from providing all of the metadata required herein.

**E. De-duplication and Document Families**.

i. ESI may be de-duplicated globally at the parent level using MD5 hash or SHA-1 hash. For emails, de-duplication may be performed using a hash calculated using combination of metadata fields. Such hash shall, at a minimum, account for all sender and recipient metadata including BCC recipients, the email subject, date sent, and attachment names. The parties are permitted to produce the longest unique email chain and do not need to separately produce the lesser-included emails unless those lesser-included emails have bcc recipients or unique attachments not included in the longest chain. If a lesser-included email has a bcc recipient or unique attachment, then the lesser-included email must be separately produced with the attachments. If a party produces only inclusive email, the parties agree to redact any

privileged content or message component and produce in full the rest of the conversation in the inclusives. "Near duplicate" documents shall be produced rather than removed. The producing party need only produce a single copy of a particular ESI. The hash value for each item shall be reflected in the .DAT load file in the HashValue field specified in Appendix 2. If a producing party elects to de-duplicate globally, the producing party shall identify custodians who were in possession of a de-duplicated Document in the AllCustodian metadata field specified in Appendix 2. This means that the field "AllCustodian" will be populated showing all custodians who had a copy of the same document which is not being produced because of de-duplication.

ii. De-duplication shall not break apart families and shall be performed at a family level. A document and all other documents in its attachment range, emails with attachments and files with extracted embedded OLE documents all constitute family groups. If any member of a family group is produced, all members of that group must be also be produced or else logged and no such member shall be withheld from production as a duplicate. The producing party agrees that the presence of a custodian's name contained in the "AllCustodian" field in the metadata for a particular document is evidence that the custodian possessed that document in his/her custodial file."

**F. Load Files**:

The data load file should be in standard Concordance format (.DAT). The .DAT file shall contain a relative path to the corresponding Native file.

Concordance Data Load Files:

- The data load file should use standard Concordance delimiters:
- Comma - ¶ (ASCII 20);
- Quote - þ (ASCII 254);
- Newline - ® (ASCII174).
- The first line of the .DAT file should contain the field names arranged in the same order as the data is arranged in subsequent lines.
- All date fields should be produced in mm/dd/yyyy format, if possible. Date fields may be combined date/time fields
- All produced attachments should sequentially follow the parent Document/email.

**G. Sample Concordance .DAT Load File**:

þBegBatesþ¶þBegattatchþ¶þCustodianþ¶þNative Pathþ¶þExtracted Textþ
þABC000001þ¶þABC000001þ¶þSampleþ¶þ\VOL001\NATIVES\001\ABC000001.xlsþ¶þTEXT\001\ABC000001.txtþ þABC000002þ¶þABC000001þ¶þSampleþ¶þNATIVES\001\ABC000002.gifþ¶þTEXT\001\ABC000002.txtþ

The image load file must be in standard Option (.OPT) format and must reference each TIFF file in the corresponding production, and the total number of TIFF files referenced in the load file must match the total number of image files in the production. The total number of Documents referenced in a production's data load file should match the total number of designated Document breaks in the corresponding image load file for that production. In any deliverable volume, documents should be organized in such a way that each folder in the volume contains 1000 files (each TIFF page or native file is a single file) as one file per folder.

- Every image in the delivery volume should be cross-referenced in the image load file.
- The imageID key should be named the same as the Bates number of the page.
- Load files should not span across media (e.g., CDs, DVDs, hard drives, etc.), i.e., a separate volume should be created for each piece of media delivered.

Sample Concordance/Opticon Image (.OPT) Load File:

MSC000001,MSC001, \VOL001\IMAGES\001\MSC000001.TIF,Y,,,2

MSC000002,MSC001, \VOL001\IMAGES\001\MSC000002.TIF,,,,

MSC000004,MSC001, \VOL001\IMAGES\001\MSC000004.TIF,Y,,,2

MSC000005,MSC001, \VOL001\IMAGES\001\MSC000005.TIF,,,,

OCR/Extracted Text Files:

- OCR or Extracted Text files shall be provided in a separate directory containing Document level text files. The .DAT file shall contain a relative path to the corresponding text file. OCR or Extracted text itself should not be included in the .DAT file:

PROD001\TEXT\001\ABC00015.txt

**APPENDIX 2: ESI METADATA AND CODING FIELDS**

The chart below describes the metadata fields to be produced, where reasonably available, in generic, commonly used terms which the producing party is to adapt to the specific types of ESI it is producing, to the extent such metadata fields exist associated with the original electronic Documents and are automatically generated as part of the electronic data discovery process. Any ambiguity about a metadata field should be discussed with the receiving party prior to processing the subject ESI for production.

| Field Name | Field Description |
|---|---|
| BegBates | First Bates number (production number) of an item |
| EndBates | Last Bates number (production number) of an item<br>**The EndBates field should be populated for single-page items. |
| AttachName | File name of the attachment, with any attachments separated by semi-colon. |
| BegAttach/Group ID | First Bates number of family group. |
| EndAttach | Last Bates number of attachment range (*i.e.*, Bates number of the last page of the last attachment) |
| PgCount | Number of pages in the item |
| Custodian | Name of person or source from whose/which files the item is produced |
| CustodianOther | Name of the person(s), in addition to the Custodian, from whose files the item would have been produced if it had not been de- duplicated |
| FileSize | Size (in kilobytes) of the source native file |
| SourceFilePath[1] | The directory structure or path where the original file was stored on the party's source computer system, ending in the filename. Any container name (such as ZIP or PST containers) is included in the path. |
| HashValue | The MD5 or SHA-1 or IntMsgID hash value of the item. |

[1] This field may be excluded if the producing party determines it includes information protected by any applicable privilege or immunity.

| **Field Name** | **Field Description** |
|---|---|
| NativeFileLink | Relative path for documents provided in native format only. **The linked file must be named per the BegBates value. |
| SourceParty | Name of party producing the item |
| RecordType | Indicates item type (*e.g.*, email, edoc, attachment) |
| FileType | (*e.g.*, Outlook, Adobe Acrobat, MS Word, etc.) |
| FileExtension | Indicates file extension of the file e.g., .docx, .pptx |
| DateSent (mm/dd/yyyy) | Date email or calendar item was sent |
| TimeSent (hh:mmAM/PM) | Time email or calendar item was sent (Date and time fields may be combined) |
| DateReceived | Date email or calendar item was received |
| TimeReceived | Time email or calendar item was received (Date and time fields may be combined) |
| To | The names and/or SMTP email addresses of all recipients that were included on the "To" line of the email or calendar item |
| From | The name and/or SMTP email address of the sender of the email or calendar item |
| CC | The names and/or SMTP email addresses of all recipients that were included on the "CC" line of the email or calendar item |
| BCC | The names and/or SMTP email addresses of all recipients that were included on the "BCC" line of the email or calendar item |
| Number of Attachments | Number of attached, embedded or grouped items |
| DateCreated (mm/dd/yyyy) | Date the item was created |
| TimeCreated (hh:mm AM/PM) | Time the item was created (Date and time fields may be combined) |
| ModifiedBy | Person who last modified or saved the item, as populated in the metadata or document properties of the native file |
| LastModDate (mm/dd/yyyy) | Date the item was last modified |

| **Field Name** | **Field Description** |
|---|---|
| LastModTime (hh:mm AM/PM) | Time the item was last modified |
| FileName | The filename of the source native file for an ESI item |
| Title | Any value populated in the Title field of the source file metadata or item properties |
| Subject/E-Mail Subject | Any value populated in the Subject field of the source file metadata or document properties (*e.g.*, subject line of email or calendar item) |
| Author | Creator of the document; any value populated in the Author field of the source file metadata or document properties |
| TextPath | Full relative path to the location of the document-level text file. |
| Redacted | User-generated field that will indicate redactions. With the word “REDACTED”. Otherwise, blank. |
| Confidentiality | User-generated field that will indicate confidentiality. With the word “CONFIDENTIAL” or “HIGHLY CONFIDENTIAL” or “ATTORNEYS EYES ONLY” as applicable. Otherwise, blank. |

IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.

DATED: February 18, 2021

*/s/ Lin Yee Chan*
Lin Y. Chan (SBN 255027)
lchan@lchb.com
Eric B. Fastiff (SBN 182260) efastiff@lchb.com
Reilly T. Stoler (SBN 310761)
rstoler@lchb.com
**LIEFF CABRASER HEIMANN & BERNSTEIN LLP**
275 Battery Street, 29th Floor
San Francisco, California 94111
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

*/s/ Adam J. Zapala*
Adam J. Zapala
Elizabeth T. Castillo
Tamarah P. Prevost
Reid W. Gaa
**COTCHETT PITRE & McCARTHY, LLP**
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Tel: (650) 697-6000
Fax: (650) 697-0577
azapala@cpmlegal.com
ecastillo@cpmlegal.com
tprevost@cpmlegal.com
rgaa@cpmlegal.com

*/s/ Kalpana Srinivasan*
Kalpana Srinivasan (Bar No. 237460)
Marc M. Seltzer (Bar No. 54534)
Steven Sklaver (Bar No.237612)
Michael Gervais (Bar No. 330731)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Ste. 1400
Los Angeles, CA 90067
Phone: 310-789-3100
ksrinivasan@susmangodfrey.com
mseltzer@susmangodfrey.com
ssklaver@susmangodfrey.com
mgervais@susmangodfrey.com

*Interim Co-Lead Counsel for Indirect Purchaser Plaintiffs*

*/s/ Ronald Fisher*
J. Noah Hagey
Matthew Borden
Ronald Fisher
Gunnar Martz
Athul K. Acharya
**BRAUNHAGEY & BORDEN LLP**
351 California Street, 10th Floor
San Francisco, CA 94104
Telephone: (4105) 599-0210
Facsimile: (415) 276-1808
hagey@braunhagey.com
borden@braunhagey.com
fisher@braunhagey.com
martz@braunhagey.com
acharya@braunhagey.com

*Interim Lead Counsel for Direct Purchaser Plaintiffs*

*/s/ Ashlee Lin*
Christopher Frost (SBN 200336)
cfrost@eisnerlaw.com
Amber Henry (SBN 247624)
ahenry@eisnerlaw.com
Ashlee N. Lin (SBN 275267)
alin@eisnerlaw.com
Rosie Cole (SBN 322185)
rcole@eisnerlaw.com
**EISNER, LLP**
9601 Wilshire Blvd., 7th Floor
Beverly Hills, California 90210
Telephone: (310) 855-3200
Facsimile: (310) 855-3201

*Attorneys for Defendants Celestron Acquisition, LLC, SW Technology Corp., Corey Lee, David Anderson, and Joseph Lupica*

**ATTESTATION PURSUANT TO GENERAL ORDER 45**

I, in compliance with General Order 45, Section X(B), hereby attest that I obtained the concurrence of all of the above-listed counsel in filing this document.

DATED: February 18, 2021

*/s/ Lin Yee Chan*
Lin Y. Chan (SBN 255027)

**ORDER**

THE FOREGOING STIPULATION IS APPROVED AND IT IS SO ORDERED.

Dated: February 19, 2021

Virginia K. DeMarchi
VIRGINIA K. DEMARCHI
United States Magistrate Judge

2031157.20