J. Noah Hagey, Esq. (SBN: 262331)
    hagey@braunhagey.com
Matthew Borden, Esq. (SBN: 214323)
    borden@braunhagey.com
Ellen V. Leonida, Esq. (SBN: 184194)
    leonida@braunhagey.com
Ronald J. Fisher, Esq. (SBN: 298660)
    fisher@braunhagey.com
Gunnar Martz, Esq. (SBN: 300852)
    martz@braunhagey.com
Hunter B. Thomson, Esq. (SBN: 330533)
    thomson@braunhagey.com
BRAUNHAGEY & BORDEN LLP
351 California Street, 10th Floor
San Francisco, CA 94104
Telephone: (415) 599-0210
Facsimile: (415) 276-1808

ATTORNEYS FOR REPRESENTATIVE
PLAINTIFFS SPECTRUM SCIENTIFICS LLC
and RADIO CITY, INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE TELESCOPES ANTITRUST LITIGATION | Case No. 5:20-cv-03639-EJD |
| This Document Relates to: | Case No. 5:20-cv-03642-EJD |
| SPECTRUM SCIENTIFICS LLC, RADIO CITY, INC., and those similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> CELESTRON ACQUISITION, LLC, SUZHOU SYNTA OPTICAL TECHNOLOGY CO., LTD., SYNTA CANADA INT'L ENTERPRISES LTD., SW TECHNOLOGY CORP., OLIVON MANUFACTURING CO. LTD., OLIVON USA, LLC, NANTONG SCHMIDT OPTO-ELECTRICAL TECHNOLOGY CO. LTD., PACIFIC TELESCOPE CORP., COREY LEE, DAVID SHEN, SYLVIA SHEN, JACK CHEN, JEAN SHEN, JOSEPH LUPICA, DAVE ANDERSON, LAURENCE HUEN, and DOES 1-50, <br><br> Defendants. | **PLAINTIFFS' OPPOSITION TO DEFENDANTS JEAN SHEN AND SYNTA CANADA INT'L ENTERPRISES LTD.'S MOTION TO DISMISS SECOND AMENDED COMPLAINT** <br><br> **Date:** June 17, 2021 <br> **Time:** 9:00 a.m. <br> **Crtrm.:** 4, 5th Floor <br> **Judge:** Hon. Edward J. Davila <br><br> **Trial Date:** None Set |

Case No. 5:20-cv-03642-EJD

PLAINTIFFS' OPPO. TO MOTION TO DISMISS SECOND AMENDED COMPLAINT

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

FACTUAL BACKGROUND ............................................................................................. 2

      A.     Defendants and the Co-Conspirators Dominate the Relevant Markets ................. 3

      B.     The Conspirators Collude Regarding the Meade Acquisition .............................. 3

      C.     The Conspirators Mislead the Federal Trade Commission ................................. 5

      D.     The Conspirators Fix Prices, Divide Markets, and Share Trade Secrets ............... 5

      E.     The Conspirators Continue to Injure Plaintiffs and the Market ........................... 6

      F.     Procedural History .............................................................................................. 7

ARGUMENT ....................................................................................................................... 8

I.     THE COMPLAINT STATES VALID CLAIMS AGAINST ALL
      DEFENDANTS ........................................................................................................ 8

II.    DEFENDANTS' ATTEMPT TO SHOEHORN ARGUMENTS THEY
      HAVE NOT MADE IS IMPROPER AND SHOULD BE DISREGARDED ................. 13

CONCLUSION .................................................................................................................... 14

PLAINTIFFS' OPPO. TO MOTION TO DISMISS SECOND AMENDED COMPLAINT

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*AT&T Commc'ns of California v. Pac. Bell*,
No. C 96-1691 SBA, 1996 WL 940836 (N.D. Cal. July 3, 1996)................................................ 13

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................................................................................................................... 8

*Brennan v. Concord EFS, Inc.*,
369 F. Supp. 2d 1127 (N.D. Cal. 2005)................................................................................. 11, 12

*D'Agnese v. Novartis Pharms. Corp.*,
952 F. Supp. 2d 880 (D. Ariz. 2013) ........................................................................................ 13

*Desertrain v. City of Los Angeles*,
754 F.3d 1147 (9th Cir. 2014) .................................................................................................. 14

*Dragu v. Motion Picture Indus. Health Plan for Active Participants*,
144 F. Supp. 3d 1097 (N.D. Cal. 2015)..................................................................................... 13

*In re Cal. Title Ins. Antitrust Litig.*,
No. C 08-01341 JSW, 2009 WL 1458025 (N.D. Cal. May 21, 2009) ........................................ 11

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
738 F. Supp. 2d 1011 (N.D. Cal. 2010)........................................................................................ 8

*In re China Intelligent Lighting & Elecs., Inc. Sec. Litig.*,
No. CV 11-2768 PSG SSX, 2012 WL 3834815 (C.D. Cal. Sept. 5, 2012)................................. 12

*In re Lithium Ion Batteries Antitrust Litig.*,
No. 13-MD-2420 YGR, 2014 WL 309192 (N.D. Cal. Jan. 21, 2014) ................................... 10, 11

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
586 F. Supp. 2d 1109 (N.D. Cal. 2008)...................................................................... 8, 9, 10, 11

*Kendall v. Visa U.S.A., Inc.*,
518 F.3d 1042 (9th Cir. 2008) .................................................................................................. 12

*Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.*,
No. 5:16-CV-06370-EJD, 2019 WL 1429631 (N.D. Cal. Mar. 29, 2019) ........................... passim

*Rollins v. Dignity Health*,
19 F. Supp. 3d 909 (N.D. Cal. 2013)......................................................................................... 13

*Sam K. ex rel. Diane C. v. Dep't of Educ., Hawaii*,
No. CIV. 12-00355 ACK, 2013 WL 3071317 (D. Haw. June 17, 2013) ................................... 13

PLAINTIFFS' OPPO. TO MOTION TO DISMISS SECOND AMENDED COMPLAINT

*Silvas v. E\*Trade Mortg. Corp.*,
  514 F.3d 1001 (9th Cir. 2008) ................................................................................................. 8

*Silverstein v. Keynetics Inc.*,
  192 F. Supp. 3d 1045 (N.D. Cal. 2016) ................................................................................. 13

*Suguri v. Wells Fargo Bank*,
  No. CV 09-1828 (PSG), 2009 WL 2486546 (C.D. Cal. Aug. 7, 2009) ...................................... 11

*United States ex rel. Giles v. Sardie*,
  191 F. Supp. 2d 1117 (C.D. Cal. 2000) ............................................................................ 12, 13

*Zamani v. Carnes*,
  491 F.3d 990 (9th Cir. 2007) .......................................................................................... 12, 13

PLAINTIFFS' OPPO. TO MOTION TO DISMISS SECOND AMENDED COMPLAINT

Plaintiffs Spectrum Scientifics, LLC and Radio City, Inc. respectfully submit this Opposition to Defendants Jean Shen and Synta Canada Int'l Enterprises Ltd.'s ("Synta Canada") Motion to Dismiss.

## INTRODUCTION

Plaintiffs are small consumer telescope distributors who were forced to shutter their businesses as a result of an antitrust conspiracy orchestrated by Ningbo Sunny, Peter Ni, David Shen, his family members Sylvia Shen and Jean Shen, and their respective businesses, including Synta, Celestron, Synta Canada and Olivon. While Defendants lined their pockets with hundreds of millions of dollars in overcharges, hundreds of similarly situated mom-and-pop telescope stores around the country have been forced to shut down, fire employees, and struggle for survival due to collapsing margins caused by Defendants' price fixing, market allocation, illegal acquisitions, and domination of the market. Through this case, Plaintiffs seek monetary relief to compensate them and all similarly situated direct purchasers of telescopes, and injunctive relief to finish correcting the systemic dysfunction in the consumer telescope market.

Moving Defendant Synta Canada is a business owned by David Shen's sister Sylvia Shen, who sat on the Board of Celestron and directed many of the illegal activities alleged in the Second Amended Complaint ("SAC"). Moving Defendant Jean Shen is also Mr. Shen's sister, and has referred to Synta's purported horizontal competitor Ningbo Sunny as her family business. The instant motion (15 of 17 pages) almost entirely comprises moving Defendants' personal jurisdiction arguments. (ECF No. 97.) But after Plaintiffs sought discovery into moving Defendants' dealings with Mr. Shen and his businesses, moving Defendants waived those arguments—but not before consuming months of Court and party resources with protracted negotiations, stipulations, and discovery motion practice over a motion they could not realistically expect to win given their deep involvement in the underlying antitrust violations.

The remaining two pages of moving Defendants' motion comprise a handful of boilerplate, generalized contentions that the SAC fails to allege adequate facts to support antitrust claims against them—along with an improper attempt to incorporate by reference other arguments made in

PLAINTIFFS' OPPO. TO MOTION TO DISMISS SECOND AMENDED COMPLAINT

other motions by their other jointly-represented co-conspirators.  (Mot. at 15-17.)  Even if these arguments had been adequately briefed before launch, they would still burn up on reentry.

Defendants' arguments ignore the Rule 12(b)(6) standard requiring the Court to take all allegations as true and construe the pleadings liberally in favor of Plaintiffs, overlook the key allegations in the SAC, and disregard this Court's decision in the *Orion* Action, No. 5:16-CV-06370-EJD, 2019 WL 1429631, at *3 (N.D. Cal. Mar. 29, 2019), which denied in full their co-conspirators' motion to dismiss virtually identical claims.  The SAC states claims and alleges adequate facts as to these Defendants, who were part and parcel of the antitrust conspiracy.

For the reasons below, the SAC plausibly pleads antitrust claims against the moving Defendants.  Accordingly, their Motion should be denied.

<u>**FACTUAL BACKGROUND**</u>

Defendants conspired with Defendant Ningbo Sunny Electronic Co., Ltd. ("Ningbo Sunny") to fix prices, and allocate and monopolize the telescope market.  (SAC ¶ 2.)  Defendants are members or principals of Synta, a conglomerate of entities owned and controlled by Defendant Dar-Tson "David" Shen and his family members, including Synta Technology Corp., Suzhou Synta Optical Technology Co., Ltd. ("Suzhou Synta"), and a shadowy network of factories and distributors.  (*Id.*)  Synta wholly owns Defendant Celestron Acquisition, LLC ("Celestron") through its wholly owned subsidiary, Defendant SW Technology Corp. ("SW Tech.").  (*Id.* ¶¶ 23-24.)  Defendant Sylvia Shen is Chairman Shen's sister, a member of Celestron's executive committee, and controls Defendant Pacific Telescope Corp. ("Pacific Telescope").  (*Id.* ¶¶ 17, 29.)  Defendant Jack Chen is Sylvia Shen's husband and a member of Celestron's executive committee.  (*Id.* ¶ 18.)  Defendant Nantong Schmidt Opto-Electrical Technology Co. Ltd. ("Nantong Synta") is owned and/or controlled by David Shen.  (*Id.*)

The moving Defendants are David Shen's sister and a company under his family's control—each is an extension of the Synta conglomerate.  Defendant Jean Shen is David Shen's sister and controls Defendants Olivon Manufacturing Group Ltd. ("Olivon Canada"), a Canadian telescope company with United States subsidiaries, and Olivon USA, LLC ("Olivon USA").  (*Id.* ¶¶ 19, 27-28.)  Defendant Synta Canada Int'l Enterprises Ltd. ("Synta Canada") is a Canadian

PLAINTIFFS' OPPO. TO MOTION TO DISMISS SECOND AMENDED COMPLAINT

company that is listed as a 20 percent owner of Suzhou Synta, and is controlled by David Shen's other sister Sylvia Shen, who is also a member of Celestron's executive committee.  (*Id*. ¶¶ 17, 26.)

As alleged in the SAC, the Shen family controlled and manipulated the entity Defendants in furtherance of the alleged antitrust conspiracy.

**A.      Defendants and the Co-Conspirators Dominate the Relevant Markets**

There are two relevant markets at issue.  The first is the global consumer telescope and telescope accessory manufacturing market for import into the United States (the "Manufacturing Market.").  (*Id*. ¶ 55.)  The second is a downstream market from the Manufacturing Market: the United States market for consumer telescope distribution (the "Distribution Market").  (*Id*. ¶ 59.)

The Manufacturing Market has been marred by illegal collusion for over 15 years.  Before 2005, Synta's principal, Defendant David Shen, owned, and served as an officer of his horizontal competitor Ningbo Sunny.  (*Id*. ¶ 15.)  After acquiring a U.S. entity, Chairman Shen "resigned" from his position at Ningbo Sunny and "transferred" his interest to his brother to avoid scrutiny from U.S. regulators.  (*Id*. ¶ 16.)  All the while, the two horizontal competitors continued to coordinate their business strategies.  (*Id*. ¶ 4.)  At present, Synta and Ningbo Sunny manufacture over 80% of all consumer telescopes imported into the United States.  (*Id*. ¶ 3.)  They maintain this dominance by coordinating business strategies, retaliating against companies that try to compete with their businesses, and agreeing on what prices to charge and which products their respective companies will produce.  (*Id*.)  Synta and Ningbo Sunny used that dominance in the Manufacturing Market to enable Defendant Celestron to take over the Distribution Market.  (*Id*.)  Celestron controls at least 70% of all U.S. consumer telescope sales.  (*Id*.)

**B.      The Conspirators Collude Regarding the Meade Acquisition**

Before it was acquired by Defendant Synta, Defendant Celestron and Meade Instruments Corp. ("Meade") were the leading U.S. telescope manufacturers and distributors.  In 1991 and again in 2002, Defendant Celestron attempted to merge with Meade.  Both times, the FTC took action to block proposed combinations on antitrust grounds.  (*Id*. ¶ 74.)

PLAINTIFFS' OPPO. TO MOTION TO DISMISS SECOND AMENDED COMPLAINT

Synta bought Celestron in 2005. (*Id.* ¶ 60.) Around the same time, David Shen resigned as an officer of his horizontal competitor Ningbo Sunny. (*Id.* ¶ 15.) Mr. Shen also "transferred" his 26% percent of Ningbo Sunny to his brother, who then gave it to his sister-in-law. (*Id.* ¶ 16.)

In 2013, Synta and Celestron had weakened Meade's position in the market to the point that Meade was seeking to be acquired. (*Id.* ¶ 73.) In May 2013, a small competitor of Ningbo Sunny and Synta named JOC announced an agreement to purchase Meade. (*Id.* ¶ 75.) Because JOC's acquisition of Meade would have threatened Synta and Ningbo Sunny's stranglehold on the Manufacturing Market, both Ningbo Sunny and Synta wanted to keep it out of JOC's hands. (*Id.* ¶ 76.) Because Synta could not acquire Meade directly (because it owned Celestron and the FTC had twice blocked Celestron from merging with Meade on antitrust grounds), David Shen (head of Synta) and Peter Ni (head of Ningbo Sunny) agreed that Ningbo Sunny would purchase Meade with secret assistance from Synta. (*Id.* ¶¶ 77-78.) Emails among Ningbo Sunny, Synta, and Celestron memorialize the conspiracy, in which "[t]o prevent JOC to buy MEADE," Ningbo Sunny would purchase Meade with "the financial support to SUNNY" from "CELESTRON / SYNTA." (*Id.* ¶ 77, Ex. 2.) The object of the conspiracy was to prevent JOC from acquiring Meade's manufacturing facility and brand and thereby threaten the conspirators' dominance in the Manufacturing Market. (*Id.*) Sylvia Shen, principal of moving Defendant Synta Canada, was included in the competitors' emails plotting to acquire Meade. (*Id.* ¶¶ 78, Ex. 2, 79, Ex. 3.)

Ningbo Sunny was represented in the Meade transactions by Sheppard, Mullin, Richter & Hampton LLP. (*Id.* ¶ 82.) Ningbo Sunny directed Sheppard Mullin in its engagement letter to take direction from Synta and Celestron executives, including David Shen, Laurence Huen, Dave Anderson, and Joe Lupica. (*Id.* ¶ 82, Ex. 4.) Defendants and then-Celestron employees Anderson and Lupica helped design the deal structure and bring it to completion. (*Id.*) To hide Synta and David Shen's involvement, some of the funds to purchase Meade were sent from Sky Rainbow, a Hong Kong company jointly owned by David Shen and Peter Ni. (*Id.* ¶ 95.) After the acquisition, Synta, through Celestron, also loaned considerable sums to horizontal competitor Ningbo Sunny. (*Id.* ¶ 88.) In exchange for Synta's capital contributions to its horizontal competitor, Celestron was granted an ownership interest in its horizontal competitor Meade. (*Id.* ¶ 89.)

David Shen and Peter Ni agreed that Defendant and then-Celestron CEO Joe Lupica (who was already working to help Ningbo Sunny purchase Meade) would quit his role at Celestron on June 18, 2013, and would become CEO of Meade after the deal closed. (*Id*. ¶ 83.) This transfer took place as planned, and other Celestron executives also joined Meade. (*Id*. ¶ 84.) As part of Synta's and Celestron's unlawful financial assistance of their horizontal competitor's acquisition of Meade, Celestron took equity in Meade, which was memorialized in shadow books kept by the conspirators. (*Id*. ¶ 89.)

### C.      The Conspirators Mislead the Federal Trade Commission

After Ningbo Sunny's bid to acquire Meade was publicly announced, the Federal Trade Commission began inquiring whether David Shen and Celestron were involved in the transaction. The conspirators lied to the FTC, advising the agency that "David Shen has no role in the proposed acquisition of Meade." (*Id*. ¶ 91, Ex. 8.) As discussed above, this was false—in fact, Celestron and Synta were providing financial support, Sheppard Mullin had been ordered to take instructions from David Shen and Celestron/Synta personnel regarding the Meade acquisition, the transaction was funded at least in part by Chairman Shen, and Celestron ultimately took equity in Meade. (*Id*. ¶¶ 82, 89, 92-93.)

Because the FTC also expressed concern about Chairman Shen's economic interest in Ningbo Sunny, Mr. Ni restructured the transaction so that Mr. Ni would buy Meade in his personal capacity, rather than Ningbo Sunny. (*Id*. ¶ 93.) After avoiding U.S. regulatory inquiry, he transferred Meade to Ningbo Sunny for a dollar. (*Id*. ¶ 94.)

### D.      The Conspirators Fix Prices, Divide Markets, and Share Trade Secrets

After the Meade acquisition closed, Meade joined Synta's, Celestron's, and Ningbo Sunny's conspiracy to divide markets, fix prices, and share trade secrets of distributors outside the conspiracy among themselves.

As detailed in internal communications, David Shen directed Peter Ni in an email to work out a "tacit understanding" with Defendant Anderson (then CEO of Celestron) to not bid against Celestron for sales to Costco. (*Id*. ¶ 96, Ex. 9.) In another email to Peter Ni and Defendant Anderson, David Shen explained that "[t]he best way in the future is to divide the products and sell

them into different markets to reduce conflicts." (*Id.* ¶ 97, Ex. 10.)  And former Celestron executives working at Meade assured Defendant Lupica—by then the CEO of Meade—that "Mr. Ni . . . doesn't want to disrupt Synta business.  However, this promo will not be disruptive to Celestron business." (*Id.* ¶ 98, Ex. 11.)

Ningbo Sunny also provided Celestron with Meade's trade secrets, let Celestron engineers tour Meade's factory, and continued to coordinate business activities with David Shen and his trusted counselor (and member of Celestron's executive committee), Laurence Huen. (*Id.* ¶ 87.) Ningbo Sunny also provided Celestron with pricing and order information from its competitors.  In May 2015, Ningbo Sunny provided detailed "sales figures" for multiple years at the express request of Defendant Lee, who is Celestron's current CEO. (*Id.* ¶ 100, Ex. 12.)  Ningbo Sunny executives confirmed under oath that this information constitutes trade secrets. (*Id.* ¶ 101.)

The co-conspirators also fixed prices.  Synta and Ningbo Sunny negotiated and discussed how Ningbo Sunny's prices should be higher to certain customers, and at other times directed Ningbo Sunny that "payment terms should be the same with Suzhou [Synta]." (*Id.* ¶¶ 102-03.) Defendant Synta Canada is listed as an owner of Suzhou Synta, and is controlled by Sylvia Shen, who is also a member of Celestron's executive committee. (*Id.* ¶¶ 17, 26.)  Sylvia Shen corresponded with Ningbo Sunny Vice Chairman James Chiu to collude on what products the horizontal competitors would manufacture and distribute at both the manufacturing and distribution stage. (*Id.* ¶ 106, Ex. 15.)

Jean Shen controls Defendants Olivon USA and Olivon Canada, which both sell telescopes in the United States. (*Id.* ¶¶ 19, 27, 28.)  She and the companies she controls participated in the conspiracy by representing to telescope distributors that Synta's horizontal competitor and co-conspirator Ningbo Sunny Electronic Co., Ltd. is one of Defendant Jean Shen's "family's companies," thereby unlawfully coordinating price fixing and market division among horizontal competitors. (*Id.* ¶ 30.)

**E.**     **The Conspirators Continue to Injure Plaintiffs and the Market**

Defendants' anticompetitive conspiracy has had wide-ranging deleterious effects on the Manufacturing Market and Distribution Market.  Plaintiffs have been forced to pay

supracompetitive and arbitrarily inflated prices for telescopes. (SAC ¶ 112.) Fueled by the extremely high relative margins obtained through the conspiracy's unlawful acts, Celestron has monopolized the Distribution market, even as Celestron's parent and co-conspirators monopolize the Manufacturing Market. (*Id.* ¶¶ 113, 116.) As a result, it is now impossible for new market entrants to challenge the conspirators. (*Id.* ¶ 120.) These harms are antitrust injuries that the antitrust laws were designed to remedy. (*Id.* ¶ 119.)

The conspirators' unlawful acts continue to injure consumers and the market. In 2018, Defendants controlled over 90% of the Manufacturing Market. (*Id*. ¶ 118.) Defendants continue to conspire to maintain their dominance in the market. (*Id*. ¶ 142.)

### F.    Procedural History

Plaintiffs filed their complaint on June 1, 2020. Thereafter, a number of law firms copied the pleadings in this case and filed duplicative actions, all of which were consolidated before this Court. On September 18, 2020, the Court appointed Spectrum and Radio City to represent the Direct Purchaser Plaintiffs (DPPs) (ECF No. 49) and a structure of three separate law firms to represent the Indirect Purchaser Plaintiffs (IPPs) (Case No. 5:20-cv-03639, ECF No. 95).

The DPPs propounded discovery on Celestron on August 24, 2020, and on the foreign Defendants, including Mr. Shen and Synta, in subsequent months. To date, Mr. Shen, Synta and Celestron have not produced a single email and have evaded putting its witnesses up for deposition.

On January 20, 2021, moving Defendants filed the instant motion. The DPPs then sought to take discovery to prove that moving Defendants (Mr. Shen's sister's company and his sister) had conspired with Ningbo Sunny, David Shen and Mr. Shen's companies Synta and Celestron. After the parties briefed the issue, this Court allowed limited jurisdictional discovery and amended the briefing schedule to accommodate taking it. (ECF Nos. 109, 124, 127, 142.) On the day before their discovery was due, the moving Defendants withdrew their motion and waived all of their supposed jurisdictional arguments. (ECF No. 143.) The remaining arguments in their brief comprise two pages. Their arguments are largely boilerplate and seek to incorporate duplicative motions filed by their jointly-represented co-conspirators Mr. Shen, Synta, and Celestron. (*See* ECF No. 96.)

**ARGUMENT**

In ruling on a motion to dismiss, all the allegations in the Complaint must be taken as true. *Silvas v. E\*Trade Mortg. Corp.*, 514 F.3d 1001, 1003-04 (9th Cir. 2008). Motions to dismiss are denied unless the claims are implausible. *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 738 F. Supp. 2d 1011, 1017 (N.D. Cal. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In antitrust cases, "plaintiffs should be given the full benefit of their proof without tightly compartmentalizing the various factual components and wiping the slate clean after scrutiny of each." *Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.*, No. 5:16-CV-06370-EJD, 2019 WL 1429631, at \*3 (N.D. Cal. Mar. 29, 2019) (denying motion to dismiss claims substantially identical to Plaintiffs').

**I.      THE COMPLAINT STATES VALID CLAIMS AGAINST ALL DEFENDANTS**

Defendants' argument that the SAC fails to allege Defendants' misconduct or participation in the alleged anticompetitive conspiracy is incorrect both on the law and the factual record.

Defendants misstate the applicable legal standard and appear to argue that Plaintiffs must allege that each individual conspirator committed every part of the antitrust offenses alleged in the SAC. (Mot. at 5-8.) But as Defendants' own authority explains, that is not the law. *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1117 (N.D. Cal. 2008) ("[T]he complaint need not contain detailed 'defendant by defendant' allegations."). Plaintiffs need only allege "that each individual defendant joined the conspiracy and played some role in it." *Id*. As the Court instructed the jury in the *Orion* Action, "[a] person who knowingly joins an existing conspiracy, or who participates only in part of a conspiracy with knowledge of the overall conspiracy, is just as responsible as if he or she had been one of those who formed or began the conspiracy and participated in every part of it." (Final Jury Instructions, *Orion* Action, ECF No. 499 at 28:12-15.) Once that threshold is met, an antitrust conspirator "is presumed to remain a member and is responsible for all actions taken by all coconspirators during and in furtherance of the conspiracy until it is shown that the conspiracy has been completed or abandoned." (*Id*. at 28:24-28.)

The SAC alleges specific facts demonstrating that each of the Defendants, including the moving Defendants, either affirmatively agreed to participate in the alleged antitrust conspiracy or

PLAINTIFFS' OPPO. TO MOTION TO DISMISS SECOND AMENDED COMPLAINT

were used by members of the Shen family as instrumentalities to further the conspiracy, *i.e.*, "joined the conspiracy and played some role in it." *In re TFT-LCD*, 586 F. Supp. 2d at 1117.  The SAC alleges that:

- Sylvia Shen is David Shen's sister, is a conduit through whom he "exercises control over several Synta-related entities," is a member of Celestron's executive committee, and personally "participated in, planned, and carried out the conspiracy."  (SAC ¶ 17.)  She is also the principal of Synta Canada and submitted a declaration in support of Synta Canada's meritless and withdrawn jurisdictional arguments.

- Jack Chen is Sylvia Shen's husband, a member of Celestron's executive committee, and personally "participated in, planned, and carried out the conspiracy."  (SAC ¶ 18.)

- Jean Shen is David Shen's sister, exercises control over Olivon Canada and Olivon USA, and actively participated in the conspiracy, including by representing to telescope distributors and the telescope market that Synta's horizontal competitor and co-conspirator Ningbo Sunny Electronic Co., Ltd. "was one of my family's companies"—even though it was a horizontal competitor to the Synta enterprises.  (*Id.* ¶ 19.)

- Pacific Telescope is controlled by Sylvia Shen (David Shen's sister who "participated in, planned, and carried out the conspiracy") and it "participated in Defendants' conspiracy by distributing Synta telescopes."  (*Id.* ¶ 29.)

- Nantong Schmidt "is owned and/or controlled by David Shen" and participated in the conspiracy by "manufactur[ing] telescopes that were sold into this District during the Class Period, including to Defendant Celestron" at artificial, supracompetitive prices.  (*Id.* ¶ 21.)

- Olivon Canada is controlled by Jean Shen (David Shen and Sylvia Shen's sister who also "actively participated in," "planned, and carried out the conspiracy") and it "participated in the conspiracy by . . . unlawfully coordinating price fixing and market division among horizontal competitors."  (*Id.* ¶¶ 17, 27, 30.)

- Olivon USA is controlled by Jean Shen and "participated in the conspiracy by . . . unlawfully coordinating price fixing and market division among horizontal competitors."  (*Id.* ¶¶ 28, 30.)

PLAINTIFFS' OPPO. TO MOTION TO DISMISS SECOND AMENDED COMPLAINT

- Suzhou Synta "is owned and/or controlled by David Shen and his family" and participated in the conspiracy by "manufactur[ing] telescopes that were sold into this District during the Class Period" at Defendants' artificial, supracompetitive prices. (*Id*. ¶ 20.)

- Synta Canada is a 20% owner of Suzhou Synta that is controlled by David Shen and his family members. (*Id*. ¶ 26.)

Moving Defendants Jean Shen and Synta Canada were part of this web of conspirators, and the SAC's allegations support antitrust claims against them, particularly in the context of the far-sweeping conspiracy alleged in the SAC. As Courts have held, where an antitrust complaint names multiple members of a corporate family, adequately pleading a conspiracy claim against a particular corporate defendant does not require "detailed 'defendant by defendant' allegations," but rather only enough to draw a plausible conclusion that the "individual defendant joined the conspiracy and played some role in it." *In re Lithium Ion Batteries Antitrust Litig*., No. 13-MD-2420 YGR, 2014 WL 309192, at *13 (N.D. Cal. Jan. 21, 2014) (citing *In re TFT-LCD*, 586 F. Supp. 2d at 1117). And as the Court likely recalls from the *Orion* Action, under Ninth Circuit law, "[s]ubsidiaries and their parent companies are considered a single entity for antitrust purposes when they engage in 'coordinated activity,'" where there is coordinated activity Plaintiffs do "not need to prove that each specific Defendant independently satisfied each element of a claim," and coordinated activity occurs where (as alleged here) "the parent and subsidiary act together in furtherance of the same anticompetitive scheme." (Final Jury Instructions, *Orion* Action, ECF No. 499 at 21:3-8.) Accordingly, Pacific Telescope, Nantong Schmidt, Olivon Canada, Olivon USA, Suzhou Synta, Synta, and moving Defendant Synta Canada are all a single entity for purposes of the Sherman Act analysis in this case. And Jean Shen personally participated in the conspiracy, including because she sent emails proclaiming that Ningbo Sunny was one of "my family's companies," an active step raising a strong inference of conspiracy: Ningbo Sunny was one of Synta's horizontal competitors and, as the jury in the *Orion* Action found, one of Synta's co-conspirators.

Defendants, however, turn a blind eye to these allegations and claim that the SAC fails to allege their misconduct or participation in the conspiracy. (Mot. at 15-16.) The SAC alleges that

each Defendant directly participated—either as engineers of the conspiracy or as means to coordinate price fixing and market division among competitors in the telescope distribution market. When analyzing allegations of conspiracy, courts must be mindful of "the principle that the character and effect of a conspiracy are not to be judged by dismembering it and viewing its separate parts, but only by looking at it as a whole." *In re Lithium Ion Batteries*, 2014 WL 309192, at *11; *see also Optronic Techs.*, 2019 WL 1429631, at *3 (N.D. Cal. Mar. 29, 2019) ("[P]laintiffs should be given the full benefit of their proof without tightly compartmentalizing the various factual components and wiping the slate clean after scrutiny of each."). Viewed through that lens, it is clear that Defendants "joined the conspiracy and played some role in it" and the Motion must be denied. *In re TFT-LCD*, 586 F. Supp. 2d at 1117.

Defendants' authorities are inapposite. Defendants rely on *Suguri v. Wells Fargo Bank*, No. CV 09-1828 (PSG), 2009 WL 2486546, at *6 (C.D. Cal. Aug. 7, 2009) for the proposition that "formulaic allegations lumping all Defendants together are insufficient." (Mot. at 15.) But the plaintiff in *Suguri* made only general allegations that Wells Fargo, EFLOAN.com, Citibank, and Citimortgage each refused to provide her loans on discriminatory bases. There, the plaintiff "fail[ed] to specifically identify the discriminatory action(s) taken by each Defendant" (*Suguri*, 2009 WL 2486546, at *6) or any conspiracy among them, much less an antitrust conspiracy where Plaintiffs need only allege that "individual defendant joined the conspiracy and played some role in it." *In re TFT-LCD*, 586 F. Supp. 2d at 1117.

Defendants also point to *In re Cal. Title Ins. Antitrust Litig.*, No. C 08-01341 JSW, 2009 WL 1458025, at *7–8 (N.D. Cal. May 21, 2009), where the plaintiff attempted to show parent corporations' participation in a conspiracy with their subsidiaries by making general allegations regarding the defendants' corporate structures. Here, in contrast, Plaintiffs' SAC alleges not just that the entity Defendants are subsidiaries or affiliates of companies that participated in an antitrust conspiracy, but that each of the Defendants were individual participants themselves or used by key principals to accomplish price fixing and market division in the Distribution Market.

Defendants also rely on cases in which plaintiffs alleged that defendants conspired together without alleging facts showing a conspiracy. For instance, Defendants rely on *Brennan v. Concord*

*EFS, Inc.*, 369 F. Supp. 2d 1127, 1136 (N.D. Cal. 2005), where the plaintiff proffered a theory that thirteen different banks conspired to fix ATM fees on the factual basis that each bank exercised some control over the relevant ATM network. *Id*. at 1129. And there, the *Brennan* court's analysis focused on two specific banks for which the allegations in the complaint were "so poorly developed . . . that [the allegations did] not give fair notice . . . of the role [the banks] are alleged to have played in the conspiracy." *Id*. at 1137. Defendants likewise rely on *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1048 (9th Cir. 2008) as holding that plaintiffs must allege the who, what, when and where of each purported conspirator's involvement. (Mot. at 15.) But *Kendall*, like *Brennan*, involved allegations that large banks (*e.g.*, MasterCard, Visa, Bank of America, Wells Fargo, and U.S. Bank) conspired to fix fees associated with credit card sales, without "any facts to support the[] theory that the Banks conspired or agreed with each other . . . to restrain trade." *Kendall*, 518 F.3d at 1048. Here, in contrast, the SAC alleges in detail that the moving Defendants, like each of the other Defendants, are members of the Shen family who are direct participants in the alleged antitrust conspiracy, or entities that are directly controlled and used by those family members to effectuate the antitrust conspiracy. (SAC ¶¶ 17-18, 37.) Defendants cannot credibly contend that they do not have fair notice of how each of them is alleged to have participated in the conspiracy. The Court should deny the Motion.

Defendants' two pages of argument lacks merit. But Defendants are stuck with the motion they have made, and the Court should not countenance any attempt by Defendants to introduce new arguments on reply not specifically raised in their motion. *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007); *United States ex rel. Giles v. Sardie*, 191 F. Supp. 2d 1117, 1127 (C.D. Cal. 2000) ("It is improper for a moving party to introduce new facts or different legal arguments in the reply brief than those presented in the moving papers."); *In re China Intelligent Lighting & Elecs., Inc. Sec. Litig.*, No. CV 11-2768 PSG SSX, 2012 WL 3834815, at *4 (C.D. Cal. Sept. 5, 2012) ("The Court will not address new arguments raised for the first time in a reply brief.").

PLAINTIFFS' OPPO. TO MOTION TO DISMISS SECOND AMENDED COMPLAINT

## II. DEFENDANTS' ATTEMPT TO SHOEHORN ARGUMENTS THEY HAVE NOT MADE IS IMPROPER AND SHOULD BE DISREGARDED

Defendants' Motion also attempts to skirt this Court's rules on page limits by "joining" the arguments that other Defendants made in separate motions, without bothering to explain how or why those arguments apply to the present movants. This is improper. *See, e.g.*, *D'Agnese v. Novartis Pharms. Corp.*, 952 F. Supp. 2d 880, 885 (D. Ariz. 2013) (rejecting attempt to incorporate by reference arguments made in other motions because, *inter alia*, it "circumvents this Court's local rules governing page limits"); *AT&T Commc'ns of California v. Pac. Bell*, No. C 96-1691 SBA, 1996 WL 940836, at *11 n.18 (N.D. Cal. July 3, 1996) (same); *Sam K. ex rel. Diane C. v. Dep't of Educ., Hawaii*, No. CIV. 12-00355 ACK, 2013 WL 3071317, at *6 (D. Haw. June 17, 2013) ("[t]here is no authority for [party's] attempt to incorporate prior briefing instead of explaining its arguments"). To the extent the Court nevertheless considers Defendants' improper arguments incorporated by reference, Plaintiffs incorporate by reference the arguments they made in opposition. *See* ECF No. 114 at 11-25.

Defendants, however, having elected to not articulate their arguments and instead improperly attempt to incorporate arguments they have not made, may not now sandbag Plaintiffs by specifically developing them for the first time on reply. The Court should reject any attempt to do so. *Zamani*, 491 F.3d at 997 (affirming refusal to consider argument raised for first time in reply brief); *United States ex rel. Giles*, 191 F. Supp. 2d at 1127 ("improper" to introduce new facts or arguments in reply brief); *Silverstein v. Keynetics Inc.*, 192 F. Supp. 3d 1045, 1051 n.9 (N.D. Cal. 2016) ("The court will not consider arguments raised for the first time on reply."); *Dragu v. Motion Picture Indus. Health Plan for Active Participants*, 144 F. Supp. 3d 1097, 1113 (N.D. Cal. 2015) (party "forfeited the right to assert" argument by waiting to raise it until reply, noting that opposing party otherwise lacked opportunity to respond); *Rollins v. Dignity Health*, 19 F. Supp. 3d 909, 918 (N.D. Cal. 2013) (declining to consider argument where party "failed to raise the argument prior to its reply brief").

PLAINTIFFS' OPPO. TO MOTION TO DISMISS SECOND AMENDED COMPLAINT

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Motion be denied in its entirety.[1]

Dated:  May 17, 2021

Respectfully Submitted,

BRAUNHAGEY & BORDEN LLP

By:     /s/ *Matthew Borden*
                Matthew Borden

Attorneys for Representative Plaintiffs
Spectrum Scientifics LLC and Radio City, Inc.

---

[1] In the event any claim is dismissed, Plaintiffs request leave to amend.  *See Desertrain v. City of Los Angeles*, 754 F.3d 1147, 1154 (9th Cir. 2014).

PLAINTIFFS' OPPO. TO MOTION TO DISMISS SECOND AMENDED COMPLAINT