July 27, 2021

**VIA ECF**
Hon. Virginia K. DeMarchi
United States District Court for the Northern District of California
San Jose Courthouse - Courtroom 2 - 5th Floor
280 South 1st Street
San Jose, CA 95113

          **RE:**    **Joint Discovery Letter Brief Regarding DPP ESI Search Terms**
                    *Spectrum Scientifics, LLC, et al. v. Celestron Acquisition LLC, et al.,* **No. 5:20-cv-03642-EJD-VKD (N.D. Cal.)**

Your Honor:

Defendants Celestron Acquisition, LLC, David Shen, Sylvia Shen, Jack Chen, Jean Shen, Suzhou Synta Optical Technology Co., Ltd., Nantong Schmidt Opto-Electrical Technology Co. Ltd., Synta Technology Corp., SW Technology Corporation, Synta Canada International Enterprises Ltd., Olivon Manufacturing Group Ltd., Joe Lupica, Corey Lee, Dave Anderson, Laurence Huen, Olivon USA, and Pacific Telescope Corp. (collectively, "Defendants") and Direct Purchaser Plaintiffs ("DPPs") respectfully submit this letter brief concerning the parties' disputes regarding DPP's ESI search terms.

          **A.**    **Statement of Dispute**

Defendants' Statement: In meeting and conferring regarding search terms for DPPs' ESI, Defendants have requested DPPs disclose the number (or approximate number) of total documents DPPs are searching the proposed search terms against. DPPs are unwilling to provide the requested information.

DPPs' Statement: DPPs have agreed to twenty-one of Defendants' twenty-three proposed search terms and have objected to the remaining two as facially overbroad. Despite that agreement, Defendants have demanded that DPPs disclose information regarding unresponsive documents utilizing procedures other than those set forth in the Court-ordered ESI stipulation negotiated by the parties. (ECF No. 122.) DPPs basically let Defendants have whatever search terms they wanted. The information Defendants are now demanding has nothing to do with search terms and is not a basis for deviating from the procedures set forth in the ESI Order to which Defendants stipulated.

          **B.**    **Defendants' Position**

                **1.**    **Background**

Pursuant to the Stipulated Order regarding the production of ESI, the parties are required to meet and confer regarding the negotiation of any search terms to be applied against a parties' ESI documents. (ECF No. 122 at § IV.A.)

Over the course of the meet and confer process, Defendants have—in good faith—provided Plaintiffs (including DPPs) with mountains of information in response to innumerable requests from Plaintiffs in connection with negotiating search terms for Defendants' ESI. Defendants have provided a list of over 40 ESI custodians, including their names, titles, Chinese names, and dates of employments. Defendants have also provided information regarding organizational structures and reporting. Defendants have identified the various sources of ESI, including servers and cloud-based repositories. Defendants also provided a hit count report for *every single one* of Plaintiffs' proposed search terms, **which totaled over 600 terms**. Since then, Defendants have provided multiple additional hit reports for multiple iterations of negotiated revisions to the search terms. In the context of those negotiations (and in addition to responding to the many other requests for information made by Plaintiffs), Defendants provided the total number of documents collected.

On the other hand, DPPs are not willing to meet and confer in good faith regarding their custodians and search terms. After weeks of waiting for DPPs to even identify ESI custodians, on May 20, 2021, DPPs finally identified four ESI custodians for Plaintiff Radio City. (*See* **Exhibit A** at p. 6.) On May 26, 2021, as part of the meet and confer process, and in order to inform the number and type of search terms Defendants would propose, Defendants requested the total number of documents that DPPs would be searching.[1] (*Id.* at 5.) Defendants refused. (*Id.* at 4–5.)

On June 3, 2021, Defendants proposed a preliminary list of search terms for the DPP ESI documents. Because DPPS refused to provide the total number of documents searched, Defendants included the terms "radio*" and "skypoint*"—which would have given Defendants a sense of the total number of Radio City ESI documents being searched. (*Id.* at 2–3.) Defendants explicitly noted they expected to "supplement or modify this preliminary list after reviewing the initial hit counts" (*id.* at 3), as Defendants were waiting to determine the total volume of documents (based on the hits counts for "radio*" and "skypoint*").

Over a month later, on July 8, 2021, DPPs provided a hit count report for a single Radio City custodian, but refused to provide hit counts for the terms "radio*" or "skypoint*" on the basis that they were overbroad.[2] (*Id.* at 2.) Since Defendants were unable to determine the total volume of documents through the hit counts for these terms, Defendants again (that same day) requested that DPPs simply tell them the total number of documents searched, so that Defendants could evaluate the hit count reports and proposed search terms. (*Id.* at 1.) DPPs again refused. (*See* **Exhibit B**.)

---

[1] Contrary to DPP's assertion that Defendants are "now rais[ing] a new and frivolous argument," Defendants first requested the total number of documents two months ago as soon as the custodians were identified and prior to proposing any search terms.

[2] Notably, Defendants agreed to at least provide hit counts for similarly overbroad terms proposed by Plaintiffs. For example, Defendants provided hit counts for the term "*Celestron*" for each of the Celestron custodians.

## 2. DPPs Should Be Required to Provide the Total Number of Documents Searched

DPPs should be required to provide the total number of documents searched so that Defendants can evaluate the proposed search terms. This is basic information and DPPs have put forth no reason for refusing to provide it. (*See* **Exhibit B**.) Nor could they. DDPs indisputably have this information at their immediate disposal and could provide it to Defendants with no additional burden involved. Moreover, DPPs have no basis to claim that any documents outside of the proposed search terms are unresponsive, and in fact, that is precisely what Defendants are trying to determine in requesting this information. For example, the current list of proposed search terms that DPPs were willing to run totaled approximately 36,000 hits. If those hits are the result of searching across 3 million records (which is just a fraction of the total documents Defendants have searched), that suggests the current list of search terms may not be appropriately crafted to capture responsive documents. In such a situation, the parties may need to negotiate a much lengthier list of more search terms (similar to what Plaintiffs have proposed). But Defendants are currently without the information to evaluate that. And in fact, DPPs' refusal to provide this basic information without legitimate justification suggests that there is a significant number of potentially relevant documents that are not being captured by the current list of proposed search terms.

DPPs' refusal to produce this information reflects a lack of good faith in the meet and confer process—***required by the Stipulated ESI Order***—and they should be ordered to provide it. *See Vasudevan Software, Inc. v. Microstrategy Inc.*, No. 11-CV-06637-RS-PSG, 2012 WL 5637611, at *5 (N.D. Cal. Nov. 15, 2012) (ordering parties to "meet and confer regarding the resulting hit count for each custodian and term" in a dispute on search terms, because the neither the court, nor the parties can meaningfully resolve such dispute without more details); *Apple, Inc. v. Samsung Elecs. Co.*, No. 12-CV-0630-LHK PSG, 2013 WL 1942163, at *3 (N.D. Cal. May 9, 2013) ("transparency and collaboration [in ESI negotiations] is essential to meaningful, cost-effective discovery").

## C. DPPs' Position

### 1. Introduction

Fourteen months into this litigation, and eleven months after DPPs propounded discovery, Defendants still have not produced a single email. Defendants now seek to delay the Court-ordered discovery schedule a second time and further delay having to produce evidence by trying to manufacture a dispute with DPPs' search terms. Because DPPs agreed to virtually every overbroad and overreaching term Defendants proposed, Defendants have now raised a new and frivolous argument—they want DPPs to provide statistics on how many of Radio City's documents did *not* hit on Defendants' search terms. This request is unreasonable, not calculated to lead to the discovery of admissible evidence, and contrary to the parties' ESI stipulation, which was negotiated by the parties for months before it was entered as an Order of this Court. That Order specifically provides a statistically sound procedure to check whether search terms

are under-inclusive, and DPPs are entitled to utilize those Court-ordered methods to which Defendants expressly agreed.

The Court should therefore deny the motion in full.

1.      **Argument**

Defendants' contention that DPPs have refused to meet in confer in good faith regarding search terms is simply untrue. Defendants' search term proposal set forth twenty-three exceptionally broad proposed search terms—including the naked terms "telescope*," "sale*," "purchas!," and "customer"—and DPPs provided hit counts for virtually all of them, and agreed to run the terms as proposed and without further edits.[3] (**Exhibit B**.) DPPs objected to only two plainly overbroad terms proposed by Defendants. (*Id.*)

The first objectionable term is "Radio." That term is overbroad because the DPPs' representative plaintiff is Radio City, Inc., and the term "Radio" therefore would hit on virtually every document in Radio City's possession.

The second objectionable term is "Skypoint." That term is overbroad because the email address of Radio City's principal Dan Fish is radiocty@skypoint.com. Thus, the term "Skypoint" would encompass literally every single one of Mr. Fish's emails.

Defendants concede that these two terms would likely hit on virtually every document in Radio City's possession, and candidly admit that these terms were proposed by Defendants for a purpose other than discovering evidence relevant to the claims and defenses in this case. (*See* Section B.2, *supra* (acknowledging that Defendants proposed the terms to obtain "a sense of the total number of Radio City ESI documents.").) Unsurprisingly, Defendants are not seeking to compel DPPs to run these overbroad terms.[4]

Instead, and despite DPPs' substantive agreement to run virtually every term proposed by Defendants, Defendants contend that DPPs have inflicted some kind of procedural injury by declining to depart from the procedures prescribed by the stipulated ESI protocol that the parties spent months negotiating. In specific, Defendants are demanding that DPPs disclose information regarding the number of documents that are *unresponsive* to Defendants' proposed search terms. Defendants illogically claim that this information will tell them whether the search terms that

---

[3] Contrary to Defendants' contention, the search terms returned over 57,000 unique hits including families.

[4] Defendants' suggestion that it was somehow improper or hypocritical for Plaintiffs to propose "Celestron" as a search term fails to account for the fact that there are sixteen Defendants in this case besides Celestron Acquisition LLC. Defendants also fail to note that they objected to "Celestron" as a search term for Celestron custodians on overbreadth grounds—upon which Plaintiffs agreed that the objection was well-taken, and removed "Celestron" from their proposed search terms for Celestron custodians.

Defendants picked adequately capture the universe of responsive documents, even though Radio City sold many other products besides telescopes that are irrelevant to this case—like radios.

Defendants' demand is not only unsupported by logic, but also the Court-ordered ESI stipulation. That order does not require the parties to exchange information about the number of documents that do *not* hit on search terms (*see* ECF No. 122)—a fact that DPPs pointed out to Defendants during the parties' meet and confer, and which Defendants tellingly do not contest. Rather, the stipulated ESI protocol provides for a statistically sound "Null Set" procedure for addressing Defendants' belated concern that their own search terms might be underinclusive. As the ESI stipulation provides:

> The Null Set shall be generated after all document processing is substantially complete. The total number of documents within the Null Set shall be determined by a statistician through the use of stratified sampling. Upon request by the Receiving Party, the Disclosing Party shall provide information from the statistician regarding the methodology for drawing the sample. Regardless of the number of documents in the Null Set, the documents should be derived from each custodian and should include documents throughout the entire date range. Producing Party should then review the Null Set and produce any non-privileged responsive documents therefrom. If any non-privileged responsive documents are found in the Null Set, the parties shall meet and confer as to the number and reason with the potential for modification of the search terms previously agreed upon.

ESI Stipulation IV.A.ii at 10:16-27 (ECF No. 122). This is a sound and logical procedure, unlike that proposed by Defendants, and DPPs are entitled to insist that the stipulated process be followed.

None of the cases cited by the Defendants suggest anything to the contrary. Rather, they involve parties who had concrete disagreements over the search terms that the parties would run, or whether a party would disclose its search terms at all. *Vasudevan Software, Inc.*, 2012 WL 5637611, at *3 (refusal to run proposed search terms); *Apple, Inc.*, 2013 WL 1942163, at *2 (third party's refusal to disclose search terms used in responding to subpoena). Defendants cite no authority to support their position that they are entitled to the number of unresponsive documents that did not hit upon search terms—least of all where a Court-ordered stipulation already provides for a more rigorous and logical procedure.

In sum, Defendants, IPPs, and DPPs spent months negotiating the stipulated ESI protocol and a discovery plan governing the negotiation of search terms in this these consolidated actions.

Hon. Virginia K. DeMarchi
July 27, 2021
Page 6

DPPs have more than complied in good faith with their obligations under those Court orders,[5] and are entitled to refuse to deviate from the procedures those orders provide.

### D. Request for Hearing

Defendants are more than happy to attend a hearing if it would be helpful for the Court.

DPPs' position is that no hearing is necessary to deny this Motion.

### E. Discovery Cut-off Dates

No cut off dates for fact or expert discovery have been set. No class certification date or trial date has been set yet.

The parties' deadline to reach agreement regarding all remaining search terms for all previously-agreed upon custodians (both Defendant custodians and DPP custodians) is July 27, 2021. The deadline for the parties to submit a letter brief to the court regarding any inability to reach agreement with regards to any such search term is August 3, 2021.

### F. Meet-and-Confer Attestation

Defendants' Position: I, Ashlee Lin, attest that I met and conferred with Ron Fisher, counsel for DPPs on at least July 8 and July 15, 2021 about this dispute.

DPPs' Position: The meet and confer efforts regarding this motion have not been adequate, nor have complied with the Court's Standing Order. In violation of this Court's Standing Order, lead counsel for Defendants ceased attending standing meet and confer calls regarding search terms weeks ago, which has unnecessarily prolonged that process. Because Defendants no longer have a person with decision-making authority at the conferences, their position regarding any issue cannot be provided until the next call a week later. Lead counsel's failure to attend meet and confers has also generated confusion, including confusion about when the parties reached an impasse as to the instant motion. DPPs therefore respectfully request that

---

[5] Defendants' assertion that DPPs have only "provided a hit count report for a single Radio City custodian" is grossly misleading. As DPPs first disclosed to Defendants months ago, the home of Radio City's principal Dan Fish suffered an electrical fire after Radio City's operations had wound down. That fire (which resulted in the total loss of the Fish family home) damaged Radio City computers and hard drives that had been stored in Mr. Fish's basement. Thus, only Mr. Fish's personal computer (which was not stored in the basement) has reasonably accessible ESI. Although the data on the damaged devices is not reasonably accessible, DPPs have nevertheless engaged two separate computer forensic vendors to attempt to recover data, at a cost presently exceeding thirty thousand dollars. In sum, Defendants' suggestion that there is anything nefarious about DPPs' conduct in conferring regarding hit counts lacks any basis.

the Court reiterate its Order that lead counsel for all parties—DPPs, IPPs, and Defendants—attend future meet and confer conferences.

Respectfully submitted,

Date: July 27, 2021

/s/ Christopher Frost
Christopher Frost (SBN 200336)
cfrost@eisnerlaw.com
Amber Henry (SBN 247624)
ahenry@eisnerlaw.com
Ashlee N. Lin (SBN 275267)
alin@eisnerlaw.com
Rosie Cole (SBN 322185)
rcole@eisnerlaw.com
EISNER, LLP
9601 Wilshire Blvd., 7th Floor
Beverly Hills, California 90210
Telephone: (310) 855-3200
Facsimile: (310) 855-3201

*Attorneys for Celestron Acquisition, LLC, David Shen, Sylvia Shen, Jack Chen, Jean Shen, Suzhou Synta Optical Technology Co., Ltd., Nantong Schmidt Opto-Electrical Technology Co. Ltd., Synta Technology Corp., SW Technology Corporation, Synta Canada International Enterprises Ltd., Olivon Manufacturing Group Ltd., Joe Lupica, Corey Lee, Dave Anderson, Laurence Huen, Olivon USA, and Pacific Telescope Corp.*

Date: July 27, 2021

/s/ Ronald J. Fisher
J. Noah Hagey
Matthew Borden
Ellen V. Leonida
Ronald J. Fisher
Gunnar Martz
Hunter B. Thomson
BRAUNHAGEY & BORDEN LLP
351 California Street, 10th Floor

San Francisco, CA  94104
Telephone:  (4105) 599-0210
Facsimile:  (415) 276-1808
*Interim Counsel for Direct Purchaser Plaintiffs*

## ATTESTATION

I, Ashlee N. Lin, am the ECF User whose ID and password are being used to file this document. In compliance with Civil L.R. 5-1(i)(3), I hereby attest that all counsel have concurred in this filing.

/s/ Ashlee N. Lin
Ashlee N. Lin