September 1, 2021

<u>**VIA ECF**</u>

Hon. Virginia K. DeMarchi
United States District Court for the Northern District of California
San Jose Courthouse - Courtroom 2 - 5th Floor
280 South 1st Street
San Jose, CA 95113

RE: **Joint Discovery Letter Brief re 30(b)(6) Depositions**
    ***In re Telescopes Antitrust Litig.*, Nos. 5:20-cv-03639-EJD (VKD),**
    **5:20-cv-03642-EJD (VKD) (N.D. Cal.)**

Your Honor:

   Direct Purchaser Plaintiffs ("DPPs") and Indirect Purchaser Plaintiffs ("IPPs") (collectively, "Plaintiffs") and Defendants Celestron Acquisition, LLC, David Shen, Sylvia Shen, Jack Chen, Jean Shen, Suzhou Synta Optical Technology Co., Ltd., Nantong Schmidt Opto-Electrical Technology Co. Ltd., Synta Technology Corp., SW Technology Corporation, Synta Canada International Enterprises Ltd., Olivon Manufacturing Group Ltd., Joe Lupica, Corey Lee, Dave Anderson, Laurence Huen, Olivon USA, and Pacific Telescope Corp. (collectively, "Defendants") respectfully submit this joint discovery letter brief.

<u>**Statement of Dispute**</u>

   This dispute concerns the scope of topics and procedures for a Federal Rule of Civil Procedure 30(b)(6) deposition of Defendants Synta Tech and Suzhou Synta regarding document destruction.  On May 26, 2021, Defendants informed Plaintiffs that all custodial documents of Synta Technology Corp. ("Synta Tech") and Suzhou Synta Optical Technology Co., Ltd. ("Suzhou Synta") had been destroyed. According to counsel for Defendants, the employees of Synta Tech and Suzhou Synta destroyed the documents when both entities were dissolved in 2016. On July 2, 2021, Plaintiffs served a Notice of 30(b)(6) Deposition on Synta Tech and Suzhou Synta regarding the document destruction.

   The parties have agreed on most topics and procedures regarding the depositions. There are, however, four remaining disputes:

   1. Whether Plaintiffs may question Synta Tech and Suzhou Synta about litigation they contemplated around the time of the document destruction, including their preservation polices prior to the Orion litigation and "other" litigation;

Hon. Virginia K. DeMarchi
September 1, 2021

2. The timing and location of the depositions;

3. Whether Plaintiffs may question Synta Tech and Suzhou Synta regarding communications with counsel about the destruction of documents; and

4. The extent to which Plaintiffs may question Synta Tech and Suzhou Synta about the whereabouts of Joyce Huang after the destruction of documents.

This joint discovery letter brief will address the first two disputes.

### IPPs' Position

The destruction of documents by Synta Tech and Suzhou Synta by employee Joyce Huang about which Plaintiffs seek at Rule 30(b)(6) deposition is not a run-of-the-mill destruction of business documents as part of the regular course of business. Rather, as explained below, Plaintiffs have reason to believe, based on statements by Synta Tech and Suzhou Synta's counsel, that the destruction was specifically for the purpose of avoiding further antitrust litigation arising from the same facts as the earlier, *Orion* litigation.

Further, the employee who destroyed the documents, Joyce Huang, was not a run-of-the-mill employee. Rather, she served as a go-between between the two main competitors—Ningbo Sunny and Synta. Among other activities, Ms. Huang, a Synta Tech employee, discussed pricing and payment terms with Ningbo Sunny, coordinated meetings with Ningbo Sunny, and issued invoices on behalf of Ningbo Sunny. *See* IPPs Sec. Am. Consol. Class Action Compl. ¶ ¶ 124, 134, 149 (Aug. 31, 2021), ECF No. 197.

Therefore, the destruction of documents from two defendants, involving an employee who allegedly facilitated the conspiracy seriously impedes Plaintiffs' prosecution of this case.

Dispute One: Litigation Contemplated at the Time of Document Destruction

Plaintiffs seek to question Synta Tech and Suzhou Synta about the *Orion* litigation and other potential litigation that was contemplated by either entity at the time of their respective document destruction.

The *Orion* litigation was the original antitrust lawsuit filed against some of the Defendants in which the jury found numerous Sherman Act violations. In that case, Synta Tech and Suzhou Synta were identified as co-conspirators and settled with the plaintiff prior to the filing of the initial complaint.

On June 18, 2021, during a recorded meet and confer, lead counsel for Defendants, Christopher Frost, stated the following in response to a question about Synta Taiwan's decision to cease operations and destroy all documents:

Hon. Virginia K. DeMarchi
September 1, 2021

> The aggravation of having to deal with a potential lawsuit was the straw that broke the camel's back in terms of them finally saying this is not worth it to have to own the business and deal with the United States any further given what we've now been through.

06/18/21 Zoom Recording at 12:30.

During that recorded meet and confer, on the same topic, counsel for Defendants also stated:

> I'll get you an exact date. My understanding it was within weeks or a month after the settlement agreement in the *Orion* case. *That's what prompted it*. It was them saying we don't want to have to deal with this nonsense anymore.

*Id.* at 6:20 (emphasis added).

Based on defense counsel's representations regarding the role of "a potential lawsuit" and "the *Orion* case," Plaintiffs' 30(b)(6) deposition notice of Synta Tech on document destruction included the following topics:

> <u>Topic 1</u>: Synta Technology's policies, procedures, guidelines, and practices (including any changes over time) concerning the deletion, backup, and preservation of documents, implemented *prior to the Orion Litigation*.

> <u>Topic 2</u>: The manner and extent to which Synta Technology preserved documents *in anticipation of the Orion Litigation or any other litigation*. . . .

> <u>Topic 3</u>: The decision to destroy Synta Technology's documents. This includes . . . *any potential litigation claims* Synta Technology was aware of at the time the decision was made. . . .

> <u>Topic 11</u>: Synta Technology's *understanding of the Orion Litigation and other litigation* that could have arisen from the facts *underlying the Orion Litigation*.

Ex. 1. These topics were also served on Suzhou Synta. Ex. 2.

In response, Defendants objected to these topics "on the grounds that the Orion Litigation or any litigation other than the present litigation is not relevant to the issue of document preservation in this case." *See* Ex. 1 at 4-6, 10; Ex. 2 at 4-6, 10.

Defendants' objection should be overruled for at least three reasons. First, and foremost, the relevance of the "Orion Litigation or any litigation other than the present litigation" was

Hon. Virginia K. DeMarchi
September 1, 2021

established when defense counsel stated in a recorded meet and confer that the "aggravation of having to deal with a potential lawsuit" and the *Orion* litigation "prompted" the decision to cease operations and destroy all documents. Both the destruction of the documents and the litigation-related reason for doing so implicates evidence spoliation.

Second, numerous courts have recognized a duty to preserve documents where, as defense counsel has represented here, Defendants were fully aware of their involvement in ongoing and/or potential litigation. *See, e.g., In re Pradaxa (Dabigatran Etexilate) Prods. Liability Litig.*, No. 312MD02385DRHSCW, 2013 WL 6486921, at *6 (S.D. Ill. Dec. 9, 2013), *order rescinded on other grounds sub nom. In re Pet. of Boehringer Ingelheim Pharm., Inc., and Boehringer Ingelheim Intl. GmbH, in Pradaxa (Dabigatran Etexilate) Prods. Liab. Litig.*, 745 F.3d 216 (7th Cir. 2014) ("In the instant case, as the Court has previously concluded, BIPI's duty to preserve material relevant to this litigation arose in February 2012 when it received a lean letter regarding the first post-launch Pradaxa product liability suit."); *Phillip M. Adams & Assocs., LLC v. Winbond Elecs. Corp.*, No. 1:05-CV-64 TS, 2010 WL 3767318, at *3 (D. Utah Sept. 16, 2010) ("[S]hortly after the *Toshiba* settlement MSI knew or should have known that litigation was imminent and therefore had a duty to preserve evidence."); *In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d 1060, 1075 (N.D. Cal. 2006) ("Hummer systematically failed to preserve emails on its company servers, thereby destroying Napster-related communications that resided on the servers during the relevant time period."); *Livingston v. Isuzu Motors, Ltd.*, 910 F. Supp. 1473, 1494 (D. Mont. 1995) ("Given Isuzu's knowledge of the Jeep CJ rollover problem in the U.S., as well as other information known industry wide involving the rollover factor in narrow track utility vehicles, Isuzu had notice of potential relevance to this and other litigation involving their product.").

Defendants attempt to distinguish this authority by stating that "in every case cited by Plaintiff, the duty to preserve evidence was triggered by the prospect of probable litigation with the party asserting a claim for spoliation." This is false. In three of the four cases cited, the duty to preserve extended well beyond the initial plaintiff that triggered the duty. The *Pradaxa* court found that the "lean letter regarding the *first* post-launch" products liability suit triggered a duty to preserve that extended to "nationwide Pradaxa product liability litigation, involving hundreds of cases." 2013 WL 6486921, at *1. In *Phillip M. Adams & Associates*, the settlement of a "large class action lawsuit against Toshiba" triggered the duty to preserve asserted by the individual plaintiff, Adams & Associates, against the defendant, Winbond. 2010 WL 3767318, at *1-3. In *Livingston*, the duty to preserve was not even triggered by a specific plaintiff. 910 F. Supp. at 1494. Rather, the court found that it was the defendant's "knowledge of the Jeep CJ rollover problem in the U.S., as well as other information known industry wide" that triggered the duty to preserve. *Id.*

Third, the authorities Defendants have provided in support of their objections are inapposite. In each of those cases, the court declined to recognize a duty to preserve when there was no evidence that the document destruction was tied to the avoidance of litigation. Here, by contrast, defense counsel's statements, at minimum, strongly suggests the destruction was done for that very purpose.

Hon. Virginia K. DeMarchi
September 1, 2021

Dispute Two: Deposition Dates and Location

Plaintiffs have worked in good faith for months to negotiate the location and date of these 30(b)(6) depositions. Despite those efforts, Defendants have refused to agree to a definitive timeline for the depositions to take place.

Specifically, in light of COVID-19 concerns, Plaintiffs proposed a compromise 21-day timeframe commencing at the end of applicable travel prohibitions and Taiwan's mandatory quarantine:

>With the exception of individuals specifically described below, all depositions will take place within 30 days of the Court's resolution of issues submitted on August 25, 2021.
>
>If an individual is not permitted to travel to the Northern District of California at any point during this 30-day period under local, state, federal, and/or international laws relating to COVID, that individual will be deposed *within 21 days of the earliest date* they are legally eligible to travel to the District.
>
>If an individual resides in Taiwan during this 30-day period and has not traveled outside of Taiwan for at least six months, that individual will be deposed *within 21 days of the earliest date* they are no longer required to quarantine for 14 days after travel from the District in a quarantine hotel or a group quarantine facility as is currently mandated by the Taiwan Centers for Disease Control.

Ex. 3 at 1(emphasis added).

In response, Defendants stated they were unwilling to agree to the 21-day timeframe. Defendants have further refused to provide an alternative timeframe other than to say they will do their best to schedule the depositions when possible. Such a nebulous representation is insufficient when viewed in the context of Defendants' extensive delay in the case thus far. As but one example, it has been over a year since the litigation commenced and *Defendants have not produced a single document* in response to Plaintiffs' requests for production.

IPPs believe it is imperative that something definitive be set in place to ensure this deposition is promptly conducted as soon as it is safe to do so and ask the Court to enter Plaintiffs' proposed schedule. While a deposition by zoom may be an appropriate alternative in some circumstances, IPPs believe the subject of document destruction, especially in light of Mr. Frost's comments and the importance of live cross-examination to address issues of credibility, require that the depositions proceed in person.

Hon. Virginia K. DeMarchi
September 1, 2021

**DPPs' Position**

Dispute One: Litigation Contemplated at the Time of Document Destruction

DPPs generally agree with the relief sought by IPPs. Plaintiffs should be permitted to question Synta Tech and Suzhou Synta regarding the *Orion* litigation as set forth in Topics 1, 2, 3, and 11.

Dispute Two: Deposition Dates

DPPs generally agree with the relief sought by IPPs. Defendants should be required to produce the relevant witnesses for deposition within 21 days of the earliest date they are legally eligible to travel to the District.

**Defendants' Position**

Dispute One:  Relevance of Preservation Issues for Orion and "Other" Litigation:

In conjunction with Topic Nos. 1, 2, and 11, Plaintiff has sought information regarding Defendants' preservation of documents "***prior to the Orion Litigation***", "the manner and extent to which [the noticed party] preserved documents ***in anticipation of the Orion Litigation or any other litigation***", and the "[noticed party]'s ***understanding of the Orion Litigation and other litigation that could have arisen from the facts underlying the Orion Litigation.***"

However, no matter how hard Plaintiffs attempt to stretch the case law, Defendants' preservation policies ***prior*** to receiving the demand letter from the proposed class representatives which led to the instant litigation are simply irrelevant.  *See Oracle Am., Inc. v. Hewlett Packard Enter. Co*., 328 F.R.D. 543, 551 (N.D. Cal. 2018) ("HPE could not provide any authority to support its argument that Oracle's obligation to preserve evidence in connection with *Itanium* carries over to this litigation"); *Tidenberg v. Bidz.com, Inc*., No. CV085553PSGFMOX, 2009 WL 10698394, at *5–6 (C.D. Cal. Dec. 1, 2009) ("Plaintiff has offered no authority for the proposition that where a party's duty to preserve evidence is triggered by notice of probable litigation, that duty extends, without limit, to those with whom litigation was not foreseeable (let alone "probable"). Rather, in every case cited by Plaintiff, the duty to preserve evidence was triggered by the prospect of probable litigation *with the party asserting a claim for spoliation*. *See, e.g., In re Napster*, 462 F.Supp.2d at 1069 (finding that defendant's duty to preserve attached when plaintiff—the party seeking sanctions—threatened to sue defendant if it did not immediately cease its infringing activities")); *In re Napster, Inc. Copyright Litig*., 462 F. Supp. 2d 1060, 1072 (N.D. Cal. 2006) (concluding that although investor knew litigation was possible at the time of his investment, he had no duty to preserve documents until he was told that the recording industry intended to sue Napster's investors).

Hon. Virginia K. DeMarchi
September 1, 2021

This is especially true given that even if relevant, Plaintiffs in this matter have no standing to seek any type of relief. *See Brigham Young Univ. v. Pfizer, Inc*., 282 F.R.D. 566, 572–73 (D. Utah 2012). For example, there, the Court concluded:

> Likewise, any duty Pfizer owed parties in other litigation would belong to that party and not BYU. BYU asserts that "The duty to preserve runs to the legal system generally." The Court disagrees….It is difficult for the Court to imagine how a party could ever dispose of information under such a broad duty because of the potential for some distantly related litigation that may arise years into the future.

Nor does *In re Pradaxa (Dabigatran Etexilate) Prods. Liab. Litig*., No. 3:12-MD-02385-DRHSCW, 2013 WL 6486921 (S.D. Ill. Dec. 9, 2013) help Plaintiffs. There, the Court concluded the manufacturer of Pradaxa was "acutely aware that nationwide litigation involving hundreds of case (if not more) was imminent," when a plaintiff in one of thirty pending cases moved to consolidate the cases in one district, and Plaintiff's counsel anticipated additional actions would be filed shortly, which was expressly communicated to the manufacturer. None of those facts exist here. Rather, after resolving the Orion Litigation in 2016 through a confidential settlement agreement, the noticed Defendants understood the matter to be fully resolved and subsequently wound down their businesses around the same time. Indeed, it was at this time – i.e. **four years before the instant litigation** – that they deleted their company documents **as part of the normal process of winding down the companies**.

Moreover, courts have criticized the reasoning and holding in *In re Pradaxa*. *See e.g. H.J. Heinz Co. v. Starr Surplus Lines Ins. Co*., No. 2:15-CV-00631-AJS, 2015 WL 12791338, at *3 (W.D. Pa. July 28, 2015) (distinguishing Pradaxa because it "involved a second motion for sanctions based on a number of discovery violations, including providing the Court with inaccurate information and failing to comply with previous discovery orders.") For instance, in *In re Ethicon, Inc. Pelvic Repair Sys. Prod. Liab. Litig*., 299 F.R.D. 502, 517 (S.D.W. Va. 2014), the Court rejected the manner in which plaintiffs relied on *Pradaxa*, which is similar to Plaintiffs' reliance here. Specifically, the Court stated "Plaintiffs rely on this decision for their position that a single case gives rise to a widespread duty to preserve evidence. However, In re Pradaxa can be distinguished from this litigation in two ways. First, the issue in In re Pradaxa was whether a case filed before the launch of Pradaxa© triggered a preservation duty for post-launch cases. The manufacturer argued that it did not, but agreed that the duty to preserve arose with the first post-launch claim. Ethicon makes no similar concession. Second, the amount of time between the first post-launch Pradaxa© claim and the thirty lawsuits filed nationwide was minimal. In this case, it was more than two years after resolution of the first TVT case that a second case, which was filed pro se, was served on Ethicon." Here, and even longer than in *Ethicon*, it was approximately 4 years after the Orion Litigation was settled, that the noticed Defendants received any notice of the threat of litigation.

Left with no merited arguments, Plaintiffs are relegated to arguing that counsel somehow made this topic relevant by claiming that Plaintiffs destroyed documents to avoid litigation. That

Hon. Virginia K. DeMarchi
September 1, 2021

is not what happened.  Nor is it what was represented.  06/18/21 Zoom Recording at 23:7-15
(Defense counsel:  "***just so we're clear, I'm not saying they closed the businesses because of
the litigation*** [i.e. Orion litigation].") The businesses were closed in the ordinary course, and the
records discarded in the same manner.  The business closures were for normal business reasons,
but, yes, as counsel explained, both Defendants were exhausted by having had to deal with the
Orion litigation.  That litigation was already in the process of being resolved, so there was no
likelihood of further litigation.  Indeed, nobody could have anticipated that BraunHagey &
Borden would try to leverage their eventual victory into two putative class actions after
Defendants did not pay Orion even more money following the Orion verdict against Ningbo
Sunny and Meade Instruments.  Counsel's statements—which are not evidence and which were
qualified by "his understanding"—did not reflect that the clients were concerned about the
potential for future litigation, or that this purported belief (which was not even the case)
somehow guided the decision to discard the records, but that the final straw had been the
exhaustion they suffered at the potential for litigation (then-resolved) by Orion.  This was only
one consideration among many in closing the businesses and discarding the records in the
ordinary course.

   To be clear, Defendants have no objection to Plaintiffs inquiring as to whether
Defendants anticipated further litigation at the time the documents were discarded.  Defendants
also have no objection to any questions concerning the state of the Orion settlement at the time
of the discarding of the documents.  Beyond that, any requested inquiries are irrelevant, and
meant only to bolster a false narrative.

Dispute Two: Location and Timing of Depositions:

   Plaintiffs have demanded the depositions of Suzhou Synta and Synta Tech – which relate
*solely* to document preservation issues - take place in person in the Northern District of
California.  Unfortunately, at present, the witnesses that Defendants have identified with
personal knowledge regarding these issues are based in Taiwan and China, and given the current
travel restrictions, including mandatory quarantine procedures in these countries, it would be
extremely burdensome, if not impossible, for them to currently travel to the United States to
testify.  It would also be unsafe.  The United States does not recognize the vaccine currently
being administered in China, and the Delta variant is unfortunately infecting even those who
have been vaccinated with United States-approved vaccines.

   Accordingly, Defendants offered to make these witnesses available for deposition
remotely.  This is perfectly consistent with the manner in which depositions are commonly taken
in litigation in these current pandemic times. Plaintiffs have refused to agree to a remote
deposition relying on the Court's May 5, 2021 Order.

   As an initial matter, the Court's May 5th Order does not require depositions be in-person.
Rather, the Order states that in-person depositions are "only a presumption. . . subject to rebuttal
and modification based on the particular circumstances presented."  Here, the circumstances
compel a different result.

Hon. Virginia K. DeMarchi
September 1, 2021

Specifically, while the restrictions and procedures are constantly changing, there is currently a surge of the Delta variant in Taiwan which resulted in closed borders and new quarantine protocols that require any Taiwanese returning to the island to enter quarantine for 14 days and undergo testing before they may leave.  Defendants should not be forced to shoulder this undue burden when the depositions can simply take place remotely, a method which Defendants have repeatedly offered and as most depositions are conducted in even domestic matters.  This is especially true here given these depositions are narrowly limited to document preservation issues rather than the substantive merits of the case.

While Plaintiffs provided Defendants with a proposal for an in-person deposition, their proposal is unworkable.  Plaintiffs demand these witnesses appear in the United States within 30 days of any court order or, for certain individuals, within 21 days of any current restrictions being lifted despite the health issues the Delta variant presents.  Given the changing restrictions and uncertainty related to COVID, the parties simply cannot schedule a date certain for the depositions to be completed, if done in person.  In other words, if Plaintiffs' proposal is ordered, it is likely the parties will be forced to repeatedly brief the issue with the Court to extend or otherwise move any court ordered deadline.  If travel from China or Taiwan is required, it should only be after all restrictions are lifted for an extended period of time, and it is confirmed safe to travel.  Plaintiffs appeared to acknowledge this issue, but claimed concern that without a deadline the depositions would be delayed endlessly.  However, if Plaintiffs simply agree to a remote deposition this would moot that entire concern.  If Plaintiffs insist on in-person depositions, on the other hand, it should only be when travel is safe, and not before.

Accordingly, the noticed Defendants respectfully request that they be able to appear remotely for these document preservation depositions.

## Request for Hearing

Plaintiffs are available to appear before the Court to address any questions or concerns.  Defendants believe a hearing on these issues would be beneficial.

## Meet-and-Confer Attestation

The undersigned attests that she repeatedly conferred telephonically with Ashlee Lin, counsel for Defendants, and Ronald Fisher, counsel for DPPs, about this dispute, including most recently on August 24, 2021.

Hon. Virginia K. DeMarchi
September 1, 2021

Respectfully submitted,

DATED:  September 1, 2021

*/s/ Kalpana Srinivasan*
Kalpana Srinivasan (Bar No. 237460)
Marc M. Seltzer (Bar No. 54534)
Steven Sklaver (Bar No.237612)
Michael Gervais (Bar No. 330731)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Ste. 1400
Los Angeles, CA 90067
Telephone: 310-789-3100
ksrinivasan@susmangodfrey.com
mseltzer@susmangodfrey.com
ssklaver@susmangodfrey.com
mgervais@susmangodfrey.com

Alejandra C. Salinas (pro hac vice)
Texas SBN 24102452
**SUSMAN GODFREY L.L.P.**
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone: (713) 651-9366
asalinas@susmangodfrey.com

*/s/ Lin Y. Chan*
Lin Y. Chan (SBN 255027)
lchan@lchb.com
Eric B. Fastiff (SBN 182260)
efastiff@lchb.com
Reilly T. Stoler (SBN 310761)
rstoler@lchb.com
Jon Fougner (SBN 314097)
jfougner@lchb.com
**LIEFF CABRASER HEIMANN &
BERNSTEIN LLP**
275 Battery Street, 29th Floor
San Francisco, California 94111
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

Catherine P. Humphreville (pro hac
vice)
**LIEFF CABRASER HEIMANN
& BERNSTEIN LLP**
250 Hudson Street, 8th Floor
New York, New York 10013
Telephone: (212) 355-9500
Facsimile: (212) 355-9592
chumphreville@lchb.com

10

Hon. Virginia K. DeMarchi
September 1, 2021

*/s/ Adam J. Zapala*
Adam J. Zapala
Elizabeth T. Castillo
Tamarah P. Prevost
Reid W. Gaa
**COTCHETT PITRE & McCARTHY, LLP**
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Tel: (650) 697-6000
Fax: (650) 697-0577
azapala@cpmlegal.com
ecastillo@cpmlegal.com
tprevost@cpmlegal.com
rgaa@cpmlegal.com

*Interim Co-Lead Counsel for Indirect Purchaser Plaintiffs*

*/s/ Matthew Borden*
J. Noah Hagey
Matthew Borden
Ronald Fisher
Gunnar Martz
Athul K. Acharya
**BRAUNHAGEY & BORDEN LLP**
351 California Street, 10th Floor
San Francisco, CA  94104
Telephone:  (4105) 599-0210
Facsimile:  (415) 276-1808

*Interim Counsel for Direct Purchaser Plaintiffs*

*/s/ Christopher Frost*
Christopher Frost (SBN 200336)
cfrost@eisnerlaw.com
Amber Henry (SBN 247624)
ahenry@eisnerlaw.com
Ashlee N. Lin (SBN 275267)
alin@eisnerlaw.com
Rosie Cole (SBN 322185)
rcole@eisnerlaw.com
**EISNER, LLP**
9601 Wilshire Blvd., 7th Floor
Beverly Hills, California 90210
Telephone: (310) 855-3200
Facsimile: (310) 855-3201

Hon. Virginia K. DeMarchi
September 1, 2021

*Attorneys for Celestron Acquisition,*
*LLC, David Shen, Sylvia Shen, Jack*
*Chen, Jean Shen, Suzhou Synta Optical*
*Technology Co., Ltd., Nantong Schmidt*
*Opto-Electrical Technology Co. Ltd.,*
*Synta Technology Corp., SW*
*Technology Corporation, Synta Canada*
*International Enterprises Ltd., Olivon*
*Manufacturing Group Ltd., Joe Lupica,*
*Corey Lee, Dave Anderson, Laurence*
*Huen, Olivon USA, and Pacific*
*Telescope Corp.*

Hon. Virginia K. DeMarchi
September 1, 2021

## ATTESTATION

I, Alejandra C. Salinas, am the ECF User whose ID and password are being used to file this document. In compliance with Civil L.R. 5-1(i)(3), I hereby attest that all counsel have concurred in this filing.

/s/ Alejandra C. Salinas
Alejandra C. Salinas

13