September 1, 2021

<u>**VIA ECF**</u>
<u>**PURSUANT TO SECTION 4(c) OF THE**</u>
<u>**COURT'S STANDING ORDER RE CIVIL CASES**</u>

The Honorable Virginia K. DeMarchi
United States District Court for the Northern District of California
San Jose Courthouse, Courtroom 2 – 5th Floor
280 South 1st Street
San Jose, CA 95113

> **Re:    Joint Discovery Letter Brief re: Topic 14 in the 30(b)(6) Deposition Notices to Suzhou Synta and Synta Tech. –** *Spectrum Scientifics, LLC, et al. v. Celestron Acquisition LLC, et al.*, **Case No. 5:20-cv-03642-EJD-VKD (N.D. Cal.)**

Your Honor:

Direct Purchaser Plaintiffs ("DPPs") and Indirect Purchaser Plaintiffs ("IPPs") (collectively, "Plaintiffs"), on behalf of the proposed classes of direct and indirect purchaser plaintiffs, and Defendants Suzhou Synta Optical Technology Co. ("Suzhou Synta") and Synta Technology Corporation of Taiwan ("Synta Tech."), respectfully submit this discovery letter brief pursuant to Section 4(c) of the Court's Standing Order re Civil Cases.

<u>**STATEMENT OF ISSUE**</u>

Synta Taiwan and Synta Tech. claim to have destroyed all relevant documents in their possession, custody, or control. Plaintiffs served 30(b)(6) depositions notices on these defendants concerning the circumstances of this destruction. After extensively meeting and conferring about the deposition topics, the parties have reached an impasse with respect to Topic 14:

> To the extent not addressed in prior topics, the specific circumstances by which [Suzhou Synta's/Synta Tech.'s] current and former counsel was first informed of [Suzhou Synta's Synta Tech.'s] document destruction. This includes identification of all individuals involved in the communication, the means by which the communication was made, confirmation as to whether or not a record of the communication exists, and the date the communication was made.

Synta Taiwan and Synta Tech. refuse to produce a witness on the Topic on the basis that it covers privileged information. Plaintiffs contend that the information in the Topic is discoverable and non-privileged.

-1-

## DISCOVERY CUTOFFS

**Plaintiff's Position:** The parties' deadline to reach agreement regarding all remaining search terms for all previously agreed upon custodians (both Defendant custodians and DPP custodians) was August 23, 2021. The deadline for the parties to submit a letter brief to the court regarding any inability to reach agreement with regards to any such search term is August 30, 2021. The parties' deadline for producing documents is November 1, 2021.

**Defendants' Position:** No discovery cutoff dates have been set.

## DPPS' POSITION

### A.    Defendants Shut Down to Avoid Litigation and Destroyed Their Documents

In May 2021—months after the Rule 26 conference in this case—the meet-and-confer process imposed by the Discovery Plan in this case forced Defendants to disclose that Defendants Synta Tech. and Suzhou Synta (together, "Spoliating Defendants") had destroyed all of their documents.

Defendant Synta Tech. is one of the owners of Defendant Celestron and is the center of the illegal price-fixing conspiracy found by the jury in the Orion litigation. Defendant Suzhou Synta is the original Chinese telescope factory for the Synta conglomerate headed by Defendant David Shen.

The Spoliating Defendants' lawyer claimed that Synta Tech. shut down its business to avoid litigation in the United States. In specific, the Spoliating Defendants' counsel stated that Synta Tech. destroyed all of its documents because "the aggravation of having to deal with a potential lawsuit was the straw that broke the camel[']s back" and "the fact that they had faced a lawsuit in the United States, a potential lawsuit in the United States over that very business which they finally said this is just not worth the aggravation anymore."  (**Ex. A** (6/18/21 Meet and Confer Transcript) at 14:15-21, 22:9-13.) The Spoliating Defendants' lawyer further represented that Joyce Huang, a former employee of Synta Tech. who was at the center of the antitrust conspiracy that the jury found in the *Orion* litigation, stole Defendant Synta Tech.'s documents and disappeared without a trace. (*Id*. at 2:24-3:15.) According to the Spoliating Defendants' lawyer, Defendant Suzhou Synta destroyed every last one of its documents after shutting down for the same reasons that Synta Tech. shut down.  (*Id*. at 2:24-3:8.)

Plaintiffs served 30(b)(6) deposition notices to each of the Spoliating Defendants to obtain testimony concerning their document retention protocols, the decision to destroy documents, and related matters. (**Exs. B, C.**) The parties have met and conferred for nearly two months regarding these notices, but Court intervention is necessary to resolve this and several other disputes.

**B.**      **Defendants' 30(b)(6) Witnesses Should be Prepared to Testify About the Circumstances Under Which Their Lawyers Were Informed About the Document Destruction**

In the 30(b)(6) deposition notices to Spoliating Defendants, Plaintiffs included Deposition Topic 14, which provides:

> To the extent not addressed in prior topics, the specific circumstances by which [Suzhou Synta's/Synta Tech.'s] current and former counsel was first informed of [Suzhou Synta's Synta Tech.'s] document destruction. This includes identification of all individuals involved in the communication, the means by which the communication was made, confirmation as to whether or not a record of the communication exists, and the date the communication was made.

The Spoliating Defendants have refused to provide a witness to testify to this topic. Their objections assert that they will provide a witness to testify only about the date that their lawyer in this case was informed about the document destruction, but will not permit any follow-up questions or questions relating to any other issues related to the topic. This kind of blanket refusal is improper.

"A party asserting the attorney-client privilege has the burden of establishing the existence of an attorney-client relationship and the privileged nature of the communication." *United States v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010) (alterations omitted) (quoting *United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009)). "Issues concerning application of the attorney-client privilege in the adjudication of federal law are governed by federal common law." *Ruehle*, 583 F.3d at 608 (quoting *United States v. Bauer*, 132 F.3d 504, 510 n.4 (9th Cir. 1997)). The Ninth Circuit applies an eight-part test to determine whether information is covered by the attorney-client privilege applies:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

*Graf*, 610 F.3d at 1156. The party asserting privilege must prove each element for the privilege to apply. *Id*.

Whether any question implicates privilege is a case-by-case determination. The Spoliating Defendants have not and cannot show that every conceivable question on Topic 14 necessarily would require only privileged information. Accordingly, they should be compelled to produce a knowledgeable witness without prejudice to them making appropriate objections were any question to seek privileged information.

The "identification of all individuals involved in the communication, the means by which the communication was made, and confirmation as to whether or not a record of the communication exists" are factual matters that are not privileged. Nor would any follow-up questions on these topics necessarily implicate any, much less all, of the factors in *Graf*. To the contrary, the answers to these questions may well reveal that no privilege applies. [1]

The Spoliating Defendants have failed to provide *any* information about the nature of the communications at issue. Instead, they contend that any question within Topic 14 is per se privileged.  This is plainly incorrect. *Graf* aside, the Federal Rules, themselves, provide that a party making a claim of privilege must "describe the nature of the documents, communications, or tangible things not produced or disclosed--and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."  Fed. R. Civ. P. 26(b)(5)(A)(ii). In this circumstance, the only way that will occur is through deposition questions to these witnesses.[2]

The existence of communications with counsel is not privileged—and the Spoliating Defendants have already disclosed to Plaintiffs the fact that the communication with their lawyer about the topic occurred, as well as some of the substance of these communications.[3] Whether the communication took place by phone or by email is likewise not privileged; nor is the identity of the individuals involved.  Indeed, these are categories of information that are routinely provided as a matter of course in a privilege log, as part of the process of proving up claims of privilege.  *See, e.g., Gragg v. Orange Cab Co., Inc*., No. C-13-80109-JSW (DMR), 2013 WL 12147720, at *2 (N.D. Cal. May 22, 2013) (ordering production of privilege log that includes "(a) the title and description of the document, including number of pages or Bates-number range; (b) the subject matter addressed in the document; (c) the identity and position of its author(s); (d) the identity and position of all addressees and recipients; (e) the date the document was prepared and, if different, the date(s) on which it was sent to or shared with persons other than its author(s); and (f) the specific basis for the claim that the document is privileged or protected").

Those topics can be revelatory.  If, for example, third parties were included on communications with counsel, any privilege would be waived, and the Spoliating Defendants would be required to provide that information.  *See, e.g., Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, No. 16-cv-00236-WHO (DMR), 2019 WL 1950381, at *7 (N.D. Cal. May 1, 2019) (concluding that sharing attorney communications with third parties waived the privilege and ordering communications be produced). The Spoliating Defendants cannot

---

[1] This is why Defendants' belated offer made to limit the topic to the *Graf* factors (made in the first time in this letter brief) is insufficient. Plaintiffs must have the opportunity to ask follow-up questions if a witness's answers indicate that no privilege applies. This is the only way that a privilege dispute can be developed and crystallized for the Court's resolution.

[2] Defendants' contention that the parties had reached an agreement not to ask such question is false. To the contrary, DPPs expressly rejected the purported agreement referenced by Defendants. (**Ex. D**.)

[3] Plaintiffs are not asking the Court to resolve the question of subject-matter waiver at this time, though they reserve the right to do so in the future.

preemptively cordon off potentially relevant areas of inquiry, particularly when the objection is based on unsupported and overly broad assertions of privilege. Plaintiffs are permitted to test those claims of privilege and to learn the non-privileged information concerning those communications that the Spoliating Defendants must provide to sustain a claim of privilege. This is necessary to crystallize any dispute regarding the applicability of the privilege for resolution by the Court, if necessary.

In sum, Plaintiffs are entitled to test the Spoliating Defendants' claims of privilege at deposition and should not be foreclosed from even asking questions about the nature of the communication beyond merely the date that it took place.

### C.    Conclusion

For the foregoing reasons, DPPs request an order compelling the Spoliating Defendants to produce a witness to testify regarding Topic 14.

### IPPS' POSITION

IPPs generally agree with the relief sought by DPPs. Plaintiffs should be permitted to question Synta Tech and Suzhou Synta regarding any non-privileged information responsive to Topic 14.

### DEFENDANTS' POSITION

Plaintiffs' motion is unmerited and misrepresents the indisputable record in this case. In July, Plaintiffs sent 30(b)(6) Deposition Notices to Suzhou Synta and Synta Technology relating to their preservation of documents. Plaintiffs sent the Notices pursuant to Defendants' voluntary agreement to produce a corporate representative on the decision in or around 2016 of Suzhou Synta and Synta Taiwan to discard their corporate records in connection with closing down the operations of both businesses. (Neither business has been active in close to five years now.) The discarding of the documents, as the depositions will show, was routine, within the ordinary course, and in violation of no preservation obligations. After meeting and conferring, Defendants served written objections to the Notices and the parties continued to meet and confer regarding four mains issues, among others.

With respect to then-Topic 6 (now Topic 14), Defendants explained it improperly invaded the attorney-client privilege. IPPs' counsel agreed the communications were likely privileged, and therefore *Plaintiffs* proposed during the call the Topic be limited to the date Defendant's counsel was first informed of the document deletion, a compromise to which Defendants agreed. See **Ex. E**. Consequently, on August 5, 2021, Plaintiffs sent First Amended 30(b)(6) Deposition Notices which reflected the parties' agreement with respect to Topic 6 and replaced the previous topic with the following: "To the extent not addressed in prior topics, the date Synta Technology's counsel in this case was first informed of Synta Technology's document destruction." See **Ex. F**.

Defendants served written objections to the First Amended 30(b)(6) Notices on August 9, 2021, and during a call the next day, the parties acknowledged they were at an impasse and agreed to exchange letter briefs regarding the foregoing issues.

Defendants and IPPs (but not DPPs) appeared to agree on Topic 14. Indeed, the parties expressly agreed the topic would be limited to the date counsel became aware of the document deletion issue as any further communications would be privileged. Despite this and the First Amended Deposition Notices which expressly reflected this agreement, Plaintiffs then added the original content of Topic 6 back in as Topic 14 in its Second Amended Notices and continue to seek privileged attorney client communications without any authority for their position. Plaintiffs' counsel speculated aloud that defense counsel was somehow involved in the deletion of documents in 2016 so they have a right to inquire into privileged communications. This insinuation is untrue, offensive, and without any foundation whatsoever.

Now, it appears Plaintiffs are claiming that they do not seek privileged communications, but rather the non-privileged circumstances surrounding those communications. To the extent Plaintiffs want to inquire about when counsel was first informed, how long the discussion lasted, and who was present, Defendants have no objection to those limited questions. But the topic is broader than those limited inquiries, and all throughout the meet and confer process, DPPs (and initially the IPPs) continued to probe as to their ability to seek privileged information. Although Plaintiffs claim that any privilege objections may be made at the depositions, allowing the broad topic to remain as written guarantees further arguments as to asserted privileges at the deposition.

Therefore, Topic 14 is more appropriately limited to:

The date on which counsel was informed of the discarding of documents, the attendees of the discussion, and how long it lasted.

So that there is no misunderstanding, the balance of Plaintiffs' portion of this Motion is simply false. Even the designation of Suzhou Synta and Synta Taiwan as "spoliating defendants" demonstrates that Plaintiffs have pre-determined that these two entities have engaged in misconduct. Nothing could be further from the truth, which is exactly the reason Defendants volunteered to provide the witnesses in the first place—to put an end to this red herring of an issue that has no legal or factual basis.

Plaintiffs' pre-determined claim of wrongdoing rests on their claim that Defendants admitted to destroying documents to avoid litigation. That is simply false, and the deposition testimony will speak for itself. See also Ex.A at 23:7-15 (Defense counsel: "*just so we're clear, I'm not saying they closed the businesses because of the litigation* [i.e. Orion litigation].") The businesses were closed in the ordinary course, and the records discarded in the same manner. The business closures were for normal business reasons, but, yes, as counsel explained, both Defendants were exhausted by having had to deal with the Orion litigation. That litigation was already in the process of being resolved, so there was no likelihood of further litigation. Indeed, nobody could have anticipated that BraunHagey & Borden would try to leverage their eventual victory into two putative class actions after Defendants did not pay Orion even more money following the Orion verdict against Ningbo Sunny and Meade Instruments. Counsel's statements—which are not evidence and which were qualified by "his understanding"—did not reflect that the clients were concerned about the potential for future litigation, or that this purported belief (which was not even the case) somehow guided the decision to discard the records, but that

the final straw had been the exhaustion they suffered at the potential for litigation (then-resolved) by Orion.  This was only one consideration among many in closing the businesses and discarding the records in the ordinary course.

In short, Defendants do not object to questions limited to the topic as identified above, but Plaintiffs' meet and confer commentary, which they chose not to revive here, makes it clear that they have every intention to delve into privilege issues—which communications between these lawyers and these Defendants clearly would be.

Respectfully submitted,

/s/ Matthew Borden

Matthew Borden
BraunHagey & Borden LLP
Interim Lead Counsel for Proposed Class of Direct Purchaser Plaintiffs, and Counsel to Spectrum Scientifics, LLC, and Radio City, Inc.

/s/ Kalpana Srinivasan
Kalpana Srinivasan (Bar No. 237460)
Marc M. Seltzer (Bar No. 54534)
Steven Sklaver (Bar No.237612)
Michael Gervais (Bar No. 330731)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Ste. 1400
Los Angeles, CA 90067
Telephone: 310-789-3100
ksrinivasan@susmangodfrey.com
mseltzer@susmangodfrey.com
ssklaver@susmangodfrey.com
mgervais@susmangodfrey.com

Alejandra C. Salinas (pro hac vice)
Texas SBN 24102452
**SUSMAN GODFREY L.L.P.**
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone: (713) 651-9366
asalinas@susmangodfrey.com

/s/ Lin Y. Chan
Lin Y. Chan (SBN 255027)
lchan@lchb.com
Eric B. Fastiff (SBN 182260) efastiff@lchb.com
Reilly T. Stoler (SBN 310761)

rstoler@lchb.com
Jon Fougner (SBN 314097)
jfougner@lchb.com
**LIEFF CABRASER HEIMANN
& BERNSTEIN LLP**
275 Battery Street, 29th Floor
San Francisco, California 94111
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

Catherine P. Humphreville (pro hac vice)
**LIEFF CABRASER HEIMANN
& BERNSTEIN LLP**
250 Hudson Street, 8th Floor
New York, New York 10013
Telephone: (212) 355-9500
Facsimile: (212) 355-9592
chumphreville@lchb.com

*/s/ Adam J. Zapala*
Adam J. Zapala
Elizabeth T. Castillo
Tamarah P. Prevost
Reid W. Gaa
**COTCHETT PITRE & McCARTHY, LLP**
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Tel: (650) 697-6000
Fax: (650) 697-0577
azapala@cpmlegal.com
ecastillo@cpmlegal.com tprevost@cpmlegal.com
rgaa@cpmlegal.com

*Interim Co-Lead Counsel for Indirect Purchaser
Plaintiffs*

*/s/ Christopher Frost*

Christopher Frost
Eisner LLP
Counsel for Defendant Celestron Acquisition, LLC

## REQUEST FOR HEARING

**DPPs' Position:** DPPs believe that a hearing would benefit the parties.

**IPPs' Position:** IPPs are available to appear before the Court to address any questions or concerns.

**Defendant's Position:** Defendants also believe a hearing would benefit the parties.

## FILING ATTESTATION

Pursuant to Civil Local Rule 5-1(i)(3), I, Matthew Borden, attest that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

*/s/ Matthew Borden*

Matthew Borden
BraunHagey & Borden LLP
Interim Lead Counsel for Proposed Class of Direct
Purchaser Plaintiffs, and Counsel to Radio City, Inc.

## MEET AND CONFER ATTESTATION

Pursuant to the Court's Standing Order in Civil Cases, I, Matthew Borden, attest that the parties complied with the Standing Order's requirement to meet and confer. Ronald J. Fisher, co-lead counsel for Plaintiffs, conferred via Zoom multiple times over the past two months about this matter, including most recently on August 24, 2021.

*/s/ Matthew Borden*

Matthew Borden
BraunHagey & Borden LLP