September 1, 2021

**VIA ECF**
**PURSUANT TO SECTION 4(c) OF THE**
**COURT'S STANDING ORDER RE CIVIL CASES**

The Honorable Virginia K. DeMarchi
United States District Court for the Northern District of California
San Jose Courthouse, Courtroom 2 – 5th Floor
280 South 1st Street
San Jose, CA 95113

    **Re:**    **Joint Discovery Letter Brief re: Topic 15 in the 30(b)(6) Deposition Notices to Suzhou Synta and Synta Tech. –** *Spectrum Scientifics, LLC, et al. v. Celestron Acquisition LLC, et al.*, **Case No. 5:20-cv-03642-EJD-VKD (N.D. Cal.)**

Your Honor:

    Direct Purchaser Plaintiffs ("DPPs") and Indirect Purchaser Plaintiffs ("IPPs") (collectively, "Plaintiffs"), on behalf of the proposed classes of direct and indirect purchaser plaintiffs, and Defendants Suzhou Synta Optical Technology Co. ("Suzhou Synta") and Synta Technology Corporation of Taiwan ("Synta Tech."), respectfully submit this discovery letter brief pursuant to Section 4(c) of the Court's Standing Order re Civil Cases.

**STATEMENT OF ISSUE**

    Synta Taiwan and Synta Tech. claim to have destroyed all relevant documents in their possession, custody, or control. Plaintiffs served 30(b)(6) depositions notices on these defendants concerning the circumstances of this destruction. After extensively meeting and conferring about the deposition topics, the parties have reached an impasse with respect to Topic 15: "The whereabouts of Joyce Huang following the destruction of [Suzhou Synta's/Synta Tech.'s] documents through the present." Synta Taiwan and Synta Tech. refuse to produce a witness on the Topic on the basis that it is irrelevant. Plaintiffs contend that the information in the Topic is relevant because it may aid efforts to recover missing material, or reveal witnesses with relevant knowledge.

**DISCOVERY CUTOFFS**

    **Plaintiff's Position:** The parties' deadline to reach agreement regarding all remaining search terms for all previously agreed upon custodians (both Defendant custodians and DPP custodians) was August 23, 2021. The deadline for the parties to submit a letter brief to the court regarding any inability to reach agreement with regards to any such search term is August 30, 2021. The parties' deadline for producing documents is November 1, 2021.

    **Defendants' Position:** No discovery cutoff dates have been set.

## DPPS' POSITION

### A. Defendants Shut Down to Avoid Litigation and Destroyed Their Documents

In May 2021—months after the Rule 26(f) conference in this case—the meet-and-confer process imposed by the Discovery Plan in this case forced Defendants to disclose that Defendants Synta Tech. and Suzhou Synta (the "Spoliating Defendants") had destroyed all of their documents.

Defendant Synta Tech. is one of the owners of Defendant Celestron and is the center of the illegal price-fixing conspiracy found by the jury in the Orion litigation. Defendant Suzhou Synta is the original Chinese telescope factory for the Synta conglomerate headed by Defendant David Shen.

The Spoliating Defendants' lawyer claimed that Synta Tech. shut down its business to avoid litigation in the United States. In specific, the Spoliating Defendants' counsel stated that Synta Tech. destroyed all of its documents because "the aggravation of having to deal with a potential lawsuit was the straw that broke the camel[']s back" and "the fact that they had faced a lawsuit in the United States, a potential lawsuit in the United States over that very business which they finally said this is just not worth the aggravation anymore." (**Ex. A** (6/18/21 Meet and Confer Transcript) at 14:15-21, 22:9-13.) The Spoliating Defendants' lawyer further represented that Joyce Huang, a former employee of Synta Tech. who was at the center of the antitrust conspiracy that the jury found in the *Orion* litigation, stole Defendant Synta Tech.'s documents and disappeared without a trace. (*Id*. at 2:24-3:15.) According to the Spoliating Defendants' lawyer, Defendant Suzhou Synta destroyed every last one of its documents after shutting down for the same reasons that Synta Tech. shut down. (*Id*. at 2:24-3:8.)

Plaintiffs served 30(b)(6) deposition notices to each of the Spoliating Defendants to obtain testimony concerning their document retention protocols, the decision to destroy documents, and related matters. (**Exs. B, C.**) The parties have met and conferred for nearly two months regarding these notices, but Court intervention is necessary to resolve this and several other disputes.

### B. Defendants' 30(b)(6) Witnesses Should be Prepared to Testify About Joyce Huang's Whereabouts Since She Supposedly Absconded with Their Documents

In the 30(b)(6) deposition notices to Defendants, Plaintiffs included Deposition Topic 15, which provides: "The whereabouts of Joyce Huang following the destruction of [Suzhou Synta's/Synta Tech.'s] documents through the present." Defendants objected on relevance grounds, asserting that the material is irrelevant.

Lead counsel for Defendants has asserted that Joyce Huang absconded with Synta Tech.'s documents after the company shut down in approximately 2016. (**Ex. A** (6/18/21 Meet and Confer Transcript) at 3:9-14.) Those documents are highly relevant to this litigation because Joyce Huang transmitted Defendant Ningbo Sunny's pricing information to its horizontal competitor David Shen and his coterie of companies (Synta Tech., its subsidiary Celestron,

Suzhou Synta, and the other Synta Defendants). In the Orion litigation, the jury unsurprisingly found that such conduct violated Sherman Act § 1, which prohibits collusion between horizontal competitors. Joyce Huang also helped act in furtherance of the conspiracy by coordinating identical emails from Synta and its horizontal competitor Ningbo Sunny withdrawing credit from their customers, which is a form of price-fixing. *Catalano, Inc. v. Target Sales, Inc.*, 446 U.S. 643, 648 (1980) (Because "credit terms must be characterized as an inseparable part of the price[,]" an "agreement to terminate the practice of giving credit to a customer is thus tantamount to an agreement to eliminate discounts, and thus falls squarely within the traditional *per se* rule against price fixing") (per curiam).

Plaintiffs are entitled to seek discovery directed towards recovering Ms. Huang and/or Synta Tech.'s purportedly missing documents and identifying witnesses who may have relevant information about their removal and or destruction. Such discovery easily falls within the familiar and broad relevancy standard established by Rule 26. *See* Rule 26(b)(1). For example, information about where Ms. Huang has been since she supposedly absconded with the documents is a first step in efforts to track down the documents. It may prompt investigatory leads and may lead to other people or entities who may have information relating to the documents or their destruction. Plaintiffs are entitled to learn where the documents might be or what witnesses might be able to corroborate or contradict the narrative presented by Defendants, and that begins with information about where Ms. Huang has been and employed by since taking the documents from Defendant Synta Tech.[1]

To the extent that Suzhou Synta's documents were similarly destroyed or absconded with by Ms. Huang, the Topic would be equally relevant for Suzhou Synta's 30(b)(6) witness as well. And if they were not affected by Ms. Huang, then Suzhou Synta's preparation for Topic 15 will impose no burden whatsoever.[2]

### C. Conclusion

For the foregoing reasons, DPPs request that Topic 15 be included in the notices of deposition for Defendants' 30(b)(6) witnesses designated to testify about their document destruction.

---

[1] Defendants' description of the meet and confer—particularly their contention that "[w]hen Defendants asked how this information was relevant, IPPs' counsel deferred to DPPs' counsel who simply restated it was relevant"—is inaccurate. In fact, Defendants never asked that question, and IPPs, not DPPs, took the lead on discussing this issue. (**Ex. D** at 11:11-15:12.)

[2] The Spoliating Defendants suggest that Topic 15 is burdensome because it requires them to investigate the whereabouts of Ms. Huang, including vacations and the like, since the destruction of the Spoliating Defendants' documents. But that is not so. Rather, the Spoliating Defendants need only be prepared to testify to the information on this subject in their possession, custody, or control.

## IPPS' POSITION

IPPs agree with DPPs that, at minimum, Plaintiffs should be permitted to inquire about Ms. Huang's whereabouts around the time of the document destruction and since this litigation commenced.

## DEFENDANTS' POSITION

Joyce Huang worked for Synta Tech. In 2016, as part of the normal course of winding the company down, she deleted any remaining company files, and the computers were then sold and/or recycled. In their Second Amended Notice, Plaintiffs demand – for the *first* time - that the noticed Defendants testify about Ms. Huang's "whereabouts" for all parts of the past five years. This is grossly overbroad as even the IPPs appear to concede. While Defendants agree Plaintiffs can inquire as to Ms. Huang's present whereabouts, and her whereabouts at the time that any documents were discarded or deleted, there is zero basis to demand that the witness provide a log of her "whereabouts" over every single period of time over the past five years. This information is completely irrelevant and burdensome to compile (especially as this is a period of time when she no longer worked for any Defendant). During the parties' meet and confer, Defendants never received an answer as to how the information is relevant either.[3] Rather, IPPs' counsel deferred to DPPs' counsel, and, as DPPs admit in these papers, DPPs provided no explanation other than the bald conclusion that the information is relevant.

Now, for the first time in these papers, DPPs argue that the information is relevant because "information about where Ms. Huang has been since she supposedly absconded with the documents is a first step in efforts to track down the documents. It may prompt investigatory leads and may lead to other people or entities who may have information relating to the documents or their destruction." That argument makes no sense. How could an invasive inquiry into everywhere Ms. Huang traveled, vacationed, worked, lived, and visited be relevant to the singular inquiry of what happened to the documents, when, and why.

Undeterred, DPPs assert a false narrative to bolster their troubled argument. Even the designation of Suzhou Synta and Synta Tech as "spoliating defendants" demonstrates that Plaintiffs have pre-determined that these two entities have engaged in misconduct. Nothing could be further from the truth, which is exactly the reason Defendants volunteered to provide the witnesses in the first place—to put an end to this red herring of an issue that has no legal or factual basis.[4]

Plaintiffs' pre-determined claim of wrongdoing rests on their claim that Defendants admitted to destroying documents to avoid litigation. That is simply false, and the deposition testimony will speak for itself. See also Ex. A at 23:7-15 (Defense counsel: "***just so we're clear,***

---

[3] DPPs' strangely object to this characterization by solely citing to the last meet and confer call between the parties, which blatantly ignores that the parties specifically discussed the relevance of the requested information in previous calls. Additionally, as demonstrated by DPPs' own citations, Defendants again stated that Ms. Huang's whereabouts over the past five years was irrelevant, and DPPs did not provide any reasons for its relevance at that time.

[4] Defendants apologize for the repetitive nature of some of these arguments across the concurrently-filed letter briefs. DPPs, at the last minute, demanded a separate letter brief on each topic, after both Defendants and the IPPs had already prepared a single brief.

***I'm not saying they closed the businesses because of the litigation*** [i.e. Orion litigation].") The businesses were closed in the ordinary course, and the records discarded in the same manner. The business closures were for normal business reasons, but, yes, as counsel explained, both Defendants were exhausted by having had to deal with the Orion litigation. That litigation was already in the process of being resolved, so there was no likelihood of further litigation. Indeed, nobody could have anticipated that BraunHagey & Borden would try to leverage their eventual victory into two putative class actions after Defendants did not pay Orion even more money following the Orion verdict against Ningbo Sunny and Meade Instruments. Counsel's statements—which are not evidence and which were qualified by "his understanding"—did not reflect that the clients were concerned about the potential for future litigation, or that this purported belief (which was not even the case) somehow guided the decision to discard the records, but that the final straw had been the exhaustion they suffered at the potential for litigation (then-resolved) by Orion. This was only one consideration among many in closing the businesses and discarding the records in the ordinary course. Likewise, nobody claimed that Ms. Huang "absconded with" or "stole" documents.

Finally, DPPs' claim that Defendants only have to testify regarding information that is within their possession, custody, and control is a red herring. DPPs should not be allowed to inquire into this broad of a topic in the first place, and repeated questions into irrelevant topics (no matter the answer) will only unnecessarily prolong the depositions.

The simple fact is that Plaintiffs are not trying to discover what really happened to the documents. They are pre-determining wrongdoing, and are using that pre-determination, and the voluntary production of witnesses by Defendants, to seek overbroad and oppressive discovery. This topic should be limited to Ms. Huang's whereabouts at the time the documents were discarded, and her present whereabouts.

Respectfully submitted,

*/s/ Matthew Borden*

Matthew Borden
BraunHagey & Borden LLP
Interim Lead Counsel for Proposed Class of Direct
Purchaser Plaintiffs, and Counsel to Radio City, Inc.

*/s/ Kalpana Srinivasan*
Kalpana Srinivasan (Bar No. 237460)
Marc M. Seltzer (Bar No. 54534)
Steven Sklaver (Bar No.237612)
Michael Gervais (Bar No. 330731)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Ste. 1400
Los Angeles, CA 90067

Telephone: 310-789-3100
ksrinivasan@susmangodfrey.com
mseltzer@susmangodfrey.com
ssklaver@susmangodfrey.com
mgervais@susmangodfrey.com

Alejandra C. Salinas (pro hac vice)
Texas SBN 24102452
**SUSMAN GODFREY L.L.P.**
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone: (713) 651-9366
asalinas@susmangodfrey.com

*/s/ Lin Y. Chan*
Lin Y. Chan (SBN 255027)
lchan@lchb.com
Eric B. Fastiff (SBN 182260) efastiff@lchb.com
Reilly T. Stoler (SBN 310761)
rstoler@lchb.com
Jon Fougner (SBN 314097)
jfougner@lchb.com
**LIEFF CABRASER HEIMANN
& BERNSTEIN LLP**
275 Battery Street, 29th Floor
San Francisco, California 94111
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

Catherine P. Humphreville (pro hac vice)
**LIEFF CABRASER HEIMANN
& BERNSTEIN LLP**
250 Hudson Street, 8th Floor
New York, New York 10013
Telephone: (212) 355-9500
Facsimile: (212) 355-9592
chumphreville@lchb.com

*/s/ Adam J. Zapala*
Adam J. Zapala
Elizabeth T. Castillo
Tamarah P. Prevost
Reid W. Gaa
**COTCHETT PITRE & McCARTHY, LLP**
840 Malcolm Road, Suite 200
Burlingame, CA 94010

Tel: (650) 697-6000
Fax: (650) 697-0577
azapala@cpmlegal.com
ecastillo@cpmlegal.com tprevost@cpmlegal.com
rgaa@cpmlegal.com

*Interim Co-Lead Counsel for Indirect Purchaser Plaintiffs*

  /s/ *Christopher Frost*

Christopher Frost
Eisner LLP
Counsel for Defendant Celestron Acquisition, LLC

## REQUEST FOR HEARING

**DPPs' Position:** DPPs believe that a hearing would benefit the parties.

**IPPs' Position:** IPPs are available to appear before the Court to address any questions or concerns.

**Defendant's Position:** Defendants agree a hearing would be beneficial.

## FILING ATTESTATION

Pursuant to Civil Local Rule 5-1(i)(3), I, Matthew Borden, attest that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

   */s/ Matthew Borden*

Matthew Borden
BraunHagey & Borden LLP
Interim Lead Counsel for Proposed Class of Direct
Purchaser Plaintiffs, and Counsel to Radio City, Inc.

## MEET AND CONFER ATTESTATION

Pursuant to the Court's Standing Order in Civil Cases, I, Matthew Borden, attest that the parties complied with the Standing Order's requirement to meet and confer. Ronald J. Fisher, co-lead counsel for Plaintiffs, conferred via Zoom multiple times over the past two months about this matter, including most recently on August 24, 2021.

   */s/ Matthew Borden*

Matthew Borden
BraunHagey & Borden LLP