CHRISTOPHER FROST (SBN 200336)
chris@weinberg-gonser.com
JORDAN MATTHEWS (SBN 316301)
jordan@weinberg-gonser.com
WEINBERG GONSER LLP
10866 Wilshire Blvd., PH 165
Los Angeles, California 90024
Telephone:  (424) 407-4119
Facsimile:  (424) 238-3060

Amber Henry (SBN 247624)
ahenry@eisnerlaw.com
Ashlee N. Lin (SBN 275267)
alin@eisnerlaw.com
EISNER, LLP
9601 Wilshire Blvd.
7th Floor Beverly Hills, California 90210
Telephone: (310) 855-3200
Facsimile: (310) 855-3201

Attorneys for Defendants
Celestron Acquisition, LLC; David Shen;
Sylvia Shen; Jack Chen; Jean Shen;
Suzhou Synta Optical Technology Co.,
Ltd.; Nantong Schmidt Opto-Electrical
Technology Co. Ltd.; Synta Technology
orp.; SW Technology Corporation; Synta
Canada International Enterprises Ltd.;
Olivon Manufacturing Co. Ltd.; Joe
Lupica; Corey Lee; Dave Anderson;
Laurence Huen; Olivon USA; and
Pacific Telescope Corp.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| IN RE TELESCOPES ANTITRUST LITIGATION | Case No. 5:20-cv-03642-EJD |
| | **NOTICE OF MOTION AND MOTION OF DEFENDANTS TO DISMISS THIRD AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES** |
| THIS DOCUMENT RELATES TO: | |
| SPECTRUM SCIENTIFICS LLC, et al. Plaintiffs, | Judge: Hon. Edward J. Davila |
| | Date:        February 24, 2022 |
| vs. | Time:        9:00 am |
| CELESTRON ACQUISITION, LLC, et al., Defendants. | Ctroom:     4 (5th Floor) |

**TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on February 24, 2022, at 9:00 a.m., or as soon thereafter as counsel may be heard, before the Honorable Edward J. Davila of the United States District Court for the Northern District of California, in Courtroom 4 on the 5th floor of the above-captioned court located at 280 South 1st Street, San Jose, California 95113, Defendants Celestron Acquisition, LLC; David Shen; Sylvia Shen; Jack Chen; Jean Shen; Suzhou Synta Optical Technology Co., Ltd.; Nantong Schmidt Opto-Electrical Technology Co. Ltd.; Synta Technology Corp.; SW Technology Corporation; Synta Canada International Enterprises Ltd.; Olivon Manufacturing Co. Ltd.; Joe Lupica; Corey Lee; Dave Anderson; Laurence Huen; Olivon USA; and Pacific Telescope Corp. (collectively "Moving Defendants") will and hereby do move this Court to dismiss the Third Amended Consolidated Class Action Complaint (the "Third Amended Complaint").

This Motion is made pursuant to Fed. Rule of Civ. Proc. 12(b)(6) on the grounds that Plaintiffs cannot state claims for which relief can be granted. More specifically:

1.  Plaintiffs have not sufficiently stated any claims against Jack Chen; Jean Shen; Suzhou Synta Optical Technology Co., Ltd.; Nantong Schmidt Opto-Electrical Technology Co. Ltd.; SW Technology Corporation; Synta Canada International Enterprises Ltd.; Olivon Manufacturing Co. Ltd.; Olivon USA; and Pacific Telescope Corp.;

2.  Plaintiffs' pre-2013 claims are barred by the doctrine of laches and the applicable statutes of limitation;

3.  Plaintiffs have not sufficiently stated a pre-2013 claim under the Sherman Act, Section 1;

4.  Plaintiffs have not sufficiently stated a pre-2013 claim under the Sherman Act, Section 2;

5.  Plaintiffs have not sufficiently stated a pre-2013 claim under the

1    Clayton Act, Section 7; and

2        6.    Plaintiffs have not sufficiently stated claims under state law, or

3    alternatively, this Court should decline to exercise jurisdiction over those claims.

4        This Motion is based on this Notice of Motion, the attached Memorandum of

5    Points and Authorities, all of the pleadings, files, and records in this proceeding, all

6    other matters of which the Court may take judicial notice, and any argument or

7    evidence that may be presented to or considered by the Court prior to its ruling.

8

9    DATED:  October 12, 2021              WEINBERG GONSER, LLP

10

11

12                                    By:    _/s/ Christopher Frost_____
                                           CHRISTOPHER FROST
13                                         Attorneys for Moving Defendants

14

15   DATED:  October 12, 2021              EISNER, LLP

16

17

18                                    By:    _/s/ Amber Henry_____
                                           Amber Henry
19                                         Ashlee N. Lin
                                           Attorneys for Moving Defendants
20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ...................................................................................................... 1

II.  PLAINTIFFS CANNOT SUSTAIN CLAIMS FOR THE 2005 TO
     2012 CLASS PERIOD .............................................................................................. 2

    A.   Plaintiffs Cannot State A Pre-2013 Clayton Act §7 Claim ................... 2

    B.   Plaintiffs Cannot State A Pre-2013 Sherman Act §1 or §2 Claim ........ 3

    C.   Because Plaintiffs Cannot State Federal Antitrust Claims, Their
          Associated State Law Claims Are Barred As Well ............................... 8

III. PLAINTIFFS' CLAIMS ARE BARRED BY THE STATUTE OF
     LIMITATIONS .......................................................................................................... 8

    A.   The Complaint Concedes No Misconduct Occurred Within the
          Applicable Limitations Period ............................................................... 8

    B.   The Applicable Statute Was Not Tolled ................................................ 9

        1.   Plaintiffs' Self-Concealing Argument Fails As A Matter of
               Law ............................................................................................ 10

        2.   Plaintiffs Do Not Sufficiently Allege Fraudulent
               Concealment .............................................................................. 10

        3.   Plaintiffs Cannot Rely on a "Continuing Conspiracy"
               Theory ........................................................................................ 13

    C.   Even Assuming Defendants' Pre-2013 Conduct Was Wrongful,
          Plaintiffs' Claims For 2013 to At Least 2016 Are Time Barred ......... 14

IV.  PLAINTIFFS CANNOT STATE CLAIMS AGAINST MANY OF
     THE MOVING DEFENDANTS .............................................................................. 14

    A.   SW Technology and Synta Canada....................................................... 15

    B.   Pacific Telescope .................................................................................. 17

    C.   Nantong Schmidt and Suzhou Synta..................................................... 18

    D.   Jean Shen, Olivon Manufacturing, and Olivon USA ........................... 19

    E.   Jack Chen .............................................................................................. 20

V.   MOVING DEFENDANTS INCORPORATE THEIR DENIED
     ARGUMENTS FROM THE PRIOR MOTIONS TO DISMISS .................. 21

VI.  CONCLUSION ........................................................................................................ 21

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*In re Animation Workers*,
123 F. Supp. 3d 1175 (N.D. Cal. 2015)...............................................................10

*Arandell Corp. v. Centerpoint Energy Servs., Inc.*,
900 F.3d 623 (9th Cir. 2018) .............................................................................16

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .............................................................................................4

*Brennan v. Concord EFS, Inc*.,
369 F. Supp. 2d 1127 (N.D. Cal. 2005).............................................................15

*In re Cal. Title Ins.*,
2009 WL 1458025, at *8 .....................................................................................17

*In re Cal. Title Ins. Antitrust Litig.* (N.D. Cal. May 21, 2009) ...............................15

*Carter v. Variflex, Inc.*,
101 F.Supp. 2d 1261 (C.D. Cal. 2000).................................................................5

*In re Cathode Ray Tube I*,
738 F. Supp. 2d at 1019.......................................................................................18

*In re Cathode Ray Tube II*,
2016 WL 8669891 ...............................................................................................11

*Clarke v. Upton*,
703 F. Supp. 2d 1037 (E.D. Cal. 2010) ...........................................................4, 11

*Conmar Corp., v. Mitsui & Co. (U.S.A.),Inc.*
858 F.2d 499 (1988) ...........................................................................................10

*Cty. of Tuolumne v. Sonora Cmty. Hosp.*,
236 F.3d 1148 (9th Cir. 2001) .............................................................................8

*Garrison v. Oracle Corp.*,
159 F. Supp. 3d 1044 (N.D. Cal. 2016) . Case.................................................9, 10

*Hexcel Corp. v. Ineos Polymers, Inc.*,
  681 F.3d 1055 (9th Cir. 2012) .................................................................... 9

*Image Tech. Servs., Inc. v. Eastman Kodak Co.*,
  125 F.3d 1195 (9th Cir. 1997) .................................................................... 3

*Kendall v. Visa U.S.A., Inc.*,
  518 F.3d 1042 (9th Cir. 2008) .................................................................. 15

*Pace Indus., Inc. v. Three Phoenix Co.*,
  813 F.2d 234 (9th Cir. 1987) ...................................................................... 9

*Rebel Oil Co. v. Atl. Richfield Co.*,
  51 F.3d 1421 (9th Cir. 1995) ............................................................. 3, 5, 6

*Reveal Chat Holdco LLC v. Facebook, Inc.*,
  20-cv-00363-BLF (N.D. Cal. 2021) 2020 WL 3969064 .................................. 10

*Reyn's Pasta Bella, LLC v. Visa U.S.A.*,
  259 F. Supp. 2d 992 (N.D. Cal. 2003), aff'd sub nom., 442 F.3d 741
  (9th Cir. 2006) ........................................................................................ 2

*Ryan v. Microsoft Corp.*
  147 F. Supp. 3d 8 at 886 .......................................................................... 10

*Suguri v. Wells Fargo Bank*,
  No. CV 09-1828 (PSG), 2009 WL 2486546 (C.D. Cal. Aug. 7,
  2009) ...................................................................................................... 15

*Tanaka v. University of Southern California*,
  252 F.3d 1059 (9th Cir. 2001) .................................................................... 3

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  586 F. Supp. 2d 1109 (N.D. Cal. 2008) ................................................. 14, 18

*Williamson Oil Co., Inc. v. Philip Morris USA*,
  346 F.3d 1287 (11th Cir. 2003) ................................................................ 21

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
  91 S.Ct. 795 (1971) .................................................................................. 3

**California Cases**

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
  20 Cal. 4th 163 (1999) .............................................................................. 8

**Federal Statutes**

15 U.S.C.
    § 18 ...................................................................................................... 2

Cartwright Act ................................................................................... 8, 9

pre-2013 Clayton Act ................................................................... 2, 8, 21

Sherman Act ....................................................................................*passim*

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

This Court should grant the instant Motion to Dismiss the Third Amended Complaint.  Having had ample opportunity to remedy the pleading infirmities which plagued the Complaint, dated June 1, 2020, the First Amended Complaint, dated July 17, 2020, and the Second Amended Complaint, dated October 19, 2020, and continue to plague the Third Amended Complaint, Plaintiffs should not be given yet another "bite at the apple."

By Order dated June 2, 2020, this Court previously granted in part Moving Defendants' motion to dismiss the Second Amended Complaint on the basis that Plaintiffs failed to state valid causes of action for the time period of 2005 to 2012, and had not sufficiently alleged against various named defendants active involvement in the alleged anti-trust conspiracy.  As demonstrated below, in their Third Amended Complaint Plaintiffs have not only failed to remediate the pleading deficiencies identified in the Court's prior ruling, but have now confirmed why that ruling was correct and should hold.  Plaintiffs still cannot properly plead claims against all Moving Defendants for the 2005 to 2012 time period or against various Moving Defendants for any time period—despite having initiated this action more than 16 months ago and having repled the complaint three times now.[1]  This Motion should be granted without leave to amend.

---

[1] BraunHagey & Borden is in possession of strikingly voluminous records from the *Orion* litigation, and yet can only identify exhibits of alleged misconduct dated 2013 and later.  If there were more to the 2005 to 2012 "story," they would have pled it by now.

## II.   PLAINTIFFS CANNOT SUSTAIN CLAIMS FOR THE 2005 TO 2012 CLASS PERIOD

As this Court correctly noted in granting in part Moving Defendants' motion to dismiss Plaintiffs' Second Amended Complaint, Plaintiffs failed to allege any actionable conduct prior to 2013.   Plaintiffs' Third Amended Complaint does nothing to remedy that failure:

### A.   Plaintiffs Cannot State A Pre-2013 Clayton Act §7 Claim

In the Third Amended Complaint, as in their prior complaints, Plaintiffs cite to Clayton Act §7 in the caption and the second cause of action, but never again mention the Act, let alone show how the elements are met, for good reason.  They cannot plausibly state a claim, particularly for the time period of 2005 to 2012.

"The Clayton Act § 7 prohibits a corporation from acquiring the stock or assets of another corporation 'in any line of commerce' in which the effect 'may be substantially to lessen competition, or to tend to create a monopoly.'" 15 U.S.C. § 18.  *Reyn's Pasta Bella, LLC v. Visa U.S.A.*, 259 F. Supp. 2d 992, 1003, 1004 (N.D. Cal. 2003), aff'd sub nom., 442 F.3d 741 (9th Cir. 2006).

Under Section 7, a plaintiff "must allege that the acquisition will create an appreciable danger of anticompetitive consequences." *Id*. (citing *Cal. v. Sutter Health Sys.*, 130 F.Supp.2d 1109, 1119 (N.D. Cal. 2001). "The regulation of agreements, such as agreements collectively to fix prices, between business are not contained in the text of section 7 of the Clayton Act, which deals exclusively with acquisitions by businesses and the harms which result from these acquisitions." *Id.* at 1004 (emphasis added) (alleged price fixing agreement between competitors found insufficient to state a Section 7 claim).

Here, the only acquisition alleged in the Third Amended Complaint is the acquisition of Meade, which occurred in 2013.  No pre-2013 acquisition is alleged, and, therefore, no pre-2013 Clayton Act claim can survive.

## B.    <u>Plaintiffs Cannot State A Pre-2013 Sherman Act §1 or §2 Claim</u>

Section 1 of the Sherman Act makes unlawful "[e]very contract, combination. . . , or conspiracy, in restraint of trade or commerce among the States." 15 U.S.C. § 1. To state a claim under section 1 of the Sherman Act, Plaintiffs must allege that (1) Defendants entered into a contract, combination, or conspiracy; (2) this agreement unreasonably restrained trade under either a per se rule of illegality or a rule of reason analysis; and (3) the restraint affected interstate commerce. *Tanaka v. University of Southern California*, 252 F.3d 1059, 1062 (9th Cir. 2001) (internal quotations omitted).

Similarly, Section 2 of the Sherman Act prohibits monopolization or attempted monopolization of trade or commerce. 15 U.S.C. § 2. A plaintiff asserting an attempt claim must plead: (1) a specific intent to control prices or destroy competition; (2) predatory or anticompetitive conduct directed at accomplishing that purpose; (3) a dangerous probability of achieving "monopoly power," and (4) causal antitrust injury." *Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1434 (9th Cir. 1995). A monopoly claim requires: (1) the defendant possessed monopoly power in the relevant market; (2) the defendant willfully acquired or maintained that power; and (3) antitrust injury. *Image Tech. Servs., Inc. v. Eastman Kodak Co.*, 125 F.3d 1195, 1202 (9th Cir. 1997).

Here, Plaintiffs fail to allege any wrongful conduct pre-2013, let alone conduct that was likely to cause or actually caused antitrust injury. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 91 S.Ct. 795, 806 (1971) (a cause of action accrues and a statute begins to run when a defendant commits an act that injures a plaintiff's business). Plaintiffs cannot show that Defendants caused any injury prior to 2013.

Plaintiffs' only argument as to an alleged pre-2013 conspiracy is the claim that Ningbo Sunny forced customers to order inventory through Joyce Huang, and the bald allegation that this was "a primary means by which Synta and Ningbo

Sunny implemented their price-fixing regime." [Third Amended Complaint ¶89.][2] Setting aside the fact that use of a trading company, even one affiliated with a manufacturer, is not wrongful, but rather standard in the industry, Plaintiffs' bald allegation of price fixing is insufficient to state a Sherman Act claim. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ("[T]he tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements."). There is no allegation (other than a naked conclusion) supporting the claim that any prices were fixed, or that Synta and Ningbo Sunny were even selling the same inventory.

Plaintiffs' own exhibits purportedly offered to support their allegations, are, in fact, their very undoing. A simple review of Exhibits 13 and 14 shows that the sole example of Ms. Huang purporting to tell Ningbo Sunny to raise its price on a single occasion occurred in 2014 and 2015. *See, e.g., Clarke v. Upton,* 703 F. Supp. 2d 1037, 1041 (E.D. Cal. 2010) ("When ruling on a motion to dismiss, the court may consider the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint when authenticity is not contested, and matters of which the court takes judicial notice.") Indeed, every single exhibit to the

---

[2] Plaintiffs' argument is nothing short of a fraud on this Court. If necessary, the factual record will demonstrate that the use of Good Advance and Joyce Huang was at the request and suggestion of BraunHagey & Borden's other client, Orion. Orion had requested that Synta Taiwan help it obtain inventory from Ningbo Sunny, and the only way to legitimately facilitate payment was through the use of Good Advance (which was established in the British Virgin Islands) due to Chinese restrictions on payments flowing between Taiwan and China. It was wholly legitimate, openly known, and was structured that way not to create any secrecy, but to facilitate inventory sales for the benefit of Orion.

Complaint—which counsel concedes came from years of discovery in the *Orion* litigation—is dated at or after 2013.

Plaintiffs' allegations are similarly defective because there is no claim that pre-2013 conduct gave rise to sufficient monopoly power to influence and harm the market.  "A mere showing of substantial or even dominant market share alone cannot establish market power sufficient to carry out a predatory scheme." *Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1439 (9th Cir. 1995). "The plaintiff must show that new rivals are barred from entering the market and show that existing competitors lack the capacity to expand their output to challenge the predator's high price." *Id.*

This is true even for a Sherman Act Section 1 claim.  For instance, in *Carter v. Variflex, Inc.,* 101 F.Supp. 2d 1261, 1266, (C.D. Cal. 2000) the court reiterated that proof that defendants have power in a properly defined relevant market is required to maintain a Section 1 claim.  "To prove that the defendant has power in the market, the plaintiff must prove the relevant market and that the defendant has power within the market. *Id.* As the *Rebel Oil* court further held:

> Rebel argues that market power is not a prerequisite to antitrust injury if the claim is premised on Sherman Act §1.  It reasons that because vertical price fixing is per se illegal, *Arizona v. Maricopa County Medical Soc'y,* 457 U.S. 332, 347, 102 S.Ct. 2466, 2474–75, 73 L.Ed.2d 48 (1982), market analysis is not necessary. Rebel confuses proof of liability with proof of antitrust injury. *Per se* rules relieve plaintiffs of the burden of proving anticompetitive effects, which are assumed, but they do not excuse plaintiffs from showing that their injury was caused by the anticompetitive aspects of the illegal act.  *Newman v. Universal Pictures,* 813 F.2d 1519, 1522–23 (9th Cir.1987), *cert. denied,* 486 U.S. 1059, 108 S.Ct. 2831, 100 L.Ed.2d 931 (1988). The "mere presence" of a *per se* violation under

Sherman Act § 1 "does not by itself bestow on any plaintiff a private right of action for damages." [*Id.* at 1443-44.]

Here, the Complaint alleges merely that an "effective monopoly" was created only after the Meade transaction, and that substantial outside competition did exist prior to that time:

- "The effect of that merger has already lessened competition, raised barriers to entry, and tended to create a monopoly in the market for telescopes in the U.S." (Third Amended Complaint ¶162.)

- "With Ningbo Sunny's acquisition of Meade, which also had manufacturing capabilities, the number of sources of supply essentially diminished to two: Synta and Ningbo Sunny." (*Id.* ¶ 84.)

- "Competition, innovation, and consumer choice have also been restrained due to Ningbo Sunny's acquisition of Meade. Since Ningbo Sunny acquired Meade, Meade has not significantly competed with Celestron." (*Id.* ¶ 136.)

- "Moreover, the acquisition of Meade prevented companies that are trying to compete against Defendants, such as JOC, from obtaining a potential manufacturing facility and important intellectual property that would have increased competition. The concentration of patents and other intellectual property within the conspiracy has made it impossible for new entrants to challenge the conspirators. And the conspiracy's dominance over both manufacturing and distribution makes the development of a new manufacturing facility unprofitable because there is insufficient demand to support a new factory without selling to Celestron." (*Id.* ¶136.)

- "Ningbo Sunny and Synta have together controlled over 65% of the Manufacturing Market since 2012. In 2018, they controlled over 90%." (*Id.* ¶137.)

Indeed, Plaintiffs allege that, prior to 2013, Meade was a formidable competitor and market force.

- "For many years, Meade was the leading U.S. telescope brand." (Third Amended Complaint ¶92.)

- "The Federal Trade Commission blocked attempts by Celestron and Meade to merge in 1991 and 2002 because the mergers would have created monopolies and reduced competition." (*Id.* ¶93.)

- "If JOC had been able to complete the [Meade] purchase, it would have gained key knowledge about how to make high-end products, as well as a patent portfolio with which to compete against Synta and Ningbo Sunny. It also would have gained a brand to compete against Celestron in the Distribution Market." (*Id.* ¶94.)

Plaintiffs' claims for liability based on pre-2013 alleged conduct are also contradicted by their allegations that barriers to entry only existed at or after the time of the Meade acquisition:

- "Ningbo Sunny's plan to similarly dismantle Meade's manufacturing capabilities, and the failure of any replacement suppliers to emerge, demonstrates that the barriers to entry into the supply market, combined with Defendants' anticompetitive conduct, have effectively foreclosed competition at the supply level." (Third Amended Complaint ¶133.)

- "Competition, innovation, and consumer choice have also been restrained due to Ningbo Sunny's acquisition of Meade." (*Id.* ¶136.)

- "Since Ningbo Sunny acquired Meade, Meade has not significantly competed with Celestron." (*Id.*)

The simple fact is that Plaintiffs' claims are predicated principally on the Meade transaction and the effects alleged to have occurred thereafter. By hastily cutting and pasting baseless allegations relating to the 2005 to 2012 time period in

an attempt to artificially expand their class, Plaintiffs ignore the fact that their own allegations and exhibits fatally undermine such an attempt.

Even if Plaintiffs could demonstrate that these threadbare, contradicted allegations can state any claim against Synta Technology and Ningbo Sunny (they cannot), there is no allegation that any of the other Moving Defendants—including Celestron; David Shen; Sylvia Shen; Jack Chen; Jean Shen; Suzhou Synta; Nantong Schmidt; SW Technology; Synta Canada; Olivon Manufacturing; Joe Lupica; Corey Lee; Dave Anderson; Laurence Huen; Olivon USA; and Pacific Telescope Corp.—played any role in the alleged pre-2013 conduct.   By way of example, the only specific allegations of misconduct aimed at Sylvia Shen, Jack Chen, and Laurence Huen relate to their purported knowledge of and alleged participation in the 2013 Meade transaction.   Nantong Schmidt was not even formed until 2016. And Plaintiffs admit that the only allegation of misconduct of Corey Lee occurred in May 2015.  [Third Amended Complaint ¶119.]

C.   **Because Plaintiffs Cannot State Federal Antitrust Claims, Their Associated State Law Claims Are Barred As Well**

All of Plaintiffs' state law claims borrow from the federal claims.  *See, e.g., Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999); *Cty. of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1160 (9th Cir. 2001) ("The analysis under California's antitrust law mirrors the analysis under federal law because the Cartwright Act . . . was modeled after the Sherman Act."). As such, because there is no basis for the pre-2013 federal claims, there is likewise no basis for pre-2013 state law claims.

III.   **PLAINTIFFS' CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS**

A.   **The Complaint Concedes No Misconduct Occurred Within the Applicable Limitations Period**

Plaintiffs have alleged violations of the Sherman Act §§ 1, 2; Clayton Act § 7;

and the Cartwright Act—all of which Plaintiffs agree are subject to the four-year statute of limitations. *Garrison v. Oracle Corp.*, 159 F. Supp. 3d 1044, 1062–63 (N.D. Cal. 2016) (analyzing limitations period of these same claims). Case law is similarly clear that these claims accrue when a defendant commits an act that injures a plaintiff. *Id.* at 1066 (citation omitted) ("[I]n the Ninth Circuit, Sherman Act claims accrue under the default accrual rules at the time of the alleged anticompetitive conduct."); see also *Pace Indus., Inc. v. Three Phoenix Co.*, 813 F.2d 234, 237 (9th Cir. 1987) (emphasis added) (citation omitted) ("A cause of action in antitrust accrues each time a plaintiff is injured by an act of the defendant and the statute of limitations runs from the commission of the act."). There is no requirement that a "plaintiff actually discover its antitrust claims before the statute of limitations begins to run." *Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1060 (9th Cir. 2012).

Here, every claimed wrongful act in the Complaint is alleged to have occurred more than four years before the filing of this Action (*i.e.* before 2016)..   For instance, Plaintiff alleges:

- "The conspiracy begins in 2005."  (Third Amended Complaint ¶¶89-91.)
- "Defendants collude to acquire Meade [in 2013]."  (*Id.* ¶¶92-109.)
- Every single exhibit purporting to show any misconduct is dated from 2013-15.

There is no a single piece of evidence or allegation claiming any misconduct post 2015.

**B.    The Applicable Statute Was Not Tolled**

Implicitly acknowledging that their claims are barred by the statute of limitations, Plaintiffs attempt to plead that the statute of limitations should be tolled because: (i) the alleged conduct is self-concealing (Third Amended Complaint ¶157); (ii) the alleged misconduct was fraudulently concealed until 2019 (*id.* ¶¶150

et seq.); and (iii) a "continuing conspiracy" existed. None of these allegations is sufficient to salvage Plaintiffs' state law claims.

### 1.    Plaintiffs' Self-Concealing Argument Fails As A Matter of Law

Plaintiffs allege that the statute of limitations was tolled because Defendants' conduct was "self-concealing." (Third Amended Complaint ¶157.) The Ninth Circuit and this Court have squarely rejected that argument in antitrust cases. *Conmar*, 858 F.2d at 505 ("Conmar claims that Mitsui's acts constitute fraudulent concealment because they were by nature self-concealing. We require more."); *Garrison, supra*, 159 F. Supp. 3d at 1076 ("Plaintiffs must plead more than acts that 'by nature are self-concealing.'").

### 2.    Plaintiffs Do Not Sufficiently Allege Fraudulent Concealment

Plaintiffs cannot resuscitate their stale claims by claiming fraudulent concealment either. Plaintiff bears the burden of pleading and proving fraudulent concealment [*Conmar*, 858 F.2d at 502], which requires that plaintiff allege that: "(1) the defendant took affirmative acts to mislead the plaintiff; (2) the plaintiff did not have 'actual or constructive knowledge of the facts giving rise to its claim'; and (3) the plaintiff acted diligently in trying to uncover the facts giving rise to its claim. *In re Animation Workers*, 123 F. Supp. 3d 1175, 1194 (N.D. Cal. 2015) (quoting *Hexcel*, 681 F.3d at 1060); *see also Conmar*, 858 F.2d at 502.

"To allege fraudulent concealment, Plaintiffs must establish that 'its failure to have notice of its claim was the result of affirmative conduct.'" *Reveal Chat Holdco*, 2020 WL 3969064 (granting motion to dismiss). "Passive concealment of information is not enough to toll the statute of limitations, unless the defendant had a fiduciary duty to disclose information to the plaintiff." *Id*. Even "an affirmative act of denial" is insufficient, and "to find otherwise would effectively nullify the statute of limitations in these cases." *Id.; see also Ryan*, 147 F. Supp. 3d 8 at 886; *Reveal Chat Holdco*, 2020 WL 3969064, at *5.

1    Here, the only alleged fraudulent concealment is that Joyce Huang, Synta, and

2    Ningbo Sunny concealed this portion of their conspiracy by concealing the fact that

3    Ms. Huang was controlled by the broader Synta enterprise.  For example, the Third

4    Amended Complaint alleges that Ms. Huang, Synta, and Ningbo Sunny publicly

5    referred to Synta Tech as "Good Advance," and would pretend that Good Advance

6    was just a trading company with no connection to Synta."  (Complaint ¶90.)

7    Plaintiffs' argument does not meet any of the elements of fraudulent

8    concealment.  First, there is no affirmative act to conceal any information from

9    Plaintiffs.  Even if Synta Technology had "conceal[ed] the fact that Ms. Huang was

10   controlled by the broader Synta enterprise," that type of "failure to disclose" as

11   opposed to active concealment does not rise to the level of an affirmative

12   misrepresentation.  *See In re Cathode Ray Tube II*, 2016 WL 8669891, at *4

13   ("passive concealment is not enough.")

14   Finally, Plaintiffs cannot claim that they lacked actual or constructive

15   knowledge of where Joyce Huang really worked.  As Plaintiffs' own exhibits to the

16   Third Amended Complaint (Exs. 13, 14) demonstrate, Ms. Huang communicated

17   using a Synta email address.  *See, supra, Clarke,* 703 F. Supp. 2d at 1041 ("When

18   ruling on a motion to dismiss, the court may consider the complaint, documents

19   attached to the complaint,…).  Plaintiffs are, by definition, retailers.  If they had

20   been forced to purchase from Joyce Huang, as Plaintiffs allege, they would have

21   seen her email address on every single transaction.

22   The desperate nature of Plaintiffs' effort is best exemplified by Plaintiffs'

23   argument that "Celestron claims that Ms. Huang destroyed all evidence relating to

24   her and Synta Technology's role in the conspiracy in order to conceal the antitrust

25   conspiracy at issue in this suit from litigation such as this one. In specific, Synta

26   Technology's counsel admitted that Synta Technology destroyed its documents

27   because 'the aggravation of having to deal with a potential lawsuit was the straw

28   that broke the camel[']s back' and 'the fact that they had faced a lawsuit in the

United States, a potential lawsuit in the United States over that very business which they finally said this is just not worth the aggravation anymore.'"  [Third Amended Complaint ¶91.]

Plaintiffs' argument does not salvage its fraudulent concealment argument. Alleging that the records were destroyed to hide a conspiracy "on information and belief" is no substitute for the required showing of particularity of a substantive basis to support a claim.   There is also no sufficient basis to allege that any destruction in the ordinary course of business constituted an affirmative act of fraudulent concealment.

So that there is no doubt, Judge DeMarchi has already rejected Plaintiffs' intentional misreading of the alleged reasons for the document destruction—which occurred in the ordinary course of business in the process of closing down operations when no litigation was pending or anticipated.   More specifically, Moving Defendants disclosed the destruction of the records and voluntarily agreed to depositions relating to the reasons for the destruction.  Plaintiffs moved the Court to expand the scope of the depositions on the same spoliation theory articulated in the Third Amended Complaint.   The Court rejected that argument, and the only "evidence" on which Plaintiffs relied to support their argument of the reason for the document destruction—counsel's statements:

> Plaintiffs do not dispute Defendants' description of the timing of Plaintiffs' demand letter to the Synta defendants. They also do not identify any circumstances that they believe should have put the Synta defendants on notice of the reasonable prospect of further litigation following the Synta defendants' settlement of the Orion litigation and before the Synta defendants disposed of their corporate records. Rather, Plaintiffs rely solely on defendants' counsel's remarks during a recent discovery conference, which they interpret as an admission that the Synta defendants anticipated future litigation based on the

same facts underlying the Orion litigation and that the Synta defendants deliberately destroyed documents or permitted Joyce Huang to facilitate their removal or destruction. The Court has reviewed the transcript of the parties' discovery conference and is not persuaded that Defendants' counsel's remarks have the meaning and significance that Plaintiffs attribute to them. Absent some evidence that would support a finding that the Synta defendants should have anticipated future litigation and should have known that the corporate records they destroyed would be relevant to such litigation, there is no justification for the breadth of the inquiry encompassed by Topics 1-3 and 11."

[EFC 201 at 3-4; *see also* ECF 191 Ex. A [06/18/21 Zoom Recording at 23:7-15 (Defense counsel: "just so we're clear, I'm not saying they closed the businesses because of the litigation [i.e. *Orion* litigation].") .]

The simple fact is that there is no basis whatsoever to suggest that records were destroyed to hide a conspiracy, and the records on which Plaintiffs rely demonstrate the opposite. Absent more, Plaintiffs have no basis to state a claim for fraudulent concealment. If they were concerned about the fact that Joyce Huang worked in conjunction with Synta, they had every way of knowing and acting on that at the time.

### 3.  Plaintiffs Cannot Rely on a "Continuing Conspiracy" Theory

The "continuing conspiracy" doctrine also does not salvage Plaintiffs' claims for the time period of 2005 to 2012. As this Court recognized, the continuing conduct doctrine only allows Plaintiffs to seek redress for the previous four years:

The Court agrees with the court in *In re Packaged Seafood* that the continuing conspiracy doctrine does not entitle Plaintiffs to recover for all past injuries; rather, each new price-fixed sale triggers a new limitations period for Plaintiffs to recover "the damages caused by

1  that act." *Zenith Radio Corp.*, 401 U.S. at 338–39; *see also Klehr v.*

2  *A.O. Smith Corp.*, 521 U.S. 179, 189 (1997) ("[T]he commission of a

3  separate new overt act generally does not permit the plaintiff to

4  recover for the injury caused by old overt acts outside the limitations

5  period."); *In re Packaged Seafood*, 242 F. Supp. 3d at 1098 ("It does

6  not therefore necessarily follow that each new injury constitutes

7  Sherman-Act-compensable harm that—when timely litigated—

8  provides an avenue of redress for past, non-timely-pursued harms.").

9  However, the Court departs from the *In re Packaged Seafood*

10  analysis in finding that under *Oliver*, Plaintiffs may recover damages

11  for alleged price-fixed sales throughout the last four years.

12  [ECF 173 at p.9.]  In other words, Plaintiffs are limited to recovery for alleged and

13  proven misconduct which took place from 2016 forward.

14  **C.**   **Even Assuming Defendants' Pre-2013 Conduct Was Wrongful,**

15  **Plaintiffs' Claims For 2013 to At Least 2016 Are Time Barred**

16  This Court accepted for purposes of the prior motion to dismiss that Plaintiffs

17  were misled by certain defendants' alleged active concealment.  However, if it is

18  now Plaintiffs' position that misconduct was occurring *pre*-2013, this fundamentally

19  changes the analysis.  Indeed, because the alleged concealment—disguising Joyce

20  Huang's role with Synta—was actually knowable and discoverable, as discussed

21  above and in light of Joyce Huang's Synta email address, Plaintiffs were on notice

22  prior to 2013 of the alleged conspiracy—meaning Plaintiffs should have taken

23  reasonable steps to investigate further at that time.

24  **IV.   PLAINTIFFS CANNOT STATE CLAIMS AGAINST MANY OF THE**

25  **MOVING DEFENDANTS**

26  An antitrust complaint "must allege that each individual defendant joined the

27  conspiracy and played some role in it because, at the heart of an antitrust conspiracy

28  is an agreement and a conscious decision by each defendant to join it." *In re TFT-*

*LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1117 (N.D. Cal. 2008); *see also In re Cal. Title Ins. Antitrust Litig.*, at *7–8 (N.D. Cal. May 21, 2009). "Formulaic allegations lumping all Defendants together are insufficient to state a claim." *Suguri v. Wells Fargo Bank*, No. CV 09-1828 (PSG), 2009 WL 2486546, at *6 (C.D. Cal. Aug. 7, 2009); *see also Brennan v. Concord EFS, Inc*., 369 F. Supp. 2d 1127, 1136 (N.D. Cal. 2005) (dismissing complaint against certain defendants because it failed to plead allegations "specifically connecting [those defendants] to the alleged conspiracy"). For this reason, Plaintiffs are required to plead specific facts establishing the involvement of each and every named defendant. *See, e.g., Kendall v. Visa U.S.A., Inc*., 518 F.3d 1042, 1048 (9th Cir. 2008) (requiring allegations that answer the who, what, when and where of each purported conspirator's involvement).

Plaintiffs again fail to meet that burden with respect to several defendants:

### A.   SW Technology and Synta Canada

Plaintiff again concedes, that SW Technology is a holding company created to purchase Celestron.  [Third Amended Complaint ¶24.]   As this Court already recognized in dismissing the claims in the Second Amended Complaint against SW Technology, "the fact that SW was created for the purpose of acquiring Celestron in 2005 does not raise any inference of wrongdoing given that, as explained further below, the SAC does not allege any particular misconduct with respect to that acquisition. It is common for companies to create special purpose entities or holding companies for the purpose of acquiring a target, and without more, there is nothing nefarious about the use of such a holding company to acquire Celestron."  [ECF 173 at pp. 16-17.]

In this Complaint, Plaintiffs add the allegation that: "[b]ecause SW Technology is owned and operated by Defendants Synta Technology, David Shen and Sylvia Shen, it is a member of the conspiracy and liable for its acts."  [Third Amended Complaint at ¶25.]  Plaintiffs allege the same for Synta Canada.  [*Id.* ¶26.]

1    Plaintiffs' newfound allegation still does not state facts sufficient to state

2    claims against SW Technology and Synta Canada.  The fact that each is purportedly

3    owned and operated by Synta, David Shen, and Sylvia Shen does not make it—as a

4    separate entity—liable for alleged acts of others in the conspiracy.  Otherwise, every

5    entity with any tangential connection to any member of the alleged conspiracy

6    would automatically be a co-conspirator.

7        *Arandell Corp. v. Centerpoint Energy Servs., Inc.*, 900 F.3d 623, 631 (9th Cir.

8    2018), cited in the Complaint, does not hold differently.  Rather that case, which

9    applied Wisconsin law, involved a wholly-owned subsidiary (which is not alleged

10   here), and relied on the fact that the subsidiary itself "engage[d] in coordinated

11   activity in furtherance of the anticompetitive scheme of its parent and/or commonly

12   owned affiliates."    Indeed, the *Arandell* court recognized that, absent the

13   coordination to further the anticompetitive purpose, there can be no liability on the

14   part of the subsidiary because the law "does not supply a theory of unbounded

15   vicarious liability for the *acts* of legally distinct entities….and "does not support

16   holding a subsidiary liable for the parent's independent conduct."  *Id.* at 633.  For

17   this reason, this Court has already held it insufficient that Plaintiffs attempted to

18   allege that SW Technology was a wholly owned subsidiary of Synta Technology.

19   [ECF 173 at 16.]

20       Next, Plaintiffs allege that "SW Technology [and Synta Canada]—directly

21   and/or through its subsidiaries, which it wholly owned and/or controlled—

22   manufactured, marketed, and/or sold telescopes for which its parent company and

23   beneficial ownership had fixed prices, divided the market, and undertaken the other

24   anticompetitive acts alleged herein, and that were sold and purchased throughout the

25   United States, including in this District, all in advancement of the anticompetitive

26   conspiracy alleged herein."  [Third Amended Complaint ¶¶24, 26.]

27       First, this allegation directly contradicts the allegation that SW Technology is

28   a mere "holding company."  It also does not even allege that SW Technology and

Synta Canada engaged in any wrongful conduct, and neither can be vicariously liable for the acts of subsidiaries.   Indeed, all this allegation really alleges is that both companies directly or indirectly, manufactured, marketed, or sold telescopes. That is not sufficient to state claims against SW Technology and Synta Canada, for the same reasons this Court previously held that the same allegation was insufficient against Nantong Schmidt.  [ECF 173 at 17-19 (finding insufficient the allegation that "Nantong Schmidt 'is owned and/or controlled by David Shen" and participated in the conspiracy by "manufactur[ing] telescopes that were sold into this District during the Class Period, including to Defendant Celestron" at artificial, supracompetitive prices).]   Likewise, the Court also found infirm the previous, similar allegation against Pacific Telescope that it "participated in Defendants' conspiracy by distributing Synta telescopes."  [ECF 173 at 17.]  *See also In re Cal. Title Ins.*, 2009 WL 1458025, at *8 (finding insufficient allegations that "each of the Parent Corporations 'wholly owns and controls its affiliates and subsidiaries,' that each does business in California 'through' those subsidiaries, and that each of the subsidiaries 'engaged in the conduct challenged here with the approval' of the Parent Corporations").

## B.   Pacific Telescope

As with SW Technology, Plaintiffs assert that "During the Class Period, Pacific Telescope—directly and/or through its subsidiaries, which it wholly owned and/or controlled—manufactured, marketed, and/or sold telescopes at prices that were unlawfully inflated as a result of the anticompetitive conspiracy alleged herein, and that were sold and purchased throughout the United States, including in this District."  [Third Amended Complaint ¶29.]  For the same reasons discussed above, this allegation is irremediably infirm.

Plaintiffs also allege that Pacific Telescope principals "Sylvia Shen and Jack Chen were aware of and approved Celestron's involvement in the unlawful acquisition of Meade, and participated in numerous meetings after the acquisition of

Meade in which Chairman Ni, Chairman Shen, and other Celestron and Meade executives jointly planned the companies' activities and strategies, including their price-fixing and market division." [Third Amended Complaint ¶14.]

First, there is no allegation that these individuals were acting on behalf of Pacific Telescope at the time. Second, even these allegations against Sylvia Shen and Jack Chen individually—which amount to nothing more than an alleged awareness of the conspiracy, and suggest no direct or active participation by these two, but rather only by others in the alleged meetings—are insufficient to state claims against these individuals, let alone to impute it to Pacific Telescope. *In re Cathode Ray Tube I*, 738 F. Supp. 2d at 1019; *In re TFT-LCD*, 586 F. Supp. 2d at 1117.

### C.   Nantong Schmidt and Suzhou Synta

With respect to Nantong Schmidt and Suzhou Synta, Plaintiffs' allegations are almost precisely, and substantively identical, to the prior allegations this Court already found to be insufficient:

| Second Amended Complaint ¶¶20, 21 | Third Amended Complaint ¶¶20, 21 |
|---|---|
| Suzhou Synta and Nantong Schmidt are "owned and/or controlled by David Shen and participated in the conspiracy by "manufactur[ing] telescopes that were sold into this District during the Class Period, including to Defendant Celestron" at artificial, supracompetitive price." | During the Class Period, Suzhou Synta and Nantong Synta [sic]—"directly and/or through its subsidiaries, which it wholly owned and/or controlled—manufactured, marketed, and/or sold telescopes at prices that were unlawfully inflated as a result of the anticompetitive conspiracy alleged herein, and that were sold and purchased throughout the United States, including in this District and to Defendant Celestron. |

These allegations are insufficient for the same reasons the Court already found them to be infirm.

### D.   **Jean Shen, Olivon Manufacturing, and Olivon USA**

Jean Shen is not named as a defendant in the IPP complaint, only this action. This Court has already held insufficient the allegations made by the DPPs against her:

> With respect to Jean Shen, Plaintiffs allege that she is David Shen's sister, that she is a conduit through whom he "exercises control over" Olivon Manufacturing and Olivon USA, and that she personally actively "participated in, planned, and carried out the conspiracy" by "representing to telescope distributors that Synta's horizontal competitor and co-conspirator Ningbo Sunny . . . was one of 'my family's companies.'" SAC ¶ 19. The most that can be inferred from these sparse allegations is that Ms. Shen was aware of the connection between Synta and Ningbo Sunny. However, these allegations say nothing about any action that Ms. Shen may have taken to join the conspiracy, and it is not clear what role—if any—she played in it.  [ECF 173 at p.19.]

In the latest version of the Complaint, Plaintiffs parrot the same allegations, but now add language that "Jean Shen was aware of and took advantage of her brother Synta's price-fixing and market division by using her influence with her brother to sell telescopes produced by Ningbo Sunny through her own companies, Olivon USA, LLC and Olivon Manufacturing Co. Ltd., for her own profit [and that] Jean's sales activities on behalf of the conspirators were thus made with actual knowledge of the conspiracy and with the intent to advance its ends."  [Third Amended Complaint ¶19.]

Plaintiffs' allegations are infirm for the same reasons discussed above.  At their core, they merely amount to an allegation that Jean Shen knew of the alleged conspiracy, and sold telescopes.  These are legally insufficient.

1   The allegations against the Olivon entities merely repeat the allegations
2   against Jean Shen, with the equally infirm language discussed above that they
3   "manufactured, marketed, and/or sold telescopes at prices that were unlawfully
4   inflated as a result of the anticompetitive conspiracy alleged herein, and that were
5   sold and purchased throughout the United States, including in this District."  [Third
6   Amended Complaint ¶¶27-28.]   These allegations are legally insufficient for the
7   same reasons discussed above with respect to the same allegation against SW
8   Technology and Pacific Telescope.

9   **E.    Jack Chen**

10   The allegations against Jack Chen do not demonstrate any active involvement
11   in the alleged conspiracy.  For instance, Plaintiffs allege that Mr. Chen "participated
12   in, planned, and carried out the conspiracy detailed below. As a member of
13   Celestron's executive team, at all relevant times, Jack Chen, in collusion with David
14   Shen, Sylvia Shen, and Laurence Huen controlled strategic business decisions for
15   Defendant Celestron, including all of the anticompetitive activities, price fixing,
16   market allocation, retaliation, and conspiracy to monopolize alleged herein."  These
17   are merely conclusions that this Court may ignore.

18   This is further evident by the only examples Plaintiffs can cite.  Plaintiffs
19   allege that: "Defendant Chen was aware of Ningbo Sunny's efforts to purchase
20   Meade before Ningbo Sunny submitted a bid, a fact that was disclosed in a filing
21   with federal securities regulators."   But again, even if true, mere knowledge is
22   insufficient.   Plaintiffs further allege that "Defendant Chen authorized, approved,
23   and ratified Celestron's involvement in the unlawful acquisition of Meade," but
24   again that is a mere conclusion.  Although Plaintiffs also claim that Jack Chen "was
25   on the email between Ningbo Sunny and Synta and Celestron personnel in which
26   Peter Ni stated that "to prevent JOC to buy MEADE, we decided to purchase
27   MEADE by sunny after discussion. But the premise of this case is
28   CELESTRON/SYNTA should be provided the financial support to SUNNY," that

does not mean he participated, merely because he was copied.  Rather, the passive receipt of an email by an employee does not plausibly establish conscious commitment to conspire. *See Williamson Oil Co., Inc. v. Philip Morris USA,* 346 F.3d 1287, 1319 (11th Cir. 2003) ("opportunity to fix prices without any showing that [defendants] *actually* conspired" insufficient to support conspiracy claim). Neither does the fact that "Defendant Chen participated in numerous meetings after the acquisition of Meade in which Chairman Ni, Chairman Shen, and other Celestron and Meade executives jointly planned the companies' activities and strategies, including their price-fixing and market division."

## V.     <u>MOVING DEFENDANTS INCORPORATE THEIR DENIED ARGUMENTS FROM THE PRIOR MOTIONS TO DISMISS</u>

Moving Defendants will not repeat or rehash the arguments in the prior motions to dismiss that this Court rejected.  However, for purposes of preserving the record, particularly given that some of these issues may be influenced by the outcome of the *Orion* litigation appeal, Moving Defendants incorporate those prior arguments here.  These arguments include that: (i) all claims are barred by the applicable statutes of limitations; (ii) Plaintiffs cannot state any claim for any time period under Clayton Act section 7; (iii) Plaintiffs cannot state any claim for any time period under Sherman Act sections 1 or 2; and (iv) Plaintiffs cannot state state law claims, or alternatively, this Court should decline jurisdiction over those claims.

## VI.   <u>CONCLUSION</u>

For the foregoing reasons, this Motion to dismiss should be granted.  Because Plaintiffs have already had an opportunity to amend, leave to further amend should be denied.

DATED:  October 12, 2021                    WEINBERG GONSER, LLP


                                    By:     _/s/ Christopher Frost_____
                                            CHRISTOPHER FROST
                                            Attorneys for Moving Defendants


DATED:  October 12, 2021                    EISNER, LLP


                                    By:     _/s/ Amber Henry_____
                                            Amber Henry
                                            Ashlee N. Lin
                                            Attorneys for Moving Defendants