CHRISTOPHER FROST (SBN 200336)
chris@wgfcounsel.com
ASHLEY MORRIS (SBN 225455)
ashley@wgfcounsel.com
JOHN MAATTA (SBN 83683)
john@wgfcounsel.com
WEINBERG GONSER FROST, LLP
10866 Wilshire Blvd., PH 1650
Los Angeles, California 90024
Telephone: (424) 407-4119
Facsimile: (424) 238-3060

Attorneys for Defendants,
Celestron Acquisition, LLC; David Shen;
Suzhou Synta Optical Technology Co., Ltd.;
Nantong Schmidt Opto-Electrical Technology Co. Ltd.;
Synta Technology Corp.; SW Technology Corporation;
Synta Canada International Enterprises Ltd.;
Olivon Manufacturing Co. Ltd.; Joe Lupica;
Dave Anderson; Olivon USA; and Pacific Telescope Corp.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE TELESCOPES ANTITRUST LITIGATION | Case No. 5:20-cv-03639-EJD |
| | Case No. 5:20-cv-03642-EJD |
| THIS DOCUMENT RELATES TO: | |
| SPECTRUM SCIENTIFICS LLC, RADIO CITY, INC., and those similarly situated, | **DEFENDANTS' OPPOSITION TO PLAINTIFF RADIO CITY, INC.'S MOTION TO ENFORCE DISCOVERY ORDER AND FOR ORDER TO SHOW CAUSE AS TO WHY DEFENDANTS SHOULD NOT BE SANCTIONED FOR VIOLATING THE COURT'S ORDER; MEMORANDUM OF POINTS AND AUTHORITIES** |
| Plaintiffs, | |
| v. | |
| CELESTRON ACQUISITION, LLC, SUZHOU SYNTA OPTICAL TECHNOLOGY CO., LTD., SYNTA CANADA INT'L ENTERPRISES LTD., SW TECHNOLOGY CORP., OLIVON MANUFACTURING CO. LTD., OLIVON USA, LLC, NANTONG SCHMIDT OPTOELECTRICAL TECHNOLOGY CO. LTD., NINGBO SUNNY ELECTRONIC CO., LTD., PACIFIC TELESCOPE CORP., COREY LEE, DAVID SHEN, SYLVIA SHEN, JACK CHEN, JEAN SHEN, JOSEPH LUPICA, DAVE ANDERSON, LAURENCE HUEN, and DOES 1-50, | *[Declaration of Christopher Frost Filed Concurrently Herewith]* |
| | Judge: Hon. Virginia K. DeMarchi |
| | Date:        August 9, 2022<br>Time:        10:00 am<br>Ctroom:     2 (5th Floor) |
| Defendants. | |

Case No. 5:20-cv-03642-EJD

**OPPOSITION TO MOTION TO ENFORCE DISCOVERY ORDER**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................3

1.  INTRODUCTION .............................................................................................1

2.  BRIEF FACTUAL BACKGROUND .................................................................4

  2.1  Defendants Produced More Than 3.8 Million Documents .............................4

  2.2  Defendants Put IPPs and DPPs On Notice Of An Inadvertent Production ....5

  2.3  DPPs Unilaterally Renew Their Review Of Defendants' Privileged Documents; IPPs Still Follow Proper Protocols.........................................................6

  2.4  DPP Counsel Admit to Accessing Potentially Privileged and Sensitive Documents That Were the Subject of a Clawback Demand ...................................7

  2.5  Defendants Offered Approaches To Resolve Issues Concerning Sensitive Documents, But DPP Counsel Filed This Motion Anyway ...................................9

3.  DEFENDANTS ARE IN FULL COMPLIANCE WITH THEIR DISCOVERY OBLIGATIONS.................................................................................................10

4.  DPP COUNSEL SHOULD BE ORDERED TO RETURN OR DESTROY DEFENDANTS' PRIVILEGED AND FINANCIALLY AND MEDICALLY-SENSITIVE DOCUMENTS ..................................................................................12

5.  DPP COUNSEL HAS FAILED TO COMPLY WITH ITS OBLIGATIONS UNDER RULE 26(b)(5)(B) AND COURT ORDERS ..............................................16

6.  DPP COUNSEL DID NOT MEET AND CONFER WITH COUNSEL BEFORE FILING THIS MOTION ..........................................................................17

7.  CONCLUSION ................................................................................................18

Case No. 5:20-cv-03642-EJD

**OPPOSITION TO MOTION TO ENFORCE DISCOVERY ORDER**

# TABLE OF AUTHORITIES

**Cases**

*Gotham City Online v. Art.com*,
Case No. 14-00991, 2014 WL 1025120
(N.D. Cal. March 13, 2014).......................................................................2, 6, 13, 17

*Pasik v. Boon Techs., LLC,*
2021 U.S. Dist. LEXIS 111964, 2021 WL 2434316, Case 1:19-cv-02357
(E.D.N.Y, June 15, 2021) ...........................................................................2, 6, 17

**Rules & Statutes**

Fed. R. Civ. P. 26(b)(5)(B) ................................................................................5, 9, 16

Case No. 5:20-cv-03642-EJD

**OPPOSITION TO MOTION TO ENFORCE DISCOVERY ORDER**

## MEMORANDUM OF POINTS AND AUTHORITIES

### 1. INTRODUCTION

For all of its bombast and vitriol, DPP Plaintiffs' Motion is much ado about nothing. The only ones engaging in suspicious behavior are DPP counsel, who have admittedly refused to stop reviewing Defendants' privileged materials—conduct that will serve as the basis of a forthcoming motion to compel and motion to disqualify.

As the Court may recall, Defendants produced nearly four million documents over the course of four months. In order to perform this task expeditiously, Defendants were unable to review every single page. Defendants filtered for a small number of search terms meant to identify any privileged or sensitive personal matters, such as private medical documents, and queue those documents for secondary review. This was necessary because some custodians used emails for both professional and personal reasons. Defendants then segregated those private and privileged, emails (est. 51,000 documents) into a separate folder (entitled "Potentially Privileged") for further review. Nothing relevant was intended to be, or will be, withheld.

Unfortunately, those 51,000 documents (a fraction of the millions of produced documents) were inadvertently produced by the ESI vendor before a further review could occur. Defendants immediately notified DPP and IPP Plaintiffs, and asked that counsel destroy or segregate these documents from further review pending Defendants' review of the documents. After the subject review, it was discovered that many of the documents were ***attorney-client privileged communications (est. 190)***, and thousands of documents contain personal, medical or financial information.

Despite Defendants' demand to stop review, and the existence of privileged documents, DPP counsel took it upon themselves to commence review of the documents after Defendants did not meet DPP counsel's unilateral 13-day deadline

**OPPOSITION TO MOTION TO ENFORCE DISCOVERY ORDER**

to review all 51,000 documents, provide a privilege log and re-propound those that were relevant to this matter. Instead of following its obligations under the federal rules, Northern District rules, Complex Management rules, and the protective order in this matter, DPP Plaintiffs had their own ESI vendor run a privilege search (an inept search that segregated only 12 privileged documents) and commenced review of the balance of the inadvertently produced documents. DPP counsel even confirmed the same in writing. (Borden Decl., Ex. 11.) **By so doing, DPP counsel have knowingly and admittedly allowed themselves unfettered access to Defendants' privileged materials.**

Unfortunately, this is par for the course for the BraunHagey & Borden law firm. *See Gotham City Online v. Art.com*, Case No. 14-00991, 2014 WL 1025120 (N.D. Cal. March 13, 2014) (disqualifying BHB for knowingly-wrongful use of privileged materials); *see also Pasik v. Boon Techs,* 2021 WL 2434316 (E.D. NY June 15, 2021) (outlining a history of abusive misconduct by Noah Hagey and Matt Borden that involved, among other sanctions, revoking their *pro hac vice* applications, and only reinstating in hopes that good grace of plaintiff's counsel would encourage better conduct).

Consistent with prior tactics, DPP Plaintiffs have also refused to stop reviewing private medical and financial information, despite being informed of the inadvertent production and instructed to return/destroy those inadvertently-produced documents. However, this was not expected from IPP Plaintiffs which appear to have taken on BraunHagey & Borden's controversial approach to discovery[1].

Now, in the grandest of ironies, DPP Plaintiffs have, with this Motion, accused Defendants of discovery misconduct. DPP Plaintiffs did not even wait until

---

[1] Even though IPP Plaintiffs have not committed to return or destroy private and medical information, they have agreed not to review them pending resolution.

**OPPOSITION TO MOTION TO ENFORCE DISCOVERY ORDER**

the final re-production before they filed this motion despite being informed of the forthcoming re-production of records with an accompanying privilege log.

Defendants absolutely have not committed any misconduct. By now, Defendants have reproduced 49,000 documents of the total 51,000 documents Defendants demanded a clawback, with 190 privileged documents identified in the privilege logs, and only about 1800 documents identified as sensitive documents. Among those 1,800 sensitive documents, over 50% of them are medical documents that are personal and have nothing to do with this litigation. Only highly sensitive family-related and personal financial documents were identified and logged, which is less than 1,000 documents. This is a significantly low number compared with the total 51,000 documents.

With that being said, 96% of 51,000 documents are now reproduced. With respect to the remaining 4% of documents, majority of them are absolutely privileged documents and medical documents. Even with those 4% of documents, Defendants have offered to share with all counsel any logged documents for which there is a question, solely to confirm it has no relevance to this matter. DPP Counsel ignored this offer and proceeded with this Motion.

It is unclear whether DPP Plaintiffs are trying to prejudice Defendants with false and inflammatory accusations, divert attention from their own misconduct, improperly prejudice this Court, or all of the above. What is clear, however, is that Defendants have done nothing wrong, and have strictly complied with all their discovery obligations as well as all rules and orders governing discovery. Plaintiffs, and each of them, cannot say the same. This Motion should be denied in its entirety, and all counsel should be ordered to return or destroy Defendants' inadvertently-produced documents in lieu of Defendants' most recent re-production.

**OPPOSITION TO MOTION TO ENFORCE DISCOVERY ORDER**

## 2. BRIEF FACTUAL BACKGROUND

### 2.1 Defendants Produced More Than 3.8 Million Documents

Defendants produced more than 3.8 million documents—most of which were produced in four months from dozens of custodians after a lengthy and robust negotiation on scope, search terms, and timeframes—all with the assistance and guidance of this Court. Defendants have engaged in an exhaustive collection and retention process that is currently costing them approximately $140,000 per month in ESI vendor preservation and storage costs alone.

As the Court may recall, Defendants agreed to produce documents that were flagged in response to 1,117 English, and traditional and simplified Mandarin search terms. Because of the sheer volume of documents, a manual review of all documents was not feasible, so parties agreed on the record before this Court that all documents would be marked "attorney's eyes only."

While DPP counsel mock that Defendants have no qualms about producing irrelevant material, that has never been the issue. All parties always understood that a substantial amount of irrelevant material would necessarily be produced because of the manner in which DPP counsel demanded the documents be produced.

The sole issue that has raised DPP counsel's claimed ire is the fact that Defendants conducted an independent screening for privileged documents, and a very small screening for sensitive documents, to weed out truly private and sensitive materials, such as personal tax returns and private medical files, which have no relevance to the issues raised in this matter. The only potentially sensitive documents that were segregated were the approximately 51,000 documents at issue here—many of which are also privileged—which have now been reviewed and re-produced, in part, with appropriate privilege logs.

To be clear, virtually nothing was culled for relevance. The 51,000 files were the only segregated files (other than additional privileged documents) from the 3.8

million documents produced. Of those 51,000 documents, each one of them was going to be separately reviewed so that, for example, a doctor's note and similar sensitive and personal documents did not end up in the hands of opposing counsel. Candidly, Defendants did not, and do not, believe that DPP counsel may be trusted to handle any sensitive documents, as counsel have recently demonstrated. Defendants fully expect that DPP counsel may use such material to, for instance, harass deposition witnesses, as is consistent with counsel's reputation. While the federal rules provide consequences for such misconduct, any penalty would be insufficient to punish BraunHagey for the irreversible and unnecessary psychological harm done.

### 2.2    Defendants Put IPPs and DPPs On Notice Of An Inadvertent Production

Due to a vendor error, 51,000 documents, labeled with file name "Potentially Privileged", was produced before it could be reviewed for privilege and privacy. As soon as Defendants learned of the error, they immediately notified opposing counsel of the issue and made a clawback demand pursuant to federal rules 26(b)(5)(B), the operative Protective Order (ECF 137), the ESI Order (ECF 145) and rules governing the management of complex cases. More specifically, on March 16, 2022, approximately six days after the inadvertent disclosure, Defendants wrote to opposing counsel advising them that potentially privileged and otherwise sensitive information had been inadvertently produced. Defendants requested the information be destroyed pending further review and a re-production of nonprivileged materials as follows:

> Counsel:
>
> In the process of producing documents, a folder of sensitive and privileged documents that had been segregated for secondary review was inadvertently produced due to a vendor error. In

addition to privilege, these documents contain, among other things, personal medical information, including communications with and about doctors. Pursuant to the clawback agreement in this case, we request (and require) that you delete all versions and copies of the documents identified in the attached spreadsheet. We will reproduce all relevant, responsive, nonprivileged documents from this set once we have been able to properly review them—a process that is occurring expeditiously. Your prompt confirmation of compliance with the foregoing request is appreciated. (Mot. Ex. 3.)

### 2.3 DPPs Unilaterally Renew Their Review Of Defendants' Privileged Documents; IPPs Still Follow Proper Protocols

In response to Defendants' clawback demand, IPP informed counsel that they were in receipt of the clawback demand and would follow all appropriate protocols, a fact that DPP counsel conveniently omitted from their moving papers. DPP counsel, however, demanded specific privilege logs within a unilaterally-set 13 days deadline, or they would re-commence review of the records. [Borden Decl., Ex 6 (demanding a complete log be provided by March 30 and making other demands not required by prevailing authorities or the existing protective order).]

DPP counsel also refused to return the sensitive and private records and further refused to articulate why DPP counsel needed such records.  (This refusal only advanced Defendants' concern of DPP counsel's intentions for use of the records, as stated above, and as has been repeatedly recognized as sanctionable misconduct in other matters. *See, supra, Gotham City & Pasik* decisions.)

Instead, they stood on incorrect, false, and unscrupulous ceremony that there is no provision for return of non-privileged materials. This, of course, ignores the practical reality that: (i) rules for the treatment of inadvertent production are set

**OPPOSITION TO MOTION TO ENFORCE DISCOVERY ORDER**

forth in this matter's protective order; (ii) the Federal Rules of Civil Procedure have rules governing conduct around inadvertent production; (iii) rules governing the management of complex cases have rules governing conduct around inadvertent production; and (iv) some private information would necessarily slip through a 3.8 million document production performed in four months which would necessarily require clawback. At a minimum, DPP counsel continually flouts each and every rule meant to govern this action and it has become increasingly clear that the only response DPP counsel respects is actual punishment. Ultimately, no good faith basis exists to allow DPP counsel to retain such sensitive and irrelevant information, when it has no meaningful value to the case, is not proportional to the needs of the case, and its only purpose would be to embarrass and harass Defendants.

**2.4 DPP Counsel Admit to Accessing Potentially Privileged and Sensitive Documents That Were the Subject of a Clawback Demand**

Exactly 13 days after being notified of the inadvertent production of potentially privileged and/or sensitive documents, DPP counsel wrote to Defendants' counsel that, because Defendants had not met the unilateral deadline set by DPP counsel, DPP counsel would immediately begin reviewing the documents again. (Borden Decl., Ex. 11). Even though nobody should have accessed the documents (pursuant to all rules stated above), DPP counsel had its own vendor run a privilege sweep—one that picked up only 12 documents—and immediately began reviewing the rest of the inadvertently-produced batch. As DPP counsel admits:

> "Because Defendants have not identified any of the 51,000 documents that are supposedly privileged, and because that tranche of materials, by Defendants' own admission, contains relevant and responsive materials, we will resume our review of the quarantined materials. We have asked our vendor to run a privilege screen on the 51,000 sequestered documents using every

**OPPOSITION TO MOTION TO ENFORCE DISCOVERY ORDER**

lawyer email domain in Defendants' privilege log, including yours:

*\*\*\**

That screen indicated that just twelve of the over 51,000 documents which Defendants purported to claw back contain one or more of the email domains identified by Defendant as associated with their counsel. These twelve documents will remain sequestered.

These twelve documents will remain sequestered. As we would in any case, we will notify Defendants if we encounter any materials that arguably could be attorney-client privileged or protected by the work-product doctrine, and will stop reading such materials as soon as such a determination has been made. Obviously, all of this is without prejudice to our position that Defendants have waived any such privilege many times over— including by failing to identify any privileged documents in all of the 51,000 documents, which Defendants have now had ample time to do (and presumably did prior to sending their "clawback" email) (Borden Decl., Ex. 11.)

In truth, there were over 150 privileged emails in the segregated documents, *meaning DPP counsel gave itself access to more than 130 privileged documents*.

Defense counsel immediately wrote to DPP counsel and demanded they stop the review pending defense counsel's further review for privilege and sensitivity. Defense counsel wrote:

IPP counsel followed the appropriate protocols, as noted by their correspondence on March 18, 2022, but your office has refused. Instead, you set an arbitrary deadline of March 30, 2022 for the

8                                          Case No. 5:20-cv-03642-EJD

**OPPOSITION TO MOTION TO ENFORCE DISCOVERY ORDER**

review of 51,000 unique documents, a 13-day timeframe that we informed you was not manageable. Nevertheless, you wrote to us and informed us that you are now actively reviewing the documents we demanded be destroyed and have had your vendor segregate only a small number of documents contained within the inadvertently produced files.

Your actions are in direct contradiction to prevailing authorities. Regarding inadvertent production, according to Rule 26(b)(5)(B), "[i]f information produced in discovery is subject to a claim of privilege or of protection as trial-preparation material, the party making the claim may notify any party that received the information of the claim and the basis for it. **After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has**…."

The Rule does not contemplate the further review your firm has taken upon itself, nor does it allow anyone acting on your behalf, including your ESI vendor (your agent) to access those records on your behalf for any reason whatsoever. The Rule also does not allow for opposing counsel to determine which documents give rise to other "protections" which may also be grounds for withholding records. (Borden Decl., Ex. 12.)

Again, DPP counsel refused to stop the review or otherwise provide assurance that potentially privileged and/or sensitive documents were not accessed.

**2.5   Defendants Offered Approaches To Resolve Issues Concerning Sensitive Documents, But DPP Counsel Filed This Motion Anyway**

On July 5, 2022, during a lengthy meet and confer, in which DPP Counsel appeared, counsel discussed whether the sensitive documents would be returned.

**OPPOSITION TO MOTION TO ENFORCE DISCOVERY ORDER**

Defense counsel Christopher Frost offered that a final log would be produced shortly, and if there were any documents for which counsel had questions, defense counsel would share the documents solely for purposes of review and discussion, then expect return of those revealed documents—an elegant solution that would resolve any doubts on the issue of relevance, privilege, and privacy. [Frost Decl. ¶ 12.] IPP counsel indicated that they appreciated the offer However DPP counsel said nothing and, instead, filed the instant Motion.

### 3. DEFENDANTS ARE IN FULL COMPLIANCE WITH THEIR DISCOVERY OBLIGATIONS

DPP Plaintiffs' Motion is premised on the contrived notion that Defendants are engaged in some nefarious scheme to avoid the production of relevant documents.   This is unsupported nonsense. Defendants have engaged in a painstaking process that has ensured full discovery compliance that has resulted in the production of 3.8 million documents. Defendants imaged computers and email accounts of all agreed custodians (more than two dozen). Defendants' ESI vendor then ran the agreed search terms (more than 1,100 search terms in English, traditional Mandarin, and simplified Mandarin). Defendants have maintained the entire database of images, as well as a separate database of the responsive documents—a preservation that is costing the client *more than $140,000 per month* in storage and hosting fees alone.

In terms of the production, as the Court will recall, DPP counsel insisted that Defendants not be allowed the time to review each and every document. As an accommodation, Defendants agreed that they would produce the responsive and nonprivileged documents over a period of four months. All parties agreed that, as a result, all documents could be marked "Attorney's Eyes Only," and DPP counsel agreed, at the insistence of the Court, that they would meet and confer if they needed to file any of these documents with the Court.

**OPPOSITION TO MOTION TO ENFORCE DISCOVERY ORDER**

DPP counsel has made no such effort, including their complete failure to extend this process to exhibits filed with this Motion. Instead, they are filing the exhibits under seal, with a proposed order denying sealing.

Defendants have gone above and beyond to comply with the Court's orders governing discovery. Given that many Defendants handled personal and business matters from the same email accounts, Defendants rightly screened for privilege, and did a separate screening to ensure truly private and sensitive materials (such as medical documents and personal tax returns) were not produced. Of the entire 3.8 million document production, only approximately 51,000 were segregated as sensitive or potentially privileged. (In other words, Defendants withheld .01% of documents produced.)

The 51,000 documents were never intended to be wholesale refused. Rather, defense counsel intended to review these documents and produce everything that was either: (i) relevant, or (ii) irrelevant but not truly sensitive in nature. Unfortunately, before that review could be accomplished, Defendants' ESI vendor inadvertently produced the entire file. Defense counsel immediately gave proper clawback notice, requested inadvertently-produced documents be returned and deleted, and continued reviewing these files to determine the true nature of their content.

IPP has, and continues to, honor its obligations. DPP counsel have refused and sought an order from this court approving its sharp practice. DPP ignored the repeated clawback requests, gave its ESI vendor access to the inadvertently-produced files, conducted an improper and inaccurate privilege segregation, and allowed itself continued access to other privileged and sensitive files for reasons that DPP counsel – to this day – cannot reasonably articulate.

Defendants have tried everything reasonable to help DPP counsel understand that they are not withholding relevant materials. Every DPP example of relevant

11                                                Case No. 5:20-cv-03642-EJD

**OPPOSITION TO MOTION TO ENFORCE DISCOVERY ORDER**

materials are examples of documents that were withheld for further review, but had not been finally reviewed by DPP counsel's unilateral 13-day deadline. Furthermore, every single example cited by DPP in its Motion had either been reproduced well before the filing of this Motion, and most certainly before the filing of this Opposition.

The only reason DPPs are able to create this artificial issue is because they did not wait for the final review and final production before firing off this Motion. Indeed, earlier in the same day that DPPs filed this Motion, defense counsel met and conferred with both IPP and DPP counsel in a recorded Zoom session where Defendants offered to view any documents labeled as medically, financially, or otherwise sensitive.

During that meet and confer, defense counsel explained that a final log would be forthcoming, and, if Plaintiffs' counsel had any questions about ***any entry whatsoever***, defense counsel would share the questionable document with opposing counsel solely for the purposes of a full and complete conversation about whether the document is, in any way, relevant to this litigation. This elegant solution was wholly ignored before firing off a premature Motion—all in the name of casting untoward and misguided aspersions where none are deserved.

4. **DPP COUNSEL SHOULD BE ORDERED TO RETURN OR DESTROY DEFENDANTS' PRIVILEGED AND FINANCIALLY AND MEDICALLY-SENSITIVE DOCUMENTS**

There is no question that DPP counsel should have to destroy and/or return Defendants' privileged documents. Defendants' motion to compel is forthcoming, which will demand DPP's vendor identify who accessed any files within the 51,000 inadvertently-produced documents, and if that access included the specific privileged documents. Based on their own admissions, DPP counsel may have risked disqualification for an improper advantage in viewing and weaponizing

privilege and/or sensitive documents. Defendants' concern is legitimate and warranted by the court's disqualification of BraunHagey & Borden in *Gotham v. Art.com*, Case No. 14-00991, 2014 WL 1025120 (N.D. Cal., March 13, 2014). In *Gotham,* the court found that BraunHagey & Borden possessed, examined and used internal Art.com documents protected by the attorney-client privilege, and knew of the privilege at the time they chose to use them in the dispute between Gotham and Art.com. *Id.* at \*8-9 When BraunHagey received Art.com communications that were authored or received by Art.com's legal representatives, BraunHagey was obligated to immediately notify Art.com and return the documents – without examining their contents. *Id.* at \*10-15. The court found that BraunHagey did not do that, but rather, did the opposite, and deliberately reviewed the privileged documents to concoct legal claims against Art.com using those privileged documents, and citing to them in the lodged complaint authored by BraunHagey.

Likewise, DPP counsel should be required to destroy all sensitive and irrelevant materials. In order for the Court to understand the gravity of the situation, the following are examples of the types of documents that DPP claims a "right" to refuse to destroy or return:

- Medical: ███████████████████████████████ ██████████████████████████ (Frost Decl., Ex. 1): ██████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ██████████████████████████████████

- Medical: ███████████████████████████████████ ██████████████████████████████████████

**OPPOSITION TO MOTION TO ENFORCE DISCOVERY ORDER**

██████ (Frost Decl., 2): ████ ██████ ███████ █████ ██ █████ ████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████

- **Family-related**: ███████████████████████████████████

████████████████████████ (Frost Decl., Ex. 3): ████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

Case No. 5:20-cv-03642-EJD

**OPPOSITION TO MOTION TO ENFORCE DISCOVERY ORDER**

██████████████████████████████████████████████████████████████

██████████████

- <u>Family-related</u>: ████████████████████████████████████

████ (Frost Decl., Ex. 3): ████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████████████████    ████████████████

██████████████████████████████████████████

- <u>Medical</u>: ████████████████████████████████████████

████ (Frost Decl., Ex. 4): ██████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████████████████

Despite the clearly sensitive and irrelevant nature of these documents, DPP counsel adamantly refuse to return them, standing on overzealous ceremony in claiming that there is "no provision" for return of non-privileged materials despite overlapping and repeated rules and orders to the contrary. Despite repeated requests, DPP counsel can identify no reason that they need, for instance, medical treatment plans or tax documents that were a part of the inadvertently-produced materials.  Their overly-strident view is simply that they won't return the materials because they "don't have to" —a response more appropriate for children than professional counsel in a complex, antitrust matter.

DPP counsel should be ashamed, and this Court should reject DPP counsel's effort to harness the power of this court to improperly convert documents that counsel was never entitled to access, review and maintain. To use that forced approach as a sword to prevent return of clearly irrelevant and embarrassing information is nothing short of abusive and an intentional defiance of this Court's authority.

**OPPOSITION TO MOTION TO ENFORCE DISCOVERY ORDER**

## 5. **DPP COUNSEL HAS FAILED TO COMPLY WITH ITS OBLIGATIONS UNDER RULE 26(b)(5)(B) AND COURT ORDERS**

Pursuant to Paragraph 11 of the parties' Stipulation and Protective Order, "[w]hen a Producing Party gives notice to Receiving Parties that certain inadvertently produced material is subject to a claim of privilege or other protection, the obligations of the Receiving Parties are set forth in Federal Rule of Civil Procedure 26(b)(5)(B)." [ECF 137].

Federal Rule 26(b)(5)(B) states:

> *Information Produced*. If information produced in discovery is subject to a claim of privilege or protection as trial-preparation material, the party making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The producing party must preserve the information until the claim is resolved.

Fed. R. Civ. P. 26(b)(5)(B).

The parties' Stipulation and Order Regarding the Production of ESI and Hard Copy Documents further provides that that parties did not waive their objections. In particular, the parties' agreed, and the Court ordered:

> Nothing in this Production Stipulation and Order shall be interpreted to require disclosure of either irrelevant information or relevant information protected by the attorney-client privilege, work-product privilege, or any other applicable privilege or immunity. Except as

**OPPOSITION TO MOTION TO ENFORCE DISCOVERY ORDER**

provided expressly herein, the parties do not waive any objections as to the production, discoverability, authenticity, admissibility, or confidentiality off documents and ESI.

[ECF 145, §V(A)]

As set forth in *Gotham,* "to the extent that BraunHagey argues that the documents are not in fact privileged, and thus, they were entitled to review it them, it was not BraunHagey's role to make that determination." *Gotham,* 2014 WL 1025120 at *13.

Here, DPP counsel have not only violated their discovery obligations, but they have also violated the Court's Orders. Rather than return, destroy or sequester the documents, DPP counsel proceeded to review a majority of the documents, including 190 documents that are protected by the attorney-client privilege.  As set forth above, the documents that have been withheld have all been identified in a privilege log, and are protected from disclosure.

## 6. DPP COUNSEL DID NOT MEET AND CONFER WITH COUNSEL BEFORE FILING THIS MOTION

Despite representations to this Court to the contrary, DPP counsel did not meet and confer with defense counsel before filing this Motion. Quite the contrary, defense counsel never knew that the Motion would be filed until they received it in their respective inboxes.

As set forth herein and in the accompanying Declaration of Christopher Frost, DPP Plaintiffs' claims are also moot on the grounds that (1) responsive, non - privileged documents have been re-produced to the parties and (2) withheld documents have been identified in a privilege log.  The documents DPP Plaintiffs have filed under seal have been re-produced, and thus, DPP Plaintiffs' Motion is another scorched-earth tactic, which BraunHagey was admonished for in *Pasik*. As Defendants have fully complied with their discovery obligations, Defendants

respectfully request that this Court reject DPP Plaintiffs' scorch-earth tactics and deny their Motion in its entirety.

## 7. CONCLUSION

For the foregoing reasons, the Motion should be denied in its entirety, and DPP counsel admonished to: (i) return or destroy all privileged and irrelevant, sensitive files, and (ii) participate in meaningful meet and confer before engaging in such further motion practice.

DATED: July 19, 2022          **WEINBERG GONSER FROST, LLP**

By: _____
         CHRISTOPHER FROST
         Attorneys for Defendants

**OPPOSITION TO MOTION TO ENFORCE DISCOVERY ORDER**