January 6, 2023

**VIA ECF**
**PURSUANT TO SECTION 4(c) OF THE**
**COURT'S STANDING ORDER RE CIVIL CASES**

The Honorable Virginia K. DeMarchi
United States District Court for the Northern District of California
San Jose Courthouse - Courtroom 2 - 5th Floor
280 South 1st Street
San Jose, CA 95113

            **RE:**     **Joint Discovery Letter Brief Regarding DPP's Lack of Production of Customer Information;** *Spectrum Scientifics, LLC, et al. v. Celestron Acquisition LLC, et al.*, **No. 3:20-cv-03642-EJD-VKD (N.D. Cal.)**

Your Honor:

      Defendants Celestron Acquisition, LLC, David Shen, Sylvia Shen, Jack Chen, Jean Shen, Suzhou Synta Optical Technology Co., Ltd., Nantong Schmidt Opto-Electrical Technology Co. Ltd., Synta Technology Corp., SW Technology Corporation, Synta Canada International Enterprises Ltd., Olivon Manufacturing Group Ltd., Joe Lupica, Corey Lee, Dave Anderson, Laurence Huen, Olivon USA, and Pacific Telescope Corp. (collectively, "Defendants") and Direct Purchaser Plaintiffs ("DPPs") respectfully submit this letter brief concerning the parties' disputes regarding DPPs' document production and responses to Defendants' Requests for Production.

## Statement of Dispute

      Defendants' Statement: Defendants seek production of documents responsive to Request No. 170: "All DOCUMENTS sufficient to identify all of YOUR customers since January 1, 2010." DPPs claim that they have produced "many" responsive documents, but refuse to confirm that they searched for these specific documents, and refuse to identify the manner in which the search was conducted. Representations concerning the lack of a customer list and production of certain documents do not answer the question of whether further documents identifying customers exist. Additionally, as explained below, there was not a sufficiently diligent search.

      DPPs' Statement:

      Defendants filed this motion despite receiving express representations that there is nothing further to compel. DPPs stated (in writing) that "Radio City does not have a 'customer list'," and that "Radio City has produced all of its hardcopy purchase orders and invoices in its possession as they were maintained, which include customer information." DPPs have also advised Defendants that DPPs have produced all unprivileged ESI that hits on the broad search terms to which Defendants and DPPs agreed. DPPs have also confirmed that there are no further documents that would disclose customer identity of which DPPs are aware.

**Defendants' Position**

RFP No. 170 requests DPPs produce "All DOCUMENTS sufficient to identify all of YOUR customers since January 1, 2010." In response, DPPs objected as follows:

> "Plaintiff objects to this request to the extent it calls for information protected by the attorney-client privilege, work-product doctrine, common interest privilege, or privacy rights under California and/or federal law. The Request implicates third party privacy rights and is not related to any fact at issue in this action. Moreover, it is disproportionate to the needs of the case.
>
> Accordingly, Plaintiff will not search for or produce documents in response to this request."

The requested information is clearly relevant. DPPs' sales are directly implicated by its claims that it has been harmed by an alleged vast antitrust conspiracy. Even IPPs (Indirect Purchase Plaintiffs) should be interested in this information, since it helps to define the purported consumer class. During the parties' meet and confer, DPPs did not object to the relevance of the information. Not only is the DPP customer information relevant to identifying indirect purchaser consumers, but it is also relevant to the determination of class certification. Defendants' document requests relate to and will lead to discovery regarding sales and purchasing decisions, information regarding purchases and the purpose for which the product is used, communications with manufacturers or distributors of telescope end-products, information regarding market conditions, and sales volumes. The discovery of DPP customers of telescope products bear on whether DPPs' claims are typical of those of the class they seek to represent, whether common issues predominate in this action, and whether DPPs are adequate class representatives.

DPPs' objections that the requested information implicates privileges or privacy concerns are unfounded. There is no privilege that attaches, and no privacy concerns are implicated by the simple purchase of a product. Even if privacy concerns are implicated, that is remedied by a protective order.

DPPs now pay lip service to producing the requested information, but the production is transparently incomplete. There remain substantial gaps, and not all customer information has been provided. Although DPPs claim that they have given "exemplars" and that Defendants are obliged to identify every single gap in order to justify a motion to compel, that would require Defendants to prove a negative. Defendants cannot identify each and every gap, because Radio City has exclusive knowledge of all of its sales. But Defendants can confirm that there are remarkably few documents identifying Radio City's customers, and certainly less documentation than Radio City could possibly have customers.

To be clear, DPPs' representation that "Radio City does not have a 'customer list'" is helpful but does not fully answer the question. Defendants did not ask just for a customer list. Likewise, it is not complete to claim that "Radio City has produced all of its hardcopy purchase orders and invoices in its possession as they were maintained, which include customer

information." These are some examples, but do not confirm whether other documents exist. And again, the fact that "DPPs have produced all unprivileged ESI that hits on the broad search terms to which Defendants and DPPs agreed" does not indicate whether other responsive documents exist.

DPPs claim that they "have also confirmed that there are no further documents that would disclose customer identity of which DPPs are aware" is hollow. DPPs are claiming willful blindness. DPPs refused to conduct any search beyond running the search terms themselves. Pursuant to the Stipulated Order regarding the production of ESI, the parties agreed to certain search terms to be applied against a parties' ESI documents. (ECF No. 122 at § IV.A.). The parties reached an agreement as to Defendants' proposed search terms, and the DPPs agreed to 20 of the 22 proposed search terms to run against DPPs' ESI data.

Those search terms were meant as a tool to assist in document collection and production, but do not constitute a "free pass" to refuse to collect other information (such as customer - identifying information) that the parties know contain responsive information. DPPs' counsel admitted as much during the meet and confer, but still refused to identify whether they made any effort to pull customer information that did not arise from the search terms. Rather, DPPs simply claimed that "I'm not going to be deposed here on a recorded zoom" and "I am not going to sit here and pretend to be a deponent or pmq on the client's production." DPPs demanded Defendants put these questions in writing, and then refused to answer whether they would even answer the questions if put in writing. (The issues were already raised in writing in the parties' meet and confer correspondence.)

Similarly, DPPs have admitted they did not search all reasonable locations. For instance, it is not clear that DPPs searched any records for Maline Fish (one of two Radio City principals), and DPPs have not confirmed whether they did. DPPs admitted that they did not search the records or devices of any of a dozen or more former employees. DPPs may claim that these individuals were never identified as custodians, but that was a function of DPPs' lack of candor and representations that this was merely a "mom and pop business," which it clearly was not.

DPPs' lack of forthrightness is snarling this process. DPPs claim that a pre-litigation fire destroyed many responsive documents. Defendants will be noticing a 30(b)(6) deposition shortly, given that DPPs refuse to answer basic questions concerning, among other things, what documents were destroyed, retained and recovered from the files, and what process and vendor they utilized to recover files. For example, Defendants sought in SW Technology's Interrogatories, Set Three, No. 19 ["11"] the identification of the location, date and cause of the fire that DPPs contend destroyed its records, and the identity of the documents alleged to have been destroyed. (Def. Ex. 1). DPPs cited Bates numbers DPP00470271-00470279, however, to date, those documents have not been produced to Defendants.

DPPs also refuse to disclose whether they ran any ESI search over any recoverable device. DPPs further refuse to detail any protocols followed, if any, to retrieve the requested information. DPPs also will not answer questions about whether they have obtained information from Radio

City's accountants, which will likely contain responsive information that was purportedly lost. DPPs won't even reveal the identities of the accountants for Defendants.

Defendants' request is not complicated and should not be so controversial. Defendants want confirmation that all customer-identifying data has been produced, and what steps were taken to ensure the veracity and completeness of that production. Absent that, DPPs and IPPs should be precluded from proceeding on any claims for customers whose information was not provided.

Notwithstanding DPPs deficient document collection efforts, DPPs also argue that they have sufficiently identified all customer information in its Interrogatory Answers. However, in response to SW Technology's Interrogatories, Set Three, DPPs identified DPP00057865-DPP00057890 in response to Interrogatory No,. 14 ["6"], which requests DPPs to identify its telescope customers' information since 2005, including name, address, purchase order/invoice number, sale price, producing identifying information, and its purchase price. (Def. Ex. 1) The identified documents do not identify the requested information. Rather, the 25-pages consist of a purported report which was run sporadically for 2006-2018 setting out the Item Id, Model Name, Total Cost, Total price, Margin and Quantity.

Critically missing from this report is the customer information, the purchase order/invoice number, SKU, price at which the product was sold, from whom the telescope was purchased, and the price DPPs paid for the telescope. (Def. Ex. 2) These singular reports do not provide the requested information, and interestingly only exist for Celestron and Orion and no other telescope manufacturer. (Def. Ex. 3)

DPPs further argue that they have produced all customer invoices that exist. These invoices, however, are those that were recovered in hard copy – not electronically, and thus, it is unlikely that each customer invoice is accounted for. Furthermore, the invoices produced are vague and provide no identifying information as to what type of product was purchased. (Def. Ex. 4) It would be unduly burdensome to require Defendants to attempt to piece together the thousands of vague invoices – many of which are illegible – to potential telescope sales purported in the only identified sales data.

### **DPPs' Position**

This motion is not substantially justified, is a waste of the Court's and the parties' resources, and is a prime example of why a special master should be appointed to manage discovery in this case. Defendants' motion seeks to compel further and additional documents that DPPs have already told Defendants do not exist.[1]

---

[1] The matter actually before the Court—objections served by DPPs two years ago in December 2020—is academic, because (as DPPs have advised Defendants) DPPs have produced all documents that would contain relevant customer information in response to other of Defendants' numerous and overlapping RFPs, and identified them by bates number.

Defendants admit that this is not a motion to compel discovery responsive to RFP 170—the putative basis for their motion. (Indeed, DPPs have specifically identified customer information in DPPs' by bates number in an interrogatory response.) (**DPP Ex. A.**) Instead, Defendants assert that they "want confirmation that all customer-identifying data has been produced, and what steps were taken to ensure the veracity and completeness of that production"—but this information has already been provided to Defendants.

DPPs have told Defendants that all relevant, responsive, non-privileged hardcopy transactional documents in Radio City's possession have been produced (without regard to search terms); that all of Radio City's functioning devices have had the search terms agreed by the parties run upon them; and that all non-privileged ESI that hit upon the search terms agreed by the parties has been produced.[2] DPPs have also confirmed that there are no additional responsive documents that do not hit upon the search terms of which Radio City is aware, and that there are no sources of likely responsive documents of which Radio City is aware other than the hardcopy documents (which have been produced) and its ESI (which has been produced via the search terms agreed by the parties pursuant to Court ordered stipulation).

In sum, Radio City has complied with its discovery obligations, and the motion should be denied.

### A. Background

On September 24, 2021 (*i.e.*, more than a year ago), DPPs produced 48,483 pages of sales invoices and purchase orders. These materials represent the relevant transactional data in Radio City's possession, custody, and control. Contrary to Defendants' assertions, these documents were produced to Defendants in their entirety, without regard to the search terms proposed by Defendants and agreed to by DPPs. DPPs have also explained to Defendants that Radio City's enterprise software system—such as it was for a small hobby business—was destroyed in a fire that destroyed the home of Radio City's principal in 2019.[3]

On Friday, October 28, 2022, Defendants wrote DPPs claiming that "DPPs have failed to produce responsive documents [in response to RFP 170]." (**DPP Ex. B**.) On November 1, DPPs responded in writing in advance of the meet-and-confer call that day, explaining that DPPs were "perplexed by your letter because, contrary to your assertions, we have produced—a year ago—documents responsive to categories of documents Defendants claim are missing." (**DPP Ex. C.**) The letter appended examples of transactional data documents produced by DPPs that disclose customer identities in that letter.[4] (*Id*. Exs. 1 & 3 thereto.)

---

[2] The search terms are extraordinarily broad, and include naked terms such as "Telescope*," "Sale*," "Purchas!," "Celestron*," and "Customer."

[3] Defendants' assertion that DPPs have not been candid about the fire is false. The fire was disclosed over a year ago (including in Court filings) in July 2021. (ECF No. 181 at 6 n.5.) And DPPs have provided extensive additional information in correspondence. (**DPP Ex. D**.).

[4] DPPs have redacted personal consumer information to avoid briefing an unnecessary sealing motion. DPPs are willing to file complete versions if the Court desires.

During the meet-and-confer call that followed on November 1, Defendants claimed that there were gaps in DPPs' production.[5] DPPs asked Defendants to explain the basis for their conclusion that there were gaps in Defendants' production. Defendants were unable to provide any support for their claim other than the one they offer here—a speculative assertion that "there is certainly less documentation than Radio City could possibly have customers."

On the same day that Defendants sent this letter brief to DPPs, DPPs responded in writing:

> We are confused by this letter brief. We have told you that Radio City does not have a "customer list"; that Radio City has produced all of its hardcopy purchase orders and invoices in its possession as they were maintained, which include customer information in the ordinary course; and that Radio City has produced all ESI documents responsive to the search terms proposed by Defendants and agreed to by Radio City (less the documents reflected on its privilege log).
>
> Given that, what are Defendants seeking to compel?

---

[5] Defendants' assertion that DPPs refused to answer questions during the meet-and-confer is false. In fact, DPPs invited Defendants to provide highly specific questions in writing in advance of a call so that DPPs could ensure that complete and accurate information could be provided to Defendants:

> [W]e're not being obstreperous, Chris. You're asking questions that aren't presented in your letters, so I don't have answers for you, which is why I've told you to send us questions like that so we can review and provide you considered and accurate responses. . . . You can't be upset when someone shows up to a meet and confer and they don't have information that you didn't ask for.

M&C Trans. at 57:18-58:4.

> You're raising an issue not covered in any of the letters at this point. . . . If you have questions like that you want to raise with us, you can do so appropriately via written correspondence so we can be prepared to answer. I'm not going to . . . pretend to be a deponent or a PMQ on the client's production, answering questions that aren't raised in your correspondence.

*Id*. at 41:18-42:3.

DPPs are willing to file the complete transcript of this conference should the Court find it useful.

Hon. Virginia K. DeMarchi
January 6, 2023

Defendants responded:

> We have met and conferred on these issues. We have sent you our portion of the letter brief. If we do not receive your portion of the brief by COB on Monday, we will file the motion without your participation.

At DPPs' insistence, the parties met and conferred on December 1, 2022, but Defendants did not confer in good faith, and simply asserted that the letter that DPPs had provided answering Defendants' questions was inadequate. (**DPP Ex. D.**) Despite recently receiving an interrogatory response specifically identifying customer data in DPPs' production, Defendants insisted that the parties file this brief without further attempts to confer.[6]

### B. Argument

Under Federal Rule of Civil Procedure 34, a party may serve on another party a request to produce documents and other tangible things within the responding party's possession, custody, or control. *France Telecom, S.A. v. Marvell Semiconductor, Inc.*, No. 12-CV-04967 WHA (NC), 2013 WL 12145894, at *1 (N.D. Cal. Sept. 6, 2013) (citing Fed. R. Civ. P. 34(a)(1)).

---

[6] Defendants' speculative assertions that DPPs' ESI search was unreasonable is untrue (and not presented in this motion seeking to compel customer information). In specific, Defendants' assertion that "DPPs admitted that they did not search the records or devices of any of a dozen or more former employees," and that "DPPs have admitted they did not search all reasonable locations," are false. DPPs searched all available ESI custodians and locations.

Similarly, every representation in this entire paragraph is also false:

> DPPs also refuse to disclose whether they ran any ESI search over any recoverable device. DPPs further refuse to detail any protocols followed, if any, to retrieve the requested information. DPPs also will not answer questions about whether they have obtained information from Radio City's accountants, which will likely contain responsive information that was purportedly lost. DPPs won't even reveal the identities of the accountants for Defendants.

In fact, DPPs have done all of this, including identifying Radio City's accountants to Defendants, and are diligently determining whether they hold additional relevant records.

Of course, none of this is relevant to RFP 170. The Court has previously admonished Defendants for raising matters not at issue in discovery letter briefs. (*See* Nov. 8, 2022 Hr'g Tr. at 22:13-16 ("[I]t's not proper to include in a discovery dispute submission about one subject matter stuff about another subject matter. I'm looking at you, Mr. Frost.").)

Hon. Virginia K. DeMarchi
January 6, 2023

As described above, Radio City has produced the documents responsive to RFP 170 within its possession, custody, or control, and has conducted a reasonable search for responsive documents. The motion should therefore be denied.

Defendants' motion is not substantially justified, is a waste of the Court's and the parties' resources, and is a prime example of why a special master should be appointed to manage discovery in this case.

### C. Conclusion

DPPs respectfully request that the motion be denied in full.

## REQUEST FOR HEARING

Defendants are more than happy to attend a hearing if it would be helpful for the Court.

**DPPS' POSITION:**

DPPs request a hearing to address the merits and Defendants' failure to meet and confer in good faith with respect to this motion.

## DISCOVERY CUTOFF DATES

It is Defendants' position that the Fact Discovery Cut-Off is July 17, 2023, based upon the Scheduling Order entered into the coordinated IPP Action (5:20-cv-03639) ECF 276, which is subject to Defendants' Motion for Entry of Scheduling Order Mirroring IPP Scheduling Order (ECF 274).

The parties' deadline to reach agreement regarding all remaining search terms for all previously-agreed upon custodians (both Defendant custodians and DPP custodians) is July 27, 2021. The deadline for the parties to submit a letter brief to the court regarding any inability to reach agreement with regards to any such search term is August 3, 2021.

**DPPS' POSITION:**

Contrary to Defendants' assertion, the Court has not imposed any discovery cut-off date in this action.

Hon. Virginia K. DeMarchi
January 6, 2023

## MEET AND CONFER ATTESTATION

I, Christopher Frost, attest that I met and conferred with Ron Fisher, counsel for DPPs on at least November 1, 2022, about this dispute.

**DPP'S POSITION:**

DPP's position is that Defendants have not adequately conferred about this motion, as evidenced by the fact that the relief Defendants seek is unclear, or how this motion relates to RFP 170.

Respectfully submitted,

Date: January 6, 2023

/s/ *Christopher Frost*
Christopher Frost (SBN 200336)
chris@WGFcounsel.com
WEINBERG GONSER FROST, LLP
10866 Wilshire Blvd., PH 1650
Los Angeles, California 90024
Telephone: (424) 407-4119
Facsimile: (424) 238-3060
*Attorneys for Celestron Acquisition, LLC, David Shen, Sylvia Shen, Jack Chen, Jean Shen, Suzhou Synta Optical Technology Co., Ltd., Nantong Schmidt Opto-Electrical Technology Co. Ltd., Synta Technology Corp., SW Technology Corporation, Synta Canada International Enterprises Ltd., Olivon Manufacturing Group Ltd., Joe Lupica, Corey Lee, Dave Anderson, Laurence Huen, Olivon USA, and Pacific Telescope Corp.*

Date: January 6, 2023

/s/ *Ronald J. Fisher*
J. Noah Hagey
Matthew Borden
Ellen V. Leonida
Ronald J. Fisher
BRAUNHAGEY & BORDEN LLP
351 California Street, 10th Floor
San Francisco, CA 94104
Telephone: (4105) 599-0210
Facsimile: (415) 276-1808
*Interim Counsel for Direct Purchaser Plaintiffs*

## ATTESTATION

I, Christopher Frost, am the ECF User whose ID and password are being used to file this document. In compliance with Civil L.R. 5-1(i)(3), I hereby attest that all counsel have concurred in this filing.

                                             */s/   Christopher Frost*
                                             Christopher Frost