J. Noah Hagey, Esq. (SBN: 262331)
    hagey@braunhagey.com
Matthew Borden, Esq. (SBN: 214323)
    borden@braunhagey.com
Ellen V. Leonida, Esq. (SBN: 184194)
    leonida@braunhagey.com
Ronald J. Fisher, Esq. (SBN: 298660)
    fisher@braunhagey.com
Ellis E. Herington, Esq. (SBN: 343085)
    herington@braunhagey.com
BRAUNHAGEY & BORDEN LLP
351 California Street, 10th Floor
San Francisco, CA 94104
Telephone: (415) 599-0210
Facsimile: (415) 276-1808

ATTORNEYS FOR REPRESENTATIVE
PLAINTIFF RADIO CITY, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE TELESCOPES ANTITRUST LITIGATION | Case No. 5:20-cv-03639-EJD |
| This Document Relates to: | Case No. 5:20-cv-03642-EJD |
| SPECTRUM SCIENTIFICS LLC, RADIO CITY, INC., and those similarly situated, | **DIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION TO ENFORCE DISCOVERY ORDER AND FOR SANCTIONS FOR VIOLATIONS OF COURT ORDERS** |
| Plaintiffs, | |
| v. | |
| CELESTRON ACQUISITION, LLC, SUZHOU SYNTA OPTICAL TECHNOLOGY CO., LTD., SYNTA CANADA INT'L ENTERPRISES LTD., SW TECHNOLOGY CORP., OLIVON MANUFACTURING CO. LTD., OLIVON USA, LLC, NANTONG SCHMIDT OPTO-ELECTRICAL TECHNOLOGY CO. LTD., NINGBO SUNNY ELECTRONIC CO., LTD., PACIFIC TELESCOPE CORP., COREY LEE, DAVID SHEN, SYLVIA SHEN, JACK CHEN, JEAN SHEN, JOSEPH LUPICA, DAVE ANDERSON, LAURENCE HUEN, and DOES 1-50, | **Date:** March 21, 2023<br>**Time:** 10:00 a.m.<br>**Judge:** Hon. Virginia K. DeMarchi<br>**Location:** Courtroom 2 – 5th Fl.<br><br>**Compl. Filed:** June 1, 2020<br>**Third Am. Compl. Filed:** August 31, 2021<br>**Trial Date:** None Set |
| Defendants. | |

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on March 21, 2023, at 10:00 a.m. or as soon thereafter as the matter may be heard before the Honorable Virginia K. DeMarchi, in the United States District Court for the Northern District of California at the San Jose Courthouse, 280 South 1st Street, Courtroom 2, 5th Floor, San Jose, CA 95113, Direct Purchaser Plaintiffs will move this Court to compel Defendants to (1) produce complete, unfiltered transactional data, as previously ordered by the Court, (2) provide written responses to the facilitating questions accompanying the production of complete, unfiltered transactional data, as previously ordered by the Court, and (3) explain the review and production process utilized to identify and generate the complete, unfiltered transactional data. Additionally, Defendants should be sanctioned for violating the Court's Orders pursuant to Federal Rule of Civil Procedure 37 and the Court's inherent powers, in the form of an order requiring Defendants to pay DPPs' reasonable expenses and attorney's fees in the amount of $90,333.25 and precluding Defendants from opposing certification of the DPP class during class certification proceedings.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum, the Declaration of Matthew Borden, the Declaration of Christopher Groves, the files and records in this action, and on such other written and oral argument as may be presented to the Court.

Dated:  February 8, 2023

Respectfully submitted,

BRAUNHAGEY & BORDEN LLP

By:   */s/ Matthew Borden*
　　　　　Matthew Borden

Attorneys for Direct Purchaser Plaintiffs

# **TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................. 1

BACKGROUND .................................................................................................................. 2

    A.    DPP's Efforts to Obtain Defendants' Transactional Data ...................................... 2

    B.    The Court Compels Defendants to Produce Their Transactional Data ................. 4

    C.    Defendants' Violate the Court's Second Order Compelling Them to Produce
        Their Transactional Data ....................................................................................... 5

    D.    Defendants' Incomplete Productions of Transactional Data in Recent Months..... 5

ARGUMENT ...................................................................................................................... 8

I.       DEFENDANTS ARE IN VIOLATION OF THE COURT'S ORDER FOR
        FAILING TO PRODUCE COMPLETE TRANSACTIONAL DATA ........................... 8

II.      SANCTIONS ARE WARRANTED................................................................. 12

    A.    DPPs' Expenses, Including Attorney's Fees, Under Rule 37(b)(2)(C) ............... 12

    B.    Defendants Should be Compelled to Explain Failure to Comply with Orders..... 14

    C.    The Court Should Preclude Defendants from Opposing Class Certification ....... 15

CONCLUSION.................................................................................................................. 17

DPPS' MOTION TO ENFORCE DISCOVERY ORDER AND FOR SANCTIONS FOR VIOLATIONS OF COURT ORDERS

1

# TABLE OF AUTHORITIES

2

**CASES**                                                                                                        **PAGE(S)**

3

4

*Anderson v. Fresno Cty., Human Servs. Sys.*,
No. 1:05-CV-1325-LJO, 2007 WL 1865657 (E.D. Cal. June 28, 2007)...................................... 12

5

*Apple, Inc. v. Samsung Elecs. Co., Ltd.*,
No. 11–CV–01846–LHK, 2012 WL 3155574 (N.D. Cal. Aug. 2, 2012) ................................... 17

6

7

*Bradburn Parent/Teacher Stores, Inc. v. 3M*,
No. Civ.A.02-7676, 2004 WL 1842987 (E.D. Pa. Aug. 18, 2004) ............................................ 10

8

9

*California Earthquake Auth. v. Metro. W. Sec., LLC*,
No. 2:10-CV-0291 MCE GGH, 2012 WL 6651152 (E.D. Cal. Dec. 20, 2012) ......................... 14

10

*Gibson v. Chrysler Corp.*,
261 F.3d 927 (9th Cir. Aug. 21, 2001) .................................................................................... 17

11

12

*HRC-Hainan Holding Company, LLC v. Yihan Hu*,
No. 19-mc-80277-TSH, 2020 WL 1643786 (N.D. Cal. Apr. 2, 2020) ....................................... 14

13

14

*In re Dynamic Random Access Memory Antitrust Litig.*,
No. M 02–1486 PJH, 2006 WL 1530166 (N.D. Cal. June 5, 2006)........................................... 10

15

*In re Live Concert Antitrust Litig.*,
247 F.R.D. 98 (C.D. Cal. 2007)................................................................................................ 10

16

17

*In re Ng*,
No. 06–30904 TEC, No. 07–3071 TC, 2009 WL 2905849 (Bankr. N.D. Cal. Sept. 3, 2009)..... 16

18

19

*Ingrid & Isabel, LLC v. Baby Be Mine, LLC*,
No. 13-cv-01806-JCS, 2014 WL 1338480 (N.D. Cal. Apr. 1, 2014).......................................... 13

20

*Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*,
456 U.S. 694 (1982) ............................................................................................................ 16, 17

21

22

*Li v. A Perfect Day Franchise, Inc.*,
281 F.R.D. 373 (N.D. Cal. 2012) ............................................................................................. 16

23

24

*Microtherm, Inc. v. Norman Wright Mech. Equip. Corp.*,
No. C 04–2266 JW (PVT), 2010 WL 10133699 (N.D. Cal. Sept. 22, 2010).............................. 13

25

*Nat'l Hockey League v. Metro. Hockey Club, Inc.*,
427 U.S. 639 (1976) ................................................................................................................. 16

26

27

*Nichols v. SmithKline Beecham Corp.*,
No. CIV.A. 00-6222, 2003 WL 302352 .................................................................................. 10

28

*Resolute Forest Prods., Inc. v. Greenpeace Int'l,*
  No. 17-cv-02824-JST (KAW), 2022 WL 16637990 (N.D. Cal. Nov. 2, 2022) ..................... 16, 17

*Stone Brewing Co., LLC v. MillerCoors LLC,*
  No. 18CV331-BEN-LL, 2019 WL 5677844 (S.D. Cal. Oct. 31, 2019) ....................................... 15

*Stone Brewing Co., LLC v. MillerCoors LLC,*
  No. 3:18-CV-0331-BEN-LL, 2020 WL 6112188 (S.D. Cal. Oct. 16, 2020) ............................... 15

*Theme Promotions, Inc. v. News Am. Mktg. FSI,*
  546 F.3d 991 (9th Cir. 2008) ...................................................................................................... 10

*Varney v. Cal. Highway Patrol,*
  No. C11–4193 TEH (JSC), 2013 WL 2299544 (N.D. Cal. May, 24, 2013) ................................ 13

*Wyle v. R.J. Reynolds Indus., Inc.,*
  709 F.2d 585 (9th Cir. 1983) ...................................................................................................... 16

**RULES**

Fed. R. Civ. P. 37 ........................................................................................................................ passim

Fed. R. Civ. P. 26 ............................................................................................................................... 8

Direct Purchaser Plaintiffs ("DPPs") respectfully submits this Memorandum in support of its Motion to Enforce the Court's Discovery Order.

**<u>INTRODUCTION</u>**

DPPs propounded discovery requests on August 24, 2020 requesting Defendants' customer sales, cost, and pricing transactional data essential to these antitrust claims. The Court twice ordered Defendants to produce the information, but Defendants still have refused to do so. In its prior Orders, the Court recognized that the missing data is critical to DPPs' ability to mount their antitrust case. It is also the same type of information Defendants readily possess and use on a regular, if not daily, basis to assess the cost and pricing of products offered and sold to consumers. The prejudice caused by Defendants' delay is significant and stands as the largest barrier to DPPs' efforts to certify a class and run regressions determining the amount that Defendants overcharged various customers during the period.

The failure to produce these documents is not due to any difficulty in finding the materials. Defendants' transactional data is simply numbers and names and can be produced without privilege review, word searches, or any other work that could legitimately delay discovery.

Rather, Defendants' violations of the Court's Orders are intentional. For example, the Court ordered Defendants to produce transactional data "without filters." (Dkt. 277 at 1.) In response to the Court's Order, Defendants obviously applied filters to their production. Further, their most recent productions omit cost and sales data fields that they included in prior productions. The only explanation for this is that Defendants eliminated data from their Court-ordered productions to prevent DPPs from making use or sense of the data in violation of the Court's Orders.

DPPs have spent substantial time and effort trying to get these documents and enforcing the Court's Orders. And while Defendants have been willfully flouting this Court's Orders requiring them to produce transactional data, they have been prolific in seeking the Court's assistance on other matters, filing at least 29 substantive motions seeking various forms of relief since Plaintiffs first requested their transactional data in August 2020. This is a misuse of the judicial process despite two Court Orders requiring them to produce it. Defendants' should  be sanctioned under Rule 37 and the Court's inherent powers. In addition to being ordered, again, to produce the

DPPS' MOTION TO ENFORCE DISCOVERY ORDER AND FOR SANCTIONS FOR VIOLATIONS OF COURT ORDERS

documents, Defendants should be required to pay DPPs' monetary costs and further explain what they have done to comply with the Court's Orders. To date, those fees and costs have amounted to $90,333.25. Further, since this is a violation of a Court Order enforcing a prior Court Order, the Court should impose non-monetary sanctions that, at minimum, preclude Defendants from opposing class certification.

## **BACKGROUND**

### A.     DPP's Efforts to Obtain Defendants' Transactional Data

On August 24, 2020, DPPs propounded document requests seeking Defendants' transactional data. (Declaration of Matthew Borden ("Borden Decl."), Ex. 1, Request Nos. 7, 38-45, 91-92.) DPPs propounded additional document requests concerning transaction-level data on October 30, 2020. (*Id.*, Ex. 2, Request Nos. 96-98.) Defendants did not provide any transactional data in response.

On October 27, 2021, the Court entered an Order requiring Defendants to produce their transactional data by December 1, 2021 (Dkt. 212 ¶ 7). Defendants did not do so. What they did produce, over a year after receiving the requests, was missing important, readily-available data, such as the names of their customers. The data was so incomplete that it prevented DPPs from performing the routine type of analysis done in antitrust cases. (Declaration of Chris Groves ("Groves Decl.") ¶¶ 6-7, 9.)

DPPs began trying to figure out these issues with Defendants to avoid going to Court. On March 4, 2022, DPPs along with the indirect purchaser plaintiffs ("IPPs") wrote to Defendants seeking identification (by Bates ranges) of the documents in their productions responsive to the requests for transactional data. (Borden Decl., Ex. 3.) Defendants refused to respond to the March 4, 2022, letter for two months.

On May 2, 2022, Defendants identified five Bates ranges from their production, including one Bates range spanning millions of documents and claimed that their production was complete. (*Id.*, Ex. 4.) Based on the information Defendants provided, DPPs identified many deficiencies in Defendants' production, including that the documents in the identified Bates ranges failed to provide key information associated with Defendants' transactions, such as transaction-level sales

data and associated cost data.  (Borden Decl., Exs. 5, 6).  As detailed below, DPPs tried to raise those concerns as well.

Throughout 2022, DPPs continually sought to meet and confer with Defendants about their transactional data production. Over the course of 2022, Defendants continued to avoid those attempts in various ways, including by canceling multiple scheduled meet and confer calls (Borden Decl., Ex. 8), failing to ensure the attendance of knowledgeable client representatives despite their promises to do so (Borden Decl., Ex. 9), or simply never responding to DPPs requests to schedule calls (Borden Decl., Ex. 7). A more detailed timeline of this process is set forth below:

- **3/04/22:** DPPs send letter seeking identification of documents within Defendants' productions that constitute responsive transaction-level sales data
- **4/04/22:** DPPs send second letter after Defendants fail to respond to March 4 letter and follow-up March 23 email
- **5/02/22:** Defendants send email with five Bates ranges containing the transactional data and state that the "Suzhou Synta data will be forthcoming"
- **5/19/22:** DPPs send email identifying problems with the broad Bates ranges, which, *inter alia*, do not appear to include categories of information sought in the document requests; Defendants do not respond
- **5/26/22:** DPPs follow up on 5/19/22 email; Defendants state via email that they will respond the following week
- **6/17/22:** DPPs follow up with a letter after having received no further response from Defendants and request to meet and confer
- **6/22/22:** DPPs follow up to request time to meet and confer about transactional data
- **7/05/22:** the parties very briefly meet and confer about transactional data; DPPs follow up via email to request further meet and confer time; Defendants do not respond
- **7/06/22:** DPPs follow up to request further meet and confer; Defendants propose 7/11/22
- **7/10/22:** Defendants cancel 7/11/22 call scheduled for the next morning; DPPs propose 7/12/22; Defendants do not respond
- **7/18/22:** DPPs send list of questions concerning the transactional data and request to meet and confer within five business days with a client representative knowledgeable about the electronic systems
- **7/20/22:** DPPs follow up via email; Defendants propose to meet and confer on 8/09/22
- **7/26/22 to 8/05/22:** DPPs collectively send five emails requesting confirmation of date to meet and confer before Defendants respond

- **8/05/22:** Defendants propose to meet and confer with client representative present on 8/10/22
- **8/09/22:** the day before the meet and confer, Defendants state that client representative will not be available to participate in call until 8/15/22
- **8/10/22:** DPPs send letter with additional questions about transactional data
- **8/11/22:** Defendants state that no client representative will be available for 8/15/22 call and propose a call with the client representative on 8/22/22
- **8/15/22:** the parties meet and confer with no client representative present
- **8/22/22:** less than two hours before the meet and confer call that client representative was supposed to attend, Defendants state that no client representative will be available until 8/29/22; the parties meet and confer with no client representative present
- **8/31/22:** meet and confer call; Defendants' client representative does not attend; Defendants disclose for the first time that they had applied filters and not produced all data

(the "Motion to Compel", Dkt. 260, at 6-8 (summarizing DPPs' attempts to meet and confer with Defendants).)

## B.   The Court Compels Defendants to Produce Their Transactional Data

After DPPs' above efforts to obtain this basic information from Defendants did not succeed, DPPs filed a motion to compel Defendants to (1) complete their production of transactional data and (2) provide written responses to certain questions posed by Plaintiffs for the purpose of facilitating production and comprehension of the transactional data. (*Id.* at 4-5, 8.) Defendants opposed the motion, claiming that their production of transactional data was complete. (*Id.* at 9-13.) The Court rejected Defendants' arguments and granted the Motion to Compel. The Court ordered that, *inter alia*:

> 1.      Defendants must produce the Celestron transactional data, for the relevant period, without filters by **November 30, 2022**.
>
> 2.      Defendants shall provide the following information informally, but in writing, to Plaintiffs solely for the purpose of facilitating the production of transactional data by **November 30, 2022**. For each defendant who has appeared in the case:
>
>      a.      the name of any database programs or applications used to manage or store sales data in the ordinary course of business; []
>
>      b.      whether Defendants believe that the transactional data available for production or produced to date includes or does not include each of the 19 categories of information described in Plaintiffs' RFP 96; [and]

4

Case No. 5:20-cv-03642-EJD

DPPS' MOTION TO ENFORCE DISCOVERY ORDER AND FOR SANCTIONS FOR VIOLATIONS OF COURT ORDERS

c.     the formats in which data may feasibly be exported from any database or system in Defendants' possession, custody, or control that contains sales data.

(Dkt. 277, at 1-2.)

### C.     Defendants' Violate the Court's Second Order Compelling Them to Produce Their Transactional Data

Defendants did not comply with the Court's second Order compelling them to produce their transactional data. On November 30, 2022, Defendants made a production of transactional data, but the production was non-compliant for several reasons. (Borden Decl., Ex. 10.) First, it was still subject to various filters despite the Court's Order requiring that the transactional data be "unfiltered." Second, Defendants also omitted certain Celestron cost data from this production, as further detailed in Section D below. (Groves Decl., ¶¶ 6-7, 9.)

Defendants also violated the second part of the Court's Order which required them to provide information to DPPs. Defendants failed to provide information responsive to the three categories identified in the Count's Order for any Defendant other than Celestron, and did not supply any explanation for omitting this information. (Borden Decl., Ex. 11.)

During multiple meet and confer calls, Defendants represented that they would correct the deficiencies noted above by agreed-upon dates in January 2023, but Defendants failed to complete the production of data and information by those dates as well. (*Id.*, Ex. 13.) On January 19, 2023, Defendants made an additional production of transactional data, but this production remained deficient in numerous respects, which are discussed further in Sections D and I below. (*Id.*, Ex. 12.) To date, Defendants have not completed their production of the data and information that the Court ordered them to provide.

### D.     Defendants' Incomplete Productions of Transactional Data in Recent Months

Defendants recently made two productions of data, purporting to be the transactional data ordered by the Court in its second Order compelling Defendants to produce their transactional data. As further detailed in Section I below, numerous fields and categories of information are still missing from these latest productions.

The first set of issues concerns the sales data Defendants produced in DEFS021460464 (the "Court-Ordered Sales Data Set"). For the period from 2001 through May 2015, Defendants' sales data was hosted on SyteLine. From June 2015 onward, Defendants' sales data was hosted on SAP Business by Design. (Groves Decl., ¶ 5.) As to the data hosted on SyteLine, the Court-Ordered Sales Data Set excludes all data prior to 2005. (*Id.*, ¶ 6(a).)

Second, the Court-Ordered Sales Data Set lacks product characterizations that appeared in earlier productions. (*Id.*, ¶ 6(c).) The limited descriptions available in the Court-Ordered Sales Data Set do not reliably identify whether the products are telescopes, telescope accessories, or other items Defendants have sold. (*Id.*)

Third, the Court-Ordered Sales Data Set also does not contain complete customer information. For example, only 700 customers—all corporate retailers—are identified from 2016 to 2020. (*Id.*, ¶ 6(d).) Further, direct-to-consumer sales are also absent, although it is not clear whether their data has been entirely omitted or summarily consolidated under corporate entities responsible for distribution or direct shipments. (*Id.*) Defendants' failure to produce complete customer information intentionally violates the Court Order because Defendants previously produced documents containing the same detailed customer information that they are now withholding. The following screenshots illustrate the changes to customer information that took place prior to Defendants' production of the Court-Ordered Sales Data Set:

**Example 1: Invoice 561352**

**Fig. 1 – Defendants' Court-Ordered Production**
**DEFS021460464 (Customer Name "Brookstone – DS")**

| Customer # | Customer Name | Invoice # | Invoice Date | SKU (Product ID) | Description | Qty | Unit Price | USD | Extended Price |
|---|---|---|---|---|---|---|---|---|---|
| 383 | BROOKSTONE - DS | 561352 | 12/14/2012 | 21073 | TEL ASTROMASTER LT 60AZ | 1 | 65 | USD | 65 |

**Fig. 2 – Defendants' Prior Production**
**DEFS000030562 (Name "Adams, Adrienne")**

| Cust Num | Name | Inv Num | Inv Date | Item | Description | Total Qty | Revenue | Cogs | Family | Gross Profit | Mod Family | Mod Customer |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 383 | ADAMS, ADRIENNE | 561352 | 41257 | 21073 | TEL ASTROMASTER LT 60AZ | 1 | 65 | 30.93 | Entry Level Telescopes | 34.07 | Telescopes | All Other Customers |

Fig. 1 and Fig. 2 both describe the same sale. This can be seen by comparing the invoice numbers (561352). As seen in comparing Fig. 1 and Fig. 2, the old production had 13 fields, whereas the new production has only 10 fields. Because Defendants' second production—which was compelled by Court Orders—obviously has less information on its face, this means that some type of screen was used to remove data. Moreover, the new production is missing fields for revenue, COGS (cost of goods and services), and gross profit, all of which are critical information to assess overcharges. Finally, the old production includes the name of an individual customer, whereas the Court-Ordered Sales Data Set provides only the name of a company.

**Example 2: Invoice 568002**

**Fig. 3 – Defendants' Court-Ordered Production**
**DEFS021460464 (Customer Name "Brookstone – DS")**

| Customer # | Customer Name | Invoice # | Invoice Date | SKU (Product ID) | Description | Qty | Unit Price | USD | Extended Price |
|---|---|---|---|---|---|---|---|---|---|
| 383 | BROOKSTONE - DS | 568002 | 1/14/2013 | 11075-XLT | TEL 11", CPC1100 W/ XLT COATING | 1 | 2519 | USD | 2519 |

**Fig. 4 – Defendants' Prior Production**
**DEFS000030562 (Name "Carano, Bandel L")**

| Cust Num | Name | Inv Num | Inv Date | Item | Description | Total Qty | Revenue | Cogs | Family | Gross Profit | Mod Family | Mod Customer |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 383 | CARANO, BANDEL L | 568002 | 41288 | 11075-XLT | TEL 11", CPC1100 W/ XLT COATING | 1 | 2519 | 1423 | High End Telescopes | 1096 | Telescopes | All Other Customers |

Figures 3 and 4 tell a similar story. The Court-ordered production for invoice 568002 contains less data and has key data fields for revenue, COGS, and gross profit screened out.

All told, sixteen fields of data are missing from Defendants' Court-ordered production of the SyteLine documents, and twenty fields are missing from Defendants' Court-ordered production of the SAP By Design documents. (*Id.*, ¶ 6(b).) Charts itemizing the missing fields are attached as Exhibit 2 to Mr. Groves's Declaration.

Fourth, the Court-Ordered Sales Data Set does not contain any cost data. (*Id.*, ¶ 6(e).) Earlier productions by Defendants' did contain that missing data, including "Landed Cost (Unit)," "Landed Cost (Extended)," "Landed Cost," and "Margin." (*Id.*) Defendants' most recent "corrective" production, DEFS21460465 (the "Court-Ordered Cost Data Set"), contains some cost data from 2005 to 2022, but still does not contain all the information missing from the Court-Ordered Sales Data Set.  (*Id.*, ¶¶ 7, 9.) For example, the Court-Ordered Cost Data Set contains

1   information for only 2,343 unique SKUs, but excludes cost information for certain years for over

2   200 SKU/year combinations identified in the Court-Ordered Sales Data Set. (*Id.*, ¶ 9(b).) As

3   another example, the Court-Ordered Cost Data Set includes at least 1,183 records where the cost of

4   a given product appears as null or zero. (*Id.*, ¶ 9(c).)

5        As discussed in Section I below, these intentional omissions in the Court-Ordered Cost Data

6   Set also violate the Court's second Order.

7                                   **ARGUMENT**

8        When a party violates a Court Order, Rule 37(b)(2)(A) permits the court to issue "further

9   just orders" in its discretion and specifically lists an array of potential sanctions, including

10  "directing that the matters embraced in the order or other designated facts be taken as established

11  for purposes of the action, as the prevailing party claims"; "prohibiting the disobedient party from

12  supporting or opposing designated claims or defenses, or from introducing designated matters in

13  evidence"; and "rendering a default judgment against the disobedient party." Fed. R. Civ. P.

14  37(b)(2)(A). A party's failure to disclose relevant information as required by Rule 26 also

15  empowers the Court with discretion to impose sanctions, including the payment of the opposing

16  party's attorneys' fees, informing the jury of the party's failure, or "other appropriate sanctions."

17  Fed. R. Civ. P. 37(c)(1).

18  **I.    DEFENDANTS ARE IN VIOLATION OF THE COURT'S ORDER FOR FAILING
        TO PRODUCE COMPLETE TRANSACTIONAL DATA**

19
20       On October 27, 2021, the Court entered the first Order requiring Defendants to complete

    production of transactional data by December 1, 2021. (Dkt. 212 ¶ 7.) As the Court already found,
21
    Defendants violated the Court's first Order. After they refused to complete production of
22
    transactional data by that date and falsely claimed that their production was complete, DPPs tried to
23
    engage and resolve the issue through nearly a year's worth of discovery correspondence, while
24
    Defendants postponed or canceled meet and confer calls. (*See supra*, Section A (citing Borden
25
    Decl., Exs. 7-9).) After DPPs were forced to bring a successful Motion to Compel, that should have
26
    ended this issue—but it did not.
27

28

In its second Order, the Court granted Plaintiffs' joint Motion to Compel, requiring *inter alia* that Defendants 1) "produce the Celestron transactional data, for the relevant period, without filters"; 2) provide written responses to certain questions Plaintiffs had previously asked, "for the purpose of facilitating the production of transactional data," including: "the name of any database programs or applications used to manage or store sales data in the ordinary course of business," "whether Defendants believe that the transactional data available for production or produced to date includes or does not include each of the 19 categories of information described in Plaintiffs' RFP 96," and "the formats in which data may feasibly be exported from any database or system in Defendants' possession, custody, or control that contains sales data," all by November 30, 2022. (Dkt. 277, at 1-2.)

Defendants violated each aspect of the Court's second Order, because they did not fully produce and provide the data and information called for by the Court's Order by the date of compliance. Rather, they provided incomplete transactional data, which was still subject to various filters despite the Court's Order requiring that the transactional data be "unfiltered," and omitted certain Celestron cost data. (Borden Decl., Ex. 10.) Defendants also failed to answer the facilitating questions posed by the Court in the second Order, even further limiting the utility of the deficient data productions contained in the Court-Ordered Sales Data Set and the Court-Ordered Cost Data Set.

The Court-Ordered Sales Data Set violates the Court's Order for at least three reasons:

First, it is missing several fields and categories of data from the period of 2001 through May 2015, which relates to data hosted on SyteLine; and data missing from June 2015 onward, which is hosted on SAP Business by Design. (Groves Decl., ¶ 6.) These fields and categories of missing data include without limitation: (1) the omission of any SyteLine-hosted data prior to 2005; (2) missing product characterizations that were included in earlier transactional data productions and are needed to identify the products sold; and (3) complete customer information needed to identify the purchaser of goods in detail. (*Id.*)

Defendants necessarily removed these fields using filters. This is clear because Defendants' initial production of data included data from 2001-2005, but the subsequent Court-ordered

production omits it. Unfiltered 2001-05 data is needed because the antitrust conspiracy in this case is alleged to have begun in 2005. As numerous courts have recognized, such "before and after" market data is relevant to establishing antitrust causation and damages, including on a class-wide basis. *See Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1005 (9th Cir. 2008) (holding that "the 'before and after' picture of [plaintiff]'s business provided by [plaintiff]'s damages expert . . . helped to establish causation."); *see also In re Live Concert Antitrust Litig.*, 247 F.R.D. 98, 145 (C.D. Cal. 2007) (noting that the "before-and-after methodology has been accepted by numerous courts."); *In re Dynamic Random Access Memory Antitrust Litig.*, No. M 02–1486 PJH, 2006 WL 1530166, at *9 (N.D. Cal. June 5, 2006) (noting that the before-and-after methodology has been "upheld by numerous courts"); *Bradburn Parent/Teacher Stores, Inc. v. 3M*, No. Civ.A.02-7676, 2004 WL 1842987, at *14–18 (E.D. Pa. Aug. 18, 2004) (holding that plaintiffs satisfied their burden of demonstrating that class-wide impact could be proved through common evidence where plaintiff's expert proposed the use of a before-and-after methodology); *Nichols v. SmithKline Beecham Corp.*, No. CIV.A. 00-6222, 2003 WL 302352, at *8 (holding that the before-and-after methodology for calculating antitrust impact is a generally accepted methodology for purposes of determining impact and damages on class-wide basis.)

Second, the Court-Ordered Sales Data Set lacks product characterizations that appeared in earlier productions. (Groves Decl., ¶ 6(c).) The limited descriptions available in the Court-Ordered Sales Data Set do not reliably identify whether the products are telescopes, telescope accessories, or other items Defendants have sold, whereas earlier productions did identify these characteristics. (*Id.*) The Court-Ordered Sales Data Set also does not contain complete customer information. For example, only 700 customers—all corporate retailers—are identified from 2016 to 2020. (*Id.*, ¶ 6(d).) Even though Defendants sold directly to consumers through Celestron's website, those sales are conspicuously absent from the data set, although it is not clear whether their data has been entirely omitted or summarily consolidated under corporate entities responsible for distribution or direct shipments. (*Id.*) Defendants previously produced documents containing detailed customer information. The following screenshots illustrate the changes to customer information that took place prior to Defendants' production of the Court-Ordered Sales Data Set. (*See supra*, Figs. 1-4.)

All told, sixteen fields of data are missing from the SyteLine documents, and twenty fields are missing from the SAP By Design documents. (Groves Decl., ¶ 6(b).) Charts itemizing the missing fields are attached as Exhibit 2 to Mr. Groves's Declaration. Defendants intentionally altered this production using filters because this information was present in their first production. (*Id.*, Ex. 2.)

Finally, the Court-Ordered Sales Data Set does not contain any cost data. (*Id.*, ¶ 6(e).) Earlier productions by Defendants did contain that missing data, including "Landed Cost (Unit)," "Landed Cost (Extended)," "Landed Cost," and "Margin." (*Id.*) Thus, Defendants again used filters to remove key data and render their production non-useful in direct violation of the Court's Order.

After DPPs pointed out that Defendants had violated the Court's Order, Defendants made a second production of Cost Data. Defendants' later-produced Court-Ordered Cost Data Set does little to ameliorate the deficiencies in Defendants' original production and does not attempt to cure any of the identified deficiencies in the Court-Ordered Sales Data Set beyond supplying some (still incomplete) cost data. The sparse and fragmented data produced still violates Defendants' obligations to produce complete, unfiltered transactional data, as ordered by the Court. While the Court-Ordered Cost Data Set contains some cost data from 2005 to 2022, it clearly has been filtered in violation of the Court's second Order. (*Id.*, ¶ 9.) By comparing the Court-Ordered Sales Data set with the Court-Ordered Cost Data set, DPPs' expert determined that ***there are over 200 products identified in the sales data for which there is no corresponding cost data***. (*Id.*, ¶ 9(b).)[1]

In sum, Defendants have not produced their unfiltered transactional data as required by the Court's Order; nor have they provided the facilitating information required by that Order; nor have they provided an explanation for the months-long delay. DPPs have sought to avoid motion practice through repeated meet-and-confers on these subjects, but Defendants still have taken no action. This pattern of conduct shows that Defendants are not only in violation of the Court's Orders, but their conduct is willful, as demonstrated by their omission of glaringly obvious fields— like basic customer or price information—without which a production of transactional data cannot

---

[1] The Court-Ordered Cost Data Set is riddled with other errors as well, including more than 1,183 records where the cost of a given product appears as null or zero. (*Id.*, ¶ 9(c).)

seriously be considered complete. Moreover, certain of the missing fields were included in previous productions by Defendants, indicating their intention to withhold data that is necessary for DPPs to make use or sense of the full transactional data set. Defendants' conduct is beyond inadvertence, and at this point can only be seen for what it is: withholding of critical data for the purpose of obstructing DPPs development of their case against Defendants. The transactional data at issue here is the lifeblood of an antitrust class action and is the key evidence that will permit DPPs to move for class certification and calculate overcharges. The Court has recognized the importance of this evidence by previously ordering Defendants to produce it—twice. Defendants are flouting this Court's Orders and causing significant prejudice to DPPs at the same time.

Based on Defendants' past and ongoing violations of the Court's Orders and refusal to provide information regarding what they have done to comply, the Court should order Defendants to fully comply with the Orders by producing all transactional data, including all incomplete or omitted fields as described above, without applying any filters or limitations as directed in the Court's second Order. The Court should also sanction Defendants for their violations of the Orders.

## II.    SANCTIONS ARE WARRANTED

Defendants' willful violation of the Court's Orders to produce complete, unfiltered transactional data is plainly sanctionable conduct under Federal Rule of Civil Procedure 37(b). *See Anderson v. Fresno Cty., Human Servs. Sys.*, No. 1:05-CV-1325-LJO, 2007 WL 1865657, at *6 (E.D. Cal. June 28, 2007) ("Disobedient conduct not shown to be outside the control of the litigant is all that is required to demonstrate willfulness, bad faith, or fault.") (citation omitted). Monetary sanctions, covering DPPs reasonable expenses and attorney's fees in connection with their pursuit of the still-unproduced transactional data, are mandated under Rule 37(b)(2)(C). The severity of Defendants' violations also warrants ordering non-monetary sanctions against them, in the form of an order precluding them from opposing class certification.

### A.    DPPs' Expenses, Including Attorney's Fees, Under Rule 37(b)(2)(C)

Rule 37(b)(2)(C) provides that when a party has violated a Court Order, "the court ***must*** order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or

1   other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C) (emphasis

2   added).

3        Defendants have engaged in a slew of dilatory tactics to avoid producing complete

4   transactional data for *over a year*. Such conduct is, without doubt, sanctionable under Rule

5   37(b)(2)(C). Courts in this district routinely find monetary sanctions appropriate for parties'

6   failures to comply with discovery-related orders such as the Orders at issue here. *See, e.g.*, *Ingrid &*

7   *Isabel, LLC v. Baby Be Mine, LLC*, No. 13-cv-01806-JCS, 2014 WL 1338480, at *8 (N.D. Cal.

8   Apr. 1, 2014) (awarding monetary sanctions, including "attorneys' fees and costs associated with:

9   1) efforts to obtain responsive documents through subpoenas to third parties; 2) the completion of

10  depositions in Connecticut for which Plaintiff's counsel was unable to adequately prepare because

11  of the late production; and 3) the filing of the instant motion," for over two months' delay of

12  compliance with court-ordered document production); *Varney v. Cal. Highway Patrol*, No. C11–

13  4193 TEH (JSC), 2013 WL 2299544, at *3 (N.D. Cal. May, 24, 2013) (ordering payment of

14  "monetary sanctions for [Defendants'] reasonable time and expenses bringing" motion under Rule

15  37(b)(2) where "Plaintiff failed to comply with [the Court's] Order for nearly seven months and

16  only did so after Defendants filed the underlying motion for sanctions"); *Adv. Microtherm, Inc. v.*

17  *Norman Wright Mech. Equip. Corp.*, No. C 04–2266 JW (PVT), 2010 WL 10133699, at *2 (N.D.

18  Cal. Sept. 22, 2010) (ordering payment of monetary sanctions due to "Plaintiffs' failure to comply

19  with this court's February 26, 2010 Order for over five months . . . without 'substantial

20  justification.'"). Defendants' willful delay in producing the transactional data required by the

21  Orders far eclipses the delays found sanctionable in many other cases from courts in this district.

22  Nor have Defendants explained why their violations of the Orders are "substantially justified." *See,*

23  *e.g.*, *HRC-Hainan Holding Company, LLC v. Yihan Hu*, No. 19-mc-80277-TSH, 2020 WL

24  1643786, at *3-5 (N.D. Cal. Apr. 2, 2020) (explaining that "the substantial justification inquiry

25  comes down to this: did the litigant make a diligent effort to avoid being in violation of the court

26  order?" and concluding that payment of fees was warranted in the absence of such a diligent effort).

27  Under Rule 37(b)(2)(C), monetary sanctions are therefore mandated.

28

In connection with DPPs' efforts to obtain Defendants' transactional data, counsel for DPPs has incurred at least $51,739.50 in attorney's fees. (Borden Decl., ¶ 31.) This sum is the product of at least 77.3 hours of attorney and paralegal work relating to Defendants' transactional data, including work on the initial motion to compel, this motion, the meet and confer efforts leading to those motions, and time spent reviewing Defendants' deficient productions. DPPs have also incurred expenses associated with Mr. Groves's analysis of Defendants' deficient productions of transactional data, amounting to $38,593.75 in fees. (*Id.*, ¶ 34.) In total, DPPs' have expended at least $90,333.25 in reasonable expenses and attorney's fees in their efforts to obtain complete, unfiltered transactional data from Defendants, despite the Court ordering them to produce that data twice.

**B.      Defendants Should be Compelled to Explain Failure to Comply with Orders**

The Court should require Defendants to explain what they have done to comply with the two Court Orders they violated. Their conduct raises significant concerns, and this relief is necessary to ensure the integrity of the record in these proceedings.

Courts are empowered with discretion to address discovery shortcomings like Defendants', including by ordering parties to explain the process leading to their deficient responses. *See* ECF No. 595 at 5:1-4 in *Orion* action, 5:16-cv-06370 ("the Court requires Ningbo Sunny to submit a declaration from a person with knowledge describing with specificity how Ningbo Sunny conducted a search for documents responsive to Orion's post-judgment document requests"). *See also California Earthquake Auth. v. Metro. W. Sec., LLC*, No. 2:10-CV-0291 MCE GGH, 2012 WL 6651152, at *5 (E.D. Cal. Dec. 20, 2012) (ordering recipient of third-party subpoena to "'fully explicate the process it used to identify and produce' documents responsive to each of [the subpoena's] requests for production"); *Stone Brewing Co., LLC v. MillerCoors LLC*, No. 18CV331-BEN-LL, 2019 WL 5677844, at *4 (S.D. Cal. Oct. 31, 2019) (recommending the imposition of monetary sanctions for defendant's failure "to adequately explain why a thorough and extensive search and corresponding production of all remaining [responsive] materials was not made until this procedural posture"), *report and recommendation adopted in relevant part*, No. 3:18-CV-0331-BEN-LL, 2020 WL 6112188 (S.D. Cal. Oct. 16, 2020).

As detailed in Mr. Groves's Declaration, various fields of transactional data are missing from the productions Defendants have made to date. Additionally, the inconsistencies between productions identified by Mr. Groves raise major concerns about the review and production process that Defendants are using to generate their transactional data productions. Defendants should be compelled to explain their review and production process in order to remedy the uncertainty they have created by their incomplete and inconsistent productions.

**C.     The Court Should Preclude Defendants from Opposing Class Certification**

Rule 37(b)(2)(A) also permits the Court to order non-monetary sanctions for failure to obey a discovery order. The Court is vested with the power to "issue further just orders," including:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>
> (iii) striking pleadings in whole or in part;
>
> (iv) staying further proceedings until the order is obeyed;
>
> (v) dismissing the action or proceeding in whole or in part;
>
> (vi) rendering a default judgment against the disobedient party; or
>
> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A).

As explained above, the transactional data Defendants have withheld for over a year now is the heart and soul of an antitrust case like this one. Complete data that shows all of Defendants' transactions throughout the relevant time period, including customer information, product characterizations, cost data, and other key characteristics is absolutely critical to DPPs' ability to litigate this case. It is relevant to major upcoming case milestones, including class certification and calculation of economic damages. DPPs are unable to acquire this data from any source other than Defendants, yet Defendants continue to improperly deny DPPs access to this information.

The nature of Defendants' warrants the imposition of meaningful non-monetary sanctions in addition to DPPs' reasonable expenses and attorney's fees. DPPs request that the Court order non-monetary sanctions in the form of an order precluding Defendants from opposing certification of the DPP class. The Court, "as a sanction for [Defendants'] failure to comply with discovery orders, may order the matters at issue or other designated facts to be 'established' for purposes of the action." *Li v. A Perfect Day Franchise, Inc.*, 281 F.R.D. 373, 393 (N.D. Cal. 2012) (citations omitted). Such relief is subject to two requirements: "[f]irst, 'any sanction must be "just"'; second, the sanction must be specifically related to the particular "claim" which was at issue in the order to provide discovery.'" *Id.* (quoting *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 695 (1982)). These limitations guide the Court in appropriately tailoring the sanctions imposed on a party to the discovery malfeasance the party has engaged in. *Id.*; *see also Resolute Forest Prods., Inc. v. Greenpeace Int'l*, No. 17-cv-02824-JST (KAW), 2022 WL 16637990, at *7 (N.D. Cal. Nov. 2, 2022) (identifying factors courts should consider when imposing sanctions, including "sanction[s] designed to . . . penalize those whose conduct may be deemed to warrant such a sanction . . . [or] restore a prejudiced party to the same position he or she would have been in absent the wrongdoing") (citing *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976); *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 589 (9th Cir. 1983)).

Courts in this District routinely find that preclusion sanctions are appropriate where a party has willfully withheld production of relevant and responsive materials. *See, e.g.*, *In re Ng*, No. 06–30904 TEC, No. 07–3071 TC, 2009 WL 2905849, at *3 (Bankr. N.D. Cal. Sept. 3, 2009), *aff'd sub nom. Hewlett v. Elder*, No. C 09-4670 CRB, 2010 WL 702299 (N.D. Cal. Feb. 25, 2010), *aff'd sub nom. In re Ng*, 419 F. App'x 720 (9th Cir. 2011) (precluding claimant from introducing evidence due to her failure to produce responsive documents); *Resolute Forest Prods.*, 2022 WL 16637990, at *12 (recommending that, where party omitted material facts supporting its damages in court-ordered interrogatory responses, "any damages theories first disclosed in the April 2022 interrogatory responses, as well as any supporting evidence, should be excluded"); *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, No. 11–CV–01846–LHK, 2012 WL 3155574, at *3 (N.D. Cal. Aug. 2,

1  2012) (denying Samsung's motion for relief from Magistrate Judge Grewal's Sanction Order

2  precluding Samsung from introducing evidence that it failed to timely produce in response to court

3  order because "Samsung's failure to fully comply . . . necessarily prejudiced Apple's ability to

4  build its case . . . and to defend itself against cross-examination of its expert witnesses").

5         Here, Defendants' failure to timely produce complete transactional data is closely tied to—

6  and prejudicial to—DPPs' ability to prepare for class certification in this case. Thus, DPPs'

7  proposed non-monetary sanction is appropriately related to Defendants' failures to comply with the

8  Court's two prior Orders. The scale of Defendants' disobedience in willfully flouting the Court's

9  Orders and suppressing key evidence is also such that a severe non-monetary sanction would be

10  appropriate and "just." This is because the severity of the sanction would be proportional to the

11  egregiousness of Defendants' conduct and the prejudice it has inflicted upon DPPs' ability to

12  develop their case. *Cf., e.g.*, *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinée*, 456

13  U.S. 694 (1982) (affirming order establishing personal jurisdiction under Rule 37(b)(2) as sanction

14  for resisting jurisdictional discovery); *Gibson v. Chrysler Corp.*, 261 F.3d 927, 948 (9th Cir. Aug.

15  21, 2001) (finding that district court in diversity action could properly issue an order establishing

16  amount in controversy as discovery sanction, thus establishing subject matter jurisdiction).

17         For the foregoing reasons, the Court's entry of an order precluding Defendants from

18  opposing certification of the DPP class is warranted.

19                                          **<u>CONCLUSION</u>**

20         For the reasons set forth above, Defendants should be ordered to complete their production

21  of unfiltered transactional data, provide answers to the facilitating questions posed by the Court,

22  and provide information about their document review and production process. Further, Defendants

23  should be sanctioned for violating the Court's Orders, as set forth in the accompanying [Proposed]

24  Order.

25

26

27

28

1    Dated:  February 8, 2023                Respectfully submitted,

2                                            BRAUNHAGEY & BORDEN LLP

3

4                                            By:   */s/ Matthew Borden*
                                                         Matthew Borden

5                                            Attorneys for Direct Purchaser Plaintiffs

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DPPS' MOTION TO ENFORCE DISCOVERY ORDER AND FOR SANCTIONS FOR VIOLATIONS OF COURT ORDERS