CHRISTOPHER FROST (SBN 200336)
chris@wgfcounsel.com
ASHLEY MORRIS (SBN 225455)
ashley@wgfcounsel.com
JOHN D. MAATTA (SBN 83683)
john@wgfcounsel.com
WEINBERG GONSER FROST LLP
10866 Wilshire Boulevard, PH1650
Los Angeles, California 90024
Telephone: (424) 239-2850
Facsimile: (424) 238-3060

Attorneys for Defendants,
Dave Anderson; Celestron Acquisition, LLC; Joe Lupica; Nantong Schmidt Opto-Electrical Technology Co. Ltd.; Olivon Manufacturing Co. Ltd.; Olivon USA; Pacific Telescope Corp.; David Shen; Suzhou Synta Optical Technology Co., Ltd.; SW Technology Corporation; Synta Canada International Enterprises Ltd.; Synta Technology Corp.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| IN RE TELESCOPES ANTITRUST LITIGATION | Case No. 5:20-cv-03642-EJD |
| THIS DOCUMENT RELATES TO:<br><br>SPECTRUM SCIENTIFICS LLC, RADIO CITY, INC., and those similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>CELESTRON ACQUISITION, LLC, SUZHOU SYNTA OPTICAL TECHNOLOGY CO., LTD., SYNTA CANADA INT'L ENTERPRISES LTD., SW TECHNOLOGY CORP., OLIVON MANUFACTURING CO. LTD., OLIVON USA, LLC, NANTONG SCHMIDT OPTOELECTRICAL TECHNOLOGY CO. LTD., NINGBO SUNNY ELECTRONIC CO., LTD., PACIFIC TELESCOPE CORP.,<br><br>Defendants. | *Hon. Edward J. Davila*<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR TERMINATING SANCTIONS AGAINST DPP PUTATIVE CLASS FOR INTENTIONAL AND IRREMEDIABLE DESTRUCTION OF RELEVANT EVIDENCE BY THE SOLE PUTATIVE CLASS REPRESENTATIVE, OR ALTERNATIVELY, FOR ISSUE AND EVIDENCE SANCTIONS AND ADVERSE INFERENCE INSTRUCTION; REQUEST FOR MONETARY SANCTIONS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>*[Filed concurrently with Declaration of Shauna A. Izadi]*<br><br>Judge:   Hon. Edward J. Davila<br>Date:    April 6, 2023<br>Time:    9:00a.m. |

WEINBERG
GONSER
FROST

43883.1

1

Case No. 5:20-cv-03642-EJD

NOTICE OF MOTION AND MOTION FOR TERMINATING SANCTIONS

**TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that, on April 6, 2023, at 9:00 a.m., or as soon thereafter as counsel may be heard, in the courtroom of the Honorable Edward J. Davila, located in the United States District Court for the Northern District of California, in Courtroom 4 on the 5th floor of the above-captioned Court located at 280 South 1st Street, San Jose, California 95113, Defendants Celestron Acquisition, LLC; David Shen; Suzhou Synta Optical Technology Co., Ltd.; Nantong Schmidt Opto-Electrical Technology Co. Ltd.; Synta Technology Corp.; SW Technology Corporation; Synta Canada International Enterprises Ltd.; Olivon Manufacturing Co. Ltd.; Joe Lupica; Dave Anderson; Olivon USA; and Pacific Telescope Corp. (collectively "Moving Defendants") will and hereby do move this Court for Terminating Sanctions for Intentional and Irremediable Destruction of Relevant Evidence, or Alternatively, for Issue and Evidence Sanctions and an Adverse Inference Instruction; Request for Monetary Sanctions.

This Motion is made upon the fact that the sole putative DPP class representative admitted at deposition that, in December 2022, she destroyed 18 or more months' of critical, responsive documents that are directly relevant to this litigation. The information contained in those records is admittedly lost forever and irretrievable from any other source—to the irremediable prejudice of Moving Defendants.

Radio City claimed they destroyed the records because their counsel, BraunHagey & Borden, had never requested the documents from them, despite the fact that the records were the subject of a longstanding, ongoing meet and confer discussion **that was occurring at the same time the documents were being destroyed**, and counsel had falsely represented in open court **one day before** the disclosing deposition that all responsive records had been produced.  The destroyed records are critical to Defendants' ability to defend this action. Defendants are irremediably prejudiced by the destruction of documents that has taken place.

For these reasons, the Court should issue terminating sanctions.  Alternatively, the Court should issue an adverse inference instruction, as well as the following issue and evidence sanctions: that Plaintiffs need to be precluded from:

1. Presenting any adverse evidence of telescope or telescope accessory sales, inventory, cost, purchases pricing, margins, or shipping, and that it be irrebuttably determined that Defendants engaged in no misconduct with respect to the market as it relates to telescope or telescope accessory sales, inventory, costs, purchases, pricing, margins, or shipping, including any alleged market allocation, market dominance, trade restraint, collusive pricing, or price fixing.

2. Presenting any evidence of damage or harm, and that it be irrebuttably determined that no damage was caused by Defendants and no harm was suffered by Plaintiffs presenting any evidence of overpricing or collusive pricing with respect to any inventory or any sales.

3. Presenting any evidence of the relevant market or contradicting Defendants' evidence of the relevant market.

4. Presenting any evidence that Defendants were the cause of any harm to Plaintiffs, and that it be irrebuttably determined that Defendants caused no harm to Plaintiffs.

5. Presenting any evidence that Plaintiffs have suffered any harm whatsoever, and that it be irrebuttably determined that Plaintiffs were harmed in any way.

6. Presenting any evidence that Radio City is an adequate or appropriate Class Representative, and that it be irrebuttably determined that Radio City is neither an adequate nor appropriate Class Representative.

7. Presenting any evidence that Radio City's claims are typical of the Class, and that it be irrebuttably determined that Radio City claims are not typical of the Class.

8. Presenting any evidence that Radio City's claims raise common issues of law or fact to the Class, and that it be irrebuttably determined that Radio City claims do not raise common issues of law or fact to the Class.

Monetary sanctions should also be awarded in an amount be determined on later motion jointly and severally against both Radio City and BraunHagey & Borden.

This Motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, the Declaration of Shauna Izadi filed concurrently herewith, all of the pleadings, files,

and records in this proceeding, all other matters of which the Court may take judicial notice, and any argument or evidence that may be presented to or considered by the Court prior to its ruling.

DATED: February 12, 2023                    WEINBERG GONSER FROST LLP


                                    By:  _____/s/ Christopher Frost_____
                                         CHRISTOPHER FROST
                                         Attorneys for Defendants, Dave Anderson;
                                         Celestron Acquisition, LLC; Joe Lupica; Nantong
                                         Schmidt Opto-Electrical Technology Co. Ltd.;
                                         Olivon Manufacturing Co. Ltd.; Olivon USA;
                                         Pacific Telescope Corp.; David Shen; Suzhou
                                         Synta Optical Technology Co., Ltd.; SW
                                         Technology Corporation; Synta Canada
                                         International Enterprises Ltd.; Synta Technology
                                         Corp.

# **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................9

1.    INTRODUCTION..................................................................................................9

2.    THE DELIBERATELY-DESTROYED EVIDENCE ......................................11

3.    FURTHER BACKGROUND AND CONTEXT .............................................13

    3.1    Radio City Files This Antitrust Lawsuit, Putting At Issue The Very Same Information That Radio City Would Now Purposefully Destroy ..........................13

    3.2    Defendants Serve Numerous Requests for Production on Radio City, Seeking The Very Same Information Radio City Would Later Purposefully Destroy ..........................................................................................................14

    3.3    Radio City Agrees to Produce The Very Same Documents It Would Later Purposefully Destroy...............................................................................15

    3.4    BraunHagey & Borden Repeatedly Misrepresents The Status of Search and Production During the Meet and Confer Process ........................................16

        3.4.1    The November 1, 2022 Meet and Confer Fabrications ...............................16

        3.4.2    The November 17 and 21, 2022 Meet and Confer Fabrications .................18

        3.4.3    The December 1 Meet and Confer Fabrications .........................................19

        3.4.4    The Letter Brief Regarding Radio City's Document Production................20

        3.4.5    The December 29 Meet and Confer Fabrications ......................................20

    3.5    Radio City Makes Misrepresentations To The Court In Writing And During Discovery Hearings Concerning Its Production .......................................21

    3.6    *The Very Next Day*, Radio City Admits At Deposition That It Irretrievably Destroyed Substantial Responsive Records .........................................23

    3.7    Radio City And Its Counsel Lie About What Really Happened............................23

4.    TERMINATING SANCTIONS SHOULD ISSUE FOR RADIO CITY'S WILLFUL DESTRUCTION OF RELEVANT RECORDS................................................23

    4.1    Standards for Sanctions Under FRCP Rule 37(c) ...............................................23

    4.2    Radio City Spoliated Evidence: Sanctions Are Justified .....................................24

        4.2.1    The First Prong (Obligation to Preserve) is Met:....................................24

        4.2.2    The Second Prong (Culpable State of Mind) is Met: ...............................24

        4.2.3    The Third Prong (Relevance) is Met:........................................................25

4.3    Terminating Sanctions Are Appropriate Under the *Leon* Factors............................25

      4.3.1    The First and Second Leon Factors Are Satisfied........................................26

      4.3.2    The Third Leon Factor is Satisfied.............................................................26

      4.3.3    The Fourth *Leon* Factor Is Satisfied.........................................................27

      4.3.4    The Fifth *Leon* Factor Is Satisfied...........................................................28

4.4    Terminating Sanctions Are Appropriate Under *R&R Sails*.....................................29

4.5    Radio City Acted With Willfulness, Fault, and Bad Faith.......................................29

5.    ALTERNATIVELY, THIS COURT SHOULD IMPOSE ISSUE AND EVIDENCE SANCTIONS, AS WELL AS AN ADVERSE INFERENCE INSTRUCTION ................30

6.    MONETARY SANCTIONS SHOULD ISSUE AGAINST BOTH CLIENT AND COUNSEL ......................................................................................................................31

7.    CONCLUSION ........................................................................................................33

WEINBERG
GONSER
FROST

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Apple Inc. v. Samsung Elecs. Co.*,
5
    881 F. Supp. 2d 1132 (N.D. Cal. 2012) ............................................................ 24, 31

6

*Compass Bank v. Morris Cerullo*,
    104 F. Supp. 3d 1040 (S.D. Cal. 2015) ..................................................................... 31
7

*Cyntegra, Inc. v. Idexx Labratories, Inc.*,
8
    2007 WL 5193736 (C.D. Cal Sept. 21, 2007) ......................................................... 30

9

*Facebook v. OnlineNIC*,
10
    2022 WL 2289067 (N.D. Cal. March 28, 2022) ........................................... 24, 25, 28

11

*Glover v. BIC Corp.*,
    6 F.3d 1318 (9th Cir. 1993) ...................................................................................... 24
12

*Hutto v Finney*
13
    437 U.S. 678 (1978) ............................................................................................ 31, 32

14

*Hyde & Drath v. Baker*,
15
    24 F.3d 1162 (9th Cir 1994) ..................................................................................... 32

16

*Inland Concrete Enterprises, Inc. v. Kraft Americas LP*,
    2011 WL 13209166 (C.D. Cal. Mar. 9, 2011) ......................................................... 30
17

*In re Keegan*,
18
    78 F.3d 431 (9th Cir. 1996) ...................................................................................... 31

19

*Leon v. IDX Sys. Corp.*,
20
    464 F.3d 961 (9th Cir. 2006) .............................................................................*passim*

21

*Network Appliance Inc. v. Bluearc Corp.*,
    2005 WL 1513099 (N.D. Cal. 2005) ........................................................................ 23
22

*Oracle Am., Inc. v. Hewlett Packard Enter. Co.*,
23
    328 F.R.D. 543 (N.D. Cal. 2018) ............................................................................. 24

24

*Primus Automotive Financial Services, Inc v. Batarse*,
    115 F.3d 644 (9th Cir 1997) ..................................................................................... 31
25

*R & R Sails, Inc. v. Ins. Co. of Penn.*,
26
    673 F.3d 1240 (9th Cir. 2012) ............................................................................ 29, 30

27

*Unigard v. Lakewood Engineering and Mfg. Corp*
28
    982 F.2d 363 (9th Cir. 1992) .................................................................................... 30

WEINBERG
GONSER
FROST

43883.1
7
Case No. 5:20-cv-03642-EJD

NOTICE OF MOTION AND MOTION FOR TERMINATING SANCTIONS

*WeRide Corp. v. Huang*,
   2020 WL 1967209 (N.D. Cal. 2020).............................................26, 27, 28, 29

**Court Rules**

FRCP Rule 37(c) ...........................................................................................23

Rule 26(a) ....................................................................................................23

Rule 30(b)(6) ..............................................................................................21

Rule 34 .................................................................................................16, 20

Rule 37 .........................................................................................................32

Rule 37(c) ...........................................................................................23, 24, 30

Rule 37(c)(1) ...............................................................................................29

WEINBERG
GONSER
FROST

## MEMORANDUM OF POINTS AND AUTHORITIES

## 1.    INTRODUCTION

This Motion seeks an order from this Court issuing terminating sanctions, or alternatively, lesser appropriate sanctions, and, in either case, monetary sanctions. This motion was necessitated by the intentional destruction of documents by Plaintiff Radio City, Inc. (the sole putative class representative) in December 2022.

On January 31, 2023, Matthew Borden of BraunHagey & Borden, counsel for Radio City, represented in open court that: "we produced everything." [Izadi Decl. ¶46, Ex. 32 at 6:6-8.] **Less than 24 hours later**, Maline Fish, fifty-percent owner of Radio City, testified that, around Christmas 2022, she willfully destroyed an estimated 18 months' of critical evidence, including monthly sales reports, open invoice reports, inventory reports, used sales reports, and register reports. [*Id.* ¶2, Ex. 1 (M. Fish Depo.) at 108:10-109:7; 117:11-118:7.] [1] Ms. Fish admitted that the documents related to the issues in this litigation, including sales from Celestron, Orion, and Meade; telescope inventory; telescope costs; telescope stock status; margin information; telescope sales data by SKU; anticipated telescope pricing; and Radio City's financial records. [*Id.* at 110:2-20.] This is the very same type of information that Radio City now claims to be the  "basic currency" of an antitrust lawsuit. [ECF No. 320 (2/10/23 Joint Status  Report).]

Ms. Fish also admitted never providing the documents to her counsel before destroying them, and that the information is "lost forever," "irretrievable," and cannot be found elsewhere. [*Id.* at 110:21-111:4,111:12-15; 111:24-112:2; 117:19-24.]

Ms. Fish's testimony follows previous claims by Radio City that both electronic and physical copies of relevant documents were destroyed in a fire, including the computers that had hosted these

---

[1] The actual quantum of evidence destroyed is difficult to know. Ms. Fish testified that the volume of materials she destroyed represented 18 months of documents. It is unknown if the destruction encompassed a larger time frame—a problem created by the destruction itself. The number of months represented by the destroyed documents could have been in multiples of 18 month-periods, and the stated 18-month period should be viewed as the minimum time period.

same records. Radio City, either by fire or by intentional destruction, has ensured, therefore, that Defendants will never receive evidence from the destroyed documents. Had the documents been favorable to Radio City, it is doubtful they would have been intentionally destroyed.

The destroyed documents all relate to the post-2005 time period (*i.e.*, the same time period as the proposed class). Radio City did not provide the records to its counsel because counsel never asked for them [*id.* at 118:8-15; 120:1-4]—a convenient claim given that the parties conferred over these specific types of documents prior to the time of destruction.[2]

Radio City also destroyed UPS shipping information [*id.* at 123:25-124:6; 125:25-126:6.], even though that information is relevant and responsive to numerous discovery requests. All of the destroyed information is identical to the information sought by the IPPs and DPPs in the coordinated Action.[3]

It is difficult to imagine documents that are more critical than those containing information regarding inventory, sales, cost, supply, and margin information in an antitrust case such as this one. Those records are lost forever.

Radio City's misconduct does not end there. After the deposition was terminated, and only after it had a chance to confer with counsel, Radio City has now come back with a fabricated narrative that Radio City "disposed of a handful of redundant documents last year, in the ordinary course of her business." [ECF No. 320.] Radio City and its counsel's statement are knowingly false and directly contradict Ms. Fish's own sworn deposition testimony. In other words, Radio City is now trying to cover its proverbial tracks by creating a demonstrable lie that constitutes nothing short of fraud on the Court.

As explained more fully below, this Motion should be granted and terminating sanctions, or alternatively, meaningful alternative sanctions, and in either case material monetary sanctions,

---

[2] Argued either way, the facts are damning for Radio City and its counsel. If the documents were never asked for by counsel, that neglect is contrary to counsel's representations made in discovery responses, at meet and confer sessions, in briefs and before the Court. If the documents had been requested from Radio City, the fact of their actual and willful destruction speaks for itself.

[3] 5:20-v-03693

1    should issue.

2    **2.**     **THE DELIBERATELY-DESTROYED EVIDENCE**

3        Radio City is the sole putative DPP class representative. On February 1, 2023, Defendants

4    took the first of three anticipated days of depositions of Radio City. The first (and what became the

5    only) deposition was dedicated to Maline Fish, fifty-percent owner of Radio City. [Izadi Decl. ¶ 2,

6    Ex. 1 (M. Fish Depo.) at 14:14-19.]  Ms. Fish admitted that "just before Christmas" in 2022, she

7    destroyed numerous "monthly records" of Radio City. [*Id.* at 108:10-13; 108:16-20.] The destroyed

8    documents included every type of monthly report Radio City maintained, including sales reports,

9    open invoice reports, inventory reports, used sales reports, and register reports. [*Id.* at 108:21-109:7.]

10   Fish admitted destroying "18 months' worth of reports" for the post-2005 time period, and perhaps

11   even post-2013. [*Id.* at 117:25-118:7; 118:7-18.]

12       Each of the destroyed documents contained reports with information that was relevant and

13   responsive to Defendants' discovery requests. For instance, "there was telescope information" in

14   the sales reports that were destroyed. [*Id.* at 110:2-24.] These reports contained item numbers,

15   "model numbers" and then "it would say what it sold for." [*Id.* at 117:11-18.] Fish also testified that

16   the "sales records that I destroyed included the name of the item, how many of them sold, the cost,

17   and at the end of the department, you'd have a margin." [*Id.* at 126:12-18.] This information would

18   be broken down all the way to the SKU level, including for telescopes. [*Id.* at 126:19-24.]

19       These destroyed inventory reports included "new inventory purchased, for instance, from

20   Celestron or Meade or Orion." [*Id.* at 110:18-20.] The reports also contained "the stock status of

21   each item we had in stock, and cost, and what we proposed to sell it for…it would even contain old

22   part numbers for telescopes…." [*Id.* at 116:14-21.] The destroyed register reports set forth "how

23   much cash came in, how many checks came in and how many credit cards were run," as well as

24   other "financial information relevant to the company." [*Id.* at 111:5-11; 111:20-23.]

25       The destroyed open invoice reports contained invoice numbers and amounts due, including

26   for telescope products. [*Id.* at 128:20-129:2.]

27       The "information is lost forever." [*Id.* at 117:19-24.] The destroyed records are

28   "irretrievable." [*Id.* at 111:24-112:2.]  No way exists to retrieve the reports "now that they've been

WEINBERG
GONSER
FROST

43883.1                                   11                        Case No. 5:20-cv-03642-EJD
_____
NOTICE OF MOTION AND MOTION FOR TERMINATING SANCTIONS

destroyed." [*Id.* at 110:21-24.] Nobody has a copy of them. [*Id.* at 110:25-111:1.] Ms. Fish confirmed:

- "Nothing [she could] think of today that Radio City has would reflect the same data in the same detail that was contained in the inventory report." [*Id.* at 117:6-10.]

- The information in the destroyed sales reports is the "the type of information that is not contained in any other existing documents that Radio City has." [*Id.* at 117:19-22.]

- The financial statements that still exist do not contain the same transaction-level detail that was contained in the destroyed register reports. [*Id.* at 116:2-7.]

- The transaction-level detail set forth in the destroyed sales reports is not available in any other documents. [*Id.* at 127:18-128:9.]

- "Q: The information that's available in the open invoice reports that were destroyed, is that information available in any other records available to Radio City? A. No." [*Id.* at 129:6-10.]

None of the destroyed records were provided to counsel prior to being destroyed: "Q: Were those provided to your counsel before destroying them? A: No." [*Id.* at 111:2-4; *see also* 111:12-15. (same for register reports).] The reason, provided represents a glaring lack of good faith compliance with the Federal Rules and a lack of fidelity with the contrary representations made to the Court: "***I gave to my counsel what they asked for, and I don't recall them asking.***" [*Id.* at 120:1-4 (emph. added).] This excuse is hard to imagine, given the ongoing conferences between counsel, but, if true, the excuse provides no solace, or legal defense, to Radio City.

Ms. Fish admitted that reports for other relevant time periods still do exist, yet those have not been produced, despite repeated good faith efforts by Defendants to obtain them. [*Id.* at 119:11-14; 120:17-22; 121:9-16.]

Ms. Fish also destroyed "UPS shipping reports" for periods before and after 2019. [*Id.* at 124:23-125:1.] Ms. Fish admitted she may have destroyed these shipping records after Radio City decided to join this lawsuit. [*Id.* at 125:11-15.] The shipping information would include **the name of the customer**, the address and date of shipment, including for telescopes. [*Id.* at 125:25-126:8.]

3.    **FURTHER BACKGROUND AND CONTEXT**

    3.1    **Radio City Files This Antitrust Lawsuit, Putting At Issue The Very Same Information That Radio City Would Now Purposefully Destroy**

Ms. Fish testified Radio City was induced to file this lawsuit based on a cold call she received from Athul Acharya, an attorney from BraunHagey & Borden. [Izadi Decl. ¶ 2, Ex. 1 at 30:13-19; 32:13-15; 31:1-7; 52:25-53:4.] Ms. Fish did not know Mr. Acharya, and never met him prior to the cold solicitation. Ms. Fish testified that Mr. Acharya advised her of the complaint and judgment in the *Orion* action. [*Id.* at 53:6-13.] At Ms. Fish's deposition, her attorney Ron Fisher instructed her not to answer any further questions concerning those conversations with Mr. Acharya, even though such conversations purported to involve an "investigation" and not the formation of an attorney-client relationship. [*Id.* at 54:6-12; 54:20-55:3.]

Apparently BraunHagey & Borden's cold call solicitation of a shill client was fruitful because, in June 2020, they filed this action, and the now-coordinated IPP action, naming Radio City and Spectrum Scientific as the two putative class representatives. On June 2, 2021, Spectrum Scientific withdrew as a putative class representative. [ECF No. 172.]

The Complaint's allegations center around the very information Radio City recently intentionally destroyed, including Radio City's sales, inventory, customers, purchases, transactional-level detail, costs, margins, and shipping. For instance, the gravamen of the Complaint is that Defendants were allegedly fixing prices, dividing the market, restricting supply, charging monopolistic prices, and stealing competitor pricing information.  [ECF No. 188 at ¶¶2, 17, 49, 50, 85, 115-18.] Radio City further alleges that, as a result of various conspiracies, Defendants control a substantial amount of sales, forcing others to pay "supracompetitive" and "unlawfully inflated" prices. [*Id.* at ¶¶3, 23.] Radio City further alleges that foreign defendants were unlawfully exercising control over the "type of telescopes, prices, supply, business strategy, customer development and relations, sales, [and] personnel decisions." [*Id.* at ¶53.] It is also alleged that, by acquiring Meade, Defendants took an "independent supplier/distributor/competitor out of the market." [*Id.* at ¶78.]

The putative class claims to have been damaged by having to pay "elevated prices," and are losing goodwill, sales, and market share. [*Id.* at ¶¶79, 85, 131.] "Output has been restricted, and the

prices of telescopes have been fixed, raised, stabilized, or maintained at artificially inflated levels, and purchasers of telescopes, including Plaintiffs', have been deprived of free and open competition." [*Id.* at ¶132.]

### 3.2 Defendants Serve Numerous Requests for Production on Radio City, Seeking The Very Same Information Radio City Would Later Purposefully Destroy

The discovery process in this case has been a cynical and wrongful course of conduct by Radio City and its counsel; notable for its obstruction, bad faith outright lies, and the intentional spoliation of relevant documents. Beginning in October 2020, Defendants requested the production of documents relating to purchasing data, price lists, customer information, invoices, bills of lading, shipping data, and financial information regarding the purchase and sale of Defendants' telescopes and telescope accessories from DPPs' purported class representative, Radio City—the same information that Radio City would later intentionally destroy.

For instance, Defendants sought all purchase information. Defendants requested: "all DOCUMENTS identifying or RELATING TO all telescopes YOU purchased….) [Izadi Decl. ¶ 6, Ex. 5 (RFP Set One, at No. 143)]; "all DOCUMENTS identifying all telescopes for which YOU allege YOU paid supracompetitive pricing because of the alleged misconduct of one or more DEFENDANTS" [*Id.* at RFP No. 145]; "All DOCUMENTS sufficient to identify the price YOU paid for all telescopes YOU purchased…." [*Id.* at RFP No. 147]; "All inventory logs RELATING TO YOUR purchase of any product manufactured, supplied or distributed by DEFENDANTS…. [*Id.* at RFP No. 152]; price lists [*Id.* at RFP No. 153]; purchase orders, invoices, and bills of lading [*Id.* at RFP No. 155-157]; bills, canceled checks, and receipts relating to "YOUR purchase of any product manufactured, supplied or distributed by DEFENDANTS" [*Id.* at RFP Nos. 158-160]. Defendants also requested documents sufficient to identify the amount of product purchased from Defendants and the price paid for it. [*Id.* at RFP No. 161-62.]

Defendants also sought all documents identifying Radio City's customers [*Id.* at RFP No. 170.] Defendants also requested Radio City's sales data, including inventory; inventory logs; purchase orders; sales data, including all telescopes Radio City sold, price lists and all other documents identifying pricing; bills of lading; invoices; bills; canceled checks; receipts; amount of

product; and pricing. [*Id.* at RFP Nos. 167, 169, 171-173, 175-183.]

Defendants served two further sets of requests for production in October 2022 (two months before the intentional document destruction) seeking, among other things, all post-1/1/2005 customers, purchases from any of the defendants; percentages of sales attributable to telescopes; location, name, and contact information for customers; transactional-level sales data; product numbers/SKUs; cost information; and profit margins. [Izadi Decl. ¶ 8, Ex. 7 (RFP Set Two, at Nos. 206, 208, 209, 214-215); ¶ 9, Ex. 8 (RFP Set Three, at Nos. 216-220).][4]

### 3.3    Radio City Agrees to Produce The Very Same Documents It Would Later Purposefully Destroy

In relevant part, Radio City confirmed in its discovery responses that it was producing, or had produced, documents responsive to the above requests. For instance, Radio City confirmed it ran search terms and produced documents that were located, including, for instance, inventory, sales, cost, supply, margin, and other information requested by RFP Nos. 143; 145; 147; 152; 155-57; 158-60; 161-62; 167, 169, 171-173, and 175-183. [Izadi Decl. ¶ 7, Ex. 6 (Radio City's Objections and Responses to 1st Set of RFPs); *Id.* ¶ 17, Ex. 16 (11/1/2022 Meet and Confer Transcript) at 73:25-74:2, 75:16-20.]

With respect to documents identifying its customers [RFP No., 206 ["207"][5]], Plaintiff claimed to have conducted a **"reasonable search and has found no document responsive to this Request."** [Izadi Decl. ¶ 9, Ex. 9 (Radio City's Objections and Responses to 2nd Set of RFPs) (emph. added).]

With respect to Defendants' RFP Nos. 208 ["209"], No. 209 ["210"], No. 213-220 ["214"-"221"]–seeking Radio City's purchase information, sales information, and transaction-level sales

---

[4] Tellingly, IPPs and DPPs concede the relevance of this information, as they requested production from Defendants of the same types of information that Radio City would later destroy. [*See, e.g.*, Izadi Decl. ¶¶ 3, 4, Exs 2, 3 (IPP/DPP First RFPs) at Nos. 38-45, 90-93) and ¶ 5, Ex. 4 (IPP/DPP Second RFPs) at Nos. 96-100, 117.]

[5] DPPs, in response to the 2nd and 3rd sets of RFPS, marked each response with the RFP number identified by Defendants, followed by "[___]" which is the number they believe should have been assigned to the request.

data such as cost, SKUs, and margin information, Radio City falsely claimed it had "conducted a reasonable search of the documents in its possession, custody, or control, and **produced all potentially responsive documents**, …."  [*Id*. ¶ 9, Exs. 9, 10 (Radio City's Responses to 2nd and 3rd Sets of RFPs).]

### 3.4 BraunHagey & Borden Repeatedly Misrepresents The Status of Search and Production During the Meet and Confer Process

Review of Radio City's production revealed massive gaps in the production. [Izadi Decl. at ¶¶ 6, 25-29.] Nevertheless, BraunHagey & Borden repeatedly represented that the production was complete, and any gaps were due to the nonexistence of documents due to the "fire". Radio City's deposition testimony confirms that was not true. Defendants served five meet and confer letters regarding deficiencies in production and concerns about Radio City's search protocol. [Izadi Decl. ¶¶ 11-15, Exs. 11-15 (the meet and confer letters).]

#### 3.4.1   The November 1, 2022 Meet and Confer Fabrications

On November 1, 2022, the parties participated in a recorded conference on those topics raised by Defendants. Defendants repeatedly requested that Ron Fisher confirm that Radio City produced all relevant information requested that was in Radio City's possession, custody, or control. [Izadi Decl. ¶ 17, Ex. 16 (11/1/2022 meet and confer transcript) at, e.g., 30:13-31:2, 39:3-40:1, 75:16-20; *see also id.* at 38:4-9 ("I want a confirmation of whether or not, Radio City searched for and produced all records identifying [sales and purchases of telescopes].").]

Mr. Fisher falsely confirmed that he had reviewed all records for relevant sales and purchase data for telescopes. [*Id.* at 36:6-12.] He then repeatedly, but falsely, asserted his clients had met their Rule 34 obligations. Mr. Fisher even claimed he would confirm again that the document production obligations were met. Mr. Fisher stated: "My understanding is that it was – that **those documents were collected, and I'm happy to confirm**." [*Id.* at 17:16-24.]

Given counsel's representation as an officer of the Court that he would follow up with his client to confirm all documents were collected, it is not believable—even if legally relevant—that six weeks later, Radio City could innocently believe that the massive volume of records it was destroying were neither relevant nor required. Alternatively, it fares no better for Radio City if

counsel claimed they were conducting a follow up that never happened. Radio City is not immunized from liability for the consequences of their own misconduct or the consequences of their counsel's misconduct.

The following are examples of additional false assurances provided by BraunHagey & Borden to Defendants:

- "…You know that we produced the company records" [*Id.* at 16:5-10];

- **"And you have the hardcopy documents, as well."** [*Id.* at 75:19-20; *see also* 25:12-13 referring to a "tranche" of hard copy documents].

- "…as to how these [sales and purchase data] were stored…I believe that these were produced to you as they were held;" [*Id.* at 28:8-10]

- "I believe you have everything that Radio City has." [*Id.* at 30:18-19]

- "And so your premise, which is that there's this shocking lack of responsive documents in the production is simply wrong…." [*Id.* at 58:14-16]

Defendants repeatedly sought Radio City's counsel's clarification on Radio City's collection efforts. [*See, e.g., id.* at 3:18-4:6; 5:9-6:16.] Mr. Fisher repeatedly refused to provide any information, claiming such details were protected by privilege. [*Id.* at 44:21-24; 45:14-16; 47:1-13; 52:4-24; 61:10-62:24.]

Defendants made their intent clear on what information they sought during the extensive meet and confer process:

> MR. FROST: Ron, listen, the – the problem that we're having is your job in a meet and confer is to answer information relating to what your client does and does not have. That's the whole purpose, to understand where the disconnect is where documents are missing….But yes, we need to understand what records were destroyed if the answer to the question is you have no more responsive documents because of a fire in 2018, or whenever it happened.
>
> Were there any records that were maintained after the fire? Were there any records – were there any business emails? Were there any sales? Was there any business conducted after the fire?
>
> MR. FISHER: So I believe the answer to that is no…." [*Id. at* 34:12-35:3.]

Thereafter, counsel was asked to confirm if that was the case, and Mr. Fisher **affirmatively stated** that he would inquire with his client as to whether there were any additional, unproduced documents. [*Id.* at 35:7-13.]

With respect to the collection and production of the hardcopy documents, Mr. Fisher stated that "[d]ocuments were produced in the form in which they were maintained, and DPPs cannot alter the fact that some hard-copy documents may have faded over time."  [Izadi Decl. Ex. 17 (DPPs' 11/1/2022 Response Letter); Ex. 16 (11/1/2022 meet and confer transcript) at 28:8-10.]  When asked whether software on the system could run the sales reports, given that many hardcopy documents were illegible, corrupt, or blank, Mr. Fisher invited Defendants to request them in writing.  [Izadi Decl. Ex. 16  (11/1/22 meet and confer transcript) at 28:14-18; 29:17-30:1.]

### 3.4.2    The November 17 and 21, 2022 Meet and Confer Fabrications

The parties met and conferred on November 17, 2022 (approximately five weeks before Mr. Fisher responded in an email, stating: "Radio City does not have a customer list" and "Radio City has produced all of its hardcopy purchase orders and invoices in its possession as they were maintained, which include customer information in the ordinary course.…"  [Izadi Decl. ¶¶ 21-22, Ex. 19 (DPPs' 11/17/2022 email).] Mr. Fisher further falsely claimed that all of Radio City's hardcopy documents were kept in the ordinary course, and were foldered, scanned and produced. [*Id.*, Ex. 20 (11/17/2022 meet and confer transcript) at 16:19-18:2 ("So yeah I think it's about 48,000 hardcopy documents. Those are all of Radio City's hardcopy documents.") *Id.* at 17:14-23.]

The November 21, 2022 conference started where the prior conference left off. "So it's just this whole production that we just need answers as to how it was collected and where the gaps are so we can go back and figure out where the rest of the documents are. That's all we're trying to do." [Izadi Decl. ¶ 26, Ex. 24 (11/21/2022 meet and confer transcript)  at 11:9-12; *see also* 9:2-13:3; 15:10-17:23; 19:9-11.] Yet again, Mr. Fisher repeatedly confirmed that no customer list exists [*Id.* at 13:9-11; 18:3-4], and no additional documents existed that were responsive to Defendants' requests. While questioning the completion of DPP's document production, Mr. Fisher responded: "**I think you're wrong. I don't think there is anything more. You have what we have**." [*Id.* at 14:17-18 (emph. added); 13:17-19.]

Mr. Fisher emphatically stated that all records were searched. [*Id.* at 19:19-21; 20:4-18; 22:25-23:5; 24:20-25:18 "**You have all the customer data. I've told you that in an email, and I've told you that on this call.**" *Id.* at 25:13-18 (emph. added).]

Defendants repeatedly requested information on whether the lack of documents and information was due to the fire or "whether the reason you don't have more records is because you're not looking." [*Id.* at 27:1-5.] Mr. Fisher falsely responded: "**I don't understand, Chris, because I've given you a definitive answer….I – I've told you that you have everything**." [*Id.* at 27:21-25.]

### 3.4.3   The December 1 Meet and Confer Fabrications

On December 1, 2022, Radio City responded, affirming counsel's position in a previous meet and confer: "[y]our letter asserts that DPPs have not produced transactional data responsive to Defendants' RFPs. That is not accurate." "As we have explained, we have provided **all relevant hard-copy documents in Radio City's possession, custody, or control**, as well as all non-privileged documents hitting on the agreed-upon search terms from relevant ESI sources…." "**The sales reports, like the other hard-copy documents, are in the form that they were kept in the ordinary course of business.**" [Izadi Decl. ¶ 27, Ex. 25 (DPPs' 12/1/2022 Letter) (emph. added).] The sales reports were a category of documents Defendants sought, which counsel claimed were produced, and which were the very information Radio City purposefully destroyed. Mr. Fisher wrote:

> Radio City agreed to broad search terms that Defendants proposed and produced the non-privileged documents hitting on those search terms. **Radio City also produced relevant hard-copy documents, without applying search terms, which were stored at a different site and were unaffected by the fire.** In sum, we have produced all of Radio City's responsive ESI and **all of the relevant hard-copy documents as they were kept in the ordinary course of business**. [*Id.* (emph. added).]

While Defendants tried to understand "what steps were taken [by DPPs] to retrieve the data…", Mr. Fisher emphasized: "[t]his is not an issue, you know, we're afraid of providing you facts on." [*Id.* ¶ 28, Ex. 26 (12/1/22 meet and confer transcript) at 11:2-4, 14:18-20.]  Mr. Fisher made Defendants believe that he would speak to Maline Fish and "close the loop and get to

1    [Defendants] on Wednesday" (December 17, 2022). [*Id.* at 22:14-23.]

2        ### 3.4.4   The Letter Brief Regarding Radio City's Document Production

3        Despite repeated representations, the information gap in Radio City's document production

4    could not be reconciled. On November 15, 2022, Defendants presented a letter brief to Radio City

5    for DPP's position on the following issue: "Defendants seek production of documents responsive to

6    Request No. 170: 'All DOCUMENTS sufficient to identify all of YOUR customers since January

7    1, 2010." On November 29, 2022, Radio City asserted that "Defendants filed this motion despite

8    receiving express representations that there is nothing further to compel." The letter brief was edited

9    by each party through December as Mr. Fisher delayed the filing **by three weeks** while Radio City

10   actively and intentionally destroyed documents responsive to the request. The letter brief was filed

11   on January 6, 2023.

12              For the avoidance of doubt, the Court orders DPPs to produce
                documents sufficient to identify all customers since January 1, 2010,
13              and overrules DPPs' written objections to this request. It is not a
                sufficient response to this RFP No. 170 for DPPs to disclose
14              purchasing documents or transaction-related documents that do not
                identify customers. If responsive information is known to exist in the
15              form of ESI, such as a database that may be queried or a spreadsheet
                maintained on a computer, DPPs must produce that information,
16              regardless of whether it has been captured by agreed search terms. In
                the circumstances DPPs describe (i.e. small business, enterprise
17              software system destroyed by fire), the Court expects counsel for
                DPPs to ask their clients or client representatives to assist in locating
18              responsive sources of information. If DPPs ultimately determine that
                hardcopy sales reports and sales invoices reflecting transactions with
19              customers are the only surviving records that are responsive to RFP
                No. 170, then DPPs will have satisfied their obligations with respect
20              to this request by producing those documents. [ECF No. 296 (Court's
                1/13/2023 Order Re January 6, 2023 Discovery Dispute) at 2:5-16.]

23              ### 3.4.5   The December 29 Meet and Confer Fabrications

24       Radio City destroyed these records at the time the parties were actively conferring about

25   those records. The conferring, and fabrications thereon, continued even after Radio City had

26   covertly destroyed the records.

27       Before filing joint discovery letter briefs, Defendants made a final attempt to confer with

28   Mr. Fisher about the nature and scope of Radio City's compliance with its Rule 34 obligations.

Specifically, Defendants inquired into whether the hard copy documents were produced in the manner maintained because the grouping of documents were incoherent. [Izadi Decl. ¶ 38, Ex. 29 (12/29/2022 meet and confer transcript) at 35:15-37:15.]

Mr. Fisher falsely stated: "**<u>So I think what we've told you is that those were scanned and produced to you in the manner in which they were stored by Radio City</u>**." [*Id.* at 37:22-38:1.] For any further inquiry, Mr. Fisher stated that Defendants' questions should be posed at the Rule 30(b)(6) deposition. [*Id.*]

### 3.5   <u>Radio City Makes Misrepresentations To The Court In Writing And During Discovery Hearings Concerning Its Production</u>

Defendants filed two joint discovery letter briefs on Radio City's search for records and accompanying Rule 30(b)(6) depositions related to those searches.

In the January 6, 2023 brief, (two weeks after the destruction) Defendants identified all the reasons for their concerns over the lack of DPPs' production, including that some information that was produced did not include "the customer information, the purchase order/invoice number, SKU, price at which the product was sold, from whom the telescope was purchased, and the price DPPs paid for the telescope." [ECF No. 294.] Radio City falsely professed, claiming that "DPPs have produced all documents that would contain relevant customer information in response to other of Defendants' numerous and overlapping RFPs, and identified them by bates number." Radio City further sanctimoniously, dishonestly, and brazenly claimed that:

> This motion is not substantially justified, is a waste of the Court's and the parties' resources and is a prime example of why a special master should be appointed to manage discovery in this case. Defendants' motion seeks to compel further and additional documents that DPPs have already told Defendants do not exist. [*Id.* at p. 4 ("DPPs' Position").]

Unbeknownst to Defendants, Radio City destroyed the documents only two weeks before—during the very time the parties were exchanging drafts of the letter brief. The Court ultimately issued an Order requiring the production of customer information. [ECF No. 296.]

Defendants filed two more letter briefs based on DPPs' noncompliance. [ECF Nos. 298, 305.] In the January 20, 2023 letter brief [ECF No. 305], Defendant framed the following issue:

1
2
3
4
5

"DPP Plaintiffs' production is missing a substantial amount of responsive records that one would anticipate being produced, including, for instance, substantial customer information, transactional data, catalogs, order histories, and related information that would be critical for assessing Plaintiffs' alleged claims. The dearth of information raises serious questions as to whether Radio City could ever serve as an adequate class representative, and also puts at issue what efforts were made to recover those records.

***

6
7
8
9
10

[Radio City] argues that the hard copy documents – stored in an unidentified storage facility – contain all the responsive information. However, such statement cannot be verified without the requisite accounting and sales records. Not only are the invoices illegible, they also provide no identifying data as to what product was sold, and thus serve no basis to establish actual telescope or telescope product sales." [ECF No. 305.]

11
12
13

In response, Radio City asserted that "Radio City has produced its relevant and responsive hard copy documents, including" sales invoices, annual sales reports, purchase invoices, and accounting records. [*Id.*] The Court required counsel to appear on January 31, 2023 for a hearing.

14
15
16
17
18
19
20

Defendants reiterated that the reason for the necessary briefs was because DPP counsel refused to describe or otherwise provide any information on the nature and scope of the records search that would explain the large gap in information supporting Radio City's claims. "So that's part of why we're here. We don't know what has and has not been done, and we are – the onus is being placed on the defendants to turn over rocks and search for potential sources of information when that onus should not be on us." [Izadi Decl. ¶ 46, Ex. 32 (1/31/2023 hearing transcript) at 4:18-21.]

21

At the hearing, Matthew Borden made the following misrepresentations to the Court:

22
- "I think we produced everything." [*Id.* at 6:6.]

23
24
- Regarding documents from the accountants, "we produced all the hard copy documents they gave us….so they have everything from our accountants" [*Id.* at 6:17-20.]

25
26
- "We ran the search terms, the search – we produced everything that hit from that." [*Id.* at 11:22-23.]

27
28
- "I'm just tell you, to the best of my understanding, knowledge, and everything else, that we did it the right way." [*Id.* at 21:6-8.]

1    The Court admonished BraunHagey & Borden to cooperate in the discovery process and

2    determine all sources of potentially relevant information.

3    **3.6    *The Very Next Day*, Radio City Admits At Deposition That It Irretrievably**

4    **Destroyed Substantial Responsive Records**

5    On February 1, 2023—less than 24 hours after the discovery hearing—Defendants took the

6    deposition of Radio City co-owner Maline Fish, who admitted to widespread and intentional

7    destruction of the very records which BraunHagey & Borden, simultaneous with the destruction,

8    had been "reassuring" Defendants and the Court that all documents had been produced, that they

9    would confirm again, and that no further documents existed.   It is unfathomable that such

10   simultaneous destruction was innocent or unavoidable or unintentional—even if that were a legal

11   defense. This Motion necessarily followed.

12   **3.7    Radio City And Its Counsel Lie About What Really Happened**

13   Despite the transparent testimony of Maline Fish, Radio City and its counsel have shown no

14   contrition or even acknowledgement of wrongdoing. Instead, they have chosen to compound the

15   problem by lying about it. More specifically, in their portion of a February 10 Joint Status Report,

16   Radio City and its counsel claim that "Radio City "disposed of a handful of redundant documents

17   last year, in the ordinary course of her business." [ECF No.329.]   As the testimony above

18   demonstrates, that is an absolute lie that this Court should not countenance.

19   **4.    TERMINATING SANCTIONS SHOULD ISSUE FOR RADIO CITY'S WILLFUL**

20   **DESTRUCTION OF RELEVANT RECORDS**

21   **4.1    Standards for Sanctions Under FRCP Rule 37(c)**

22   Federal courts have the authority to sanction litigants for discovery abuses under the Federal

23   Rules of Civil Procedure and pursuant to the court's inherent power to prevent abuse of the judicial

24   process." [*Network Appliance Inc. v. Bluearc Corp.*, 2005 WL 1513099, *2 (N.D. Cal. 2005).]

25   Terminating sanctions will issue under Rule 37(c), which allows the Court to order sanctions where

26   a party fails to provide information required by Rule 26(a) or (e). This includes the obligation to

27   provide "all documents…that the disclosing party has in its possession, custody, or control and may

28   use to support its claims or defenses…."

Rule 37(c) is "self-executing" with no necessity of finding violation of a court order. [*Facebook v. OnlineNIC,* 2022 WL 2289067 at *12 (N.D. Cal. March 28, 2022) (citing *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2011).] "The rule is automatic in the sense that a district court *may* properly impose an exclusion sanction where a noncompliant party has failed to show that the discovery violation was either substantially justified or harmless." [*Facebook, Inc., supra*, *12 (citing *Merchant v. Corizon Health, Inc.*, 993 F.3d 733, 740 (9th Cir. 2021)).] The party facing sanctions bears the burden of proving a failure to disclose is substantially justified or harmless. [*Facebook, Inc., supra*, *12 (citing *R & R Sails, Inc. v. Ins. Co. of Penn.,* 673 F.3d 1240, 1246 (9th Cir. 2012)).]

### 4.2 <u>Radio City Spoliated Evidence: Sanctions Are Justified</u>

Whether spoliation occurred that justifies sanctions is determined by a three prong test: "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a "culpable state of mind;" and, (3) that the evidence was "relevant" to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.'" [*Apple Inc. v. Samsung Elecs. Co.*, 881 F. Supp. 2d 1132, 1138 (N.D. Cal. 2012).] A finding of bad faith is not a prerequisite to the award of sanctions. [*Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993).]  In this case, all three elements of spoliation warranting sanctions are satisfied.

### 4.2.1 <u>The First Prong (Obligation to Preserve) is Met</u>: A party's obligation to preserve evidence for use in litigation arises when litigation is pending or becomes reasonably foreseeable. [*Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, 328 F.R.D. 543, 549 (N.D. Cal. 2018).] It is undisputed that Radio City destroyed evidence relevant to this litigation ***during*** its pendency.

### 4.2.2 <u>The Second Prong (Culpable State of Mind) is Met</u>: The "culpable state of mind" factor is satisfied by showing that the evidence was destroyed knowingly, regardless of intent or negligence. [*Id*. (quoting *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 215 (S.D.N.Y. 2003)).] Here Ms. Fish, as explained in detail above, admitted that the destruction of documents was intentional.  The wrongful destruction of the documents took place more than two and one half years

into the litigation, after multiple requests for production, meet and confer session and court hearings concerning  the very records that were destroyed had been served, after Radio City agreed to produce responsive documents, **and with the intentional destruction taking place while the parties were meeting and conferring concerning the very documents that were destroyed**. These facts, which are very unfortunate for both Radio City and its attorneys, are more than sufficient to show the culpable state of mind of Radio City and its counsel BraunHagey & Borden. Further, BraunHagey & Borden partner Ron Fisher, as an officer of the Court falsely represented that all documents had been produced, but that he was "checking with his client". [Izadi Decl. Ex. 16 (11/1/2022 meet and confer transcript) at 17:16-24: **"those documents were collected, and I'm happy to confirm**."] Based on the wrongful and illegal destruction of evidence that has taken place, it is unfathomable that counsel even checked with his client concerning these very material documents, with the proof borne out by the fact that the documents were in fact destroyed.

### 4.2.3   The Third Prong (Relevance) is Met

: The relevance of the destroyed documents cannot be disputed.   Documents containing sales, purchasing, shipping, margin, transaction, and inventory information is not only relevant but is critical to Radio City's lawsuit (indeed any antitrust lawsuit). DPPs conceded the point when, they sought the very same type of information from Defendants.

With each of the necessary criteria for the award of sanctions for the intentional spoliation of evidence having been met.  The focus becomes the scope and the magnitude of the appropriate sanctions.

### 4.3   Terminating Sanctions Are Appropriate Under the *Leon* Factors

This Court has repeatedly held that terminating sanctions are appropriate for spoliation of evidence.  *See Facebook, Inc., supra,* at *12-13. As the *Facebook* court explained:

> Law in the Ninth Circuit appears unsettled as to whether a Court must address the same considerations at issue under Rule 37(b) when assessing terminating sanctions under Rule 37(c). Some courts apply the five factors set forth in *Leon. See, e.g., Medtronic Vascular, Inc. v. Abbott Cardiovascular Sys., Inc.*, No. 06-1066, 2009 WL 2058245, at *1 (N.D. Cal. July 13, 2009) (citing *Wendt v. Host Int'l, Inc.*, 125 F.3d 806, 814 (9th Cir. 1997)); *Thompson v. Housing Authority of City of Los Angeles*, 782 F.2d 829, 831 (9th Cir. 1986) (analyzing the

five factors where dismissal sanction issued for violation of pretrial orders). More recently, the Ninth Circuit formulated a two-factor test for courts to apply as part of the "harmlessness" inquiry where the exclusion of evidence under Rule 37(c)(1) amounts to dismissal of a claim: (1) the presence of willfulness, fault, or bad faith; and (2) the availability of lesser sanctions. *R & R Sails*, 673 F.3d 1240, 1247 (9th Cir. 2012).

We address both the *Leon* and *R&R Sails* Standards here.

Each of the *Leon* factors must be established (by a preponderance of the evidence) as the predicate for awarding terminating sanctions. [*WeRide Corp. v. Huang*, 2020 WL 1967209, *9 (N.D. Cal. 2020).] The following are the *Leon* factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions."

### 4.3.1   The First and Second Leon Factors Are Satisfied

The public's interest in expeditious resolution of litigation; the Court's need to manage its dockets: In evaluating the first and second elements , the *Leon* court found those elements satisfied because the plaintiff "was on notice" that the destroyed documents were relevant to an ongoing litigation. Here, the documents Radio City destroyed are "lost forever" and completely irretrievable. Defendants briefed and the Magistrate Judge considered multiple motions to compel the production of documents that no longer existed. The first two factors are met.

### 4.3.2   The Third Leon Factor is Satisfied

"The third *Leon* factor, the risk of prejudice to the party seeking sanctions, is the 'most critical [factor] for case-dispositive sanctions,' because it goes to 'whether the discovery violations threatened to interfere with the rightful decision of the case.'" [*WeRide, supra*, *10; *see also* *Anheuser-Busch*, *supra*, 69 F.3d at 348.]

It is impossible to imagine a more egregious factual circumstance or a more prejudicial situation for Defendants then the irreparable loss of large amounts of sales, purchasing, transactional, margin, shipping, and other financial information that is not available in any other form. These records go to the very heart of Radio City's claims, and the defense of those claims coupled with the fact that Radio City is the only putative class representative, Defendants have no

way to defend themselves against claims of, among other things, harm to the market or harm to Radio City.[6] Defendants will never know what ability they would have had to use the destroyed data—which can be presumed to be unfavorable to Radio City—to impeach other records that would be presented in evidence were this case to continue. [*WeRide, supra,* at *11 (finding this factor met because, in part, "a fact finder will not be able to resolve these questions because [Defendant] has no ability to test [Plaintiffs'] proposed theory.").] Were that not the case, then why did Radio City choose to destroy so many, but not all, of these types of reports? And why has it still not produced the ones that allegedly remain? Of course the destroyed documents were favorable to Plaintiffs and the destruction of those documents is prejudicial to Defendants. If that were not the case, the documents would still exist and the wrongful discovery obstruction embarked upon by Plaintiffs and its counsel would not have taken place. Great efforts were taken to prevent Defendants from having the subject documents, efforts that included wholesale obstruction, non-sensical meet and confer sessions, misrepresentations to the Court and Defendants' counsel and, finally as the obstruction was wearing thin, the wholesale destruction of the evidence.

### 4.3.3   The Fourth *Leon* Factor Is Satisfied

The Disposition of Cases On Their Merits:  This Court recognized in *WeRide,* even though "the public policy favoring disposition of cases on their merits, the fourth *Leon* factor, usually weighs against terminating sanctions, however: "… where the "prejudice to [the moving party] is so great," it "outweighs this factor." Here, Radio City destroyed the only copies of documents that are absolutely four square relevant to the issues in the case vital to the Defendants' defense.  Plaintiff admitted to the destruction of the documents as well as the scope and relevance of the documents. As to the quantum of documents destroyed, Plaintiff admitted to the destruction of at least 18 months of documents, but Defendants will never truly know if it was 18 months or whether years of

---

[6] It is also important to note that Defendants are entitled to a presumption that the documents destroyed are relevant to the litigation. "[A] record that cannot be seen, cannot be searched. Any moving party is at a disadvantage to show prejudice because a moving party who seeks evidence cannot prove that relevant evidence existed that was destroyed. [*Facebook Inc., supra,* 2020 WL 2289067, *10.]

documents were destroyed. Unfortunately, the lies and obstruction that Radio City and its counsel have imparted upon this litigation and this Court have negatively colored all other averments that Plaintiffs have made, even if true, as suspect.  The damage done to Defendants is profound.  Just as it was the case in *WeRide, id* at *11. Radio City's intentional destruction of evidence was so sweeping that this case cannot ever be resolved on its merits.

### 4.3.4   The Fifth *Leon* Factor Is Satisfied

The Availability of Less Drastic Sanctions: The fifth *Leon* factor supports terminating sanctions, as lesser sanctions would be futile. In considering the Fifth *Leon Factor* the court should consider the following factors: (1) the feasibility of less drastic sanctions and an explanation of why such alternate sanctions would be inappropriate; (2) whether alternative sanctions have been implemented before ordering dismissal; and, (3) "whether the district court warned the party of the possibility of dismissal before ordering dismissal." [*Anheuser–Busch*, *supra*, 69 F.3d at 352; (see also *Facebook, Inc. supra*, *12 citing *R & R Sails, Inc. v. Ins. Co. of Penn.* 673 F.3d 1240, 1246 (9th Cir. 2012)).]

The feasibility of less-drastic sanctions: Here, as in *WeRide*, *supra*, lesser sanctions would be inappropriate and would not sufficiently cure the prejudice to Defendants in defending itself. A jury instruction or exclusion of evidence cannot substitute for the spoliated evidence that likely would have completely resolved claims in Defendants' favor. Defendants have been forever deprived of the evidence necessary to establish their defenses and "fashioning a jury instruction that creates a presumption in favor of [Defendants] would leave [Defendants] equally helpless to rebut any material that [Radio City] might use to overcome that presumption." [*Id.* at *11.] Radio City cannot be rewarded for selectively destroying large amounts of irretrievable data by letting it proceed with what other limited data it chose not to destroy.

Whether alternative sanctions have been implemented before ordering dismissal: Similar to *Leon*, this factor is inapplicable here because Radio City destroyed the evidence "before the district court have an opportunity to compel discovery or otherwise order 'lesser sanctions.'" [*Leon*, *supra*, 464 F.3d at 960.]

<u>Whether the district court warned the party of the possibility of dismissal before ordering dismissal</u>: Again, as in *Leon*, "[l]ikewise, the third criterion, which examines whether the district court warned the party, is inapplicable here because the destruction of the evidence occurred before the court had any opportunity to warn Leon." [*Id*. at 960 citing *Malone v. U.S. Postal Serv.*, 833 F.2d 128, 131 (9th Cir.1987).]

### 4.4    Terminating Sanctions Are Appropriate Under *R&R Sails*

"The Ninth Circuit formulated a two-factor test for courts to apply as part of the "harmlessness" inquiry where the exclusion of evidence under Rule 37(c)(1) amounts to dismissal of a claim: (1) the presence of willfulness, fault, or bad faith; and (2) the availability of lesser sanctions." [*R & R Sails v. Ins. Co. of Penn.*,  673 F.3d 1240, 1247 (9th Cir. 2012).] As explained above, lesser sanctions cannot remediate the harm caused to Defendants, and the presence of willfulness, fault, or bad faith, as discussed hereafter is clear.

### 4.5    Radio City Acted With Willfulness, Fault, and Bad Faith

Terminating sanctions are appropriate where there is a showing of "willfulness, fault, or bad faith." *WeRide, supra,* at *10. "A party's destruction of evidence qualifies as willful spoliation if the party has 'some notice that the documents were potentially relevant to the litigation before they were destroyed.'" [*Leon*, *supra*, 464 F.3d at 959 (citing *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1001 (9th Cir. 2002)).] "And the party demonstrates bad faith by delaying or disrupting the litigation…." [*WeRide, supra,* at *10.] The "practice of destroying potentially discoverable material shows both willfulness and bad faith." [*Id.*] Moreover, because 'the relevance of…[destroyed] documents cannot be clearly ascertained because the documents no longer exist,' a party 'can hardly assert any presumption of irrelevance as to the destroyed documents.'" [*Leon*, *supra*, 464 F.3d at 959 citing *Alexander v. Nat'l Farmers Org.*, 687 F.2d 1173, 1205 (8th Cir. 1982).]

There is no dispute that Radio City acted willfully and in bad faith when it knowingly destroyed evidence relevant to its claims. Radio City knew that the destroyed records were relevant to the litigation. They agreed to produce these very records, and then waited 2.5 years after the filing of the litigation to destroy them.

1    The truth here is staggering. The course of conduct that has taken place is wrongful, illegal,

2    and prejudicial to Defendants who have laid out the facts and illegal conduct with great granularity.

3    Defendants have irrefutably demonstrated that Terminating Sanctions are mandated in this matter,

4    both under *Leon* and under *R & R Sails.* Terminating Sanctions should issue for all of the reasons

5    stated.

6    **5.    ALTERNATIVELY, THIS COURT SHOULD IMPOSE ISSUE AND EVIDENCE**

7    **SANCTIONS, AS WELL AS AN ADVERSE INFERENCE INSTRUCTION**

8    As extensively addressed above, the Court has authority under FRCP 37(c) to impose

9    sanctions for the wrongful destruction of evidence. [*Unigard v. Lakewood Engineering and Mfg.*

10   *Corp* 982 F.2d 363, 368 (9th Cir. 1992).] "Sanctions may [also] include monetary sanctions, issue-

11   preclusion sanctions, evidentiary sanctions, terminating sanctions or entry of default judgment."

12   [*Cyntegra, Inc. v. Idexx Labratories, Inc.,* 2007 WL 5193736 at *2 (C.D. Cal Sept. 21, 2007).]

13   If the Court is not inclined to issue terminating sanctions, then a lesser option for the Court

14   is to issue preclusion and evidentiary sanctions. Such lesser sanctions may be issued if the Court

15   finds willfulness or fault by the offending party. [*Unigard,* 982 F.2d at 368 n.2.]

16   The purpose of spoliation sanctions is to "avoid substantial unfairness to the [non-spoliating]

17   party[.]" [*Inland Concrete Enterprises, Inc. v. Kraft Americas LP*, 2011 WL 13209166, at *6 (C.D.

18   Cal. Mar. 9, 2011).] Although terminating sanctions are necessary and very appropriate based on

19   this record, this Court may enter evidentiary or issue preclusion sanctions (to take certain facts as

20   conclusively established) where the defendants have spoliated evidence that likely supported one or

21   more of the plaintiff's claims. [*See id*. at *8 (precluding defendant from introducing contrary

22   evidence); *CrossFit, Inc.*, 2017 WL 2298473 at *6 (entering issue preclusion sanctions taking

23   several facts as conclusively established).] Defendants have made the required showing here, as set

24   forth above at length. The full set of preclusive and evidentiary sanctions is listed in Defendant's

25   notice of this Motion and in its proposed order.

26   In this matter, lesser sanctions would not be sufficient. Plaintiffs demonstrated a course of

27   conduct throughout the discovery process calculated to frustrate and prevent a legitimate exchange

28   of discovery as required by the Federal Rules. As shown by excerpts from the record above,

Plaintiffs' course of conduct ranged from obstruction, to the making of misrepresentations both to Defendants and to this Court, culminating in the destruction of documentary evidence. Based on the record, even with the imposition of preclusive and evidentiary sanctions, it is more probable than not that the Plaintiffs and their attorneys would attempt to maneuver to ignore the preclusive rules and evidentiary strictures established by the Court.  The spoliation has significantly prejudiced Defendants' ability to affirmatively prove their case. This leads to the conclusion that excluding evidence from Plaintiffs cannot cure the harm or the prejudice that has taken place in this matter. [*See Leon*, 464 F.3d at 960.] As such, terminating sanctions that should be applied to this situation.

A harsh, irrebuttable adverse inference instruction should also issue. [*See Compass Bank v. Morris Cerullo*, 104 F.Supp.3d 1040 (S.D. Cal. 2015) (irrebuttable adverse inference instruction issued).]  Radio City destroyed documents it had an obligation to preserve, acted with a "culpable state of mind," and the destroyed evidence was relevant to Radio City's claims. [*Apple v. Samsung*, 881 F.Supp.2d 1132 (N.D. Cal. 2012) (adverse inference instruction was proper).]

## 6.   MONETARY SANCTIONS SHOULD ISSUE AGAINST BOTH CLIENT AND COUNSEL

"Under its 'inherent powers' a district court may also award sanctions in the form of attorneys' fees against a party or counsel who acts in bad faith, vexatiously, wantonly, or for oppressive reasons." [*Leon v. IDX Sys. Corp.,* 464 F.3d 961, 958 (9th Cir. 2006).] As stated in *Primus Automotive Financial Services, Inc v. Batarse,* 115 F.3d 644 (9th Cir 1997): "A finding of bad faith is warranted where an attorney 'knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent.'" [*Id.* at 649.] *See also In re Keegan,* 78 F.3d 431, 436 (9th Cir. 1996). "A party also demonstrates bad faith by delaying or disrupting the litigation or hampering enforcement of a court order." [*Hutto v Finney* 437 U.S. 678, 689 (1978).] In this case, the conduct of Radio City and its counsel is both reprehensible and outrageous.  The course of conduct of obstruction, delay and now document destruction has been breathtaking in its scope and brazenness.  Yet, as extreme as the conduct has been, Radio City and BraunHagey & Borden have now taken their scheme of obstruction and destruction to an unfortunate new level of malfeasance and mendacity with their February 10, 2023 **Joint Status**

Report; wherein Radio City and its counsel claim that "Radio City "disposed of a handful of redundant documents last year, in the ordinary course of her business." The fabrication and dissembling continued up until 48 hours ago, and this conduct cannot be further countenanced by this court.

Consistent with the DPPs' and counsel for DPPs' pattern of bad faith conduct justifying the entry of terminating sanctions, the Court should likewise award Defendants their attorneys' fees they incurred in connection with the preparation and prosecution of this Motion. [*See id.* (affirming award of monetary sanctions associated with terminating sanctions).] Radio City and its counsel should have joint and several liability for the payment of such monetary sanctions which should at least equal the financial detriment that defendants have incurred because of the wrongful conduct of Radio City and its counsel.

As explained above, BraunHagey & Borden repeatedly misrepresented the existence of documents and the completeness of production—all the while Radio City claims BraunHagey & Borden never even asked them for the documents. Now, BraunHagey & Borden is perpetuating an after-the-fact false narrative upon the Court. Defendants will submit Declarations, or such other documentation that the Court deems necessary, to substantiate the amount of their respective fees.

The wrongful conduct by Plaintiff Radio City and BraunHagey & Borden has required many months of work and effort by Defendants (including the effort and cost of preparing this motion). Upon an order by the Court awarding sanctions reflecting damages to Defendants as an appropriate sanction, Defendants will submit a cost bill together with appropriate declarations tabulating and demonstrating the fees and costs incurred because of the conduct of Plaintiff and BraunHagey & Borden. A law firm shares joint and several liability with its client or sanctions imposed because of the wrongful conduct for Rule 37 violations. [*Hyde & Drath v. Baker*, 24 F.3d 1162 (9th Cir 1994).] In this matter, because the course of conduct and discovery abuse that took place that culminated in the destruction of evidence was egregious and engaged in by both Plaintiff Radio City, Inc. and its attorneys BraunHagey & Borden, both Plaintiff Radio City, Inc. and BraunHagey & Borden need to be held jointly and severally liable for the payment of the required sanctions hereunder.

1

## 7.    <u>CONCLUSION</u>

2

Moving Defendants respectfully request that the Court grant this Motion and enter

3

terminating, or alternatively, issue and evidence sanctions, along with monetary sanctions.

4

5

DATED:  February 12, 2023            WEINBERG GONSER FROST LLP

6

7

By:    _____*/s/ Christopher Frost*_____

8

CHRISTOPHER FROST
ASHLEY MORRIS

9

JOHN D, MAATTA

10

Attorneys for Defendants,
Dave Anderson; Celestron Acquisition, LLC; Joe

11

Lupica;    Nantong    Schmidt    Opto-Electrical
Technology Co. Ltd.; Olivon Manufacturing Co.

12

Ltd.; Olivon USA; Pacific Telescope Corp.; David
Shen; Suzhou Synta Optical Technology Co., Ltd.;

13

SW   Technology   Corporation;   Synta   Canada
International Enterprises Ltd.; Synta Technology

14

Corp.

15

16

17

18

19

20

21

22

23

24

25

26

27

28