CHRISTOPHER FROST (SBN 200336)
chris@wgfcounsel.com
ASHLEY MORRIS (SBN 225455)
ashley@wgfcounsel.com
JOHN D. MAATTA (SBN 83683)
john@wgfcounsel.com
WEINBERG GONSER FROST LLP
10866 Wilshire Blvd., PH 1650
Los Angeles, California 90024
Telephone: (424) 407-4119
Facsimile: (424) 238-3060

SHAUNA A. IZADI (Admitted *Pro Hac Vice*)
sizadi@izadilegal.com
IZADI LEGAL GROUP, PLLC
13155 Noel Rd, Suite 900
Dallas, Texas 75240

Attorneys for Defendants,
Celestron Acquisition, LLC; David Shen;
Suzhou Synta Optical Technology Co., Ltd.;
Nantong Schmidt Opto-Electrical Technology Co. Ltd.;
Synta Technology Corp.; SW Technology Corporation;
Synta Canada International Enterprises Ltd.;
Olivon Manufacturing Co. Ltd.; Joe Lupica;
Dave Anderson; Olivon USA; and Pacific Telescope Corp.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| IN RE TELESCOPES ANTITRUST LITIGATION | Case No. 5:20-cv-03642-EJD<br><br>**DECLARATION OF SHAUNA A. IZADI**<br><br>*[Filed Concurrently With Defendants' Notice Of Motion And Motion For Terminating Sanctions Against DPP Putative Class]*<br><br>Hearing Date:  April 6, 2023<br>Hearing time:  9:00a.m.<br>Judge: Hon. Edward J. Davila |
| THIS DOCUMENT RELATES TO:<br><br>SPECTRUM SCIENTIFICS LLC, et al.<br><br>Plaintiffs,<br><br>vs.<br><br>CELESTRON ACQUISITION, LLC, et al.,<br><br>Defendants. | |

43885.1

**DECLARATION OF SHAUNA A. IZADI**

# DECLARATION OF SHAUNA IZADI

I, SHAUNA A. IZADI hereby declare:

1. I am a member in good standing of the State Bars of Texas and Oklahoma. I am duly admitted to practice before this Court via *pro hac vice*. I am the managing member of Izadi Legal Group, PLLC, counsel of record for the above-identified Defendants. Except as otherwise noted on information and belief, the facts stated herein are of my own personal knowledge and, if called upon to do so, I could and would testify competently thereto.

2. On February 1, 2023, Defendants took the first of three anticipated days of deposition testimony of Radio City. The first (and what became the only) deposition day was Maline Fish, who testified at her deposition that she was the fifty-percent owner of Radio City. True and correct copies of pertinent excerpts of the deposition transcript of Maline Fish, dated February 1, 2023, are attached hereto as "**Exhibit 1**."

3. On August 24, 2020, DPPs served their First Set of Requests for Production of Documents. A true and correct copy of the First Set of Requests for Production is attached hereto as "**Exhibit 2**."

4. On October 27, 2022, IPPs served their First Set of Requests for Production of Documents. A true and correct copy of the First Set of Requests for Production is attached hereto as "**Exhibit 3**."

5. On October 30, 2020, IPPs and DPPs served their Second Set of Requests for Production of Documents. A true and correct copy of the Second Set of Requests for Production is attached hereto as "**Exhibit 4**."

6. On October 22, 2020, Defendants served their First Set of Requests for Production of Documents to Radio City. A true and correct copy of the First Set of Requests for Production is attached hereto as "**Exhibit 5**."

7. On December 11, 2020, Radio City served its Objections and Responses to Defendants' First Set of Requests for Production of Documents. A true and correct copy of Radio City's Objections and Responses to Defendants' First Set of Requests for Production is attached

43885.1

**DECLARATION OF SHAUNA A. IZADI**

hereto as "**Exhibit 6**."

8. On October 10, 2022, Defendants served their Second Set of Requests for Production of Documents to Radio City. A true and correct copy of the Second Set of Requests for Production is attached hereto as "**Exhibit 7**."

9. On October 25, 2022, Defendants served their Third Set of Requests for Production of Documents to Radio City. A true and correct copy of the Third Set of Requests for Production is attached hereto as "**Exhibit 8**." Radio City served its Objections and Responses to Defendants' Second and Third Sets of Requests for Production on December 7, 2022. True and correct copies of Radio City's Responses are attached hereto as "**Exhibit 9**" and "**Exhibit 10**," respectively.

10. I reviewed the documents produced by the Direct Purchaser Plaintiffs ("DPPs"), following DPPs' Responses and Objections to the First Set Requests for Production and the subsequent party agreements relating to custodians and search terms. Defendants produced approximately 48,000 documents, including 17,761 hard-copy documents in PDF format. I reviewed DPPs' document production, which consisted of large incoherent PDF groupings, and various ESI that was not relevant to any of the claims, such as the computer software license agreements, produced in multiple languages. Out of the 48,000 documents, only 11,998 documents mentioned "telescope," which documents also include multiple pleadings DPPs produced from the *Orion* lawsuit.

11. Attached hereto as "**Exhibit 11** is a true and correct copy of correspondence I sent to DPPs' Counsel, Mr. Ron Fisher, on October 28, 2022, requesting information on the grouping of the hardcopy documents.

12. Attached hereto as "**Exhibit 12**" is a true and correct copy of correspondence I sent to DPPs' Counsel, Mr. Ron Fisher, on October 28, 2022, requesting production of documents identifying customer information subject to Defendants' Requests for Production Nos. 170 and 166.

13. Attached hereto as "**Exhibit 13**" is a true and correct copy of correspondence I sent to DPPs' Counsel, Mr. Ron Fisher, on October 28, 2022 requesting a conference to discuss DPPs' lack of production of documents identifying or relating to the telescopes that DPPs sold.

43885.1

2

**SHAUNA IZADI DECLARATION**

14. Attached hereto as "**Exhibit 14**" is a true and correct copy of correspondence I sent to DPPs' Counsel, Mr. Ron Fisher, on October 28, 2022 requesting DPPs to produce responsive documents to Defendants' Requests for Production Nos. 143-148, 150-151, which all request responsive information relating to DPPs' purchase of telescopes.

15. Attached hereto as "**Exhibit 15**" is a true and correct copy of correspondence I sent to DPPs' Counsel, Mr. Ron Fisher, on October 28, 2022 requesting DPPs to produce communications with Orion.

16. The parties met and conferred, on multiple occasions, on the issues raised in these five meet and confer letters in November and December 2022.

17. On November 1, 2022, I, along with co-counsel and counsel for DPPs, attended our meet and confer conference, discussing multiple issues, including DPPs' responses to Defendants' Requests for Production, and specifically customer information, and the general search and collection protocol including the collection of the hardcopy documents. True and correct copies of the pertinent excerpts of the transcript for the meet and confer via Zoom, dated November 1, 2022, are attached hereto as **"Exhibit 16**."

18. During the November 1 meet and confer, I inquired once again with DPPs into the mechanics of how the hardcopy document production was maintained, where it was stored, and I provided examples of deficiencies in how the documents were organized. DPPs' Counsel stated that such answers had been responded to, and were better suited for formal written discovery or a deposition.

19. On November 1, 2022, DPPs responded to Defendants' five meet and confer letters. A true and correct copy of DPPs' response is attached hereto as **"Exhibit 17**."

20. Given that the November 1, 2022 meet and confer (both in writing and via Zoom discussion) was not successful, Defendants forwarded their portion of the Letter Brief re: Customer List to DPPs' counsel on November 15, 2022. A true and correct copy of the November 15, 2022 correspondence is attached hereto as **"Exhibit 18."**

21. On November 17, 2022, Mr. Fisher responded in an email correspondence, stating, in part:

> We are confused by this letter brief. We have told you that Radio City does not have a "customer list"; that Radio City has produced all of its hardcopy purchase orders and invoices in its possession as they were maintained, which include customer information in the ordinary course . . .

22. A true and correct copy of the aforementioned email correspondence is attached hereto as "**Exhibit 19**." The parties met for their weekly Zoom conference on the same day, November 17, 2022, to continue conferring on DPPs' search and collection protocol and the collection of hardcopy documents. The pertinent excerpts of the transcript for the recorded meet and confer are attached hereto as "**Exhibit 20**."

23. After meeting and conferring with DPPs' counsel, Mr. Ron Fisher, on November 17, 2022, I sent an email to DPPs' counsel advising him that Defendants expected DPPs' portion of the letter brief regarding customer information by the close of business on Monday, November 21, 2022. A true and correct copy of the email correspondence I sent is attached hereto as "**Exhibit 21**."

24. Attached hereto as "**Exhibit 22**" is a true and correct copy of correspondence I sent to DPPs' Counsel, Mr. Ron Fisher, on November 18, 2022. In particular, Defendants, once again, sought information concerning DPPs' purchasing data, and took issue with DPPs reference to a particular Bates Range that referenced certain hardcopy documents. Defendants sought information as to how and from what data source the information was originally generated. Defendants further reiterated that:

> Defendants are seeking the DPPs' raw transaction-level sales data, broken out by transaction, at the same level of granularity at which it is or has been maintained by and available to DPP Plaintiffs in the ordinary course of business. DPP Plaintiffs were in the business of selling products that it sourced from other suppliers or manufacturers, and it would defy credibility for DPP Plaintiffs to contend that it did not ever maintain this information in the ordinary course of business in a manner

sufficient for DPP Plaintiffs to ascertain what they have sold to, to whom, and for how much. For the transaction-level sales data, Defendants have specified categories of information that DPP Plaintiffs must produce, per transaction, to the extent it exists. Defendants also seek detailed costs data across the categories of information that would enable a user to link sales data with associated costs data, and information regarding rebates, discounts, rebates, credits, and other adjustments applicable to DPP Plaintiffs' purchases of telescopes and telescope products. These requests are set forth in full in Defendants' Requests for Production.

25. On November 21, 2022, Defendants served their seventh meet and confer letter. A true and correct copy of Defendants' meet and confer letter is attached hereto as "**Exhibit 23**."

26. On the same day, November 21, 2022, the parties had a Zoom meet and confer conference. True and correct copies of the pertinent excerpts of the transcript for the recorded meet and confer are attached hereto as "**Exhibit 24**."

27. On December 1, 2022, DPPs' counsel responded to Defendants' November 18 and 21, 2022 correspondence, by stating, in part:

> As we have explained, we have provided all relevant hard-copy documents in Radio City's possession, custody, or control, as well as all non-privileged documents hitting on the agreed-upon search terms from relevant ESI sources.
>
> ***
>
> In short, all potentially relevant files have been collected and reviewed in accordance with Radio City's discovery obligations and the parties' agreements, as outlined above.

A true and correct copy of the December 1, 2022 correspondence is attached hereto as "**Exhibit 25**."

28. On December 1, 2022, the parties met for their weekly Zoom meet and confer conference. The pertinent excerpts of the transcript for the recorded meet and confer are attached hereto as "**Exhibit 26**."

29. With respect to Radio City's Responses to Defendants' Second and Third Sets of Requests for Production (**Exhibits 9** and **10** hereto) - RFP Nos. 208 ["209"], No. 209 ["210"], and Nos. 213-220 ["214"-"221"] – seeking Radio City's purchase information, sales information, and transaction-level sales data such as cost, SKUs, and margin information, Radio City falsely claimed it had "conducted a reasonable search of the documents in its possession, custody, or control, and **produced all potentially responsive documents**, ...." (*Id.* (emph. added)) Tellingly, IPPs and DPPs concede the relevance of this information, as they requested production from Defendants of the same types of information that Radio City would later destroy. *See* **Exhibits 2-4** attached here, which are IPPs and DPPs' First RFPs at Nos. 38-45, 90-93 and IPP's Second RFPs at Nos. 96-100, 117.

30. During this particular time, DPPs continued to claim they produced all the documents in their possession, custody and control, and that they had produced all responsive data to Defendants' discovery requests. I have reviewed all of DPPs' document production, and DPPs' counsel has grossly exaggerated the sum and substance of their document production. DPPs repeatedly allege to have produced all of its customer information, and refer to certain Bates Ranges to purportedly reflect this claim. However, these referenced DPP customer invoices are enigmatic, and reflect nothing substantive except that a sale *may* have occurred. The referenced invoices do not reflect what item or product was sold, only that *something* was sold. There is no way fathomable or a reasonable method that Defendants could possibly undertake to decipher the basic information necessary to defend against DPPs' claims. For example, Defendants requested standard purchasing information from DPPs, such as: name, address, purchase order/invoice number, product identification, sale price and purchase price, among other basic sales transactional level data. Instead, DPPs produced thousands of indiscernible pages of invoices, and undated copies of sales tags simply stating, for example, "Meade $29," which example shows slightly more information than the thousands of pages of illegible invoices DPPs produced.

31. Rather than comply with Defendants' standard discovery requests, DPPs relied upon thousands of pages of fragmental invoices, many of which are illegible, that contain nothing but a

date, sometimes an item number, and the amount that was paid. The invoices were grouped in no ordinary business manner, and produced in large numbers, oftentimes with random pages appearing upside down. The impenetrable task of retrieving any useful information from DPPs' document production proved to be insurmountable.

32. DPPs also took the position that fragmented reports which were run by the DPPs years ago fully complied with their discovery obligations, yet, DPPs' representations are dubious. These "reports," which DPPs cite to as DPP00057865-57890, are nothing more than 25-pages of sporadically run reports from 2006-2018, which only provide the item id, model name, total cost, total price, margin and quantity. Critically missing is the customer information, the purchase order/invoice number, SKU, price at which the product was sold, where the telescope was purchased, and the amount DPPs paid for said telescope product.

33. Certain basic information is necessary for the Defendants to defend against DPPs' antitrust claims. Inherent in those claims is pricing information, such as how much DPPs purchased the product for and the amount it sold and received for the product. This basic information is absent from DPPs' entire document production. DPPs allege that Defendants' pricing is supracompetitve compared to other telescope manufacturers, but wholly fail to produce any document that shows the amount paid and/or number of telescope products that DPPs purchased, and the amount and/or number of those telescope products sold to consumers.

34. Defendants are crippled by the lack of DPP information, and are unable to adequately prepare their defenses to DPPs phantom claims.

35. On December 8, 2022, DPPs circulated their portion of the Letter Brief relating to customer lists.

36. On December 15, 2022, after Defendants indicated their intent of filing the Letter Brief, DPPs indicated they had changes to the procedural background. A true and correct copy of the email is attached hereto as "**Exhibit 27**."

37. DPPs emailed Defendants on December 15, 2022 and provided their changes to the customer list Letter Brief. A true and correct copy of the email is attached hereto as "**Exhibit 28**."

38. On December 29, 2022, the parties met for their weekly Zoom meet and confer conference. True and correct copies of the pertinent excerpts of the transcript of the recorded meet and confer are attached hereto as "**Exhibit 29**."

39. On December 30, 2022, I emailed a redline draft of the letter brief re: customer lists to DPPs' counsel, Mr. Fisher. A true and correct copy of the email is attached hereto as "**Exhibit 30**."

40. On January 4, 2023, DPPs' counsel sent an email authorizing Defendants' counsel to file the letter brief re: customer lists. A true and correct copy of the email is attached hereto as "**Exhibit 31**."

41. On January 6, 2023, Defendants filed the Joint Letter Brief re: Radio City's Customer List. The Joint Letter Brief was re-filed on January 26, 2023 pursuant to the Court Order following the Court's denial of the motion to file the exhibits under seal. (ECF 306)

42. On January 13, 2023, the Court issued an Order regarding the Joint Letter Brief re: DPPs' Customer List. (ECF 296)

43. On January 17, 2023, the parties filed the Joint Letter Brief re: DPPs' Document Collection Efforts re: Employees. (ECF 298)

44. On January 20, 2023, the parties filed their Joint Letter Brief re: Rule 30(b)(6) Deposition of Radio City. (ECF 305)

45. On the evening of January 23, 2023, DPPs produced approximately 27,000 additional documents from the personal email accounts of Dan Fish and Maline Fish despite DPPs earlier refusals to collect the requested data.

46. On January 31, 2023, the Court heard the oral arguments on parties' Joint Discovery Letter Brief re: DPPs' Document Collection Efforts re: Employees. During the hearing, DPPs' counsel represented to the Court: "we produced everything." True and correct copies of the pertinent excerpts of the January 31, 2023 hearing transcript are attached hereto as "**Exhibit 32.**"

47. On February 3, 2023, the Court issued an Order re: Letter Brief re: DPPs' Document Collection Efforts re: Employees. (ECF 314)

1 | I declare under penalty of perjury under the laws of the United States that the foregoing is
2 | true and correct, and that this declaration was signed on February 12, 2023.

                         */s/ Shauna A. Izadi*
                         SHAUNA A. IZADI