1 | CHRISTOPHER FROST (SBN 200336)
chris@wgfcounsel.com
2 | JOHN D. MAATTA (SBN 83683)
john@wgfcounsel.com
3 | JOSHUA STAMBAUGH (SBN 233834)
josh@sgfcounsel.com
4 | WEINBERG GONSER FROST LLP
10866 Wilshire Boulevard, PH1650
5 | Los Angeles, California 90024
Telephone: (424) 239-2850
6 | Facsimile: (424) 238-3060

7 | Attorneys for Defendants,
Dave Anderson; Celestron Acquisition, LLC; Joe
8 | Lupica; Nantong Schmidt Opto-Electrical
Technology Co. Ltd.; Olivon Manufacturing Co.
9 | Ltd.; Olivon USA; Pacific Telescope Corp.;
David Shen; Suzhou Synta Optical Technology
10 | Co., Ltd.; SW Technology Corporation; Synta
Canada International Enterprises Ltd.; Synta
11 | Technology Corp.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| IN RE TELESCOPES ANTITRUST LITIGATION | Case No. 5:20-cv-03642-EJD |
| THIS DOCUMENT RELATES TO: | *Hon. Edward J. Davila* |
| SPECTRUM SCIENTIFICS LLC, RADIO CITY, INC., and those similarly situated<br><br>Plaintiff,<br><br>vs.<br><br>CELESTRON ACQUISITION, LLC, SUZHOU SYNTA OPTICAL TECHNOLOGY CO., LTD., SYNTA CANADA INT'L ENTERPRISES LTD., SW TECHNOLOGY CORP., OLIVON MANUFACTURING CO. LTD., OLIVON USA, LLC, NANTONG SCHMIDT OPTOELECTRICAL TECHNOLOGY CO. LTD., NINGBO SUNNY ELECTRONIC CO., LTD., PACIFIC TELESCOPE CORP.,<br><br>Defendants. | **DEFENDANTS' MOTION TO STRIKE DIRECT PURCHASER PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR TERMINATING SANCTIONS AGAINST DPP PUTATIVE CLASS FOR INTENTIONAL AND IRREMEDIABLE DESTRUCTION OF RELEVANT EVIDENCE BY THE SOLE PUTATIVE CLASS REPRESENTATIVE, OR ALTERNATIVELY, TO STRIKE THE DECLARATION OF CHRISTOPHER GROVES AND ALL ARGUMENTS SUPPORTED BY THE DECLARATION; REQUEST FOR MONETARY SANCTIONS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>*[Filed concurrently with Declaration of Christopher Frost]*<br>Hearing for Defendants' Motion:<br><br>Judge:   Hon. Edward J. Davila<br>Date:    April 6, 2023<br>Time:    9:00 a.m. |

**TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that Defendants Celestron Acquisition, LLC; David Shen; Suzhou Synta Optical Technology Co., Ltd.; Nantong Schmidt Opto-Electrical Technology Co. Ltd.; Synta Technology Corp.; SW Technology Corporation; Synta Canada International Enterprises Ltd.; Olivon Manufacturing Co. Ltd.; Joe Lupica; Dave Anderson; Olivon USA; and Pacific Telescope Corp. (collectively "Moving Defendants") respectfully move this Court for entry of an order to (i) strike the entirety of Direct Purchaser Plaintiffs' Opposition to Defendants' Motion For Terminating Sanctions Against DPP Putative Class For Intentional And Irremediable Destruction Of Relevant Evidence By The Sole Putative Class Representative (the "DPPs' Opposition"), (ii) strike the entirety of the declaration of Christopher Groves, (iii) strike all arguments supported by the declaration of Christopher Groves, (iv) order sanctions to compensate Defendants for the costs incurred in bringing this Motion and all costs related to attempting to obtain the deposition of Christopher Groves, and (v) issue bench warrant and an order to show cause to bring Christopher Groves before this Court to testify as to why the Court's order that he provide testimony by March 31 was violated.

Defendants' Motion for Terminating Sanctions is set for April 6, 2023, at 9:00 a.m., in the courtroom of the Honorable Edward J. Davila, located in the United States District Court for the Northern District of California, in Courtroom 4 on the 5th floor of the above-captioned court located at 280 South 1st Street, San Jose, California 95113.

Please take notice that on the Court's earliest available date, or on or in advance of the hearing date set for Defendants' Motion for Terminating Sanctions, Defendants' will move this Court for an order for Defendants' instant Motion to Strike.

This Motion is based upon the fact that the DPPs have willfully disregarded an explicit and direct order of this Court in failing and refusing to produce Christopher Groves for deposition prior to March 31. The Court ordered that DPPs "must make Mr. Groves available for deposition by defendants **on or before March 31, 2023**. DPPs shall advise defendants by **no later than noon on March 23, 2023** of three days and times during which Mr. Groves is available for deposition." [emph. added.] [ECF No. 366.] The Court issued that order because DPPs submitted three "expert"

declarations of Mr. Groves in support of the DPP Motion To Enforce Court Order, and DPPs' Opposition to Defendants' Motion for Terminating Sanctions, and, therefore, Defendants have a right to take Mr. Groves' declaration in advance of the April 4 and April 6 hearings on the two Motions, limited to the scope of those declarations.

Notwithstanding the clear order of this Court, the DPPs did not provide Order-compliant dates, but instead submitted a pleading to this Court claiming that Mr. Groves was "unavailable" and offered dates only after the April 4 hearing—defeating the entire point of the depositions and completely undermining this Court's order.

To state the obvious, compliance with this Court's order was not optional, and DPPs' refusal to comply irremediably prejudices Defendants.

This Motion is based upon: (i) the Court Order dated March 22, 2023 (ECF No. 366), and DPPs' Response to the Court Order (ECF No. 367), (ii) the parties' letter brief concerning scheduling a deposition of Mr. Groves (ECF No. 364), (iii) Defendants' Motion for Terminating Sanctions and supporting papers (ECF No. 322), (iv) DPPs' Opposition to the Motion and supporting papers (ECF No. 341), (v) Defendants' Reply and supporting papers (ECF No. 349), (vi) Defendants' Notice of Errata (ECF No. 338), (vii) the Memorandum of Points and Authorities filed herewith, (viii) the Declaration of Christopher Frost Filed herewith,  (ix) all of the pleadings, files, and records in this proceeding, (x) all other matters of which the Court may take judicial notice; and (xi) any argument or evidence that may be presented to or considered by the Court prior to its ruling.

DATED:  March 27, 2023                    WEINBERG GONSER FROST LLP

                                          By:      /s/ Christopher Frost
                                               CHRISTOPHER FROST
                                               Attorneys for Defendants, Dave Anderson; Celestron Acquisition, LLC; Joe Lupica; Nantong Schmidt Opto-Electrical Technology Co. Ltd.; Olivon Manufacturing Co. Ltd.; Olivon USA; Pacific Telescope Corp.; David Shen; Suzhou Synta Optical Technology Co., Ltd.; SW Technology Corporation; Synta Canada International Enterprises Ltd.; Synta Technology Corp.

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................5

I.      INTRODUCTION..................................................................................................7

II.     FACTUAL BACKGROUND .................................................................................8

    A.    DPPs File Declarations by Christopher Groves Raising Substantive
       Arguments Relevant to Two Different Motions ..........................................8

    B.    DPPs Refuse to Provide Deposition Dates for Mr. Groves.........................9

    C.    This Court Orders That The Deposition of Christopher Groves Take Place
       On Or Before March 31, 2023 ....................................................................14

    D.    DPPs Willfully Disobey the Order of This Court .....................................14

III.    ARGUMENT .......................................................................................................15

    A.    Sanctions Are Available for DPPs' Refusal to Comply With A Court Order .........15

    B.    DPPs Failed To Comply With This Court's Order Compelling Them to
       Introduce Mr. Groves For Examination Before March 31, 2023: Significant
       Sanctions Should Follow.............................................................................16

        1.    The Importance Of The Testimony Of The Precluded Witness..................17

        2.    The Prejudice Suffered By Defendants As A Result Of Having To
           Prepare To Meet The New Testimony .......................................17

        3.    DPPs Have No Reasonable Explanation For Failure To Comply
           With The Court Order .................................................................18

        4.    It Is Confirmed That DPPs' Motion Will Be Heard On April 4 and
           Defendants' Motion for Terminating Sanctions Will Be Heard On
           April 6 ..........................................................................................18

    C.    Christopher Groves' Declaration Must Be Stricken Due To His Refusal to
       Attend The Court-Ordered Deposition......................................................19

    D.    All Arguments Supported by Christopher Groves' Declarations Must Be
       Stricken Given Mr. Groves' Refusal To Attend The Court-Order Deposition
       Prior to The Hearing...................................................................................21

IV.     MONETARY SANCTIONS SHOULD ISSUE AGAINST BOTH CLIENT AND
    COUNSEL ...........................................................................................................22

V.      CONCLUSION ...................................................................................................24

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Al Barnett & Son, Inc. v. Outboard Marine Corp.*,
   611 F.2d 32 (3rd Cir. 1980).................................................................23

*Amersham Pharmacia Biotech, Inc. v. Perkin-Elmer Corp.*
   (ND CA 2000) 190 FRD 644..............................................................16

*Dale K. Barker Co., P.C. v. Valley Plaza*
   (10th Cir. 2013) 541 Fed.Appx. 810...................................................16

*Hilao v. Estate of Marcos*
   (9th Cir. 1996) 103 F3d 762................................................................15

*Leon v. IDX Sys. Corp.*,
   464 F.3d 961 (9th Cir. 2006)..............................................................22

*Lew v. Kona Hosp.*
   (9th Cir. 1985) 754 F2d 1420..............................................................15

*National Hockey League v. Metropolitan Hockey Club*,
   427 U.S. 639 (1976)............................................................................23

*Reilly v. NatWest Markets Group Inc.*
   2nd Cir. 1999......................................................................................16

*SEC v. Razmilovic*
   (2nd Cir. 2013) 738 F3d 14.................................................................16

*Sentry Ins. A Mut. Co. v. Brand Mgmt., Inc.*
   (E.D. NY 2013) 295 FRD 1.................................................................16

*Toth v. Trans World Airlines, Inc.*
   (9th Cir. 1988) 862 F2d 1381..............................................................16

*United States v. Sumitomo Marine & Fire Ins. Co.*,
   617 F.2d 1365 (9th Cir. 1980).............................................................23

*Universal Health Group v. Allstate Ins. Co.*
   (6th Cir. 2013) 703 F3d 953................................................................16

*Von Brimer v. Whirlpool Corp.*
   (9th Cir. 1976) 536 F2d 838................................................................16

*United States ex rel. Wiltec Guam, Inc. v. Kahaluu Const. Co., Inc.*
   (9th Cir. 1988) 857 F2d 600................................................................15

*Young v. O'Reilly Automotive Stores, Inc.*
(2018) ................................................................................................................. 23

**Other Authorities**

FRCP 37(b)(2)(A) ................................................................................................. 15

FRCP 37(b)(2)(A)(ii) ........................................................................................... 16

FRCP 37(b)(2)(A)(iii)- ......................................................................................... 16

FRCP Rule 37(b)(2)(A) and (B) ........................................................................... 15

FRCP Rule 37(b)(2)(B) ........................................................................................ 18

FRCP 37(d) .................................................................................................... 15, 23

FRCP 37(d)(3) ............................................................................................... 23, 24

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

This Motion was required based on DPPs' deliberate refusal to comply with a direct Court order.  In support of the DPPs' Opposition to Defendants' Motion for Terminating Sanctions, set for hearing on April 6, DPPs submitted a declaration of Christopher Groves[1]. The declaration—albeit without any foundation—purports to go to the heart of the issues in the Defendants' Motion. Defendants requested repeatedly for weeks for dates to depose Mr. Groves. No dates were ever provided, and Defendants were forced to move to compel. Judge DeMarchi then ordered DPPs to produce Christopher Groves **on or before March 31**, with the testimony to be limited to the issues raised in the subject declarations[2]. DPPs refused. Rather, they submitted a pleading claiming that Mr. Groves was "unavailable." DPPs then offered dates that were after the April 4 hearing on the DPP Motion—thereby undermining the entire purpose of the Order.

Had DPPs offered deposition dates when Defendants requested, perhaps Mr. Groves' schedule would have been accommodating. Nevertheless, Mr. Groves' purported unavailability should not prejudice Defendants.

This Court ordered that DPPs make Mr. Groves available for his deposition before March 31. DPPs did not comply with the order of this Court and made a cynical proposal (in violation of the Court order), to make him available one day before the April 6 hearing.  Producing Christopher

---

[1] Defendants have filed a similar companion Motion to Strike before Judge DeMarchi, for an entry of order to strike Direct Purchaser Plaintiffs' Motion to Enforce Discovery Order and for Sanctions for Violation of Court Order (the "DPPs' Motion"), or alternatively, to strike the declarations of Christopher Groves submitted in support of the DPPs' Motion, and all arguments supported by the declarations of Christopher Groves.  Both Motions to Strike are based on the same facts that Christopher Groves submitted declaration(s) which DPPs heavily relied upon in their arguments, but DPPs refused to present Mr. Groves for the Court-ordered deposition.

[2] Besides Groves' declarations in support of DPPs' Opposition, DPPs also submitted an opening declaration and then a reply declaration of Christopher Groves in support of DPPs' Motion which will be heard by Judge DeMarchi on April 4, 2023. Those declarations—albeit without any foundation—purport to go to the heart of the issues in the DPP Motion. The Court-ordered deposition aimed to address issues raised in all three declarations in advance of both the April 4 and April 6 hearings.

Groves for deposition hours before the Court hearing on April 6 does not provide Defendants time to adequately prepare for the April 6 hearing, much to Defendants' prejudice and detriment. Defendants had previously proposed that the deadline for Defendants to submit its Reply Brief to DPPs' Opposition to Defendants' Motion for Terminating Sanctions be extended until after the completion of the deposition of Christopher Groves. DPPs rejected that proposal. Defendants already sustained prejudice by the necessity of filing a Reply to DPPs' Opposition, which heavily relied upon Groves' declaration, without first taking Groves' deposition.  Defendants cannot be further prejudiced for not having an opportunity to take Groves' deposition within a reasonable time before the April 6 hearing. The Court set March 31 as the deadline to take Groves' deposition and DPPs refused to comply with the Court Order.  The conduct of DPPs in ignoring the Court order is a serious wrong in its own right. The wrong would be compounded and prejudicial to Defendants were the deposition (that Defendants sought to schedule for weeks) be conducted hours before the subject Court hearing. The conduct of DPPs in this matter cannot be countenanced, let alone rewarded by prejudicing Defendants.

Therefore, Defendants move to strike the DPP Opposition to the Defendants' Motion for Terminating Sanctions, or alternatively, to strike the Groves declaration and all arguments in the DPPs' Opposition that rely on Mr. Groves' declaration.  Defendants also request monetary sanctions and for Mr. Groves to appear before this Court and explain his refusal to comply.

## II.     FACTUAL BACKGROUND

### A.     DPPs File Declarations by Christopher Groves Raising Substantive Arguments Relevant to Two Different Motions

On February 8, February 27, and March 1, DPPs filed three separate declarations by purported expert Christopher Groves.  [*See* Declaration of Christopher Frost, filed concurrently herewith ("Frost Decl."), ¶2.]  The February 8 and March 1 declarations were submitted in support of DPPs' Motion to be heard on April 4. The February 27 declaration was submitted in support of DPPs' Opposition to Defendants' Motion for Terminating Sanctions, which will be heard before Judge Davila on April 6.  [*Id.*]  All three declarations heavily relied upon Christopher Grove's alleged expertise, testimony, and opinions concerning key central and material issues in the two

Motions which will be heard by this Court.  The March 1 declaration also contained substantial new evidence.  [*Id*. at ¶3.]

On February 28, 2023, Christopher Frost, counsel for the Defendants, immediately attempted to schedule the deposition of Christopher Groves for a date prior to the April 4 and April 6 hearings.  [Frost Decl., at ¶5, Ex. 1.]  The deposition was required to test the information, opinions, and factual predicates contained in each of the three Groves Declarations.

**B.**      **DPPs Refuse to Provide Deposition Dates for Mr. Groves**

In response to Defendants' good faith attempt to depose Christopher Groves, the DPPs engaged in a course of conduct that was intended to, and which did, stonewall and intentionally frustrate Defendants' right to depose Christopher Groves.  Between February 28, 2023 and March 21, 2023, notwithstanding multiple attempts by Defendants to schedule the deposition, DPPs failed and refused to set a date for the deposition of Christopher Groves.  Had the facts been otherwise, and had DPPs acted reasonably and appropriately, Defendants would not have had to seek relief from this Court to order the deposition of Christopher Groves (not that the Order of the Court ultimately made any difference to the DPPs).  [Frost Decl., at ¶6.]  The multiple and repeated good faith requests by Mr. Frost to schedule the deposition of Christopher Groves was met with a pattern of rope-a-dope deception, obfuscation, and obstruction as set forth in the following timeline:

| Date | Christopher Frost on behalf of Defendants | Ron Fisher on Behalf of DPPs |
|---|---|---|
| February 28, 2023 (One day after DPPs filed their Opposition to Motion for Terminating Sanctions) | Defendants request to take a deposition of Chris Groves in short order. [Frost Decl., Ex 1.] | No Response from DPPs Counsel. |
| March 9, 2023 | Having not heard any response from DPPs for ten days, Defendants | DPPs' Counsel refused to produce Groves, (wrongfully) |

| | | | |
|---|---|---|---|
| | | noticed Christopher Groves' Deposition, and advised DPPs that Defendants would like to discuss the scheduling of Mr. Groves' deposition at their regularly scheduled meet-and-confer call at 3:30 p.m. PST. [*Id.*, at ¶7, Ex. 2.] | claiming that the issue would be decided by Judge Davila during the Status Conference hearing on March 13, 2023, and refusing to continue the conversation "before the Court has decided the issues." [*Id.*, at ¶7, Ex. 2.] |
| | March 9, 2023 (continued email conversation) | Defendants suggest the parties brief the issue with the Court given the fact that the Court is not going to determine Groves' deposition schedule on March 13. Defendants advised that they did not have the luxury of the delay DPPs are creating. [*Id.*, at ¶8, Ex. 2.] | |
| | March 9, 2023, at 3:30 p.m., at the weekly meet and confer | Defendants punctually attended the meet and confer conference and were prepared to further meet and confer on this issue. [*Id.*, at ¶9.] | Without any notice whatsoever, DPPs' Counsel failed to appear at the regularly scheduled meet and confer. [*Id.*, at ¶9.] |
| | March 10, 2023 | Defendants sent DPPs their portion of the applicable letter brief and requested that DPPs return their portion by March 17. Although Defendants did not have the luxury of time, Defendants tried to be thoughtful and gave DPPs more than enough time to return their portion. | |

| | | |
|---|---|---|
| | [*Id.*, at ¶10, Ex. 3.] | |
| March 13, 2023 | | DPPs continued to refuse to provide DPPs' portion of the letter brief, and continued to refuse to provide a date until "after Judge Davila issues his order following today's [3/13] status conference…." DPPs further (wrongfully) threatened Defendants that "If Defendants insist upon putting another motion before Judge DeMarchi regarding matters presently before Judge Davila—and which Judge Davila expressly said on the record he was taking up to free up Judge DeMarchi's calendar—we will explain to Judge DeMarchi that your motion is unripe and filed without complying with her Standing Order re Civil Cases." [*Id.*, at ¶11, Ex. 4.] |
| March 15, 2023 | As expected, Judge Davila did not address the deposition schedule of Groves at the March 13 hearing. Defendants urged DPPs to return | |

| | | |
|---|---|---|
| | their portion of the brief given that "we ["the parties"] both know that the Groves deposition will not be addressed in Judge Davila's order." [*Id.*, at ¶12, Ex. 5.] | |
| March 16, 2023 | | DPPs again, wrongfully insisted that "[t]he matters asserted in your letter brief are before Judge Davila and the parties should await that order, then confer." DPPs sent their portion specifically explaining that fact. [*Id.*, at ¶13, Ex. 6.] |
| March 16, 2023 (continued email conversation) | On the same day that DPPs sent their portion of the letter brief, Defendants returned its reply portions of the letter brief only to address issues raised by DPPs and request DPPs' approval for filing on the same day or DPPs provide the final comments. [*Id.*, at ¶14, Ex. 7.] | DPPs failed to respond. |
| March 17, 2023 | Defendants followed up on the letter brief. Defendants reiterated that Defendants were pressed for time given the schedule of hearings in early April. [*Id.*, at ¶15, Ex. 8.] | DPPs refused to provide the final comments on the letter brief or approve the filing, claiming they had more urgent matters to handle. DPPs were intentionally and willfully dragging this issue |

| | | |
|---|---|---|
| | | out, and attempting to preclude the issue from being timely adjudicated by the Court, to Defendants' prejudice. DPPs goal was to defeat the entire purpose of taking Mr. Groves' deposition prior to the April hearings. [*Id.*, at ¶15, Ex. 8.] |
| March 17, 2023 (continued email conversation) | Having no alternative options, Defendants were forced to advise DPPs: "Ron: You are consistently refusing to meet and confer and consistently working to stall this process. We will file Monday at noon with or without your consent. We are simply out of time to obtain Mr. Groves' deposition before April 4." [*Id.*, at ¶15, Ex. 8.] | DPPs did not respond to Defendants' email. |
| March 20, 2023 | | Still, DPPs refused to return their final edits on the letter brief and tried to drag this process out even longer, to the next evening, so the filing would not likely occur until even later. [*Id.*, at ¶17, Ex. 9.] |
| March 20, 2023 (continued | Defendants agreed to give DPPs until "end of day tomorrow" to provide the | |

| conversation) | revised insert. [*Id.*, at ¶17, Ex. 9.] | |
|---|---|---|
| March 21, 2023 | | At 6:02 p.m. on March 21, DPPs sent their revised insert and their exhibits. [*Id.*, at ¶18, Ex. 10.] In order to avoid further delay which Defendants anticipate would be created by DPPs if Defendants made any further edits on DPPs' returned brief, Defendants filed the version sent by DPPs the same evening. [*Id.*, at ¶19.] |

Defendants ultimately had no choice but to file a motion to compel.

**C.    This Court Orders That The Deposition of Christopher Groves Take Place On Or Before March 31, 2023**

In response to the motion of Defendants, on March 22, 2023, Judge Di Marchi ordered that DPPs: "must make Mr. Groves available for deposition by defendants **on or before March 31, 2023**. DPPs shall advise defendants by **no later than noon on March 23, 2023** of three days and times during which Mr. Groves is available for deposition." [emph. added.] [ECF No. 366.] [Frost Decl., at ¶20.]

**D.    DPPs Willfully Disobey the Order of This Court**

In spite of the plain and direct language of the Court's March 22 Order, the DPPs refused to produce Mr. Groves for a Court-ordered deposition prior to March 31, 2023 (while conveniently and shamelessly offering three days of purported availability immediately ***after*** the April 4 hearing). Rather, DPPs, without explanation or excuse, claimed Groves was "unavailable" and only offered deposition dates after the April 4 hearing. [ECF No. 367.]   [Frost Decl., at ¶¶21-22.]

What the DPPs have offered is not what the Court ordered, and frustrates the purpose of the

1  deposition altogether. The testing by oral examination of the matters asserted in Christopher Groves'

2  declarations before the April 4 (and April 6 hearings) are the very reason this Court ordered the

3  deposition of Christopher Groves. Due to DPPs' willful disregard of the Court Order to have

4  Christopher Groves deposed as ordered before March 31, 2023, Defendants have been substantially

5  prejudiced by their inability to take the court-ordered deposition ***in advance of*** the April 4 hearing.

6  [Frost Decl., at ¶23.]

7      Defendants have been working diligently to attempt to reduce the number of disputes

8  required to be submitted to this Court. Unfortunately, due to DPPs' blatant recalcitrance, Defendants

9  had no choice but to submit this Motion.  [Frost Decl., at ¶24.]

10  **III.   ARGUMENT**

11      **A.   Sanctions Are Available for DPPs' Refusal to Comply With A Court Order**

12      It is one thing for DPPs to engage in wrongful conduct in its dealings with the Defendants.

13  It is quite another matter for DPPs to intentionally violate a lawful order of this Court.

14      The Court has broad powers to curtail discovery abuses.  However, the Court has even

15  greater and more significant authority to impose sanctions against a person or party for failure to

16  obey a prior court order compelling discovery.  FRCP 37(b)(2)(A); *United States ex rel. Wiltec*

17  *Guam, Inc. v. Kahaluu Const. Co., Inc.* (9th Cir. 1988) 857 F2d 600, 602.  That is exactly the matter

18  at hand.

19      Sanctions are appropriate if a party, or someone under the party's control, fails to be sworn

20  or answer questions at deposition after the court orders it to do so.  FRCP Rule 37(b)(2)(A) and (B).

21  A party who fails to appear for deposition is subject to sanctions even in the absence of a prior order.

22  FRCP 37(d); *Hilao v. Estate of Marcos* (9th Cir. 1996) 103 F3d 762, 764-765.  Moreover, there is

23  no requirement that failure to appear or respond be willful before sanctions (except dismissal) may

24  be imposed.  *Lew v. Kona Hosp.* (9th Cir. 1985) 754 F2d 1420, 1426; Adv. Comm. Notes (1970).

25  Here, however, there is no question that the DPPs illegal conduct in violation of the Court order

26  here is both knowing and willful.

27      For a failure to obey a discovery order, the court has a palette of remedies and may issue an

28  order prohibiting the disobedient party from supporting or opposing designated claims or defenses,

or from introducing designated matters into evidence. FRCP 37(b)(2)(A)(ii); *Von Brimer v. Whirlpool Corp.* (9th Cir. 1976) 536 F2d 838, 844; *See Dale K. Barker Co., P.C. v. Valley Plaza* (10th Cir. 2013) 541 Fed.Appx. 810, 816 (failure to produce documents in discovery until just prior to trial justified sanction prohibiting their use in case-in-chief at trial); *See also, Sentry Ins. A Mut. Co. v. Brand Mgmt., Inc.* (E.D. NY 2013) 295 FRD 1, 5 (preclusion of evidence warranted due to willful obstruction and obfuscation).

In assessing whether to preclude a witness' testimony, courts consider: (1) the party's explanation for failure to comply with the discovery order; (2) the importance of the testimony of the precluded witness; (3) any prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance. *Reilly v. NatWest Markets Group Inc.* 2nd Cir. 1999) 181 F3d 253, 269; *see Amersham Pharmacia Biotech, Inc. v. Perkin-Elmer Corp.* (ND CA 2000) 190 FRD 644, 648 (exclusion sanction generally improper if no undue prejudice to the other side). Here, without evidence or excuse, the anemic reply to an order by a Federal Court Judge was basically that a deposition by March 31 is not convenient, so the witness will not be produced. The response can only be viewed as one that is borne of inexperience, ignorance or arrogance leading to the willful refusal to comply with a direct order of this Court.

The court may sanction the disobedient party by striking pleadings, staying further proceedings pending compliance, or terminating the action by default or dismissal. FRCP 37(b)(2)(A)(iii)- (iv); *Toth v. Trans World Airlines, Inc.* (9th Cir. 1988) 862 F2d 1381, 1385; *see SEC v. Razmilovic* (2nd Cir. 2013) 738 F3d 14, 26-27 (entering default judgment); *Universal Health Group v. Allstate Ins. Co.* (6th Cir. 2013) 703 F3d 953, 956 (dismissal of complaint for repeated violation of discovery orders).

**B.** **DPPs Failed To Comply With This Court's Order Compelling Them to Introduce Mr. Groves For Examination Before March 31, 2023: Significant Sanctions Should Follow**

DPPs Opposition should be stricken for the following reasons:

DPPs are in violation of the order of this Court. Because DPPs submitted three declarations of Christopher Groves, the Court ordered that DPPs must make Mr. Groves available for deposition

by defendants on or before March 31, 2023.  DPPs have now flatly failed and refused to comply with the Court order. The three declarations *were the very reason* that the Court ordered Mr. Groves' deposition. The DPPs' Opposition to the underlying Motion, which relies so heavily on the declaration of Christopher Groves should therefore be stricken. The mathematical calculus is quite simple: No deposition equals no DPP Opposition.

In this case, all four elements the courts consider in assessing whether to preclude a witness' testimony are satisfied.

### 1.     The Importance Of The Testimony Of The Precluded Witness

The testimony of Mr. Groves (who claims, but does not substantiate, his unavailability to appear by the Court ordered date) is very important, and the Court recognized that fact.  DPPs' Opposition heavily relies on Christopher Groves' opinions as expressed in his declaration. According to Mr. Groves' declaration submitted in support of DPPs' Opposition, he was specifically retained to "analyze the information typically contained in the "Composite Reports" produced by Plaintiff Radio City, Inc. ("Radio City") and to assess the effect on the parties' abilities to perform economic analysis with respect to liability, damages, and class certification *if data in those reports were missing*." [emph. added.]  Groves has opined that the reports that the DPPs have admitted to intentionally destroying have no impact on any such economic analysis.  Christopher Groves' knowledge of the predicate facts, experience, methods and manner of review the "Composite Reports" and other documents, as well as his opinions and analysis leading to the formation of his opinions, need to be tested at Deposition, as the Court recognized and therefore ordered.

### 2.     The Prejudice Suffered By Defendants As A Result Of Having To Prepare To Meet The New Testimony

It was imperative that Defendants be provided with the opportunity to examine Christopher Groves relating to the foundation and factual basis for his purported opinions as to the matters expressed in his three declarations in advance of the hearings pending before this Court in early April. Defendants are therefore substantially prejudiced due to their inability to take the deposition of Mr. Groves before the hearings. The DPPs have engaged in conduct calculated to deliver exactly

the result that they wanted to achieve: No deposition of Christopher Groves will take place before the Court hearings, despite an express Court order to the contrary.

### 3. DPPs Have No Reasonable Explanation For Failure To Comply With The Court Order

Although DPPs may claim that they cannot produce Christopher Groves for deposition by the time of the Court ordered date because of Mr. Groves' "prior scheduled travel," and therefore are not subject to sanctions under FRCP Rule 37(b)(2)(B), this "impossibility of performance" is the direct result of DPPs' long-term plan and course of conduct to refuse to provide a date for Christopher Groves' deposition, causing the irremediable and manufactured delay that led to the outcome desired by the DPPs. On February 29, 2023 – the day after DPPs filed their Opposition and Mr. Groves' declaration - and in accordance with this Courts' standing Order [ECF 169], Defendants repeatedly and conscientiously requested a date for the deposition of Christopher Groves, all to no avail. Had DPPs' Counsel not: (i) engaged in a course of conduct designed and intended to "run the clock" by refusing to provide a deposition date for so long a period of time; and, (ii) refused to meet and confer to address this issue and, (iii) refused to provide DPPs' portion of the letter brief to willfully preclude the issue from being timely adjudicated by the Court, Mr. Groves' alleged "scheduling conflict" would not have been an issue and Defendants would not have been prejudiced. DPPs' conduct in this matter is willful and done in bad faith. Even after the Court has ordered Christopher Groves to appear, DPPs counsel and Christopher Groves are still unwilling to allow the deposition, claiming "unavailability."  However, Christopher Groves could be available if he and the DPPs wanted him to be available. The excuse of "unavailability" in the face of a Federal Court order is both inexcusable and confounding. This Court has inherent power to issue sanctions for evidence preclusion, among other sanctions, based on the standard of law provided above.

### 4. It Is Confirmed That DPPs' Motion Will Be Heard On April 4 and Defendants' Motion for Terminating Sanctions Will Be Heard On April 6

On March 21, 2023, Defendants respectfully submitted a status update concerning the proceedings before this Court (the "March 13 Hearing") as they relate to the Defendants' production

of transactional data, and DPPs' Motion To Enforce Discovery Order. (ECF No. 360)  In its Motion, DPPs requested a further order that Defendants produce their transactional data, and issue sanctions for the alleged prejudice occasioned by alleged failure to earlier produce.  Setting aside the fact that the Defendants are in compliance with their production obligations, this Court addressed at the March 13 hearing the issues raised in the DPPs' Motion. Specifically, this Court allowed the Defendants until June 1 to complete all productions, including, specifically, the transactional data.

On March 24, 2023, DPPs responded to Defendants' Status Update (ECF No. 368), by selectively and misleading stating that Judge Davila only set a date for Defendants to complete their production of Chinese-language documents, and that this Court said nothing about Defendants' transactional data. (ECF No. 368, 1:19-21.)

On March 24, 2023, Judge DeMarchi, having reviewed DPPs' response to Defendants' Status Update, ordered that DPPs' Motion will be heard as scheduled on April 4, 2023. (ECF No. 369) As such, it appears that there is no possibility of a continuance of that hearing.  Neither should this Court continue the April 4 hearing and thereby condone the DPP misconduct.

The hearing on Defendants' Motion for Terminating Sanctions remains scheduled on April 6, 2023. Neither should this Court continue the April 6 hearing and thereby condone the DPP misconduct.

### C.   Christopher Groves' Declaration Must Be Stricken Due To His Refusal to Attend The Court-Ordered Deposition

This Court should strike the declaration of Christopher Groves in support of the DPPs' Opposition given that DPPs violated the Court Order and refused to make Christopher Groves available for a deposition before March 31.  The declaration (along with two other declarations of Mr. Groves[3]) are the very reason this Court ordered his deposition.  Without taking Christopher Groves' deposition, Defendants are crippled by a lack of information to fully object to the declarations, defend DPPs' Motion, and adequately prepared for Defendants' Motion for

---

[3] DPPs' arguments in its Motion heavily relied upon Christopher Groves' purported review of Celestron's transactional data, and opinions as set forth in his two declarations, which are solely based on Mr. Groves' knowledge and experience.

1    Terminating Sanctions.

2         Without the ability to test Mr. Groves upon oral examination at deposition the Court and the

3    Defendants are dealing with unsubstantiated and untested horseback opinions from a third party and

4    nothing more.  For example, in opposition  to Defendants' Motion for Terminating Sanctions, Mr.

5    Groves claims that the reports that were intentionally destroyed in December 2022 by DPPs are not

6    important, and Celestron's transactional data is the best source of information to calculate Radio

7    City's "lost money and customers."  It is unknowable what documents or information, if any, were

8    provided to Christopher Groves, upon which he relies, that would provide any credible foundation

9    allowing him to make any statements, let alone allowing for the formation of any opinions

10   concerning the newly referenced "Composite Reports" that have only recently been identified but

11   which have never been produced.

12        The basis on which any of Christopher Groves understandings or opinions testified to in his

13   declaration and the manner in which he came to have any "personal knowledge" of those Reports is

14   also completely unknown and unclear . It is also unknown whether, or to what extent, Mr. Groves,

15   received, reviewed or analyzed the subject "Composite Reports", which he then speculatively

16   asserts contain duplicative or immaterial information.  Further, the principles, and methods used by

17   Christopher Groves to develop his opinions presented in his declaration that any information

18   contained in the questionable "Composite Reports" can be found "elsewhere" in Radio City's

19   produced documents; or that the intentionally destroyed data contained therein is somehow

20   immaterial. It is unclear how Mr. Groves' understanding and opinions concerning his apparent

21   contention that sales data between Radio City and its own customers (that was admittedly destroyed

22   by Radio City) would, in the estimation of Mr. Groves not have a probative impact (very likely

23   favoring Defendants) concerning Radio City's allegation that it "lost money and customers" due to

24   Defendant's conduct. The fact of the admitted destruction of documents by DPPs that concerned

25   matters of material importance cannot be credibly minimized, and certainly not by a declarant who

26   failed to even show up in time to be tested at deposition as specifically ordered by the Court.

27        For this Court's information, with regard to the matter before Judge DeMarchi concerning

28   DPPs' Motion to be heard on April 4, the issues run a parallel path. The principles and methods

used by Christopher Groves to develop his opinions presented in both declarations in that matter are unknown. Christopher Groves' knowledge or expertise concerning the manner, method or means of reviewing Defendants' transactional data and searching millions of references for responsive information are also unknown.   Christopher Groves, without any valid predicate foundation, attempted to testify concerning the inner workings of document management platforms about which he has not established his experience, and knowledge.  It is unknown whether and/or how much Mr. Groves knows about Synteline (and its capabilities) and SAP (and its capabilities).  Mr. Groves opined that Defendants data is subject to "filters" that "have been applied by Defendants prior to production" and "Defendants could easily produce all their transactional data."  (ECF No. 318-1, Groves Decl., ¶10, ECF No. 345-1, Groves Decl., ¶11.) It is exceedingly sloppy and misleading to use the word "filter" in the subject declarations. It is also unclear what is meant by the statement that the data could have been produced by "simply producing all of the raw files used by the interface, including documentation of the relationship" and what exactly Groves believes Defendants could have done differently to achieve that goal.  (ECF No. 345-1, Groves Decl., ¶11.) It is also unclear how Christopher Groves reached the conclusion that "the cost was *incorrectly* reported at null or zero." [emph. added.]

The declaration of Christopher Groves in support of DPPs' Opposition must be stricken due to his failure and refusal to appear at a court-ordered deposition which was ordered and to precisely address, and for the sole purpose of addressing, these issues raised in his declaration.

**D.** **<u>All Arguments Supported by Christopher Groves' Declarations Must Be Stricken Given Mr. Groves' Refusal To Attend The Court-Order Deposition Prior to The Hearing.</u>**

DPPs' arguments supported by Mr. Groves' declaration, including but not limited to the followings, must be stricken:

1. *ECF No. 341, Opposition, 2:2-5*: "As to the sales and inventory reports, which are relevant to show the prices Radio City paid for Celestron telescopes, Defendants already have better versions of this data, along with duplicative data from Radio City. (Declaration of Christopher Groves ("Groves Decl.") ¶¶ 3, 9, 11.) Defendants have everything they need to defend every aspect of this case. (*Id.*)

2. *ECF No. 341, Opposition, 12:27-13:10*: "Many of the component reports that were aggregated to form the composite reports do not even arguably contain any data that would be material to analyzing liability, damages, or class certification. (Groves Decl. ¶¶ 6, 8(c)-(f).) The only relevant information in the composite reports is the prices that Radio City paid for Celestron telescopes. (Groves Decl. ¶ 8(a)-(b).) However, the sales data that Celestron already has is more granular and thus more useful than anything in a Radio City composite report. (*Id*. ¶¶ 3, 7, 9, 11.) For this reason, the composite reports are not even of use to Celestron. (*Id*.) In contesting class certification, Celestron will use its own data because, in addition to having more details than the Radio City data, it also reflects sales to different customers. (*Id*.) Thus, even if none of the data in the composite reports were available, Celestron would not be prejudiced in its ability to defend any aspect of this case. (*Id*. ¶¶ 9-11.) But, as shown above, that is not even the case; Celestron has virtually everything that it claims was irretrievably lost."

3. *ECF No. 341, Opposition, 13:18-22*: "Accordingly, even if Defendants wanted to use the sales data that Radio City produced instead of their own superior data, they already have all the material information that was in the composite reports. (Groves Decl. ¶ 9.) The disposal of the five composite reports will have no impact on Defendants' ability to contest class certification, damages, or liability. (Id. ¶¶ 3, 9, 11.)"

4. *ECF No. 341, Opposition, 13:27-14:2*: "For DPPs to gain a material advantage, the data would have to show wildly low prices in the few months at issue. (Groves Decl. ¶ 10.) But a review of Defendants' superior data set reveals no such anomalies. (*Id*.)" [footnote should be stricken as well]

5. *ECF No. 341, Opposition, 15:25-27*: "Nor could she, given that Defendants had superior information, and there were no anomalies in the four missing months out of many years of data that could even hypothetically advantage Radio City. (Groves Decl. ¶¶ 9-11.)"

In sum, the entire Opposition and the arguments in the Opposition are based on the "expert opinions" set forth presented without foundation or context in the declaration of Christopher Groves. Where there is no valid testimony of Christopher Groves, there is no basis in the Opposition.

## IV.    MONETARY SANCTIONS SHOULD ISSUE AGAINST BOTH CLIENT AND COUNSEL

"Under its 'inherent powers' a district court may also award sanctions in the form of attorneys' fees against a party or counsel who acts in bad faith, vexatiously, wantonly, or for oppressive reasons." *Leon v. IDX Sys. Corp*., 464 F.3d 961, 958 (9th Cir. 2006) (internal quotations omitted). "A party demonstrates bad faith by delaying or disrupting the litigation or hampering enforcement of a court order." *Id*. (internal quotations omitted).

Federal Rule of Civil Procedure ("FRCP") 37(d)(1)(A)(i) provides that "[t]he court where the action is pending may, on motion, order sanctions if ... a party ... fails, after being served with

proper notice, to appear for the person's deposition." Further, FRCP 37(d)(3) provides the types of sanctions available when a party fails to appear for his deposition and are further listed in 37(b)(2)(A)(i)-(vi). Among the sanctions available are terminating and evidentiary sanctions. The sanctions available to the district court are discretionary. *See United States v. Sumitomo Marine & Fire Ins. Co*., 617 F.2d 1365, 1369 (9th Cir. 1980). Instead of, or in addition to, the sanctions imposed, FRCP 37(d)(3) provides that the court must require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was not substantially justified, or other circumstances make an award of expenses unjust. When it has been determined that a party has willfully failed to comply with discovery, it is within the discretion of the trial court to dismiss the action.  *National Hockey League v. Metropolitan Hockey Club*, 427 U.S. 639 (1976). Dismissal is a proper sanction under Rule 37(d) for a party's failure to appear for his own deposition. *See Al Barnett & Son, Inc. v. Outboard Marine Corp*., 611 F.2d 32, 35 (3rd Cir. 1980); *see also  Young v. O'Reilly Automotive Stores, Inc.* (2018) WL 11483058.

Consistent with the DPPs' bad faith and Counsel for DPPs' pattern of bad faith conduct justifying the issuance of evidence sanctions, the Court should likewise award Defendants their attorneys' fees they incurred in connection with the preparation and prosecution of this Motion together with all fees and costs related to or associated with the attempt to obtain the deposition of Christopher Groves.  DPPs have willfully disregarded an explicit and direct order of this Court in failing and refusing to produce Christopher Groves for deposition.  For over a month, DPPs failed and refused to set a date for the Deposition of Christopher Groves.  DPPs knew Defendants did not have the luxury of time in scheduling the Groves deposition , and intentionally and willfully delayed the process and willfully obstructed Defendants from taking the deposition of Christopher Groves. DPPs' objective was to frustrate and prevent the  taking Mr. Groves' deposition prior to the April 4 hearing.  DPPs conveniently offered three days of purported availability after the April 4 hearing, which is a cynical act that makes the conduct of the DPPs all the more actionable The timing does not allow Defendants to depose Groves (in violation of the Court Order), and Defendants are thus unable to adequately prepare for the hearing on DPPs' Motion. DPPs' failure to comply with the

1  Court Order is inexcusable. Monetary sanctions are warranted pursuant to FRCP 37(d)(3).

2       DPPs and its Counsel have joint and several liability for the payment of monetary sanctions

3  in this situation.  In the event the Court determines that such fees should be awarded, Defendants

4  respectfully request that they be permitted to submit Declarations, or such other documentation that

5  the Court deems necessary, to substantiate the amount of their respective fees.

6       This Court should further issue a bench warrant and an order to show cause to bring

7  Christopher Groves before this Court to testify as to why the Court's order that he provide testimony

8  by March 31 was violated.

9  **V.**    **<u>CONCLUSION</u>**

10       For all of the foregoing reasons, Defendants respectfully request that this Court: (i) strike

11  the entirety of Direct Purchaser Plaintiffs' Opposition To Defendants' Motion For Terminating

12  Sanctions Against DPP Putative Class For Intentional And Irremediable Destruction Of Relevant

13  Evidence By The Sole Putative Class Representative (the "DPPs' Opposition"), (ii) strike the

14  entirety of the declaration of Christopher Groves, (iii) strike all arguments supported by the

15  declaration of Christopher Groves, (iv) order sanctions to compensate Defendants for the costs

16  incurred in bringing this Motion and all costs related to attempting to obtain the deposition of

17  Christopher Groves, and (v) issue a bench warrant and an order to show cause to bring Christopher

18  Groves before this Court to testify as to why the Court's order that he provide testimony by March

19  31 was violated.

20  DATED:  March 27, 2023        WEINBERG GONSER FROST LLP

21                 By:      */s/ Christopher Frost*

22                    CHRISTOPHER FROST

23                    Attorneys for Defendants,
Dave Anderson; Celestron Acquisition, LLC; Joe Lupica; Nantong Schmidt Opto-Electrical

24                    Technology Co. Ltd.; Olivon Manufacturing Co. Ltd.; Olivon USA; Pacific Telescope Corp.; David

25                    Shen; Suzhou Synta Optical Technology Co., Ltd.;

26                    SW Technology Corporation; Synta Canada International Enterprises Ltd.; Synta Technology

27                    Corp.

28