1

2

3

4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6

SAN JOSE DIVISION

7

8    RADIO CITY, INC., et al.,

9              Plaintiffs,

10        v.

11   CELESTRON ACQUISITION, LLC, et al.,

12             Defendants.

13

14

Case No.   5:20-cv-03642-EJD

**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR TERMINATING SANCTIONS; GRANTING IN PART AND DENYING IN PART MOTION TO STRIKE; DENYING AS MOOT ADMINISTRATIVE MOTION FOR LEAVE TO FILE SUR-REPLY; GRANTING MOTION FOR LEAVE TO FILE AMENDED COMPLAINT**

Re: ECF Nos. 319, 322, 372, 381

15

16    Pending before the Court are Defendants' motions for terminating sanctions and to strike,

17   motion for leave to file sur-reply, and Plaintiff's motion for leave to file a fourth amended

18   complaint ("FAC").  The Court addresses these motions concurrently because they arise from the

same set of facts.  The Court heard oral arguments on Defendants' motion for terminating

19   sanctions and motion to strike on April 6, 2023.  The Court finds Plaintiff's motion appropriate for

20   decision without oral argument pursuant to Civil Local Rule 7-1(b).

21    For the reasons discussed herein, the Court GRANTS IN PART AND DENIES IN PART

22   Defendants' motion for terminating sanctions and motion to strike at ECF Nos. 322 and 372;

23   DENIES AS MOOT Defendants' administrative motion for leave to file a sur-reply at ECF No.

24   319; and GRANTS Plaintiff's motion for leave to file an amended complaint at ECF No. 381.

25

26

27   Case No.: 5:20-cv-03642-EJD
ORDER GRANTING IN PART & DEN. IN PART MOT. FOR TERMINATING SANCTIONS;
28   GRANTING IN PART & DEN. IN PART MOT. TO STRIKE; DEN. AS MOOT ADMIN. MOT.
FOR LEAVE TO FILE SUR-REPLY; GRANTING MOT. FOR LEAVE TO FILE AM. COMPL.

United States District Court
Northern District of California

# I.      BACKGROUND

Discovery in this putative antitrust class action has been a lengthy and arduous journey, with both parties engaging in needless inappropriate and uncooperative conduct resulting in numerous discovery disputes before the Court.  The facts giving rise to these motions are regrettably exemplary of this conduct.

Defendants Celestron Acquisition, LLC; David Shen; Suzhou Synta Optical Technology Co., Ltd.; Nantong Schmidt Opto-Electrical Technology Co. Ltd.; Synta Technology Corp.; SW Technology Corporation; Synta Canada International Enterprises Ltd.; Olivon Manufacturing Co. Ltd.; Joe Lupica; Dave Anderson; Olivon USA; and Pacific Telescope Corp. (collectively "Moving Defendants") move for terminating sanctions and to strike Plaintiff's opposition to Defendants' motion following the deposition of Maline Fish, the co-owner of the now-defunct company, Radio City, LLC ("Radio City"), the sole Named Plaintiff in this action.  *See* Third Am. Compl. ("TAC"), ECF No. 188.  According to the Moving Defendants, Ms. Fish admitted that she destroyed evidence in December 2022 during her deposition on February 1, 2023.  *See* Mot. for Terminating Sanctions ("Mot. for Sanctions") 11, ECF No. 322.

In the months leading up to Ms. Fish's deposition, the parties met and conferred multiple times throughout November and December 2022.  A recurring issue at these meetings was whether Plaintiff had produced all responsive information to Defendants' discovery requests.  Defendants' requests for production ("RFP") sought Radio City's transaction-level sales data, including pricing, product numbers (or SKUs), profit margins, customer information and other purchase and sales information.  Decl. of Shauna A. Izadi ¶ 29, ECF No. 33-1; *see also* ECF No. 322-5, Ex. 4.  Defendants' RFP Nos. 166 and 170 specifically requested "[a]ll documents sufficient to identify all of your customers since January 1, 2010" and documents relating to "direct or indirect customers' resale of any product manufactured, supplied or distributed by defendants."  ECF No. 322-13, Ex. 12.

After receiving responses to these RFPs, Defendants repeatedly expressed concern over

United States District Court
Northern District of California

1   gaps in customer and sales information.  *See e.g.*, ECF No. 322-19, Ex. 18; 11/01/2022 Tr. 61:10–

2   17, ECF No. 322-17, Ex. 16 ("We have incomplete records concerning you customers."); Order re

3   January 6, 2023 Discovery Dispute ("January 13 Order"), ECF No. 296 ("Defendants complain

4   that DPPs have not been forthcoming about the sources of responsive documents and their search

5   for responsive documents, and that DPPs document production to date is not sufficient to identify

6   all of DPPs customers.").  In fact, Defendants served five meet and confer letters concerning

7   deficiencies in production and inquiring into Plaintiff's search protocol.  Mot. for Sanctions at 16.

8          On numerous occasions BraunHagey & Borden LLP, interim lead counsel (hereinafter,

9   "Lead Counsel"), assured Defendants that they had fulfilled their obligations and produced all the

10  requested documents in their possession.  For example, during the parties meet and confer on

11  November 1, 2023, Lead Counsel stated, "I believe you have everything that Radio City has" in

12  response to Defendants' inquiry whether plaintiff produced "the full list of the customers to whom

13  Radio City sold telescopes."  11/01/2022 Tr. 30:13–19, 31:1–7.  On November 17 and 21, Lead

14  Counsel again confirmed that Plaintiff produced all hard copies of purchase orders and invoices in

15  their possession.  ECF No. 322-20, Ex. 19.  On December 1, in response to Defendants'

16  November 18 and 21 letter briefs, Lead Counsel contended that Defendants inaccurately

17  "assert[ed] that DPPs have not produced transactional data responsive to Defendants' RFPs" and

18  assured Defendants' counsel that "we have provided all relevant hard-copy documents in Radio

19  City's possession, custody, or control," and that "all potentially relevant files have been collected

20  and reviewed in accordance with Radio City's discovery obligations and the parties' agreements,

21  as outlined above."  ECF No. 26, Ex. 25.

22         On January 6, 2023, the parties appeared before Magistrate Judge DeMarchi to resolve

23  their dispute concerning Plaintiff's response to Defendant's RFP No. 170.  Judge DeMarchi issued

24  the following Order:

25             For the avoidance of doubt, the Court orders DPPs to produce
               documents sufficient to identify all customers since January 1, 2010,
26             and overrules DPPs' written objections to this request. It is not a
               sufficient response to this RFP No. 170 for DPPs to disclose

27  Case No.: 5:20-cv-03642-EJD
    ORDER GRANTING IN PART & DEN. IN PART MOT. FOR TERMINATING SANCTIONS;
28  GRANTING IN PART & DEN. IN PART MOT. TO STRIKE; DEN. AS MOOT ADMIN. MOT.
    FOR LEAVE TO FILE SUR-REPLY; GRANTING MOT. FOR LEAVE TO FILE AM. COMPL.

1
2
3
4
5
6
7

purchasing documents or transaction-related documents that do not identify customers. If responsive information is known to exist in the form of ESI, such as a database that may be queried or a spreadsheet maintained on a computer, DPPs must produce that information, regardless of whether it has been captured by agreed search terms. In the circumstances DPPs describe (i.e. small business, enterprise software system destroyed by fire), *the Court expects counsel for DPPs to ask their clients or client representatives to assist in locating responsive sources of information*. If DPPs ultimately determine that hardcopy sales reports and sales invoices reflecting transactions with customers are the only surviving records that are responsive to RFP No. 170, then DPPs will have satisfied their obligations with respect to this request by producing those documents.

8

January 13 Order at 2 (emphasis added).

9
10
11

Pursuant to Judge DeMarchi's Order, Plaintiff produced approximately 27,000 additional documents ten days later which had been obtained from Dan and Maline Fish. Izadi Decl. ¶ 45. On January 31, 2023, at a subsequent discovery hearing before Judge DeMarchi, Lead Counsel represented to the Court that they had "produced everything." *Id.* ¶ 46.

12
13
14
15
16
17
18

However, the parties' dispute did not end there. On February 1, 2023, Defendants deposed Radio City's Maline Fish. Mot. for Sanctions at 23. During her deposition, Ms. Fish admitted to disposing of boxes containing discoverable, relevant information covering the period of July 2014 through December 2016 sometime shortly before Christmas of 2022. *Id.* The boxes included UPS shipping reports and documents relating to sales records and reports, which contained item numbers, pricing, margins, and other relevant information. *Id.* at 11. Ms. Fish confirmed that she had not provided these documents to counsel at any time before they were destroyed. *Id.* at 9.

19
20
21
22
23

Tensions between the parties have continued to build since Ms. Fish's deposition. In the February 10, 2023 joint status report, Plaintiff conceded that Ms. Fish "disposed of a handful of redundant documents last year," but buffered this admission by noting that Ms. Fish did so "in the ordinary course of her business practices." ECF No. 320 at 2. Defendants contend that Radio City is no longer an adequate class representative due to Ms. Fish's conduct. *Id.*

24
25
26

On February 9, 2023, Defendants filed an administrative motion seeking leave to file a sur-reply to the pending motion to dismiss Plaintiff's third amended complaint ("TAC") on the

27
28

United States District Court
Northern District of California

1   grounds that Ms. Fish also admitted during her deposition that she was aware that she had a claim

2   against Defendants since 2006, and thus the claims occurred outside the statute of limitations.

3   ECF No. 319.  Days later, Moving Defendants also moved for terminating sanctions.

4           Plaintiff opposes terminating sanctions, asserting that sanctions would be inequitable to the

5   proposed class.  Plaintiff's Opp'n to Defs.' Mot. for Terminating Sanctions Against Pl. ("Opp'n to

6   Mot. For Sanctions"), ECF No. 341.  Plaintiff's opposition to the motion for terminating sanctions

7   includes a declaration from Christopher Groves, who Plaintiff retained to provide economic

8   analysis in connection with the motion for terminating sanctions.  *See* Decl. of Christopher Groves

9   in Support of Pl.'s Opp'n to Defs.' Mot. for Terminating Sanctions ("Groves Decl."), ECF No.

10  344-1.  Specifically, Mr. Groves' report assesses the impact of the spoliated evidence "on the

11  parties' abilities to perform economic analysis with respect to liability, damages and class

12  certification if data in those reports were missing."  *Id.* ¶ 3.

13          In their motion for sanctions, Defendants assert that they reached out to Lead Counsel

14  multiple times to schedule Mr. Groves' deposition to no avail.  Lead Counsel refused to make Mr.

15  Groves available and objected to producing him until after the Undersigned issued an order

16  regarding the parties' overarching deposition disputes.  *See* Order re January 6, 2023 Discovery

17  Dispute, ECF No. 296.  On March 22, 2023, Judge DeMarchi ordered Plaintiff to "make Mr.

18  Groves available for deposition by defendants on or before March 31, 2023."  Order re March 21,

19  2023 Discovery Dispute re Groves Deposition ("March 21 Order"), ECF No. 366.  Plaintiffs were

20  ordered to "advise defendants by no later than noon March 23, 2023 of three days and times

21  during which Mr. Groves is available for deposition."  *Id.*

22          Plaintiff did not comply with the Court's Order.  As a result, Defendants did not have the

23  opportunity to depose Mr. Groves to determine the foundation and factual basis for his opinions in

24  advance of the April 6, 2023 hearing before the Undersigned.  Defendants therefore ask the court

25  to strike his declaration because Defendants were not afforded the opportunity to meaningfully

26  oppose his declaration.  *See* Defs.' Mot. to Strike Pl.'s Opp'n ("Mot. to Strike") 3, ECF No. 372.

27  Case No.: 5:20-cv-03642-EJD

28  ORDER GRANTING IN PART & DEN. IN PART MOT. FOR TERMINATING SANCTIONS;
    GRANTING IN PART & DEN. IN PART MOT. TO STRIKE; DEN. AS MOOT ADMIN. MOT.
    FOR LEAVE TO FILE SUR-REPLY; GRANTING MOT. FOR LEAVE TO FILE AM. COMPL.

United States District Court
Northern District of California

1    The Court heard oral arguments on both motions on April 6, 2023.

2          Around this time, Plaintiff moved for leave to file a fourth amended complaint adding

3    three additional class representatives.  *See* Pl.'s Mot. for Leave to File Am. Compl. (Mot. for

4    Leave to File Am. Compl."), ECF No. 381.  Defendants oppose this request.  *See* Opp'n to Mot.

5    for Leave to File Am. Compl. (Opp'n to Mot. for Leave to File Am. Compl."), ECF No. 396.

6                                              * * *

## II.     MOTION FOR TERMINATING SANCTONS

8          Defendants move for terminating sanctions based on Plaintiff's spoliation of evidence.

9    Plaintiff does not dispute that Radio City's Maline Fish destroyed evidence.

10         District courts have the authority to sanction litigants for discovery abuses pursuant to the

11   Federal Rules of Civil Procedure and the "inherent power of the federal courts" to prevent abuse

12   of the judicial process.  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991); *see also In re*

13   *Matter of Yagman*, 796 F.2d 1165, 1187 (9th Cir. 1986).  In the Ninth Circuit, sanctions are

14   generally appropriate for disobedient conduct that is within the litigant's control.  *Id.*  Even where

15   a litigant eventually produces documents, "[b]elated compliance with discovery orders does not

16   preclude the imposition of sanctions."  *N. Am. Watch Corp. v. Princess Ermine Jewels*, 786 F.2d

17   1447, 1451 (9th Cir. 1986).

18         Federal Rule of Civil Procedure 37(b)(2), in relevant part, authorizes sanctions where a

19   party "fails to obey an order to provide or permit discovery," permitted that "the established issue

20   bears a reasonable relationship to the subject of discovery that was frustrated by sanctionable

21   conduct."  *Navellier v. Sletten*, 262 F.3d 923, 947 (9th Cir. 2001).  The standard for sanctionable

22   misconduct under Rule 37 is one of objective reasonableness.  *Network Appliance, Inc. v. Bluearc*

23   *Corp.*, No. 03-CV-5665 MHP, 2005 WL 1513099, at *2 (N.D. Cal. June 27, 2005), *aff'd*, 205 F.

24   App'x 835 (Fed. Cir. 2006).

25         In addition to Rule 37 sanctions for violation of a court order, the Ninth Circuit has

26   recognized a district court's "inherent discretionary power to make appropriate evidentiary rulings

27   Case No.: 5:20-cv-03642-EJD

28   ORDER GRANTING IN PART & DEN. IN PART MOT. FOR TERMINATING SANCTIONS;
     GRANTING IN PART & DEN. IN PART MOT. TO STRIKE; DEN. AS MOOT ADMIN. MOT.
     FOR LEAVE TO FILE SUR-REPLY; GRANTING MOT. FOR LEAVE TO FILE AM. COMPL.

United States District Court
Northern District of California

in response to the destruction or spoliation of relevant evidence" which "includes the power where appropriate to order the exclusion of certain evidence." *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993).  A court may therefore sanction a party who prejudices their opponent through destruction of evidence when the party had reason to know such evidence was relevant to the litigation.  *Id.*  "A trial court's discretion regarding the form of a spoliation sanction is broad, and can range from minor sanctions, such as the awarding of attorneys' fees, to more serious sanctions, such as dismissal of claims or instructing the jury that it may draw an adverse inference." *Apple Inc. v. Samsung Elecs. Co.*, 881 F. Supp. 2d 1132, 1135 (N.D. Cal. 2012).  The party who fails to comply with its discovery obligations bears the burden of showing substantial justification or that other sanctions would be unjust.  *Hyde & Drath v. Baker*, 24 F.3d 1162, 1171 (9th Cir. 1994).

Defendants request that the Court levies terminating sanctions, or, in the alternative, issue an irrebuttable adverse inference instruction, as well as monetary sanctions.  The Court first addresses whether terminating sanctions are appropriate.

### A.      Terminating Sanctions

Sanctions—particularly terminating sanctions—should be used sparingly.  "[S]anctions are appropriate only in extreme circumstances and where the violation is due to willfulness, bad faith, or fault of the party." *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 905 (9th Cir. 2002) (quotations and citations omitted).  With these guardrails in mind, the Ninth Circuit developed a test to determine when terminating sanctions are appropriate.  The moving party must show that: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006) (quotations and citations omitted).  Although a district court need not examine each factor, the court must find "willfulness, fault, or bad faith" to sanction dismissal of an action.  *Id.*  The court must also consider less severe alternatives to dismissal.  *Id.*

Case No.: 5:20-cv-03642-EJD
ORDER GRANTING IN PART & DEN. IN PART MOT. FOR TERMINATING SANCTIONS;
GRANTING IN PART & DEN. IN PART MOT. TO STRIKE; DEN. AS MOOT ADMIN. MOT.
FOR LEAVE TO FILE SUR-REPLY; GRANTING MOT. FOR LEAVE TO FILE AM. COMPL.
7

United States District Court
Northern District of California

### 1.   Willfulness, Fault, or Bad Faith

As an initial matter, the Court finds that Plaintiff acted willfully, with fault, and/or in bad faith by consciously disregarding its obligations to preserve relevant evidence during the course of litigation.  *See, e.g.*, *Apple*, 881 F. Supp. 2d at 1147 (explaining that "willfulness" can be shown by the "conscious disregard" of a party's obligations); *Hamilton v. Signature Flight Support Corp.*, No. 05-CV-0490 CW (MEJ), 2005 WL 3481423, at *7 (N.D. Cal. Dec. 20, 2005) (collecting cases).  "The duty to preserve evidence [] includes an obligation to identify, locate and maintain, information that is relevant to specific, predictable, and identifiable litigation."  *Apple*, 881 F. Supp. 2d at 1136 (internal quotation and citation omitted).  "The duty to preserve also includes information in the possession of those employees likely to have relevant information—the 'key players' in the case."  *Brown v. Albertsons*, LLC, No. 16-CV-01991-JADPAL, 2017 WL 1957571, at *5 (D. Nev. May 11, 2017) (internal quotations and citation omitted).  Lead Counsel does not dispute the relevance of the destroyed evidence nor deny that Plaintiff had an ongoing duty to preserve the evidence at issue.

The record is replete with assurances from Lead Counsel that they would follow up with their client to confirm no records are missing and, later, representations that they have produced everything in Plaintiff's possession.  These representations were made over the course of multiple months.  From late October to mid-December 2022, Lead Counsel denied accusations that they had not produced all relevant discoverable documentation and simultaneously failed to communicate with their client regarding evidence production and preservation.[1]  The Court finds it particularly troubling that Lead Counsel represented they only first learned of the destruction of evidence by their client following relatively straightforward questioning by Defendants during Ms. Fish's deposition, where Ms. Fish recalled that counsel did not ask her to produce this information and that she "didn't know" that she needed to produce it.  M. Fish Dep., ECF No. 322-2, Ex. 1 at

---

[1] Ms. Fish's declaration states that she had approximately 8 or 9 conversations with Lead Counsel about documents and discovery between November 2022 and the date of her deposition in early February 2023.  Decl. of Maline Fish ("Fish Decl.") ¶ 15, ECF No. 341-3.

121:11–16, 121:24–122:1.  Ms. Fish also noted that there were additional potentially relevant documents still in her home that she has not provided to counsel, such as inventory reports.  *Id.* at 120:17–121:16.  Lead Counsel's failure to produce these documents in the first instance and failure to ensure that their client preserved relevant evidence during litigation is inexcusable.

Indeed, Ms. Fish knew or should have been aware of her duty to preserve this evidence.  A "party's destruction of evidence qualifies as willful spoliation if the party has 'some notice that the documents were potentially relevant to the litigation before they were destroyed.'"  *Leon*, 464 F.3d at 959 (citation omitted).  When asked why she did not produce the spoliated evidence to counsel and instead destroyed it, Ms. Fish responded that she "gave [] counsel what they asked for, and I don't recall them asking."  M. Fish Dep., at 120:1–4.  At no point during her deposition did Ms. Fish state that she thought the documents were irrelevant to the litigation, nor did she provide any other justification that would suggest she did not understand her duty to preserve the evidence.  In fact, in her declaration, Ms. Fish states that she "understood that Radio City needed to save its documents and turnover any documents that related to its telescope business in this case."  Fish Decl. ¶ 9.  Despite this understanding, Ms. Fish did not check with Lead Counsel before disposing of the documents nor did she inform them after she disposed of them.  *Id.* ¶ 19.  Destroying evidence during litigation simply because counsel "did not ask for it" is not accidental conduct; Plaintiff consciously disregarded her duties to preserve evidence.  Lead Counsel either did not advise her of the importance of this evidence or neglected their obligation to secure the evidence.

## 2.    *Leon* Factors

Turning to the *Leon* test, the first two factors—the public's interest in expeditious resolution of litigation and the court's need to manage its dockets—tend to favor terminating sanctions where the misconduct has delayed the action's resolution.[2]  *Facebook, Inc. v. OnlineNIC*

---

[2] Conversely, "[t]he fourth factor – 'public policy favoring disposition of cases on their merits' – usually cuts against sanctions."  *Facebook, Inc.*, 2022 WL 2289067, at *10.  An exception is where prejudice to the moving party "is so great that it outweighs this factor."  *WeRide Corp. v. Kun Huang*, No. 18-CV-07233-EJD, 2020 WL 1967209, at *11 (N.D. Cal. Apr. 24, 2020).

1   *Inc.*, No. 19-CV-07071-SI (SVK), 2022 WL 2289067, at *10 (N.D. Cal. Mar. 28, 2022) (citing

2   *Comput. Task Grp. Inc. v. Brotby*, 364 F.3d 1112, 1115 (9th Cir. 2004)).  Here, Plaintiff's

3   misconduct has unnecessarily extended discovery that resulted in additional motion practice and

4   hearings before both Judge DeMarchi and the Undersigned.

5          The third and most important *Leon* factor "looks to whether the [spoliating party's] actions

6   impaired the [non-spoliating party's] ability to go to trial or threatened to interfere with the

7   rightful decision of the case."  *Leon,* 464 F.3d at 959 (alterations in original).

8              Courts in the Ninth Circuit have found prejudice where another
               party's failure to produce documents forced the non-spoliating party
9              to "rely on incomplete and spotty evidence," *Anheuser-Busch*, 69
               F.3d at 354; where the plaintiff engaged in a mass deletion of 2,200
10             files from his work computer during litigation, *Leon*, 464 F.3d at 959–
               60; and where a defendant engaged in mass destruction of emails and
11             email accounts, *WeRide*, 2020 WL 1967209, at *10–11.

12   *Facebook, Inc.*, 2022 WL 2289067, at *10.

13         Defendants argue the spoliation of 18 months of sales reports and UPS shipping reports

14   may impair their defense.  The allegations in this case involve claims of price-fixing, dividing the

15   market, restricting supply, charging monopolistic prices, and stealing competitor pricing

16   information.  *See* Third Am. Compl. ¶¶ 2, 17, 49, 50, 85, 115-18, ECF No. 188.  Plaintiff alleges

17   that, as a result of these conspiracies, Defendants charged purchasers "supracompetitive" and

18   "unlawfully inflated" prices.  *Id.* ¶¶ 3, 23.  Information concerning Plaintiff's sales, inventory,

19   customers, purchases, costs, and margins are therefore relevant to any defense against these

20   allegations.  Indeed, the Ninth Circuit recognizes that missing or "spotty" evidence can impair a

21   party's defense.  *See Anheuser-Busch, Inc. v. Nat. Beverage Distribs.*, 69 F.3d 337, 354 (9th Cir.

22   1995) (affirming the district court's finding that the spoliation resulted in plaintiff relying on

23   "spotty evidence" which "severely impaired" plaintiff's defense).

24   _____

25   Defendants argue that the fourth factor weighs in their favor because Radio City destroyed the
     only copies of documents that are relevant to the issues in this case and vital to their defense.  Mot.
26   for Sanctions at 27.  Because the Court finds that the prejudice to Defendants do not rise to the
     requisite level to warrant terminating sanctions, the fourth factor does not weigh in Defendants'
27   favor.

28   ORDER GRANTING IN PART & DEN. IN PART MOT. FOR TERMINATING SANCTIONS;
     GRANTING IN PART & DEN. IN PART MOT. TO STRIKE; DEN. AS MOOT ADMIN. MOT.
     FOR LEAVE TO FILE SUR-REPLY; GRANTING MOT. FOR LEAVE TO FILE AM. COMPL.

1    Ms. Fish admitted that not all the "specifics" of the destroyed reports are included in the

2    records that the Defendants were given, noting that much of the information contained in the

3    destroyed reports is probably available in the macro in other reports but not in the "granular,"

4    which could only be found in the destroyed reports.  M. Fish Depo., ECF No. 322-2 at 127:18–

5    128:9.  Plaintiff attempts to argue that the destruction was "harmless" because Defendants "have

6    not been deprived of any material documents."  Opp'n at 12.  Generally, where evidence has been

7    destroyed, "there is no way to know what the spoliated evidence would have revealed."  *Apple*,

8    881 F. Supp. 2d at 1150; *see also Facebook, Inc.*, 2022 WL 2289067, at *10 ("Any moving party

9    is at a disadvantage to show prejudice because a moving party who seeks evidence cannot prove

10   that relevant evidence existed but was destroyed.") (quoting *John v. Cnty. of Lake*, No. 18-CV-

11   06935-WHA (SK), 2020 WL 3630391 at *7 (N.D. Cal. July 3, 2020)).

12   Plaintiff characterizes the spoliated evidence as "composite reports" of financial

13   information which purportedly contains information that is available to Defendants in other forms,

14   such as purchasing invoices and annual sales reports from Celestron, Meade, and Orion.  *Id.* at 13.

15   During her deposition, Ms. Fish described the destroyed documents as monthly computer records

16   for five different categories: (1) open invoice reports, (2) register reports, (3) inventory reports, (4)

17   used and consignment report, and (5) used sale report.  M. Fish Dep. at 109:2–7.  She stated that

18   the "used and consignment report" showed the used product that was sold in the store (as opposed

19   to the new inventory which is included in the "inventory report").  *Id.* at 109:10–14, 22–25.  When

20   asked if there was any way to retrieve copies of the information contained in the "register report"

21   and the "financial report" after it had been destroyed, Ms. Fish responded in the negative and

22   confirmed that she had not provided copies of the reports to counsel before she destroyed them,

23   although she noted that the information contained in those reports are available in other forms,

24   such as financial statements.  *Id.* at 110:21–111:4; 111:12–112:3.

25   Ms. Fish also confirmed that the information contained in the "inventory report" and the

26   "used sale report" cannot be found elsewhere.  *Id.* at 116:8–117:24 (describing the information as

27   Case No.: 5:20-cv-03642-EJD
     ORDER GRANTING IN PART & DEN. IN PART MOT. FOR TERMINATING SANCTIONS;
28   GRANTING IN PART & DEN. IN PART MOT. TO STRIKE; DEN. AS MOOT ADMIN. MOT.
     FOR LEAVE TO FILE SUR-REPLY; GRANTING MOT. FOR LEAVE TO FILE AM. COMPL.
     11

United States District Court
Northern District of California

being "lost forever").  Ms. Fish admitted that she did not look at the dates on the documents before she destroyed them.  *Id.* at 118:19–22.  Regarding the UPS reports, Ms. Fish noted that, while the destroyed reports would include relevant customer information, Radio City rarely shipped telescopes.  *Id.* at 126:2–11.

In sum, while Defendants have shown that they will be prejudiced by the spoliation of evidence, Defendants have fallen short of showing that this prejudice meets the high standard that would warrant terminating sanctions.  For example, in *WeRide*, the court found that the destruction of evidence was "so sweeping" that the action could not be resolved on the merits.  *WeRide Corp.*, 2020 WL 1967209, at *11.  The spoliation of evidence in *WeRide* involved the destruction of almost a years' worth of emails through the deletion of email accounts and company-wide deletion of emails on its servers, alteration or deletion of misappropriated source code, and wiping all ESI from numerous electronic devices.  *Id.* at *3–8.  The evidence spoliated in *WeRide* was "critical" to the moving party's trade secret claims such that "spoliation of this source code [] robbed WeRide of any chance to test AllRide's offered theory of independent development and to affirmatively prove its case."  *Id.* at *14.  Defendants have not convincingly shown that the evidence destroyed by Ms. Fish is nearly as sweeping or as detrimental to their defense as was the circumstance in *WeRide*.

Accordingly, the Court finds that imposition of terminating sanctions is inappropriate under *Leon*.  *See Compass Bank v. Morris Cerullo World Evangelism*, 104 F. Supp. 3d 1040, 1059 (S.D. Cal. 2015) ("The risk of prejudice to the party seeking sanctions and the availability of less drastic sanctions are the decisive factors in the Ninth Circuit's test to determine whether case dispositive sanctions are justified.").

### B.    Less Drastic Sanctions

Although Defendants contend that lesser sanctions would not sufficiently cure the prejudice to Defendants, they alternatively propose that the Court issue an irrebuttable inference instruction, in addition to attorneys' fees in connection with the preparation and prosecution of this

1    motion.  Mot. for Sanctions at 30–31.  Plaintiff argues that terminating sanctions or the "lesser

2    sanctions" like an adverse inference instruction would be inequitable and prejudicial to unnamed

3    members of the class.  Opp'n at 17.

4         Sanctions levied for the destruction of evidence "should be designed to: (1) deter parties

5    from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who

6    wrongfully created the risk; and (3) restore the prejudiced party to the same position he would

7    have been absent the wrongful destruction of evidence by the opposing party."  *Apple*, 881 F.

8    Supp. 2d at 1136 (internal quotations and citations omitted).

9              **1.    Attorneys' Fees**

10        "[A] district court may [] award sanctions in the form of attorneys' fees against a party or

11   counsel who acts in bad faith, vexatiously, wantonly, or for oppressive reasons," such as where a

12   party has spoliated evidence.  *Leon*, 464 F.3d at 958.  Similarly, violation of a court order under

13   Rule 37(b) permits the Court "order the disobedient party, the attorney advising that party, or both

14   to pay the reasonable expenses, including attorney's fees, caused by the failure. . . ."  Fed. R. Civ.

15   P. 37(b)(2)(C).

16        Both Plaintiff's and Lead Counsel's conduct provides a sufficient basis for awarding fees.

17   For the reasons already discussed, Plaintiff willfully failed to preserve relevant evidence by

18   destroying boxes of business documents spanning 18-months and failing to timely produce

19   approximately 27,000 documents.  Lead Counsel also failed to properly oversee discovery by

20   failing to locate relevant discoverable information and failing to preserve and timely produce that

21   information.  "While, of course, it is true that counsel need not supervise every step of the

22   document production process and may rely on their clients in some respects, counsel is responsible

23   for coordinating her client's discovery efforts."  *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422,

24   435 (S.D.N.Y. 2004) (internal quotations and citation omitted).  The Court finds that attorneys'

25   fees arising from the preparation and litigation of this motion are appropriate based on this

26   misconduct, as well as to deter future misconduct and restore Defendants to the position they

27   Case No.: 5:20-cv-03642-EJD

28   ORDER GRANTING IN PART & DEN. IN PART MOT. FOR TERMINATING SANCTIONS;
     GRANTING IN PART & DEN. IN PART MOT. TO STRIKE; DEN. AS MOOT ADMIN. MOT.
     FOR LEAVE TO FILE SUR-REPLY; GRANTING MOT. FOR LEAVE TO FILE AM. COMPL.
     13

1  would have been in had Plaintiff faithfully fulfilled its discovery obligations. *Id.* at 437 (ordering

2  the payment of the costs of the motion for sanctions).

3    An assessment of attorneys' fees shall be determined separately once Defendants identify

4  the amount and support for monetary sanctions it seeks to recover.

5    **2.    Disqualification of Radio City as Class Representative**

6    While Defendants do not seek this sanction specifically, the Court considers

7  disqualification of the named plaintiff. Plaintiff asks the Court to deny Defendants' request for

8  terminating and evidentiary sanctions as inequitable and unduly prejudicial to the class. Opp'n to

9  Mot. for Sanctions at 16–17. Plaintiff suggests that a more appropriate remedy would be to order

10  Plaintiff to substitute a new class representative. *Id.* at 16. The Court agrees.

11    Courts in the Ninth Circuit have addressed issues regarding the adequacy of named

12  plaintiffs as class representatives or the adequacy of class counsel prior to class certification. *See*

13  *Testone v. Barlean's Organic Oils*, LLC, No. 19-CV-169 JLS (BGS), 2021 WL 22611, at *5 (S.D.

14  Cal. Jan. 4, 2021) (collecting cases). Many courts in this district have declined to find inadequacy

15  of a class representative at the pleading stage, deferring such findings until the class certification

16  stage. *See, e.g.*, *Huricks v. Shopkick, Inc.*, No. 14-CV-2464 MMC, 2014 WL 4954662, at *2–3

17  (N.D. Cal. Oct. 1, 2014); *Perez v. State Farm Mut. Auto. Ins. Co.*, No. 06-CV-01962 JW, 2011

18  WL 8601203, at *2–3 (N.D. Cal. Dec. 7, 2011); *Krzesniak v. Cendant Corp.*, No. 05-CV-05156

19  MEJ, 2007 WL 640594, at *3–4 (N.D. Cal. Feb. 27, 2007). The Court finds that the conduct of

20  the plaintiffs in these cases are distinguishable from Radio City.

21    None of the conduct for which defendants sought disqualification of plaintiff as class

22  representative in *Huricks*, *Perez*, or *Krzesniak* involved the destruction of evidence. For example,

23  in *Huricks*, Judge Chesney denied defendant's motion to disqualify plaintiff from acting as class

24  representative based on allegations of "potential conflict" between plaintiffs and lead counsel.

25  *Huricks*, 2014 WL 4954662, at *2–3. The court explained that nothing in the record at this stage

26  indicated that any potential issue pertaining to the adequacy of the named plaintiffs or class

27  Case No.: 5:20-cv-03642-EJD

28  ORDER GRANTING IN PART & DEN. IN PART MOT. FOR TERMINATING SANCTIONS;
GRANTING IN PART & DEN. IN PART MOT. TO STRIKE; DEN. AS MOOT ADMIN. MOT.
FOR LEAVE TO FILE SUR-REPLY; GRANTING MOT. FOR LEAVE TO FILE AM. COMPL.

14

United States District Court
Northern District of California

counsel must be addressed prior to class certification. *Id.* at *3. In *Perez*, defendants sought disqualification based in part on allegations that plaintiff lied in her insurance application. *Perez*, 2011 WL 8601203, at *2. Judge Ware noted that "[a] plaintiff should not be disqualified as a class representative simply because the defendant *may* have good defenses against that plaintiff," such as a *potential* defense of rescission. *Id.* (internal quotations omitted) (emphasis added). In *Krzesniak*, a wage and hour class action, defendants raised issues concerning plaintiff's individual retaliation lawsuit, his "antagonistic relationship" to defendant (his former employer), and his alleged credibility problems. *Krzesniak*, 2007 WL 640594, at *2. Magistrate Judge James denied the motion based on the incomplete record before the court, making it "unable to conduct the rigorous analysis required by Rule 23." *Id.* at *3.

Unlike *Huricks*, *Perez*, or *Krzesniak*, disqualification of Radio City is based on more than mere allegations of suspected misconduct or potential but unrealized issues concerning adequacy—all of which are more appropriately raised at the class certification stage and after the record has been fully developed. Here, Ms. Fish *admitted* to the destruction of a substantial amount of evidence during litigation which would render her atypical and inadequate to serve as class representative. Courts outside this circuit have disqualified plaintiffs from serving as class representative prior to class certification based on plaintiff's destruction of evidence. *See e.g.*, *Mooradian v. FCA US, LLC*, 286 F. Supp. 3d 865, 870 (N.D. Ohio 2017) (finding that plaintiff spoliated evidence and levying a sanction disqualifying plaintiff from serving as a class representative); *Tomassini v. FCA US LLC*, No. 3:14-CV-1226-MADML, 2020 WL 1938834, at *6 (N.D.N.Y. Apr. 22, 2020) ("Plaintiff Hromowyk is disqualified from acting as a class representative because his actions have made him an atypical member."). Conversely, in *Akaosugi*, Judge Alsup declined to levy sanctions based on spoliation "the record did not show that plaintiff Nguyen permanently destroyed any documents." *Akaosugi v. Benihana Nat. Corp.*, 282 F.R.D. 241, 257 (N.D. Cal. 2012). Copies of the documents were available elsewhere. *Id.* *Akaosugi* is distinguishable because Radio City did, in fact, permanently destroy evidence. *Id.* At

United States District Court
Northern District of California

the class certification stage, Judge Alsup concluded that plaintiff was not an adequate class representative due to his spoliation misconduct and found that "issues unique to plaintiff . . . will impede plaintiff['s] [] ability to vigorously represent the class." *Id.* In this case, the Court finds that disqualification is appropriate prior to class certification.

Because of the undisputed fact that Radio City spoliated evidence, the Court finds that Radio City is not fit to serve as a class representative. Ms. Fish's conduct has rendered Radio City "an atypical member of the class by giving [defendant] [] numerous possible defenses against [] [it] that would not apply to the class as a whole."[3] *Mooradian*, 286 F. Supp. 3d at 870. In exercising its discretionary authority, the Court disqualifies Radio City from serving as a class representative.

### 3.    Irrebuttable Adverse Inference Instruction

In addition to attorneys' fees, "a trial court also has the broad discretionary power to permit a jury to draw an adverse inference from the destruction or spoliation against the party or witness responsible for that behavior." *Glover*, 6 F.3d at 1329. Defendants request that the Court issue an irrebuttable adverse inference instruction that Radio city acted with a culpable state of mind and destroyed evidence that was relevant to its claims. Mot. for Sanctions at 31–31. Because the Court disqualifies Radio City from serving as Class Representative, Defendants' request for an adverse inference instruction against Plaintiff is moot.

### C.    Sanctions Against Plaintiff Radio City

In conclusion, the Court declines to levy terminating sanctions against Plaintiff. Instead, the Court orders the following sanctions: (1) Plaintiff must pay reasonable attorneys' fees and costs arising from this motion and (2) Radio City is disqualified from serving as class representative.

* * *

---

[3] At this time the Court does not decide whether Radio City could later participate as a class member if a class action is later approved.

Case No.: 5:20-cv-03642-EJD
ORDER GRANTING IN PART & DEN. IN PART MOT. FOR TERMINATING SANCTIONS; GRANTING IN PART & DEN. IN PART MOT. TO STRIKE; DEN. AS MOOT ADMIN. MOT. FOR LEAVE TO FILE SUR-REPLY; GRANTING MOT. FOR LEAVE TO FILE AM. COMPL.

United States District Court
Northern District of California

### III.    MOTION TO STRIKE

Defendants request that the Court "strik[e] pleadings in whole or in part" pursuant to Rule 37(b)(2)(A)(iii).  Specifically, Defendants move to strike Plaintiff's opposition in its entirety, or, in the alternative, strike the declaration of Plaintiff's expert, Christopher Groves.

As discussed above, the court may impose sanctions against a party for failure to obey a court order compelling discovery.  Fed. R. Civ. Pro. 37(b)(2)(A); *United States ex rel. Wiltec Guam, Inc. v. Kahaluu Const. Co., Inc.*, 857 F2d 600, 602 (9th Cir. 1988).  A court may sanction a disobedient party by striking pleadings, staying further proceedings pending compliance, or terminating the action by default or dismissal.  Fed. R. Civ. P. 37(b)(2)(A)(iii)–(iv).

There are five factors that a court must consider before striking a pleading, such as witness testimony, or declaring default: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the other party; (4) the public policy favoring the disposition of cases on their merits; and (5) the availability of less drastic sanctions."  *Bd. of Trs. of Laborers Health & Welfare Tr. Fund for N. California v. Kudsk Const., Inc.*, No. 12-CV-165-CW, 2012 WL 3010981, at *2 (N.D. Cal. July 23, 2012) (quoting *Hester*, 2012 U.S. App. LEXIS 14683, at *14, 2012 WL 2914108 (quotations omitted)).

Plaintiff submitted expert testimony from Christopher Groves, a data analyst, in support of its opposition to Defendants' motion for terminating sanctions.  *See* Groves Decl.; ECF No. 341-2. Plaintiff retained Mr. Groves to opine as to the spoliated evidence (i.e., the composite reports) and what impact, if any, the missing evidence has on "the parties' abilities to perform economic analysis with respect to liability, damages and class certification."  *Id.* ¶ 3.  Mr. Groves based his opinion on the assumption that much of the spoliated evidence "is available elsewhere in the record and that any missing information is immaterial."  *Id.*  His report concludes that Defendants are not materially affected by the missing data.  *Id.* ¶ 11.

Plaintiff did not file an opposition to this motion but nonetheless relied in part on Groves' conclusions in support of Plaintiff's argument at the hearing.  It is undisputed that Plaintiff failed

to produce Mr. Groves for a Court-ordered deposition prior to March 31.  *See* March 21 Order;

Frost Decl. in support of Defs.' Mot. to Strike ("Frost Decl.") ¶¶ 21–22, ECF No. 372-1.  The

purpose of Judge Demarchi's Order was to ensure that Defendants had the opportunity to examine

the foundation and factual basis for Mr. Groves' opinions *before* the April 4 hearing.  Mot. to

Strike at 19–20; Frost Decl. ¶ 23.  Plaintiffs have not provided any excuse for failing to comply

with the Court's Order.  The Court therefore finds that the public's interest in expeditious

resolution of litigation, the court's need to manage its docket, the risk of prejudice Defendants, and

the public policy favoring the disposition of cases on their merits all favor striking Mr. Groves'

declaration.

Accordingly, the Court strikes Christopher Groves' declaration and any references to Mr.

Groves' opinion in Plaintiff's opposition.

\* \* \*

## IV.    MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

Plaintiff moves to file a fourth amended complaint to add new representative plaintiffs.

Pursuant to Rule 15, "[t]he Court should freely give leave [to amend pleadings] when justice so

requires."[4]  Fed. R. Civ. P. 15(a)(2).  Rule 15's "policy of favoring amendments to pleadings

should be applied with 'extreme liberality.'"  *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186

(9th Cir. 1987) (quoting *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981)).  A court

should resolve a motion for leave to amend "with all inferences in favor of granting the motion."

*Griggs v. Pace Am. Grp.*, 170 F.3d 877, 880 (9th Cir. 1999) (citations omitted).

Courts consider multiple factors and "may exercise its discretion to deny leave to amend

due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure

---

[4] Defendants argue that the Court should assess Plaintiff's motion for leave to amend under Rule 16, which applies to motions to amend where the court has entered a case schedule that establishes a timetable for amending pleadings an that deadline has expired.  Opp'n to Mot. for Leave to File Am. Compl. at 5–6 (citing *Coleman v. Quaker Oats Co.*, 232 F.3d 1271,1294 (9th Cir 2000)).  No such order has been entered in this case.

Case No.: 5:20-cv-03642-EJD
ORDER GRANTING IN PART & DEN. IN PART MOT. FOR TERMINATING SANCTIONS; GRANTING IN PART & DEN. IN PART MOT. TO STRIKE; DEN. AS MOOT ADMIN. MOT. FOR LEAVE TO FILE SUR-REPLY; GRANTING MOT. FOR LEAVE TO FILE AM. COMPL.
18

deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . [and] futility of amendment.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892–93 (9th Cir. 2010) (quoting *Foman v. Davis*, 371 U.S. 178, 182, (1962)) (alterations in original).  Prejudice to the opposing party "carries the greatest weight." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

The Court begins with "the touchstone of the inquiry under rule 15(a)"—prejudice to the non-moving party.  *Id.*  District courts have recognized that undue prejudice can occur "when the amendment includes entirely new and separate claims, adds new parties, or at least entails more than an alternative claim or a chance in the allegations of the complaint and when additional discovery is expensive and time-consuming." *See, e.g.*, *Conte v. Jakks Pac., Inc.*, 981 F. Supp. 2d 895, 909 (E.D. Cal. 2013), *aff'd*, 563 F. App'x 777 (Fed. Cir. 2014); *Luckett v. Conlan*, 561 F.Supp.2d 970, 977 (N.D. Ill. 2008).  In these situations, the prejudice arises from the assertion of new causes of action at later stages in the proceedings. *See, e.g.*, *Graiser v. Visionworks of Am., Inc.*, No. 1:15-CV-2306, 2016 WL 4729301, at *1 (N.D. Ohio Sept. 12, 2016); *Conte*, 981 F. Supp. at 909.  Here, Plaintiff does not seek to add any new claims.

Plaintiff intends to add the following three new parties to ensure adequate representation for all members of the class: (1) Aurora Astro Products LLC, a Washington State limited liability company; (2) Pioneer Cycling & Fitness, LLP, a Minnesota limited liability partnership; and (3) Jason Steele, an individual resident of Texas.  Mot. for Leave to File Am. Compl. at 5.  While the addition of new class representatives will require Defendants to engage in additional discovery, "the court is not convinced that this burden will be so unfair as to justify denial of plaintiff's motion." *In re: Facebook Priv. Litig.*, No. 10-CV-02389-RMW, 2015 WL 2453734, at *5 (N.D. Cal. May 22, 2015); *see also Adams v. AllianceOne, Inc.*, No. 08-CV-0248 JAH (WVG), 2010 WL 11508283, at *3 (S.D. Cal. Apr. 16, 2010) ("[T]he taking of an additional deposition does not amount to substantial prejudice.").

Moreover, amendment will not adversely impact Defendants in terms of the pending

Case No.: 5:20-cv-03642-EJD
ORDER GRANTING IN PART & DEN. IN PART MOT. FOR TERMINATING SANCTIONS; GRANTING IN PART & DEN. IN PART MOT. TO STRIKE; DEN. AS MOOT ADMIN. MOT. FOR LEAVE TO FILE SUR-REPLY; GRANTING MOT. FOR LEAVE TO FILE AM. COMPL.

19

United States District Court
Northern District of California

1    motions.  This case is procedurally unique; Plaintiff requests leave to file a fourth amended

2    complaint while there are pending motions to dismiss and strike Plaintiff's third amended

3    complaint, the operative complaint.  Because of these unique circumstances, the new proposed

4    class representatives agree to allow Defendants' pending motions attacking the pleadings to apply

5    to their claims to prevent any additional work, such as re-filing, on Defendants' part.  Mot. for

6    Leave to File Am. Compl. at 12.

7           Finally, Defendants assert that Plaintiff was not diligent in seeking leave to amend and

8    makes this request in bad faith.  The Court disagrees.  First, Lead Counsel did not unduly delay

9    seeking leave to amend the complaint because the amendment is based on the admissions made by

10   Ms. Fish in February 2023, and Lead Counsel moved for leave to amend in April 2023.  *See*

11   *Walintukan v. SBE Ent. Grp., LLC*, No. 16-CV-01311-JST, 2017 WL 635278, at *3 (N.D. Cal.

12   Feb. 15, 2017) (finding no undue delay where "the FAC is based largely on information learned

13   during discovery.").  Defendants essentially argue that the spoliation of evidence is a result of

14   Lead Counsel's failure to uphold its duties to preserve evidence and respond to discovery requests,

15   and therefore it is something that Lead Counsel should have been aware of sooner.  While

16   disturbing and disappointing, these failings are appropriately addressed in the Court's ruling on

17   Defendants' motion for sanctions.  *See infra* Section II.  Second, Lead Counsel seeks leave to and

18   for the purpose of protecting the class, which does not constitute bad faith.  *Adams*, 2010 WL

19   11508283, at *3 (finding no bad faith where plaintiff sought leave to amend to "ensure that the

20   interests of the class are adequately protected.").

21          Moreover, "[w]here a named plaintiff's claims become moot, courts in the Ninth Circuit

22   permit the substitution of a proper class representative to allow the suit to proceed."  *In re:*

23   *Facebook Priv. Litig.*, 2015 WL 2453734, at *4 (citing *Lierboe v. State Farm Mut. Auto. Ins. Co.*,

24   350 F.3d 1018, 1023 n.6 (9th Cir.2003).   Here, the Court disqualified Radio City, the sole named

25   plaintiff, from serving as class representative and therefore the addition of named plaintiffs are

26   required for the case to proceed.  Accordingly, the court treats the instant motion to amend to add

27   Case No.: 5:20-cv-03642-EJD

28   ORDER GRANTING IN PART & DEN. IN PART MOT. FOR TERMINATING SANCTIONS;
     GRANTING IN PART & DEN. IN PART MOT. TO STRIKE; DEN. AS MOOT ADMIN. MOT.
     FOR LEAVE TO FILE SUR-REPLY; GRANTING MOT. FOR LEAVE TO FILE AM. COMPL.

United States District Court
Northern District of California

class representatives as one seeking the substitution of a named plaintiff following the mooting—
or, in this case, disqualification—of a prior plaintiff's claims. *See In re: Facebook Priv. Litig.*,
2015 WL 2453734, at *4.

Turning to futility, the Court finds that this factor likewise favors granting leave to
amend. Futility "includes the inevitability of a claim's defeat on summary judgment," *California
v. Neville Chem. Co.*, 358 F.3d 661, 673 (9th Cir. 2004), and when the amendments do not
adequately plead a cause of action and could not survive dismissal, *Moore v. Kayport Package
Exp., Inc.*, 885 F.2d 531, 537 (9th Cir. 1989). While Defendants contend that amendment is futile,
Opp'n to Mot. for Leave to File Am. Compl. at 2–3, their contention is conclusory and fails to
establish any basis for finding futility. Defendants attempt to argue that the newly proposed class
representatives inadequately represent the proposed class, *id.* at 3–4, but adequacy is not for the
Court to decide on a motion for leave to amend. *Walintukan*, 2017 WL 635278, at *3.

Accordingly, the *Foman* factors weigh in favor of granting Plaintiff's request for leave to
file a fourth amended complaint.

* * *

## V.   CONCLUSION

Based on the foregoing, the Court:

1.   GRANTS IN PART AND DENIES IN PART Defendants' motion for
terminating sanctions at ECF No. 322. Defendants' request for a sanction dismissing the
case is DENIED, the request for an irrebuttable inference instruction is DENIED AS
MOOT, and the request for attorneys' fees is GRANTED. In addition, Radio City is
DISQUALIFIED from serving as class representative.

The Court will set a separate hearing to determine the amount of attorneys' fees.
The parties shall stipulate or file a joint statement with a proposed briefing schedule on or
before **September 8, 2023**.

2.   GRANTS IN PART AND DENIES IN PART Defendants' motion to strike at ECF

Case No.: 5:20-cv-03642-EJD
ORDER GRANTING IN PART & DEN. IN PART MOT. FOR TERMINATING SANCTIONS;
GRANTING IN PART & DEN. IN PART MOT. TO STRIKE; DEN. AS MOOT ADMIN. MOT.
FOR LEAVE TO FILE SUR-REPLY; GRANTING MOT. FOR LEAVE TO FILE AM. COMPL.

United States District Court
Northern District of California

No. 372.  The Court DENIES Defendant's request to strike Plaintiff's opposition in its entirety and GRANTS Defendants' request to strike the Declaration of Christopher Grove at ECF No. 341-1.  In addition, any reference to the Grove Declaration in Plaintiff's opposition will be STRICKEN and disregarded by the Court.

3.  DENIES AS MOOT Defendants' administrative motion for leave to file a sur-reply at ECF No. 319.  This motion is based entirely on admissions made by Maline Fish during her deposition.  Because Radio City is disqualified from serving as class representative, Defendants' request is moot.

4.  GRANTS Plaintiff's motion for leave to file an amended complaint at ECF No. 381.  Pursuant to the sanction, Plaintiff shall substitute but not add the proposed class representatives for Radio City.  Plaintiff shall file the fourth amended complaint no later than **September 1, 2023**.

As discussed in this Order, the filing of the FAC will not affect the pending motion to dismiss the third amended complaint at ECF No. 206.

**IT IS SO ORDERED.**

Dated:  August 25, 2023

EDWARD J. DAVILA
United States District Judge

Case No.: 5:20-cv-03642-EJD
ORDER GRANTING IN PART & DEN. IN PART MOT. FOR TERMINATING SANCTIONS;
GRANTING IN PART & DEN. IN PART MOT. TO STRIKE; DEN. AS MOOT ADMIN. MOT.
FOR LEAVE TO FILE SUR-REPLY; GRANTING MOT. FOR LEAVE TO FILE AM. COMPL.
22