UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| AURORA ASTRO PRODUCTS LLC, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CELESTRON ACQUISITION, LLC, et al.,<br><br>Defendants. | Case No.  5:20-cv-03642-EJD<br><br>**ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**<br><br>Re: ECF No. 174 |

Direct Purchaser Plaintiffs ("DPPs" or "Plaintiffs") move for summary judgment against Defendant Ningbo Sunny Electronic Co., Ltd. ("Ningbo Sunny"). ECF No. 174. Having considered all the papers and pleadings on file, the Court had determined that the matter is suitable for decision without oral argument pursuant to Civil Local Rule 7-1(b). For the reasons discussed herein, Plaintiffs' motion is **DENIED.**

I.  **BACKGROUND**

Without reiterating the entirety of the parties' lengthy legal history, the instant putative antitrust class action follows on the heels of Defendants' six-week trial before the Undersigned in *Optronic Techs. Inc. v. Ningbo Sunny et al.*, No. 5:16-cv-06370-EJD (N.D. Cal.) (the "*Orion* Action*"*), a private antitrust action that involved substantially similar causes of action and factual allegations as described in the FAC.[1]

---

[1] The Second Amended Complaint was the operative complaint at the time Plaintiffs moved for summary judgment. Shortly after this motion was filed, the parties stipulated to file the Third Amended Complaint ("TAC") at ECF No. 188. *See* ECF Nos. 176, 180. Before ruling on the instant motion, the Court ordered DPPs to substitute class representatives and file a Fourth Amended Complaint ("FAC"). *See* ECF No. 486. Because the FAC is substantively identical to the TAC and to avoid any confusion, the Court will cite the FAC at ECF No. 495 and the

### A. *Orion* Action

In the *Orion* Action, telescope distributer Optronic Technologies Co. ("Orion") filed an antitrust suit in this District against its competitors Ningbo Sunny and its U.S. subsidiaries, Meade and Sunny Optics, Inc.

Orion initiated the action based on allegations of horizontal price fixing, market division and retaliation in the U.S. consumer telescope market by Chinese manufacturer Ningbo Sunny, its U.S. subsidiaries Sunny Optics, Inc. ("Sunny Optics"), Meade Instruments, Inc. ("Meade"), and co-conspirators who had settled with Orion pre-suit. *See Optronic Techs. Inc. v. Ningbo Sunny et al.*, No. 5:16-cv-06370-EJD, ECF No. 41. Orion alleged that Ningbo Sunny and a Chinese manufacturer entered multiple agreements with one another to ensure that they jointly controlled the supply of telescopes into the U.S. by agreeing not to compete in the supply market, charging supracompetitive prices, restricting trade, and engaging in other anticompetitive conduct. *Id.* ¶¶ 33–34. The complaint alleged that the relevant market is "telescopes for beginner to intermediate consumers" encompassing telescope manufacturers and distributors. *Id.* ¶¶ 26, 31–49.

Following a six-week trial, on November 26, 2019, the jury found Ningbo Sunny liable for violations of §§ 1 and 2 of the Sherman Act and § 7 of the Clayton Act and awarded over $52,000,000 in damages against defendants' co-conspirators. *See Optronic*, No. 5:16-cv-06370-EJD, ECF No. 501 (N.D. Cal. Nov. 26, 2019).

After the verdict, Ningbo Sunny and Sunny Optics (collectively, "Sunny Defendants") and Meade filed for bankruptcy on December 4, 2019. This court entered a partial judgment for Orion and against the Sunny Defendants on December 5, 2019, encompassing the Sherman Act §§ 1 and 2, Clayton Act § 7, California UCL, and California Cartwright Act claims. On April 10, 2020, the United States Bankruptcy Court for the Central District of California permitted the district court to enter a final judgment against the Sunny Defendants and Meade. Final judgment was entered as to Ningbo Sunny on April 15, 2019. *Optronic*, No. 5:16-cv-06370-EJD, ECF No. 637 (N.D. Cal. April 15, 2019).

---

substituted class representatives.
Case No.: 5:20-cv-03642-EJD
ORDER DENYING PLS.' MOT. FOR SUMM. J.
2

1   Sunny Defendants appealed. On December 6, 2021, the Ninth Circuit affirmed in part the

2   judgment and vacated in part only with respect to the valuation of a settlement set-off, which was

3   remanded for further proceedings. *Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.*, 20 F.4th 466

4   (9th Cir. 2021).

### B.  DPP Class Action

On October 19, 2020, Plaintiffs initiated this antitrust putative class action on behalf of similarly situated DPPs alleging violations of the Sherman Act §§ 1 and 2; violation of the Clayton Act § 7; and violations of California's Cartwright Act and Unfair Competition Law.[2]

Named Plaintiffs Aurora Astro Products LLC ("Aurora") and Pioneer Cycling & Fitness, LLP ("Pioneer") are Washington and Minnesota limited liability company and partnership, respectively, that sold telescopes in their retail stores. FAC ¶¶ 12–13. Named Plaintiff Jason Steele is a resident of Texas who directly purchased a telescope from Defendant Celestron. *Id.* ¶ 13. Defendant Synta Technology and its affiliates (collectively, "Synta" or "the Synta Entities"), *see id.* ¶¶ 16, 19–35, are a group of "related entities, holding companies, and shell corporations controlled by David Shen," who owns—either directly, or indirectly through his family members—multiple telescope manufacturing and distribution companies. *Id.* ¶¶ 15. Defendant Ningbo Sunny, a company located in China, and its U.S. subsidiary Meade export and sell telescopes in the U.S. *Id.* ¶¶ 38–39. The Ningbo Sunny Co-Conspirators are a group of related entities controlled by Wenjun ("Peter") Ni, the founder and CEO of Ningbo Sunny. *Id.* ¶¶ 37, 40, 43.

The FAC alleges the Synta Entities are involved in a long-running conspiracy with Ningbo Sunny and its affiliates ("the Ningbo Sunny Entities") to commit antitrust violations. *Id.* ¶ 2. Peter Ni allegedly authorized or entered collusive agreements between Defendants and the Synta co-conspirators and Ningbo Sunny to: jointly fix prices offered to distributors; restrict and set distributors' trade and credit terms; and block competitors from purchasing Meade by

---

[2] Spectrum Scientifics LLC and Radio City LLC are no longer class representatives in the FAC.

Case No.: 5:20-cv-03642-EJD
ORDER DENYING PLS.' MOT. FOR SUMM. J.
3

orchestrating the acquisition of Meade using the Synta Defendants' support and assistance to coordinate its pricing, sales, and manufacturing practices with Synta and Celestron to effectively monopolize the U.S. market. *Id.* ¶ 40. DPPs allege that they were injured as a result of Defendants conspiracy and request equitable relief, compensatory and treble damages, restitution, disgorgement, and punitive damages.

The FAC specifically alleges that Defendant Synta manufactures higher-end telescope products while Ningbo Sunny manufactures lower-end models pursuant to the parties' arrangement not to compete. *Id.* ¶¶ 75–76. Under this arrangement, DPPs allege that Synta will not manufacture or offer to quote a competitive price on products offered by Ningbo Sunny, and Ningbo Sunny will do the same. *Id.* ¶ 74. In 2005, Synta acquired Celestron, which eventually became the dominant U.S. telescope distributor because of Defendants' conspiratorial conduct. *Id.* ¶ 76. DPPs further allege that Ningbo Sunny had acquired Meade with Celestron and Synta's financial and other assistance. *Id.* ¶¶ 95–100. Synta and Ningbo Sunny sell their telescopes to distributors through distributor brands, including their wholly owned subsidiaries Celestron and Meade, which then sell the telescopes through stores, dealers, and the internet to U.S. consumer. *Id.* ¶ 78. Celestron and Meade "account for the vast majority of consumer telescopes sold in the United States." *Id.*

The FAC alleges two relevant markets: (1) consumer telescope and telescope accessory manufacturing for import into the United States (the "Manufacturing Market") and (2) a downstream market from the Manufacturing Market, or the market for consumer telescope distribution (the "Distribution Market"). FAC ¶¶ 73, 77.

After filing of the complaint, the Court authorized alternative service on Ningbo Sunny "sufficient to put Foreign Defendants on notice of these actions pursuant to Rule 4 of the Federal Rules of Procedure." ECF No. 78. Accordingly, Ningbo Sunny was served in January 2021 via personal service on (1) Ningbo Sunny's appellate counsel, (2) Ningbo Sunny's wholly owned and controlled U.S. subsidiary, Meade, (3) via e-mail to a Ningbo Sunny-affiliated email address and (4) priority international mail to Peter Ni at Ningbo Sunny Electronic Co., Ltd. in China. ECF

Nos. 89; 89-1 ¶¶ 13–16. Ningbo Sunny has not appeared in this action.

DPPs contend that, following the judgment in the *Orion* Action, Ningbo Sunny "defrauded the Court and smuggled $4.2 million in receivables out of the country" before absconding from the jurisdiction and now refusing to appear in this action. DPPs now move for summary judgment against Ningbo Sunny. Pl.'s Mot. for Summ. J. Against Def. Ningbo Sunny ("Mot."), ECF No. 174 at 1.

## II. LEGAL STANDARD

Summary judgment is proper where the pleadings, discovery, and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is "material" if it would affect the outcome of the suit under the governing law, and a disputed issue is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

The party moving for summary judgment bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the nonmoving party bears the burden of proof at trial, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. If the moving party can meet this initial burden, the burden then shifts to the non-moving party to produce admissible evidence and set forth specific facts showing that a genuine issue of material fact does indeed exist for trial. *See Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1103 (9th Cir. 2000). If the non-moving party produces enough evidence to show a genuine issue of material fact exists, then it defeats the motion; otherwise, the moving party is entitled to summary judgment. *Id.*

In considering a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party. *See Tolan v. Cotton*, 572 U.S. 650, 655 (2014). The Court may not weigh conflicting evidence as to a disputed fact nor may it make credibility

Case No.: 5:20-cv-03642-EJD
ORDER DENYING PLS.' MOT. FOR SUMM. J.
5

1  determinations; any disputed factual issues must be resolved in favor of the non-moving party.

2  *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir. 1987).

3  However, the Court need not credit the non-moving party's version of events where it is blatantly

4  contradicted by the record. *See Orn v. City of Tacoma*, 949 F.3d 1167, 1171 (9th Cir. 2020).

### III. ANALYSIS

Ningbo Sunny has been served but has not appeared or otherwise defended this action. DPPs seek summary judgment against Ningbo Sunny. While unusual, Plaintiffs are not precluded from electing to move for summary judgment rather than seeking default judgment under Fed. R. Civ. P. 55. *Allstate Prop. & Cas. Ins. Co. v. Kim*, No. 13-CV-62157, 2014 WL 11706415, at *2 (S.D. Fla. June 10, 2014) (granting plaintiff's motion for summary judgment where defendant was served but did not appear) (collecting cases). Generally, "summary judgment in antitrust cases is disfavored." *Fortner Enters., Inc. v. U.S. Steel Corp.*, 394 U.S. 495, 505 (1969).

Accordingly, the Court will consider the evidence to determine whether summary judgment is appropriate. *Heinemann v. Satterberg*, 731 F.3d 914, 917 (9th Cir. 2013) (a district court may not grant summary judgment by default when failure to oppose the motion).

### A. The Answering Defendants' Opposition to DPPs' Motion

Although Ningbo Sunny has not appeared, the other Defendants in this action—Celestron Acquisition, LLC, Synta Canada Int'l Enterprises, Ltd., SW Technology Corp., Olivon Manufacturing Co., Ltd., Olivon USA, LLC, Corey Lee, Sylvia Shen, Jean Shen, Joseph Lupica, Dave Anderson, Laurence Huen, Suzhou Synta Optical Technology Co., Ltd., Nantong Schmidt Opto Electrical Technology Co., Ltd., Pacific Telescope Corp., David Shen, Jack Chen, and Synta Technology Corp. (collectively, the "Answering Defendants")—together oppose DPP's motion. *See* Defs.' Opp'n and Obj. to Pl. Radio City's Mot. for Summ. J. Against Def. Ningbo Sunny Electronics ("Opp'n"), ECF No. 177.[3]

---

[3] Plaintiffs contend that the Court need not consider the Answering Defendants' opposition to Plaintiffs' motion for summary judgment because Answering Defendants have not filed a cross-motion and therefore lack standing. *See, e.g.*, *Dixon v. Cnty. of Alameda*, No. C 95-4617-SI, 1997 WL 220311, at *6 n.8 (N.D. Cal. Apr. 18, 1997); *Eckert v. City of Sacramento*, No. 07-CV-00825-

Answering Defendants assert that they will be unduly prejudiced if the Court enters judgment against Ningbo Sunny because a ruling on the motion in advance of a full determination on the merits of the claims in this case could result in inconsistent judgments amongst multiple defendants. Opp'n at 6–9.

Answering Defendants rely on *Frow v. De La Vega*, where the Supreme Court considered entry of default against one defaulting defendant where multiple defendants were named in the action. 82 U.S. 552, 554 (1872). "The Court held in *Frow* that, where a complaint alleges that defendants are jointly liable and one of them defaults, judgment should not be entered against the defaulting defendant until the matter has been adjudicated with regard to all defendants." *In re First T.D. & Inv., Inc.*, 253 F.3d 520, 532 (9th Cir. 2001). The Ninth Circuit extended *Frow*'s application to defendants who are "'similarly situated,' such that the case against each rests on the same legal theory," regardless of if they are jointly or severally liable. *Garamendi v. Henin*, 683 F.3d 1069, 1082–83 (9th Cir. 2012) (quoting *id.*).

Following *Frow*, Answering Defendants argue it would be prejudicial to enter a judgment against Ningbo Sunny at this stage of litigation because this action similarly presents a situation where the liability of one defendant necessarily depends upon the liability of others. Opp'n at 8–9. Answering Defendants thus contend the Court may not enter judgment against Ningbo Sunny until the matter has been adjudicated as to *all* Defendants.

Even assuming that the rule in *Frow* is applicable under these circumstances, Answering Defendants' argument is not persuasive. The *Frow* rule was created to avoid a situation where it would be "incongruous and illegal" to permit plaintiff to prevail as to the defaulting defendant such that entering default would result in inconsistent judgments. *Frow*, 82 U.S. at 554; *see, e.g.*, *First T.D.*, 253 F.3d at 532 (finding that it would be "incongruous and unfair" if the trustee were

---

GEB-GGH, 2009 WL 3211278, at *3 (E.D. Cal. Sept. 30, 2009); *Fraioli v. Lemcke*, 328 F.Supp.2d 250, 263 n. 4 (D.R.I. 2004) ("[S]ince none of the defendants in this case have filed cross claims against each other, the defendants are not adverse parties who are entitled to object to each others' motions for summary judgment."). However, the Court will address Answering Defendants' opposition to the extent they argue the Court's decision to enter judgment against Ningbo Sunny will impact their defense on the merits.

Case No.: 5:20-cv-03642-EJD
ORDER DENYING PLS.' MOT. FOR SUMM. J.
7

1   able to obtain a default judgment against the defaulting defendants, when those who answered

2   were able to defeat the trustee's claims as a matter of law); *Deveraux v. Sison*, No. CV-18-04882-

3   PHX-DJH, 2020 WL 5725183, at *2 (D. Ariz. Sept. 23, 2020) (holding that *Frow* prevents entry

4   of default judgment against a defendant where contradictory judgments might result).

5         The principal concern identified in *Frow* is outcome-based: whether entering judgment as

6   to a defaulting defendant could result in inconsistent judgments, in which case the action must be

7   adjudicated as to all defendants to ensure that "liability of all defendants must be uniform."

8   *Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 1008–09 (N.D. Cal. 2001).

9   The *Frow* rule is not a "per se" rule that militates denial of default judgment any time a plaintiff

10   seeks to hold multiple defendants jointly and severally liable. *In re Uranium Antitrust Litig.*, 473

11   F. Supp. 382, 388 (N.D. Ill. 1979), *rev'd and remanded on other grounds*, 617 F.2d 1248 (7th Cir.

12   1980); *Shanghai*, 194 F. Supp. 2d at 1008–09 ("[W]here uniformity of liability is not logically

13   required by the facts and theories of the case, the risk of inconsistent judgments is not sufficiently

14   extreme to bar entry of default judgment as a matter of law.").

15         Thus, joint and several liability is not dispositive of whether *Frow* precludes entry of

16   judgment. Indeed, "there are [] situations which do not technically involve joint liability but

17   which demand consistency in judgments . . . . In contrast, there are situations such as in *In re*

18   *Uranium Antitrust Litigation*, *supra*, where it was theoretically proper to hold some defendants

19   liable, e.g. for conspiracy to commit anti-trust violations, but other defendants innocent."

20   *Shanghai*, 194 F. Supp. 2d at 1008 (citing *Uranium*, 617 F.2d at 1258). The latter is precisely the

21   situation before this Court.

22         Here, it is possible that only a small group of the 18 named defendants might be found to

23   have conspired to fix the price of consumer telescopes while the remaining defendants are

24   exonerated. The Seventh Circuit recognized this much in *Uranium* when it observed that, despite

25   the fact that "[a]nti-trust liability under Section 1 of the Sherman Act is joint and several[,]. . . .

26   [s]uch a finding of liability as to nine defendants is not inconsistent with a finding of no liability as

27   to the other twenty, because liability is potentially 'several' as well as 'joint.'" *Uranium*, 617 F.2d

28   Case No.: 5:20-cv-03642-EJD
ORDER DENYING PLS.' MOT. FOR SUMM. J.
8

at 1257.  The Seventh Circuit considered the district court's entry of default judgment against some but not all defendants who were charged with conspiring to violate the antitrust laws and found that *Frow* does not preclude the entry of default judgment under such circumstances. *Id.*

Accordingly, there is no significant risk of inconsistent judgments amongst the multiple Defendants in this action that would preclude entry of judgment against Ningbo Sunny before the action is adjudicated as to all Defendants.

### B. Application of Non-Mutual Offensive Collateral Estoppel

Plaintiffs move for summary judgment based on nonmutual offensive collateral estoppel. A prior private antitrust action may have an offensive collateral estoppel effect on a subsequent private antitrust action where all the requirements of collateral estoppel are satisfied. *See GAF Corp. v. Eastman Kodak Co.*, 519 F. Supp. 1203, 1211 (S.D.N.Y. 1981).  Plaintiffs argue Ningbo Sunny is precluded from contesting liability for its antitrust violations in reliance on the factual findings in the *Orion* Action.

"Issue preclusion, or collateral estoppel, precludes relitigation of an issue already litigated and determined in a previous proceeding between the same parties." *Pike v. Hester*, 891 F.3d 1131, 1138 (9th Cir. 2018).  Issue preclusion is available when a party demonstrates that the following four requirements are met:

> (1) there was a full and fair opportunity to litigate the issue in the previous action; (2) the issue was actually litigated; (3) there was final judgment on the merits; and (4) the person against whom collateral estoppel is asserted was a party to or in privity with a party in the previous action.

*Wolfson v. Brammer*, 616 F.3d 1045, 1064 (9th Cir. 2010).  Even when all these factors are satisfied, district courts have "broad discretion" to determine when plaintiff's offensive use of collateral estoppel should be applied. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331 (1979); *Appling v. State Farm Mut. Auto. Ins. Co.*, 340 F.3d 769, 775 (9th Cir. 2003).

#### 1. "Actually Litigated" and Final Judgment on the Merits

Both the *Orion* Action complaint and the FAC in this action allege violations of the Sherman Act §§ 1 and 2, Clayton Act § 7, Cal. Bus. & Prof. Code §§ 17200 *et seq.*, and Cal. Bus.

Case No.: 5:20-cv-03642-EJD
ORDER DENYING PLS.' MOT. FOR SUMM. J.
9

& Prof. Code §§ 16700 *et seq.* and assert overlapping theories of liability with respect to the alleged Sherman Act §§ 1 and 2 violations.

"The offense of monopolization under Section 2 of the Sherman Act has two elements: "(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historical accident." *High Tech. Careers v. San Jose Mercury News*, 996 F.2d 987, 989–90 (9th Cir. 1993). The Court will first address monopoly power in the relevant markets alleged in the *Orion* Action and the instant action.

"Monopoly power is the power to control prices or exclude competition in the relevant market and exists whenever prices can be raised above the competitive market levels." *High Tech. Careers*, 996 F.2d at 990 (internal citations and quotation marks omitted). A trier of fact must first determine the relevant market before determining whether a party possesses monopoly power. *Id.* "Defining the relevant market requires identifying those competitors who have the actual or potential ability to deprive each other of significant levels of business." *Id.* This factual inquiry is defined by the jury. *Oahu Gas Service, Inc. v. Pacific Resources, Inc.*, 838 F.2d 360, 363 (9th Cir. 1988), *cert. denied*, 488 U.S. 870 (1988).

Here, the alleged markets in both actions are materially the same. The *Orion* Action alleged "the telescope market for beginner to intermediate consumers was the relevant market," which encompasses both the distribution and manufacturing markets alleged in this action. For example, the Orion complaint alleges that "[i]n telescope manufacturing, price competition has been restrained or eliminated, . . . for products where Ningbo Sunny and the Settling Coconspirators have agreed to divide the market between them." *Optronic*, No. 5:16-cv-06370-EJD, ECF No. 41 ¶ 117. It similarly alleges that "[a]t the telescope distribution level, price competition has been restrained or eliminated, . . . for products where Ningbo Sunny and the Settling Manufacturer, through their wholly-owned distributor subsidiaries, have agreed to divide the market between them." *Id.* ¶ 119. Likewise, DPPs allege a manufacturing market and a distribution market. FAC ¶¶ 73, 77.

Case No.: 5:20-cv-03642-EJD
ORDER DENYING PLS.' MOT. FOR SUMM. J.
10

1    DPPs assert that Ningbo Sunny actually litigated its antitrust liability in the *Orion* Action since there was a final judgment on the merits. Indeed, "the requirement of determining whether the party against whom an estoppel is asserted had a full and fair opportunity to litigate is a most significant safeguard." *Parklane*, 439 U.S. at 328 (quoting *Blonder-Tongue Lab'ys, Inc. v. Univ. of Illinois Found.*, 402 U.S. 313, 328 (1971)).

During the six-week trial, the jury heard evidence alleging Ningbo Sunny's antitrust liability that included collusion between Ningbo Sunny and other competitive market participants to "divide markets, fix prices, and unlawfully concentrate the telescope market." Mot. at 11. DPPs include evidence considered by the jury during the *Orion* trial in support of its motion. For example, Orion introduced evidence of Ningbo Sunny's acquisition of Meade in violation of the Clayton Act, § 7, including emails between Ningbo Sunny and other market competitors seeking "financial help" to purchase Meade, ECF No. 174-6; emails from market competitors to Ningbo Sunny asking Meade not to compete with them for sales to certain customer-distributors, ECF No. 174-15; and emails from market competitors to Ningbo Sunny stating that Peter Ni "will not be a competitor", ECF No. 174-15.

At trial, Ningbo Sunny challenged DPPs' evidence. The jury found DPPs had met their burden and found Ningbo Sunny liable for: (1) price or credit term fixing in violation of § 1; (2) market allocation in violation of § 1; (3) attempted monopolization in violation of § 2; (4) conspiring to monopolize the market for telescopes and accessories in violation of § 2; and (5) acquiring Meade created a reasonable likelihood of substantially lessening competition or creating a monopoly in the telescope manufacturing market in violation of the Clayton Act, § 7. Mot. at 10; Verdict Form, ECF No. 174-18 Ex. 16. Ningbo Sunny therefore presented a complete defense on the merits as to each claim.

In this action, DPPs claim that Ningbo Sunny engaged in price-fixing and agreed to allocate product markets with its market competitors in violation of Sherman Act, § 1, and that Ningbo Sunny conspired and attempted to monopolize the consumer telescope market in violation of § 2. In support, Plaintiffs submit Orion trial exhibits which include emails from a market

Case No.: 5:20-cv-03642-EJD
ORDER DENYING PLS.' MOT. FOR SUMM. J.
11

1 competitor stating that: "[t]he best way in the future is to divide the products and sell them into
2 different markets to reduce conflicts", ECF No. 174-17; emails from Ningbo Sunny to a market
3 competitor stating that Ningbo Sunny "will take prompt action to avoid conflict in the
4 astronomical market," including "abandoning the small OEM customers so as to protect big
5 customers", ECF No. 174-29; emails from Ningbo Sunny to market competitors in which Ningbo
6 Sunny reveals business information about pricing of products, ECF No. 174-27; an email from a
7 market competitor to Ningbo Sunny regarding Ningbo Sunny's "same" payment terms as a market
8 competitor, ECF No. 174-14; emails between market competitors and co-conspirators with Meade
9 stating that they intended to "dominate the telescope industry", ECF No. 174-30; as well as other
10 conversations demonstrating collusion to fix prices, divide the market, and buy out competitors.

In sum, Ningbo Sunny was a party to the previous action and "actually litigated" its antitrust liability in the *Orion* Action only, resulting in a final judgment on the merits.

### 2. Full and Fair Opportunity to Litigate and Privity

Plaintiffs contend that the first and fourth requirements—full and fair opportunity to litigate and privity—are satisfied because Ningbo Sunny was a defendant in the *Orion* Action and thus a "party in the previous action." Mot. at 9. In support, Plaintiffs include the operative complaint in the *Orion* Action, the First Amended Complaint ("*Orion* Complaint"), which names Ningbo Sunny as a defendant. ECF No. 174-3, Ex. 1 ¶ 10. The *Orion* Complaint and the FAC in this action identify Ningbo Sunny as a company located in Yuyao, Zhejiang, China led by Peter Ni and alleged identical causes of action based on the same theories of liability. *Id.*; FAC ¶¶ 38, 40.

The *Orion* Complaint asserts four causes of action: (1) price fixing and collusion between competitors to allocate the market and to fix credit terms in violation of Sherman Act § 1; (2) monopolization and attempted monopolization in violation of Sherman Act § 2 and the Clayton Act § 7; (3) violation of California unfair competition law ("UCL"); and (4) collusion to restrain trade in violation of the California Cartwright Act. Here, the FAC asserts the same four causes of action. The FAC alleges, in relevant part, the Sunny Defendants colluded to fix prices, fix credit terms, divide the market, and allocate products in violation of Sherman Act § 1 and monopolized,

Case No.: 5:20-cv-03642-EJD
ORDER DENYING PLS.' MOT. FOR SUMM. J.
12

1     attempted to monopolize, and conspired to monopolize in violation of § 2.

2           In the *Orion* Action the jury found the Sunny Defendants liable for conspiring to
3     monopolize but did not find them liable for an actual monopoly violation. However, DPPs cannot
4     rely on these claims to assert offensive collateral estoppel as to causation and damages because
5     each finding of liability turned on whether Orion had shown by a preponderance of the evidence
6     that Sunny Defendants' misconduct harmed Orion. Whether Ningbo Sunny harmed the DPP
7     class, and the extent of these damages, are triable issues not litigated in the *Orion* Action. *See*
8     *Univac Dental Co. v. Dentsply Int'l, Inc.*, 702 F. Supp. 2d 465, 488 (M.D. Pa. 2010)
9     (recommending that "issue preclusion not be extended to the issues of causation and damages,
10    matters that are unique to the plaintiffs and questions which the parties should be required to fully
11    litigate at trial.").

12          For example, Claim One of the verdict form asked whether Orion had proven "that
13    Defendants agreed with a competitor to fix the price or credit terms for telescopes and
14    accessories" in violation of Section 1. *See Optronic*, No. 5:16-cv-06370-EJD, ECF No. 501 at 1.
15    An element of this claim required the jury to find that "this conduct caused injury to Orion's
16    business or property". *Id.* While DPPs also allege that Ningbo Sunny colluded to fix prices
17    and/or credit terms, the *Orion* verdict did not decide whether Ningbo Sunny's anticompetitive
18    conduct harmed DPPs' business or property—the jury made this finding only as to Orion. In this
19    action, DPPs must show they suffered harm arising from the wrongful conduct of Ningbo Sunny.

20          The same is true of Claim Two, which asked whether Orion had proven "that Defendants
21    agreed with a competitor or a potential competitor, ***either*** (a) not to compete with each other in the
22    manufacture or sale of telescopes and accessories, ***or*** (b) to divide customers or potential
23    customers between them" in violation of Section 1. *See Optronic*, No. 5:16-cv-06370-EJD, ECF
24    No. 501 at 2 (emphasis in original). The jury found that "this conduct caused injury to Orion's
25    business or property" with respect to Claim Two. *Id.* DPPs likewise must show they suffered
26    harm arising from Ningbo Sunny's collusion not to compete and/or divide customers.

27          Claim Three asked whether Orion had shown by a preponderance of the evidence that all

the elements of attempted monopolization are satisfied. *See Optronic*, No. 5:16-cv-06370-EJD, ECF No. 501 at 3. Claim Four asked whether Sunny Defendants conspired to monopolize. *Id.* at 4. Both claims required the jury to find harm to Orion's business or property in reaching their conclusion.

In sum, DPPs have therefore failed to meet their burden of demonstrating the absence of triable issues pertaining to antitrust injury and damages.[4]

### 3. The *Parklane* factors weigh against application of collateral estoppel under these circumstances.

Even if the elements of collateral estoppel are satisfied, plaintiffs offensively asserting collateral estoppel must overcome additional hurdles. The *Parklane* Court cautioned district courts to use their discretion sparingly with respect to offensive collateral estoppel. In doing so, the Supreme Court articulated the following additional considerations that should be weighed when a plaintiff employs offensive collateral estoppel: (1) whether the plaintiff "could easily have joined in the earlier action" and (2) "where. . . the application of offensive estoppel would be unfair to a defendant." *Parklane*, 439 U.S. 322 at 331.

The second concern raised by *Parklane* asks whether the application of offensive collateral estoppel would be unfair to the defendants. For example, situations raising fairness concerns include where "the judgment relied upon as a basis for the estoppel is itself inconsistent with one or more previous judgments in favor of the defendant . . . [or] procedural opportunities available to the petitioners that were unavailable in the first action of a kind that might be likely to cause a different result." *Id.* at 332. Another situation may arise where a defendant is sued for nominal damages in the first action, in which case "he may have little incentive to defend vigorously, particularly if future suits are not foreseeable." *Id.* at 330.

---

[4] The *Univac* court recommended the "narrow application" of offensive non-mutual issue preclusion such that defendant would be "collaterally estopped from contesting the general elements of an antitrust violation in this case by this prior litigation." *Univac Dental Co.*, 702 F. Supp. 2d at 492. This application would prevent defendant from disputing "either the issue of: (1) Dentsply's possession of monopoly power; or (2) the question of Dentsply's conscious maintenance of that power . . . ." *Id.* The Undersigned does not find a narrow application of issue preclusion is appropriate in this case for the reasons discussed in Section III.B.3.

Case No.: 5:20-cv-03642-EJD
ORDER DENYING PLS.' MOT. FOR SUMM. J.
14

1     Here, the Sunny Defendants "had every incentive to litigate the [] lawsuit fully and

2 vigorously." *Parklane*, 439 U.S. at 332. The damages in the *Orion* Action were far from nominal.

3 Orion's complaint sought over $30 million in damages, and by the time of trial, Orion was seeking

4 over $40 million. Moreover, there are no previous judgments in Defendants' favor, and the Sunny

5 Defendants timely appealed following the trial. The Ninth Circuit panel affirmed in part and

6 vacated in part the judgment in this case.

7     Specifically, the panel affirmed that: (i) the district court properly admitted the expert

8 report and testimony of Dr. Jose Sasian and Dr. J. Douglas Zona; (ii) the district court did not

9 abuse its discretion by giving the jury a mid-trial curative instruction limiting the scope of the

10 testimony of the rebuttal expert on damages, Dr. Celeste Saravia; (iii) Orion presented sufficient

11 evidence to support the jury's verdict in Orion's favor on its Sherman Act § 1 claims; (iv)

12 evidence supported the jury's verdict for Orion on its Sherman Act § 2 claims of attempted

13 monopolization and conspiracy to monopolize the global telescope manufacturing market; (v) the

14 panel affirmed the jury's verdict for Orion on its Clayton Act § 7 claim; (vi) the district court did

15 not abuse its discretion in imposing injunctive relief against Ningbo Sunny under Clayton Act §

16 16; and (vii) Orion offered substantial evidence in support of the district court's finding that the

17 conspiracy between Sunny and Synta continued post 2016.[5] *Optronic Techs., Inc.*, 20 F.4th 466.

18 In sum, Ningbo Sunny has had ample opportunity to litigate and defend the merits of the suit such

19 that the application of collateral estoppel would not be procedurally unfair.

20     Turning to the next *Parklane* consideration, the Court must also determine whether

21 permitting the application of offensive collateral estoppel will "reward a private plaintiff who

22 could have joined in the previous action." *Parklane*, 439 U.S. at 332. The *Parklane* Court was

23 concerned that the offensive application of collateral estoppel would create perverse incentives,

24 observing that "[s]ince a plaintiff will be able to rely on a previous judgment against a defendant

---

[5] The panel vacated in part only with respect to the valuation of the settlement set-off, which it remanded for further proceedings consistent with its opinion. *Optronic Techs., Inc.*, 20 F.4th at 488.

Case No.: 5:20-cv-03642-EJD
ORDER DENYING PLS.' MOT. FOR SUMM. J.
15

1   but will not be bound by that judgment if the defendant wins, the plaintiff has every incentive to

2   adopt a 'wait and see' attitude, in the hope that the first action by another plaintiff will result in a

3   favorable judgment."[6]  *Id.* at 330.  The Court finds no such issue here.

4         Here, Plaintiff Jason Steele is an individual consumer who directly purchased from

5   Defendant Celestron.  Like Orion, Plaintiffs Aurora and Pioneer and are businesses that sell

6   consumer telescopes purchased from telescope manufacturers but Plaintiffs argue that they do not

7   participate on the same side of the consumer telescope market as Orion.  Plaintiffs participate on

8   the purchaser and consumer side while Orion participates on the manufacturing and distribution

9   side.  Mot. at 18.  Furthermore, Plaintiffs contend that they were not aware of the *Orion* Action at

10  the time it was litigated.  *Id.* at 17.  The Court finds that Plaintiffs have provided adequate

11  explanation of why they did not join the previous action.

12        Finally, the Court turns to the fairness considerations regarding the other Defendants.

13  *Parklane Hosiery*, 439 U.S. at 330–331.  Citing *AIG*, Defendants argue that the application of

14  offensive, non-mutual issue preclusion as to Ningbo Sunny would prejudice the other Defendants

15  who were not party to the *Orion* Action.  Opp'n at 4 (discussing *AIG Ret. Servs., Inc. v. Altus Fin.*

16  *S.A.*, No. 05-CV-1035-JFW (CWX), 2011 WL 13213602 (C.D. Cal. July 21, 2011)).  In *AIG*,

17  plaintiff alleged that multiple defendants conspired to defraud AIG into joining a bid to defraud

18  the Insurance Commissioner for the State of California who was overseeing a competitive bidding

19  process for the assets of ELIC Estate pursuant to a judicially supervised rehabilitation plan.  *AIG*

20  *Ret. Servs., Inc.*, 2011 WL 13213602.  Plaintiff sought to collaterally estop one defendant,

21  Artemis, from challenging the jury's finding in a previous action that Artemis conspired "to obtain

22  assets of the ELIC Estate by fraud and that the conspiracy caused harm to the ELIC Estate."  *Id.* at

23  *2.  The other defendants in *AIG* were not party nor privy to the previous action.  The court noted,

---

[6] In the context of the "wait and see" approach, some courts following *Parklane* have focused primarily on situations where plaintiffs had opted out of the class litigation and then asserted offensive collateral estoppel in a later suit to collaterally estop the defendant after a class victory. *See, e.g.*, *Premier Elec. Constr. Co. v. NECA*, 814 F.2d 358 (7th Cir. 1987); *Transocean Tender Offer Sec. Litig.*, 455 F. Supp. 999 (N.D. Ill. 1978).  This is distinguishable from the instant action because the *Orion* Action was not a class action suit.

Case No.:   5:20-cv-03642-EJD
ORDER DENYING PLS.' MOT. FOR SUMM. J.
16

1  amongst other concerns, the potentially prejudicial situation that would result from collaterally
2  estopping defendant Artemis "from arguing that it joined a conspiracy in this case while the other
3  defendants would be presenting evidence and vigorously arguing that the conspiracy Artemis
4  allegedly joined never existed, which would result in juror confusion even with appropriate
5  limiting instructions." *Id.* at *6. The Undersigned finds this case raises similar concerns.

Here, the *Orion* Action resulted in a jury verdict against the Sunny Defendants and Meade but not as to the co-conspirators, who had settled with Orion pre-suit. None of the Answering Defendants in the DPP action were party or privy to the *Orion* Action. The jury made the following findings:

> 1.) Ningbo Sunny, Synta, and Celestron unlawfully fixed the prices of telescopes,
> 2.) Ningbo Sunny, Synta, and Celestron illicitly colluded together to assist Ningbo Sunny illegally acquire Meade Instruments, Corp. ("Meade"),
> 3.) Ningbo Sunny, Synta, Celestron, and Meade illegally allocated the market for telescopes and telescope accessories, and
> 4.) Ningbo Sunny, Synta, Celestron, and Meade conspired to monopolize the market for telescopes and telescope accessories.

Mot. at 1. The Answering Defendants argue that it would be unfair and prejudicial to give any issue preclusive effect in this matter because Plaintiffs would be allowed to argue that, based on the *Orion* Action, Ningbo Sunny conclusively joined the conspiracy to fix prices and monopolize the telescope market while the Answering Defendants argue that they never joined a conspiracy and/or that the conspiracy never existed, both of which would likely confuse the jury. Opp'n at 4–5. The Court agrees. This situation is similar to the situation in *AIG*, which the court found to be unfair to the other defendants. *AIG Ret. Servs.*, 2011 WL 13213602, at *6. The *AIG* court reasoned that, "[i]f the Court allowed issue preclusion while simultaneously protecting the rights and interests of the other defendants, there would be minimal efficiency gains and a substantial likelihood of jury confusion and prejudice." *Id.* at *7. Other district courts have expressed similar concerns. *See Schwab v. Philip Morris USA, Inc.*, No. CV 04-1945 (JBW), 2005 WL 2401645 (E.D.N.Y. Sept. 27, 2005) ("First, the application to only one of many defendants would confuse the jury, making administration of the case difficult."); *see also Grisham v. Philip Morris, Inc.*,

Case No.: 5:20-cv-03642-EJD
ORDER DENYING PLS.' MOT. FOR SUMM. J.
17

670 F.Supp. 2d 1014, 1037 (C.D. Cal. 2009).

In addition to fairness concerns, non-mutual offensive collateral estoppel would not serve the interest of judicial economy in this case. Because the Sunny Defendants were the only Defendants in this action who were found liable in the *Orion* Action, DPPs must still prove that Answering Defendants joined the alleged conspiracies. *AIG Ret. Servs.*, 2011 WL 13213602, at *6. Therefore, it is unlikely that any preclusive effects would save significant time or judicial resources. *Id.* (collecting cases).

In short, the *Parklane* considerations weigh against application of non-mutual offensive collateral estoppel because it would be prejudicial to the other Defendants and its application does not serve judicial economy in this case.

## IV.   CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiffs' motion for summary judgment against Defendant Ningbo Sunny.

**IT IS SO ORDERED.**

Dated: September 12, 2023

EDWARD J. DAVILA
United States District Judge

Case No.: 5:20-cv-03642-EJD
ORDER DENYING PLS.' MOT. FOR SUMM. J.
18