1   CHRISTOPHER L. FROST (SBN 200336)
    chris@frostllp.com
2   JOHN MAATTA (SBN 83683)
    john@frostllp.com
3   JOSHUA S. STAMBAUGH (SBN 233834)
    josh@frostllp.com
4   FROST LLP
    10960 Wilshire Blvd., Suite 1260
5   Los Angeles, California 90024
    Telephone: (424) 254-0441
6
7   SHAUNA IZADI (ADMITTED via *Pro Hac Vice*)
    sizadi@izadilegal.com
    IZADI LEGAL GROUP, PLLC
8
    Attorneys for Defendants,
9   Synta Technology Corp. of Taiwan;
    Suzhou Synta Optical Technology Co.;
10  Nantong Schmidt Opt-Electrical Technology Co. Ltd.;
    Synta Canada International Enterprises Ltd.;
11  Pacific Telescope Corp.; Olivon Manufacturing Co. Ltd.;
    SW Technology Corp.; Celestron Acquisition, LLC;
12  Olivon USA LLC; David Shen; Joseph Lupica; and
    David Anderson

13              UNITED STATES DISTRICT COURT

14      NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

15  IN RE: TELESCOPE ANTITRUST            Case No. 5:20-cv-03642-EJD
    LITIGATION
16
17  _____           **DEFENDANTS' APPLICATION AND**
    This document relates to              **MEMORANDUM IN SUPPORT OF**
18                                        **ATTORNEYS' FEES AND COSTS**
    SPECTRUM SCIENTIFICS LLC, RADIO       **PURSUANT TO ORDER RE:**
19  CITY, INC., and those similarly situated,   **DEFENDANTS' MOTION FOR**
                                          **TERMINATING SANCTIONS [ECF 486]**
20              Plaintiff,
                                          *[Declarations of Christopher Frost and*
21      vs.                               *Shuana Izadi; and [Proposed] Order*
                                          *Concurrently Filed Herewith]*
22  CELESTRON ACQUISITION, LLC, SYNTA
    CANADA INT'L ENTERPRISES LTD.,
23  SKYWATCHER USA, SKY-WATCHER
    CANADA, SW TECHNOLOGY CORP.,          Judge:  Hon. Edward J. Davila
24  OLIVON MANUFACTURING CO. LTD.,        Date: TBD
    OLIVON USA, LLC, COREY LEE, SYLVIA    Time  TBD
25  SHEN, JEAN SHEN, JOSEPH LUPICA,       Ctrm   DBD
    DAVE ANDERSON, LAURENCE HUEN,
26  and DOES 1-50,

27              Defendants.
    _____
28

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................. 1

II.  FACTUAL BACKGROUND .................................................................................. 4

III. ARGUMENT ...................................................................................................... 5

   A. Radio City's Opposition to Defendants' Motion for Terminating Sanctions Exemplifies It's Bad Faith, and It's Counsel's Bad Faith, Through Their Refusal to Conduct Discovery in Good Faith ............................................................................................. 5

   B. Defendants are Entitled to Their Fees Incurred as Result of the Multiple Discovery Disputes Arising Out of Radio City's Concealment of Documents and Spoliation of Documents ........ 6

   C. Deposition Expenses and Costs Incurred by Defendants .......................................... 9

IV.  FEES WARRANTED AS A RESULT OF BHB'S RECRUITMENT OF, AND CONTENTIOUS PROSECUTION OF  CLAIMS ON BEHALF OF, RADIO CITY ............ 9

   A. Monetary Sanctions Are Necessary to Deter BHB's Discovery Abuses ....................... 10

   B. Defendants Seek Attorneys' Fees Stemming from Radio City's Spoliation and Discovery Misconduct Precipitating the Motion for Terminating Sanctions ..................................... 11

V.   DEFENDANTS' ATTORNEYS' FEES REQUEST ................................................... 11

   A. Legal Standard .................................................................................................. 11

   B. Defendants' Requested Fees and Costs are Reasonable ............................................ 13

   C. Defendants' Lawyers Spent a Reasonable, Necessary and Well-Documented Amount of Hours on this Case ............................................................................................. 14

   D. Defendants' Counsel's Hourly Rates are Reasonable .............................................. 16

   E. The Amount of Fees Sought by Defendants is Reasonable ....................................... 17

DEFENDANTS' MOTION FOR FEES

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*B.K.B. v. Maui Police Dep't*,
  276 F.3d 1091 (2002) ................................................................. 12, 13

*Barjon v. Dalton*,
  132 F.3d 496 (1997) ......................................................................... 16

*Blum v. Stenson*,
  465 U.S. 886 (1984) ................................................................... 13, 16

*Corley v. Rosewood Care Ctr.*,
  388 F.3d 990 (2004) ......................................................................... 12

*Dish Network L.L.C. v. Jadoo TV, Inc.*,
  U.S. Dist. LEXIS 221869 (2019) ..................................................... 17

*Dixon v. City of Oakland*,
  2014 WL 6951260 2014) ................................................................. 14

*Fink v. Gomez*,
  239 F.3d 989 (2001) ......................................................................... 13

*Graham v. Daimler Chrysler Corp.*,
  34 Cal.4th 553 (2004) ...................................................................... 14

*In re Grivas*,
  105 B.R. 954 (Bankr. S.D. Cal. 1989) ............................................. 16

*Haeger v. Goodyear Tire & Rubber Co.*,
  813 F.3d 1233 (2016) ....................................................................... 12

*Henry v. Gill Indus., Inc.*,
  983 F.2d 943 (1993) ......................................................................... 11

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) ......................................................................... 16

*Intel Corp. v. Terabyte Int'l*,
  6 F.3d 614 (1986) ............................................................................. 13

*Jennifer Marino v. YummyEarth Inc.*
  (N.D. Cal. Case No. 3:22-cv-02739) ............................................ 5, 10

*In re Keegan Mgmt. Co. Sec. Lit.*,
  78 F.3d 431 (1996) ........................................................................... 12

*Kerr v. Screen Extras Guild, Inc.*,
    526 F.2d 67 (1975) ................................................................................. 13, 14

*Ketchum v. Moses*,
    24 Cal.4th 1122 (2001) ................................................................................. 14

*Kim v. Fujikawa*,
    871 F.2d 1427 (1989) ................................................................................. 16

*Leon v. IDX Sys. Corp.*,
    464 F.3d 951 (2006) ................................................................................. 13

*Mirch v. Frank*,
    266 Fed. App'x 586 (2008) ................................................................................. 13

*Morales v. City of San Rafalel*,
    96 F.3d 359 (1996) ................................................................................. 13

*Nguyen v. Regents of the Univ. of Cal.*,
    LEXIS 226622 (2018) ................................................................................. 17

*Toussaint v. McCarthy*,
    826 F.2d 901 (1987) ................................................................................. 16

*Trulis v. Barton*,
    107 F.3d 685 (1995) ................................................................................. 12

*U.S. v. Corinthian College, Inc.*,
    2:07-cv-01984 (C.D. Cal., June 6, 2013) ................................................................................. 10

*U.S. v. ITT Educational Services, Inc.*,
    WL 1028794 (2012) ................................................................................. 10

*Van Gerwen v. Guarantee Mut. Life Co.*,
    214 F.3d 1041 (2000) ................................................................................. 16

*Welch v. Metro. Life Ins. Co.*,
    480 F.3d 942 (2007) ................................................................................. 13


**Statutes**

18 U.S.C. § 401 ................................................................................. 13

28 U.S.C. § 1927 ................................................................................. 10, 12, 13

DEFENDANTS' MOTION FOR FEES

**Other Authorities**

Rule 37 ................................................................................................................................. 11

Rule 37(d) ............................................................................................................................ 12

DEFENDANTS' MOTION FOR FEES

Defendants respectfully submit this application for attorneys' fees and costs, and the accompanying memorandum of points and authorities pursuant to the Court's August 25, 2023 Order granting in part Defendants' motion for terminating sanctions against direct purchaser plaintiffs ("DPPs"). [Dkt. 486]. As explicitly held by this Court: "[A]ttorneys' fees arising from the preparation and litigation of this motion are appropriate based on [Radio City and BraunHagey & Borden's discovery] misconduct, as well as to deter future misconduct and restore Defendants to the position they would have been in had Plaintiff faithfully fulfilled its discovery obligations." [Dkt. 486 at p. 13-14].

## I.   **INTRODUCTION**

After nearly three years into this litigation, the Court disqualified Radio City as the DPP class representative by granting, in part, Defendants' motion for terminating sanctions. The Court found that Radio City and its counsel, BraunHagey & Borden, LLP ("BHB"), engaged in egregious and inexcusable discovery misconduct.  The Court took Radio City and its counsel to task for their destruction of evidence, failure to follow the discovery rules, and otherwise vexatious conduct. Indeed, the Court held that Radio City and BHB "acted willfully, with fault, and/or in bad faith by consciously disregarding its obligations to preserve relevant evidence during the course of litigation," and thereby disqualified Radio City as a class representative. (Dkt. 486 at 8)  The Court rightfully found BHB's conduct "troubling," "inexcusable," "disturbing" and "disappointing." (Dkt. 486 at 8, 9 & 20.)

Therefore, Defendants appropriately seek reimbursement of their attorneys' fees, costs and expenses from Radio City and BHB, jointly and severally, pursuant to this Court's Order, and under the Court's inherent authority to impose such sanctions.  From the onset, Radio City's case was litigated in the most contentious fashion, and every discovery issue was a battle.  For at least a year *prior* to the February 1, 2023 Maline Fish deposition, BHB repeatedly represented to Defendants and the Court that they produced "everything," and were in full compliance with their preservation and production obligations.  Fortunately, Defendants uncovered the spoliation, and Radio City's deceptive "house of cards" came tumbling down. Unfortunately, however, this discovery came at

substantial and extremely prejudicial expense to the Defendants, who have incurred millions of dollars defending the DPPs action, seeking discovery from Radio City, battling DPPs' counsel in discovery disputes regarding Radio City, preparing for and taking Radio City's deposition, and of course preparing and arguing the motion to terminate Radio City as a class representative.  As such, Defendants seek monetary sanctions in the amount of $311,714.50, all of which was caused directly by Radio City's and BHB's willful and bad faith discovery misconduct.  As the Court has already held, Defendants are entitled to these monetary sanctions is order to compensate Defendants, ensure justice is served, punish the spoliating perpetrators and deter further misconduct.

Due to the egregious misconduct and intentional malfeasance perpetrated by Radio City and its counsel, Defendants endured three relentless years of litigation against a fictitious and artificially constructed party, hemorrhaging millions of dollars in legal fees.  Throughout this ordeal, Radio City obstinately resisted the truth and strategically misled, obfuscated, and attempted to disorient the Defendants at every conceivable juncture.

Radio City and its counsel continued to pursue its objectively frivolous case up until the bitter end by attempting to defend its intentional spoliation before this Court and refusing to voluntarily withdraw Radio City as a class representative.  They did so in a deliberately vexatious manner that significantly and unnecessarily multiplied the costs of defense.  Radio City and its counsel executed a strategy to avert the discovery of the spoliation by any conceivable means, and to burden Defendants with frivolous discovery disputes.  Among other things, BHB:

- Recruited Radio City as a party by cold-calling Maline Fish as a potential class representative who purchased telescopes from Celestron (Dkt. 322-2 at p. 30:13 – 33:19);

- Repeatedly assured Defendants and this Court that Radio City was in full compliance with its preservation and discovery obligations, and repeatedly represented that all documents had been collected and produced (Dkt. 486 at p. 3-4; );

- Ignored their duties under the Court's Orders and the Federal Rules of Civil Procedure by failing to turn over all files and records in their possession, custody or control concerning the monthly sales reports, open invoice reports, inventory reports, used sales reports, and

register reports, which were subject to multiple written discovery requests;

- Represented to Defendants that Radio City would be removed as class representative, but then later refused, and then later attempted to legitimatize their discovery misconduct and intentional spoliation (Dkt. 341);

- Advanced patently frivolous legal arguments in opposition to Defendants' motion for terminating sanctions by claiming that the destroyed documents were redundant and were destroyed in the ordinary course of business even though they were destroyed more than two years after the initiation of this litigation and four years after Radio City closed its storefront. (Dkt. 320: 2, Dkt. 286 at p. 4; Dkt. 341 at p. 5, Dkt. 341-3);

- Even as of late as August 24, 2023, prior to the entry of the Order, BHB not only refused to voluntarily scan and produce two *additional* boxes of documents obtained from Radio City, but also categorically refused to identify what document requests the two boxes of documents were responsive to (Izadi Decl. at ¶9);

As the record clearly reflects, Radio City and BHB actively concealed the existence of thousands of documents and destroyed other key documents while litigation was pending. Defendants suffered prejudice due to Radio City and BHB's conduct, and such discovery abuse is not in isolation, and has continued up through the entry of the Order on Defendants' motion for sanctions. Amidst Radio City and BHBs spoliation of evidence, DPPs restart of the clock with new representatives at the eleventh hour, has unduly prejudiced Defendants, who have incurred significant legal fees in discovery and discovery disputes with Radio City over these past three years.

As set forth herein, not only did Radio City and BHB engage in bad faith and intentional misconduct that violates the Federal Rules of Civil Procedure, Radio City and BHB actively concealed their misconduct and repeatedly rebuffed Defendants' discovery efforts to investigate at every single turn since at least early 2021 in order to avoid detection. Radio City and BHB's attempts to thwart Defendants' investigation was continuous and deliberate with multiple affirmative representations to not only the Defendants' counsel, but also to this Court. Radio City's and BHB's recalcitrance caused Defendants to bring their motion for terminating sanctions.

Consequently, Radio City and BHB should bear the burden of their own doings. Thus, Defendants should be awarded all their attorneys' fees that flow and relate to their continuous chase for the truth, which was finally uncovered through the testimony of Maline Fish.

The Court found BHB's conduct "troubling," "inexcusable," "disturbing" and "disappointing." (Dkt. 486 at 8, 9 & 20.)  Therefore, Defendants respectfully request $311,714.50 in attorney's fees. Such an award is not only required to make Defendants whole but a necessary step to uphold the sanctity of the legal system, caution potential violators, and ensure that the judiciary remains a realm of justice and not a playground for deception.

## II.    FACTUAL BACKGROUND

The basis of this motion is set forth in this Court's Order and opinion dated August 25, 2023, granting in part, and denying in part, Defendants' motion for terminating sanctions, disqualifying Radio City from this case, and explaining in detail BHB's discovery misconduct. [Dkt. 486].  For the sake of judicial efficiency, Defendants hereby incorporate the Court's Order, as well as Defendants' previous filings reflecting the lack of candor displayed by Radio City and BHB during the course of discovery, set forth below:

- 01/06/202  - Joint Discovery Letter re DPP customer lists [Dkt. 294]
- 01/13/2023 - Discovery Order re 394 January 6, 2023 Discovery Dispute [Dkt. 296]
- 01/17/2023 - Joint Discovery Letter re DPP discovery collection efforts [Dkt. 298]
- 01/20/2023 - Joint Discovery Letter re deposition of Radio City   [Dkt. 305]
- 02/01/2023 -  Discovery Order re 298  and 305 Discovery Dispute [Dkt. 314]
- 02/12/2023 - Defendants' motion for terminating sanctions [Dkt. 322] and reply brief [Dkt. 349]
- 02/17/2023 – Defendants' Motion for an Order: (1) for Turnover of Sales, Used Sales, Inventory, Invoice, and Register Reports; and (2) Setting Order to Show Cause Re Sanctions for Misrepresentations to the Court and Violation of Court Order [Dkt. 325]
- 03/21/2023 -  Joint Discovery Letter Brief re Deposition Dates for DPPs' Expert Christopher Groves [Dkt. 364]

- 03/22/2023 -  Discovery Order re 364  March 21, 2023 Discovery Dispute [Dkt. 366]
- 03/27/2023 - Defendants' Motion to Strike DPPS' Opposition and Groves Declaration  [Dkt. 372];

Defendants' motion for terminating sanctions and motion for turnover order both provide a detailed glimpse into the charade of unquestionable concealment and destruction of discovery committed by Radio City and its counsel and the underhanded litigation tactics employed by Radio City and BHB, time and again, in affirmatively concealing and disregarding their obligations to preserve relevant evidence during the course of litigation.

In granting the Defendants' motion for sanctions, the Court held that Radio City and BHB "acted willfully, with fault and/or in bad faith" by consciously failing to preserve and timely produce information. (Dkt. 486 at 8.) Here, the discovery abuses committed by Radio City and BHB are not mere gamesmanship or "garden variety" of discovery abuses.   Rather, their conduct was so egregious that the Court founds that Radio City has forfeited its right to proceed in court.[1]

## III.   ARGUMENT

### A.   Radio City's Opposition to Defendants' Motion for Terminating Sanctions Exemplifies It's Bad Faith, and It's Counsel's Bad Faith, Through Their Refusal to Conduct Discovery in Good Faith

The capstone to Radio City's spoliation conduct was its resistance to stepping down as class representative and its opposition to Defendants' motion for terminating sanctions.  Radio City failed to offer a single non-frivolous argument in favor of maintaining Radio City as a class representative. Instead, it resorted to ignoring controlling precedent and misstating the facts and the law. Among other things, Radio City and its counsel brazenly asserted that:

- The destruction was "harmless" because Defendants "have not been deprived of any material documents."  [Dkt. 341 at 12; Dkt 486 at p. 11];

---

[1] DPP Counsel's was disqualified in a prior matter based on similar misconduct in this very district. *See Gotham City Online, LLC v. Art.com, Inc.*, (N.D. Cal. Case No. C14-00991JSW).  Other litigants in the case of *Jennifer Marino v. YummyEarth Inc.*, (N.D. Cal. Case No. 3:22-cv-02739) have noted DPP Counsel's history of raising "phantom sanctions issues" as part of their "scorched-earth practice."

- Radio City "only" got "rid of" key documents as opposed to intentionally destroying them, which plaintiffs claimed was done in the normal course of business (despite the fact that litigation had been ongoing for years at the time of spoliation) [Dkt. 341 at 9];

- The "complete" underlying data that was destroyed had purportedly been provided in the past. [Dkt. 341] However, their assertions crumbled under scrutiny, as decisively refuted by the declarations of W. Cai and S. Izadi. [Dkt. 349];

- Its refusal to comply with the Court's Order was justified because its expert wanted to attend a conference rather than comply with a Court Order (4/6/23 Hrg Trans. at p.43, attached to Izadi Decl. as B);

- The destroyed evidence had no bearing on the issues in this case [Dkt 341]; and

- Referencing hundreds of random Bates numbers to create a false appearance that Radio City produced more substantive data than they did  [Dkt. 341, 385].

The cumulative weight of Radio City's actions and arguments, saturated in bad faith, illuminates the necessity for the Court to recognize the depth of their misconduct and mete out commensurate sanctions.

**B.** **Defendants are Entitled to Their Fees Incurred as Result of the Multiple Discovery Disputes Arising Out of Radio City's Concealment of Documents and Spoliation of Documents**

The charade that Radio City maintained for three years is quite extraordinary. BHB and Radio City gaslighted Defendants since 2021, making affirmative representations as to their compliance with Defendants' multiple discovery requests.

In their January 6, 2023 insert into the Joint Letter Brief re: production of customer information, [Dkt. 294],  Radio City, by and through BHB, stated and represented to Defendants and this Court, the following:

- "The matter actually before the Court—objections served by DPPs two years ago in December 2020—is academic, because (as DPPs have advised Defendants) ***DPPs have produced all documents that would contain relevant customer information in response to***

*other of Defendants' numerous and overlapping RFPs*, and identified them by bates number." [Dkt 294 at fn 1, p. 4] (emphasis added);

- "***DPPs have told Defendants that all relevant, responsive, non-privileged hardcopy transactional documents in Radio City's possession have been produced*** (without regard to search terms); that all of Radio City's functioning devices have had the search terms agreed by the parties run upon them; and that all non-privileged ESI that hit upon the search terms agreed by the parties has been produced. *DPPs have also confirmed that there are no additional responsive documents that do not hit upon the search terms of which Radio City is aware, and that there are no sources of likely responsive documents of which Radio City is aware other than the hardcopy documents (which have been produced)* and its ESI (which has been produced via the search terms agreed by the parties pursuant to Court ordered stipulation)" [Dkt. 294 at p. 5] (emphasis added);

- "***This information has already been provided to Defendants.***" [Dkt. 294 at p. 5] (emphasis added);

- "In sum, *Radio City has complied with its discovery obligations*, and the motion should be denied" [Dkt. 294 at p. 5] (emphasis added);

- "On September 24, 2021 (i.e., more than a year ago), DPPs produced 48,483 pages of sales invoices and purchase orders. *These materials represent the relevant transactional data in Radio City's possession, custody, and control.*" [Dkt. 294 at p. 5] (emphasis added); and

- "DPPs *searched all available ESI custodians and locations*."  [Dkt. 294 at fn 6 at p. 7] (emphasis added)

The Court, taking BHB and Radio City's representations as true, set forth in its Order on the Discovery Dispute Dkt. 294:

- "DPPs appear to have withdrawn their objections, and now say that they have produced 'all relevant, responsive, non-privileged hardcopy transactional documents in plaintiff Radio City's possession' (without regard to search terms). . . ."

- "DPPs say that 'there are no additional responsive documents that do not hit upon the search

terms of which Radio City is aware,' and that there are no other sources of likely responsive documents that have already been searched as described." [Dkt. No. 296.]

On January 31, 2023, this Court held a further hearing on related concerns raised by Defendants concerning  Radio City's refusal to search its electronic data and devices. (Dkt. No. 314).  During the January 31, 2023 hearing, DPP Plaintiffs' counsel represented to the Court the following:

- "I think we produced everything." [Dkt. 325-25 at 6:6.];
- "We ran the search terms, the search – we produced everything that hit from that." [Dkt. 325-25 at 11:22-23.]; and
- "I'm just tell you (sic), to the best of my understanding, knowledge, and everything else, that we did it the right way." [Dkt. 325-25 at 21:6-8.]

Moreover, in the Joint Discovery Briefs (Dkt. Nos. 298 and 305) that precipitated the January 31 hearing, DPP Plaintiffs represented to the Defendants and to this Court the following:

- "Radio City has produced all of its hardcopy purchase orders and invoices in its possession as they were maintained, which include customer information."  [Dkt. No. 296 at pg. 1.];
- "Instead, Defendants assert that they 'want confirmation that all customer-identifying data has been produced, and what steps were taken to ensure the veracity and completeness of that production'—but this information has already been provided to Defendants."  [Dkt. No. 296 at  pg. 5 (emph. added).];
- "DPPs have told Defendants that all relevant, responsive, non-privileged hardcopy transactional documents in Radio City's possession have been produced (without regard to search terms)." [*Id*.];
- "DPPs have also confirmed that there are no additional responsive documents that do not hit upon the search terms of which Radio City is aware, and that there are no sources of likely responsive documents of which Radio City is aware other than the hardcopy documents (which have been produced) and its ESI (which has been produced via the

search terms agreed by the parties pursuant to Court ordered stipulation)." [*Id*. (emph. added).]; and

- "On September 24, 2021 (i.e., more than a year ago), DPPs produced 48,483 pages of sales invoices and purchase orders. These materials represent the relevant transactional data in Radio City's possession, custody, and control." [*Id*.]

The January 31 hearing resulted in a February 1 discovery order by this Court. [Dkt. No. 314.]

Both of the foregoing Orders follow the Court's Order of two years ago, dated February 19, 2021. More specifically, the February 19, 2021 Order Regarding the Production of ESI and Hardcopy Documents provides, in part:

> **D. Hard Copy Document Storage**: During the pendency of this litigation, the parties shall make reasonable efforts **to preserve the originals of all hard copy documents** as to which there may be issues of legibility of all or any part of the production copy. Each party reserves the right to request to inspect such original documents of the opposing party or parties, which request shall not be unreasonably denied. [ECF No. 122, emph. added.]

The above discovery disputes arose solely as a result of Radio City and BHB's misconduct, for which Defendants incurred substantial attorneys' fees and wasted hundreds of hours as a result thereof.

### C.   Deposition Expenses and Costs Incurred by Defendants

Defendants seek payment from BHB and Radio City for the expenses and costs associated with the deposition of Maline Fish, which took place in Minneapolis, Minnesota on February 1, 2023 wherein it was finally revealed that after years of litigation that Radio City had destroyed key evidence months before her deposition. It was through this very deposition that Defendants were finally able to establish that Radio City had failed to produce responsive information during discovery. These de[position fees amount to $48,638.50 (See Declarations of Frost and Izadi)

### IV.   FEES WARRANTED AS A RESULT OF BHB'S RECRUITMENT OF, AND CONTENTIOUS PROSECUTION OF CLAIMS ON BEHALF OF, RADIO CITY

BHB's filing of the lawsuit on behalf of Radio City demonstrates bad faith because BHB

1  knowingly recruited Radio City who had no basis for believing that Defendants violated any laws.

2  (Dkt. 322-2 at p. 30:13 – 33:19 [Athul, an attorney from BHB cold called Maline Fish about serving

3  as class representative because she was a Celestron dealer]).

4      Courts have found conduct sanctionable under § 1927 where an attorney "educates"

5  plaintiffs as to their causes of action. See *U.S. v. ITT Educational Services, Inc.*, No. 1:07–cv–0867–

6  TWP–MJD, 2012 WL 1028794, at *11 (S.D. Ind., 2012) (awarding attorneys' fees and sanctions

7  where Relator "had no idea that ITT may have violated the FCA or that she may have had a plausible

8  lawsuit against her former employer until she was approached and 'educated' by [counsel].

9  Common sense suggests that [Relator] is worlds apart from the type of genuine whistleblower

10  contemplated by the FCA."); *see also U.S. v. Corinthian College, Inc.,* 2:07-cv-01984 (C.D. Cal.,

11  June 6, 2013) (finding counsel "pursued the case in bad faith because he manufactured this case by

12  knowingly recruiting Relators who he knew lacked the requisite knowledge of the conduct at issue.")

13      Although Defendants are not seeking to recover all their attorneys' fees since the filing of

14  this lawsuit, this fact weighs heavily in favor of a finding of overall bad faith of Radio City and

15  BHB since the onset of this litigation.

16  **A.    <u>Monetary Sanctions Are Necessary to Deter BHB's Discovery Abuses</u>**

17      BHB's scorched-earth and bad faith conduct has not only been a pattern in practice in this

18  lawsuit, but also in other lawsuits.[2]  Not only has Radio City and BHB disregarded discovery rules

19  and this Court's Orders (as this Court found in Dkt. 486), they have also continued to fail to comply

20  with their discovery obligations since Defendants' February 12, 2023 filing of the motion for

21  terminating sanctions.  For example, on August 24, 2023, during the parties' regular meet-and-

22  confer, BHB again refused to scan and provide two additional boxes of documents in the possession

23  of Radio City, and also further refused to identify the contents thereof despite multiple inquiries

24  form Defendants since Defendants first learned of the additional two boxes (in addition to the 19

---

25

26  [2] DPP Counsel's was disqualified in a prior matter based on similar misconduct in this very district.
27  *See Gotham City Online, LLC v. Art.com, Inc.*, (N.D. Cal. Case No. C14-00991JSW).  Other litigants
   in the case of *Jennifer Marino v. YummyEarth Inc.*, (N.D. Cal. Case No. 3:22-cv-02739) have noted
28  DPP Counsel's history of raising "phantom sanctions issues" as part of their "scorched-earth
   practice."

boxes discovered during the deposition).[3]  (Izadi Decl. at ¶9).  Moreover, BHB has demonstrated their disregard for the Discovery Rules and candor to this Court by failing to quarantine privileged documents pursuant to timely claw back demands, and then representing to the Court inaccurate statements of facts. (Dkt. 404. 405, 407). This Court explicitly found that conduct "unprofessional." (See 4/25/23 hearing trans. at p. 23 and 26, attached to Izadi Declaration)

### B. Defendants Seek Attorneys' Fees Stemming from Radio City's Spoliation and Discovery Misconduct Precipitating the Motion for Terminating Sanctions

The record herein, fortified by the corroborative declarations and extant pleadings, compellingly underscores the justice of awarding Defendants in $311,714.50 in attorneys' fees, a direct consequence of Radio City's and BHB's calculated and egregious acts of bad faith.

BHB, with their manufactured class representative in tow, not only obfuscated the truth but also strategically misled the Defendants and the Court. Despite continuous assurances for over a year, which included vouching for the comprehensiveness of document production, it was subsequently unearthed that such statements were patently false. Radio City's systematic deception has not just been a grave disservice to the litigation process, but it has inflicted sever prejudice upon the Defendants.

## V. DEFENDANTS' ATTORNEYS' FEES REQUEST

### A. Legal Standard

Three separate grounds support an award of sanctions and reasonable attorneys' fees in this case.  First, this Court expressly authorized Defendants to bring the instant Fee Request to recover reasonable expenses, including attorneys' fees, incurred in connection with bringing and litigating the motion for termination sanctions pursuant to Rule 37. [Dkt. 486]; *see generally Henry v. Gill Indus., Inc.*, 983 F.2d 943, 946 (9th Cir. 1993) (affirming a district court's award of attorney fees under Rule 37(d) supported by defendant's declarations and affidavits, which demonstrated fees were "'caused by'" plaintiff's discovery misconduct); *see also Haeger v. Goodyear Tire &*

---

[3] BHB and Radio City would only allow Defendants to travel to their offices in San Francisco to inspect the two boxes. They refused to provide any specificity as to the actual contents of the boxes, or identify what document requests they were responsive to.

*Rubber Co.,* 813 F.3d 1233, 1246 (9th Cir. 2016) (awarding monetary sanctions where "Sanctionees … adopted a plan of making discovery as difficult as possible, providing only those documents they wished to provide, timing the production of the small subset of documents they were willing to turn over such that it was inordinately difficult for Plaintiffs to manage their case, and making false statements to the Court in an attempt to hide their behavior.") *rev'd on* other grounds 137 S. Ct. 1178, 1183 (2017). "A primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers,* 501 U.S. at 44-45. "

Second, BHB's frivolous and vexatious pursuit of this litigation is subject to sanctions under 28 U.S.C. § 1927, which provides:

> Any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

Sanctions under § 1927 are warranted "when an attorney knowingly or recklessly raises a frivolous argument or argues a meritorious claim for the purpose of harassing an opponent." *Trulis v. Barton,* 107 F.3d 685, 692, 694 (9th Cir. 1995) (reversing denial of sanctions under § 1927). Thus, a finding of recklessness or bad faith is required for an award of sanctions under 28 U.S.C. § 1927. <u>B.K.B. v. Maui Police Dep't,</u> 276 F.3d 1091, 1107 (9th Cir. 2002).

Because sanctions  under § 1927 are authorized only for the unreasonable multiplication of proceedings, "it applies only to unnecessary filings and tactics once a lawsuit has begun. . . [and] cannot be applied to an initial pleading." <u>In re Keegan Mgmt. Co. Sec. Lit.</u>, 78 F.3d 431, 435 (9th Cir. 1996). "Section 1927 is permissive, not mandatory. The court is not obliged to grant sanctions  once it has found unreasonable and vexatious conduct. It may do so in its discretion." <u>Corley v. Rosewood Care Ctr.,</u> 388 F.3d 990, 1014 (7th Cir. 2004).

Sanctions are also appropriate under this Court's inherent powers. "[R]eckless and knowing conduct" is "tantamount to bad faith and therefore sanctionable under the court's inherent power." *B.K.B.,* 276 F.3d at 1107-08. Thus, "[s]anctions are available" under the Court's inherent powers "for a variety of types of willful actions, including recklessness when combined with an additional

factor such as frivolousness, harassment, or an improper purpose." *Fink v. Gomez,* 239 F.3d 989, 994 (9th Cir. 2001)

Moreover, attorneys' fees are independently authorized by 18 U.S.C. § 401, and this Court's inherent power.

### B.   Defendants' Requested Fees and Costs are Reasonable

Defendants' requested fees and costs are appropriate. The touchstone of an award of attorney's fees is whether the fee is "reasonable." *See Leon v. IDX Sys. Corp.*, 464 F.3d 951, 961 (9th Cir. 2006) (amount of sanctions assigned pursuant to a court's "inherent powers" must be "reasonable"). *See also Mirch v. Frank*, 266 Fed. App'x 586, 588 (9th Cir. Feb. 6 2008) (reasonableness is the "benchmark" for fees pursuant to §1927 sanctions); 28 U.S.C. § 1927 (providing for "reasonably incurred" fees). A district court has "broad discretion" in making this determination, *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 961 (9th Cir. 2006), and because it "has the benefit of first-hand contact with the litigation and the lawyers involved," any resulting award is reviewed "deferentially." *Welch v. Metro. Life Ins. Co.,* 480 F.3d 942, 946 (9th Cir. 2007).

To determine a reasonable amount of attorneys' fees, courts follow the two-part "lodestar" approach. *See Intel Corp. v. Terabyte Int'l,* 6 F.3d 614, 622 (9th Cir. 1986), *as am. on denial of reh'g and reh'g en banc.* The court first calculates the lodestar figure by multiplying the hours reasonably spent on the litigation by a reasonable hourly rate, e.g., one that is "in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation." *Blum v. Stenson,* 465 U.S. 886 (1984). Second, the court considers whether to adjust the lodestar figure based on the factors from *Kerr v. Screen Extras Guild*, *Inc*., 526 F.2d 67, 69-70 (9th Cir. 1975), that have not already been subsumed in the initial lodestar calculation. *Morales v. City of San Rafael,* 96 F.3d 359, 363-64 & n. 8-10 (9th Cir. 1996).[4]

---

[4] The *Kerr* factors include "(1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases." *Kerr,* 526 F.2d at 70.

Courts in this district apply the lodestar method for calculating reasonable attorneys' fees which is based on the reasonableness of both the time spent and the hourly rate. *Graham v. Daimler Chrysler Corp.*, 34 Cal.4th 553, 579 (2004). The lodestar is considered "the basic fee for comparable services in the community" (*see id.),* and under California law, may be adjusted by the court based on several factors. *Ketchum v. Moses,* 24 Cal.4th 1122, 1132 (2001). These factors include "(1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, [and] (4) the contingent nature of the fee award." *Ibid; Dixon v. City of Oakland*, 2014 WL 6951260, at *3 (N.D. Cal. 2014).

**C.**    **Defendants' Lawyers Spent a Reasonable, Necessary and Well-Documented Amount of Hours on this Case**

In the course of litigating this case since June 1, 2020, Defendants have incurred more than $4,000,000.00 in attorneys' fees, and more than $1,500,000 since November of 2022 through the present.  The law supports shifting all of these fees, as well as fees incurred earlier in this case, in light of Radio City's and BHB's extraordinary misconduct. *See, e.g., Chambers*, 501 U.S. at 56-57 (where district court found that defendant's actions were "part of [a] sordid scheme of deliberate misuse of the judicial process designed to defeat [plaintiff's] claim by harassment, repeated and endless delay, mountainous expense and waste of financial resources," it was "within the court's discretion to vindicate itself and compensate [plaintiff] by requiring [defendant] to pay for ***all*** attorney's fees.") (emphasis added).

Nevertheless, Defendants seek only a fragment of those fees, which are specifically attributable to the following tasks::  (1) Preparing the Motion for Terminating Sanctions[Dkt 322], (2) Preparing the Reply  [Dkt 349]; (3) Preparing the Motion to Strike the Declaration of Groves [Dkt. 372]; (4) Reviewing and Opposing Supplemental Opposition filed by Radio City [Dkt. 385]; (5) Preparing and attending the April 6 hearing on the motion for terminating sanctions; (6) Preparing the Motion for Turnover Order and Motion for Sanctions [Dkt. 325]; (7)  Preparing the joint letter brief re customer information [Dkt. 294]; (8) Preparing the joint letter brief re document

collection efforts [Dkt. 298]; (9) Preparing the joint letter brief re deposition notice of Radio City relating to collection of documents [Dkt. 305] and (10) Preparing for and attending the deposition of Maline Fish.  All of the fees incurred in connection with those tasks are directly related to, and were caused by, Radio City and BHB's egregious misconduct.

Defendants have separated out their time associated with the respective tasks that were caused by Radio City and BHB's bad faith, which is set forth below and supported by the accompanying declarations of Christopher Frost and Shauna Izadi. The amount attributable to those tasks are set forth below:

| Task | Amount |
|------|--------|
| Preparing the Motion for Terminating Sanctions [Dkt 322] | $107,646.50 |
| Preparing the Reply ISO Terminating Sanctions [Dkt 349] | $77,846.00 |
| Preparing the Motion to Strike the Declaration of Groves [Dkt 372] | $8,649.00 |
| Reviewing and Opposing Supplemental Opposition filed by Radio City [Dkt. 385] | $2,640.00 |
| Preparing and attending the April 6 hearing | $10,019.00 |
| Preparation of the Motion for Turnover Order and Motion for Sanctions [Dkt 325]; | $19,000.50 |
| Preparation of the joint letter brief re customer information [Dkt. 294]; | $22,335.00 |
| Preparation of the joint letter brief re document collection efforts [Dkt. 298] | $10,980.00 |
| Preparation of joint letter brief re deposition notice of Radio City relating to collection of documents [Dkt. 305] | $3,960.00 |
| Preparation and attendance of the deposition of Maline Fish (2/1/2023) | $48,638.50 |

(*See* Frost Decl. at ¶7; *see also* Izadi Decl.)

Defendants' attorneys have exercised "billing judgment" by submitting detailed, contemporaneous documentation of the hours that they expended in litigation this case, and have excluded any "excessive, redundant, or otherwise unnecessary hours" from its calculations. *See Hensley v. Eckerhart*, 461 U.S. 424, 433-34 (1983).  The resulting number of hours are reasonable in the context and nature of this litigation and plaintiffs' misconduct since at least 2021, and the

1  amount at stake in this action.

2  First, Defendants' attorneys' hours are reasonable because litigating this case in the face of

3  Radio City's and BHB's misconduct required an enormous amount of time and labor.  *See Kim v.*

4  *Fujikawa,* 871 F.2d 1427, 1435 (9th Cir. 1989) (affirming district court's lodestar fee findings

5  because "complexity of the facts and the law" made hours reasonable). Defendants' misconduct

6  permeated this already complex action from at least October of 2022 when Radio City and BHB

7  continued to represent that they had produced "everything."  Defendants served at least five meet-

8  and-confer letters concerning the deficiencies and gaps in Plaintiffs' discovery [Dkt. 486 at p. 3].

9  Rather than BHB checking into any of the gaps, BHB blindly stated they were in full discovery

10  compliance.  Radio City not only aggressively litigated all discovery disputes as to their gaps, but

11  they did so in a manner that required Defendants to simultaneously investigate and refute these

12  forms of obfuscation. *See Toussaint v. McCarthy*, 826 F.2d 901, 904 (9th Cir. 1987) (affirming

13  lodestar fee amount that "may [have] appear[ed] to be high" because of "complex issues" involved);

14  *In re Grivas*, 105 B.R. 954, 963 (Bankr. S.D. Cal. 1989) (rejecting objections to special litigation

15  counsel fees' by noting that the reasonableness of fees "cannot be examined in the abstract" and that

16  fees were a reaction to "aggressive and vigorous litigation" by the complaining party). Given these

17  extraordinary circumstances, the amount claimed by Defendants is reasonable. The reasonableness

18  of Defendants' fees are also confirmed by the high stakes of this litigation.

19  **D.**   **Defendants' Counsel's Hourly Rates are Reasonable**

20  The determination of whether hourly rates are reasonable is based upon the prevailing market

21  rates in the relevant community, *Blum v. Stenson,* 465 U.S. 886, 895 (1984), where the relevant

22  market is the forum in which the district court sits, and the prevailing rate is the rate prevailing in

23  the community for "similar work performed by attorneys of comparable skill, experience, and

24  reputation." *Barjon v. Dalton,* 132 F.3d 496, 500-02 (9th Cir. 1997); *see Van Gerwen v. Guarantee*

25  *Mut. Life Co*., 214 F.3d 1041, 1046 (9th Cir. 2000) ("Quality of representation is generally

26  considered at the lodestar stage in determining what is a reasonable hourly rate."). Under these

27  standards, and as many courts have recognized, Frost, Weinberg Gonser Frost, the firm at which

28

1   Defendants' attorneys were previously associated with ("WGF"), and Izadi Legal's rates are well

2   within reasonable bounds. (*See* Frost Decl. at ¶¶ 9-17; *see also* Izadi Decl. at  ¶¶ 2-4).

3         **E.        The Amount of Fees Sought by Defendants is Reasonable**

4         In order to prepare the original motion for terminating sanctions [Dkt. 322], the reply brief

5   [Dkt. 349], and analyzing the supplemental brief filed by the DPPs, Defendants' counsel, Shauna

6   Izadi, conducted 96.8 hours of legal work on the motion for terminating sanctions and litigation

7   thereof, as set forth in detail in the Declaration of Shauna Izadi, filed herewith. (Izadi Decl.).

8   Similarly, associate Weixuan Cai, also conducted 56.4 hours of legal work in connection with the

9   filing and litigation of the motion for terminating sanctions. As set forth in the accompanying

10  declarations, such time was warranted and necessary in light of the years of litigation preceding this

11  motion, and the opposition of Radio City, which required substantial analysis of thousands of Bate-

12  stamped references to refute Radio City's claim that the destroyed evidence was duplicative of other

13  produced data. (Izadi Decl. at ¶ 7; Frost Decl. at ¶ 23;).  As set forth in the accompanying

14  declarations, lead counsel, Christopher Frost, who took the deposition of Maline Fish, uncovered

15  the years of concealment of hidden data and documents as well as the destruction of key sales and

16  customer data, spent 115.4 hours on the motion for terminating sanctions.  (Frost Dec. at ¶ 19).

17        The total 379.6 hours spent on the Motion, the Reply, the response to Plaintiffs'

18  supplemental declaration (Dkts. 322, 349), and the preparation and attendance of the hearing on the

19  motion, is consistent with those awarded in California District Courts, especially in light of its

20  complexity, sophistication and detail.  (See Frost Decl); see, e.g., *Nguyen v. Regents of the Univ. of*

21  *Cal.*, No. 8:17-cv-00423-JVS-KESx, 2018 U.S. Dist. LEXIS 226622, at *10–11 (C.D. Cal. May 18,

22  2018) [approving 36.1 hours for the preparation of a joint stipulation]; *Dish Network L.L.C. v. Jadoo*

23  *TV, Inc.,* No. 2:18-cv-9768-FMO (KSx), 2019 U.S. Dist. LEXIS 221869, at *18 (C.D. Cal. Nov. 8,

24  2019).  Accordingly, the time spent by Defendants' counsel preparing the original motion for

25  terminating sanctions is reasonable.

26        Similarly, the detailed compilations to the Frost and Izadi Declarations set forth the

27  reasonableness and necessity of the preparation and attendance of the deposition of Maline Fish, the

28

preparation of the motion for turnover order, the multiple joint discovery dispute letter briefs, and the motion to strike Groves' declaration. (*See* Frost Decl.; *see also* Izadi Decl.).

The total fees incurred as a result of Radio City's and its counsel's misconduct is $311,714.50. Therefore, Defendants respectfully request that the Court order sanctions against Radio City and its counsel, jointly and severally, in the amount of $311,714.50. This amount reflects the reasonable attorneys' fees and expenses all arising and relating to the discovery issues with Radio City.  Defendants would never have incurred these fees and costs but for the bad faith of Radio City and its counsel and the inexcusable and disturbing conduct outlined herein.

DATED:  September 22, 2023                         FROST LLP


                                                   By: _____
                                                   CHRISTOPHER FROST
                                                   JOSHUA STAMBAUG
                                                   JOHN MAATTA
                                                   Attorney for Defendants, Synta Technology Corp.
                                                   of Taiwan; Suzhou Synta Optical Technology Co.;
                                                   Nantong Schmidt Opt-Electrical Technology Co.
                                                   Ltd.; Synta Canada International Enterprises Ltd.;
                                                   Pacific Telescope Corp.; Olivon Manufacturing
                                                   Co. Ltd.; SW Technology Corp.; Celestron
                                                   Acquisition, LLC; Olivon USA LLC; David Shen;
                                                   Joseph Lupica; and David Anderson