October 2, 2023

<u>VIA ECF</u>

Hon. Virginia K. DeMarchi
United States District Court for the Northern District of California
San Jose Courthouse - Courtroom 2 - 5th Floor
280 South 1st Street
San Jose, CA 95113

      RE:    **Joint Letter Brief re: Motion to Compel Defendants' Deposition Testimony
Withheld on Privilege Grounds and for *In Camera* Review of Clawed Back
Documents; *In re Telescopes Antitrust Litig.*, Nos. 5:20-cv-03642-EJD (VKD)
(N.D. Cal.), 5:20-cv-03639-EJD (VKD)**

Your Honor:

      Direct Purchaser Plaintiffs ("DPPs") and Defendants Synta Technology Corp. ("Synta
Taiwan"), Suzhou Synta Optical Technology Co., Ltd. ("Suzhou Synta"), Celestron Acquisition,
LLC ("Celestron"), David Shen, Sylvia Shen, Jack Chen, Jean Shen, Nantong Schmidt Opto-
Electrical Technology Co. Ltd., SW Technology Corporation ("SW"), Synta Canada
International Enterprises Ltd., Olivon Manufacturing Group Ltd., Joe Lupica, Corey Lee, Dave
Anderson, Laurence Huen, Olivon USA, and Pacific Telescope Corp. (collectively,
"Defendants") respectfully submit this joint discovery letter brief.

<u>STATEMENT OF DISPUTE</u>

    **DPPs' Statement:**  Defendants instructed Corey Lee and Alan Hale not to respond to
multiple questions at their depositions on attorney-client privilege grounds. The questions did not
elicit communications Defendants had with counsel or otherwise implicate the attorney-client
privilege. DPPs sought factual information, including the general subject matter of a
conversation Mr. Lee had with David Shen, and the dates Defendants were notified of events in
this case. Defendants also clawed back exhibits on the record, claiming they were inadvertently
produced. The exhibits did not contain an attorney on them, were not listed on privilege logs, and
did not appear to be privileged.

    **Defendants' Statement:** DPPs assertively probed into protected communications between
co-defendants Mr. Shen and Mr. Lee, presuming an antitrust conspiracy. These communications,
focusing on joint legal strategy and substantiated by their shared representation, are safeguarded
by the common interest privilege. DPPs' lines of questioning, which encroach upon work product
and privileged attorney-client communications, are inappropriate. Furthermore, two pivotal
documents were appropriately clawed back during the deposition, underpinned by attorney-client
and work-product privilege.  DPPs also failed to confer on any of the relief sought prior to
presenting this letter brief to Defendants. DPPs' relief should be denied.

## DPPS' POSITION

**A.     Counsel for Defendants Improperly Instructed Witnesses Not to Answer Multiple Questions at Depositions**

DPPs took the depositions of Celestron's CEO, Corey Lee on August 14 and 15 and Celestron's Chairman Emeritus, Alan Hale on August 17 and 18, 2023. The witnesses were instructed not to answer questions at their depositions that relate to facts material to this case and do not seek the substance of any communications with Defendants' attorneys.

For example, DPPs asked Mr. Lee about the last time he spoke with Celestron and Synta's principal, David Shen. Mr. Lee responded that he spoke with Mr. Shen shortly before his deposition. When asked whether they discussed this case, Defendants' lawyer instructed Mr. Lee not to answer because he would have to "by definition" disclose privileged information in order to answer. (**App'x 1**, Lee Dep. I Tr. at 64:5-23.) The attorney-client privilege protects communications between a client and their attorney. *Upjohn Co. v. United States*, 449 U.S. 383, 395-96 (1981). It does "not protect against disclosure of the underlying facts known by those who communicate with an attorney." *Pastrana v. Local 9509*, No. 06CV1779 W AJB, 2007 WL 2900477, at *3 (S.D. Cal., Sept. 28, 2007); *see also LightGuard Systems, Inc. v. Spot Devices, Inc.*, 281 F.R.D. 593, 604 (D. Nev. 2012) (privilege only applies to communications, not facts); DAVID M. GREENWALD & MICHELE L. SLACHETKA, *Protecting Confidential Legal Information, A Handbook for Analyzing Issues Under the Attorney-Client Privilege and the Work Product Doctrine* § VII.A, p. 356 (2019) ("An attorney should be careful to avoid instructing a witness not to answer questions that call for background information that is itself not privileged."). Here, Mr. Lee testified that there was no attorney present during the conversation. (**App'x 1**, Lee Dep. I Tr. at 64:5-23 (Q. "[L]et me ask you a foundation question, then: When you had a discussion with Mr. Shen last week, was an attorney present?" A. "No.").) Nonetheless, Defendants did not allow Mr. Lee to answer any other foundational questions, such that DPPs were unable to determine the general context of the conversation between Mr. Lee and Mr. Shen or whether they were even discussing this case.

If any portion of the conversation *was* somehow privileged, DPPs would still be entitled to question Mr. Lee about its general subject matter. The general context of the conversation, the identities of the participants, and where and when a conversation took place are the types of information "that would be included on a privilege log and [] the sort of information that the court needs to determine whether an objection is well-founded." GREENWALD & SLACHETKA, *supra* at 356-57; *see also New Jersey v. Sprint Corp.*, 258 F.R.D. 421, 428 (D. Kan. 2009) (holding deposition testimony that disclosed the fact that legal advice was received did not waive attorney-client privilege because only the general subject nature of defendants' communications with counsel, not the substance of those communications, was revealed).[1] Defendants' instructions not to answer were improper and their counsel's objections should be overruled.

---

[1] Defendants gave additional improper instructions not to answer on similar matters. When DPPs asked Mr. Lee whether it was his position that "Celestron never engaged in any kind of conspiracy with Ningbo Sunny or Meade or Synta or anybody else regarding the pricing or distribution of telescopes," Defendants' counsel instructed him not to answer on the basis that it

**B.    Defendants Clawed Back Non-Privileged and Responsive Exhibits During the Depositions**

Defendants also clawed back two documents during the depositions that did not appear subject to any privilege.[2] Defendants' sole explanation for clawing back an email exhibit during Mr. Lee's deposition was that it "follows from advice from counsel and reflects some of that in the document." (**App'x 1**, Lee Dep. I Tr. at 132:21-133:23 [discussing DEFS002904439].) But the email did not copy or contain an attorney on it, was not listed on Defendants' privilege logs[3], and did not otherwise appear to be privileged.[4]  Similarly, at Mr. Hale's deposition, Defendants clawed back an email because it contained information "in connection with the legal case at the request of counsel."[5] Despite DPPs pointing out that there was "not a single suggestion that this is a privileged document," including that it contained no legal advice, Defendants still clawed back the document and refused to allow Mr. Hale to answer any further questions about the document. (**App'x 2**, Hale Dep. II Tr. at 505:14-508:8 [discussing DEFS000571366].) As discussed *supra*, these documents are not subject to the attorney-client privilege because they do not involve communications between attorneys and their clients and do not transmit legal advice.

To the extent Defendants rely on the work-product doctrine to shield the documents, "the work product privilege is not implicated unless the inquiring party asks the deponent questions which improperly tend to elicit the mental impressions of the parties' attorneys." *Pastrana*, 2007 WL 2900477, at *4; *see also Hydramar, Inc. v. General Dynamics Corp.*, 119 F.R.D. 367, 372 (E.D. Pa. 1988) (Under Rule 26(b)(3), the work product doctrine protects "mental impressions, conclusions, opinions, or legal theories of an attorney...."). "[T]he work product doctrine furnishes no shield against the discovery [] of the facts that the adverse party's attorney has

---

"necessarily involves strategy and communications with counsel." (**App'x 1**, Lee Dep. I Tr. at 107:9-110:2.) When Mr. Hale was asked whether and when he learned of Orion's claims against Celestron, Defendants' counsel instructed him not to answer, stating that the questions "inherently require[] him to disclose the communication" between himself and counsel. (**App'x 2**, Hale Dep. II Tr. at 433:21-435:25.)

[2] Counsel for DPPs quarantined the exhibits as soon as Defendants clawed the documents back and have not accessed them since the depositions.

[3] Based on the general email identifying information read into the record from the document (*i.e.*, date, sender and recipients), and the information available on Defendants' privilege log, the clawed back document, DEFS002904439 did not appear on Defendants' newest privilege log, which was served three days after Mr. Lee's deposition, nor on a supplemental log, served on August 31, 2023.

[4] DPPs have notified Defendants on at least 15 different occasions that Defendants had produced potentially privileged documents, which DPPs stopped reading and quarantined. On each of those occasions, Defendants subsequently claimed that the documents were privileged.

[5] This document was not listed on Defendants' privilege logs and was not subject to any *Rico* notices from Plaintiffs. It also does not appear on Defendants' newest July 7, 2023 privilege log, nor on the August 31, 2023 supplemental log.

learned, the persons from whom he has learned such facts, or the existence or non-existence of documents." *Hydramar*, 119 F.R.D. at 372.[6] Here, neither of the exhibits contained an attorney on the communications and certainly did not elicit any information regarding the mental impressions, conclusions, opinions, or legal theories of an attorney. Defendants' clawbacks of the documents were improper.

Defendants raise the common interest doctrine for the first time in this letter brief. They neither raised nor objected to any of the testimony or documents at issue on this basis during the depositions. Even if they had preserved such an objection, Defendants must also prove that the communications at issue are protected by the attorney-client privilege *before* they can invoke the common interest doctrine. "[S]ince it is an anti-waiver exception, [the common interest doctrine] comes into play only if the communication at issue is privileged in the first instance." *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 578 (N.D. Cal. 2007); *see also RJ v. Cigna Health and Life Insurance Company*, No. 20CV02255-EJD-VKD, 2023 WL 187565, at *1 (N.D. Cal., Jan. 13, 2023) ("The doctrine does not create a privilege but comes into play only if a privilege or protection already covers the material disclosed to the third party."). Defendants do not explain how any, let alone *all* of the materials cited by DPPs could be protected by the attorney-client privilege; they simply posit that they are. Defendants have not met their burden to show that the common interest doctrine applies or how it necessarily protects the testimony and documents at issue from disclosure.

DPPs respectfully request that the Court order Defendants to produce the documents for review *in camera*. If the Court finds the documents are not privileged, DPPs request that Messrs. Lee and Hale be ordered to sit for further depositions and respond to questions regarding the withheld documents. DPPs expect that they can reasonably complete their questioning of the witnesses on the questions they were instructed not to answer and on the documents in one hour. Both Mr. Hale and Mr. Lee are scheduled to appear for further depositions in their capacity as 30(b)(6) witnesses on November 9, 2023 and November 29, 2023, respectively. DPPs request that the Court order further one-hour depositions of Mr. Lee and Mr. Hale as 30(b)(1) witnesses on the same day as their confirmed 30(b)(6) depositions.

## DEFENDANTS' POSITION

### Communications Amongst Co-Defendants Concerning Legal Strategy Are Shielded by the Common Interest Privilege

Mr. Shen and Mr. Lee are both named defendants in this lawsuit and are jointly represented by the same counsel.  Contrary to DPPs' insinuations, Mr. Lee was instructed not to answer certain questions in a valid invocation of privilege and not in evasion of relevant questions.  In particular, the following was what was exchanged:

Q:      Uh. Huh. When's the last time you communicated with Mr. Shen?

---

[6] Such a limitation of the work product doctrine protects against the unfair restriction of the "open discovery process envisioned by the Federal Rules of Civil Procedure." *Id.*

A:      Probably last week or the week before.

Q.      What did you guys talk about?

A.      We talked about legal matters.

Q.      Legal matters being this case?

MR. FROST:  So, if you were discussing – I am going to instruct you not to answer because you, by definition, have to enclose – disclose privileged information in order to answer that question.

(**Def. Ex. 1,** Lee Depo at p. 64: 5-14)

Mr. Frost further confirmed that "Mr. Lee and Mr. Shen were discussing issues relating to this litigation at the request of counsel, which makes them privileged . . . "  (**Def. Ex. 1,** Lee Depo at p. 65:18-21)

DPPs' tactic of framing questions under the presumption of an antitrust conspiracy veers into privileged territory and necessarily probes litigation strategy communications. This is evident from their lines of questioning:

Q:      Okay. So Celestron is not claiming that by executing the settlement agreement with Orion, that it withdrew from any kind of conspiracy; is that correct?

(**Def. Ex. 1,** p. 107:16-19)
                                    ***
Q.      Well, just as a factual matter, I take it it's your position that since there was never any conspiracy, that Celestron has never withdrawn from any conspiracy to engage in anticompetitive conduct; is that fair?
(**Def. Ex. 1,** p. 108:1-5)
                                    ***
Q.      And so as a factual matter, Mr. Lee, I take it that Celestron has not done anything affirmative to withdraw from any conspiracy with any of the other defendants in this case; is that correct?

(**Def. Ex. 1,** p. 109: 5-8)

The law is clear: co-defendants communicating on legal matters are shielded by the attorney-client privilege when collaborating on joint strategy. *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 578 (N.D. Cal. 2007) ("Participants in a joint or common defense or individuals with a community of interests . . . may communicate among themselves and with the separate attorneys on matters of common legal interest, for the purpose of preparing a joint strategy," and their communications will be protected by the attorney-client privilege. (citations omitted). The common interest privilege applies where "(1) the communication is made by separate parties in the course of a matter of common [legal] interest; (2) the communication is designed to further that effort; and (3) the privilege has not been waived." *Id.* (citations omitted). The joint defense

theory is not limited to parties to litigation, but can even extend to "interested third parties who have a community of interests with respect to the subject matter of the communications," and "is applicable whenever parties with common interests joint [sic] forces for the purpose of obtaining more effective legal assistance." *Id.; see also Dep't of Fair Emp't & Hous. v. Law Sch. Admission Counsel*, No. 12-cv-1830 (EMC) KAW, 2013 U.S. Dist. LEXIS 84205, at *16-17 (N.D. Cal. 2013); see also *United States v. Gonzalez*, 669 F.3d 974, 978 (9th Cir. 2012) ("[P]ersons who share a common interest in litigation should be able to communicate with their respective attorneys and with each other to more effectively prosecute or defend their claims.") (citation omitted). Both Mr. Lee and Mr. Shen are co-defendants, who share the same common legal interest and counsel in this lawsuit.

DPPs reliance on *Pastrana v. Local 9509,* No. 06cv1779, 2007 WL 2900477 (S.D. Cal. Sept. 28, 2007) is misplaced. The discovery at issue in *Pastrana* only involved a non-privileged fact. *Pastrana*, 2007 WL 2900477, at *3, *5 ("the Defendants' are not seeking communications between client and lawyer"). In addition, the requested discovery concerned a conversation between plaintiff's counsel and a third party. *Id.* In contrast, here, Defendants are asserting the privilege over the substantive conversations between Mr. Shen and Mr. Lee, both named defendants, as well as their communications with their shared counsel regarding this litigation, the *Orion* litigation, the legal allegations asserted against them, and DPPS' and their counsel's motivations for bringing this litigation. Such conversations are exactly what the privilege protects.

As such, the communications are protected by privilege.

## Work Product Immunity Protects Portions of the Related Deposition Testimony Sought by DPPS

Further, the attorney work product doctrine insulates portions of Mr. Lee's deposition testimony. "At its core, the work product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *United States v. Nobles*, 422 U.S. 225, 238 (1975). Attorneys, however, "often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial." *In re Grand Jury Subpoena,* 357 F.3d 900, 907 (9th Cir. 2004). Accordingly, "[i]t is . . . necessary that the doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself." *Id.* Thus, the mental impressions, opinions, or litigation theory of a party's non-attorney employee may qualify as opinion work-product when the party's non-attorney employee is acting on the party's behalf." *Board of Trs. of Leland Stanford Junior Univ. v. Tyco Intern. Ltd.*, No. CV 00-10584, 2008 WL 1911177, at *2 (C.D. Cal. Apr. 11, 2008). The party seeking discovery bears the burden of establishing "adequate reasons" to justify the discovery by showing that it "has substantial need of the materials" and "cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3); *Hickman v. Taylor*, 329 U.S. 495, 512 (1947).

It is clear that the information sought implicates litigation strategy prepared by counsel with the assistance of Mr. Lee and Mr. Shen, and is protected. DPPs have not substantiated any grounds to access such protected materials.

**The Two Clawback Documents Are Privileged**

During the deposition of Mr. Lee, the email with the subject line "GRANTED Motion of Clarification in favour of Celestron docket 643" [DEFS002904439] was clawed back on the basis of attorney-client communication, work-product and common interest privilege.  Defendants supplemented their privilege log to reflect the clawback.  As set forth in the privilege log, this communication on April 21, 2020 occurred between  co-defendants in this lawsuit, all of whom share a similar legal strategy and the same counsel.  The detailed description for the privilege was: "Recitation of Legal Advice from attorney relating to an order granting clarification."

Similarly, the document bearing Bates number DEFS000571366 was clawed back, and supplemented on Defendants' privilege log, on the basis of attorney client privilege, work-product and common interest privilege. This was a February 23, 2016 communication among co-defendants ***answering questions posed by legal counsel*** to assist in the "[Orion] legal case." (**Def. Ex. 2,** Hale depo at p. 506:16-19]

In light of the above, the communications above are squarely within the ambit of privilege and should remain protected.

**DPPs Failed To Meet and Confer in Good Faith**

DPPs transmitted their letter brief to Defendants after 11 p.m. on September 11, 2023. Crucially, they did so without first engaging in a meaningful conference regarding the relief they are now pursuing. The actions of the DPPs have fallen short of the substantive and procedural expectations set forth in the Court's Standing Order.  Indeed, they made no effort to even contact defense counsel about the issue before sending over their portion of a letter brief unannounced.  This leaves the Court to resolve issues unnecessarily before allowing the parties to attempt to reach a meaningful agreement.

Furthermore, in an effort to be accommodating, the Defendants are amenable to allowing the DPPs to pose essential factual foundational inquiries to Mr. Lee during his Rule 30(b)(6) deposition. However, it is the firm position of the Defendants that no time extension time is warranted and unnecessary.

## REQUEST FOR HEARING

**DPPs' Position**:  DPPs do not believe that a hearing is necessary at this time but are available for a hearing at the Court's convenience should the Court so require.

**Defendants' Position**: Defendants do not believe that a hearing is necessary unless requested by the Court.

## DISCOVERY CUT-OFF DATES

**DPPs' Position:**  Defendants' document productions were due on November 15, 2021, December 1, 2021, January 3, 2022, and February 15, 2022. (ECF 211.) No fact discovery or expert discovery cut-off dates have been set in this case.

**Defendants' Position:**  No discovery cut-off dates have been set in this case.

## MEET AND CONFER ATTESTATION

**DPPs' Position:**  I attest that DPPs complied with the Court's meet and confer requirement. I met and conferred with Christopher Frost on the record at Mr. Lee's August 14 and 15 deposition, and Ronald Fisher conferred with Christopher Frost on the record at Mr. Hale's August 17 and 18 deposition.

**Defendants' Position:**   Besides the short off-the-record conferences during the depositions, DPPs failed to meaningful confer with Defendants as to the relief sought in their letter brief.

Dated:  October 2, 2023                    */s/ Matthew Borden*

Matthew Borden
BraunHagey & Borden LLP

*Counsel for Direct Purchaser Plaintiffs*

Dated:  October 2, 2023                    */s/ Christopher Frost*

Christopher Frost
Frost LLP

*Counsel for Defendants*

## <u>ATTESTATION</u>

Counsel for Direct Purchaser Plaintiffs hereby attests by his signature below that concurrence in the filing of this document was obtained from counsel for Defendants.


Dated:  October 2, 2023                              Respectfully submitted,

                                                     BRAUNHAGEY & BORDEN LLP


                                                     By:   /s/ *Matthew Borden*
                                                             Matthew Borden

                                                     *Counsel for Direct Purchaser Plaintiffs*