December 13, 2023

**VIA ECF**
**PURSUANT TO SECTION 4(c) OF THE**
**COURT'S STANDING ORDER RE CIVIL CASES**

The Honorable Virginia K. DeMarchi
United States District Court for the Northern District of California
San Jose Courthouse, Courtroom 2 – 5th Floor
280 South 1st Street
San Jose, CA 95113

    Re:    Joint Discovery Letter Brief re: Number of Interrogatories Served upon the DPPs. — *Spectrum Scientifics, LLC, et al. v. Celestron Acquisition LLC, et al.*, Case No. 5:20-cv-03642-EJD-VKD (N.D. Cal.)

Your Honor:

    Defendants Celestron Acquisition, LLC, Suzhou Synta Optical Technology Co., Ltd., Synta Technology Corp., SW Technology Corp., Synta Canada International Enterprises, Ltd., Olivon Manufacturing Group, Ltd., David Shen, Sylvia Shen, Jack Shen, Jack Chen, Jean Shen, Nantong Schmidt Opto-Electrical Technology, Ltd., Joe Lupica, Corey Lee, David Anderson, Laurence Huen, Olivon USA and Pacific Telescope Corp. (collectively, "Defendants"), on the one hand, and Direct Purchaser Plaintiffs ("DPPs" or "DPP Plaintiffs"), on the other hand, respectfully submit this discovery letter brief pursuant to Section 4(c) of the Court's Standing Order re Civil Cases. The term "Parties" as used herein shall refer to Defendants, and DPPs collectively, unless otherwise specified.

**STATEMENT OF ISSUE**

    Defendants' Statement of Issue:  Despite agreeing during the October 12 and 20, 2023 meet-and-confers that Defendants could designate Interrogatories for DPP to respond, DPPs now decline to answer the interrogatories Defendants designated. Instead, DPPs assert they've answered 50 self-selected interrogatories, limiting Defendants to choose only 25 more for response. This not only breaches the parties' agreement, but also disrupts established conduct. DPPs' alleged responses are mere recitations of the Complaint or indeterminate pledges of document production, still unfulfilled despite Defendants' persistent requests. Hence, Defendants seek to compel DPPs to provide substantive responses to the 75 interrogatories specified in Defendants' October 31, 2023 email.

    Direct Purchaser Plaintiffs' Statement of Issue:  DPPs have responded to over 220 interrogatories. This already exceeds the limitations the Court has ordered. After the Court granted DPPs' motion to add three additional plaintiffs, Defendants propounded over 150 more

interrogatories without seeking leave of Court. Defendants then ignored DPPs' requests to narrow the number of interrogatories they served on the new plaintiffs and took issue when DPPs substantively responded to 50 interrogatories on behalf of the new plaintiffs. Defendants' excessive interrogatories are part of an ongoing effort to burden DPPs, rather than obtain information. Defendants' motion to compel responses to 75 additional interrogatories should be denied.

## DEFENDANTS' POSITION

**Outstanding Discovery and the Parties' Meet-and-Confer Efforts:**

On August 28, 2023, Defendants served written interrogatories and requests for production upon each of the three DPPs. On August 29, 2023, Defendants served additional written discovery upon the three DPPs. Defendants served a total of 97 interrogatories upon each Aurora and Pioneer Cycling, and 74 Interrogatories upon Jason Steele. These interrogatories mirrored those previously propounded upon now-disqualified Radio City, which they responded to without objection to the permissible number of interrogatories.

DPPs requested and received a two-week extension on their discovery responses, making their responses due October 11 and October 12, respectively.

For the first time, on October 10, 2023 at 8:47 p.m., DPPs took the position that Defendants collectively were limited to a total of 50 interrogatories for all three DPPs – thus, entitling Defendants to 16 interrogatories per a plaintiff. On October 11, 2023, DPPs served their Responses. [Def. Exs. 1-20].

On October 12, 2023, the parties conferred relating to the permissible number of interrogatories allowed to be served by the Defendants. DPPs stood their position that the discovery plan Order limited the Defendants, collectively, to a total of 50 interrogatories to be divided how Defendants desired among the DPPs. During this conference, DPPs' counsel stated:

> "If you want to go back and tell us which distinct interrogatories that add up to 50 that you want DPPs to answer, we are willing to do it that way."

Defendants suggested that the parties continue the discussion to avoid court intervention. On October 12, 2023, DPPs served their Objections to the remaining written discovery. [Def. Exs. 21-26].

On October 20, 2023, DPPs agreed to allow a total of 75 interrogatories to be served by the Defendants upon the DPPs.[1] Again, it was agreed that Defendants could designate the

---

[1] Defendants reserve their right to seek a modification of the number of Interrogatories they are allowed to serve, but to avoid court intervention, agreed to 75, the minimum permitted under Rule 33(a)(1).

interrogatories in any manner.  During the October 20 meet-and-confer, Defendants confirmed that they would send an email designating the 75 interrogatories they wanted DPPs to respond to. Defendants requested a two-week turnaround, which DPPs said was "doable."  Defendants also reiterated during that October 20 call that document production remained their top priority.

On October 31, 2023, Defendants sent the following email to DPPs' counsel:

Counsel - As we have discussed in previous calls,  we have identified  75 interrogatories for Plaintiffs to  substantively respond to within 14 days as follows:

### Aurora Astro Products

- Celestron's Interrogatories  to Aurora Astro
- Olivon Manufacturing Interrogatories to Aurora Astro
- SW Technology's Interrogatories to Aurora Astro
- Corey Lee's Interrogatories to Aurora Astro

### Pioneer Cycling and Fitness

- Nantong Schmidt's Interrogatories to Pioneer
- SW Technology's Interrogatories to Pioneer
- Olivon Manufacturing's Interrogatories to Pioneer

### Jason Steele

- SW Technology's Interrogatories to Steele
- Pacific Telescope's Interrogatories to Steele
- Celestron's Interrogatories to Steele

As previously reiterated, we reserve the right to seek a modification of this number as we disagree with the  limitation as it contradicts the parties' prior course of conduct, and the circumstances have substantially changed since the Discovery Plan was entered into.

***

### DPPs' Disregard Their Agreement

In the November 21, 2023 meet-and-confer, DPPs unexpectedly declared they had independently selected and responded to 50 of the Defendants' interrogatories without prior consultation. Remarkably, during the discussion, DPPs were unable to specify which interrogatories they had purportedly answered. Contrary to the established process, DPPs now assert that Defendants are limited to selecting only 25 additional interrogatories for their response, disregarding the initial agreement to a designated 75. A subsequent email dated November 22, 2023, from DPPs claimed they substantively responded to interrogatories directed at Pioneer Cycle and a single interrogatory aimed at Jason Steele. This unilateral action by DPPs not only breaches

the accord granting Defendants the right to choose the interrogatories but also highlights the inadequacy of DPPs' alleged responses, further complicating the discovery process and undermining the discovery process.

DPPs claim to have substantively responded to the following 50 interrogatories,[2] which as noted below, are vague and deficient under the Rules:

- **Corey Lee's ROGs to Pioneer Cycle:** 1, 2, 3, 4, 6.
- **Celestron's ROGs to Pioneer Cycle:** 2, 3, 4, 5, 6, 9, 10, 12, 13, 15, 16, 17, 18, 19
- **Olivon' s ROGs to Pioneer Cycle:** 1, 2
- **SW Tech's ROGs to Pioneer Cycle:** 1-5.
- **Synta Tech's ROGs to Pioneer Cycle:** 1-20.[3]
- **Pacific Telescope's ROGs to Pioneer Cycle:** 4, 5, 6.
- **Celestron's ROGs to Jason Steele:** 1

DPPs' so-called answers to their unilaterally chosen interrogatories fail for multiple reasons. Their responses are vague, and recite to allegations in the Complaint, and trial exhibits and transcripts from the Orion lawsuit. [Def Ex. 1-26]

DPPs further respond to a majority of the interrogatories as: "Plaintiff's document production which contains information and materials potentially responsive to this request, is not yet due."

DPPs document production remains outstanding with the exception of Aurora Astro, which was received on November 17. Despite repeated requests, with the last one on November 21, DPPs refuse to provide a date wherein DPPs document production will *even* start.

If a response to a request for production of documents merely promises to produce requested documents at some unidentified time in the future, without offering a specific time, place, and manner, it is not a complete answer as required by FRCP 34(b), and therefore, pursuant to FRCP 37(a)(3) is treated as a failure to answer or respond. *Jayne H. Lee, Inc. v. Flagstaff Indust. Corp,* 173 F.R.D. 651, 38 Fed. R. Serv. 3d 1347 (D. Md. 1997).

Defendants served DPPs with document requests on August 28, and responsive documents were due at the time of their responses, which DPPs have refused to produce as to Pioneer Cycling and Steele. [Def. Ex. 13-15]

---

[2] On November 22, 2023, DPPs' counsel forwarded an email stating it was their position that this consisted of the 50 substantive interrogatory answers.

[3] Defendants note that DPPs only asserted objections to RFP 14, 15, 17 despite claiming to have provided substantive responses to all three.

Defendants should not be handicapped as a result of the bad-faith spoliation that resulted in Radio City's disqualification. To limit the number of Defendants' interrogatories based on those previously served upon a dismissed and disqualified plaintiff is an exercise in futility, devoid of any logical or legal foundation.

Defendants should be allowed to choose the 75 Interrogatories DPPs respond to, which is what the DPPs ultimately agreed to during the parties' meet-and-confers.

Defendants respectfully request that DPPs be compelled to provide substantive responses to Defendants' designated 75 interrogatories as set forth in their October 31, 2023 email, and produce responsive documents.

### DIRECT PURCHASER PLAINTIFFS' POSITION

The Court limited Defendants to 50 interrogatories—which exceeds the number allowed under the Federal Rules. (ECF 169 at C.3.) DPPs have already answered 224 interrogatories in an effort to cooperate and avoid needless motion practice. There is no basis for Defendants' motion to compel responses to any additional interrogatories.

Defendants used up all of the interrogatories allowed by the Court and more in 2020-21, when they propounded 113 requests on Radio City and 61 on Spectrum Scientifics.

The Court granted DPPs' motion to amend their complaint in August 2023. (ECF 486.) DPPs' new complaint added three new plaintiffs: Aurora Astro Products, Jason Steele, and Pioneer Cycling & Fitness. Almost immediately thereafter, and without seeking leave of Court, Defendants served 156 interrogatories on the new plaintiffs.

In response, DPPs contacted Defendants, and noted the Court's limitation on the number of interrogatories. Because DPPs had added new plaintiffs, DPPs agreed in good faith to respond to 50 interrogatories beyond those allowed by the Court. DPPs asked Defendants to identify the 50 requests to which they wanted responses so DPPs could efficiently allocate their resources. (*Id.*) Defendants, however, ignored DPPs' request. DPPs therefore picked 50 interrogatories to respond to and objected to the remaining 106 as over Defendants' limit. (Plts' Exs. 1-23, ROG Responses.)

Many of the new requests were simply designed to burden DPPs by copy-pasting contention interrogatories that Defendants had previously served on Radio City and Spectrum Scientifics. (*Compare* Plts' Exs. 6, 11, & 17 (interrogatories to all new plaintiffs: "IDENTIFY with specificity any instances in which YOU contend that Defendants and/or their co-conspirators allegedly used their market power to exclude or disadvantage potential new entrants into the telescope market.") *with* Ex. 24 (same interrogatory to Radio City).)

Additionally, Defendants had ample opportunity to seek responses to any and all questions they had for the new plaintiffs over the *11 hours* they noticed for each of their depositions, including those posed in their interrogatories. Instead, they chose to ask DPPs a multitude of irrelevant and harassing questions that have nothing to do with the merits of the

case, while at the same time withholding their own witnesses from depositions. For example, Defendants asked Jason Steele—a person who purchased, in his individual capacity, *one* telescope from Celestron—the following questions:

> Q. Let's talk about your woodworking. What – what is the – what is the nature of the woodworking you do?
>
> A. I build furniture.
>
> …
>
> A. Tables, beds, chests, that sort of thing.
>
> Q. And then like what – what's the production volume that you have?
>
> A. One piece a year.

(Plts' Ex. 25, Steele Tr. at 38:11-18.)

> Q. Do you have children?
>
> A. Yes, sir.
>
> Q. How old are your kids?
>
> A. I have a 19-year-old, a 16-year-old, and a 9-year-old.
>
> Q. And do they all reside with you?
>
> A. No, just one.

(*Id.* at 21:21-22:2.)

> Q. And would you say that between the work that you do in your profession and your family that you got a pretty full life?
>
> A. Yes.

(*Id.* at 177:17-20.)

Defendants also asked Denise Wolens, the owner of Pioneer Cycling & Fitness, the following questions about her parents, who are not involved in her business:

> Q. How do your parents support themselves now?
>
> A. They're retired.
>
> Q. Do they have pensions?
>
> A. No.

> Q. Do they live on Social Security?
>
> A. I don't know if they get it or not. I'm assuming. I don't know.
>
> Q. Are they able to support themselves?
>
> A. Yes.

(*Id.*, Ex. 26, Wolens Tr. at 72:3-12.)

Defendants also asked Ms. Wolens about bicycle brands that no longer exist, despite the fact that this case concerns the purchase and sale of telescopes:

> Q. Are there any bicycle brands that you have sold since 1995 that no longer exist?
>
> A. Well, Schwinn has changed, but it still exists.
>
> Q. And you don't - - you stopped selling Schwinn?
>
> A. Yep.

(*Id.* at 200:17-23.)

And finally, Defendants asked James Bielaga of Aurora Astro about concert ticket purchases, the board members of his astronomy club, the geography of his hometown, and his ex-wives. For example:

> Q. Can you explain to us what this is?
>
> A. Personal purchases.
>
> Q. Is that memorabilia for the band Rush?
>
> A. Correct?
>
> Q. Are you a big fan?
>
> A. Yep.

(*Id.*, Ex. 27, Bielaga Tr. at 108:17-22.)

> Q. Are all of these people still part of the Everett Astronomical Society?
>
> A. John passed away. Chris passed away, I believe. I think the other two – Mark is still the president . . . .
>
> Q. Mark Folkerts?
>
> A. He's still the president, yeah . . . .

>Q. Other folks that are listed in addition to Mark Folkerts include Mike Lock. Is he still living?
>
>A. I think so.
>
>Q. Is he still part of the EAS?
>
>A. I don't know. I'm not that active.
>
>Q. Treasurer is Carol Gore. Is she still with us.
>
>A. Yeah, but I haven't seen her in a long time.

(*Id.* at 187:8-188:6.)

>Q. What's the population of Everett, approximately.
>
>A. Over – over a hundred thousand.
>
>Q. And I take it the nearest big city is Seattle?
>
>A. Correct.
>
>Q. How much is it away from Seattle?
>
>A. Twenty-three miles.

(*Id.* at 302:5-12.)

Strafing DPPs with interrogatories is similarly designed to harass and waste the time of the three new plaintiffs, who have little information to provide, other than their purchase of telescopes from Defendants and resultant harm. Defendants argue that they need more interrogatory responses from DPPs but failed to use the ones they did have in any prudent way, including, for example, by requiring Jason Steele, who purchased one telescope from Celestron's website, to "IDENTIFY all the capital investment costs in telescope manufacturing as alleged in YOUR Complaint." (*Id.*, Ex. 9 at 10.)

After Defendants objected to DPPs' responses, DPPs sought to avoid a dispute by agreeing in good faith to respond to an *additional* 25 interrogatories for a total of 75. Defendants initially agreed to this arrangement. However, instead of accounting for the 50 interrogatories that Plaintiffs had already responded to, Defendants sent Plaintiffs a list of 75 interrogatories that did not include all of the 50 that DPPs already responded to. DPPs raised this issue with Defendants on their November 21 weekly meet and confer call. Defendants asked DPPs to send them a list of the interrogatories that DPPs had already responded to and indicated that they would revert with a proposed solution. DPPs sent Defendants that list on November 22. (*Id.*, Ex. 28.) Instead of responding, Defendants cut the meet and confer process short and served the underlying letter brief.

Defendants have had ample opportunity to obtain any discovery they claim to need. They do not need to exceed the Court-ordered limit at all. To the extent that they had any valid basis

for doing so, their tactic of carpet-bombing DPPs with hundreds of interrogatories, refusing to meet and confer, and leaving DPPs to guess which ones Defendants really wanted answers to was improper. DPPs have gone above and beyond to fully comply with the Court's discovery plan and their obligations under the Federal Rules of Civil Procedure. At the same time, Defendants have not moved for relief from the Court's discovery plan, which limits them to a total of 50 interrogatories, much less proven that good cause for doing so exists. DPPs have responded to over 220 total interrogatories and to 50 interrogatories posed on the newest set of representative plaintiffs. Therefore, there is nothing for Defendants to move to compel. To the extent that Defendants take issue with any of the 50 interrogatory responses that DPPs served, they should identify those responses to DPPs and allow the parties time to meet and confer. Otherwise, they have no basis to request that DPPs be "moved to compel" to respond to additional interrogatories.

Defendants also indirectly request that DPPs be compelled to produce documents without providing substantive argument or background information about their requests or DPPs' productions. As Defendants know, DPPs prepared and served responses and objections to Defendants' document requests at the same time they prepared and served their interrogatory responses. DPPs also recently produced over 5,000 documents from James Bielaga, owner of Aurora Astro. DPPs prioritized that production upon Defendants' request so that Defendants could have the documents in advance of Mr. Bielaga's personal and 30(b)(6) depositions, which Defendants conducted on November 30 and December 1. Defendants also agreed to a rolling production for DPPs' remaining custodians, for which DPPs' counsel is diligently reviewing documents and preparing them for production. Thus, it is unclear what Defendants are even seeking to compel. At the same time, Defendants have taken all of the remaining depositions of their own witnesses off calendar, despite multiple Court Orders requiring those depositions to go forward. Defendants' discovery misconduct is being briefed separately in a joint discovery letter brief to the Court.

For all these reasons, Defendants have no basis to request that DPPs be compelled to produce any additional discovery, and their request should be denied.

## REQUEST FOR HEARING

Direct Purchaser Plaintiffs' Position: DPPs do not believe a hearing is necessary unless requested by the Court.

Defendants' Position: Defendants do not believe a hearing is necessary, unless requested by this Court.

## DISCOVERY CUTOFF

The Court has not set a discovery cutoff date in this action.

**MEET AND CONFER ATTESTATION**

<u>Direct Purchaser Plaintiffs' Position</u>: As noted in DPPs' Position, DPPs do not believe that Defendants adequately met and conferred with DPPs before serving their section of this letter brief.

<u>Defendants' Position</u>: The undersigned, Christopher Frost, attests that Defendants' counsel has met and conferred with Plaintiffs' counsel on these issues on October 12, October 20, October 27, November 2 and November 21.

/s/ Mattew Borden

Matthew Borden
BraunHagey & Borden LLP

*Interim Lead Counsel for Proposed Class of Direct Purchaser Plaintiffs*

/s/ Christopher Frost

Christopher Frost
FROST LLP

*Counsel for Defendants*