1    J. Noah Hagey, Esq. (SBN: 262331)
        hagey@braunhagey.com
2    Matthew Borden, Esq. (SBN: 214323)
        borden@braunhagey.com
3    Ellen V. Leonida, Esq. (SBN: 184194)
        leonida@braunhagey.com
4    Andrew Levine, Esq. (SBN: 278246)
        levine@braunhagey.com
5    Yekaterina Kushnir, Esq. (SBN: 350843)
        kushnir@braunhagey.com
6    BRAUNHAGEY & BORDEN LLP
     351 California Street, 10th Floor
7    San Francisco, CA 94104
     Telephone: (415) 599-0210
8    Facsimile: (415) 276-1808

9    Garrett Biedermann, Esq. *(pro hac vice)*
        biedermann@braunhagey.com
10   Eric Schlabs, Esq. *(pro hac vice)*
        schlabs@braunhagey.com
11   BRAUNHAGEY & BORDEN LLP
     118 W 22nd Street, 12th Floor
12   New York, NY 10011
     Telephone: (646) 829-9403
13   Facsimile: (646) 403-4089

14   ATTORNEYS FOR DIRECT PURCHASER PLAINTIFFS

15

16                    **UNITED STATES DISTRICT COURT**

17                 **NORTHERN DISTRICT OF CALIFORNIA**

18

19   IN RE TELESCOPES ANTITRUST              Case No. 5:20-cv-03639-EJD
     LITIGATION

20   This Document Relates to:               Case No. 5:20-cv-03642-EJD

21   AURORA ASTRO PRODUCTS LLC,              **DIRECT PURCHASER PLAINTIFFS'**
     PIONEER CYCLING & FITNESS, LLP, and     **OPPOSITION TO DEFENDANTS'** *EX*
22   those similarly situated,               *PARTE* **APPLICATION TO EXTEND**
                                             **TIME TO RESPOND TO MOTION FOR**
23          Plaintiffs,                      **CLASS CERTIFICATION**

24      v.                                   **Date:**        June 6, 2024
                                             **Time:**        9:00 a.m.
25   CELESTRON ACQUISITION, LLC, SUZHOU      **Judge:**       Hon. Edward J. Davila
     SYNTA OPTICAL TECHNOLOGY CO., LTD.,     **Courtroom:**   4, 5th Floor
26   SYNTA CANADA INT'L ENTERPRISES          **Compl. Filed:** June 1, 2020
     LTD., SW TECHNOLOGY CORP., OLIVON       **Fourth Am.**   September 1, 2023
27   MANUFACTURING CO. LTD., OLIVON USA,     **Compl. Filed:**
     LLC, NANTONG SCHMIDT OPTO-              **Trial Date:**  None Set
28   ELECTRICAL TECHNOLOGY CO. LTD.,

1   NINGBO SUNNY ELECTRONIC CO., LTD.,
    PACIFIC TELESCOPE CORP., COREY LEE,
    DAVID SHEN, SYLVIA SHEN, JACK CHEN,
2   JEAN SHEN, JOSEPH LUPICA, DAVE
    ANDERSON, LAURENCE HUEN, and DOES
3   1-50,

4       Defendants.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    Direct Purchaser Plaintiffs ("DPPs") respectfully submit this Opposition to Defendants' *Ex*

2   *Parte* Application to Extend Time to Respond to DPPs' Motion for Class Certification (Dkt. 601).

3                                            **INTRODUCTION**

4          After DPPs complied with the briefing schedule that Defendants proposed and the Court

5   ordered, Defendants now seek to gain an unfair advantage by changing that schedule to give

6   themselves two extra months to respond to DPPs' motion for class certification. The basis for

7   Defendants' request—that DPPs did not produce evidence that they rely on in the motion—is not

8   accurate. Every document cited in DPPs' motion is Bates numbered because it was produced years

9   ago. Every document relied on by DPPs' expert J. Douglas Zona, Ph.D., has also been produced.

10  Defendants complain that Dr. Zona provided his backup files (e.g., regression calculations) within

11  a few hours of producing his report. Nothing is improper about this. It did not prejudice them and is

12  not a basis for a 2-month delay. Dr. Zona was also an expert in the *Orion* litigation. Since 2019,

13  Defendants have had his deposition, trial testimony and report in that case, which relies on the

14  same methodology he used here, which this Court and the Ninth Circuit approved. Many

15  documents that Defendants claim were not produced were filed in the public docket in the *Orion*

16  case, and in the Ninth Circuit docket and then re-produced not once, but twice in this case.

17         Defendants have had four years to take whatever discovery they wanted. Defendants

18  complain that they have not taken Orion's deposition in this case, which they could have done at

19  any time.[1] But they neglect to mention that they did virtually nothing to take discovery from Orion

20  for four years until recently propounding improper and overbroad subpoenas on Orion personnel

21  and related parties (including the CEO's wife), which resulted in Judge DeMarchi denying their

22  motion to enforce those subpoenas because they were improper. (Dkt. 597.) Instead of objecting to

23  Judge DeMarchi's Order or serving reasonable subpoenas, Defendants again did nothing. Their

24  own failure to take discovery is not a basis for a 2-month delay. If Defendants really thought this

25  testimony was important to them, they could have taken it at any point in time, and still can.

26  ───────────────

27  [1] All the depositions and trial transcripts from the *Orion* case have been produced in this case,
    providing Defendants with weeks of testimony by Orion on the topics of this litigation, which is far
    more testimony than given by any other witness in this case. Orion has also produced more

28  documents than all the Defendants, except Celestron.

1        At a case management conference on November 9, 2023, Defendants convinced the Court

2   to push out the filing date for DPPs' motion for class certification to May 20, 2024. They did this

3   without telling the Court that they intended to use the delay they had created to file a motion to

4   deny class certification, which they did not meet and confer about before filing and which they

5   forced DPPs to respond to in two weeks. Defendants have thus already helped themselves to

6   doubly litigating class certification and putting the issues they believed to be most favorable to

7   them first. Moreover, the only reason that Defendants have had four long years to put together a

8   defense to class certification is that they refused to produce their own transactional data—the

9   factual predicate for certifying a class—in violation of multiple Court Orders. (Dkts. 418, 467

10  (sanctioning Defendants for violating multiple Court Orders to produce their transactional data).)

11  As detailed in Dr. Zona's opinion, the transactional data Defendants withheld for years shows that

12  controlling for exogenous factors using regression, Defendants raised the baseline price for all

13  direct purchasers during the class period. *Olean Wholesale Grocery Cooperative, Inc. v. Bumble*

14  *Bee Foods, LLC*, 31 F.4th 651, 671 (9th Cir. 2022) (en banc) ("the prevailing economic view [is]

15  that price-fixing affects all market participants, creating an inference of class-wide impact even

16  when prices are individually negotiated") (cleaned up)).

17        At the end of the day, Defendants must agree that a class should be certified because they

18  settled with the Indirect Purchaser Plaintiffs, whose claims are derivative of DPPs' claims. If they

19  have any argument to the contrary, they should make it in accordance with the schedule that the

20  Court ordered and the parties have agreed upon for months, consistent with Rule 23(c)(1)(A)'s

21  requirement that, "[a]t an early practicable time after a person sues or is sued as a class

22  representative, the court must determine by order whether to certify the class as a class action."

23                                **BACKGROUND**

24        At a case management conference on November 9, 2023, Defendants convinced the Court

25  to push out the filing date for DPPs' motion for class certification to May 20, 2024. On February

26  20, 2024, Defendants submitted a proposed class certification briefing schedule (Dkt. 576), which

27  the Court entered as an Order on February 27, 2024. (Dkt. 582.) DPPs complied with the Court's

28  Order. (Dkt. 599.) Defendants now seek a two-month extension of time to respond.

**ARGUMENT**

To alter the Court's Order, Defendants must prove that good cause exists. *Chatman v. Johnson*, No. CIV S-06-0578-MCE-EFB-P, 2008 WL 5412212, at \*1 (E.D. Cal. Dec. 30, 2008), *aff'd*, 389 F. App'x 627 (9th Cir. 2010); *see also* Fed.R.Civ.P. 6(b).

Defendants offer five arguments, none of which has merit.

**I.     DPPS PRODUCED DR. ZONA'S ENTIRE BACKUP MATERIALS**

DPPs timely filed Dr. Zona's expert report alongside their class certification motion on the night of May 20, 2024. (Dkt. 599-01.) The report is 47 pages long—not 168, as Defendants claim. (Mot. at 1 ("Plaintiffs have heavily relied upon a 168-page expert report by Dr. J. Douglas Zona, an expert witness not previously identified to Defendants.").) When Defendants proposed the current schedule to the Court, they knew that no expert would be identified to them before the motion was filed (just as Defendants have not identified their expert) because the Court did not require this in its Scheduling Orders. Nor did Defendants ask for this in the schedule they proposed.

Within hours of submitting Dr. Zona's expert report, DPPs produced a large Sharefile containing all the backup materials Dr. Zona had relied upon, including calculations and programs. DPPs produced Dr. Zona's backup materials on the evening after they filed their motion for class certification, on May 21. (Borden Decl. Ex. 1.)

Defendants state in their *ex parte* application that DPPs refused to provide Dr. Zona's backup files or materials he considered (Mot. at 3-5), but that is factually untrue. (*See id.* (transmittal email)). DPPs told Defendants that Dr. Zona's entire backup files had been produced. (Borden Decl. Ex. 2.) Defendants do not contend in their accompanying declaration that DPPs withheld any specific documents from Dr. Zona's backup materials.[2]

Finally, Defendants make much of one sentence in a footnote in Dr. Zona's report in which he states that "[s]ince [Orion] has owned Meade it nominally had some manufacturing capacity, but I understand that not all assets were obtained to allow continued manufacturing." (Mot. at 4.) But Dr. Zona's understanding is not based on unproduced documents or information—it is a matter of

---

[2] To the extent Defendants are referring to the materials they requested in Exhibit 8 to the Izadi Declaration in support of their assertion, DPPs either confirmed they were produced or explained that they were letters Defendants themselves sent to Plaintiffs. (*See* Borden Decl. Ex. 2.)

public record. Meade itself has issued press releases stating that Ningbo Sunny "had implemented a concentrated plan to offshore Meade's supply chain" such that, when Orion acquired Meade, Orion needed to "ma[k]e significant investments of funds and bandwidth reshoring the factory's raw material and parts supply chains, and in manufacturing tooling." (Borden Decl. Ex. 3.)

If Dr. Zona somehow were withholding information, Defendants would be free to bring it up in their opposition to DPPs' motion for class certification. Of course, he is not. Defendants' arguments are unsupported and inaccurate and do not meet the good cause standard.

## II. DEFENDANTS HAVE HAD THE ORION LITIGATION MATERIALS DR. ZONA CONSIDERED FOR YEARS

In his report, Dr. Zona cites a variety of public sources and documents produced in this litigation. Defendants apparently take issue with Dr. Zona's citations to materials produced in the Orion litigation and filed on the public docket in that action. (Mot. at 5-7.) As simply looking at Paragraph 3 in their declaration (Dkt. 601-1) makes clear, however, every document in that declaration that Defendants contend was "unproduced" was part of the public record on appeal in the Orion litigation. The "SER" and "ER" citations are citations to pagination in the public Ninth Circuit record. That alone negates Defendants' argument, but for good measure, DPPs *also produced* the entire Ninth Circuit Supplemental Excerpts of Record (SER) to Defendants in conjunction with DPPs' February 26, 2024 interrogatory responses. (Borden Decl. Ex. 4.) DPPs likewise produced the SER again on May 20, the same day they filed their class certification motion. (*Id.* Ex. 5.) In short, if Defendants were unaware of these documents by the time DPPs filed their class certification motion, then that is their own fault. DPPs did not refuse to comply with any Court Order or discovery request. Dr. Zona's predictable reliance on the same materials that the jury in the Orion litigation found showed that Defendants violated the antitrust laws does not amount to good cause for a two-month delay.

## III. DEFENDANTS' PROFESSED URGENT DESIRE TO TAKE DISCOVERY FROM ORION IS NOT GROUNDS FOR FURTHER DELAY

Defendants claim that they have been "unable to obtain critical discovery from Orion, which Plaintiffs heavily rely upon in their class certification motion." (Mot. at 5.) That is untrue for at least two reasons.

1    First, Defendants have not been "unable" to take discovery from Orion. Rather, they have

2    had four years in which to do so. They have taken substantial discovery from Orion. What they are

3    complaining about is that the Court denied their last-minute effort to serve improper subpoenas on

4    Orion (Dkt. 597), which is nobody's fault but Defendants'.

5    Defendants first served a subpoena on Orion on November 3, 2020. (Dkt. 595 at 6.)

6    Defendants then served more subpoenas dated March 20, 2023 and January 3, 2024. (*Id.* at 7.)

7    Defendants then subpoenaed several Orion employees and non-employees, such as the CEO Peter

8    Moreo's wife, on January 3, 2024. (*Id.*) Orion produced documents in response to Defendants'

9    subpoenas but moved to quash the January 3, 2024 deposition subpoenas because the subpoenas

10   were overbroad, unduly burdensome and had nothing to do with this case. (Dkt. 595.) On May 15,

11   2024, Judge DeMarchi granted Orion's motion to quash, finding that the Rule 30(b)(6) topics

12   Defendants served were overbroad and that Defendants had articulated no basis for deposing the

13   Orion employees they had subpoenaed. (Dkt. 597.) If Defendants had wanted discovery from Orion

14   before the class certification motion deadline they proposed, they could have planned ahead and

15   taken that discovery far in advance of the class certification deadlines. They can still cure their own

16   lack of diligence by serving reasonable subpoenas.

17   Good cause to modify a schedule does not exist when a party has not been diligent, as the

18   authority Defendants themselves cite makes clear. *See Mission Power Eng'g Co. v. Cont'l Cas. Co.*,

19   883 F. Supp. 488, 493 (C.D. Cal. 1995) ("The moving party must also show that it used the entire

20   discovery period efficiently and could not have, with due diligence, sought to obtain the discovery

21   earlier in the discovery period."); *see also Manning v. United States*, No. 2:19-CV-00494-TLN-

22   AC, 2021 WL 411082, at \*1 (E.D. Cal. Feb. 5, 2021) (subsequent history omitted) ([T]o the extent

23   Plaintiff seeks to reopen discovery in order to identify an expert witness for purposes of defeating

24   Defendant's Motion for Summary Judgment, Plaintiff fails to demonstrate he has exercised due

25   diligence . . . and therefore fails to establish good cause."). Defendants cannot use their own failure

26   to seek this discovery earlier and insistence upon overbroad and improper 30(b)(6) deposition

27   topics as a basis to delay the class certification briefing schedule.

28

1    Second, the entire basis of this argument—that DPPs "heavily rely upon" Orion in support

2    of their class certification motion—is factually incorrect. DPPs do rely on documents produced in

3    the Orion litigation, particularly because Defendant Ningbo Sunny produced documents in that

4    action but has refused to appear in this action. To the extent Defendants are referring to wanting to

5    question Orion about Dr. Zona's citations to the SER, those documents mainly do not originate

6    from Orion—they were produced by Ningbo Sunny, submitted to the Ninth Circuit in connection

7    with defending this Court's Judgment on appeal and produced again by Orion (and by DPPs) in this

8    case. Defendants cannot seek an extension to ask a nonparty about their co-conspirator's

9    documents.

10    As shown in the Zona Report, the economic information driving his opinion that all or

11    substantially all DPPs incurred an overcharge during the class period is Celestron's transactional

12    data, not documents produced by Orion. Dr. Zona analyzed the prices Celestron charged its

13    customers for telescopes and telescope accessories during the Class Period and showed that Synta's

14    acquisition of Celestron, and Ningbo Sunny's subsequent acquisition of Meade (through help from

15    Synta and Celestron) allowed Celestron to charge higher prices than it had charged prior to 2005.

16    (Zona Report (Dkt. 599-1) at 37-41.) His regression model "controlled for cost, seasonality and

17    product and customer specific factors affecting supply and demand" and, after controlling for those

18    variables proved that the data showed an overcharge that was common to all direct purchasers. *See*

19    *Olean*, 31 F.4th at 671 ("The model then isolated (or 'controlled for') the effect of these

20    explanatory variables on the prices paid by DPPs, which allowed the model to isolate the effect that

21    the conspiracy by itself had on the prices paid by DPPs."). Any information Defendants could use

22    to attempt rebut this analysis has been in their own possession for years.

23    Finally, Defendants appear to argue that DPPs are somehow withholding information on

24    additional Orion litigation documents they are relying on but that are not cited in their motion or in

25    Dr. Zona's report. (Mot. at 7.) That is untrue. As in any litigation, the materials cited in the papers

26    DPPs filed are the materials DPPs are relying on in support of their class certification motion.

27    Every document supporting that motion is Bates numbered and was produced. To the extent that

28    Defendants can show otherwise, they could do so in opposition to the motion to certify a class.

**IV.     DPPS' MAY 20 RFP RESPONSES ARE NOT GROUNDS FOR FURTHER DELAY**

Defendants' argument concerning DPPs' May 20 responses to their requests for production is also inaccurate. (Mot. at 2-3.) As Defendants note, the Court ordered DPPs to supplement their responses to certain of Defendants' document requests, including "documents you intend to rely upon in moving for class certification." (Dkts. 570, 580.) Defendants write that "[c]ontrary to [the Court's] directive, Plaintiffs not only failed to produce any documents, but they also failed to identify any documents they relied upon in their Class Cert. Motion." (Mot. at 3.) Both parts of that statement are factually incorrect.

First, the class certification motion is filed and DPPs are not relying on any documents apart from those cited in the motion and accompanying expert report. All those documents (apart from Dr. Zona's expert backup materials) have long been produced. If Defendants are arguing that DPPs did not separately provide an itemized list of all the already-produced documents they relied on in their class certification motion, that is (a) redundant, given that Defendants can see for themselves which documents DPPs cited in their motion, and (b) not required by Rule 34 or the Court's prior Order regarding Defendants' RFPs. (Dkt. 580 at 2 ("If DPPs have already produced all documents responsive to these requests (as modified here by the Court), they shall amend their written responses to the requests to say so.").

Second, DPPs *did* produce a small number of additional documents in response to Defendants' RFPs concerning class certification. Out of an abundance of caution to comply with the Court's Order, DPPs decided to *reproduce* the already previously produced and public SER for the *second time* on May 20, along with (1) certain publicly available cartel data Dr. Zona relied upon in his expert report and (2) an excel file showing currency conversions that Dr. Zona likewise relied upon. (Borden Decl. ¶ 7.) Defendants already had the SER, and likewise cannot claim to be prejudiced by the production of Dr. Zona's backup materials contemporaneously with his expert report, as always occurs with expert discovery.

DPPs more than complied with their production obligations and have no additional documents to produce in response to Defendants' requests.

**V.     DPPS WILL BE PREJUDICED BY A FURTHER DELAY OF THE CLASS CERTIFICATION SCHEDULE**

Defendants contend that a further extension of the class certification schedule will not prejudice DPPs (Mot. at 7), but that is inaccurate. Rule 23(c)(1)(A) provides that, "[a]t an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action." This action has been ongoing for four years, at great expense to Class Plaintiffs and Class Counsel. The litigation has been pending for so long largely because Defendants refused to produce relevant documents and transactional data and, once that was produced, repeatedly unilaterally cancelled the depositions of their own witnesses. Rule 23 does not permit pre-certification discovery to drag on forever simply because Defendants have not been diligent in pursuing discovery they suddenly claim to need. The burden on DPPs of a further two-month delay is not justified given Defendants' lack of diligence. *See Mission Power*, 883 F. Supp. at 493.

**CONCLUSION**

For the foregoing reasons, Defendants' *ex parte* application should be denied.

Dated:  May 28, 2024                          Respectfully submitted,

                                              BRAUNHAGEY & BORDEN LLP

                                              By:   /s/ *Matthew Borden*
                                                    Matthew Borden

                                              *Attorneys for Direct Purchaser Plaintiffs*