1  CHRISTOPHER FROST (SBN 200336)
   chris@frostllp.com
2  JOHN MAATTA (SBN 83683)
   john@frostllp.com
3  JOSHUA STAMBAUGH (SBN 233834)
   josh@frostllp.com
4  LAWRENCE J.H. LIU (SBN 312115)
   lawrence@frostllp.com
5  FROST LLP
   10960 Wilshire Boulevard, Suite 2100
6  Los Angeles, California 90024
   Telephone: (424) 254-0441
7
   SHAUNA A. IZADI (Admitted *Pro Hac Vice*)
8  sizadi@izadilegal.com
   IZADI LEGAL GROUP, PLLC
9  13155 Noel Rd, Suite 900
   Dallas, Texas 75240
10
   Attorneys for Defendants Celestron Acquisition, LLC, Synta
11 Technology Corp., Suzhou Synta Optical Technology Co.,
   Ltd., Synta Canada Int'l Enterprises Ltd., SW Technology
12 Corp., Olivon Manufacturing Co. Ltd., Olivon USA, LLC,
   Nantong Schmidt Optoelectrical Technology Co. Ltd.,
13 Pacific Telescope Corp., Corey Lee, David Shen, Sylvia
   Shen, Jack Chen, Jean Shen, Joseph Lupica, Dave Anderson,
14 Laurence Huen

15                 **UNITED STATES DISTRICT COURT**

16       **NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION**

17 | IN RE TELESCOPES ANTITRUST LITIGATION | Case No. 5:20-cv-03642-EJD
   |                                       | *Assigned for All Purposes to:*
18 | THIS DOCUMENT RELATES TO:             | *Hon. Edward J. Davila*

19 AURORA ASTRO PRODUCTS, LLC, PIONEER    **NOTICE OF MOTION AND MOTION**
   CYCLING & FITNESS, LLP; and those similarly  **OF DEFENDANT SYNTA CANADA**
20 situated,                              **INT'L ENTERPRISES LTD. FOR**
                    Plaintiffs,           **SUMMARY JUDGMENT, OR IN THE**
21        vs.                             **ALTERNATIVE, PARTIAL SUMMARY**
                                          **JUDGMENT; MEMORANDUM OF**
22 CELESTRON ACQUISITION, LLC, SUZHOU     **POINTS AND AUTHORITIES**
   SYNTA OPTICAL TECHNOLOGY CO., LTD.,
23 SYNTA CANADA INT'L ENTERPRISES LTD.,   *[Filed concurrently with Declarations of*
   SW TECHNOLOGY CORP., OLIVON            *Sylvia Shen and Lawrence J.H. Liu; Separate*
24 MANUFACTURING CO. LTD., OLIVON USA,    *Statement of Undisputed Material Facts;*
   LLC, NANTONG SCHMIDT OPTOELECTRICAL    *Request for Judicial Notice]*
25 TECHNOLOGY CO. LTD., NINGBO SUNNY
   ELECTRONIC CO., LTD., PACIFIC TELESCOPE  Hearing
26 CORP., COREY LEE, DAVID SHEN, SYLVIA   Date:        TBD
   SHEN, JACK CHEN, JEAN SHEN, JOSEPH     Time:        TBD
27 LUPICA, DAVE ANDERSON, LAURENCE        Crtrm.:      4 (5th Floor)
   HUEN, and DOES 1-50,
28                                        Compl. Filed:          June 1, 2020
                    Defendants.           Trial Setting Conference:  May 8, 2025

                                          Case No. 5:20-cv-03642-EJD

FROST

**TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on _____, at ___:____, or as soon thereafter as counsel may be heard, in the courtroom of the Honorable Edward J. Davila, located in the United States Courthouse, Defendant Synta Canada Int'l Enterprises Ltd. ("Synta Canada") will and hereby does move this Court for Summary Judgment, or in the alternative, Partial Summary Judgment.

This Motion is made pursuant to Rule 56 of the Federal Rules of Civil Procedure upon the following grounds:

1.       Defendant Synta Canada is entitled to summary judgment, or in the alternative, partial summary judgment on the Sherman Act section 1 claim as there is no direct or circumstantial evidence of any conspiracy to restrain trade. Synta Canada throughout the relevant class period has been only an investment company in Canada. There is no legal justification for imposing antitrust liability on Synta Canada for the alleged activities of its parents and subsidiaries as DPPs have adduced no evidence of specific involvement in any alleged antitrust conspiracy beyond the mere fact of Synta Canada's position in the corporate hierarchy as a parent company of SW Technology, which is the parent company of Celestron.

2.       Synta Canada is entitled to summary judgment, or in the alternative, partial summary judgment on the Sherman Act section 2 claim as there is no evidence that Synta Canada engaged in monopolization, attempted to monopolize, or conspired to monopolize the telescope market.

3.       Synta Canada is entitled to summary judgment, or in the alternative, partial summary judgment on the Clayton Act claim because it played no role in the Meade Acquisition.

4.       Synta Canada is entitled to summary judgment, or in the alternative, partial summary judgment on Plaintiffs' Cartwright Act claim as there is no evidence of an underlying conspiracy or inherently wrongful conduct attributable to Synta Canada.

5.       Synta Canada is entitled to summary judgment, or in the alternative, partial summary judgment on the Unfair Competition Law claim of Plaintiffs as there is no evidence to support any unfair conduct by Synta Canada.

This Motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, the Declarations of Sylvia Shen, and Lawrence J.H. Liu, and the Separate Statement of

1
2
3

Undisputed Material Facts filed concurrently herewith, all of the pleadings, files, and records in this proceeding, all other matters of which the Court may take judicial notice, and any argument or evidence that may be presented to or considered by the Court prior to its ruling.

4

DATED:  March 7, 2025                    FROST LLP

5
6
7
8
9
10
11
12
13
14

By: _____
    CHRISTOPHER FROST
    JOHN D. MAATTA
    JOSHUA S. STAMBAUGH
    LAWRENCE J.H. LIU
    Attorneys for Defendants Celestron Acquisition, LLC, Synta Technology Corp., Suzhou Synta Optical Technology Co., Ltd., Synta Canada Int'l Enterprises Ltd., SW Technology Corp., Olivon Manufacturing Co. Ltd., Olivon USA, LLC, Nantong Schmidt Optoelectrical Technology Co. Ltd., Pacific Telescope Corp., Corey Lee, David Shen, Sylvia Shen, Jack Chen, Jean Shen, Joseph Lupica, Dave Anderson, Laurence Huen

15
16
17
18
19
20
21
22
23
24
25
26
27
28

FROST

MOTION OF DEFENDANT SYNTA CANADA FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

# **TABLE OF CONTENTS**

I.    INTRODUCTION ....................................................................................................... 1

II.   BACKGROUND FACTS ........................................................................................... 2

III.  LEGAL STANDARDS ON SUMMARY JUDGMENT ........................................... 3

IV.  LAW ON SECTION 1 OF THE SHERMAN ACT .................................................. 5

    A.    Contract, Combination, or Conspiracy ....................................................... 6

          1.    Single Entity Rule ............................................................................ 7

    B.    Unreasonable Restraint of Trade or Commerce .......................................... 8

V.   SUMMARY JUDGMENT SHOULD BE GRANTED IN FAVOR OF SYNTA CANADA ON DPPs' SHERMAN ACT, SECTION 1 CLAIMS ................................................. 9

    A.    There is No Evidence of a Conspiracy Involving Synta Canada ..................................... 10

          1.    Synta Canada Did Not Engage in Price-Fixing........................................ 13

          2.    Synta Canada Had No Market Power to Divide or Monopolize the Market .......... 14

          3.    Synta Canada Had No Role in the 2013 Meade Acquisition ................................. 14

          4.    Synta Canada Did Not Share Any Non-Public Information ................................... 14

    B.    As a Foreign Holding Company, Synta Canada Did Not Engage in Conduct That Had Any Direct Effect on Domestic Commerce .................................................. 15

    C.    Synta Canada's Business Purpose Was Legitimate and Pro-Competitive ..................... 17

    D.    DPPs' Allegations of Antitrust Injury Against Orion are Irrelevant Given the Parties' Prior Settlement Agreement ............................................................... 17

VI.  SUMMARY JUDGMENT SHOULD BE GRANTED IN FAVOR OF SYNTA CANADA AS TO DPPS' SHERMAN ACT § 2 CLAIMS (2013 to Present) ........................................ 18

VII. SUMMARY JUDGMENT SHOULD BE GRANTED IN FAVOR OF SYNTA CANADA AS TO DPPS' CLAYTON ACT § 7 CLAIMS (2013 to Present) ............................................. 21

VIII.SUMMARY JUDGMENT SHOULD BE GRANTED IN FAVOR OF SYNTA CANADA AS TO DPPS' CARTWRIGHT ACT CLAIMS (2005 to Present) ........................................ 21

IX.  SUMMARY JUDGMENT SHOULD BE GRANTED IN FAVOR OF SYNTA CANADA AS TO DPPS' UCL CLAIMS ................................................................................... 23

X.   SYNTA CANADA JOINS IN THE ARGUMENTS PRESENTED BY CELESTRON AND SW TECHNOLOGY IN THEIR MOTIONS FOR SUMMARY JUDGMENT ........... 25

XI.  CONCLUSION ........................................................................................................ 25

MOTION OF DEFENDANT SYNTA CANADA FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Federal Cases**

4

*Am. Tobacco Co. v. United States*,
    328 U.S. 781 (1946) ............................................................................................................ 19

5

6

*Arandell Corp. v. Centerpoint Energy Servs., Inc.*,
    900 F.3d 623 (9th Cir. 2018)................................................................................ 1, 10, 11, 12

7

*Aurora Astro Prods. LLC v. Celestron Acquisition, LLC*,
    691 F. Supp. 3d 1132 (N.D. Cal. 2023) (ECF No. 539)................................................ 18, 22

8

9

*In re Baby Food Antitrust Litig.*,
    166 F.3d at 118 .................................................................................................................... 6

10

11

*Barnes v. Arden Mayfair, Inc.*,
    759 F.2d 676 (9th Cir. 1985).................................................................................................. 5

12

*Bell Atl. Bus. Sys. Servs. v. Hitachi Data Sys. Corp.*,
    849 F. Supp. 702 (N.D. Cal. 1994)....................................................................................... 7

13

14

*Biddle v. Walt Disney Co.*,
    No. 22-CV-07317-EJD, 2024 WL 3171860 (N.D. Cal. June 25, 2024) ............................ 8, 10

15

16

*Brennan v. Concord EFS, Inc.*,
    369 F. Supp. 2d 1127 (N.D. Cal. 2005)............................................................................... 23

17

*Calif. Crane Sch., Inc. v. Google LLC*,
    No. 21-CV-10001-HSG, 2023 WL 2769096 (N.D. Cal. 2023) ............................................. 5

18

19

*In re Citric Acid Litig.*,
    191 F.3d 1090 (9th Cir. 1999)............................................................................................ 6, 7

20

*City of San Jose v. Office of the Comm'r of Baseball*,
    776 F.3d 686 (9th Cir. 2015)............................................................................................... 25

21

22

*Cnty. of Tuolumne v. Sonora Cmty. Hosp.*,
    236 F.3d 1148 (9th Cir. 2001)............................................................................................ 5, 6

23

24

*Copperweld Corp. v. Indep. Tube Corp.*,
    467 U.S. 752 (1984) .................................................................................................. 7, 9, 22

25

26

*Don Copeland v. Energizer Holdings, Inc.*,
    716 F. Supp. 3d 749 (N.D. Cal. 2024)................................................................................... 8

27

*In re Dynamic Random Access Memory (DRAM) Indirect Purchaser Antitrust Litig.*,
    28 F.4th 42 (9th Cir. 2022).................................................................................................... 5

28

iv         Case No. 5:20-cv-03642-EJD

MOTION OF DEFENDANT SYNTA CANADA FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE,
PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

FROST

*Eidmann v. Walgreen Co.*,
    522 F.Supp.3d 634 (N.D. Cal. 2021)................................................................... 23

*Epic Games, Inc. v. Apple, Inc.*,
    67 F.4th 946 (9th Cir. 2023), cert. denied, 144 S. Ct. 681 (2024) ........................... 6

*Flaa v. Hollywood Foreign Press Ass'n*,
    55 F.4th 680 (9th Cir. 2022).................................................................................. 9

*Freeman v. San Diego Ass'n of Realtors*,
    322 F.3d 1133 (9th Cir. 2003)............................................................................... 7

*Gasaway v. Nw. Mut. Life Ins. Co.*,
    26 F.3d 957 (9th Cir. 1994)................................................................................... 4

*California ex rel. Harris v. Safeway, Inc.*,
    651 F.3d 1118 (9th Cir. 2011)............................................................................... 9

*Hesse v. Sprint Corp.*,
    598 F.3d 581 (9th Cir. 2010)............................................................................... 18

*Holmes v. Giddings*,
    216 F.3d 1083 (9th Cir. 2000)............................................................................... 4

*Honey Bum, LLC v. Fashion Nova, Inc.*,
    63 F.4th 813 (9th Cir. 2023).................................................................................. 6

*Jones v. Varsity Brands, LLC*,
    618 F. Supp. 3d 713 (W.D. Tenn. 2022)............................................................. 11

*In re Lantus Direct Purchaser Antitrust Litig.*,
    No. CV 16-12652-LTS, 2022 WL 4239367 (D. Mass. Aug. 17, 2022)................. 11

*Las Vegas Sun, Inc. v. Summa Corp.*,
    610 F.2d 614 (9th Cir. 1979)................................................................................. 7

*Lotes Co. v. Hon Hai Precision Industry Co.*,
    753 F.3d 395 (2nd Cir. 2014)......................................................................... 16, 17

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ........................................................................................ 4, 5

*MetroNet Servs. Corp. v. Qwest Corp.*,
    383 F.3d 1124 (9th Cir. 2004)............................................................................. 19

*Minn-Chem, Inc. v. Agrium Inc.*,
    683 F.3d 845 (7th Cir. 2012) (en banc)............................................................... 15

*Monsanto Co. v. Spray-Rite Serv. Corp.*,
    465 U.S. 752 (1984) .......................................................................................... 22

v

Case No. 5:20-cv-03642-EJD

MOTION OF DEFENDANT SYNTA CANADA FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE,
PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

*Nat'l Steel Corp. v. Golden Eagle Ins. Co.*,
 121 F.3d 496 (9th Cir.1997) ..................................................................................... 4

*National Collegiate Athletic Association v. Alston*,
 594 U.S. 69 (2021) ..................................................................................................... 8

*Ohio v. American Express Co.*,
 589 U.S. 529 (2018) ................................................................................................ 8, 9

*Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.*,
 20 F.4th 466 (9th Cir. 2021) ............................................................................ *passim*

*Penner v. Breitling USA, Inc.*,
 No. C-93-4308 SI, 1996 WL 182202 (N.D. Cal. 1996), aff'd, 124 F.3d 212 (9th
 Cir. 1997) ................................................................................................................. 21

*Piñon v. Bank of Am., N.A.*,
 741 F.3d 1022 (9th Cir. 2014) ........................................................................... 23, 24

*In re RealPage, Inc., Rental Software Antitrust Litig. (No. II)*,
 709 F. Supp. 3d 552 (M.D. Tenn. 2023) ................................................................. 12

*Rebel Oil Co. v. Atl. Richfield Co.*,
 51 F.3d 1421, 51 F.3d 1421 ..................................................................................... 19

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
 442 F.3d 741 (9th Cir. 2006) ................................................................................... 18

*Ross v. Morgan Stanley Smith Barney LLC*,
 No. 2:12-cv-09687, 2013 U.S. Dist. LEXIS 31822 (C.D. Cal. 2013) ..................... 24

*Spencer v. Lunada Bay Boys*,
 No. CV1602129SJORAOX, 2016 WL 6818757 (C.D. Cal. 2016) ......................... 25

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
 580 F. Supp. 2d 896 (N.D. Cal. 2008) ..................................................................... 17

*Suguri v. Wells Fargo Bank*,
 No. CV 09-1828 (PSG), 2009 WL 2486546 (C.D. Cal. Aug. 7, 2009) ................... 23

*Sun Microsystems Inc. v. Hynix Semiconductor Inc.*,
 534 F. Supp. 2d 1101 (N.D. Cal. 2007) ................................................................... 16

*Surgical Instrument Serv. Co., Inc. v. Intuitive Surgical, Inc.*,
 728 F. Supp. 3d 1034 (N.D. Cal. 2024) ..................................................................... 9

*T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*,
 809 F.2d 626 (9th Cir. 1987) ................................................................................. 4, 5

MOTION OF DEFENDANT SYNTA CANADA FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE,
PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

*Tevra Brands LLC v. Bayer HealthCare LLC*,
  No. 19-CV-04312-BLF, 2024 WL 1909156 (N.D. Cal. May 1, 2024)..................................19

*In re Text Messaging Antitrust Litig.*,
  630 F.3d at 628 ..........................................................................................................................13

*Thornton v. City & Cty. of S.F.*,
  No. 21-cv-02938-SI, 2021 U.S. Dist. LEXIS 233057 (N.D. Cal. 2021)...............................18

*Tidmore Oil Co. v. BP Oil Co./Gulf Prods. Div.*,
  932 F.2d 1384 (11th Cir. 1991)..............................................................................................22

*U.S. v. Hui Hsiung*,
  778 F.3d 738 (9th Cir. 2015)...................................................................................................15

*U.S. v. Tracinda Inv. Corp.* (C.D. Cal. 1979)
  477 F.Supp. 1093....................................................................................................................16

*United States v. LSL Biotechnologies*,
  379 F.3d 672 (9th Cir. 2004)...................................................................................................16

*Vazquez v. Central States Joint Bd.*,
  547 F. Supp. 2d 833 (N.D. Ill. 2008)......................................................................................25

*Verizon Communications Inc. v. Law Offices of Curtis V. Trinko, LLP* (2004)
  540 U.S. 398............................................................................................................................18

**California Cases**

*Aleksick v. 7-Eleven, Inc.*,
  205 Cal.App.4th 1176 (2012)..................................................................................................24

*Asahi Kasei Pharma Corp. v. CoTherix, Inc.*,
  204 Cal.App.4th 1 (2012)........................................................................................................22

*Belton v. Comcast Cable Holdings LLC*,
  151 Cal.App.4th 1224 (2007)..................................................................................................25

*Chavez v. Whirlpool Corp.*,
  93 Cal. App. 4th 363 (2001)........................................................................................22, 24, 25

*G.H.I.I. v. MTS, Inc.*
  147 Cal. ...................................................................................................................................22

*People ex rel. Lockyer v. Fremont Life Ins. Co.*,
  104 Cal. App. 4th 508 (2002)..................................................................................................23

*Scripps Clinic v. Superior Court*,
  108 Cal. App. 4th 917 (2003)..................................................................................................22

MOTION OF DEFENDANT SYNTA CANADA FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE,
PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

**Other State Cases**

*In re Optical Disk Drive Antitrust Litig.*,
No. 10-MD-02143-RS, 2017 WL 11513316 (N.D. Cal. 2017)................................ 16

*In re Optical Disk Drive Antitrust Litig.*,
No. 10-md-02143-RS, 2017 WL 6503743 (N.D. Cal. 2017).................................... 6

*In re Packaged Seafood Prods. Antitrust Litig.*,
No. 15-MD-2670 DMS (MDD), 2022 WL 836951 (S.D. Cal. Mar. 21, 2022) .................... 20

*In re Packaged Seafood Prods. Antitrust Litig.*,
No. 15-MD-2670 DMS (MDD), 2023 WL 3046073 (S.D. Cal. Apr. 21, 2023).................... 12

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
No. 07-MD-01819 CW, 2010 WL 5477313 (N.D. Cal. Dec. 31, 2010) ................................ 15

**Federal Statutes**

15 U.S.C.
§ 6a .......................................................................................................... 15

Clayton Act
§ 7 .................................................................................................... 2, 9, 21

Sherman Act
§ 1 ...........................................................................................*passim*
§ 2 ...........................................................................................*passim*

**California Statutes**

Cal. Bus. & Prof. Code
§ 17200 .................................................................................................... 23

California's Unfair Competition Law ........................................................... 24

Cartwright Act ............................................................................*passim*

Cartwright Act, Cal. Bus. & Prof. Code
§ 16700 et seq. ........................................................................................ 22

Foreign Trade Antitrust Improvements Act ............................................. 15, 16

**Federal Rules**

Rule 56(c) .................................................................................................... 3

Rule 56(a) .................................................................................................... 3

Rule 56(e)'s .................................................................................................. 5

FROST

viii                                                    Case No. 5:20-cv-03642-EJD

MOTION OF DEFENDANT SYNTA CANADA FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE,
PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

## MEMORANDUM OF POINTS AND AUTHORITIES

**I    INTRODUCTION**

Defendants submit this Motion for Summary Judgment, or in the alternative, Partial Summary Judgment to dismiss Direct Purchaser Plaintiffs' ("DPPs") claims against Synta Canada Int'l Enterprises Ltd. ("Synta Canada"). These claims fail as a matter of law, and no evidence supports DPPs' allegations. DPPs cannot prove any specific misconduct by Synta Canada, nor can it prove misconduct by the collective of parent and wholly owned subsidiary companies to which Synta Canada belongs. DPPs indiscriminately conflate all Synta-related entities throughout the entirety of its operative Fourth Amended Complaint ("4AC"). Further, Synta Canda was never a manufacturer nor distributor of telescope products and has not engaged in any trade or business operations in many years; it has long since transitioned into a foreign passive investment holding company. Therefore, Synta Canada could not and did not engage in any conspiracy to: (1) fix prices of consumer telescopes; (2) divide or allocate the market; (3) monopolize or attempt to monopolize the market; or (4) unlawfully exchange confidential information of competitors. As Synta Canada did not independently participate in any anticompetitive scheme, it cannot be held liable for any alleged antitrust claims merely because of its ownership structure. *See Arandell Corp. v. Centerpoint Energy Servs., Inc.*, 900 F.3d 623, 633 (9th Cir. 2018) ("*Arandell*").

The undisputed evidence shows that SW Technology's executive committee ("EXCOM"), which consisted of Sylvia Shen and Jack Chen, merely received shareholder reports and briefings about financial performance from Celestron's CEO and CFO, and that they did not direct or otherwise control Celestron's business decisions, including pricing for its products. Even if the evidence could show control by EXCOM, DPP's fail to display Sylvia Shen and Jack Chen were acting in their capacity as minority shareholders of Synta Canada rather than exclusively in their capacity as EXCOM members. The undisputed evidence also shows that Synta Canada did not engage in any price-fixing or conspiracy to fix prices with Celestron or any of the other Defendants. Moreover, Synta Canada did not attempt to monopolize or actually monopolize the market. Synta Canada existed solely as a holding company for, among other entities, SW Technology. It did not approve, authorize, or ratify any business decisions

FROST

with respect to the Meade Acquisition or any efforts to monopolize the market. Lastly, Synta Canada did not engage in any unlawful exchange of confidential information.

Accordingly, because Synta Canada did not and was incapable of conspiring with any Defendant, summary judgment should be granted as to DPPs' claims under Section 1 of the Sherman Act and the Clayton Act. Summary judgment should be granted as to DPPs' monopolization and unlawful merger claims under Section 2 of the Sherman Act and the Cartwright Act. Finally, because summary judgment should be granted as to all of DPPs' underlying antitrust claims, DPPs' derivative UCL claim must also fail as a matter of law.

## II.    BACKGROUND FACTS

Synta Canada was founded by Defendant David Shen, Sylvia Shen, and Jack Chen in December 1996 after Sylvia Shen and her husband, Jack Chen emigrated to Canada. (UMF 1.) One of the first projects it invested in was Suzhou Synta in 1998. (UMF 2.) Initially, David Shen owned 50%, Sylvia Shen owned 30%, and Jack Chen owned 20% of Synta Canada, until the Shen Family Trust and the Chen Family Trust took ownership shares in October 2016. (UMF 3.) As an investment holding company over the years, Synta Canada invested in Suzhou Synta, SW Technology (2005), and Nantong Schmidt (2011). (UMF 4.) In or around the mid-2010s, Synta Canada engaged in some limited research and development (R&D) with the goal of developing electronic software for telescopes. (UMF 5.) Synta Canada ultimately only produced a limited amount of software, which it sold to Nantong Schmidt. (UMF 6.) Synta Canada never manufactured or distributed telescopes or telescope accessories. Aside from briefly doing research and development work, it has primarily functioned as a passive holding company. (UMF 7.)

SW Technology, a Delaware-incorporated holding company for the specific purpose of acquiring Celestron, was formed in 2005 with Synta Technology Corp. ("Synta Taiwan") as the majority investor and Synta Canada as the minority 15% owner, which later increased to 24% owner in 2019. (UMF 8.) Celestron is SW Technology's wholly owned subsidiary. (UMF 9.) As Synta Canada's subsidiary, SW Technology never directly engaged in the manufacturing, sale, or purchase of telescopes. (UMF 10.) Neither SW Technology nor its shareholders committee ("ExCom") exercised any control in the day-

to-day business operations of Celestron. (UMF 11.) Synta Canada owned 24% of SW Technology, 20% of Suzhou Synta, and 20% of Nantong Schmidt, the successor to Suzhou Synta. (UMF 12.)

For a brief period in the mid-2010s, Synta Canada engaged in research and development for electronic software for telescopes. (UMF 13.) For Synta Canada's research and development project, Synta Canada hired its first and only three long-term employees in 2011. (UMF 14.) The outcome of this research and development endeavor was only a limited amount of software, which was sold to Nantong Schmidt. (UMF 15.) The company only retained these employees until about 2018 and since then has remained employee-less. (UMF 16.)

In 2013, Ningbo Sunny acquired Meade Instruments ("Meade"). (UMF 17.) Synta Canada had no role in the Meade Acquisition. It did not direct, authorize, or facilitate any part of the Meade Acquisition. (UMF 18.) In September 2016, during the beginning of the *Orion* litigation (N.D. Cal. Case No. 5:16-cv-06370-EJD), Celestron, SW Technology, and other named Defendants in this case entered into a Settlement Agreement with Orion. (UMF 19.) Under section 6.a. of the Settlement Agreement, Orion agreed to generally "release and forever discharge each of Defendants and each's respective shareholders, directors, officers, … from all Claims … , known and unknown." (UMF 20.) Under sections 1 through 3 of the Settlement Agreement, in exchange for the general release, Celestron and "Synta Parties" paid Orion $500,000 and provided Orion a favorable supply agreement, and website domain URLs that included "Telescopes.com"  (the "Hayneedle Assets"). (UMF 21.)  SW Technology performed all its required obligations under the Settlement Agreement and therefore SW Technology and its shareholders, which includes Synta Canada, are thus released from all claims by Orion. (UMF 22.)

## III.    **LEGAL STANDARDS ON SUMMARY JUDGMENT**

Summary judgment must be granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). "[P]artial summary judgment is inherent in that Rule 56(a) provided for summary judgment on 'all or part of the claim.' "A defendant moving for summary judgment can either: (1) attempt to establish through affidavits that no material factual issues exist, or (2) 'point out to the trial court that the plaintiff lacks competent evidence

1    to support an essential element of his or her case.'" *Holmes v. Giddings*, 216 F.3d 1083 (9th Cir. 2000)

2    (citation omitted).

3          The Ninth Circuit has adopted the following rule applicable to summary judgment motions in

4    antitrust cases: "[A] defendant moving for summary judgment in an antitrust case under [the Sherman

5    Act] § 1 has the initial burden of identifying the portions of the materials on file that it believes show an

6    absence of a genuine issue of material fact with respect to the existence of the alleged conspiracy." *T.W.*

7    *Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 632 (9th Cir. 1987) ("*T.W. Elec.*").

8          Once the defendant's burden is met, the burden shifts to the plaintiff "to establish that there is a

9    genuine issue of material fact as to <u>whether [defendant] entered into an illegal conspiracy that caused</u>

10   <u>[plaintiff] to suffer a cognizable injury.</u>" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.

11   574, 585–86 (1986) (emphasis added) (citing Fed.R.Civ.P. 56(e)). "This showing has two components.

12   First, [the plaintiff] must show more than a conspiracy in violation of the antitrust laws; they must show

13   <u>an injury to them resulting from the illegal conduct.</u>" *Id.* at 586 (emphasis added). "Second, the issue of

14   fact must be '<u>genuine.</u>'" *Id.* (emphasis added) (citing Fed.R.Civ.P. 56(c), (e)).

15         The plaintiff opposing summary judgment "must do more than simply show that there is some

16   metaphysical doubt as to the material facts." *Id.* Moreover, the plaintiff "may not rely on the mere

17   allegations in the pleadings in order to preclude summary judgment." *T.W. Elec.*, 809 F.2d at 630 (citing

18   *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 289 & n.19 (1968)); *see also Gasaway v. Nw. Mut.*

19   *Life Ins. Co.*, 26 F.3d 957, 960 (9th Cir. 1994). "Hence, the nonmoving party may not merely state that

20   it will discredit the moving party's evidence at trial and proceed in the hope that something can be

21   developed at trial in the way of evidence to support its claim." *T.W. Elec.*, 809 F.2d at 630 (citing

22   *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 256; *First Nat'l Bank of Ariz. v. Cities Service Co.,* 391

23   U.S. 253, 289-90 (1968)). Nor can the opposing party rest on conclusory statements. *Nat'l Steel Corp.*

24   *v. Golden Eagle Ins. Co.*, 121 F.3d 496, 502 (9th Cir.1997). "Instead, it must produce at least some

25   'significant probative evidence tending to support the complaint.'" *Id.* (internal citation omitted).

26         "A special consideration applies in antitrust cases involving an allegation of conspiracy under §

27   1 of the Sherman Act: '<u>antitrust law limits the range of permissible inferences from ambiguous</u>

28   <u>evidence.</u>'" *T.W. Elec.*, 809 F.2d at 632 (emphasis added) (citing *Matsushita,* 475 U.S. at 588). "In

particular, evidence of conduct that is 'as consistent with permissible competition as with illegal conspiracy does not, *standing alone,* support an inference of antitrust conspiracy.'" *Id.* (emphasis in original) (quoting *Monsanto Co. v. Spray-Rite Serv. Corp.,* 465 U.S. 752, 764 (1984)). "Clearly, there must be some limit on the extent of the inferences that may be drawn in the nonmoving party's favor from whatever 'specific facts' it sets forth; if not, Rule 56(e)'s requirement of 'specific facts' would be entirely gutted." *Id.* at 631. "[C]ourts should not permit factfinders to infer conspiracies when such inferences are implausible," or when the conduct is "as consistent with permissible competition as with illegal conspiracy." *Matsushita*, 475 U.S. at 593, 597 n.21. Such mistaken inferences "chill the very conduct the antitrust laws are designed to protect." *Id.* at 594.

In sum, "[o]nce the allegations of conspiracy made in the complaint are rebutted by probative evidence supporting an alternative interpretation of a defendant's conduct, if the plaintiff then fails to come forward with specific factual support of its allegations of conspiracy, summary judgment for the defendant becomes proper." *Barnes v. Arden Mayfair, Inc.*, 759 F.2d 676, 680 (9th Cir. 1985) (quoting *ALW, Inc. v. United Air Lines, Inc.*, 510 F.2d 52, 55 (9th Cir.1975)). Although antitrust cases are sometimes difficult to resolve on summary judgment because of their factual complexity, summary judgment is still appropriate in certain cases. *Cnty. of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001) (citing *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir.1991)).

## IV.    LAW ON SECTION 1 OF THE SHERMAN ACT

"Section 1 of the Sherman Act prohibits '[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations.'" *In re Dynamic Random Access Memory (DRAM) Indirect Purchaser Antitrust Litig.*, 28 F.4th 42, 46 (9th Cir. 2022) (quoting 15 U.S.C. § 1). "To state a claim under Section 1, a plaintiff must allege facts showing '(1) a contract, combination or conspiracy among two or more persons or distinct business entities; (2) by which the persons or entities intended to harm or restrain trade or commerce . . . ; (3) which actually injures competition.'" *Id.* (quoting *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008)).

"The 'crucial question' prompting Section 1 liability is whether the challenged anticompetitive conduct stems from [lawful] independent decision or from an agreement, tacit or express." *Calif. Crane*

1   *Sch., Inc. v. Google LLC*, No. 21-CV-10001-HSG, 2023 WL 2769096, at *4 (N.D. Cal. 2023) (quoting

2   *In re Dynamic Random Access Memory (DRAM) Indirect Purchaser Antitrust Litig.*, 28 F.4th 42, 46

3   (9th Cir. 2022) (cleaned up)). In addition, "[c]ourts have long read Section 1 to 'outlaw only

4   unreasonable restraints.'" *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 981 (9th Cir. 2023), cert. denied,

5   144 S. Ct. 681 (2024), and cert. denied, 144 S. Ct. 682 (2024) (citing *Ohio v. American Express Co.*,

6   589 U.S. 529, 540 (2018) ("*Amex*")). "Thus, a Section 1 inquiry has both a threshold component

7   (whether there is a contract, combination, or conspiracy) and a merits component (whether it is

8   unreasonable)." *Id.* (citing *FTC v. Qualcomm Inc.*, 969 F.3d 974, 988-89 (9th Cir. 2020)).

9   ### A.   <u>Contract, Combination, or Conspiracy</u>

10   "A plaintiff can establish a conspiracy through direct evidence, circumstantial evidence, or both."

11   *Honey Bum, LLC v. Fashion Nova, Inc.*, 63 F.4th 813, 822 (9th Cir. 2023) (citing *In re Citric Acid Litig.*,

12   191 F.3d 1090, 1093 (9th Cir. 1999)). "Direct evidence is smoking-gun evidence that 'establishes,

13   without requiring any inferences, the existence of a conspiracy." *Id.* "Direct evidence in a Section 1

14   conspiracy must be evidence that is explicit and requires no inferences to establish the proposition or

15   conclusion being asserted." *Cty. of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1155 (9th Cir.

16   2001) (citation omitted); *see also In re Baby Food Antitrust Litig.*, 166 F.3d at 118 ("[W]ith direct

17   evidence 'the fact finder is not required to make inferences to establish facts.'") (citation omitted).

18   Absent direct evidence of any agreement, a plaintiff must present sufficient circumstantial

19   evidence "from which an inference of conspiracy is more probable than an inference of independent

20   action." *In re Optical Disk Drive Antitrust Litig.*, No. 10-md-02143-RS, 2017 WL 6503743 at *2 (N.D.

21   Cal. 2017). "When it comes to circumstantial evidence, 'parallel conduct—even consciously parallel

22   conduct—[is] insufficient' to establish a conspiracy." *Id.* (citing *In re Musical Instruments & Equip.

23   Antitrust Litig.*, 798 F.3d 1186, 1193 (9th Cir. 2015)). "In addition to parallel conduct, a plaintiff relying

24   on circumstantial evidence must show 'plus factors,' … that 'tend[] to exclude the possibility that the

25   alleged conspirators acted independently.'" *Id.* (citing *Matsushita*, 475 U.S. at 588).

26   The Ninth Circuit has "outlined a two-part test to be applied whenever a plaintiff rests its case

27   entirely on circumstantial evidence." *In re Citric Acid Litig.*, 191 F.3d 1090, 1094 (9th Cir. 1999). "First,

28   the defendant can 'rebut an allegation of conspiracy by showing a plausible and justifiable reason for its

FROST

conduct that is consistent with proper business practice.'" *Id*. (citations omitted). Then, the burden "shifts back to the plaintiff to provide specific evidence tending to show that the defendant was not engaging in permissible competitive behavior." *Id*. To meet this burden, plaintiff must "introduce evidence that would permit a jury to conclude that a conspiracy... [is] more likely than not." *In re Citric Acid Litig.,* 191 F.3d at 1094 n.2. If the evidence in opposition to "summary judgment does not give reasonable support to a finding of conspiratorial, as opposed to unilateral, behavior, summary judgment is appropriate." *Id.*

### 1.    Single Entity Rule

The Supreme Court has long held that a parent company cannot conspire with its wholly owned subsidiary. *Copperweld*, 467 U.S. at 769. "Section 1, like the tango, requires multiplicity: A company cannot conspire with itself." *Freeman v. San Diego Ass'n of Realtors*, 322 F.3d 1133, 1147 (9th Cir. 2003), as amended on denial of reh'g (Apr. 24, 2003) (citing *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 769 (1984) ("*Copperweld*").) "To 'conspire' within the meaning of the Sherman Act, corporate entities within a single organization must be sufficiently independent of each other for their concerted action to raise antitrust concerns." *Las Vegas Sun, Inc. v. Summa Corp.,* 610 F.2d 614, 617 (9th Cir. 1979) (citing *Harvey v. Fearless Farris Wholesale, Inc.*, 589 F.2d 451, 455-58 (9th Cir. 1979)).

"The single-entity rule is relevant in a variety of contexts. It applies to a company and its officers, employees and wholly owned subsidiaries." *Id.* "It also applies to subsidiaries controlled by a common parent, … firms owned by the same person, … and a firm owned by a subset of the owners of another, …" *Id.* (citing *Thomsen v. W. Elec. Co.*, 680 F.2d 1263, 1265–66 (9th Cir.1982); *Las Vegas Sun, Inc. v. Summa Corp.*, 610 F.2d 614, 616, 618 (9th Cir.1979); *Copperweld*, 467 U.S. at 773 n.21). "It applies to principal-agent relationships, … and to 'partnerships or other joint arrangements in which persons who would otherwise be competitors pool their capital and share the risks of loss as well as the opportunities for profit.'" *Id.* at 1147-48 (citing *Calculators Haw., Inc. v. Brandt, Inc.*, 724 F.2d 1332, 1336 (9th Cir.1983); *Arizona v. Maricopa County Med. Soc'y*, 457 U.S. 332, 356 (1982); *Hahn v. Or. Phys.' Serv.*, 868 F.2d 1022, 1029 n.5 (9th Cir.1988)). "Courts have found that the *Copperweld* rationale also applies in situations between a parent corporation and a less than wholly-owned subsidiary." *Bell Atl. Bus. Sys. Servs. v. Hitachi Data Sys. Corp.*, 849 F. Supp. 702, 705 (N.D. Cal 1994) ("*Bell Atl.*").

**B.    <u>Unreasonable Restraint of Trade or Commerce</u>**

A court's approach to an alleged restraint of trade or commerce will depend on whether the restraint is per se illegal. Typically, horizontal restraints to fix prices or divide prices will be considered per se unlawful. In contrast, vertical restraints are not per se illegal unless they include agreements on price. "Courts are 'reluctan[t] to adopt *per se* rules with regard to restraints imposed in the context of business relationships where the economic impact of certain practices is not immediately obvious.'" *Biddle v. Walt Disney Co.*, No. 22-CV-07317-EJD, 2024 WL 3171860 at *9 (N.D. Cal. June 25, 2024) (quoting *Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 887 (2007).)

"Courts generally 'determine whether a particular restraint of trade is unreasonable and thus a violation of Section 1 under the so-called 'rule of reason.'" *Don Copeland v. Energizer Holdings, Inc.*, 716 F. Supp. 3d 749, 765 (N.D. Cal. 2024) (citing *In re Nat'l Football League's Sunday Ticket Antitrust Litig.*, 933 F.3d 1136, 1150 (9th Cir. 2019)). On the other hand, vertical agreements "between entities 'up and down a supply chain, such as between a manufacturer and a retailer'—are analyzed under the rule of reason." *Id.* (quoting *In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1191 (9th Cir. 2015) ("*Musical Instruments*")). The rule of reason "requires courts to conduct a fact-specific assessment of 'market power and market structure ... to assess the [restraint]'s actual effect' on competition." *Amex*, 585 U.S. at 541 (citing *Copperweld*, 467 U.S. at 768 (1984)). It is "a fact-specific assessment of market power and market structure" that assesses the challenged restraint's "actual effect on competition, especially its capacity to reduce output and increase price." *National Collegiate Athletic Association v. Alston*, 594 U.S. 69, 88 (2021). "The goal is to 'distinguis[h] between restraints with anticompetitive effect that are harmful to the consumer and restraints stimulating competition that are in the consumer's best interest.'" *Amex*, 585 U.S. at 541 (quoting *Leegin Creative Leather Products, Inc. v. PSKS, Inc.*, 551 U.S. 877 (2007)).

"To determine whether a restraint violates the rule of reason, … a three-step, burden shifting framework applies. Under this framework, the plaintiff has the initial burden to prove that the challenged restraint has a substantial anticompetitive effect that harms consumers in the relevant market." *Amex*, 585 U.S. 541 (citations omitted). "If the plaintiff carries its burden, then the burden shifts to the defendant to show a procompetitive rational for the restraint." *Id.* (citations omitted). "If the defendant

Case No. 5:20-cv-03642-EJD

MOTION OF DEFENDANT SYNTA CANADA FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

makes this showing, then the burden shifts back to the plaintiff to demonstrate that the procompetitive efficiencies could be reasonably achieved through less anticompetitive means." *Id.* at 541-42. "A procompetitive rationale is a 'nonpretextual claim that [defendant's] conduct is indeed a form of competition on the merits because it involves, for example, greater efficiency or enhanced consumer appeal.'" *Surgical Instrument Serv. Co., Inc. v. Intuitive Surgical, Inc.*, 728 F. Supp. 3d 1034, 1049 (N.D. Cal. 2024) (quoting *Qualcomm*, 969 F.3d at 991). "It is not enough that conduct has the effect of reducing consumers' choices or increasing prices to consumers.' " *Id.*

"Concerted activity subject to [Sherman Act] § 1 is judged more sternly than unilateral activity under § 2. Certain agreements, such as horizontal price fixing and market allocation, are thought so inherently anticompetitive that each is illegal per se without inquiry into the harm it has actually caused." *Copperweld*, 467 U.S. at 768. "'[A] classic horizontal market division agreement' is one 'in which competitors at the same level agree to divide up the market for a given product,' and it is unlawful per se. *Flaa v. Hollywood Foreign Press Ass'n*, 55 F.4th 680, 691–92 (9th Cir. 2022) (citing *Metro Indus., Inc. v. Sammi Corp.*, 82 F.3d 839, 844 (9th Cir. 1996); *United States v. Topco Assocs., Inc.*, 405 U.S. 596, 608–09, 612 (1972)) "Other combinations, such as mergers, joint ventures, and various vertical agreements, hold the promise of increasing a firm's efficiency and enabling it to compete more effectively. Accordingly, such combinations are judged under a rule of reason, an inquiry into market power and market structure designed to assess the combination's actual effect." *Copperweld*, 467 U.S. at 768 (citations omitted). In other words, "where, … 'the conduct at issue is not a garden-variety horizontal division of a market, [courts] have eschewed a per se rule and instead have utilized rule of reason analysis.'" *California ex rel. Harris v. Safeway, Inc.*, 651 F.3d 1118, 1137 (9th Cir. 2011).

## V. SUMMARY JUDGMENT SHOULD BE GRANTED IN FAVOR OF SYNTA CANADA ON DPPs' SHERMAN ACT, SECTION 1 CLAIMS

DPPs' claims under Section 1 of the Sherman Act fail as a matter of law because DPPs cannot establish any anticompetitive conduct nor any actions in furtherance of an underlying conspiracy involving Synta Canada. Synta Canada's conduct during the relevant period was limited to acting as a passive investment company, over which it exercised no control. DPPs' claims under Section 2 of the Sherman Act for monopolization and Section 7 of the Clayton Act for unlawful merger fail because

Synta Canada had no role in the Meade Acquisition, and there is no allegation or evidence of any subsequent attempt at monopolization or merger by any of the Defendants. Consequently, DPPs' UCL claim, which is derivative of their antitrust claims, similarly fails, for the same reasons.

DPPs fail to allege or prove any specific conduct as to SW Technology. In the Fourth Amended Complaint, DPPs allegations against SW Technology are merely boilerplate: "Synta Canada is owned and/or controlled by Chairman Shen and his family members. During the Class Period, Synta Canada—directly and/or through its subsidiaries, which it wholly owned and/or controlled—manufactured, marketed, and/or sold telescopes at prices that were unlawfully inflated as a result of the anticompetitive conspiracy alleged herein, and that were sold and purchased throughout the United States, including in this District. Because Synta Canada is owned and operated by Defendants Synta Technology, David Shen and Sylvia Shen, and owns Defendant Celestron Acquisition LLC, it is a member of the conspiracy and liable for its acts." (4AC, ¶ 28.)

### A.    <u>There is No Evidence of a Conspiracy Involving Synta Canada</u>

DPPs' claims against Synta Canada must fail as there is no specific conspiracy alleged relating to Synta Canada, which served as primarily a passive holding company which held ownership interests in Suzhou Synta, SW Technology, and Nantong Schmidt.

Citing *Arandell Corp. v. Centerpoint Energy Servs., Inc.*, 900 F.3d 623, 631 (9th Cir. 2018) ("*Arandell*"), DPPs falsely allege: "Synta Canada … manufactured, marketed, and/or sold telescopes at prices that were unlawfully inflated …. Because Synta Canada is owned and operated by Defendants Synta Technology, David Shen and Sylvia Shen, and owns Defendant Celestron Acquisition LLC, it is a member of the conspiracy and liable for its acts." (4AC, ¶ 28, 9:1-7.)

As a preliminary matter, Synta Canada is not owned by Synta Technology. (*See* UMF 3.) DPPs, however, also misinterpret *Arandell* to alter the fundamental antitrust premise that a subsidiary can only be liable for antitrust conspiracy if evidence shows independent, anticompetitive conduct in furtherance of an alleged conspiracy. 900 F.3d 623, 633 (9th Cir. 2018). "*Arandell* teaches that … unity of purpose under Copperweld does not mean that the acts of one entity in a family of companies may be imputed to any other wholly-related entity," without something more. *Biddle v. Walt Disney Co.*, No. 22-CV-07317-EJD, 2024 WL 3171860, at *10 (N.D. Cal. June 25, 2024) (citing *Arandell*, 900 F.3d at 633-34);

MOTION OF DEFENDANT SYNTA CANADA FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

*see also Jones v. Varsity Brands, LLC*, 618 F. Supp. 3d 713, 723 (W.D. Tenn. 2022) ("a plaintiff asserting a § 1 or § 2 claim under the Sherman Act must still provide 'evidence that each defendant independently participated in the enterprise's scheme, to justify holding that defendant liable as part of the enterprise.' … This involvement must be more than mere ownership.").

In *Arandell*, the defendant wholly-owned subsidiary did not contest the evidence that one of the parent entities successfully conspired to manipulate gas prices during the class period, or that the subsidiary bought gas from its parent and knowingly resold it to consumers during the class period at artificially high prices in furtherance of that price fixing conspiracy. *Arandell*, 900 F.3d at 629. The *Arandell* court also relied on specific evidence of "coordinated activity," including: "that the Reliant 'economic unit' had an anticompetitive purpose during the Class Period"; that the U.S. subsidiaries "resold the overpriced gas to Wisconsin businesses, collected millions of dollars in overcharges at the expense of the class members, and funneled the revenues from these sales to the Reliant parent"; and that "[t]he officers and directors of the Reliant parent orchestrated this scheme, directing [the subsidiary] to manipulate retail prices and instructing [another subsidiary] to send its illegal profits to the Reliant parent." *Id.* at 628, 632.

Here, Synta Canada is a holding company with no role in manufacturing, selling, or pricing telescopes. There is no evidence that Synta Canada undertook any action with its owners or subsidiaries to advance a price-fixing conspiracy, nor is there any evidence that Synta Canada manipulated prices at the Shen family's direction, nor there is there evidence that Synta Canada ever sold any products at artificially high prices—because Synta Canada never sold a single telescope. *Cf. Arandell*, 900 F.3d at 628, 632. Accordingly, no reasonable jury could conclude that any activity of SW Technology, as opposed to the subsidiary's participation in the decision to set prices at a certain level in *Arandell*, "[was] the immediate cause of Plaintiffs' injuries." *Arandell*, 900 F.3d at 634-35; *see also In re Lantus Direct Purchaser Antitrust Litig.* ("*Lantus*"), No. CV 16-12652-LTS, 2022 WL 4239367, at *28 (D. Mass. Aug. 17, 2022), report and recommendation adopted, No. CV 16-12652-LTS, 2022 WL 4237276 (D. Mass. Sept. 14, 2022) (granting summary judgment for Defendant subsidiary, and citing Arandell, where no evidence of link between activities of subsidiary and "the immediate cause of Plaintiffs' injuries.")

Here, unlike in *Arandell*, there is no evidence that Synta Canada played any role beyond that of a passive subsidiary of its parent companies. *Cf. Arandell*, 900 F.3d at 633. DPPs fail to adduce evidence that there was any overlap among the directors and personnel of the subsidiary and its parent corporation where those individuals participated in anticompetitive acts, nor that "manipulative practices were a matter of common knowledge within [the corporate family]." 900 F.3d at 633.

In *Arandell*, the Court's finding of subsidiary's liability depended on clear evidence in the record that the subsidiary made "critical contributions to the conspiracy." 900 F.3d at 635. But, here, there is no evidence in the record that Synta Canada made any contributions to any conspiracy, because that would require specific actions. Synta Canada is a passive holding company. Courts applying *Arandell* require more than vague allegations of a subsidiary's involvement in the overall corporate family's activities. *See In re RealPage, Inc., Rental Software Antitrust Litig. (No. II)* ("*RealPage*"), 709 F. Supp. 3d 552, 557 (M.D. Tenn. 2023) (dismissing claims where "there are no factual allegations that [subsidiary] acted in furtherance of the conspiracy").

Here, Plaintiffs fail to adduce evidence that Synta Canada acted as anything more than a passive investment holding company with some limited R&D work over the class period. Without specific evidence linking Synta Canada's independent actions to the alleged antitrust conspiracy, Arandell provides no basis for Sherman Act § 1 liability. Several district court cases have limited the application of Arandell to cases where In *In re Packaged Seafood Prods. Antitrust Litig.*, No. 15-MD-2670 DMS (MDD), 2023 WL 3046073 (S.D. Cal. Apr. 21, 2023), the Southern District held that the statement by a canned tuna manufacturer to other manufacturers that it "hoped" all three would "switch" was insufficient to give rise to an inference that there was an agreement to downsize their tuna cans. Similarly, in *RealPage*, the court found "there are no factual allegations that [subsidiary defendant] acted in furtherance of the conspiracy or that it did anything to accomplish [parent defendant's] alleged anticompetitive conduct. Applying *Arandell*'s analysis, the [plaintiffs] fail[] to state a claim."

Synta Canada did not conspire with other Defendants because it functioned as a mere holding company. (UMF No. 7.) DPP's reliance on *Arandell* to alter the basic evidentiary requirements to show that a subsidiary was an agent of a principal/parent company is inapt. DPP's misreading of *Arandell* is fatally flawed. At base, there is no evidence that Synta Canada "agreed explicitly on the terms of a

FROST

conspiracy to raise price" with any other alleged co-conspirator. *See In re Text Messaging Antitrust Litig.*, 630 F.3d at 628. Accordingly, summary judgment should be granted on DPPs' Sherman Act § 1 claims against Synta Canada as there is no evidence it engaged in any conspiracy.

### 1.    Synta Canada Did Not Engage in Price-Fixing

DPPs' allegations of Defendants' alleged anticompetitive conduct includes "[f]ixing the price of telescopes …" (FAC ¶ 89.) DPPs theorize that this price-fixing began in 2005 when the "Synta companies began colluding with Ningbo Sunny to fix prices and unlawfully coordinate their anticompetitive activities." (*Id.*, ¶ 91.) DPPs do not and cannot attribute this alleged activity specifically to Synta Canada.

DPPs allege that Defendants engaged in price fixing when, for instance, Synta Taiwan employee Joyce Huang coordinated with Ningbo Sunny to fix the price of Ningbo Sunny's telescopes—telescopes which were to be sold to Orion. DPPs conveniently omit context which would reveal that Joyce Huang functioned as a trader between Ningbo Sunny and Orion, at Orion's behest. The fact of Orion's irrelevance in the instant action aside, DPPs do not indicate that Synta Canada participated in this supposed price-fixing conduct in any way.

For most of its corporate existence, Synta Canada acted merely as a passive holding company for its owners' investments in Suzhou Synta, Nantong Schmidt, and SW Technology. (UMFs 2, 4, 7, 8, 12.) It was never a manufacturer or distributor of telescopes in the United States or anywhere else, for that matter. (UMF 7.) Synta Canada became an investor in Nantong Schmidt solely to assist former Suzhou Synta employees once they took over Nantong Schmidt. It did not retain or exercise any meaningful control over the business activities of Suzhou Synta, Nantong Schmidt, or SW Technology. (*Id.*)

Even applying the most expansive reading of DPPs evidence against David Shen, where DPPs allege that "Celestron's CEO, Defendant Corey Lee, told Mr. Shen to raise the prices Synta charged to Celestron's competitors, which Synta did." (ECF 656, 9:1-2.), there is simply no evidence that could impute alleged activities of David Shen or manufacturers Suzhou Synta and Nantong Schmidt to Synta Canada, as Synta Canada was not a distributor or manufacturer; nothing David Shen allegedly did leading to alleged price increases could relate to Synta Canada.

2. **Synta Canada Had No Market Power to Divide or Monopolize the Market**

Nowhere do DPPs specifically allege that Synta Canada had any real market power. DPPs identify two relevant markets: the Manufacturing Market and the Distribution Market. (FAC ¶ 73, 77.) Synta Canada's role in the United States telescope market was limited to nonexistent. Synta Canada functioned primarily as an investment company, with most of its ownership interests being in non-United States companies, Suzhou Synta and Nantong Schmidt. As for the one United States based company it was involved with, Synta Canada owned a mere 20% of an entity which was functionally a holding company and also had no market power. Synta Canada was thus not a horizontal competitor of any of the companies which DPP alleges to have conspired.

The only Synta-related entity in this action that manufactured telescopes are Suzhou Synta and Nantong Schmidt. The undisputed fact remains that Synta Canada never manufactured telescopes or telescope accessories. It therefore had no share in the manufacturing market. It also follows that Synta Canada had zero share in the distribution market. As a passive holding company, it did not engage in or direct the distribution of telescopes. Thus, it is factually impossible for it to have conspired with Ningbo Sunny to divide or monopolize the market.

3. **Synta Canada Had No Role in the 2013 Meade Acquisition**

The undisputed facts also indicate that Synta Canada was not involved in Ningbo Sunny's 2013 acquisition of Meade. (UMFs 18, 19.) DPPs plead only a single allegation which specifically suggests that Synta Canada engaged in the acquisition of Meade. However, the claim that Sylvia and Jack "were aware of and approved Celestron's involvement in the unlawful acquisition of Meade" is entirely unfounded.

4. **Synta Canada Did Not Share Any Non-Public Information**

In support of their allegations that Defendants shared non-public, sensitive information including pricing, DPPs highlight emails exchanged between Defendants. Not one email attached to DPPs' Fourth Amended Complaint indicates that Synta Canada shared sensitive trade secrets or non-public information. DPPs' allegations of Defendants improperly sharing confidential information are directed at other Defendants. Moreover, DPPs' allegations relating to conduct by Defendants that was

1    directed at Orion is irrelevant. Orion settled all of its antitrust and competition claims with Defendants

2    prior to the Orion case in 2016. (UMFs 19-22); *infra* § V.D.)

3    **B.    As a Foreign Holding Company, Synta Canada Did Not Engage in Conduct That**
        **Had Any Direct Effect on Domestic Commerce**

4

5    The Foreign Trade Antitrust Improvements Act ("FTAIA") makes "conduct involving trade or

6    commerce (other than import trade or import commerce) with foreign nations" generally exempt from

7    federal antitrust laws. 15 U.S.C. § 6a. In other words, U.S. federal antitrust laws do not apply to foreign

8    conduct unless that conduct has a "direct, substantial, and reasonably foreseeable effect" on U.S.

9    domestic commerce, import commerce, or U.S. export commerce. This is a critical threshold inquiry

10   that the Supreme Court and every court of appeals to have considered the question has applied when a

11   plaintiff alleges an international price-fixing conspiracy. Those seeking to establish antitrust liability

12   against foreign entities must meet a high bar. Only "activities [that] adversely affect domestic commerce,

13   imports to the United States, or exporting activities of one engaged in such activities within the United

14   States" are excepted from the FTAIA's reach. *U.S. v. Hui Hsiung*, 778 F.3d 738, 751 (9th Cir. 2015)

15   (citing *F. Hoffman-La Roche Ltd. v. Empagram S.A.*, 542 U.S. 155, 161 (2004)). This requirement is not

16   merely a "subject-matter jurisdiction limitation on the power of the federal courts but a *component of*

17   *the merits of a Sherman Act claim* involving nonimport trade or commerce with foreign nations." *Id.*

18   (emphasis added). The Northern District has held that the so-called "domestic effect exception" requires

19   the satisfaction of a two-prong test: (1) the alleged antitrust conduct must have a "direct, substantial, and

20   reasonably foreseeable effect on domestic commerce, and (2) such effect [must] give[] rise to a Sherman

21   Act claim." *In re Static Random Access Memory (SRAM) Antitrust Litig.*, No. 07-MD-01819 CW, 2010

22   WL 5477313, at *2 (N.D. Cal. Dec. 31, 2010) (internal quotes omitted) (original brackets omitted).

23   Courts interpreting the FTAIA require a direct causal link between the foreign conduct and harm

24   to U.S. commerce, meaning an independent foreign conduct is insufficient to establish liability without

25   an immediate proximate anticompetitive effect in the domestic market. *See Minn-Chem, Inc. v. Agrium*

26   *Inc.*, 683 F.3d 845, 857 (7th Cir. 2012) (en banc) (requiring that the U.S. effect follow "as an immediate

27   consequence" of the foreign conduct). Any of the foreign conduct alleged in support of DPPs claims

28   against Synta Canada on U.S. markets is many steps removed from foreign-market conversations,

15

FROST

transactions, and financial decisions that never touched upon manufacturing, distribution, or pricing of U.S. products in any direct way whatsoever. *See Lotes Co. v. Hon Hai Precision Industry Co.,* 753 F.3d 395, 402, 414 (2nd Cir. 2014) (holding domestic Effects Exception inapplicable where plaintiff foreign entity asserted it was injured in China by defendants' conduct; finding plaintiff's generalized allegation that defendants' conduct "had the effect of driving up the prices of [goods]" in the United States insufficient to support the Effects Exception to the FTAIA shield to foreign entity liability). An effect is direct if "follows as an immediate consequence of the defendant's activity." *United States v. LSL Biotechnologies,* 379 F.3d 672, 680 (9th Cir. 2004). Alternatively, a domestic effect may be substantial where "it involves a sufficient volume of U.S. commerce and is not a mere spillover effect." *Sun Microsystems Inc. v. Hynix Semiconductor Inc.*, 534 F. Supp. 2d 1101, 1110 (N.D. Cal. 2007).

Here, DPPs have not adduced evidence that any foreign conduct by Synta Canada "gives rise to" element for claims based on conduct that preceded the relevant products' entry into U.S. import or domestic markets. *Lotes,* 753 F. 3d at 402, 414. First, the conduct at issue does not involve import commerce. Import trade means "transactions between foreign producers or manufacturers of a product and purchasers in the United States." *In re Optical Disk Drive Antitrust Litig.*, No. 10-MD-02143-RS, 2017 WL 11513316 at *2 (N.D. Cal. 2017). Synta Canada never produced nor manufactured any products which were sold to United States purchasers; let alone telescopes. Without sales or distribution in the U.S. market, its conduct could not have directly impacted U.S. commerce, as required under the Sherman Act. Any effect on the U.S. is de minmis.

Next, DPPs cannot satisfy the "Direct Effects" exception. As extensively stated, Synta Canada did not direct its business efforts towards the United States when it was a producer of electronic products. The only 'direct effect' that DPPs allege is Synta Canada being one of SW Technology's parent companies, but the evidence shows this was a legitimate business investment for investment purposes, which is protected from anti-trust liability. *See U.S. v. Tracinda Inv. Corp.* (C.D. Cal. 1979) 477 F.Supp. 1093, 1098 (emphasizing there is an investment exception).

Further, as explained above, the individual conduct of directors Sylvia Shen, Jack Chen, and David Shen cannot be attributed to Synta Canada. Any of DPPs' allegations which seek to hold Synta Canada responsible for its owners' conduct cannot be attributed to Synta Canada when such owners

16

MOTION OF DEFENDANT SYNTA CANADA FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

were not acting in their capacity as Synta Canada directors and owners. Moreover, the acts of Synta Canada's subsidiaries cannot be traced back to Synta Canada. Thus, to the extent that SW Technology or Celestron conducted business in the United States, their business activities do not attribute liability to parent holding company Synta Canada.

Here, DPPs cannot show any direct effect or harm to the United States telescope market caused by Synta Canada. Synta Canada began as a trading company for goods being imported and exported between Canada and Taiwan. Neither Sylvia, Jack, nor David had any intent of doing business with or within the United States. In the brief period Synta Canada researched and developed software, it sold exclusively to Chinese company Nantong Schmidt. To the extent it had any involvement with a United States entity, Synta Canada's ownership share in SW Technology was limited and its active participation with that entities' activities was nonexistent. Any downstream effects resulting from importation into another country besides the U.S. cannot "give rise to" their upstream injuries because the "direction of causation runs the wrong way." *Lotes*, 753 F.3d at 414.

### C.    Synta Canada's Business Purpose Was Legitimate and Pro-Competitive

No evidence that directly pertains to any direct action by Synta Canada supports either an unlawful purpose or the requisite cause and anticompetitive effect in the United States as would be necessary to establish an antitrust violation. *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 580 F. Supp. 2d 896, 902 (N.D. Cal. 2008).

Synta Canada's business purpose was primarily to serve as a passive investment company. (UMF 7.) Synta Canada sold a minimal amount of software to Nantong Schmidt, a company in which it had a direct ownership interest. As a part owner, Synta Canada had a legitimate business purpose in supporting Nantong Schmidt. (UMFs 5, 6.)

### D.    DPPs' Allegations of Antitrust Injury Against Orion are Irrelevant Given the Parties' Prior Settlement Agreement

Defendants are entitled to summary judgment because the DPPs lack standing to assert claims based on injuries that Orion, a settling party, expressly released in its 2016 Settlement Agreement with Defendants. The 2016 Settlement Agreement between Orion and Defendants unambiguously released "all claims, known and unknown," including all antitrust claims, relating to Orion's

Complaint, and arising from business dealings with Defendants. (UMFs 19-22.) The DPPs' claims are entirely derivative of Orion's allegations, which were fully and finally resolved by the Settlement Agreement. Under well-established principles of standing, settlement preclusion, and the plain language of the release, the DPPs cannot resurrect Orion's extinguished claims or rely on Orion's injuries as the basis for their own claims against Defendants. *Hesse v. Sprint Corp.,* 598 F.3d 581, 590 (9th Cir. 2010) (emphasizing settlement precludes claims that "depend[] on the identical factual predicate" as the released claims); *Reyn's Pasta Bella, LLC v. Visa USA, Inc*., 442 F.3d 741, 748 (9th Cir. 2006).

The DPPs' claims are nothing more than an improper attempt to relitigate Orion's settled claims under a different label. Courts have repeatedly rejected such efforts, holding that a settlement agreement precludes future claims based on the same facts, even if the subsequent claims are brought by different plaintiffs or assert different legal theories, including asserting that their effects continue over time. *Thornton v. City & Cty. of S.F.,* No. 21-cv-02938-SI, 2021 U.S. Dist. LEXIS 233057, at *10 (N.D. Cal. 2021) (denying claims based on past pre-settlement conduct, even if harm allegedly persisted).

## VI.    SUMMARY JUDGMENT SHOULD BE GRANTED IN FAVOR OF SYNTA CANADA AS TO DPPS' SHERMAN ACT § 2 CLAIMS (2013 to Present)

"Section 2 enumerates three antitrust violations: monopolization, attempt to monopolize, and conspiracy to monopolize." *Aurora Astro Prods. LLC v. Celestron Acquisition, LLC*, 691 F. Supp. 3d 1132, 1146 (N.D. Cal. 2023) (ECF No. 539) (citing 15 U.S.C. § 2). "While Section 1 'targets concerted anticompetitive conduct, Section 2 targets independent anticompetitive conduct.'" *Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.*, 20 F.4th 466, 481 (9th Cir. 2021) ("*Orion*") (quoting *Fed. Trade Comm'n v. Qualcomm Inc.*, 969 F.3d 974, 989–90 (9th Cir. 2020)). "Monopoly power itself is not unlawful— instead, it must be 'accompanied by an element of anticompetitive conduct' to trigger Section 2 liability." *Id.*; *Verizon Communications Inc. v. Law Offices of Curtis V. Trinko, LLP* (2004) 540 U.S. 398, 407 (emphasizing "[t]he opportunity to charge monopoly prices—at least for a short period—is what attracts "business acumen" in the first place; it induces risk taking that produces innovation and economic growth.")

Monopolization requires: "(1) possessed monopoly power in the relevant market, (2) willfully acquired or maintained that power through exclusionary conduct and (3) caused antitrust injury." *MetroNet Servs. Corp. v. Qwest Corp.*, 383 F.3d 1124, 1130 (9th Cir. 2004). "Attempted monopolization requires: '(1) specific intent to monopolize a relevant market; (2) predatory or anticompetitive conduct; and (3) a dangerous probability of success.'" *Orion*, 20 F.4th at 481–482 (quoting *Catlin v. Wash. Energy Co.*, 791 F.2d 1343, 1348 (9th Cir. 1986)). "Conspiracy to monopolize requires: '(1) an agreement or understanding between [alleged conspirators]; (2) a specific intent to monopolize; and (3) overt acts in furtherance of the alleged conspiracy.'" *Id.* (quoting *Howard Hess Dental Lab'ys Inc. v. Dentsply Int'l, Inc.*, 516 F. Supp. 2d 324, 341 (D. Del. 2007), aff'd, 602 F.3d 237 (3d Cir. 2010).

Attempted monopolization refers to "the employment of methods, means and practices which would, if successful, accomplish monopolization, and which, though falling short, nevertheless approach so close as to create a dangerous probability of it." *Am. Tobacco Co. v. United States*, 328 U.S. 781, 785 (1946). A plaintiff asserting an attempted monopolization claim under § 2 must plead: "(1) a specific intent to control prices or destroy competition; (2) predatory or anticompetitive conduct directed at accomplishing that purpose; (3) a dangerous probability of achieving 'monopoly power,' and (4) causal antitrust injury." *Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 51 F.3d 1421, 1434.

"The threshold market share to establish a prima facie case of monopoly power is generally no less than 65%, … and 'numerous cases hold that a market share of less than 50 percent is presumptively insufficient to establish' the requisite level of market power under a Section 2 claim." *Tevra Brands LLC v. Bayer HealthCare LLC*, No. 19-CV-04312-BLF, 2024 WL 1909156, at *10 (N.D. Cal. May 1, 2024) (citing *Rebel Oil*, 51 F.3d at 1438). "Furthermore, 'if, in reviewing an alleged Sherman Act violation, a court finds that the conduct in question is not anticompetitive under § 1, the court need not separately analyze the conduct under § 2.'" *Id.* (quoting *FTC v. Qualcomm Inc.*, 969 F.3d 974, 991 (9th Cir. 2020)).

DPPs generally allege that "Defendants have monopolized, attempted to monopolize, and/or conspired to monopolize the markets for telescopes in the United States." (4AC, ¶ 169.) However, the evidence clearly illustrates that Synta Canada had no monopoly power in the relevant market. Beyond generalized allegations, no evidence ties Synta Canada to any post-2013 anticompetitive or monopolistic

1    scheme. Critically, Synta Canada is a Canadian based entity and did not do business in the United States.

2    It maintained a passive role as an investor in two non-American companies and only a minority owner

3    of one American holding company. To the extent it held an ownership interest in the United States based

4    company, SW Technology, that interest was a minimal twenty-four percent. Further, it held no control

5    over the business activities of SW Technology, who itself had no reason to be actively involved in such

6    acquisition, as only a holding company for Celestron.

7         DPPs further allege that through its indirect ownership in Celestron, Synta Canada monopolized

8    the American telescope market. However, as explained, mere ownership will not attribute antitrust

9    liability. Synta Canada played no active role in the management or control of SW Technology or its

10    subsidiary, Celestron. Plaintiffs wrongfully attribute the individual conduct of Sylvia Shen and David

11    Shen, who were directors of SW Technology, to Synta Canada. "The courts generally presume that the

12    directors are wearing their 'subsidiary hats' and not their 'parent hats' when acting for the subsidiary.

13    To overcome the presumption, a party must show that the dual agents were acting on behalf of the

14    parent." *In re Packaged Seafood Prods. Antitrust Litig.*, No. 15-MD-2670 DMS (MDD), 2022 WL

15    836951, at *9–10 (S.D. Cal. Mar. 21, 2022) (internal quotations omitted). If DPPs wish to attribute

16    liability to Synta Canada through Sylvia Shen, Jack Chen, and David Shen's conduct, they must

17    specifically allege and prove that these individuals acted on behalf of Synta Canada in their roles as SW

18    Technology directors. DPPs do not and cannot make such a showing. Mere common ownership of the

19    two entities cannot support a finding of monopoly power. This Motion also makes extensively clear that

20    Synta Canada played no part in Ningbo Sunny's acquisition of Meade. It held no share and thus had no

21    stake in the relevant markets and had no interest in the Meade acquisition. Therefore, it logically follows

22    that Synta Canada did not cause any resulting antitrust injury because it did not engage in any

23    anticompetitive conduct.

24         Thus, DPPs' claim fails on all fronts: Synta Canada had no monopoly power in either the

25    manufacturing or distribution markets, it did not seek to acquire monopoly power, and it did not cause

26    antitrust injury.

27

28

FROST

## VII.    SUMMARY JUDGMENT SHOULD BE GRANTED IN FAVOR OF SYNTA CANADA AS TO DPPS' CLAYTON ACT § 7 CLAIMS (2013 to Present)

Section 7 prohibits mergers that tend "substantially to lessen competition" or "create a monopoly." *Orion*, 20 F.4th at 485 (9th Cir. 2021) (citing 15 U.S.C. § 18). "To establish a prima facie [Section 7] case, [a plaintiff] must (1) propose the proper relevant market and (2) show that the effect of the merger in that market is likely to be anticompetitive." *Id.* (citing *Fed. Trade Comm'n v. Penn State Hershey Med. Ctr.*, 838 F.3d 327, 337–38 (3d Cir. 2016)).

In its Order on Defendants' Motion to Dismiss, this Court dismissed in part DPPs' claims under the Clayton Act as to the period beginning in 2005, finding that "DPPs fail[ed] to allege a monopoly or attempted monopoly arising from the Celestron acquisition" and thus, "DPPs fail[ed] to allege any conduct giving rise to a § 7 claim with respect to the Celestron acquisition in 2005." (ECF No. 539, 16:13-17.) DPPs Section 7 claims are thus limited to Ningbo Sunny's acquisition of Meade in 2013. (*See id.* at 16:8-9, 16:18–19.)

Here, there is no evidence that Synta Canada participated in Ningbo Sunny's acquisition of Meade. In fact, Synta Canada had no role in the acquisition. (UMFs 17, 18.) DPPs allege that Defendants colluded to prevent JOC from acquiring Meade and instead purchase the company for themselves. However, once again, DPPs fail to direct any specific allegations towards Synta Canada. As explained, to the extremely limited extent they do direct allegations towards Synta Canada, they do so broadly and conclusively. The beginning and end of it is that Synta Canada did not influence Ningbo Sunny's decision to purchase Meade, nor did it participate in any meaningful conduct to realize the acquisition. Synta Canada's complete lack of involvement in this acquisition can mean no other outcome than finding that DPPs' Clayton Act Section 7 fail.

## VIII.    SUMMARY JUDGMENT SHOULD BE GRANTED IN FAVOR OF SYNTA CANADA AS TO DPPS' CARTWRIGHT ACT CLAIMS (2005 to Present)

"The Cartwright Act is based on the federal Sherman antitrust act and California courts have held that federal cases interpreting the Sherman Act are applicable to the Cartwright Act." *Penner v. Breitling USA, Inc.*, No. C-93-4308 SI, 1996 WL 182202, at *3 (N.D. Cal. 1996), aff'd, 124 F.3d 212 (9th Cir. 1997). "[T]he analysis under California's antitrust law mirrors the analysis under federal law

because the Cartwright Act, Cal. Bus. & Prof. Code § 16700 et seq., was modeled after the Sherman Act." *Aurora Astro Prods. LLC v. Celestron Acquisition, LLC*, 691 F. Supp. 3d 1132, 1150 (N.D. Cal. 2023) (ECF No. 539) (quoting *Cnty. of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1160 (9th Cir. 2001).

"The Cartwright Act only prohibits restraint of trade through an agreement or conspiracy." *G.H.I.I. v. MTS, Inc.* 147 Cal. Appl. 3d 256, 264-66 (1983). "A Cartwright Act violation requires a combination of capital, skill or acts by two or more persons that seeks to achieve an anticompetitive end." *Asahi Kasei Pharma Corp. v. CoTherix, Inc.*, 204 Cal.App.4th 1, 8 (2012). Thus, the Cartwright Act incorporates the "basic distinction between concerted and independent action." *Monsanto*, 465 U.S. at 761. "The Cartwright Act, like the federal Sherman Act (15 U.S.C. § 1), does not proscribe independent action." *Scripps Clinic v. Superior Court*, 108 Cal. App. 4th 917, 935 (2003). "Concerted activity" is "judged more sternly than unilateral activity" for reasons that are "readily appreciated." *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 768 (1984). "Concerted activity inherently is fraught with anticompetitive risk. It deprives the marketplace of the independent centers of decisionmaking that competition assumes and demands." *Id*. at 768–79. The dividing line between independent action and concerted action is drawn by asking whether the parties "achieved 'a meeting of the minds' or 'a common scheme.' " *Chavez v. Whirlpool Corp.*, 93 Cal. App. 4th 363, 371 (2001) (quoting *Monsanto*, 465 U.S. at 764 & n.9); accord *Scripps*, 108 Cal.App.4th at 935. "Courts use the words 'contract', 'combination', and 'conspiracy' interchangeably, and sometimes simply refer instead to an 'agreement'. The first inquiry, in any section 1 claim, then, is to locate the agreement that restrains trade." *Tidmore Oil Co. v. BP Oil Co./Gulf Prods. Div*., 932 F.2d 1384, 1388 (11th Cir. 1991) (citation omitted).

DPPs' Cartwright Act claims against Synta Canada fail for the same reasons as their Sherman Act, section 1 claims. As thoroughly explained above, there is no evidence supporting the individual liability of Synta Canada. DPPs cannot allege any price-fixing conspiracy against Synta Canada. DPPs generally attribute conspiratorial conduct towards all defendants and to the extent that DPPs do allege specific conduct, they hold Synta Canada responsible for the acts of its individual directors. Furthermore, they unconvincingly attempt to draw connections between entities through indirect

ownership. For instance, DPPs trace acts by Celestron back to its holding company, SW Technology, and then to SW Technology's partial owner, Synta Canada.

DPPs' Cartwright Act claims against Synta Canada fail for the same reasons as their Sherman Act, section 1 claims. DPPs cannot allege any price-fixing conspiracy against Synta Canada. Any alleged agreements with DPPs Cartright Act claims fail for the same reasons discussed with respect to the paucity of allegations or evidence that connect Synta Canada to any specific act in furtherance of anti-competitive conspiracy, and due to the same lack of evidence of proximate cause to any anticompetitive effect in the United States arising from any Synta Canada conduct.

## IX.    SUMMARY JUDGMENT SHOULD BE GRANTED IN FAVOR OF SYNTA CANADA AS TO DPPS' UCL CLAIMS

The UCL prohibits "any unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. It provides three independent theories of liability. *Eidmann v. Walgreen Co.*, 522 F.Supp.3d 634, 643 (N.D. Cal. 2021). Although it would seem DPPs assert a claim under all three theories, it is hardly clear what prong is tied to which alleged act by Synta Canada, since no allegations are pleaded as to any Defendant in the counts of the Fourth Amended Complaint. *Suguri v. Wells Fargo Bank*, No. CV 09-1828 (PSG), 2009 WL 2486546, at *6 (C.D. Cal. Aug. 7, 2009) (citing *Twombly*, 550 U.S. at 555); *see also Brennan v. Concord EFS, Inc.*, 369 F. Supp. 2d 1127, 1136 (N.D. Cal. 2005) (dismissing complaint against certain defendants because it failed to plead allegations "specifically connecting [those defendants] to the alleged conspiracy."). For this reason alone, DPPs' section 17200 claim should be dismissed.

Additionally, to state a claim that a practice is unlawful under the UCL, Plaintiffs must adequately plead a violation of another law. *Eidmann* 522 F. Supp. 3d at 648. The UCL then "treats these violations, when committed pursuant to business activity, as unlawful practices independently actionable under [the UCL] and subject to the distinct remedies provided thereunder." *People ex rel. Lockyer v. Fremont Life Ins. Co.*, 104 Cal. App. 4th 508, 515 (2002).

As discussed above, DPPs have failed to plead an independent violation of the Sherman or Cartwright Acts. Their claim against Synta Canada for violation of the UCL based on the violation of these statutes accordingly fails. *See Piñon v. Bank of Am., N.A.*, 741 F.3d 1022, 1027 (9th Cir.

MOTION OF DEFENDANT SYNTA CANADA FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

2014) ("California's Unfair Competition Law … makes violations of other state and federal laws 'independently actionable as unfair competitive practices.' … Because we conclude that the issuers' conduct did not violate [the other statutes at issue], there is no derivative liability under the Unfair Competition Law."); *Ross v. Morgan Stanley Smith Barney LLC*, No. 2:12-cv-09687, 2013 U.S. Dist. LEXIS 31822, at *19 (C.D. Cal. 2013) (holding UCL claim failed based on failure to plead violations of underlying statutes); *Aleksick v. 7-Eleven, Inc.*, 205 Cal.App.4th 1176, 1185 (2012) ("When a statutory claim fails, a derivative UCL claim also fails.")

DPPs' claims of unfairness under the UCL fail for the same reason—Synta Canada's conduct cannot be considered unfair or wrongful if it is simultaneously permitted by antitrust laws. As outlined above, DPPs cannot prove that any allegedly conspiratorial act by Synta Canada is independently unlawful. Thus, because DPPs cannot show Synta Canada independently violated the Sherman Act, the Clayton Act, or the Cartwright Act, DPPs' UCL claims accordingly fail. *See Piñon v. Bank of Am., N.A.*, 741 F.3d 1022, 1027 (9th Cir. 2014) ("California's Unfair Competition Law … makes violations of other state and federal laws 'independently actionable as unfair competitive practices.' … Because we conclude that the issuers' conduct did not violate [the other statutes at issue], there is no derivative liability under the Unfair Competition Law."); *Ross v. Morgan Stanley Smith Barney LLC*, No. 2:12-cv-09687, 2013 U.S. Dist. LEXIS 31822, at *19 (C.D. Cal. 2013) (holding UCL claim failed based on failure to plead violations of underlying statutes); *Aleksick v. 7-Eleven, Inc.*, 205 Cal.App.4th 1176, 1185 (2012) ("When a statutory claim fails, a derivative UCL claim also fails.")

DPPs' claims of unfairness under the UCL fail for the same reason—Synta Canada's conduct cannot be considered unfair or wrongful if it is simultaneously permitted by antitrust laws. For example, in *Chavez v. Whirlpool Corp.*, 93 Cal.App.4th 363 (2001), the plaintiff brought putative class action claims under the Cartwright Act and the UCL regarding the defendant manufacturer's unilateral pricing policy for its dishwashers. The Court of Appeals affirmed the dismissal of the plaintiff's Cartwright Act claim on the ground that the allegations were too conclusory to establish an agreement. The court held that the plaintiff was therefore precluded from alleging a violation of the UCL under the unfairness prong. As the court recognized, to "permit a separate inquiry into essentially the same question under the unfair competition law [as under the antitrust laws] would only invite conflict and uncertainly and

1 | could lead to the enjoining of procompetitive conduct." *Id.*; *see also City of San Jose v. Office of the*
2 | *Comm'r of Baseball*, 776 F.3d 686, 692 (9th Cir. 2015) ("An independent claim under California's UCL
3 | is therefore barred so long as [defendant's] activities are lawful under the antitrust laws."); *Belton v.*
4 | *Comcast Cable Holdings LLC*, 151 Cal.App.4th 1224, 1239–40 (2007) (dismissing claim of unfairness
5 | under UCL where conduct complied with antitrust laws).

6 |     *Chavez* squarely controls DPPs' claims here against Synta Canada. There is nothing from which
7 | a conspiracy could be inferred, no explicit agreement, and no anti-competitive conduct by Synta Canada.
8 | Accordingly, because Plaintiffs' antitrust claims against Synta Canada fails, so too must the UCL claim.

9 | **X.**    **SYNTA CANADA JOINS IN THE ARGUMENTS PRESENTED BY CELESTRON**
10 |     **AND SW TECHNOLOGY IN THEIR MOTIONS FOR SUMMARY JUDGMENT**

11 |     Synta Canada joins in Celestron Acquisition, LLC's forthcoming Motion for Summary
12 | Judgment as the issue on lack of damages presented in that Motion are so similar that an independent
13 | motion would be redundant. *See Vazquez v. Central States Joint Bd.*, 547 F. Supp. 2d 833, 867 (N.D.
14 | Ill. 2008) ("[i]t is permissible for a party to adopt the motion of another party when the facts between
15 | the parties are essentially the same and the adoption would promote judicial efficiency"); *accord*
16 | *Spencer v. Lunada Bay Boys*, No. CV1602129SJORAOX, 2016 WL 6818757, at *3 (C.D. Cal. 2016).
17 | Further, Synta Canada joins in SW Technology's Motion for Summary Judgment to the extent that a
18 | finding in favor of SW Technology would also be favorable to the granting of Summary Judgment for
19 | Synta Canada, as one of SW Technology's parent companies.

20 | **XI.**    **CONCLUSION**

21 |     For the foregoing reasons, Defendants respectfully request that the Court grant Synta Canada's
22 | Motion for Summary Judgment, or in the alternative, Partial Summary Judgment.
23 | / / /
24 | / / /
25 | / / /
26 | / / /
27 | / / /
28 | / / /

25    Case No. 5:20-cv-03642-EJD

MOTION OF DEFENDANT SYNTA CANADA FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE,
PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

FROST

DATED:  March 7, 2025                    FROST LLP

By: _____

CHRISTOPHER FROST
JOHN D. MAATTA
JOSHUA S. STAMBAUGH
LAWRENCE J. H. LIU

Attorneys for Defendants Celestron Acquisition, LLC, Synta Technology Corp., Suzhou Synta Optical Technology Co., Ltd., Synta Canada Int'l Enterprises Ltd., SW Technology Corp., Olivon Manufacturing Co. Ltd., Olivon USA, LLC, Nantong Schmidt Optoelectrical Technology Co. Ltd., Pacific Telescope Corp., Corey Lee, David Shen, Sylvia Shen, Jack Chen, Jean Shen, Joseph Lupica, Dave Anderson, Laurence Huen