# EXHIBIT A

```
 1              UNITED STATES DISTRICT COURT

 2          FOR THE NORTHERN DISTRICT OF NEW YORK

 3                      ---oOo---

 4  IN RE TELESCOPES ANTITRUST
    LITIGATION
 5  _____

 6  This document relates to: CASE NO. 5:20-CV-03639-EJD
                               Case No. 5:20-cv-03642-EJD
 7  AURORA  ASTRO PRODUCTS LLC,
    PIONEER CYCLING & FITNESS, LLP,
 8  JASON STEELE, AND THOSE
    SIMILARLY SITUATED,
 9
                    Plaintiffs,
10  vs.

11  CELESTRON ACQUISITION, LLC, SUZHOU
    SYNTA OPTICAL TECHNOLOGY CO., LTD.,
12  SYNTA CANADA INT'L ENTERPRISES LTD.,
    SW TECHNOLOGY CORP., OLIVON MANUFACTURING CO. LTD,
13  OLIVON USA, LLC, NANTONG SCHMIDT OPTO-ELECTRICAL
    TECHNOLOGY CO. LTD., NINGBO SUNNY ELECTRONIC CO.,
14  LTD. PACIFIC TELESCOPE CORP., COREY LEE, DAVID SHEN,
    SYLVIA SHEN, JACK CHEN, JEAN SHEN, JOSEPH LUPICA,
15  DAVE ANDERSON, LAURENCE HUEN, and DOES 1-50,
                    Defendants.
16  _____

17

18    VIDEO-RECORDED DEPOSITION OF THE 30 (b)(6) OF

19              PACIFIC TELESCOPE CORP.

20       BY AND THROUGH SYLVIA SHEN, VOLUME I

21             San Francisco, California

22              Monday, March 4, 2024

23  Stenographically Reported by:  Ashley Soevyn,
    CSR No. 12019
24  ESQUIRE Job No. J10828593

25  Pages 1 - 107
```



```
 1   BY MS. KUSHNIR:                                      10:19:02
 2       Q    Did Synta Canada provide any financial
 3   assistance to Ningbo Sunny during the Meade
 4   acquisition?
 5            MR. STAMBAUGH:  Objection.  Lacks           10:19:20
 6   foundation.  Vague and ambiguous.
 7            THE WITNESS:  No.
 8   BY MS. KUSHNIR:
 9       Q    Did SW Technology provide any financial
10   assistance to Ningbo Sunny during the Meade          10:19:34
11   acquisition?
12            MR. STAMBAUGH:  Objection.  Lacks
13   foundation.  Calls for speculation.  Vague and
14   ambiguous.  Assumes facts not in evidence.
15            THE WITNESS:  SW Technology did not         10:20:19
16   provide financial assistance.
17   BY MS. KUSHNIR:
18       Q    Did Good Advance provide any financial
19   assistance to Ningbo Sunny during the Meade
20   acquisition?                                         10:20:32
21            MR. STAMBAUGH:  Objection.  Lacks
22   foundation.  Calls for speculation.  Vague and
23   ambiguous.
24            THE WITNESS:  I don't know.
25
```



```
 1              MR. STAMBAUGH:  Vague and ambiguous.           10:46:19
 2   Lacks foundation.
 3              THE CHECK INTERPRETER:  Again, the -- the
 4   translation was:
 5              "QUESTION:  Did Synta Canada pay you           10:46:30
 6              dividends after receiving dividends?"
 7              MS. KUSHNIR:  I'm fine with that
 8   interpretation.
 9              THE WITNESS:  Synta Canada does not pay
10   me dividends after it receives dividends.  There is      10:47:21
11   no such protocol or pathway of payments.
12   BY MS. KUSHNIR:
13       Q    What does Synta Canada do with the money
14   after it receives it from SW Technology?
15              MR. STAMBAUGH:  Objection.  Vague and          10:47:47
16   ambiguous.  Lacks foundation.
17              THE WITNESS:  This money it receives is
18   treated as an income.  And as to how the money is
19   used, that depends.  The money is put in the
20   company's account for uses as an investment or           10:49:00
21   distribution, or whatever it may be.  But the money
22   is put in the company's account.
23   BY MS. KUSHNIR:
24       Q    Have you ever personally received a
25   distribution from Synta Canada?                          10:49:15
```



```
 1  BY MS. KUSHNIR:                                        02:08:19
 2       Q    Did you sell 20 percent of your shares to
 3  someone else in Synta Canada?
 4            MR. LIU:  Objection.  Lacks foundation.
 5  Vague and ambiguous.  Assumes facts not in evidence.   02:08:38
 6            THE WITNESS:  I don't remember.
 7  BY MS. KUSHNIR:
 8       Q    How much ownership does Synta Canada hold
 9  in SW Technology?
10            MR. LIU:  Objection.  Lacks foundation.      02:09:47
11  Calls for speculation.  Vague and ambiguous.
12            THE WITNESS:  May I ask what time period
13  are you referring to?
14  BY MS. KUSHNIR:
15       Q    Currently, how much ownership does           02:10:21
16  Synta Canada hold in SW Technology?
17            MR. LIU:  Same objections.
18            THE WITNESS:  From what I can remember,
19  the current ownership that Synta Canada has for SW
20  is 24 percent.                                         02:11:26
21  BY MS. KUSHNIR:
22       Q    Has Synta Canada always held 24 percent
23  in Syn -- SW Technology?
24       A    No.
25       Q    When did Synta Canada's ownership            02:12:05
```



```
 1   percentage change?                                          02:12:07
 2              MR. LIU:  Vague and ambiguous.
 3              THE WITNESS:  From what I can remember,
 4   it was in 2019.
 5   BY MS. KUSHNIR:                                             02:13:07
 6        Q    How much ownership percentage did
 7   Synta Canada hold in SW Technology prior to 2019?
 8              MR. LIU:  Objection.  Lacks foundation.
 9   Calls for speculation.
10              THE WITNESS:  I believe it was               02:13:54
11   15 percent.
12   BY MS. KUSHNIR:
13        Q    Why did the ownership change from
14   15 percent to 24 percent in 2019?
15              MR. LIU:  Objection.  Lacks foundation.     02:14:18
16   Calls for speculation.  Assumes facts.
17              THE WITNESS:  I don't remember any
18   specific reason.
19   BY MS. KUSHNIR:
20        Q    Did Synta Technology sell its shares to      02:15:32
21   Synta Canada in 2019?
22              MR. LIU:  Objection.  Lacks foundation.
23   Calls for speculation.  Assumes facts not in
24   evidence.
25              THE WITNESS:  Yes.  There was a purchase    02:16:27
```



```
 1  BY MS. KUSHNIR:                                              02:44:53
 2       Q    Is EXCOM considered a management
 3  committee for Celestron?
 4            MR. STAMBAUGH:  Objection.  Vague and
 5  ambiguous.  Lacks foundation.  Compound.              02:45:15
 6            THE WITNESS:  No.
 7  BY MS. KUSHNIR:
 8       Q    Does EXCOM play any role in the business
 9  of Celestron?
10       A    No.                                         02:46:13
11       Q    Is Laurence Huen a part of EXCOM?
12            MR. STAMBAUGH:  Objection.  Lacks
13  foundation.
14            THE WITNESS:  He is not.
15  BY MS. KUSHNIR:                                       02:46:46
16       Q    How about David Shen, is he a part of
17  EXCOM?
18            MR. STAMBAUGH:  Same objections.
19            THE WITNESS:  He is not.
20  BY MS. KUSHNIR:                                       02:47:16
21       Q    Does EXCOM hold meetings?
22       A    I don't remember.
23       Q    Do you have an active role in the
24  management of Celestron's business?
25            MR. STAMBAUGH:  Objection.  Vague and       02:48:03
```



```
 1   from EXCOM to take certain actions for the business?      03:01:18
 2           MR. STAMBAUGH:  Objection.  Vague and
 3   ambiguous.  Compound.
 4           THE CHECK INTERPRETER:  The translation
 5   was:                                                      03:01:37
 6           (As read):
 7               "QUESTION:  If Celestron has to take
 8                some actions, does it need approval
 9                from EXCOM?"
10           So it became a hypothetical question.             03:01:44
11           MS. KUSHNIR:  Okay.  Can you retranslate
12   it, Ms. Liu?  And I'll re-ask the question again.
13       Q   Does Celestron ever have to seek approval
14   from EXCOM to take certain actions for the business?
15       A   No.                                               03:02:28
16       Q   If Celestron wanted to offer a new line
17   of products for sale, it would not need EXCOM's
18   approval before doing that?
19           MR. STAMBAUGH:  Objection.  Vague and
20   ambiguous.  Incomplete hypothetical.                      03:02:55
21           THE WITNESS:  From what I can remember,
22   there is no such thing as the so-called "approval."
23   BY MS. KUSHNIR:
24       Q   Who at Celestron would make the decision
25   as to whether or not Celestron would offer a new          03:03:40
```



```
 1                THE CHECK INTERPRETER:                         03:14:57
 2                     "THE WITNESS:  Regarding management
 3                     issues, we don't expect them to
 4                     micro-report everything."
 5   BY MS. KUSHNIR:                                             03:15:12
 6        Q    What if Celestron wanted to change one of
 7   its suppliers, would you expect Celestron's CEO to
 8   tell you?
 9             MR. STAMBAUGH:  Objection.  Vague and
10   ambiguous.  Incomplete hypothetical.  Assumes facts         03:15:34
11   not in evidence.
12             THE WITNESS:  From our position, I don't
13   have such requirement for them to do so.
14   BY MS. KUSHNIR:
15        Q    Even if Celestron were to switch from             03:16:15
16   using its largest supplier, you wouldn't want to
17   know?
18             MR. STAMBAUGH:  Objection.  Incomplete
19   hypothetical.  Asked and answered.  Argumentative.
20             THE WITNESS:  This is a hypothetical              03:17:09
21   question.  I don't know how to answer it.
22   BY MS. KUSHNIR:
23        Q    If Celestron switched from using its
24   largest supplier and didn't tell you, would you be
25   concerned?                                                  03:17:24
```



```
 1   BY MS. KUSHNIR:                                            03:11:25
 2       Q   If one of Celestron's suppliers wanted to
 3   change its payment terms with Celestron, would
 4   Celestron need EXCOM's approval before doing so?
 5           MR. STAMBAUGH:  Objection.  Vague and              03:12:00
 6   ambiguous.  Incomplete hypothetical.
 7           THE WITNESS:  The company does not have
 8   such rules that it has to go through EXCOM's
 9   approval.
10   BY MS. KUSHNIR:                                            03:12:52
11       Q   Would you expect Celestron's CEO to tell
12   you if one of its suppliers wanted to change its
13   payment terms?
14           MR. STAMBAUGH:  Objection.  Vague and
15   ambiguous.  Incomplete hypothetical.                       03:13:22
16           THE WITNESS:  Would you please repeat the
17   question.
18   BY MS. KUSHNIR:
19       Q   Would you expect Celestron's CEO to tell
20   you if one of its suppliers wanted to change its           03:13:42
21   payments terms?
22           MR. STAMBAUGH:  Same objections.
23           THE WITNESS:  For business matters like
24   this, we don't have expectations as to them coming
25   to report to us.                                           03:14:55
```



800.211.DEPO (3376)
EsquireSolutions.com

```
 1   Synta Canada because you intended to have the              04:31:29
 2   company look for opportunities for goods for sale in
 3   Taiwan and from Canada -- strike that -- and from --
 4   and from Taiwan to Canada; is that correct?
 5            MR. STAMBAUGH:  Objection.  Misstates             04:32:10
 6   prior testimony.
 7            THE WITNESS:  It was to look for
 8   opportunities to generate income to pay for life
 9   expenses.
10   BY MS. KUSHNIR:                                            04:32:53
11       Q    Were you able to find any opportunities
12   for income in 1996 after you opened the business?
13            MR. STAMBAUGH:  Objection.  Vague and
14   ambiguous.
15            THE WITNESS:  For me, I was in this               04:34:28
16   foreign land.  I couldn't do much.  My main focus
17   was my family.  I was mainly taking care of them,
18   making sure they were fine.  So not much progress.
19   BY MS. KUSHNIR:
20       Q    Did Synta Canada generate any income              04:34:47
21   between 1996 and 2005?
22            MR. STAMBAUGH:  I'm going to object as
23   vague and ambiguous.  And lacks foundation.
24            THE WITNESS:  From what I can remember,
25   no, there is not much income.                              04:35:54
```



```
 1                    REPORTER'S CERTIFICATE

 2            I, ASHLEY SOEVYN, a Certified Shorthand

 3   Reporter of the State of California, do hereby

 4   certify:

 5            That the foregoing proceedings were taken

 6   before me at the time and place herein set forth;

 7   at which time the witness was put under oath by me;

 8            That the testimony of the witness, the

 9   questions propounded, and all objections and

10   statements made at the time of the examination were

11   recorded stenographically by me and were thereafter

12   transcribed;

13            That a review of the transcript by the

14   deponent was/ was not requested;

15            That the foregoing is a true and correct

16   transcript of my shorthand notes so taken.

17            I further certify that I am not a relative

18   or employee of any attorney of the parties, nor

19   financially interested in the action.

20            I declare under penalty of perjury under

21   the laws of California that the foregoing is true

22   and correct.  Dated this 13th day of March, 2024.

23   _____
         ASHLEY SOEVYN
24       CSR No. 12019

25
```

