# EXHIBIT A

# EXHIBIT A

PRIVILEGED & CONFIDENTIAL SETTLEMENT COMMUNICATION          EXECUTION VERSION
SUBJECT TO MEDIATION PRIVILEGE & FRE 408

# CONFIDENTIAL SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into as of the Effective Date by and among the following Parties:  (i) Imaginova Corp. and Optronic Technologies, Inc. d/b/a Orion Telescopes & Binoculars (together, "Orion") on the one side, and (ii) Suzhou Synta Optical Technology Co. Ltd. ("Suzhou"), Nantong Schmidt Opto-Electrical Technology Co., Ltd. ("Nantong"), Good Advance Industries Limited ("Good Advance"), and David Shen ("Shen") (Suzhou, Nantong, Good Advance and Shen shall be collectively referred to as "Synta Parties"); and  Celestron Acquisition LLC ("Celestron"), Synta Technology Corp. ("Synta Technology"), Atlas E-Commerce LLC ("Atlas"), and SW Technology Corporation ("SW Technology") (Celestron, Synta Technology, Atlas and SW Technology shall be collectively referred to as "Celestron Parties", and collectively with the Synta Parties, "Defendants") on the other side. Orion and each of Defendants are each referred to herein as a "Party" and collectively as the "Parties."  The "Effective Date" is the date the last Party executes this Agreement (as evidenced by the date next to such Party's name) and transmits its signature to the other Parties.

WHEREAS, Orion has alleged that Defendants engaged in various anti-competitive conduct detailed in an unfiled draft complaint and related communications, to which Defendants have responded (the "Dispute");

WHEREAS, Defendants deny Orion's allegations and any liability relating thereto;

WHEREAS, the Parties have engaged in non-binding mediation before the Hon. Vaughn Walker (Ret.) in an effort to resolve the Dispute; and

WHEREAS, the Parties now seek to finally settle and resolve any and all disputes between or among them, including, without limitation, any and all allegations set forth in the Dispute with respect to any of the Defendants, in accordance with the terms of this Agreement.

NOW THEREFORE, to avoid the uncertainty and expense of further litigation and to resolve all claims, controversies and disputes between them, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

1.  Settlement Payment.  In addition to other consideration, within twenty (20) days of the Effective Date, Defendants shall make a payment to Orion via cashier's check or wire transfer care of BraunHagey & Borden LLP's client trust account, in the amount of $500,000 USD in readily-available U.S. currency (the "Settlement Payment").

2.  Supply Agreement.  Orion, Nantong and Suzhou are concurrently with the execution and delivery of this Agreement, entering into a confidential Supply Agreement (the "Supply Agreement"), the execution and performance of which is a material term and condition of this Agreement, as well as consideration to Orion.  The negotiation and material, business proprietary terms of the Supply Agreement are confidential as provided therein, and have not been disclosed to Celestron.  Nothing in this Agreement precludes or prevents Nantong and Suzhou from offering Celestron or any other customer a supply agreement containing the same

-1-



EXHIBIT
355
ZMA

PRIVILEGED & CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO MEDIATION PRIVILEGE & FRE 408   EXECUTION VERSION

or similar material criteria or terms as those contained in the Supply Agreement with Orion, so long as such agreement(s) do(es) not violate applicable antitrust or competition laws.

      3.     Transfer of Hayneedle URLs.

        a.     Subject to the terms of this Section 3, Atlas (as the sole title holder of the Hayneedle URLs (as explicitly set forth below)) agrees to transfer to Orion all of its right, title and interest in and to, and quitclaims any ownership interest in the following website domains under the Uniform Resource Identifiers ("URLs") "Telescopes.com", "Binoculars.com", "Binocular.com", and "SpottingScopes.com" (collectively, the "Hayneedle URLs"). Atlas represents and warrants that up until the Transfer Date: (i) it holds all legal right, title and interest in and to the Hayneedle URLs, (ii) it has full and competent authority to transfer and sell the Hayneedle URLs to Orion, and (iii) Orion may rely on Atlas's transfer and sale of the Hayneedle URLs to exploit and use the Hayneedle URLs. The transfer will not include underlying intellectual property of any related website or content, but only the URLs, through the applicable domain registrar. The transfer contemplated in in this Section 3a. shall not include any other assets, items, information, or product purchased from Hayneedle, Inc. ("Hayneedle") by Atlas, or any product reviews, Zhumell products, customer lists, customer contact information, or other confidential or proprietary information of Atlas. Subject to the terms of this Section 3, Atlas will timely and reasonably cooperate in the execution of any necessary documents to effect the transfer of the Hayneedle URLs on the Transfer Date as defined below.

        b.     To allow for an orderly transition of the URLs, the effective date of the transfer of the URLs shall be the date which is five (5) days from the Effective Date (the "Transfer Date"). Prior to the Transfer Date, Atlas (or any other Defendant) shall not disable, remove or take-down the webpages (utilizing the Hayneedle URLs). Nothing in this Agreement will prevent or preclude Atlas (or any other Defendant) from: (i) establishing new websites under any other available URLs, even if they contain the words "telescope" or "binocular"; (ii) contacting existing Atlas customers to advise them of its new website; (iii) advertising or promoting the new URLS and the transfer of the Hayneedle URLs, or (iv) taking any other lawful action in order to remain competitive in the internet or online marketplace.

        c.     Orion hereby represents, warrants, covenants and agrees that from and after the Transfer Date, it will take all commercially reasonable steps to avoid any potential customer confusion as to Orion's ownership of the Hayneedle URLs. If any customers of Atlas contact Orion following the Transfer Date relating to a product that was purchased from or an order that was placed prior to the Transfer Date on any of the Hayneedle URLs, Orion shall refer such customers to Atlas for resolution of any issues. Orion agrees that, if it maintains the names "Telescopes.com", "Binoculars.com", "Binocular.com", and/or "SpottingScopes.com", Orion will ensure that its trade name "Orion" is also prominently on the website, so that customers are not confused or led to believe that the webpages are managed or run by any other person or entity. Within 10 days of the Transfer Date, Orion shall issue a press release, announcing the transfer the Hayneedle URLs to Orion.

      4.     No Further Intermediary. As of the Effective Date, Synta Technology will no longer serve as intermediary between Orion and any other person or entity, including but not

Attorney's Eyes Only   ORION000002

PRIVILEGED & CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO MEDIATION PRIVILEGE & FRE 408                          EXECUTION VERSION

limited to Ningbo Sunny; provided, however, Synta Technology will provide, to the extent in its possession, any requested order information, account history and other sales and supply information reasonably requested by Orion.

     5.    Confidentiality.

     a.    Representation Regarding Non-Disclosure. The Parties represent and warrant that each of them and their respective legal advisors and agents have not disclosed the claims and allegations raised in the Dispute to any other person aside from the mediator and their respective corporate principals and agents, other than to other defendants and parties identified in the Dispute who are not otherwise parties to this Agreement, and have not disclosed the terms of this Agreement to any other person aside from the mediator and their respective corporate principals and agents, other than expressly contemplated in this Agreement. The Parties and their respective legal advisors further represent and warrant they have not disclosed the Dispute to any government regulator or other civil authority.

     b.    Confidentiality of Dispute and This Agreement. The existence and terms of this Agreement, all communications made in connection with the drafting, negotiation, execution, performance and/or implementation of this Agreement, and all communications otherwise made in connection with the compromise of the Claims released herein shall remain confidential and not be disclosed to any third party except as expressly provided herein or as otherwise required by law and/or any court or tribunal of competent jurisdiction. Nothing in this provision precludes Orion from pursuing claims against Third Party Defendants (as defined below), provided that Orion (i) does not disclose the existence and/or terms of this Agreement (or any agreement or instrument referenced herein) in such action and (ii) does not breach the terms of this Agreement. For avoidance of doubt, in the event any Party is asked to explain the outcome of any Dispute among the Parties hereto, such Party shall respond only that the Dispute has been resolved amicably.

     c.    Exceptions. Notwithstanding the foregoing, it shall not be a breach of this Confidentiality section for a Party to disclose the Dispute or this Agreement, including the transfer of the Hayneedle URLs: (i) as required by law or under this Agreement; (ii) for non-public financial reporting; (iii) for non-public examination or audit of a Party's business; (iv) to any third party financial advisor or banker upon execution of a binding non-disclosure agreement; (v) as necessary to carry out or enforce a Party's obligations under the Agreement; or (vi) by enforceable order of a court, arbitration panel, regulatory agency, or governmental authority of competent jurisdiction. To the extent that disclosure is to be made pursuant to these exceptions or otherwise and provided it is legally permissible for Party to do so, the disclosing Party shall inform each other Party of the anticipated disclosure by written notice no less than ten (10) business days in advance of thereof. Nothing in this provision shall restrict any Party from discussing the existence and terms of this Agreement, or communications or negotiations pursuant thereto, with any other Party (and such Parties' respective legal counsel), or the Parties' mediator.

Attorney's Eyes Only                                                                                    ORION000003

PRIVILEGED & CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO MEDIATION PRIVILEGE & FRE 408

6.    Mutual General Release of Claims.

a.    Releases by Orion.  In consideration and exchange for Defendants' performance of their obligations hereunder, Orion, and its corporate affiliates, subsidiaries, agents, representatives, predecessors, successors, heirs, and assigns, hereby release and forever discharge each of Defendants and each's respective shareholders, directors, officers, employees, attorneys, agents, and assigns from all Claims (as defined below), known and unknown.  Orion represents and warrants that it has not assigned, encumbered, sold or transferred in any way, to any other person or entity, any interest in the Claims.

b.    Releases by Defendants.  In consideration and exchange for Orion's performance of its obligations hereunder, Defendants, and each's respective corporate affiliates, subsidiaries, agents, representatives, predecessors, successors, heirs, and assigns, hereby release and forever discharge Orion and its shareholders, directors, officers, attorneys, agents and assigns, from all Claims, known and unknown, as further defined below.  Defendants represent and warrant that they have not assigned, encumbered, sold or transferred in any way, to any other person or entity, any interest in the Claims.

c.    Released Claims.  As used in this Agreement, "Claims" shall mean and include any and all costs, fees, expenses, damages, deficiencies, interest and penalties (including, without limitation, reasonable attorneys' fees and disbursements) suffered or incurred by any Party in connection with any and all losses, liabilities, claims, damages and expenses and any and all manner of legal action or actions, causes of action, in law or in equity, suits, debts, liens, contracts, torts, agreements, promises, liability, claims, invasions, demands, damages, loss, cost or expense, of any nature whatsoever, known or unknown, fixed or contingent, which any of the Parties, and each of their agents, insurers, representatives and lawyers, and each of their respective predecessors, successors, heirs, and assigns have or could have brought as of the Effective Date against any other Party, and each of its and their shareholders, directors, officers, attorneys, agents, and assigns, including without limitation any such actions or liability arising out of or related to the Dispute, U.S. or foreign antitrust or competition law, patent or intellectual property law, the business dealings between the Parties, and the conduct alleged in Orion's draft complaint and related demands.  "Claims" excludes any claims or actions relating to or arising from a breach of this Agreement or the Supply Agreement.

d.    Effective Date of Releases.  Orion's general releases set forth in this Section 6 shall become effective once the Settlement Payment and the Transfer of the Hayneedle URLs are both completed, and not before.

e.    Reserved Claims as to Third Parties.  For avoidance of any doubt, and notwithstanding any other provision in this Agreement to the contrary, the Parties do not release and expressly preserve all claims known or unknown that they may have or hold against the following third parties:  Ningbo Sunny Electronics Co., Ltd., Sunny Optics, Inc., Meade Instruments Corp., Peter Ni and any of his immediate family members, and any entity owned in part, or controlled by, Peter Ni or any of his immediate family (the "Third Party Defendants").

-4-

 ORION000004

       f.    <u>Waiver of Unknown Claims</u>.  The Parties acknowledges that there is a risk that subsequent to the execution of this Agreement they may incur, discover, suffer or sustain injury, loss, damage, costs, attorney's fees, expenses, or any of these, which are in some way caused by or connected with the persons, entities and matters referred to above, or which are unknown and unanticipated at the time of the Effective Date, or which are not presently capable of being ascertained; and, further, that there is a risk that such damages as are known may become more serious than they now expect or anticipate.  Nevertheless, the Parties acknowledge that this Agreement has been negotiated and agreed upon in light of that realization, and hereby expressly waive any rights they may have in such Claims whether suspected or unsuspected.  The Parties expressly acknowledge and agree that the releases contained in this Agreement include a waiver of all rights under Section 1542 of the California Civil Code, which provides:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

The Parties acknowledge that they have read all of this Agreement, including the above Civil Code section, and that they fully understand both the Agreement and the Civil Code section.  The Parties expressly waive any benefits and rights granted pursuant to Civil Code Section 1542.

       g.    <u>No Assignment of Claims; No Consents Necessary</u>.  The Parties represent and warrant that no other person or entity has or has had any interest in any Claims, demands, obligations or causes of action referred to in this Agreement, and that they have not sold, assigned, transferred, conveyed or otherwise disposed of any of the Claims, demands, obligations or causes of action referred to in this Agreement and that their execution hereof does not require the consent of or notice to any third party not previously obtained or given.

    7.    <u>No Admission of Liability</u>.  The Parties acknowledge and agree that this Agreement does not constitute an admission of liability or wrongdoing on the part of the other Parties (or any of the other released Parties), and all the Parties in fact expressly deny any liability or wrongdoing.

    8.    <u>Non-Cooperation</u>.  Orion agrees that the other Parties to this Agreement, and their principals, have no obligation to cooperate with Orion in any manner relating to any pending or anticipated action by Orion against any Third Party Defendant or in any other litigation or dispute initiated by Orion with any third party ("<u>Third Party Disputes</u>").  Orion hereby waives any and all rights to seek to compel any Party's cooperation, through formal process or otherwise, in any Third Party Disputes.

    9.    <u>No Anticompetitive Activity</u>.  Each Party will refrain from activity in violation of applicable antitrust law, including without limitation legally proscribed conduct involving monopolization, retaliation, price fixing, market division and/or concerted action between the party and any competitor; provided, however, any claim, dispute or controversy arising out of any alleged violation of this provision shall not be covered by Section 17 herein.

-5-

Attorney's Eyes Only                    ORION000005

PRIVILEGED & CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO MEDIATION PRIVILEGE & FRE 408

EXECUTION VERSION

10.    _Notices_.  Any notices given under this Agreement shall be in writing.  All written notices shall be made by both email and internationally recognized express overnight courier (*e.g.*, FedEx, DHL, etc.).  All notices shall be effective when delivered to the address set forth below as evidenced by the records of the applicable courier, or such other address as a Party notifies the other Parties of in accordance with this _Section 8_.

**For Orion**:

Attn: President
Optronic Technologies, Inc.
D/b/a Orion Telescopes & Binoculars
Address: 89 Hangar Way, Watsonville, CA 95076
Email:  peterm@telescope.com

*With a copy to:*

J. Noah Hagey, Esq.
BraunHagey & Borden LLP
220 Sansome Street, 2nd Floor
San Francisco, California 94104
Email:  Hagey@braunhagey.com

**For Synta Parties**:

Attn:  David Shen
Suzhou Synta Optical Technology Co., Ltd.
No. 65 Yushan Road, New District
Suzhou, China 215011
Email:  syntadavid@163.com


Attn:  David Shen
Nantong Schmidt Opto-Electrical Technology Co., Ltd.
No. 399 West Zhongshan Rd.
Rugoa City, Jiangsu, China
Email:  syntadavid@163.com


Attn:  David Shen
Good Advance Industries Limited
No. 89 Lane 4 Chia-An Road
Lung-Tan Taoyuan Taiwan R.O.C
Email:  syntadavid@163.com


*With a copy to:*

-6-

Attorney's Eyes Only

ORION000006

PRIVILEGED & CONFIDENTIAL SETTLEMENT COMMUNICATION  EXECUTION VERSION
SUBJECT TO MEDIATION PRIVILEGE & FRE 408

Paul Chan
Bird Marella Law Firm
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Email:  psc@birdmarella.com

**For Celestron Parties**:

Attn:  Dave Anderson
Celestron Acquisition LLC
Celestron, LLC
2835 Columbia St.
Torrance, CA 90503
Email:  danderson@celestron.com

*With a copy to:*

Christopher Frost
Eisner Jaffe, PC
9601 Wilshire Blvd.
Suite 700
Beverly Hills, CA 90210
Email:  cfrost@eisnerlaw.com

11. <u>Complete Agreement; Integration</u>.  This Agreement supersedes any prior agreements, and contains the entire terms and conditions of the Agreement described herein, other than the terms of the Supply Agreement, which are incorporated herein by reference.  The Parties acknowledge that they have not relied upon any warranties or representations or promises except as expressly set forth in this Agreement.  The Parties agree that no promises or inducements have been made which caused any party to execute this Agreement other than those which are expressly set forth herein.  Any modification, alternation or amendment of this Agreement shall be void and have no force and effect unless it is in writing signed by all Parties hereto and specifically identifying this Agreement.

12. <u>Binding Effect</u>.  This Agreement is binding upon the Parties hereto and shall inure to the benefit of the Parties and their respective successors and assigns, including in connection with a corporate acquisition, restructuring change of control, merger or similar transaction; provided, however, any successor entity must be capable of performing any assigned obligations hereunder and agrees in writing to be bound by this Agreement.  No unilateral assignment or transfer of obligations under this Agreement shall relieve a Party from its obligations unless expressly waived and released by the other Party.  No Party may assign any of its interest in, or rights and obligations under, this Agreement, without the express written consent of the other Parties, provided that nothing in this Agreement shall in any way limit or condition Orion's right to freely transfer, sell, and/or assign all rights, title, and interest in the Hayneedle URLs.

13. <u>Construction of Agreement</u>.  Counsel for each of the Parties has equally participated in the drafting of this Agreement, and accordingly any ambiguity in this Agreement

-7-

PRIVILEGED & CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO MEDIATION PRIVILEGE & FRE 408

EXECUTION VERSION

shall not be construed against one Party or another.  The headings used herein are for reference only and shall not affect the construction of the Agreement.

14.  <u>Severability</u>.  If any part of this Agreement is found by an arbitrator or court of competent authority to be unlawful or unenforceable, the remainder of this Agreement shall remain binding and enforceable and not otherwise affected.  Upon a Court's determination that any term or other provision of this Agreement is invalid or incapable of being enforced, the Parties hereto shall negotiate in good faith to modify this Agreement so as to achieve the original intent of the Parties as closely as possible.  Notwithstanding the foregoing, it is the Parties' intention that the releases contained herein are and will be mutually dependent covenants and are not severable.

15.  <u>Authorization; Corporate Action</u>.  The Parties warrant and represent that each of the persons and entities executing this Agreement is duly empowered and authorized to do so; that execution and delivery of this Agreement do not breach or constitute a default under the articles of incorporation or any other agreement, by-laws or instrument to which a Party may be legally bound; and, that this Agreement, when signed by all Parties, is a valid and enforceable legal contract in accordance with its terms.  Each Party indemnifies and holds harmless the other Parties from any and all claims related to or arising out of a breach of its representations of authority under this provision.  Further, each Party represents and warrants that he, she or it has had sufficient opportunity to consult counsel on the terms of this Agreement.

16.  <u>Applicable Law</u>.  This Agreement shall be construed under and governed in all respects by the laws of the State of California without regard to other conflict of laws principles.

17.  <u>Enforcement</u>.

a.  <u>Arbitration</u>.  Any claim, dispute or controversy of whatever nature arising out of or relating to this Agreement or concerning the interpretation, effect, termination, validity, performance or breach of this Agreement (including the determination of the scope or applicability of this Agreement to arbitrate) will be resolved by final and binding arbitration before a single arbitrator selected from and administered by JAMS, Two Embarcadero Center, Suite 1500, San Francisco, CA 94111.  The arbitration will be conducted in accordance with the provisions of this Agreement and the JAMS Commercial Arbitration Rules then in effect, with provisions of this Agreement controlling.  The arbitration hearing will be conducted in the English language and held in Vancouver, Canada or at a location mutually agreed to by the Parties.  The Parties shall accept service of process of the arbitration demand, petition and all related arbitral filings as set forth for service under JAMS Arbitration Rules or, alternatively, as provided in the Notice provisions of this Agreement.  No part of this Agreement, any of its provisions, any acts or omissions of any Party in the negotiation, execution, or performance of this Agreement, shall be admissible in any lawsuit, arbitration, or other proceeding for the purpose of establishing jurisdiction, except that this Agreement may be offered in arbitration solely for the purpose of enforcing this Agreement in accordance with the terms delineated in this Section 15.

-8-

Attorney's Eyes Only

PRIVILEGED & CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO MEDIATION PRIVILEGE & FRE 408

b.　　Authority of Arbitrator.  The arbitrator is authorized to award all proper interim and final equitable or legal relief, as well as sanctions as deemed appropriate.  The arbitrator is not authorized to reform, modify or materially change this Agreement or any other agreements or covenants contemplated hereunder.

c.　　Arbitration Award.  Within sixty (60) days after the conclusion of the arbitration hearing or the Parties' final submission (whichever comes later), the arbitrator shall issue a written award and statement of decision describing the essential findings and conclusions on which the award is based, including the calculation of any damages awarded.  The award will be binding, and judgment on the award may be entered in any court of competent jurisdiction (and appropriate venue) over the Party against which an award is entered.

d.　　Fees and Costs of Arbitration.  The Arbitrator shall determine whether a Party is the prevailing Party and award it reimbursement for its reasonable and actual attorneys' fees, costs and disbursements (including, expert witness fees and expenses, investigator costs, translator costs, photocopy charges, and travel expenses, etc.), and to assess against the non-prevailing Party the fees and costs of the Arbitrator. The prevailing Party shall be entitled to recover its reasonable and actual attorneys' fees and costs incurred in connection with enforcing the award and any resulting judgment.

e.　　Remedies.  Each Party reserves the right to seek the entry of a temporary restraining order and/or a preliminary injunction in accordance with Section 15(a), in the event of any breach of this Agreement.  Such remedies shall not be deemed to be the exclusive remedies for a breach of this Agreement, but shall be in addition to all other remedies available at law or equity.

18.　　Non-Waiver.  No waiver shall be effective as to or enforceable against any Party as to any right, interest, breach or default under this Agreement unless such waiver is communicated in writing and shall not be construed as a waiver of any subsequent breach of or default under the same or any other provision of this Agreement.  The delay or omission on the part of any Party to exercise or avail itself of any right or remedy that it has or may have hereunder shall not operate as a waiver of any right or remedy.

19.　　Attorney's Fees and Costs.  Each Party shall bear responsibility for its own attorney's fees and costs in connection with their dispute and the negotiation and execution of this Agreement.

20.　　Counterparts.  This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.  Photographic, PDF and/or facsimile copies of such signed counterparts may be used in lieu of the originals for any purpose.

21.　　Effective Date. This Agreement shall be fully binding and effective (the "Effective Date") upon the date the last Party executes this Agreement and transmits its signature to the other Parties.

Attorney's Eyes Only

PRIVILEGED & CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO MEDIATION PRIVILEGE & FRE 408

EXECUTION VERSION

**IN WITNESS WHEREOF,** the Parties hereto have executed this Agreement on the dates shown below.

(Signature Pages to Follow.)

-10-

Attorney's Eyes Only

PRIVILEGED & CONFIDENTIAL SETTLEMENT COMMUNICATION  
SUBJECT TO MEDIATION PRIVILEGE & FRE 408                           EXECUTION VERSION

## SIGNATURE PAGE

Each individual executing this Agreement on behalf of a company or organization represents and warrants that he or she has the requisite authority to fully bind the entity to all of the terms hereof.

**FOR OPTRONIC TECHNOLOGIES, INC.**
**D/B/A ORION TELESCOPES & BINOCULARS:**

_____     9/13/16
Peter Moreo                 Date
President

**FOR IMAGINOVA CORP.:**

_____     9/13/16
Peter Moreo                 Date
President

**FOR SUZHOU SYNTA OPTICAL TECHNOLOGY CO. LTD.**

_____     _____
David Shen                  Date

_____
Title

**FOR NANTONG SCHMIDT OPTO-ELECTRICAL TECHNOLOGY CO., LTD.:**

_____     _____
David Shen                  Date

_____
Title

**GOOD ADVANCE INDUSTRIES LIMITED**

_____     _____
David Shen                  Date

_____
Title

**DAVID SHEN**

_____     _____
Signature                   Date

-11-

Attorney's Eyes Only                                        ORION000011

PRIVILEGED & CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO MEDIATION PRIVILEGE & FRE 408

EXECUTION VERSION

## SIGNATURE PAGE

Each individual executing this Agreement on behalf of a company or organization represents and warrants that he or she has the requisite authority to fully bind the entity to all of the terms hereof.

**FOR OPTRONIC TECHNOLOGIES, INC.**
**D/B/A ORION TELESCOPES & BINOCULARS:**

_____      _____
Peter Moreo                                              Date
President

**FOR IMAGINOVA CORP.:**

_____      _____
Peter Moreo                                              Date
President

**FOR SUZHOU SYNTA OPTICAL TECHNOLOGY CO. LTD.**

_____      Sep 13 2016
David Shen     President                        Date
_____
Title

**FOR NANTONG SCHMIDT OPTO-ELECTRICAL TECHNOLOGY CO., LTD.:**

_____      Sep 13 2016
David Shen                                          Date
         Director
_____
Title

**GOOD ADVANCE INDUSTRIES LIMITED**

_____      Sep 13 2016
David Shen                                          Date
         Director
_____
Title

**DAVID SHEN**

_____      Sep 13 2016
Signature                                            Date

-11-

Attorney's Eyes Only

ORION000012

PRIVILEGED & CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO MEDIATION PRIVILEGE & FRE 408

EXECUTION VERSION

FOR CELESTRON ACQUISITION LLC

Signature _____

Name _____
PRESIDENT & CEO

Title _____

Date 9/14/16

## SYNTA TECHNOLOGY CORP.

Signature _____

Date _____

Name _____

Title _____

ATLAS E-COMMERCE LLC

Signature _____

Name _____
PRESIDENT & CEO

Title _____

Date 9/14/16

## SW TECHNOLOGY CORPORATION

Signature _____

Date _____

Name _____

Title _____

-12-

Attorney's Eyes Only

ORION000013

PRIVILEGED & CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO MEDIATION PRIVILEGE & FRE 408

**FOR CELESTRON ACQUISITION LLC**

Signature _____     Date _____

Name _____

Title _____

**SYNTA TECHNOLOGY CORP.**

沈 達 功

Signature _____     Date  9/13 2016

 Ta kung shen

Name _____

 Director

Title _____

**ATLAS E-COMMERCE LLC**

Signature _____     Date _____

Name _____

Title _____

**SW TECHNOLOGY CORPORATION**

Signature _____     Date _____

Name _____

Title _____

-12-

ORION000014

EXECUTION VERSION

## FOR CELESTRON ACQUISITION LLC

---
Signature                          Date

---
Name

---
Title

## SYNTA TECHNOLOGY CORP.

---
Signature                          Date

---
Name

---
Title

## ATLAS E-COMMERCE LLC

---
Signature                          Date

---
Name

---
Title

## SW TECHNOLOGY CORPORATION

Shen Ta Kuo
Signature
    Sylvia Shen
Name
    Authorized Signatory
Title

Sep. 13. 2016
Date

-12-

Attorney's Eyes Only

ORION000015

PRIVILEGED & CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO MEDIATION PRIVILEGE & FRE 408

EXECUTION VERSION

**AGREED AS TO FORM AND CONTENT:**

_____        9. 13. 2016
J. Noah Hagey, Esq.                     Date
on behalf of Orion and
BraunHagey & Borden LLP



_____        _____
Paul Chan, Esq.                         Date
on behalf of Defendants and
Bird Marella Law Firm



_____        _____
Christopher Frost, Esq.                 Date
on behalf of Celestron Parties and
Eisner Jaffe P.C.

-13-

Attorney's Eyes Only

ORION000016

PRIVILEGED & CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO MEDIATION PRIVILEGE & FRE 408

EXECUTION VERSION

**AGREED AS TO FORM ~~AND CONTENT~~:** — PSC

_____        $\frac{9.13.2016}{\text{Date}}$

J. Noah Hagey, Esq.
on behalf of Orion and
BraunHagey & Borden LLP


_____        $\frac{9/14/16}{\text{Date}}$

Paul Chan, Esq.
~~on behalf of Defendants and~~        PSC
Bird Marella Law Firm


_____        _____
                                        Date
Christopher Frost, Esq.
on behalf of Celestron Parties and
Eisner Jaffe P.C.

-13-

Attorney's Eyes Only                                        ORION000017

PRIVILEGED & CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO MEDIATION PRIVILEGE & FRE 408                    EXECUTION VERSION

AGREED AS TO FORM ~~AND CONTENT:~~ CF

_____          9. 13. 2016
J. Noah Hagey, Esq.                      Date
on behalf of Orion and
BraunHagey & Borden LLP


_____          _____
Paul Chan, Esq.                          Date
on behalf of Defendants and
Bird Marella Law Firm


_____          9/13/16
Christopher Frost, Esq.                   Date
~~on behalf of Celestron Parties and~~ CF
Eisner Jaffe P.C.

-13-

Attorney's Eyes Only                                      ORION000018

## TRUST ACCOUNT WIRE INSTRUCTIONS

### BraunHagey & Borden LLP

| | |
|---|---|
| **Bank:** | First Republic Bank |
| **Address:** | 111 Pine Street<br>San Francisco, CA 94111<br>USA |
| **ABA #:** | 321081669 |
| **Swift Code:** | FRBB US6S (For international transactions) |
| **Account Holder:** | BraunHagey & Borden LLP |
| **Account #:** | ████████████ |

Attorney's Eyes Only

ORION000019