1  CHRISTOPHER FROST (SBN 200336)
   chris@frostllp.com
2  JOHN MAATTA (SBN 83683)
   john@frostllp.com
3  JOSHUA STAMBAUGH (SBN 233834)
   josh@frostllp.com
4  LAWRENCE J.H. LIU (SBN 312115)
   lawrence@frostllp.com
5  FROST LLP
   10960 Wilshire Boulevard, Suite 2100
6  Los Angeles, California 90024
   Telephone: (424) 254-0441
7
   SHAUNA A. IZADI (Admitted *Pro Hac Vice*)
8  sizadi@izadilegal.com
   IZADI LEGAL GROUP, PLLC
9  13155 Noel Rd, Suite 900
   Dallas, Texas 75240
10
   Attorneys for Defendants Celestron Acquisition, LLC, Synta
11 Technology Corp., Suzhou Synta Optical Technology Co.,
   Ltd., Synta Canada Int'l Enterprises Ltd., SW Technology
12 Corp., Olivon Manufacturing Co. Ltd., Olivon USA, LLC,
   Nantong Schmidt Optoelectrical Technology Co. Ltd.,
13 Pacific Telescope Corp., Corey Lee, David Shen, Sylvia
   Shen, Jack Chen, Jean Shen, Joseph Lupica, Dave Anderson,
14 Laurence Huen

15                UNITED STATES DISTRICT COURT

16        NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| 17  IN RE TELESCOPES ANTITRUST LITIGATION | Case No. 5:20-cv-03642-EJD |
| 18  THIS DOCUMENT RELATES TO: | *Assigned for All Purposes to:* Hon. Edward J. Davila |
| 19  AURORA ASTRO PRODUCTS, LLC, PIONEER CYCLING & FITNESS, LLP; and those similarly situated, | **SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF CELESTRON ACQUISITION, LLC'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT** |
| 20                Plaintiffs, | |
| 21            vs. | |
| 22  CELESTRON ACQUISITION, LLC, SUZHOU SYNTA OPTICAL TECHNOLOGY CO., LTD., SYNTA CANADA INT'L ENTERPRISES LTD., SW TECHNOLOGY CORP., OLIVON MANUFACTURING CO. LTD., OLIVON USA, LLC, NANTONG SCHMIDT OPTOELECTRICAL TECHNOLOGY CO. LTD., NINGBO SUNNY ELECTRONIC CO., LTD., PACIFIC TELESCOPE CORP., COREY LEE, DAVID SHEN, SYLVIA SHEN, JACK CHEN, JEAN SHEN, JOSEPH LUPICA, DAVE ANDERSON, LAURENCE HUEN, and DOES 1-50, | *[Filed concurrently with Notice of Motion and Motion for Summary Judgment; Declaration of Joshua Stambaugh]* |
| 23 | Hearing: |
| 24 | Date:              TBD |
| 25 | Time:              TBD |
| 26 | Crtrm.:            4 (5th Floor) |
| 27 | Compl. Filed:      June 1, 2020 |
| 28              Defendants. | Trial Setting Conf.: May 8, 2025 |

Case No. 5:20-cv-03642-EJD

SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS ISO CELESTRON ACQUISITION, LLC'S
MOTION FOR SUMMARY JUDGMENT

**SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS**

| Claim or Defense | Moving Party's Undisputed Facts/ Supporting Evidence | Opposing Party's Response/ Supporting Evidence |
|---|---|---|
| **Damages Period: 2005 to present** | | |
| 1. Dr. Zona's regression analysis is based on fatally flawed assumptions and therefore inadmissible | **Fact 1:** DPPs' theory of damages is based on the analysis of Dr. J. Douglas Zona, whose report is subject to Defendants' currently pending Daubert Motion.<br><br>Stambaugh Decl. Ex. C [Zona Rpt.] | |
| | **Fact 2:** Dr. Zona's "before-and-after" regression model compares telescope prices before and after the alleged conspiracy period.<br><br>Stambaugh Decl. Ex. C [Zona Rpt. ¶¶ 101–110]. | |
| | **Fact 3:** DPPs define the alleged conspiracy period as beginning in 2005.<br><br>ECF No. 495 [Fourth Am. Compl. ¶ 91]; Stambaugh Decl. Exs. E & F [DPPs' Written Discovery Responses]. | |
| | **Fact 4:** Dr. Zona's "benchmark" period consists of prices before April 2005, while his post-conspiracy period is divided into two segments: April 2005 to August 2013 and September 2013 to 2021.<br><br>Stambaugh Decl. Ex. C [Zona Rpt. ¶¶ 101–103, 105, 108]. | |
| | **Fact 5:** The goal of a "before-and-after" regression model, in theory, is to isolate the impact of alleged anticompetitive conduct by predicting what prices would have been in the absence of the alleged conspiracy and comparing the predicted prices to actual prices during the alleged conspiracy period.<br><br>Stambaugh Decl. Ex. D [Kaplan Rpt. ¶ 123]; Ex. C [Zona Rpt. ¶¶ 101–102]. | |
| | **Fact 6:** Dr. Zona assumes telescope prices before 2005 were inflated due to a pre-existing conspiracy. | |

| | | |
|---|---|---|
| | | Stambaugh Decl. Ex. C [Zona Rpt. ¶¶ 84, 90]; Stambaugh Decl. Ex. A [Zona Dep. 52:5–21]; Zona Decl. ¶ 13 [ECF No 642-2]. | |
| | | **Fact 7:** Dr. Zona applies a 16.7% overcharge adjustment to prices before 2005 to account for his assumed pre-2005 conspiracy and uses this baseline as the foundation for his damages calculations.<br><br>Stambaugh Decl. Ex. C [Zona Rpt. ¶ 98]. | |
| | | **Fact 8:** To justify his 16.7% overcharge, Dr. Zona claimed that "[i]n this particular case, it is very difficult to find a competitive benchmark" because "there is evidence that even before the acquisition in 2005 of Celestron by Synta, Synta and Ningbo Sunny were interrelated and not independent of one another."<br><br>Stambaugh Decl. Ex. C [Zona Rpt. ¶¶ 84. 102]; Zona Decl. ¶ 13 [ECF No 642-2]. | |
| | 2. Dr. Zona's 16.7% overcharge adjustment is derived from his assumption that Synta and Sunny's combined market share of 40% and applying an estimated overcharge from the Connor PIC dataset | **Fact 9:** Dr. Zona's 16.7% overcharge is based on the Connor PIC dataset which estimates a 16.7% overcharge based on two cartel members having a combined 40% market share.<br><br>Stambaugh Decl. Ex. C [Zona Rpt. ¶ 98]. | |
| | | **Fact 10:** In his regression analysis, Dr. Zona assumes without any empirical evidence that Synta and Sunny had a combined market share of 40% before Synta acquired Celestron in 2005.<br><br>Stambaugh Decl. Ex. C [Zona Rpt. ¶ 98]. | |
| | | **Fact 11:** Dr. Zona does not calculate damages, and DPPs do not claim any damages prior to 2005.<br><br>Stambaugh Decl. Ex. C [Zona Rpt. ¶ 117]. | |
| | | **Fact 12:** Dr. Zona relies on the Connor PIC dataset, which purportedly estimates the typical overcharge in cartelized markets based on two key inputs: (1) the number of cartel members, and (2) the cartel's market share. | |

| | | |
|---|---|---|
| | Stambaugh Decl. Ex. A [Zona Dep. Tr.] 93:14–94:4. | |
| | **Fact 13:** Dr. Zona did not examine any telescope-specific empirical data to come up with the 16.7% overcharge figure; he instead admitted the figure was based solely on assumptions drawn from the Connor PIC dataset.<br><br>Stambaugh Decl. Ex. B [Zona Rpt. ¶¶ 95–98]; Ex. A [Zona Dep. Tr. 97:6–15, 97:21–98:3, 132:8–17, 133:14–134:19, 174:2–5]. | |
| | **Fact 14:** Dr. Zona assumed a combined 40% market share for Sunny and Synta, and then mechanically applied the Connor PIC dataset's overcharge estimate to produce the 16.7% figure.<br><br>Stambaugh Decl. Ex. A [Zona Dep. Tr. 94:1–15, 104:2–12]. | |
| | **Fact 15:** The Connor PIC dataset spans selected industries that include blood pressure medicine, cement and ready-mix concrete, marine construction, and industrial chemicals, but does not include the consumer telescope industry.<br><br>Stambaugh Decl. Ex. A [Zona Dep. Tr. 133:14–19; 158:14–160:6]; Ex. C [Zona Rpt. ¶¶ 95–98]. | |
| | **Fact 16:** Although the Connor PIC dataset itself spans hundreds of industries, Dr. Zona limited his analysis to 61 cartel industries as "yardsticks," where two to four firms were involved and the United States was the lead jurisdiction.<br><br>Stambaugh Decl. Ex. A [Zona Dep. Tr. 133:14–19; 158:14–160:6];<br>Stambaugh Decl. Ex. C [Zona Rpt. ¶¶ 95–98]. | |
| | **Fact 17:** In his deposition, Dr. Zona testified that these industries are "comparable" based solely on the number of conspirators and the size of the market they captured. | |

| | | | |
|---|---|---|---|
| | | Stambaugh Decl. Ex. A [Zona Dep. Tr. 158:18–22]. | |
| | | **Fact 18:** Dr. Zona admitted during his deposition that he could not recall what, if any, data, calculations, or methodology he used to arrive at this 40% market share figure, nor could he identify any source or documented support for this figure within his report.<br><br>Stambaugh Decl. Ex. A [Zona Dep. Tr. 104:2–12, 105:2–4, 108:7–112:18, 115:15–117:11, 122:16–123:4, 125:5–11]. | |
| | | **Fact 19:** Dr. Zona admitted that he did know not what Celestron's, Meade's, or JOC's market shares were before 2005.<br><br>Stambaugh Decl. Ex. A [Zona Dep. Tr. 121:2–8, 121:14–17]. | |
| | | **Fact 20:** When asked about the specific market shares of leading telescope suppliers such as Meade and Celestron in the United States pre-2005, Dr. Zona conceded that he did not know their actual market shares, admitting only that he knew they were "large."<br><br>Stambaugh Decl. Ex. A [Zona Dep. Tr. 121:2–8, 121:14–17]. | |
| | | **Fact 21:** Dr. Zona could not recall pre-2005 market share information for Jinghua Optical Corporation ("JOC"), another major competitor.<br><br>Stambaugh Decl. Ex. A [Zona Dep. Tr. 121:2–8, 121:14–17]. | |
| | 3. Dr. Zona omitted the critical PCE demand variable to measure changes in demand over time. | **Fact 22:** Dr. Zona did not include a personal consumption expenditure (PCE) variable in his regression analysis to measure changes in demand over time.<br><br>Stambaugh Decl. Ex. D [Kaplan Rpt. ¶¶ 8. 9, 117, 118, 121]. | |
| | | **Fact 23:** While Dr. Zona claims that he used "hundreds of variables" to control for such changes in demand, the six that he has identified: (i) conspiracy indicators, (ii) seasonal effects, (iii) quantity of sale, (iv) exchange rate, (v) | |

| | | |
|---|---|---|
| | | customer specific effects, and (vi) product-specific effects—have all been refuted by the Report by Defendants' expert, Mr. Kaplan.<br><br>Stambaugh Decl. Ex. D [Kaplan Rpt. ¶¶ 117, 118, 121]. | |
| | | **Fact 24:** Dr. Zona's model fails to distinguish between price changes caused by market-wide fluctuations—such as recessions, the COVID-19 pandemic, consumer trends, and production costs—and those caused by the allegedly anticompetitive conduct.<br><br>Stambaugh Decl. Ex. D [Kaplan Rpt. ¶ 5]. | |
| | 4. Dr. Zona did not use the same regression model in this case as in the *Orion* case. | **Fact 25:** Dr. Zona specifically stated that he did *not* use the same methodologies he employed in the *Orion* litigation<br><br>Stambaugh Decl. Ex. A [Zona Dep. Tr. 174:2–5]. | |
| | | **Fact 26:** In the *Orion* litigation, Dr. Zona incorporated a PCE variable to account for shifts in demand over time. In the instant case, however, Dr. Zona abandons that approach.<br><br>Stambaugh Decl. Ex. A [Zona Dep. Tr. 140:24–141:4, 141:14–142:3l]; Stambaugh Decl. Ex. D [Kaplan Rpt. ¶¶ 8, 9]. | |
| | | **Fact: 27:** In *Orion*, Dr. Zona used a pre-2013 benchmark for his regression analysis.<br><br>Stambaugh Decl. Ex. G [Zona *Orion* Trial Tr. Vol. 1, 1976:24–1977:4]; Stambaugh Decl. Ex. H [Zona *Orion* Dep. 124:1–8]. | |
| | | **Fact 28:** Dr. Zona similarly testified in that case there was evidence of a conspiracy before 2013.<br><br>Stambaugh Decl. Ex. G [Zona *Orion* Trial Tr. Vol. 1, 1977:7–10]. | |
| | | **Fact 29:** Dr. Zona testified that he did not "account[] for any overcharges that may have occurred before that time period." | |

SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS ISO CELESTRON'S MOTION FOR SUMMARY JUDGMENT

| | | | |
|---|---|---|---|
| | | Stambaugh Decl. Ex. H [Zona *Orion* Dep. Tr. 125:7–8]. | |
| | | **Fact 30:** In his report in Orion, Dr. Zona even states: "In constructing a damages model, one typically compares actual economic results to those in a 'but-for world', which is a reference to the counterfactual situation in which the defendants did not engage in the alleged misconduct and instead pursued their next best (i.e. profit-maximizing) legal course of action. … Damages are the difference between plaintiff's actual economic results and those in the but-for world." Stambaugh Decl. Ex. I [Zona *Orion* Report, ¶ 73]. | |
| | 4. DPPs fail to define the relevant market or to establish that Celestron had requisite market power to be liable under the Sherman Act §§ 1 and 2. | **Fact 31:** Meade and Celestron were aggressive competitors prior to Ningbo Sunny Electronic Co. Ltd's acquisition of Meade in 2013. Stambaugh Decl. Ex. C [Zona Rpt. ¶ 33]; Ex. A [Zona Dep. Tr. at 41:2–42:8]. | |
| | | **Fact 32:** Dr. Zona's market definition arbitrarily excludes over 20 telescope suppliers, including manufacturers selling branded telescopes and direct imports available through major online retailers such as Amazon. Stambaugh Decl. Ex. D [Kaplan Rpt. ¶ 72]. | |
| | | **Fact 33:** Dr. Zona uses shipping weight data instead of actual sales or revenue data to calculate market shares. Stambaugh Decl. Ex. A [Zona Dep. Tr. 173:16–25, 174:1]. | |
| | | **Fact 34:** Dr. Zona testified that his report excluded shipments where the product descriptions included telescopes alongside other products to avoid "mixing apples and oranges." Stambaugh Decl. Ex. A [Zona Dep. 172:24–25, 173:1–9.] | |

| | | |
|---|---|---|
| | **Fact 35:** Dr. Zona did not analyze whether his exclusions disproportionately impacted shipments of non-defendant telescopes versus defendant telescopes, nor did he investigate whether the excluded shipments would have materially affected his market share calculations.<br><br>Stambaugh Decl. Ex. A [Zona Dep. Tr. 173:10–15]. | |
| | **Fact 36:** The telescope pricing data Dr. Zona employed in his regression analysis demonstrates that telescope prices *declined* from average prices of over $400 in 2001 to approximately $100 in 2021.<br><br>Stambaugh Decl. Ex. D [Kaplan Rpt. ¶ 65]. | |

DATED:  March 7, 2025            FROST LLP

By: _____
CHRISTOPHER FROST
JOHN D. MAATTA
JOSHUA S. STAMBAUGH
LAWRENCE J.H. LIU
Attorneys for Defendants Celestron Acquisition, LLC, Synta Technology Corp., Suzhou Synta Optical Technology Co., Ltd., Synta Canada Int'l Enterprises Ltd., SW Technology Corp., Olivon Manufacturing Co. Ltd., Olivon USA, LLC, Nantong Schmidt Optoelectrical Technology Co. Ltd., Pacific Telescope Corp., Corey Lee, David Shen, Sylvia Shen, Jack Chen, Jean Shen, Joseph Lupica, Dave Anderson, Laurence Huen