United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

IN RE TELESCOPES ANTITRUST LITIGATION

Case No. 5:20-cv-03642-EJD

**ORDER DENYING MOTION REQUESTING FINANCIAL ASSURANCES AND ASSET INFORMATION**

Re: Dkt. No. 656

Before the Court is DPPs' Motion Requesting Financial Assurance and Asset Information. Mot., ECF No. 656. This motion is fully briefed. Opp'n, ECF No. 658; Reply, ECF No. 661. Upon careful review of the relevant documents the Court finds this matter suitable for decision without oral argument pursuant to Local Rule 7-1(b). For the reasons explained below, the Court **DENIES** DPPs' motion.

## I. BACKGROUND

The Court has summarized the factual allegations and procedural history of this case many times and need not repeat this background here. *See, e.g.*, ECF Nos. 731, 596, 589, 539, 502, 173.

For purposes of this motion, DPPs seek an order requiring that Defendants identify their assets and cease transferring money outside of the United States, excluding transfers made in the ordinary course of business. DPPs bring this motion pursuant to Federal Rule of Civil Procedure 23,[1] Rule 64, and the Court's "inherent authority." DPPs generally contend that Defendants are likely to dissipate their assets prior to any potential judgment in this case because

[1] Though DPPs claim to bring their motion under Rule 23, this rule provides the procedures for class actions and carries no relevance to DPPs' motion.

they have a fraudulent corporate structure, they have routinely sent money abroad, and they have a history of judgment avoidance. Defendants oppose, arguing that DPPs' allegations are unfounded, have already been found meritless, and fail to satisfy the factors required for a preliminary injunction.

## II. DISCUSSION

### A. Relevant Standard

The Court begins by discussing the relevant standard. DPPs request that the Court order Defendants disclose their financial information and cease sending money outside of the United States. This is a request for injunctive relief. Securing such relief requires a motion for a preliminary injunction. However, DPPs fail to acknowledge that they seek a preliminary injunction, and accordingly, fail to provide the Court with the relevant standard for securing a preliminary injunction in these circumstances.

Instead, DPPs argue that they are entitled to relief under Rule 64, which might provide the Court authority to grant the requested equitable relief, but does not provide the standard upon which parties must show they are entitled to this relief.[2] *See, e.g.*, *Reebok Int'l, Ltd. v. Marnatech Enterprises, Inc.*, 970 F.2d 552, 558 (9th Cir. 1992) ("Rule 64 provides one possible source of authority for the district court's asset freeze."). DPPs also appear to argue that the standard here is the "likelihood of dissipation of the claimed assets," but the cases DPPs cite generally consider this element in the context of the *Winter* factors, specifically the factor examining irreparable harm. *See, e.g.*, *Johnson v. Couturier*, 572 F.3d 1067, 1085 (9th Cir. 2009); *Cisco Sys., Inc. v. Shenzhen Usource Tech. Co.*, No. 5:20-CV-04773-EJD, 2020 WL 5199434, at *6 (N.D. Cal. Aug. 17, 2020). DPPs' failure to brief a relevant standard necessitates dismissal without prejudice.

However, to provide guidance to the parties in the event that DPPs choose to re-file their request in another form, and in consideration of DPPs' history of raising these and similar

[2] The parties contest the Court's authority to enter a preliminary injunction requiring Defendants freeze their assets, largely disputing the application of Rule 64 and the Court's inherent authority. However, the Court need not examine this issue because, regardless of its authority to do so, the Court will not grant the relief DPPs seek.

arguments in other forums,[3] the Court will examine DPPs' motion under the *Winter* factors. The Court assumes this is the applicable standard because, as discussed above, the cases discussing the "likelihood of dissipation of the claimed assets" do so in the context of *Winter*, DPPs' motion discusses some of the *Winter* factors such as irreparable harm, and DPPs' reply notes that Rule 64 permits equitable relief in cases where the party has shown "a likelihood of success on the merits," another *Winter* factor. *See* Reply 13.

**B. *Winter* Factors**

A preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). To secure a preliminary injunction, a movant must make a clear showing that: (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in its favor, and (4) an injunction is in the public interest. *Id.* at 20–22; Fed. R. Civ. P. 65. The moving party bears the burden of proving these elements. *Klein v. City of San Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009).

**1. Likelihood of Success on the Merits**

To satisfy the first factor, "[p]laintiffs need not show positively that they will prevail on the merits. They need only prove a 'fair chance of success on the merits.'" *Bolbol v. Ringling Bros. & Barnum & Bailey Circus*, No. 04-CV-00082-JW, 2004 WL 7338786, at *3 (N.D. Cal. Aug. 24, 2004) (quoting *Johnson v. Cal. State Bd. of Acct.*, 72 F.3d 1427, 1429 (9th Cir. 1995)). "[W]here there are only 'serious questions going to the merits'—that is, less than a 'likelihood of success on the merits'—a preliminary injunction may still issue so long as 'the balance of hardships tips sharply in the plaintiff's favor' and the other two factors are satisfied." *Dixon v. Partida*, No. 22-CV-04461-JST, 2022 WL 18956527, at *4 (N.D. Cal. Dec. 2, 2022) (quoting

[3] The Court takes note of the proceedings where courts have denied DPPs' similar arguments, some of which were in front of the Undersigned. *E.g.*, *Optronics Technologies, Inc., v. Ningbo Sunny Electronic Co., Ltd. at al*., Case No. 16-cv-6370-EJD (N.D. Cal) ("*Orion* Litigation"), ECF No. 823; *see* Opp'n 7–12. The Court adds to this list DPPs' pending objection to the motion for final settlement approval in the IPP action before the Undersigned, *Hightower v. Celestron Acquisition, LLC et al*, Case No. 20-cv-03639-EJD (N.D. Cal).

*Short v. Brown*, 893 F.3d 671, 675 (9th Cir. 2018)).

DPPs do not make any arguments directly addressing the likelihood of success on the merits other than conclusorily stating in their reply, without explanation or argument, that they have "show[n] a likelihood of success on the merits."[4] Reply 13. While DPPs raise arguments regarding Defendants' alleged "blatant violations of law," an examination of DPPs' likelihood of success requires more than an inquiry into the violations themselves. As the Court described in its recent order granting class certification, antitrust violations also require a showing of an antitrust injury and measurable damages. *See* Order, ECF No. 731.

**2. Irreparable Harm**

To prevail on this prong, plaintiffs must show that they are faced with immediate and irreparable injury that is not compensable with money damages. *See Drakes Bay Oyster Co. v. Salazar*, 921 F. Supp. 2d 972, 993 (N.D. Cal. 2013), *aff'd sub nom. Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073 (9th Cir. 2014); *see also Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1202 (9th Cir. 1980) ("It is well established, however, that such monetary injury is not normally considered irreparable"). "[T]he threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury." *Ctr. for Food Safety v. Vilsack*, 636 F.3d 1166, 1171 (9th Cir. 2011) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488 (2009)).

Though DPPs raise arguments under this factor, they still fail to meet it. DPPs argue that if Defendants shut down their operations in the United States and move their assets out of the country before judgment, assuming the Court issues a judgment, then both DPPs' ability to recover damages and the Court's ability to fashion equitable monetary relief will be destroyed. This may be true. If Defendants do move all their assets outside of the United States, this would

[4] Though distinct inquiries, it appears DPPs may have conflated the likelihood of success on the merits with the likelihood that Defendants would dissipate their assets, focusing all arguments on the latter.

United States District Court
Northern District of California

likely frustrate any potential judgment collection efforts and cause irreparable harm. However, there is no evidence that this is likely to occur.

DPPs argue dissipation of assets is likely for four reasons, all of which fail to meet their burden here. First, DPPs argue that Defendants use a fraudulent corporate structure to hide the true ownership of assets and facilitate transfers of funds to themselves. They contend that Defendants have used an entity named Good Advance to transfer tens of millions of dollars, used the entity to commit antitrust violations, and covered their tracks by destroying documents and giving false testimony feigning a lack of knowledge about the existence of Good Advance. Defendants argue that this allegation is based on inadmissible speculation and is refuted by the record—discovery revealed that Good Advance was formed as a legitimate entity to facilitate transactions between a Taiwan entity and a Chinese entity given the prohibition on direct trade between China and Taiwan at that time.

Though the document destruction and false testimony are highly suspect and give the Court considerable pause, they are not necessarily evidence that Defendants used Good Advance to commit fraud, and certainly not evidence that Defendants are likely to transfer all assets outside of the United States to avoid potential judgment in this case.

Second, DPPs argue that Defendants are actively expatriating money from the United States. DPPs present evidence that Celestron pays a "monthly management fee" to one of the Synta entities, SW Tech, which is run by family members, and Celestron has paid millions in dividends and special bonuses to the same entities and individuals in China. Defendants argue that the monthly management fees are paid in the ordinary course of business, and family relations do not make these transfers improper. Further, Defendants highlight that none of the cited evidence regarding bonuses and dividends show any transfers of money to China.

As an initial matter, the Court notes that DPPs misunderstand their burden, contending that it is Defendants who must show these transfers are "proper." Reply 9. Rather, it is DPPs' burden to show how these transfers make dissipation of assets likely. The fact that Defendants routinely send money to China does not indicate that they will attempt to evade any potential judgment

issued by the Court in this case.

Third, DPPs argue that IPPs in a separate class action pending before this Court have represented in a recent filing that difficulties regarding collection from Defendants is a factor to consider in approving the class action settlement. However, another counsel's arguments in a separate case is not evidence and has no bearing on the motion before the Court.

Finally, DPPs argue that Defendants are likely to dissipate their assets because they have a history of judgment avoidance. DPPs cite to the *Orion* Litigation, where DPPs' counsel on behalf of the plaintiffs there filed an *ex parte* motion for a TRO, arguing that Celestron aided and abetted Ningbo Sunny in avoiding the judgment by wiring $4.2 million to Ningbo Sunny four days before the judgment stay expired. However, as DPPs are aware, the Court made no finding as to Celestron's involvement in this judgment avoidance and dissipated the TRO as to Celestron after it had the opportunity to be heard. *Orion* Litigation, ECF No. 823.

Also fatal to DPPs' motion, DPPs fail to present any evidence, or make any arguments, showing recent conduct by Defendants that necessitate DPPs' request for such an extraordinary remedy at this time. The most recent piece of evidence DPPs produce are deposition transcripts from 2023, which describe conduct occurring in the years prior. All other evidence of emails, financial statements, and other documents date back as far as 2009.[5]

Accordingly, the Court finds that DPPs have failed to present evidence sufficient to meet their burden to show Defendants are likely to move their assets out of the country before any potential judgment.

**3. Remaining Factors**

Given DPPs' failure to satisfy the first two *Winter* factors, the Court need not review the final two. *See, e.g.*, *Blackburn v. Washington Dep't of Soc. & Health Servs.*, 472 F. App'x 569,

---

[5] This begs the question, why did DPPs file their motion now? Defendants highlight that DPPs made a similar request for Defendant's financial information in a discovery request served on October 1, 2024, which was past the deadline to serve requests. Defendants informed DPPs that they would not respond to the request given its untimeliness. DPPs subsequently filed the present motion approximately one month later. Defendants argue that this motion is a veiled attempt to improperly seek discovery after the discovery cut-off.

United States District Court
Northern District of California

570–71 (9th Cir. 2012) (declining to examine remaining factors where petitioner failed to establish harm); *Leiva-Perez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011) (same); *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (same).

## III. CONCLUSION

Based on the foregoing, the Court **DENIES** DPPs' motion for an order that requires Defendants identify their assets and prevents Defendants from transferring money out of the United States.[6]

**IT IS SO ORDERED.**

Dated: April 2, 2025

EDWARD J. DAVILA
United States District Judge

[6] The Court denies DPPs' motion based on the briefing before it and therefore need not examine Defendants' administrative motion for leave to file a sur-reply. *See* ECF No. 667. Accordingly, the Court terminates ECF No. 667 as moot.