CHRISTOPHER FROST (SBN 200336)
chris@frostllp.com
JOHN MAATTA (SBN 83683)
john@frostllp.com
JOSHUA STAMBAUGH (SBN 233834)
josh@frostllp.com
LAWRENCE J.H. LIU (SBN 312115)
lawrence@frostllp.com
FROST LLP
10960 Wilshire Boulevard, Suite 2100
Los Angeles, California 90024
Telephone: (424) 254-0441

SHAUNA A. IZADI (Admitted *Pro Hac Vice*)
sizadi@izadilegal.com
IZADI LEGAL GROUP, PLLC
13155 Noel Rd, Suite 900
Dallas, Texas 75240

Attorneys for Defendants Celestron Acquisition, LLC,
Synta Technology Corp., Suzhou Synta Optical
Technology Co., Ltd., Synta Canada Int'l Enterprises Ltd.,
SW Technology Corp., Olivon Manufacturing Co. Ltd.,
Olivon USA, LLC, Nantong Schmidt Optoelectrical
Technology Co. Ltd., Pacific Telescope Corp., Corey Lee,
David Shen, Sylvia Shen, Jack Chen, Jean Shen, Joseph
Lupica, Dave Anderson, Laurence Huen

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| IN RE TELESCOPES ANTITRUST LITIGATION | Case No. 5:20-cv-03642-EJD |
| THIS DOCUMENT RELATES TO: | *Assigned for All Purposes to:* <br> Hon. Edward J. Davila |
| AURORA ASTRO PRODUCTS, LLC, PIONEER CYCLING & FITNESS, LLP; and those similarly situated, <br>         Plaintiffs, <br>     vs. | **NOTICE OF MOTION AND MOTION FOR RECONSIDERATION, OR ALTERNATIVELY, CLARIFICATION OF ORDER DATED MARCH 14, 2025** |
| CELESTRON ACQUISITION, LLC, SUZHOU SYNTA OPTICAL TECHNOLOGY CO., LTD., SYNTA CANADA INT'L ENTERPRISES LTD., SW TECHNOLOGY CORP., OLIVON MANUFACTURING CO. LTD., OLIVON USA, LLC, NANTONG SCHMIDT OPTOELECTRICAL TECHNOLOGY CO. LTD., NINGBO SUNNY ELECTRONIC CO., LTD., PACIFIC TELESCOPE CORP., COREY LEE, DAVID SHEN, SYLVIA SHEN, JACK CHEN, JEAN SHEN, JOSEPH LUPICA, DAVE ANDERSON, LAURENCE HUEN, and DOES 1-50, <br>         Defendants. | [ECF No. 733; L.R. 7-9; Fed. R. Civ. P. 60(a), 60(b)] <br><br> *Filed concurrently with Declaration of Lawrence J.H. Liu; [Proposed] Order* <br><br> <u>Hearing</u> <br> Date:          TBD <br> Time:         TBD <br> Crtrm.:      4 (5th Floor) <br><br> Compl. Filed:   June 1, 2020 <br> TSC:         May 8, 2024 <br> Trial Date:    None Set |

**TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on _____, at _____, or as soon thereafter as counsel may be heard in the United States District Court for the Northern District of California, located at 280 South 1st Street, San Jose, California 95113, Courtroom 4, before the Honorable Edward J. Davila, Defendants Celestron Acquisition, LLC, Synta Technology Corp., Suzhou Synta Optical Technology Co., Ltd., Synta Canada Int'l Enterprises Ltd., SW Technology Corp., Olivon Manufacturing Co. Ltd., Olivon USA, LLC, Nantong Schmidt Optoelectrical Technology Co. Ltd., Pacific Telescope Corp., Corey Lee, David Shen, Sylvia Shen, Jack Chen, Jean Shen, Joseph Lupica, Dave Anderson, and Laurence Huen (collectively, "Defendants") will and hereby do move this Court for Reconsideration, or alternatively, Clarification of the Court's Order Dated March 14, 2025.

Pursuant to Federal Rule of Civil Procedure 60(b) and Local Rule 7-9, Defendants respectfully request the Court reconsider its Order dated March 14, 2025 (the "March 14th Order," ECF No. 733), striking Defendants' nine Motions for Summary Judgment ("MSJs") and ordering Defendants to re-file them as a single, 45- to 50-page omnibus motion. This Motion is made on the following grounds:

1. New facts, changed circumstances, and honest mistake warrant reconsideration of the Court's March 14th Order as Defendants have now had a reasonable opportunity to consider the Court's suggested omnibus motion as well as trial scheduling issues and have determined that proceeding with the nine MSJs as initially filed, separately, would protect Defendants' procedural due process rights and also foster greater judicial efficiency by resolving certain disputes before trial.

2. The March 14th Order amounted to clear error and resulted in manifest injustice as Defendants were deprived procedural due process by not being afforded adequate notice of the issues raised at the Court's *sua sponte* teleconference on March 14, 2025, wherein the Court requested Defendants respond to its proposal striking Defendants' nine MSJs and to refile them as a single omnibus motion.

3. The March 14th Order amounted to clear error and resulted in manifest injustice as it limited the Defendants to a single omnibus motion comprised of just 45 to 50 pages, which is wholly insufficient for each of the 11 Defendants moving for summary judgment ("Moving Defendants") to fully and fairly brief their arguments. Defendants submit that the MSJs are meritorious and concern

extensive and individualized factual issues for each Moving Defendant, which the Court has not yet considered, and thus warranting separate and full briefing for each MSJ.

4.    The March 14th Order amounted to clear error and resulted in manifest injustice as it resulted in extreme prejudice to Defendants who had expended considerable time and resources to comply with the Court's scheduling order and procedural rules having timely filed the nine MSJs—only for the MSJs to be struck *ex post facto*. Moreover, the March 14th Order unfairly benefitted Direct Purchaser Plaintiffs ("DPPs") with unlimited time to review Defendants' arguments before a new briefing schedule has been set, while simultaneously requiring Defendants to respond to DPPs' two *Daubert* Motions that were not struck, in accordance with the Court's original scheduling order.

5.    Finally, Defendants respectfully request in the alternative that the Court clarify its March 14th Order to guide the parties on how to proceed on Defendants' MSJs, including the number of motions, page lengths, and briefing schedule.

This Motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, the Declaration of Lawrence J.H. Liu and exhibits filed in support of Defendants' Administrative Motion for Leave to file this Motion for Reconsideration, all of the pleadings, files, and records in this proceeding, all other matters of which the Court may take judicial notice, and any argument or evidence that may be presented to or considered by the Court prior to its ruling.

DATED: April 11, 2025

FROST LLP

By: _____

CHRISTOPHER FROST
JOHN D. MAATTA
JOSHUA S. STAMBAUGH
LAWRENCE J.H. LIU
Attorneys for Defendants Celestron Acquisition, LLC, Synta Technology Corp., Suzhou Synta Optical Technology Co., Ltd., Synta Canada Int'l Enterprises Ltd., SW Technology Corp., Olivon Manufacturing Co. Ltd., Olivon USA, LLC, Nantong Schmidt Optoelectrical Technology Co. Ltd., Pacific Telescope Corp., Corey Lee, David Shen, Sylvia Shen, Jack Chen, Jean Shen, Joseph Lupica, Dave Anderson, Laurence Huen

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Defendants respectfully request the Court reconsider its Order following the teleconference on March 14, 2025 (the "March 14th Conference"), striking Defendants' nine previously filed Motions for Summary Judgment ("MSJs") and ordering Defendants to re-file them as a single omnibus motion limited to 45 to 50 pages. At the March 14th Conference, the Court suggested that Defendants consolidate their multiple MSJs in order to expedite such briefing and hearing schedule, and Defendants reiterated their preference to preserve the possibility of a trial before the end of the year. But Defendants' counsel did not have an opportunity to meaningfully consider the Court's proposal or confer with their clients, including assessing whether it was fair or feasible for Defendants to proceed on a single omnibus motion, before responding to the Court's issues. Defendants also objected to the 45- to 50-page limit suggested by the Court as insufficient to provide fair and adequate briefing for the 11 Moving Defendants.

After the Order was issued on March 14th (the "March 14th Order") and Defendants had an opportunity to consider the Court's procedural issues, Defendants now realize that the proposed omnibus motion will deprive them of the ability to adequately brief each of their individual MSJs, and thus further deprive them of their basic procedural due process rights. The Court should reconsider its Order on the grounds that Defendants have timely and fully complied with the Court's original orders and procedures and that such MSJs should proceed on a regular briefing and hearing schedule. In this way, each Defendant will receive the proper attention and careful analysis for their individual basis for summary judgment that they deserve. Defendants acknowledge that affording the necessary care and individual attention to each MSJ will forego the likelihood of trial this year. The Order as it stands, however, risks extreme prejudice to Defendants by wasting their significant efforts on the now-stricken MSJs while providing DPPs unlimited time to preview and prepare responses to the arguments.

The Court should rectify the mistaken grounds for the March 14th Order and avoid a manifest injustice by permitting Defendants to re-file their nine MSJs as provided under the Court's rules. Doing so will ultimately preserve judicial resources by potentially adjudicating all claims specific to certain named defendants and efficiently resolving certain key legal issues. Accordingly, the Court should grant this Motion for Reconsideration, or Alternatively, Clarification.

## II. **PROCEDURAL HISTORY**

On March 7, 2025, pursuant to the Court's Scheduling Order (ECF No. 664), Defendants timely filed nine MSJs on behalf of a number of individual and entity Defendants (the "Moving Defendants") who had no active involvement in DPPs' alleged antitrust conspiracy. (ECF Nos. 705, 707, 710, 711, 713, 715, 716, 719, 720.) On March 13, just six days after the filing of the MSJs, the Court issued a notice (the "March 13th Notice") ordering the parties to appear for a videoconference set for the next morning (the "March 14th Conference") but the notice did not include any details regarding the substance of the hearing. (ECF No. 732.) The March 13th Notice was also given *just 24 hours prior* to the March 14th Conference. (*See* Declaration of Lawrence J.H. Liu iso Defs.' Admin. Mot. for Leave to File Mot. Reconsideration ["Liu Decl."] ¶ 5.)

At the March 14th Conference, the Court informed Defendants that in order to have trial before the end of the year, it would need to strike Defendants' nine pending MSJs and order Defendants to refile them as a single omnibus motion. Defendants' counsel, facing this issue for the first time, stated that Defendants preferred to move forward with trial before year-end, but explained that while there were some overlapping legal issues in each MSJ, the factual circumstances as to each Defendant were highly individualized and unique and thus required sufficient pages of individualized briefing. The Court ultimately ordered Defendants to refile their MSJs as a single omnibus motion and suggested that the motion be limited to just 45 to 50 pages, and the Court also ordered the parties to meet and confer on a joint briefing schedule to be submitted by March 24th. (ECF No. 733.)

Defendants' counsel met and conferred with DPPs' counsel and offered two proposals: (1) a single omnibus brief of 75 pages; or alternatively, (2) two omnibus briefs—one for entity Defendants and one for individual Defendants, together totaling 90 pages. (Liu Decl. ¶ 11.) DPPs meanwhile insisted on a single omnibus brief of 45 pages. Each side submitted its proposal separately to the Court on March 24, 2025. (ECF Nos. 735, 736.) The Court has not yet ruled on either side's proposals, including the number of briefs, page limits, or briefing schedule. Defendants now respectfully request the Court reconsider and amend the March 14th Order to allow Defendants a full and fair chance to brief their grounds for summary judgment by re-filing their MSJs in accordance with the Court's initial orders and procedures.

# III. **LEGAL STANDARD**

## A. **Law on Motion for Reconsideration**

"A motion for reconsideration is appropriate when the previous order in question is demonstrably wrong, or if new developments would affect the outcome of the motion." *Feltzs v. Cox Commc'ns Cal., LLC*, 562 F. Supp. 3d 535, 539 (C.D. Cal. 2021). "As long as a district court has jurisdiction over the case, then it possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." *Id.* (citing *City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001)). "A motion to reconsider must provide a court with valid grounds for reconsideration by: (1) showing some valid reason why the court should reconsider its prior decision, and (2) setting forth facts or law of a strongly convincing nature to persuade the court to reverse its prior decision." *Frasure v. U.S.*, 256 F.Supp.2d 1180, 1182 (D. Nev. 2003).

"Rule 60(b) of the Federal Rules of Civil Procedure provides that: On motion and just terms, the court may relieve a party ... from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence …; [or] (6) any other reason that justifies relief." *Harmston v. City & Cnty. of San Francisco*, No. C07-01186SI, 2008 WL 269465, at *1–2 (N.D. Cal. 2008) (citing Fed. R. Civ. P. 60(b)). "The 'mistake' component of Rule 60(b)(1) allows a court to correct its own error of law." *S.E.C. v. Platforms Wireless Int'l Corp.*, No. 04 CV 2105 JM AJB, 2008 WL 281112, at *2 (S.D. Cal. Jan. 31, 2008), *aff'd in part, appeal dismissed in part*, 617 F.3d 1072 (9th Cir. 2010) (citing *Kingsvision Pay–Per–View v. Lake Alice Ba*r, 168 F.3d 347, 350 (9th Cir. 1999)). "The 'excusable neglect' component of Rule 60(b)(1) includes cases of negligence, carelessness, and inadvertent mistake by counsel." *Id.* (citing *Bateman v. United States Postal Serv.*, 231 F.3d 1220, 1223–24 (9th Cir. 2000)).

Similarly, under Local Rule 7-9(a)[1], "[b]efore the entry of a judgment adjudicating all of the claims and the rights and liabilities of all the parties in a case, any party may make a motion before a

---

[1] *See also* Fed. R. Civ. P. 54(b): "[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."

Judge requesting that the Judge grant the party leave to file a motion for reconsideration of any interlocutory order on any ground set forth in [Local Rule 7-9(b)]."

Under Local Rule 7-9(b), "[a] motion for reconsideration may be made on one of three grounds: (1) a material difference in fact or law exists from that which was presented to the Court, which, in the exercise of reasonable diligence, the party applying for reconsideration did not know at the time of the order; (2) the emergence of new material facts or a change of law; or (3) a manifest failure by the Court to consider material facts or dispositive legal arguments presented before entry of judgment." *Alivecor, Inc. v. Apple, Inc.*, No. 21-CV-03958-JSW, 2022 WL 14813685, at *1 (N.D. Cal. 2022) (citing L.R. 7-9(b)(1)-(3)). In sum, "[t]he major grounds that justify reconsideration involve an intervening change of controlling law, the availability of new evidence, or the need to correct a <u>*clear error*</u> or prevent <u>*manifest injustice*</u>.'" *Phillips v. Chappell*, No. 17-00875 EJD (PR), 2018 WL 9875250, at *1 (N.D. Cal. 2018) (J. Davila) (quoting *Pyramid Lake Paiute Tribe of Indians v. Hodel*, 882 F.2d 364, 369 n.5 (9th Cir. 1989)) (cleaned up, emphasis added).

Clear error occurs when there is a "definite and firm conviction that a mistake has been committed." *Schramm v. Montage Health*, No. 17-CV-02757-VKD, 2019 WL 377772, at *2 (N.D. Cal. 2019) (J. DeMarchi) (quoting *Smith v. Clark Cnty. School Dist.*, 727 F.3d 950, 955 (9th Cir. 2013)). "Manifest injustice is a fundamental defect which inherently results in a complete miscarriage of justice' or 'an omission inconsistent with the rudimentary demands of fair procedure." *U.S. v. Sousa*, 1993 WL 493732 at *1, (9th Cir. 1993). "[T]he term "manifest error" is an error that is plain and indisputable, and that amounts to a complete disregard of the controlling law or the credible evidence in the record." *In re Oak Park Calabasas Condo. Ass'n*, 302 B.R. 682, 683 (Bankr. C.D. Cal. 2003) (finding manifest error is also valid grounds for a motion for reconsideration) (internal citations omitted). "A decision is manifestly unjust if it contains an error that is direct, obvious, and observable." *Moore v. PetSmart, Inc.*, No. 5:12-CV-03577-EJD, 2015 WL 13413342, at *1 (N.D. Cal. 2015) (J. Davila) (quoting *Pac. Coast Fed'n of Fishermen's Ass'n v. Locke*, 2011 WL 289927, at *2 (N.D. Cal. 2011)).

**B.** <u>**Law on Motion for Clarification**</u>

"[N]o rule specifically authorizes a motion for 'clarification,' but where a party genuinely needs further guidance from the Court as to some issue, there appears to be no reason to bar such a motion,

and the Court has inherent power to provide such further clarification as may be appropriate in the particular circumstances." *Niva v. United States*, No. C 03-00908 RS, 2009 WL 3617767, at *3 (N.D. Cal. 2009). "A party may move a court for clarification 'to explain or clarify something ambiguous or vague' about, rather than 'to alter or amend,' a prior order." *Cdm Holding Group, LLC v. Tidal Commerce Inc.*, No. SACV2101204CJCDFMX, 2023 WL 5167357, at *1 (C.D. Cal. 2023). "A clarification is appropriate when there is an error or oversight in an order." *Mitchell v. City of Los Angeles*, No. CV1601750SJOJPRX, 2017 WL 10545079, at *4 (C.D. Cal. 2017). A motion for clarification, which seeks only to clarify a prior order to resolve a dispute between the parties, does not need to satisfy the requirements under Local Rule 7-9. *See Freitas v. Cricket Wireless, LLC* No. C 19-7270 WHA, 2021 WL 5987138, at *3 (N.D. Cal. 2021). Further, "clarification is appropriate when there is an error or oversight in an order." *Mitchell v. City of Los Angeles*, No. CV1601750SJOJPRX, 2017 WL 10545079, at *4 (C.D. Cal. 2017).

## IV.   ARGUMENT

Defendants respectfully request the Court reconsider its March 14th Order striking Defendants' nine MSJs and ordering Defendants to re-file them as a single, 45- to 50-page omnibus motion. Defendants also submit an amended proposal permitting them to proceed on the initial nine MSJs and providing sufficient time for the parties to fully brief and the Court to hear the MSJs. Alternatively, Defendants respectfully request the Court clarify its Orders on how Defendants should proceed on their previously filed MSJs.

### A.   DEFENDANTS' MSJs WERE PROCEDURALLY PROPER AND SUBSTANTIVELY MERITORIOUS

Rule 56(a) unequivocally provides that "A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought." The Court's Standing Order for Civil Cases expressly permits "One Motion [for Summary Judgment] *per Party*." Standing Order, § V.A., emphasis added. Each motion must be separately noticed and may not exceed 25 pages. *See* L.R. 56-1, 7-2(b); *see also, e.g., Thomas v. County of San Diego*, No. 3:15-CV-2232-L-AGS) 2019 WL 1980855, at *4 (S.D. Cal. 2019) (individual defendants represented by the same counsel permitted to file separate, independent motions for summary judgment, and "[i]n the

FROST

interest of clarity and due consideration, the Court analyzes each motion for summary judgment separately"). Defendants were thus entitled to 25 pages of briefing for *each* Moving Defendant so that each could tell their particular story. Under the Scheduling Order dated December 3, 2024, all dispositive motions were due on March 7, 2025. (ECF No. 664.) There is no dispute that Defendants' MSJs were timely filed on March 7, 2025, in compliance with the Court's Orders and procedural rules. (ECF Nos. 705, 707, 710, 711, 713, 715, 716, 719, 720.)

Moreover, each Moving Defendant's material facts and grounds for summary judgment are unique and meritorious. Each Moving Defendant's MSJ contained an extensive discussion of background facts unique to that particular Defendant. Each MSJ is also supported by detailed declarations from certain individual Defendants with *exclusive* personal knowledge of the underlying facts at issue, including the history of the entities, the specific roles and actions of each Defendant, and the Defendants' relationships with one another—evidence that DPPs have no grounds to dispute. These detailed discussions help to bolster and clarify the factual record, which will greatly assist the Court and trier of fact in correcting DPPs' numerous misconceptions and providing much-needed context behind DPPs' cited evidence. The MSJs should not be struck nor shortened on this basis alone. (Liu Decl. ¶ 3.)

### 1. Jean Shen and Olivon Entities

Jean Shen was wrongly and most unfortunately named in this lawsuit by simply being David Shen's sister. As the youngest sibling, Jean Shen rarely talked to David Shen and had no business with him. Jean Shen lives in Canada where she started her own business primarily selling birdwatching scopes through her entities Olivon Manufacturing and Olivon USA. Jean Shen had no business with Celestron or her brother's manufacturing company, Suzhou Synta, and no business in the U.S. market generally. Furthermore, Jean Shen retired from her business after failing to generate enough income and consistently operating at a "big loss." During her deposition, Jean Shen testified that she never made any profit from her de minimis sales of telescopes, and instead lost a lot of money over the year. Jean Shen and her entities are entitled summary judgment as to all claims because they lacked any meaningful market share or power and had no role whatsoever in any of the antitrust misconduct alleged in the Fourth Amended Complaint.

### 2.     Synta Technology (aka Synta Taiwan)

Synta Taiwan is a Taiwanese-based company started by David Shen and his mother in the late 1980s. Synta Taiwan began as a small telescope accessory workshop in Taiwan, and later became a trading company between U.S. distributor, Orion, and Chinese supplier, Ningbo Sunny until 2017. Today, it exists solely as a passive holding company for David Shen and his family's investments, which include an indirect ownership interest in Celestron. Except for its limited trading business with Orion, Synta Taiwan did not otherwise manufacture or sell any telescopes during the relevant period. David Shen left the company in the late 1990s to early 2000s, transferring his ownership interest in Synta Taiwan entirely to his mother. Neither David Shen nor any other named Defendant had control or ownership interest over the Synta Taiwan during the relevant class period. Synta Taiwan also did not exercise any control over any other Defendant throughout the alleged conspiracy

Under the Foreign Trade Antitrust Improvements Act of 1982 (15 U.S.C. § 6a, "FTAIA"), U.S. federal antitrust laws do not apply to foreign conduct unless that conduct has a "direct, substantial, and reasonably foreseeable effect" on U.S. domestic commerce, import commerce, or U.S. export commerce. DPPs must establish a direct causal link between the conduct of a foreign entity and harm to U.S. commerce. In other words, an independent foreign conduct is insufficient to establish liability without an immediate proximate anticompetitive effect in the domestic market. *See Minn-Chem, Inc. v. Agrium Inc.*, 683 F.3d 845, 857 (7th Cir. 2012) (*en banc*).  Synta Taiwan is entitled to summary judgment because its only business activity directed at the U.S. was serving as a trading company for Orion, which is insufficient to establish liability under the FTAIA.

### 3.     Synta Canada

Synta Canada is a Canadian-based passive investment holding company with an indirect interest in Celestron. Synta Canada did not engage in any manufacturing or sales of telescopes, and had no business activity except to serve as a passive holding company. Synta Canada, however, never produced nor manufactured any products which were sold to United States purchasers; let alone telescopes. Without sales or distribution in the U.S. market, its conduct could not have directly impacted U.S. commerce, as required under the Sherman Act. Any effect on the U.S. market by Synta Canada was therefore likewise *de minmis* and insufficient to give rise to antitrust liability under the FTAIA.

### 4. SW Technology

SW Technology existed only as a U.S.-based holding company for Celestron. It is owned by Synta Canada and Synta Taiwan, but it was not involved in any business decisions or operations by Celestron. It also never manufactured or sold any telescopes. SW Technology was represented by a shareholders' committee known as "Excom," which was comprised of Defendants Sylvia Shen and Jack Chen. Defendant Laurence Huen served as a financial consultant for the committee and analyzed and provided periodic reports on Celestron's finances. Yet, neither SW Technology nor the committee members or Mr. Huen directed, controlled, influenced, or otherwise participated in Celestron's day-to-day business operations. SW Technology, as only a passive holding company, was not directly involved in the consumer telescope business and did not engage in any antitrust conspiracy or other misconduct alleged in the Fourth Amended Complaint.

### 5. Pacific Telescope

Pacific Telescope existed mainly as a small Canadian-based distributor of telescopes exclusively in the Canadian market. At one time, it also engaged in some limited research and development of software that was used in certain computerized telescopes. At no point, however, did Pacific Telescope manufacture telescopes or sell telescopes to the U.S. market. It ended its operations due to poor business in 2019. Although David Shen originally founded Pacific Telescope, he has not held any interest in the company and has not been involved in its business during the relevant time period. Although Sylvia Shen and Jack Chen were involved in its business operations, it had no role in any of the alleged antitrust claims relating to DPPs or the U.S. consumer telescope market generally. Accordingly, the FTAIA likewise exempts Pacific Telescope from liability under DPPs' antitrust claims.

### 6. Celestron

Celestron is the U.S.-based distributor at the forefront of DPPs' alleged "manufacturing market" claims. Yet, there is no evidence that Celestron had any market power to fix prices, monopolize the market, or engage in any other alleged antitrust activities. Indeed, the undisputed evidence shows that Celestron competed aggressively with Meade until at least 2013 and faced intense competition over the years from an influx of newcomers to the consumer telescope market that included China-direct, private label, and other brands. Rather, Celestron has long been the innovator of the telescope industry, investing

in and developing new products and technologies, reducing the prices of once expensive and sophisticated telescopes, and creating affordability and broad access to such products benefiting the consumer market as a whole. Celestron is entitled to summary judgment because DPPs fail to coherently define the relevant market and rely on flawed analyses of their experts J. Douglas Zona, Ph.D. and Douglas George who provide conflicting definitions of the relevant market and damages period that are untethered to the theories in the Fourth Amended Complaint. Accordingly, Celestron is entitled to summary judgment because DPPs cannot establish that Celestron maintained requisite market share or market power to support their theories.

### 7. Corey Lee

Corey Lee is the current CEO of Celestron who began his career as an engineer and product specialist for the company. Before 2017, during the time in which the alleged misconduct took place, he was in charge of product development and did not have any role in Celestron's decisions on setting prices or engaging in business acquisitions. Mr. Lee did not direct, ratify, approve, or otherwise engage in any "inherently wrongful conduct" so as to be held personally liable for any alleged antitrust violations.[2]

Mr. Lee was not involved in the 2013 Meade Acquisition, which took place before he became CEO of Celestron. DPPs' only claims against Mr. Lee are purported acts directed at Orion, who is not a class member because it previously settled all its claims with the named Defendants this case in 2016.[3] While DPPs point to emails between Mr. Lee and David Shen regarding credit terms and supply agreements between Celestron's competitor Orion and David Shen's manufacturing company, Suzhou Synta, such discussions were in the context of completely lawful, pro-competitive business reasons, including concerns regarding Celestron's investments in proprietary technology that was used in Suzhou Synta's products that were sold to Orion, and plans to expand Celestron's own product offerings. Mr.

---

[2] "Individuals may be liable for the antitrust violations of their employers if they have directly participated in or knowingly approved or ratified 'inherently wrongful' conduct." *In re Calif. Bail Bond Antitrust Litig.*, No. 19-CV-00717-JST, 2020 WL 3041316, at *17 (N.D. Cal. 2020).

[3] The Orion Settlement Agreement was attached to several of Defendants' MSJ filings, including Mr. Lee's Declaration (ECF Nos. 707-8) and the Request for Judicial Notice (ECF No. 708-1) in support of Mr. Lee's MSJ.

DEFENDANTS' MOTION FOR RECONSIDERATION, OR IN THE ALTERNATIVE,
CLARIFICATION OF ORDER DATED MARCH 14, 2025

FROST

Lee did not conspire with David Shen or anyone else to fix prices of telescopes that were sold to Celestron's competitors and did not steal any competitors' trade secrets. Thus, there is no evidence to support any of DPPs' claims against Mr. Lee.

### 8. Dave Anderson

Dave Anderson was the CEO of Celestron from 2013 to 2017, during which he acted solely in Celestron's legitimate business interests. There is no evidence that Mr. Anderson engaged in any inherently wrongful conduct necessary to establish individual liability. Specifically, Mr. Anderson did not enter into any agreement with any competitor and there is no evidence that he attempted to monopolize the market. DPPs cited evidence against him are deliberately misconstrued and taken out of context. Moreover, he had no knowledge of any overlapping ownership interests between competing suppliers. None of the individual Defendants exercised supervisory authority over Anderson. Yet, upon close inspection, they show that he is nothing more than a passive recipient of information, taking no action in response and issuing no directives for any party to engage in any conduct.

### 9. Joe Lupica

Joe Lupica was the CEO of Celestron from 1998 to 2013, during which Mr. Lupica acted solely in Celestron's legitimate business interests. Similarly, there is no evidence that Mr. Lupica engaged in any inherently wrongful conduct necessary to establish individual liability. Although Mr. Lupica served as Celestron's CEO right before Ningbo Sunny's 2013 acquisition of Meade and then worked as Meade's CEO following the Meade Acquisition, the record shows that Mr. Lupica had no input and was not aware of the details of the Meade Acquisition. All of the documents cited by DPPs in their motion practice, and introduced during depositions show that Lupica was, at best, a passive recipient of information and played no role in shaping, directing, or influencing the transaction. As with the other Defendants, there is also no evidence of any actual conspiracy or unlawful agreement involving Mr. Lupica.

## II. NEW FACTS AND CHANGED CIRCUMSTANCES WARRANT RECONSIDERATION OF THE MARCH 14TH ORDER

At the March 14th Conference, the Court indicated that it would not be able to set hearings and decide Defendants' nine MSJs in time before trial could be had by the end of the year. The Court

proposed striking the nine MSJs and have Defendants refile them as a single omnibus motion. Defendants' counsel did not have an opportunity to consider the Court's request or consult with their clients before being asked to address the Court's issues and proposal at the *sua sponte* March 14th Conference. Thus, based upon its current knowledge and understanding, counsel for Defendants may have prematurely and incorrectly represented that Defendants preferred to move forward with trial before the end of 2025 and would be amenable to the Court's suggested single omnibus brief. (Liu Decl. ¶ 7.) Defendants' counsel *emphasized, however*, that the Moving Defendants would require a sufficient number of pages to properly brief each of their unique factual circumstances. (Liu Decl. ¶ 8.)[4]

Defendants have now carefully considered the Court's single omnibus motion proposal and reviewed Defendants' nine separate, previously-filed MSJs, and have determined that the Court's proposal at the March 14th Conference and subsequent Order, which <u>*limited the 11 Moving Defendants to a single omnibus motion of 45 to 50 pages*</u>—would not be feasible and would be extremely prejudicial to Defendants. Each Moving Defendant's previously filed MSJ contained an extensive discussion of background facts unique to that particular Defendant. Each MSJ consisted of 20 to 25 pages on its own, thus totaling 200+ pages altogether. (Liu Decl. ¶ 3.) Even by consolidating some overlapping legal analysis sections, Defendants have attempted, but are unable, to condense the MSJs to 45 to 50 pages while still providing a full and fair briefing for each Moving Defendant's individualized arguments and analysis. (Liu Decl. ¶ 10.) There are simply too many factual issues and legal claims to effectively address in a single, limited omnibus motion , and thus such restrictions under the March 14th Order will unfairly impede on Defendants' due process rights.

Defendants have acted with reasonable diligence before seeking leave to file this Motion for Reconsideration. Over the past few weeks, Defendants attempted in good faith to comply with the Court's March 14th Order and condense the MSJs into the format ordered by the Court while still preserving each Moving Defendant's right to fully brief their unique facts and legal arguments. After

---

[4] At the March 14th Conference, counsel for Defendants prematurely suggested that Defendants would require at least 75 pages for a single omnibus motion. Defendants have now determined that 75 pages would still be insufficient to fully brief each Moving Defendant's particular facts and defenses. Because counsel was unable to carefully consider the Court's proposal before responding, the mistaken understanding regarding the feasibility of the proposal should be excused. *See* Fed. R. Civ. P. 60(b)(1).

Defendants' counsel realized such efforts were infeasible, Defendants' counsel met and conferred with DPPs' counsel on alternative proposals for additional pages or separate motions. Defendants' best efforts to significantly condense the briefing, however, have proved unsuccessful. (*See* Liu Decl. ¶ 10.) It is now apparent that the <u>*only*</u> way to safeguard Defendants' rights is to allow them to proceed as originally permitted—*i.e.*, with each Defendant entitled to proceed on their original, individually filed MSJ.

**B.      <u>DEFENDANTS DID NOT RECEIVE ADEQUATE NOTICE OF THE COURT'S INTENT TO STRIKE THE MSJs AT THE MARCH 14TH HEARING</u>**

Before a court may rule on a motion for summary judgment, it must provide the parties "adequate notice and opportunity to be heard." *See Norse v. City of Santa Cruz*, 629 F.3d 966, 971 (9th Cir. 2010) (district court erred by providing two days' notice before hearing on motion for summary judgment, which did not afford enough time to prepare for the hearing). "[W]hether the district court is ruling before trial or after trial, it must carefully consider its role in construing evidence and the applicable law, <u>*abide by the normal procedural requirements associated with that stage of litigation, and ensure that the parties have had a full and fair opportunity to be heard.*</u>" *Id.* at 975, emphasis added.

"The Ninth Circuit has held that although the district courts have 'inherent power' to control their dockets, litigation management decisions may be reversed for an abuse of discretion if the procedures deprive a litigant of due process of law within the meaning of the Fifth or Fourteenth Amendments. *S. California Edison Co. v. Lynch*, 307 F.3d 794, 807–08 (9th Cir.), *mod.*, 307 F.3d 943 (9th Cir. 2002), *and certified question answered sub nom. S. California Edison Co. v. Peevey*, 31 Cal. 4th 781, 74 P.3d 795 (2003) (citing *Barona Group of Capitan Grande Band of Mission Indians v. Am. Mgmt. & Amusement, Inc.*, 824 F.2d 710, 721–22 (9th Cir. 1987), *am. by* 840 F.2d 1394, 1405–06 (9th Cir. 1988)). "Due process requires that a party affected by a court's decision be given 'the opportunity to be heard at a meaningful time and in a meaningful manner.'" *Id.* (citing *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)).

"Notice and an opportunity to be heard are the hallmarks of procedural due process." *Guenther v. Comm'r*, 889 F.2d 882, 884 (9th Cir. 1989) (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313–14 (1950)); *see also People v. Bourland*, 247 Cal.App.2d 76, 90 (1966) (clarifying it is axiomatic that the due process right to counsel includes "an opportunity for counsel to consult with

his client and to make reasonable preparations.") A fundamental requirement of due process is that notice be reasonably calculated to convey the required information and afford a reasonable time for the interested parties to appear, such that "under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections[,]" *In re Emily R.*, 80 Cal.App.4th 1344, 1351 (2000).

"To safeguard its essential features, the clause mandates neutrality in all adjudicative proceedings—civil as well as criminal." *Id.* (citing *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242 (1980); *United States v. Thompson*, 827 F.2d 1254, 1258 (9th Cir. 1987) [court may not conduct itself in way that tends to significantly favor one party over the other "[e]ven in civil cases"]). "In entitling a person to an impartial and disinterested tribunal, due process safeguards against deprivations of life, liberty, or property based upon a distorted view of the facts. And, at bottom, its purpose is not simply to preserve the reality of fairness in all adjudicative proceedings, but also its appearance." *Id.* (italics in original).

In *Norse*, 629 F.3d 966, the district court entered summary judgment *sua sponte* against the defendant after providing just two days' notice of its intent to hear summary judgment arguments. Under the then-applicable Rule 56(c) requirements, the defendant was entitled to at least 10 days' notice of any hearing on any summary judgment motion. The Ninth Circuit reversed the grant of summary judgment, holding that "[b]ecause adequate notice was not given within the period specified by the rules, the district court was without power to enter summary judgment sua sponte." *Id.* at 972.

Here, while the Court did not decide on the merits of Defendants' MSJs, it nonetheless struck the nine MSJs *sua sponte* and ordered Defendants to refile them in a single omnibus motion. Like *Norse*, Defendants here were not provided any notice of the Court's intent to strike the nine MSJs and thus they did not have a "full and fair opportunity to ventilate the issues" prior to the Court's ruling. *Id.* (citing *Greene v. Solano Cnty. Jail*, 513 F.3d 982, 990 (9th Cir. 2008).) The March 13th Notice also provided just 24 hours' notice of the hearing but did not inform Defendants of the issues to be decided. (*See* ECF No. 732; Liu Decl. ¶ 5.) The lack of notice given to Defendants regarding the issues raised at the March 14th Conference amounted to a clear error because it prevented Defendants from carefully considering the Court's omnibus motion proposal—including reviewing its fairness and feasibility—and without allowing Defendants' counsel to consult with their clients before providing a response at the hearing.

Given the sheer magnitude of injustice to Defendants that followed, the Court should reconsider and amend the March 14th Order.

## C.   THE MARCH 14TH ORDER DEPRIVES EACH MOVING DEFENDANT OF A FAIR OPPORTUNITY TO FULLY BRIEF THEIR MSJ ARGUMENTS

The March 14th Order also resulted in manifest injustice by limiting the 11 Moving Defendants to a single omnibus motion of 45- to 50-pages. While Local Rule 7-2(b) entitles each movant to 25 pages in their opening briefing, the March 14th Order unfairly limited Defendants to just *4 to 5 pages* of briefing on the multiple causes of action and various fact-intensive antitrust theories alleged in the Fourth Amended Complaint. The Court did not state any grounds for why Moving Defendants should be limited to a single omnibus motion of 45 to 50 pages, or whether such limitations would protect each Defendant's due process rights or even be feasible. (*See* ECF No. 433.)[5] Defendants' counsel explained at the March 14th Conference that while there are some overlapping legal issues among the MSJs, each Moving Defendant nonetheless required sufficient pages to fully brief their individualized factual issues. (Liu Decl. ¶ 8.)

Indeed, Defendants have nonetheless attempted to consolidate the briefs but now realize they cannot adequately and fairly address each Defendant's unique factual circumstances that support their respective grounds for summary judgment as to each claim within the Court's suggested page limits. (Liu Decl. ¶ 10.) Thus, Defendants respectfully ask the Court to reconsider its March 14th Order and not risk Defendants' due process rights in exchange for a speedy trial.

## D.   THE MARCH 14TH ORDER UNFAIRLY PREJUDICED DEFENDANTS WHO ALREADY EXPENDED SIGNIFICANT RESOURCES ON THE NOW STRICKEN MSJs

Defendants would be severely prejudiced by having expended significant time and effort on the nine MSJs that were abruptly struck by the Court without any meaningful opportunity for Defendants

---

[5] "Page limitations as well as limitations upon the number of motions for summary judgment have sprung from perceived abuse of the summary judgment process. Of course, these limitations do not always fit well. As happened here, counsel sometimes seek modest expansions of page limitations." *Stilwell v. City of Williams*, No. 3:12-CV-8053-HRH, 2013 WL 12188576, at *1 (D. Ariz. 2013).

FROST

to brief the procedural issues raised by the Court. In total, Defendants expended 2,138 hours of time among 16 different attorney time-keepers and 76 hours of time among 3 different paralegal time-keepers on the nine MSJs—an enormous amount work that is now at risk of going to waste. (Liu Decl. ¶ 4.) Meanwhile, DPPs did not file a single MSJ but unfairly benefitted from Defendants' lost efforts. DPPs are currently provided unlimited time to preview Defendants' arguments with no briefing deadlines set yet. Conversely, Defendants received no additional time to respond to DPPs' two *Daubert* Motions that did not get struck and that were subject to the same March 7th dispositive motion deadline. (*See* ECF Nos. 718, 730, 741, 743.)

By requiring all Moving Defendants to refile a single omnibus MSJ, the March 14th Order also unfairly rewards DPPs for naming numerous, unrelated defendants in their lawsuit—subject only to vague and conclusory shotgun allegations; while penalizing the different named Defendants for simply being represented by the same counsel of record. The Court should permit each Moving Defendant a fair chance to fully brief and be heard on the merits of their respective MSJ. Unless the Court reconsiders its March 14th Order and allows Defendants to refile their MSJs according to the Court's original procedures, the Order will result in manifest injustice to Defendants.

**E.      DEFENDANTS REQUEST THE COURT CONSIDER AN AMENDED PROPOSAL REGARDING THE MSJs**

Defendants request to proceed on a regularly noticed motion schedule for each of the nine previously submitted MSJs. This will enable each moving Defendant a fair and sufficient opportunity to be heard on the merits of each Defendant's Motion. Defendants expressly understand that proceeding on the original nine MSJs under the ordinary formatting rules and hearing schedule will result in a much later trial date into next year.  Defendants believe that proceeding on the MSJs, however, will ultimately foster judicial efficiency by resolving certain claims and defenses as to certain Defendants, and substantially narrowing the scope of issues in this case before trial.

Defendants hereby submit the following new proposal that they believe reflects a fair compromise to both sides and addresses the procedural concerns of the Court by: (a) allowing Defendants to fully brief each MSJ, (b) affording DPPs additional sufficient time to prepare and file Opposition briefs, and (c) preserving the Court's resources by consolidating the nine motions into three

hearings that may be most convenient for the Court.

(1) Defendants shall be permitted to re-file the nine MSJs by May 2, 2025.

(2) DPPs shall file their Opposition briefs by May 30, 2025.

(3) Defendants shall file Reply briefs by June 20, 2025.

(4) The nine MSJs shall be consolidated into three separate hearings as follows:

- <u>Hearing 1</u> - Jean Shen, Olivon USA, Olivon Manufacturing, and Pacific Telescope

- <u>Hearing 2</u> - SW Technology, Synta Taiwan, Synta Canada

- <u>Hearing 3</u> - Celestron, Corey Lee, Dave Anderson, and Joe Lupica

(5) The trial setting conference is vacated and continued to a later date to be determined.

F.     **<u>ALTERNATIVELY, THE COURT SHOULD CLARIFY ITS MARCH 14TH ORDER</u>**

As of the time of this Motion, the Court has not yet issued an Order relating to the competing proposed briefing schedules submitted by the parties on March 24th (ECF Nos. 735, 736), and thus the Court's prior March 14th Order is still ripe for reconsideration. Should the Court, however, deny Defendants' request for leave to file the Motion for Reconsideration, it should, at a minimum, grant Defendants' request to clarify the March 14th Order as to the parameters for Defendants' MSJs, including an appropriate briefing schedule, number of motions, and page limits. Clarification is also appropriate in light of the objections initially raised by Defendants at the March 14th Conference regarding the suggested 45- to 50-page limitation, which was not addressed in the Court's March 14th Order.

V.     **<u>CONCLUSION</u>**

For the foregoing reasons, Defendants respectfully request that the Court reconsider its March 14th Order and allow Defendants to proceed on their originally filed MSJs. Alternatively, Defendants request the Court clarify its March 14th Order regarding how Defendants should proceed on refiling their MSJs.

DATED: April 11, 2025                          FROST LLP


                                                By: _____
                                                CHRISTOPHER FROST
                                                JOHN D. MAATTA
                                                JOSHUA S. STAMBAUGH
                                                LAWRENCE J.H. LIU
                                                Attorneys for Defendants Celestron Acquisition,
                                                LLC, Synta Technology Corp., Suzhou Synta Optical
                                                Technology Co., Ltd., Synta Canada Int'l Enterprises
                                                Ltd., SW Technology Corp., Olivon Manufacturing
                                                Co. Ltd., Olivon USA, LLC, Nantong Schmidt
                                                Optoelectrical Technology Co. Ltd., Pacific
                                                Telescope Corp., Corey Lee, David Shen, Sylvia
                                                Shen, Jack Chen, Jean Shen, Joseph Lupica, Dave
                                                Anderson, Laurence Huen