UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE TELESCOPES ANTITRUST LITIGATION | Case No.  5:20-cv-03642-EJD<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO STRIKE**<br><br>Re: Dkt. Nos. 718, 730 |

Before the Court are DPPs' two motions to strike the opinions of Defendants' experts, Mr. David P. Kaplan ("Mr. Kaplan") and Dr. John Hayes ("Dr. Hayes"), pursuant to *Daubert v. Merrell Dow Pharms., Inc*., 509 U.S. 579 (1993).  Mot. to Strike Kaplan ("Kaplan Mot."), ECF No 754-1; Opp'n to Kaplan Mot. ("Kaplan Opp'n"), ECF No 739-4; Reply in Supp. of Kaplan Mot. ("Kaplan Reply"), ECF No. 756; Mot. to Strike Hayes ("Hayes Mot."), ECF No. 754-5; Opp'n to Hayes Mot. ("Hayes Opp'n"), ECF No. 740-3; Reply in Supp. of Hayes Mot. ("Hayes Reply"), ECF No. 758-3.

After carefully reviewing the relevant documents, the Court finds this matter suitable for decision without oral argument pursuant to Local Rule 7-1(b).  For the reasons explained below, the Court **GRANTS IN PART** and **DENIES IN PART** DPPs' motions.

## I.    BACKGROUND

Given the Court's many prior orders, the Court assumes the reader is familiar with the facts of this case and will address only those relevant to the present motions.  *See* ECF Nos. 746, 731, 596, 589, 539, 502, 173.

Case No.: 5:20-cv-03642-EJD
ORDER GRANTING IN PART AND DEN. IN PART MOTS. TO STRIKE

1

United States District Court
Northern District of California

Mr. Kaplan is an economist who has testified as an economic expert in over twenty cases. Kaplan Report, ECF No. 728-5.  He has experience teaching business statistics and microeconomics, lecturing on competition and antitrust issues, consulting with the Federal Trade Commission, Department of Justice, and Senate Judiciary Committee on antitrust issues and antitrust damages analysis, and publishing in the field of economics.  Defendants retained Mr. Kaplan as a rebuttal expert to criticize the opinions of DPPs' economic expert, Dr. J. Douglas Zona ("Dr. Zona").  Mr. Kaplan provides opinions on Dr. Zona's use of the Cournot model and PIC data, his pooled "before-and-after" telescope regressions, and errors in his customer analysis. *See In re Telescopes Antitrust Litig.*, 348 F.R.D. 455 (N.D. Cal. 2025) (Davila, J.) (order granting class certification in this case and examining in detail Dr. Zona's opinions and Mr. Kaplan's critiques thereof).

Dr. Hayes is an optical engineer, inventor, and amateur astronomer with over twenty years of experience designing, producing, selling, and installing precision optical metrology equipment at facilities around the world.  Hayes Report, ECF No. 754-6.  This work has included consulting for telescope companies including Celestron.  Dr. Hayes has fourteen patents in the field of optics and atomic force microscopy and has authored twenty-two technical papers.  Defendants retained Dr. Hayes "to provide an expert report about astronomical telescopes, their use, how they are made, analyze potential barriers to entry in the telescope industry and to provide an opinion on the potential customer impact due to alleged anti-competitive conduct." *Id.* ¶ 1.  To this end, Dr. Hayes offers opinions on basic astronomical telescope technology, telescope optics and common optical configurations, the market for astronomical telescopes, where telescopes are sold, cost drivers, telescope manufacturing, and barriers to entry; and he concludes that the anti-competitive conduct alleged in the complaint would not have had a significant impact on the prices of telescopes given his observations of a diverse and competitive market.

## II.   LEGAL STANDARD

Courts act as the gatekeeper of expert testimony to ensure that such testimony is reliable and relevant under Federal Rule of Evidence 702.  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137,

Case No.: 5:20-cv-03642-EJD
ORDER GRANTING IN PART AND DEN. IN PART MOTS. TO STRIKE

147 (1999); *see also Daubert*, 509 U.S. 579.  The proponent of expert testimony has the burden of proving admissibility.  *In re Korean Ramen Antitrust Litig.*, 281 F. Supp. 3d 892, 931 (N.D. Cal. 2017) (citations omitted).  Before an expert can offer her opinions, she must be qualified by "knowledge, skill, experience, training, or education."  Fed. R. Evid. 702.  Once she is qualified, Rule 702 permits her to testify as long as "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case."  *Id.*  This multifactor inquiry is flexible, and "Rule 702 should be applied with a 'liberal thrust' favoring admission."  *Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1232 (9th Cir. 2017) (citations omitted).  There is, however, "no presumption in favor of admission."  *Engilis v. Monsanto Co.*, 151 F.4th 1040, 1049 (9th Cir. 2025).

The district court enjoys "broad latitude" regarding how to determine reliability.  *Kumho Tire Co.*, 526 U.S. at 142.  The court must distinguish an expert's qualifications from the reliability of the expert's principles and methods.  *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1315–16 (9th Cir. 1995).  What courts assess "is not the correctness of the expert's conclusions but the soundness of his methodology."  *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1044 (9th Cir. 2014) (quoting *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010), *as amended* (Apr. 27, 2010)).  "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."  *Daubert*, 509 U.S. at 596.

## III.    DISCUSSION

The Court will address in turn challenges to the opinions of Mr. Kaplan and Dr. Hayes.

### A.    Mr. Kaplan

DPPs challenge Mr. Kaplan's opinion on: (1) market realities, (2) Dr. Zona's economic model, and (3) market share.  The Court finds some merit in DPPs' first argument, but the remaining issues are more appropriate for cross examination than Rule 702 exclusion.

Case No.: 5:20-cv-03642-EJD
ORDER GRANTING IN PART AND DEN. IN PART MOTS. TO STRIKE

United States District Court
Northern District of California

### 1.    Opinions Regarding Market Realities

First, DPPs argue the Court should exclude Mr. Kaplan's opinions on "market realities" because they are outside the scope of Dr. Zona's expert report.

A rebuttal expert's testimony must be "intended solely to contradict or rebut evidence on the same subject matter identified by an initial expert witness." *Clear-View Techs., Inc. v. Rasnick*, No. 13–CV–02744–BLF, 2015 WL 3509384, at *2 (N.D. Cal. June 3, 2015) (quoting *R & O Constr. Co. v. Rox Pro Int'l Grp., Ltd.*, 2:09-CV-01749-LRH-LR, 2011 WL 2923703, at *2 (D. Nev. July 18, 2011). A defendant may rebut the plaintiff's expert "by putting forth its own expert who either claims that (1) the plaintiff's expert's methodology was conducted improperly in some way; or (2) the ultimate conclusion the plaintiff's expert makes is flawed because a superior methodology provides a different result." *TCL Commc'ns Tech. Holdings Ltd. v. Telefonaktenbologet LM Ericsson*, No. CV 15-02370 JVS, 2016 WL 7042085, at *5 (C.D. Cal. Aug. 17, 2016).

Mr. Kaplan testified that he is not opining on whether Defendants engaged in anticompetitive conduct, but DPPs argue he nonetheless does so by opining on certain "market realities"—i.e., the effects of cheating the cartel; customer diversity; customer churn; new product entries; differences in prices charged to customers; drop-shipping vs. shipping from the Celestron warehouse; and customer discounts. According to DPPs, Mr. Kaplan uses these factors to undermine the existence of an anticompetitive agreement. For example, DPPs quote Mr. Kaplan's report as concluding that "[t]he presence of these factors . . . would make it harder to establish, police and enforce the alleged anticompetitive [agreement] at issue here." Mot. 3 (quoting Kaplan Report ¶ 61); *see also id.* at 12 (quoting Kaplan Report ¶¶ 63, 67, 69, 75, 80, 82, 83). DPPs argue these opinions further Defendants' case-in-chief rather than rebut Dr. Zona's report—Dr. Zona does not opine on the likelihood of "establishing" an anticompetitive agreement. Mot. 13 (citing *People v. Kinder Morgan Energy Partners, L.P.*, 159 F. Supp. 3d 1182, 1191 (S.D. Cal. 2016) (excluding the plaintiff's rebuttal expert who advanced new opinions that were part of the plaintiff's case-in-chief)).

Case No.: 5:20-cv-03642-EJD
ORDER GRANTING IN PART AND DEN. IN PART MOTS. TO STRIKE
4

The Court will divide its analysis into two parts—considering the admissibility of the "market realities," and the admissibility of the conclusion that the market realities make it difficult to "establish" an anticompetitive agreement.

The Court first finds Mr. Kaplan's opinions on market realities generally admissible. DPPs mischaracterize Mr. Kaplan's report as forming new opinions on market realities, when in fact, he largely rebuts Dr. Zona's market characteristics, or lack thereof, to provide an opinion on market power.  DPPs' most significant misrepresentation is that Mr. Kaplan opines "[t]he presence of these factors . . . would make it harder to establish, police and enforce the alleged anticompetitive [agreement] at issue here."  Mot. ¶ 3 (quoting Kaplan Report ¶ 61).  DPPs intentionally omitted language with an ellipsis, however, that shows Mr. Kaplan basis his opinions on the factors *as described by Dr. Zona*: "The presence of these factors, *according to Dr. Zona (and Church and Ware),* would make it harder to establish, police and enforce the alleged anticompetitive [agreement] at issue here."  Kaplan Report ¶ 61 (emphasis added).  Reading Mr. Kaplan's report in its entirety, his discussion of these "market realities" generally appears to be in response to Dr. Zona's proposition that "[t]he U.S. market for consumer telescopes is particularly conducive to price fixing," and "[b]asic economic principles hold that these conditions would cause a baseline increase in the prices that all market participants pay."  Dr. Zona Report ¶ 63.  In other words, Mr. Kaplan uses Dr. Zona's identification of certain "conditions" or "market realities," and Dr. Zona's omission of other conditions or market realities, to challenge Dr. Zona's assumption that a baseline increase in prices is certain to occur given these market characteristics. The Court finds this does not exceed the scope of Dr. Zona's opinion.

However, Mr. Kaplan's opinions that these factors make it difficult to "establish" an anticompetitive agreement are outside the scope of Dr. Zona's opinions on supracompetitive pricing and instead ultimately support Defendants' case-in-chief.  *See Clear-View Techs.*, 2015 WL 3509384, at *2 ("If the rebuttal expert's testimony is offered . . . to contradict an expected and anticipated portion of the other party's case-in-chief, then the witness is not a rebuttal witness or anything close to one.") (quoting *Amos v. Makita U.S.A.*, No. 2:09–cv–01304–GMN–RJJ, 2011

Case No.: 5:20-cv-03642-EJD
ORDER GRANTING IN PART AND DEN. IN PART MOTS. TO STRIKE
5

United States District Court
Northern District of California

WL 43092, at *2 (D. Nev. Jan. 6, 2011)).  Defendants contend that opinions regarding the establishment of an anticompetitive agreement are within the scope of Dr. Zona's report because Dr. Zona repeatedly assumed the existence of an antitrust conspiracy.  But Dr. Zona assumes only what is alleged in the complaint for purposes of damages; he does not reach his own conclusions on the likelihood of establishing an anti-competitive agreement.  Defendants may cross-examine Dr. Zona regarding his assumption of anticompetitive conduct, but they may not use their economic damages rebuttal expert to testify as to the merits of this case. [1]

The Court therefore **GRANTS IN PART** and **DENIES IN PART** DPPs' request to strike Mr. Kaplan's opinions regarding market realities.

### 2.    Criticisms of Dr. Zona's Economic Model

Next, DPPs argue the Court should exclude as contrary to law and unreliable Mr. Kaplan's opinions that Dr. Zona: (1) should not have used the PIC and Cournot models; (2) should have used the PCE variable in his regression analysis; and (3) should have assumed a pre-2005 overcharge of zero.[2]  The Court finds these objections fall far outside the scope of *Daubert* for the following reasons.

### a.    "Contrary to Law"

As an initial matter, DPPs argue that any criticism of Dr. Zona's PIC model or Cournot model is "contrary to law."  But the "law" they rely on—the Court's order in *Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.*, No. 5:16-CV-06370-EJD, 2019 WL 4780183, at *4 (N.D. Cal. Sept. 30, 2019), *aff'd*, 20 F.4th 466 (9th Cir. 2021) ("*Orion*")—says no such thing.

In *Orion*, the Court held, and the Ninth Circuit affirmed, that Dr. Zona's use of the PIC and Cournot models were reliable for purposes of Rule 702.  *See id*.  But critically, the Court did not

---

[1] DPPs also argue that any conclusions regarding why an antitrust agreement *might* not exist and *might* be difficult to enforce are unduly speculative and prejudicial under Rule 403.  Because the Court excludes such opinions as outside the scope of Dr. Zona's report, the Court need not examine this argument.

[2] The Court provided in-depth descriptions of these concepts in its Order Granting Class Certification ("Class Certification Order").  *In re Telescopes Antitrust Litig.*, 348 F.R.D. at 461–65.

Case No.: 5:20-cv-03642-EJD
ORDER GRANTING IN PART AND DEN. IN PART MOTS. TO STRIKE
6

*United States District Court*
*Northern District of California*

make any findings regarding the admissibility of opinions *criticizing* Dr. Zona's models, and DPPs present no authority to support their position that the reliability of methods found to be admissible cannot still be questioned by a competing expert at trial.  While the Court must act as a gatekeeper and determine whether experts meet a threshold standard of reliability, the Court's decision to admit expert testimony does not foreclose all questions of reliability at trial.  *See Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").  In other words, a finding of "reliability" for purposes of Rule 702 does not equate to a finding that the expert's opinion is "correct."  *City of Pomona*, 750 F.3d at 1044 (finding that courts assess "not the correctness of the expert's conclusions but the soundness of his methodology").  The jury will continue examining the reliability of the experts' opinions when weighing the evidence.  Thus, it is entirely appropriate for experts to opine on the reliability of each other's methods, even when the Court finds these opinions met Rule 702's threshold "reliability" requirement for purposes of admissibility.  And Mr. Kaplan does just that.  He does not opine that Dr. Zona's opinions are *inadmissible* in conflict with the Court's finding in *Orion*; he opines that, given the particular facts and evidence in this case, these models yield unreliable and overstated overcharge estimates.  This is entirely appropriate.

### b.    PCE Variables

The Court likewise finds challenges to Mr. Kaplan's opinions on Dr. Zona's failure to use a PCE variable in his regression model similarly unavailing.

Mr. Kaplan opines that Dr. Zona's pooled "before-and-after" regression analysis is flawed because it does not control for the level of demand using a variable for personal consumption expenditures ("PCE").  *See* Kaplan Report ¶¶ 29–37.  DPPs contend this opinion is inadmissible because Mr. Kaplan did not opine that the PCE variable is the *only* way to control for demand in a regression analysis, and he bases his opinion solely on Dr. Zona's use of the PCE variable in *Orion*.  DPPs then go on to defend Dr. Zona's decision to omit the PCE variable here.

The Court finds DPPs' position unconvincing for several reasons.  Mr. Kaplan's opinion

Case No.: 5:20-cv-03642-EJD
ORDER GRANTING IN PART AND DEN. IN PART MOTS. TO STRIKE

United States District Court
Northern District of California

that a regression analysis without the PCE variable is flawed in the context of this case, without also opining that the PCE variable is generally the *only* way to control for demand, is not a contradiction that renders his opinion unreliable.  This is a topic that may appropriately be explored on cross-examination.  It is also entirely appropriate to challenge Dr. Zona's decision to use the PCE variable in *Orion* and not here.  Dr. Zona supported his use of the PCE variable in *Orion* with his own research and various works on econometrics, including those authored by Dr. Rubinfield and Dr. Wooldridge.  *See* Kaplan Report ¶¶ 31, 32.  Dr. Zona may defend his decision at trial, as DPPs do in their brief; but Mr. Kaplan's opinion that these same economic justifications demand Dr. Zona use the PCE variable here is reliable and will be helpful to the jury.

### c.    Pre-2005 Assumptions

The Court also finds the request to strike Mr. Kaplan's criticisms of Dr. Zona's 16.7% pre-2005 overcharge assumption particularly without merit.

DPPs originally argued that Mr. Kaplan fails to support his opinion that there was no price inflation prior to 2005 with evidence, whereas Dr. Zona uses "substantial evidence" of anti-competitive conduct beginning prior to 2005 to adjust the pre-2005 period by 16.7%.  But this argument—in DPPs' own words—is "contrary to law."  In its Order Granting Class Certification ("Class Certification Order"), the Court itself agreed with Mr. Kaplan's critiques and afforded "little, if any" weight to Dr. Zona's pre-2005 overcharge for purposes of class certification, finding that Dr. Zona's assumptions about anti-competitive conduct before the alleged class period "exceed[ed] the scope of DPPs' complaint [and was] untethered to the DPPs theory of liability." *In re Telescopes Antitrust Litig.*, 348 F.R.D. at 475.

Tellingly, after Defendants highlighted this finding, DPPs then spent two sentences in their reply taking the exact opposite position—now characterizing the Court's Class Certification Order as "exclud[ing] Dr. Zona's 16.7% adjustment of pre-2005 prices," therefore rendering Mr. Kaplan's opinion on this adjustment unhelpful to the trier of fact.  Kaplan Reply 11.  However, as the Court made clear in its order, it made no findings regarding admissibility for trial purposes. Nor could it have.  As the Court noted, the Ninth Circuit is clear that courts are not to *exclude*

Case No.: 5:20-cv-03642-EJD
ORDER GRANTING IN PART AND DEN. IN PART MOTS. TO STRIKE
8

United States District Court
Northern District of California

inadmissible evidence in a motion for class certification; they are only permitted to weigh its reliability. *Id.* at 467 ("The Ninth Circuit has held that, 'in evaluating challenged expert testimony in support of class certification, a district court should evaluate admissibility under the standard set forth in Daubert. But admissibility must not be dispositive. Instead, an inquiry into the opinion's ultimate admissibility should go to the weight that evidence is given at the class certification stage.' In line with Ninth Circuit precedent and the series of district court cases that followed, the Court will not exclude any part of Dr. Zona's report due to inadmissibility.") (internal citations omitted). And when explicitly discussing Dr. Zona's 16.7% benchmark, the Court again plainly stated that it "ma[de] no determination as to ultimate admissibility" and "only examine[d] admissibility to assign appropriate weight to the evidence." *Id.* at 470 n.8. The Court may ultimately find Dr. Zona's 16.7% benchmark "inadmissible" under Rule 702 or Rule 403; but as it stands, the Court is baffled as to how DPPs could possibly interpret its order as finding Dr. Zona's opinions "excluded" for purposes of trial.

* * *

Accordingly, the Court **DENIES** DPPs' attempt to strike Mr. Kaplan's critique of Dr. Zona's economic model.

### 3.    Opinions Regarding Market Share Analysis

Finally, DPPs argue that Mr. Kaplan cannot opine there is no reliable data to conduct Dr. Zona's market share analysis because Mr. Kaplan has not attempted to calculate market share himself. *See* Kaplan Report ¶¶ 100, 142–44. They also criticize Mr. Kaplan's assertion that Dr. Zona's market share list excludes over twenty telescope suppliers, arguing that Dr. Zona has demonstrated these twenty companies have only a de minimis impact on market share calculations. *Id.*

The Court is not convinced. Mr. Kaplan opines that Dr. Zona's use of shipping weights to calculate market is flawed because there is no standard weight for telescopes, and there is no way to know how many telescopes were included in the shipments with "mixed products" that Dr. Zona excluded. Given the opinion that there is *no* dependable way to calculate market share, an

Case No.: 5:20-cv-03642-EJD
ORDER GRANTING IN PART AND DEN. IN PART MOTS. TO STRIKE

9

alternative market share calculation would make little sense here.[3]  *See, e.g., Edwards Lifesciences Corp. v. Meril Life Scis. Pvt. Ltd.*, No. 19-CV-06593-HSG, 2021 WL 5407316, at *2 (N.D. Cal. Nov. 18, 2021) (quoting *Pinterest, Inc. v. Pintrips, Inc.,* No. 13-CV-04608-HSG, 2015 WL 2268498, at *1 (N.D. Cal. May 14, 2015) ("[C]hallenging the assumptions of an expert witness' report is a permissible topic of rebuttal testimony.")).  And Mr. Kaplan's opinion that Dr. Zona's report excludes twenty companies is sufficiently supported for purposes of admissibility—Mr. Kaplan gathered this list of companies after he researched and identified firms selling telescopes in the United States that Dr. Zona failed to include in his market share analysis.  *See Internet Specialties W., Inc. v. ISPWest*, No. CV 05-3296 FMC AJWX, 2006 WL 4568796, at *1 (C.D. Cal. Sept. 19, 2006) ("Testimony concerning third-party websites may well be admissible.  Certainly, a qualified expert may rely on information he obtained off the internet, even if hearsay, in forming his opinions.").  Any critiques Dr. Zona may have about these companies having a "de minimis" share in the market is appropriate only for the jury, not the Court.[4]

Accordingly, the Court **DENIES** DPPs' motion to exclude Mr. Kaplan's opinions regarding Dr. Zona's market share analysis.

### 4.    Conclusion Regarding Mr. Kaplan

The Court **GRANTS IN PART** DPPs' motion to exclude Mr. Kaplan's opinions regarding the establishment of an anticompetitive agreement, as those opinions exceed the scope of Dr. Zona's report.  The Court otherwise **DENIES** DPPs' motion, finding Defendants have satisfied their burden to prove the admissibility of Mr. Kaplan's remaining opinions.

### B.    Dr. Hayes

DPPs challenge Dr. Hayes's opinions on: (1) market definition; (2) market share; (3)

---

[3] The Class Certification Order's statement that rebuttal experts must generally do more than simply point to errors without showing how these errors affect the damages calculations does not apply specifically to the opinion that the error lies in the fact that the data does not exist.

[4] Again here, in their reply, DPPs either misunderstand or misrepresent the Court's Class Certification Order.  Kaplan Reply 11.  They argue that, because the Court found Dr. Zona's market share definition reliable for class certification purposes, any critique thereof is categorically inadmissible.  For all the reasons discussed above, the Court rejects this position.

Case No.: 5:20-cv-03642-EJD
ORDER GRANTING IN PART AND DEN. IN PART MOTS. TO STRIKE
10

alternative manufacturers; and (4) the impact of anti-competitive conduct.  The Court ultimately finds Dr. Hayes does not have the expertise required to opine on antitrust economic terms of art such as "market definition" or "market share"; but he may still testify as to topics within his expertise, i.e., basic astronomical telescope technology, telescope optics and common optical configurations, where telescopes are sold, cost drivers, telescope manufacturing, and barriers to entry.

### 1.     Market Definition

First, DPPs argue Dr. Hayes is not qualified to opine on the definition of the relevant antitrust market.  The Court agrees—but this is not an opinion Dr. Hayes offers.

The Ninth Circuit provides that, "[i]n order to opine on issues related to market definition and competition, the Ninth Circuit requires expertise in the area of economics." *AFMS LLC v. United Parcel Serv. Co.*, No. CV105830JGBAJWX, 2014 WL 12515335, at *6 (C.D. Cal. Feb. 5, 2014) (citing *Morgan, Strand, Wheeler & Biggs v. Radiology, Ltd.*, 924 F.2d 1484, 1490 (9th Cir. 1991)).  Dr. Hayes has been transparent about the fact that he is not an economist, and has no training or expertise in the field of economics: "I'm not trained on antitrust matters and I recognize that the term 'market' may be – may be a term of art in this – in this context."  Hayes Dep. 89:20–22, ECF No. 754-9.  Thus, it appears there is consensus that Dr. Hayes may not opine on the antitrust definition of the relevant "market."

Instead of attempting to opine on the telescope "market" as a term of art, however, Dr. Hayes makes clear that he uses the word "market" in the colloquial sense: "Throughout this report, I use the term 'market' as defined by the Oxford dictionary to be, 'An area or arena in which commercial dealings are conducted.' I am not using the term 'market' as a legal term of art. I want to make clear that I am using the term colloquially."  Hayes Report 11 n.3.  He then goes on to describe conduct and patterns that he has observed in the telescope industry, including which telescopes consumers are purchasing from which U.S. manufacturer.  The Court finds Dr. Hayes has the required knowledge and experience to make these opinions as an optical engineer, inventor, and amateur astronomer with over twenty years designing, producing, selling, and

Case No.: 5:20-cv-03642-EJD
ORDER GRANTING IN PART AND DEN. IN PART MOTS. TO STRIKE
11

installing precision optical metrology equipment at facilities around the world.  *See Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004) ("The reliability of non-scientific testimony . . . depends heavily on the *knowledge and experience* of the expert, rather than the methodology or theory behind it."); *Murray v. S. Route Mar. SA*, 870 F.3d 915, 922 (9th Cir. 2017) (emphasizing the flexible, fit-and-reliability-focused test for expert testimony).  So long as Dr. Hayes's testimony at trial stays within the boundaries of the specific antitrust market alleged here, the Court sees no reason for exclusion of these opinions.[5]

Accordingly, the Court **DENIES** DPPs' motion to exclude opinions regarding the colloquial telescope "market," as used in Dr. Hayes's report.

### 2. Market Share

Next, DPPs argue the Court should exclude Dr. Hayes's three opinions relevant to market share: (1) market share calculations; (2) his Astrobin.com ("Astrobin") survey; and (3) and his Stock Keeping Unit ("SKU") analysis.  The Court will examine each in turn.

### a. Calculating Market Share

DPPs similarly argue that Dr. Hayes does not have the expertise to opine on technical antitrust matters such as calculating market share.  But again here, he does not provide such an opinion.  When asked how he would calculate market share, Dr. Hayes testified that it is "outside [his] area of expertise" because he is not "an economist"—and so he "avoided talking about market share."  Hayes Dep. 143:03–07.

Dr. Hayes is permitted, however, to form opinions on the diversity of market participants and products based on his knowledge and experience in the telescope industry to support his conclusion that the telescope market is not as consolidated as DPPs represent.  This real-world market behavior is relevant, based reliably on his experience, and will be helpful to the jury.  *See Primiano*, 598 F.3d at 564–65; *see also Kumho Tire,* 526 U.S. at 156 ("[N]o one denies that an

---

[5] Should Dr. Hayes offer opinions on products or manufacturers outside this scope, DPPs may raise further objections in motions in limine and at trial.  For example, arguments regarding the inclusion of Planewave have not been fully developed in this briefing and would be appropriate for a motion in limine.

Case No.: 5:20-cv-03642-EJD
ORDER GRANTING IN PART AND DEN. IN PART MOTS. TO STRIKE
12

expert might draw a conclusion from a set of observations based on extensive and specialized experience."). And these opinions differ from the "back-door" opinion excluded in *Droplets, Inc. v. Yahoo! Inc.*, No. 12-CV-03733-JST, 2021 WL 11701485 (N.D. Cal. Nov. 29, 2021). There, an expert on e-commerce strategy attempted to offer his opinion on how quickly Yahoo!'s pages load without having any expertise in the loading speed of webpages. *Id.* at 2. The court excluded this opinion and rejected the argument that his personal use of Yahoo's websites and his experience with websites for ecommerce clients are sufficient bases for his statement. *Id.* Instead, the court found that the expert's "'test' [was] one that any lay person can perform," and therefore his conclusion required no expertise. *Id.* Whereas here, Dr. Hayes's identification of the range and diversity of telescope brands and manufacturers is not knowledge possessed by a lay person, and his identification of market participants and products is sufficiently tied to his expertise in telescopes and observations made in the telescope industry.

### b. Astrobin Survey of International Astrophotographers

Next, DPPs urge the Court to strike all references to Dr. Hayes's Astrobin survey. On this point, the Court agrees.

Dr. Hayes conducted an informal survey of international astrophotographers on Astrobin.com. *See* Hayes Report ¶¶ 48–51. Dr. Hayes describes Astrobin as "a well-known, popular website dedicated to hosting astro-images taken by enthusiasts from all over the world [whereby] most participants are active astro-imagers." *Id.* ¶ 49. To conduct his survey, Dr. Hayes posted the following question on a generic equipment discussion page: "I'm curious how many telescopes imagers typically own. I personally run two in Chile but I also have 3 other smaller scopes kicking around my shop for visual use. If you've got more than one, what are they?" *Id.*, Ex. 6. He left the poll open for twelve days and received responses from 295 users, then compiled data on the telescope brands of telescopes users identified and how many times users mentioned each brand. *Id.* ¶¶ 49, 50, Table 1. Dr. Hayes concluded from this survey that, "for dedicated amateur astronomers, there is a wide range of telescope options available and that nearly 84% of the time customers choose brands other than Celestron." *Id.* ¶ 98.

Case No.: 5:20-cv-03642-EJD
ORDER GRANTING IN PART AND DEN. IN PART MOTS. TO STRIKE
13

Given the strong possibility that a survey endorsed by an expert witness could confuse a jury, the proponent of a survey must prove that it is conducted according to generally accepted principles. *See, e.g., Reinsdorf v. Sketchers, U.S.A.*, 922 F. Supp. 2d 866, 878 (C.D. Cal. 2013) (citing *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1263 (9th Cir. 2001) ("The first step in the court's analysis of any survey, however, is to determine whether the survey is admissible, relevant, and conducted according to accepted principles.")). "The court must, therefore, determine whether a preponderance of the evidence establishes that the reasoning or methodology underlying expert testimony is scientifically valid. Unless survey evidence is conducted according to accepted principles, it is not admissible in the first instance." *Id.* (internal citation omitted) (citing *Daubert*, 509 U.S. at 593; *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1036 (9th Cir. 2010)). The methodology for constructing an admissible survey is set forth in the Manual for Complex Litigation (Fourth) § 11.493. To be admissible, among other requirements, "[t]he sampling methods used must conform to generally recognized statistical standards. Relevant factors include whether . . . the population was properly chosen and defined." 11.493. Sampling/Opinion Surveys, Ann. Manual Complex Lit. § 11.493 (4th ed.)

The Court finds this survey lacks relevance because the survey participants are not reflective of the class. Astrobin is a website for dedicated amateur astrophotographers around the world. This is notable because the Class here consists only of purchasers within the United States, and there is a difference between astrophotographers and other telescope purchasers in the Class. According to Dr. Hayes, entry-level telescopes may not have astrophotography capabilities. Hayes Dep. 163:25–164:18. Dr. Hayes estimates that the number of amateurs who buy telescopes for astronomical photography "might only be 20,000-50,000 worldwide," perhaps because it is a costly hobby "requiring a minimum investment of $4,000" to purchase the necessary equipment. Hayes Report ¶ 48. In other words, the population of astrophotographers who visit Astrobin are not necessarily the amateur telescope users in the Class. And of those amateur astronomers that visit Astrobin, Dr. Hayes believes only "dedicated imagers" would likely respond to the survey.

Case No.: 5:20-cv-03642-EJD
ORDER GRANTING IN PART AND DEN. IN PART MOTS. TO STRIKE
14

Hayes Dep. 163:5–14. This means that purchasers "at the lowest level" are likely excluded from Dr. Hayes's survey, i.e., people who buy telescopes for gifts and special events, as well as those only casually interested in imaging. *Id.* at 164:10–165:1.

Given the deficiencies in the sample population and the likelihood of juror confusion inherent in introducing an expert-endorsed survey, the Court finds exclusion under Rule 702 appropriate.

### c.      SKU Analysis

Finally, DPPs critique Dr. Hayes's SKU analysis, where he surveyed the telescope SKUs listed on major telescope distribution websites, as well as Amazon and Walmart. The Court's analysis here is made simple by the fact that Defendants did not oppose this request. Defendants only discuss SKUs twice in their opposition, both times criticizing DPPs' expert for *their* use of SKU data. Hayes Opp'n 2, 11. Given that Defendants ultimately carry to burden to prove the admissibility of their experts' opinions, their silence on this matter is fatal. The Court therefore excludes from trial references to Dr. Hayes's SKU analysis.

\* \* \*

Accordingly, the Court **GRANTS** DPPs' motion to exclude references to Dr. Hayes's Astrobin survey and SKU analysis, but **DENIES** the request to strike experience-based opinions relevant to market share.

### 3.      Alternative manufacturers

Next, DPPs seek to exclude a list of over sixty manufacturers that Dr. Hayes believes compete with Celestron in terms of price, quality, and value. They argue the list is unreliable because Hayes compiled it "by searching the web," conceded he was only familiar with at most half of the suppliers prior to his search, and did not personally test the quality of the products from each supplier.

The Court finds Dr. Hayes's use of this list permissible. The list is not some form of disguised economics opinion. It is a non-exhaustive collection of telescope suppliers that Dr. Hayes compiled based on his personal observations of publicly available data, which he uses to

Case No.: 5:20-cv-03642-EJD
ORDER GRANTING IN PART AND DEN. IN PART MOTS. TO STRIKE

illustrate his greater analysis and overview of the astronomical telescope industry.  In other words, Dr. Hayes' list is a factual compilation—not a scientific conclusion—appropriately offered to support his real-world understanding of industry diversity and consumer choices.  As the Court noted above, it is clearly established in this district that expert opinions can be based upon publicly available materials such as the ones relied upon by Dr. Hayes, including those found through an internet search.  *See Internet Specialties*,  2006 WL 4568796, at *1 ("Testimony concerning third-party websites may well be admissible. Certainly, a qualified expert may rely on information he obtained off the internet, even if hearsay, in forming his opinions."); *see also Skinner v. Tuscan, Inc.*, No. CV-18-00319-TUC-RCC, 2020 WL 5946897, at *10 (D. Ariz. Oct. 7, 2020) (concluding an expert's "internet search constituted specialized market research that cannot be performed by a layperson" and was relevant as to be weighed by the fact-finder); *see also Alfa Corp. v. OAO Alfa Bank*, 475 F. Supp. 2d 357, 362 (S.D.N.Y. 2007).   This comports with Rule 703, which clarifies that "[a]n expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted." Fed. R. Evid. 703.  The Court also notes that internet-based information about the breadth of telescope manufacturers in the market is not only permissible, but it is also particularly relevant here to what consumers can find when searching for a telescope online.

DPPs may of course cross-examine Dr. Hayes on the issues highlighted in their motion, but these opinions are not subject to exclusion under *Daubert*.[6]  The Court therefore **DENIES** DPPs' motion to strike Dr. Hayes's list of alternative manufactures.

### 4.      Impact of Anti-Competitive Conduct

Finally, DPPs seek to exclude Dr. Hayes's testimony about the impact of anticompetitive conduct in the telescope market for three reasons: (1) he is not an expert on the economic impact of antitrust behavior, and (2) he did not review any evidence beyond the operative complaint.  The

---

[6] To the extent DPPs argue specific companies on this list do not operate in the market at issue here, they may raise these issues in their motions in limine.

<div style="writing-mode: vertical-rl">United States District Court
Northern District of California</div>

Court will address each argument in turn.

### a.　Economic Expertise

DPPs rely heavily on *Orion* to argue that Dr. Hayes is unqualified to offer any opinion on the impact of anti-competitive conduct in the telescope industry. But these circumstances are distinguishable from those the Court examined in *Orion*. There, the Court excluded the defendants' expert, Mr. Redman, only to the extent that he sought to rebut Dr. Zona's specific economic analyses. *Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.*, No. 5:16-CV-06370-EJD, 2019 WL 5269018, at *1 (N.D. Cal. Oct. 17, 2019), *aff'd*, 20 F.4th 466 (9th Cir. 2021). Mr. Redman was an expert in financial matters, had a degree in management, and was a certified fraud examiner. But, without any training in economics or accounting, Mr. Redman attempted to rebut Dr. Zona's regression models. *Id.* ("[Mr. Redman] criticizes Dr. Zona for not using certain, case-specific data to calculate damages for overcharges. But, Mr. Redman does not appear to understand the methods and models that Dr. Zona used.") (internal citation omitted). The Court found this subject matter clearly outside of Mr. Redman's expertise, and the Ninth Circuit agreed, finding: "Mr. Redman admitted that he did not grasp the meaning of the term 'pass through' as used by Dr. Zona. He also conceded that he was unfamiliar with the private cartel data that Dr. Zona used to estimate Orion's overcharges. In addition, Mr. Redman had no experience with antitrust damages and had never calculated elasticity or overcharges in antitrust contexts." *Optronic Techs.*, 20 F.4th 466 at 478.

Here, Dr. Hayes is not rebutting Dr. Zona's economic models—that is the purpose of Mr. Kaplan, as discussed above. Instead, DPPs seek to exclude Dr. Hayes's opinion that: (1) anti-competitive conduct in the telescopes industry would have no effect on pricing given the large, diverse, competitive market; (2) the number of competitors in the telescope industry creates virtually no advantage for anti-competitive conduct; (3) the number of product options for amateur astronomers makes it difficult to see how the anti-competitive behavior might impact them; (4) the Schmidt Cassegrain Telescope ("SCT") optical configuration of a Celestron or Meade telescope is not a single determinative factor for a buyer to choose an SCT product over another type of

Case No.: 5:20-cv-03642-EJD
ORDER GRANTING IN PART AND DEN. IN PART MOTS. TO STRIKE

United States District Court
Northern District of California

telescope; and (5) demand from enthusiasts willing to buy new products, along with the wide range of products on the market, should make it easy for dealers to stock their shelves in the face of shifting suppliers and prices.   Hayes Mot. 23 (citing Hayes Report ¶¶ 95–100).  These are not opinions that criticize Dr. Zona's regression models or otherwise offer opinions requiring a degree in economics.  Instead, these opinions represent real-world observations made in the telescope industry over the course of Dr. Hayes's two decades of experience.  Dr. Hayes may provide these opinions to the jury as long as he does not veer outside the scope of this experience.

### b.    Reliance on the Complaint

DPPs also argue that Dr. Hayes's reliance on the complaint alone, rather than evidence related to Defendants' conduct beyond the pleading, violates Rule 702(b)'s requirement that an expert's testimony be "based on sufficient facts or data."  And regardless, they argue that Dr. Hayes has an insufficient understanding of the facts in the complaint.

The Court finds these arguments also unpersuasive.  An examination of evidence beyond the anticompetitive conduct alleged is not necessary in this specific context—one would assume the evidence of anti-competitive conduct that DPPs reference would only prove the facts Dr. Hayes used to form his opinion.  The Court also finds Dr. Hayes has sufficient knowledge of the facts in the complaint to form his opinion.  Again here, DPPs mischaracterize the record.  DPPs represent that "Dr. Hayes was not aware that Celestron owns Sky-Watcher, or of 'any relationship between Sky-Watcher and Synta and Celestron.'"  Hayes Mot. 24 (quoting Hayes Dep. 201:03–05).  But Dr. Hayes' testimony clearly states that he was not aware of the alleged relationship between Celestron and Sky-Watcher *while working at Celestron in 2014*.  There is no suggestion in the testimony that Dr. Hayes did not know of this relationship at the time he formed his expert opinions in this case.  The Court also finds that Dr. Hayes's in-depth knowledge or lack thereof regarding Celestron's attempted merger with Meade is of little consequence.  Dr. Hayes's opinion that the market is too heterogeneous and competitive for one or two distributors to have any meaningful level of market share or market power is not dependent on a comprehensive understanding of the allegations pertaining to the Meade acquisition.

Case No.: 5:20-cv-03642-EJD
ORDER GRANTING IN PART AND DEN. IN PART MOTS. TO STRIKE
18

* * *

Accordingly, the Court **DENIES** DPPs' request to exclude Dr. Hayes's opinions regarding the impact of Defendants' alleged anticompetitive conduct.

### 5.    Conclusion Regarding Dr. Hayes

The Court **GRANTS** DPPs' motion to exclude Dr. Hayes's Astrobin survey and the SKU analysis.  The Court otherwise **DENIES** DPPs' motion, finding Defendants have satisfied their burden to prove the admissibility of Dr. Hayes's remaining opinions.

## IV.    CONCLUSION

Based on the foregoing, DPPs' motions to exclude the expert opinions of Mr. Kaplan and Dr. Hayes are both **GRANTED IN PART** and **DENIED IN PART**.

**IT IS SO ORDERED.**

Dated: March 17, 2026

EDWARD J. DAVILA
United States District Judge

United States District Court
Northern District of California

Case No.: 5:20-cv-03642-EJD
ORDER GRANTING IN PART AND DEN. IN PART MOTS. TO STRIKE