UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE TELESCOPES ANTITRUST LITIGATION | Case No.  5:20-cv-03642-EJD<br><br>**ORDER GRANTING IN PART AND DEFERRING IN PART MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 771, 783 |

Before the Court are two motions for summary judgment filed by two groups of Defendants the Court will refer to as "Celestron Defendants" and "Celestron Employee Defendants" (collectively, "Defendants").  Celestron Defs. Mot., ECF No. 771; Opp'n to Celestron Defs. Mot., ECF No. 779-2; Reply in Supp. of Celestron Defs. Mot., ECF No. 784; Celestron Employee Defs. Mot., ECF No. 783; Opp'n to Celestron Employee Defs. Mot., ECF No. 789-2; Reply in Supp. of Celestron Employee Defs. Mot., ECF No. 797.

On November 19, 2025, the Court held a hearing on these motions and heard oral arguments from all parties.  ECF No. 834.  For the reasons explained below, the Court **GRANTS IN PART** and **DEFERS IN PART** both motions.

I.    **BACKGROUND**

Given the Court's prior orders, the Court assumes the reader is familiar with the facts of this case and will address only those relevant to the present Order.  *See* ECF Nos. 746, 731, 596, 589, 539, 502, 173.

Defendants present several grounds for summary judgment on DPPs' claims under the Sherman Act §§ 1 and 2, Clayton Act § 7, Cartwright Act, and California Business & Professions

Case No.: 5:20-cv-03642-EJD
ORDER GRANTING IN PART AND DEFERRING IN PART MOT. FOR SUMM. J.
1

Code §§ 16700, 17200.  This Order addresses only one—the statute of limitations for claims arising out Ningbo Sunny's 2013 acquisition of Meade ("2013 Meade Acquisition").

DPPs filed this case on June 1, 2020.  Compl., ECF No. 1.  They allege that Defendants' anticompetitive conspiracy and monopolization of the telescope market began in 2005, and part of the conduct underlying DPPs' claims includes the 2013 Meade Acquisition.  Fourth Am. Compl. 24, ECF No. 495.  The statute of limitations for all claims alleged here is four years.  *See* First Order Granting in Part and Den. in Part Defs.' Mot. to Dismiss ("First MTD Order"), ECF No. 173; Second Order Granting in Part and Den. in Part Mot. to Dismiss ("Second MTD Order"), ECF No. 539.

In its prior orders on two motions to dismiss, the Court found DPPs sufficiently alleged facts to toll the statutes of limitations as to claims arising out of conduct in 2013 under the fraudulent concealment doctrine.  First MTD Order 7–14; Second MTD Order 17–20.  Defendants now move for a finding that DPPs failed to present *evidence* to support their allegations that claims based specifically on the 2013 Meade Acquisition were tolled.

## II.    LEGAL STANDARD

Courts may grant summary judgment on a claim or defense only if the moving party shows "there is no genuine dispute as to any material fact and [that it] is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  There is a genuine dispute when enough evidence exists in the record for a reasonable fact finder to decide in favor of the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  And a fact is material when it might affect the outcome of the case.  *Id.*  When evaluating whether a moving party has satisfied this standard, courts view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor.  *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011).  The moving party bears the initial burden of showing that there is no genuine dispute of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party would not bear the burden of persuasion at trial, the moving party may demonstrate the absence of a genuine issue by either negating or showing a lack of evidence supporting an essential element of the nonmoving party's

United States District Court
Northern District of California

claim. *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If the moving party meets that burden, the opposing party must produce affirmative evidence "from which a jury could find in [its] favor" to defeat summary judgment. *F.T.C. v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009).

## III.   DISCUSSION

This Order addresses only Defendants' statute of limitations arguments regarding the 2013 Meade Acquisition. Celestron Defs. Mot. 32–34; Celestron Employee Defs. Mot. 10–15. The Court defers decision on the remaining issues until further briefing from the parties.

DPPs allege violations of the Sherman Act §§ 1 and 2, Clayton Act § 7, Cartwright Act, and California Business & Professions Code §§ 16700, 17200—all of which are subject to a four-year statute of limitations. *Garrison v. Oracle Corp.*, 159 F. Supp. 3d 1044, 1062–85 (N.D. Cal. 2016) (analyzing limitations period of these same claims). "Ordinarily, '[a] cause of action in antitrust accrues each time a plaintiff is injured by an act of the defendant and the statute of limitations runs from the commission of the act.'" *Intel Corp. v. Fortress Inv. Grp. LLC*, No. 19-CV-07651-EMC, 2020 WL 6390499, at *19 (N.D. Cal. July 15, 2020) (quoting *Oliver v. SD-3C LLC*, 751 F.3d 1081, 1086 (9th Cir. 2014); *see also Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1050 (8th Cir. 2000) ("An antitrust cause of action generally accrues and the statute begins to run when a defendant commits an act that injures a plaintiff's business.") (internal quotation marks omitted).

Here, DPPs' claims rely in part on the 2013 Meade Acquisition, but they filed this lawsuit on June 1, 2020, seven years later. Defendants argue there is insufficient evidence in the record to toll the statute of limitations as to this acquisition under either: (1) the continuing-conspiracy doctrine, or (2) the fraudulent concealment doctrine.

### A.   Continuing-Conspiracy Doctrine

"[I]n the context of a continuing conspiracy to violate the antitrust laws, . . . each time a plaintiff is injured by an act of the defendant[] a cause of action accrues to him to recover the damages caused by that act." *Oliver,* 751 F.3d at 1086 (internal quotation marks omitted) (*quoting*

Case No.: 5:20-cv-03642-EJD
ORDER GRANTING IN PART AND DEFERRING IN PART MOT. FOR SUMM. J.

United States District Court
Northern District of California

*Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 401 U.S. 321, 338 (1971)). "[A]s to those damages, the statute of limitations runs from the commission of the act." *Id.* (internal quotation marks omitted). To restart the statute of limitations, there must be a new overt act that: (1) is "new and independent . . . [and] not merely a reaffirmation of a previous act," and (2) "inflict[s] new and accumulating injury on the plaintiff." *Id.* (citing *Pace Indus., Inc. v. Three Phoenix Co.*, 813 F.2d 234, 238 (9th Cir. 1987)). "[T]he Supreme Court and federal appellate courts have recognized that each time a defendant sells its price-fixed product, the sale constitutes a new overt act causing injury to the purchaser and the statute of limitations runs from the date of the act." *Id.*

Defendants first argue that the 2013 Meade Acquisition was a single, closed-ended deal completed well outside the statute of limitations, and the continuing conspiracy doctrine does not apply to mergers and acquisitions such as this. The Court agrees—and given their silence, it appears DPPs agree as well. This Court is in accord with others in the Ninth Circuit that have found "[t]he continuing violation doctrine does not make sense in the context of anticompetitive mergers." *Reveal Chat Holdco, LLC v. Facebook, Inc.*, 471 F. Supp. 3d 981, 994 (N.D. Cal. 2020) (citing *Midwestern Machinery Co. v. Nw. Airlines, Inc.*, 392 F.3d 265, 271 (8th Cir. 2004)). The distinction is that "[u]nlike a conspiracy or the maintaining of a monopoly, a merger is a discrete act, not an ongoing scheme." *Midwestern Machinery Co.*, 392 F.3d at 271. "Once a merger is completed, there is no continuing violation possible . . . that would justify extending the statute of limitations beyond four years." *Id.* Otherwise, mergers could be challenged indefinitely, effectively rendering the statute of limitations meaningless.

The Court therefore finds the continuing-conspiracy doctrine does not save DPPs' claims regarding the 2013 Meade Acquisition.

### B.    Fraudulent Concealment Doctrine

The Court previously held that, "to the extent Plaintiffs seek to recover damages for conduct that occurred before June 1, 2016, Plaintiffs must establish that the applicable statutes of limitations were tolled." First MTD Order 9–10. "A statute of limitations may be tolled if the defendant fraudulently concealed the existence of a cause of action in such a way that the plaintiff,

Case No.: 5:20-cv-03642-EJD
ORDER GRANTING IN PART AND DEFERRING IN PART MOT. FOR SUMM. J.
4

acting as a reasonable person, did not know of its existence." *Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1060 (9th Cir. 2012) (citation omitted). "The plaintiff carries the burden of pleading and proving fraudulent concealment . . . " *Id.* (internal brackets and quotation marks omitted) (quoting *Conmar Corp. v. Mitsui & Co. (U.S.A.)*, 858 F.2d 499, 502 (9th Cir. 1988)). To invoke this doctrine, a plaintiff must show that "the defendant used fraudulent means to keep the plaintiff unaware of his cause of action, and also that the plaintiff was, in fact, ignorant of the existence of his cause of action." *Id.* A district court may decide the issue of fraudulent concealment on a motion for summary judgment. *See id.*; *see also Volk v. D.A. Davidson & Co.*, 816 F.2d 1406, 1417 (9th Cir. 1987).

Given that DPPs carry the ultimate burden to prove fraudulent concealment at trial, Defendants may prevail on summary judgment by showing there is no evidence in the record to prove that: (1) Defendants intentionally misled them, and (2) DPPs "had neither actual nor constructive knowledge of the facts giving rise to its claim despite its diligence in trying to uncover those facts." *Hexcel*, 681 F.3d at 1060 (emphasis removed); *Nissan Fire*, 210 F.3d at 1102 (discussing moving parties' burdens on summary judgment). DPPs spend a great deal of time arguing that Defendants used fraudulent means to conceal their conduct; but they are noticeably silent on the second element—lack of knowledge. This is fatal.

As Defendants highlight, there is no evidence in the record that class members were actually unaware of their causes of action within the four-year statute of limitations. DPPs argue in their briefing that they "were justifiably ignorant of the concealed wrongdoing that made the [2013 Meade Acquisition] a violation of antitrust law," but they provide no evidence in support. Opp'n to Celestron Employee Defs. Mot. 24. And their oral arguments followed suit, with counsel repeatedly highlighting evidence of fraudulent concealment with no reference to evidence regarding knowledge.

Underscoring this apparent lack of evidence, the Court afforded DPPs at least three opportunities to identify proof of a lack of knowledge, but each time DPPs failed to meaningfully engage with the question. *See* 11/19/2025 Hearing Tr. ("Tr.") 19–22, ECF No. 837.

Case No.: 5:20-cv-03642-EJD
ORDER GRANTING IN PART AND DEFERRING IN PART MOT. FOR SUMM. J.

United States District Court
Northern District of California

When the Court first queried DPPs on evidence regarding a lack of knowledge, DPPs responded by reciting evidence of affirmative misleading acts.  Tr. 19:8–20:10. However, as discussed above, this evidence is appropriate when considering the first element, but it is of no relevance to the second.

The next time the Court re-directed DPPs attention to the knowledge issue, they argued that DPPs gained knowledge of Defendants' conduct the same "way anybody would get knowledge[,] . . . from the public filing in November 2016" of *Orion*.  Tr. 20:11–17.  This general contention offers no specific evidence to meet DPPs' burden of showing they "had *neither actual nor constructive knowledge* of the facts giving rise to its claim despite its diligence in trying to uncover those facts."  *Hexcel*, 681 F.3d at 1060 (emphasis in original).

Finally, after the Court asked DPPs for a third time whether they had a response to Defendants' argument regarding evidence of actual knowledge, DPPs suggested that "[i]t's not our burden."  Tr. 22:4–7 ("It's not our burden to -- this was concealed from them, they had no way of knowing, that is our point.").  This is incorrect; the Ninth Circuit has plainly held that DPPs "carr[y] the burden of pleading and proving fraudulent concealment."  *Hexcel*, 681 F.3d at 1060 (internal quotation marks omitted).

The Court acknowledges that there may be few ways to prove lack of knowledge in a class action; but as Defendants highlighted during oral argument, possible forms of proof include a declaration, affidavit, or deposition testimony from class representatives attesting to their lack of knowledge.  *See, e.g., Hexcel*, 681 F.3d 1055 (class members presenting declarations attesting to their lack of knowledge but court discrediting the declarations because they were unreliable).  As it stands, a reasonable jury has no evidence to find that DPPs did not have actual knowledge of their 2013 Meade Acquisition claims within the statute of limitations.

But further, the Court also notes that Defendants have presented strong evidence to show that DPPs had at least constrictive knowledge of their claims within the statute of limitations.

"[A] plaintiff is deemed to have had constructive knowledge if it had enough information to warrant an investigation which, if reasonably diligent, would have led to discovery of the

Case No.: 5:20-cv-03642-EJD
ORDER GRANTING IN PART AND DEFERRING IN PART MOT. FOR SUMM. J.

6

United States District Court
Northern District of California

fraud." *Beneficial Standard Life Ins. Co. v. Madariaga*, 851 F.2d 271, 275 (9th Cir. 1988). "It is enough that the plaintiff should have been alerted to facts that, following duly diligent inquiry, could have advised it of its claim." *Hexcel Corp.*, 681 F.3d at 1060 (cleaned up).

Here, Defendants present a 2015 demand letter and draft complaint sent by DPPs' class counsel, on behalf of other clients, to the defendants in the *Orion* case. Celestron Employee Defs. Mot., Ex. 30, ECF No. 783-31. In that letter, counsel alleged similar conspiracy and monopolization claims based on the 2013 Meade Acquisition. *Id.* While counsel's prior knowledge of claims on behalf of other clients is not imputed to the class here, this letter still carries relevance because it shows counsel formed these claims largely using publicly available facts. For example, counsel cited to the public fact of the acquisition, SEC filings, Lupica leaving Celestron to become the CEO of Meade, other officers joining Celestron from Meade, and claims that an immediate spike in prices resulted from Meade and Celestron no longer competing. *Id.* Separate from the letter, there is also evidence that a class member Astronomica questioned Celestron on why Lupica signed an SEC form on behalf of Ningbo Sunny in August 2018. Opp'n to Celestron Employee Defs. Mot., Ex. 11, ECF No. 805-4 ("I see that Joe Lupica is the one who signed the latest Meade deal as the authorized signatory of Sunny Optics. The plot thickens."). In response to this email, some Defendants engaged in an internal conversation about how "[t]he cat is officially out of the bag" because Astronomica must have "read the Schedule 13D that Joe signed for Sunny." *Id.* If class counsel's client in *Orion* could reach the conclusion that the 2013 Meade Acquisition formed their claims, and at least one class member saw Lupica's involvement in Ningbo Sunny as "thicken[ing]" "the plot," that presents strong evidence that DPPs were on constructive notice of their claims at that time as well.

Accordingly, the Court **GRANTS** Defendants' motion for judgment on claims regarding the 2013 Meade Acquisition.

### C.    Remaining Arguments

This Court's finding that the statute of limitations precludes claims based on the 2013 Meade Acquisition does not end its inquiry. DPPs plead other allegations of anticompetitive

Case No.: 5:20-cv-03642-EJD
ORDER GRANTING IN PART AND DEFERRING IN PART MOT. FOR SUMM. J.

conduct and monopolization, and Defendants raise other arguments for summary judgment on each claim. However, before the Court continues its examination of Defendants' motions, it will provide the parties with the opportunity to be heard on the impact of this Order.

Specifically, the parties may address how the Court's finding that the statute of limitations precludes claims regarding the 2013 Meade Acquisition impacts DPPs' claims and Defendants' summary judgment arguments, if at all. The Court is particularly interested in whether this Order impacts the evidence underlying Sherman Act § 2 claims against Celestron Employee Defendants, *see* Celestron Employee Mot. 21 ("DPPs allege all three [Sherman Act § 2 antitrust violations] against the Celestron Employees premised on the Meade acquisition, but all three fail for various reasons."); as well as the evidence of Anderson and Lupica's involvement in the Sherman Act § 1 conspiracy, *see, e.g.,* Opp'n to Celestron Employee Defs. Mot., Exs. 3, 11, 12, 28, 41–44, 49, 59. The parties may also bring to the Court's attention other claims and arguments they believe are impacted by this Order beyond those identified by the Court.

DPPs and Defendants shall file supplemental briefs not to exceed 10 pages each addressing the impact of this Order on DPPs' claims by **4:00 p.m.** on **April 2, 2026**.[1] The parties' supplemental briefing shall not re-litigate the issues decided in this Order.

## IV.    CONCLUSION

Based on the foregoing, the Court **GRANTS IN PART** and **DEFERS IN PART** Defendants' motions pending further briefing.

**IT IS SO ORDERED.**

Dated: March 23, 2026

EDWARD J. DAVILA
United States District Judge

---

[1] Defendants shall file one omnibus brief.

Case No.: 5:20-cv-03642-EJD
ORDER GRANTING IN PART AND DEFERRING IN PART MOT. FOR SUMM. J.
8