Eric P. Enson (State Bar No. 204447)
    eenson@crowell.com
CROWELL & MORING LLP
515 South Flower Street, 40th Floor
Los Angeles, CA 90071
Telephone:  213.622.4750
Facsimile:   213.622.2690

*Attorneys for Defendants Corey Lee, Joseph Lupica,
and Dave Anderson*

[Additional Counsel on Signature Page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| IN RE TELESCOPES ANTITRUST LITIGATION | Case No. 5:20-cv-03642-EJD |
| | *Assigned to: Hon. Edward J. Davila* |
| THIS DOCUMENT RELATES TO: | **DEFENDANTS' NOTICE OF MOTION AND MOTION TO DECERTIFY CLASS; MEMORANDUM OF POINTS AND AUTHORITIES** |
| AURORA ASTRO PRODUCTS, LLC, PIONEER CYCLING & FITNESS, LLP; and those similarly situated, | |
| Plaintiffs, | |
| v. | |
| CELESTRON ACQUISITION, LLC, SUZHOU SYNTA OPTICAL TECHNOLOGY CO., LTD., SYNTA CANADA INT'L ENTERPRISES LTD., SW TECHNOLOGY CORP., OLIVON MANUFACTURING CO. LTD., OLIVON USA, LLC, NANTONG SCHMIDT OPTOELECTRICAL TECHNOLOGY CO. LTD., NINGBO SUNNY ELECTRONIC CO., LTD., PACIFIC TELESCOPE CORP., COREY LEE, DAVID SHEN, SYLVIA SHEN, JACK CHEN, JEAN SHEN, JOSEPH LUPICA, DAVE ANDERSON, LAURENCE HUEN, and DOES 1-50, | Compl. Filed:      June 1, 2020<br><br>Hearing Date:    July 23, 2026 |
| Defendants. | |

CROWELL
& MORING LLP
ATTORNEYS AT LAW

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on July 23, 2026 at 9:00 a.m., or as soon thereafter as counsel may be heard, in the courtroom of the Honorable Edward J. Davila, located in the United States Courthouse, Northern District of California, 280 South 1st Street, San Jose, California 95113, Courtroom 4, Defendants Corey Lee, Jospeh Lupica, Dave Anderson, Celestron Acquisition, LLC, Suzhou Synta Optical Technology Co., Ltd., Synta Canada Int'l Enterprises Ltd., SW Technology Corp., Olivon Manufacturing Co. Ltd., Olivon USA, LLC, Nantong Schmidt Optoelectrical Technology Co. Ltd., Pacific Telescope Corp., David Shen, Sylvia Shen, Jack Chen, Jean Shen, and Laurence Huen ("Defendants") will and hereby do move this Court to decertify the Direct Purchaser Plaintiff ("DPP") class on all claims under Federal Rule of Civil Procedure 23.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the files and records in this action, and on such other written and oral argument as may be presented to the Court.

Dated: April 29, 2026

RESPECTFULLY SUBMITTED,

CROWELL & MORING LLP

By: */s/ Eric P. Enson*
Eric P. Enson

*Attorneys for Defendants*
Corey Lee, Joseph Lupica and Dave Anderson

By: */s/ Jeffrey E. Faucette*
Jeffrey E. Faucette (SBN: 193066)
Martin R. Glick (SBN: 40187)
SKAGGS FAUCETTE LLP
505 Montgomery Street, 11th Floor
San Francisco, CA 94111
jeff@skaggsfaucette.com
marty@skaggsfaucette.com

*Attorneys for Defendants*

Sylvia Shen, Suzhou Synta Optical Technology Co., Ltd., SW Technology Corp., Nantong Schmidt Opto-Electrical Technology Co. Ltd., Synta Technology Corp., Synta Canada Int'l Enterprises Ltd., David Shen, and Jack Chen

-1-

CROWELL
& MORING LLP
ATTORNEYS AT LAW

By: */s/ Christopher L. Frost*

Christopher L. Frost (SBN: 200336)
John Maatta (SBN: 83683)
Kristopher Rossfeld (SBN: 234288)
Lawrence Liu (SBN: 312115)
FROST LLP
10960 Wilshire Boulevard, Suite 1260
Los Angeles, CA 90024
Telephone: (424) 254-0441
chris@frostllp.com
john@frostllp.com
josh@frostllp.com
lawrence@frostllp.com

By: */s/ Shauna A. Izadi*

Shauna A. Izadi (SBN: 24041170)
IZADI LEGAL GROUP, PLLC
13155 Noel Road, Suite 900
Dallas, TX 75240
Telephone: (972) 918-5134
sizadi@izadilegal.com

*Attorneys for Defendants*

Celestron Acquisition, LLC, Suzhou Synta Optical Technology Co., Ltd., Synta Canada Int'l Enterprises Ltd., SW Technology Corp., Olivon Manufacturing Co. Ltd., Olivon USA, LLC, Nantong Schmidt Opto-Electrical Technology Co. Ltd., Pacific Telescope Corp., David Shen, Sylvia Shen, Jack Chen, Jean Shen, and Laurence Huen

-2-

CROWELL
& MORING LLP
ATTORNEYS AT LAW

## **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................ 1

INTRODUCTION ................................................................................................................. 1

RELEVANT BACKGROUND ............................................................................................... 2

LEGAL STANDARD FOR DECERTIFICATION ................................................................. 7

ARGUMENT ....................................................................................................................... 8

    I.      Under *Comcast* And The Court's MSJ Order, The Class Must Be Decertified Because Dr. Zona's Damages Analyses Are Untethered To DPPs' Actionable Theories Of Liability. ... 9

    II.     DPPs Also Can No Longer Establish Classwide Injury Through Common Evidence.. 15

CONCLUSION ................................................................................................................... 19

CROWELL
& MORING LLP
ATTORNEYS AT LAW

NOT. OF MOTION & MOTION TO DECERTIFY CLASS; MEM. OF P. & A.
CASE NO. 5:20-CV-03642-EJD

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Prods. v. Windsor,*
521 U.S. 591 (1997)........................................................................................................ 8

*Andrews* v. *Plains All Am. Pipeline, L.P.,*
777 Fed. App'x 889 (9th Cir. 2019)............................................................................... 17

*In re Asacol Antitrust Litig.,*
907 F.3d 42 (1st Cir. 2018) ........................................................................................... 17

*Blades v. Monsanto Co.,*
400 F.3d 562 (8th Cir. 2005)..................................................................................... 16, 19

*Bruton v. Gerber Prods. Co.,*
No. 12-CV-02412-LHK, 2018 WL 1009257 (N.D. Cal. Feb. 13, 2018)................................ 11

*Burkhalter Travel Agency v. Macfarms International Inc.,*
141 F.R.D. 144 (N.D. Cal. 1991) ................................................................................... 18

*City of Vernon v. S. California Edison Co.,*
955 F.2d 1361 (9th Cir. 1992)..................................................................................... 4, 12

*In re Class 8 Transmission Indirect Purchaser Antitrust Litig.,*
140 F. Supp. 3d 339 (D. Del. 2015), *aff'd in part, vacated in part on other grounds*, 679 F. App'x 135 (3d Cir. 2017) ........................................................................... 16

*Comcast. Lytle v. Nutramax Lab'ys, Inc.,*
99 F.4th 557 (9th Cir. 2024)........................................................................................... 9

*Comcast v. Behrend,*
569 U.S. 27 (2013) ...................................................................................................... *passim*

*Ctr. City Periodontists, P.C. v. Dentsply Int'l, Inc.,*
321 F.R.D. 193 (E.D. Pa. 2017) ..................................................................................... 11

*In re Florida Cement & Concrete Antitrust Litig.,*
No. 09-23187-CIV, 2012 WL 27668 (S.D. Fla. Jan. 3, 2012)................................................ 9

*Food Lion, LLC v. Dean Foods Co.,*
312 F.R.D. 472 (E.D. Tenn. 2016).................................................................................. 16

*Gen. Tel. Co. of Sw. v. Falcon,*
457 U.S. 147 (1982) ......................................................................................................... 7

-ii-

CROWELL
& MORING LLP
ATTORNEYS AT LAW

*In re Graphics Processing Units Antitrust Litig.*,
  253 F.R.D 478 (N.D. Cal. 2008). ................................................................................ 16, 19

*Heary Bros. Lightning Prot. Co., Inc. v. Lightning Prot. Inst.*,
  287 F. Supp. 2d 1038 (D. Ariz. 2003), *aff'd in part, rev'd in part on other
  grounds*, 262 F. App'x 815 (9th Cir. 2008) ................................................................. 9

*In re High-Tech Emp. Antitrust Litig.*,
  289 F.R.D. 555 (N.D. Cal. 2013) .............................................................................. 15

*Hightower v. Celestron Acquisition, LLC*,
  No. 5:20-CV-03639-EJD, 2021 WL 2224148 .......................................................... 13

*In re Hydrogen Peroxide Antitrust Litig.*,
  552 F.3d 305 (3d Cir. 2008).................................................................................... 18

*Image Tech. Servs. v. Eastman Kodak Co.*,
  125 F.3d 1195 (9th Cir. 1997).......................................................................... 1, 4, 12

*In re Industrial Diamonds Antitrust Litigation*,
  167 F.R.D. 374 (S.D.N.Y. 1996) ............................................................................ 18

*In re Intuniv Antitrust Litig.*,
  No. 1:16-CV-12396-ADB, 2019 WL 3947262 (D. Mass. Aug. 21, 2019)................ 17

*Lanovaz v. Twinings N. Am., Inc.*,
  No. C-12-02646-RMW, 2014 WL 1652338 (N.D. Cal. Apr. 24, 2014).................... 12

*Leyva v. Medline Indus., Inc.*,
  716 F.3d 510 (9th Cir. 2013).............................................................................. 4, 10

*In re Lithium Ion Batteries Antitrust Litig.*,
  No. 13-MD-2420 YGR, 2017 WL 1391491 (N.D. Cal. Apr. 12, 2017)................... 16

*Litton Sys., Inc. v. Honeywell, Inc.*,
  No. CV 90-4823 MP(EX), 1996 WL 634213 (C.D. Cal. July 24, 1996) ............... 4, 12

*Marlo v. United Parcel Serv., Inc.*,
  639 F.3d 942 (9th Cir. 2011)................................................................................... 8

*Mazza v. Am. Honda Motor Co.*,
  666 F.3d 581 (9th Cir. 2012)................................................................................. 17

*MCI Communications Corp. v. AT&T*,
  708 F.2d 1081 (7th Cir. 1983)........................................................................... 4, 12

*McMorrow v. Mondelez Int'l, Inc.*,
  No. 3:17-cv-2327-BAS-JLB, 2020 WL 1157191 (S.D. Cal. Mar. 9, 2020) ........... 11

-iii-

*Mohamed v. Kellogg Co.*,
No. 14-CV-2449-LMDD, 2019 WL 1330920 (S.D. Cal. Mar. 23, 2019) .............................. 11

*Opperman v. Kong Techs.*,
No. 13-CV-00453-JST, 2017 WL 3149295 (N.D. Cal. July 25, 2017) ................................. 11

*In re Optical Disk Drive Antitrust Litig.*,
303 F.R.D. 311 (N.D. Cal. 2014) ..................................................................................... *passim*

*In re Pharmacy Benefit Managers Antitrust Litig.*,
No. CV 03-4730, 2017 WL 275398 (E.D. Pa. Jan. 18, 2017) ................................................ 10

*In re Polypropylene Carpet Antitrust Litig.*,
178 F.R.D. 603 (N.D. Ga. 1997) ......................................................................................... 18

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
292 F. Supp. 3d 14 (D.D.C. 2017), *aff'd sub nom. In re Rail Freight Fuel
Surcharge Antitrust Litig. - MDL No. 1869*, 934 F.3d 619 (D.C. Cir. 2019) ........................ 17

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
725 F.3d 244 (D.C. Cir. 2013) ........................................................................................ 2, 16

*Ries v. Arizona Beverages USA LLC*,
No. 10-01139 RS, 2013 WL 1287416 (N.D. Cal. Mar. 28, 2013).......................................... 7

*Rodriguez v. W. Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009)................................................................................................. 7

*Ross v. Ecolab Inc.*,
No. 13-CV-5097-PJH, 2015 WL 5681323 (N.D. Cal. Sep. 28, 2015) .................................... 7

*Saavedra v. Eli Lilly & Co.*,
No. 2:12-CV-9366-SVW, 2014 WL 7338930 (C.D. Cal. Dec. 18, 2014)............................... 12

*Sidibe v. Sutter Health*,
333 F.R.D. 463, 493 (N.D. Cal. 2019).................................................................................. 16

*Singh v. Google LLC*,
No. 16-CV-03734-BLF, 2022 WL 94985 (N.D. Cal. Jan. 10, 2022) ..................................... 11

*Vaccarino v. Midland Nat'l Life Ins. Co.*,
2013 WL 3200500 (C.D. Cal. Jun. 17, 2013) ........................................................................ 4

*Vizcarra v. Unilever United States, Inc.*,
339 F.R.D. 530 (N.D. Cal. 2021)...................................................................................... 8, 11

*Werdebaugh v. Blue Diamond Growers*,
No. 12-CV-02724-LHK, 2014 WL 7148923 (N.D. Cal. Dec. 15, 2014) .............................. 10

-iv-

CROWELL
& MORING LLP
ATTORNEYS AT LAW

*Wood v. Marathon Ref. Logistics Servs. LLC*,
    2024 WL 4868181 (N.D. Cal. Oct. 28, 2024) ............................................................................ 8

**Statutes**

Fed. R. Civ. P. 23 .............................................................................................................. *passim*

Fed. R. Civ. P. 23(a) ................................................................................................................... 8

Fed. R. Civ. P. 23(b)(3) ..................................................................................................... *passim*

Fed. R. Civ. P. 23(c)(1)(C) ........................................................................................................ 7

Fed. R. Civ. P. 56 ..................................................................................................................... 10

**Other Authorities**

ABA Section of Antitrust Law, Proving Antitrust Damages: Legal and Economic
    Issues 57, 62 (2d ed. 2010) .................................................................................................... 3

CROWELL
& MORING LLP
ATTORNEYS AT LAW

## **MEMORANDUM OF POINTS AND AUTHORITIES**

## **INTRODUCTION**

In its Class Certification Order, this Court ruled that DPPs' economist, Dr. Zona, cannot estimate damages based on "conduct untethered to the liability of this case," under the Supreme Court's decision in *Comcast v. Behrend*, 569 U.S. 27 (2013). (ECF No. 731 ("Class Cert. Order") at 26.) Specifically, this Court "assign[ed] little weight, if any, to Dr. Zona's final regression analysis" because calculating damages "based on an assumption that anticompetitive conduct began prior to the period of damages exceeds the scope of DPPs' complaint [and] is untethered to DPPs' theory of liability." (*Id.* at 27.) In other words, it was impermissible for Dr. Zona to estimate damages based on conduct that Defendants cannot be held liable for in this case.

*Comcast* looms even larger now that DPPs' claim regarding the 2013 Meade Instruments Corp. ("Meade") acquisition has been dismissed on summary judgement. (ECF No. 846 ("MSJ Order") at 1, 7.) All three of Dr. Zona's damages models expressly rely on – and generate damages from – the Meade acquisition, making them "irrelevant to DPPs' legal theory" because the Meade acquisition is no longer part of DPPs' liability case. (Class Cert. Order at 28.) For the same reason, Dr. Zona's damages models are further flawed because they assign damages to Synta's 2005 acquisition of Celestron – which DPPs do not allege to be unlawful – and certain post-2019 conduct – which has never been part of DPPs' liability case – further untethering Dr. Zona's models from DPPs' claims. At bottom, Dr. Zona's "aggregate damages" models assign damages to conduct that is not actionable and the models fail to disaggregate damages between actionable and nonactionable conduct, which not only violates *Comcast*, but also the pre-*Comcast* cases requiring that damages only reflect losses attributable to unlawful competition. *Image Tech. Servs. v. Eastman Kodak Co.*, 125 F.3d 1195, 1224 (9th Cir. 1997) ("When a § 2 monopolization claim has been dismissed or adjudicated against a plaintiff, damages attributable to that claim must be disaggregated.").

Likewise, while the Court previously found on class certification that there existed some evidence that "can be used to at least infer a class-wide impact," that is manifestly no longer the

-1-

case following dismissal of the Meade claim.  (Class Cert. Order at 25.)  DPPs can no longer rely on the Meade acquisition to show classwide injury, meaning that there is now some unknown percentage of the class that may have once been able to show an injury based on the Meade acquisition that no longer can.  Moreover, DPPs cannot rely on Dr. Zona's damages models as they did previously to show that all, or virtually all, members of the Class incurred an overcharge because his analyses are now irrelevant under *Comcast*.  Faced with a similar situation, the D.C. Circuit Ruled:  "No damages model, no predominance, no class certification."  *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244, 253 (D.C. Cir. 2013).  And DPPs' remaining, non-Meade evidence says nothing of a classwide injury to all direct purchasers, particularly given their differing sizes, purchases and purchasing volumes (*i.e.*, large retailers vs. individual purchasers), as well as the broad scope of telescopes offered and available.

The DPP class must therefore be decertified.  Without a method for calculating damages on a classwide basis or proof of classwide injury, individual issues predominate over class issues, and there is no Rule 23(b)(3) predominance.  Permitting the DPP class to proceed would – in the words of the Supreme Court – lead to the nonsensical proposition that, "at the class-certification stage, *any* method of measurement is acceptable so long as it can be applied classwide, no matter how arbitrary the measurements may be.  Such a proposition would reduce Rule 23(b)(3)'s predominance requirement to a nullity."  *Comcast*, 569 U.S. at 35-36 (emphasis in original).

### RELEVANT BACKGROUND

**DPPs' Allegations.**  DPPs allege that, starting in 2005, Defendants conspired to fix prices and allocate markets, and then in 2013, they conspired to unlawfully allow Sunny to acquire Meade.  Based on this, DPPs have asserted violations of Sections 1 and 2 of the Sherman Act, Section 7 of the Clayton Act and California's Cartwright Act and Unfair Competition Law.  (MSJ Order at 1-2.)

***Comcast.***  In *Comcast*, the Supreme Court reviewed whether the predominance standards of Rule 23(b)(3) were correctly applied in an antitrust class action.  *Comcast*, 569 U.S. at 29. While the plaintiffs alleged four theories of antitrust impact, the District Court accepted only one

-2-

on class certification – the "overbuilder" theory[1] – and rejected the other three. *Id*. at 31. Although the plaintiffs' expert's model "did not isolate damages resulting from any one theory of antitrust impact," the District Court "nevertheless certified the class." *Id*. at 32.

The Supreme Court began its analysis with what it described as an "an unremarkable premise":

> If [the plaintiffs] prevail on their claims, they would be entitled only to damages resulting from reduced overbuilder competition, since that is the only theory of antitrust impact accepted for class-action treatment by the District Court. It follows that a model purporting to serve as evidence of damages in this class action must measure only those damages attributable to that theory. If the model does not even attempt to do that, it cannot possibly establish that damages are susceptible of measurement across the entire class for purposes of Rule 23(b)(3).

*Id*. at 35.

The Court also noted two related principles. First, "any model supporting a 'plaintiff's damages case must be consistent with its liability case, particularly with respect to the alleged anticompetitive effect of the violation.'" *Id*. (quoting ABA Section of Antitrust Law, Proving Antitrust Damages: Legal and Economic Issues 57, 62 (2d ed. 2010)). Second, "for purposes of Rule 23, courts must conduct a 'rigorous analysis to determine whether that is so.'" *Id*.

Based on these standards, the Supreme Court concluded that "[t]here is no question that the [plaintiffs' expert's] model failed to measure damages resulting from the particular antitrust injury on which [plaintiffs'] liability in this action is premised" because "the model assumed the validity of all four theories of antitrust impact initially advanced by [plaintiffs] . . . and did not attribute damages to any one particular theory of anticompetitive impact." *Id*. at 36-37.  Thus, the Supreme Court ruled that the model could not sufficiently isolate the price impact of the only accepted theory of antitrust harm – the overbuilder theory – and the model could not adequately tie damages to the alleged misconduct, thereby failing to satisfy Rule 23(b)(3). *Id*. at 38.  For that basic reason, the Court reversed the District Court's grant of class certification.

---

[1] The plaintiffs' overbuilder theory alleged that Comcast unlawfully restrained competition from "overbuilders," which were "companies that buil[t] competing cable networks in areas where an incumbent cable company already operates." *Comcast*, 569 U.S. at 31.

-3-

CROWELL
& MORING LLP
ATTORNEYS AT LAW

The Ninth Circuit has followed *Comcast* to explain that "plaintiffs must be able to show that their damages stemmed from the defendant's actions that created the legal liability." *Leyva v. Medline Indus., Inc.*, 716 F.3d 510, 514 (9th Cir. 2013); *Vaccarino v. Midland Nat'l Life Ins. Co.*, 2013 WL 3200500, *14 (C.D. Cal. Jun. 17, 2013) (under *Comcast* and *Leyva*, plaintiffs must "offer a method that tethers their theory of liability to a methodology for determining the damages suffered by the class."). And as set forth below in Section I, numerous courts – including this Court in this case – have followed *Comcast* to find that damages models that do not isolate damages attributable to allegedly unlawful conduct cannot establish that damages are capable of measurement on a classwide basis and cannot show Rule 23(b)(3) predominance.

Even before *Comcast*, courts in the Ninth Circuit determined that damages models "must segregate damages attributable to lawful competition from damages attributable to [unlawful competition]." *Image Tech.*, 125 F.3d at 1224 ("When a § 2 monopolization claim has been dismissed or adjudicated against a plaintiff, damages attributable to that claim must be disaggregated."); *City of Vernon v. S. California Edison Co.*, 955 F.2d 1361, 1371-72 (9th Cir. 1992) (finding that the District Court did not err in granting summary judgment after determining that plaintiff's damages study "failed to segregate the losses, if any, caused by acts which were not antitrust violations from those that were.") (citing *MCI Communications Corp. v. AT&T*, 708 F.2d 1081, 1161 (7th Cir. 1983) ("It is essential, however, that damages reflect only the losses directly attributable to unlawful competition.")); *Litton Sys., Inc. v. Honeywell, Inc.*, No. CV 90-4823 MP(EX), 1996 WL 634213, at *2 (C.D. Cal. July 24, 1996) ("Disaggregation is required because the antitrust laws are only intended to compensate plaintiffs for losses fairly caused by a defendant's unlawful anticompetitive behavior."). "A failure to do so contravenes the command of the Clayton Act" because the Clayton Act only "provides for damages upon a showing of antitrust injury." *Image Tech. Servs.*, 125 F.3d at 1223-24.

**The Court's Class Certification Order.** The Class Certification Order was based, in part, on Dr. Zona's May 2024 report in support of DPPs' Motion for Class Certification. (ECF No. 598-4 ("Zona Report").) As this Court explained, Dr. Zona employed "three models to

-4-

determine whether antitrust injury and damages can be shown on a class-wide basis using common evidence: (1) a Cournot model; (2) Connor model based on PIC data; and (3) a regression model based on transactional data from this case." (Class Cert. Order at 2.) "Dr. Zona's methodologies generally split the time of damages into three relevant periods: 2005-2013, 2013-2019, and post-2019" based on evidence that "in 2005, Celestron came under the control of Synta; in 2013, Meade was acquired; and in 2019, Meade's assets were potentially converted to Orion." (*Id.* at 3.) "Accordingly, Dr. Zona measures the incremental effect of the elimination of competition in 2005, 2013, and 2019." (*Id.*)

In his Cournot model, Dr. Zona assigned overcharges based on allegedly unlawful transactions in the market. (*Id.*) That is, the "evidence Dr. Zona uses in his method to determine the appropriate number of competitors includes evidence of Defendants' various acquisitions." (*Id.*) "Dr. Zona begins his calculation with four equal sized competitors in the but-for world." (*Id.* at 3-4.) For "the period of time between 2005 and 2013 (after the Celestron acquisition by Synta and before the Meade acquisition by Sunny)," Dr. Zona "assumed that three firms act together which reduces the number of competitors from four to two," (Zona Report at ¶ 91), and results in "an expected increase in price above the competitive benchmark of about 17.4%." (Class Cert. Order at 4.) For "the period of time between 2013 and 2019 (after the Celestron acquisition by Synta and the Meade acquisition by Sunny)," Dr. Zona "assumed that four firms act together which reduces the number of competitors from four to one," (Zona Report at ¶ 92), and results in "an expected price increase of about 35.7%." (Class Cert. Order at 4.) "After 2019, when Sunny divested Meade to satisfy the Orion judgment, assuming Meade assets were fully converted to Orion, the model would revert to the 2005-2013 rate of a 17.4%." (*Id.*) "However, given evidence of subsidiary judgment collection issues in *Orion*, Dr. Zona assumes in his final calculation that Meade's assets were not completely transferred to Orion, in which case the overcharge would remain at 35.7%." (*Id.*) Based on this, "Dr. Zona concludes that the Cournot model implies aggregate damages of approximately $148 million." (*Id.*)

As a second measure of overcharge, Dr. Zona uses the "Connor PIC model," which

-5-

assigns a flat overcharge to all purchases based on "(1) the number of cartel members and (2) the market share of the cartel members" at particular periods of time. (*Id*. at 5.) Like the Cournot model, "[t]he evidence Dr. Zona uses to determine the number of cartel members again here includes Defendants' various acquisitions." (*Id*.) For 2005 through 2013, "the period after Celestron is acquired but before Meade is acquired," (Zona Report at ¶ 98), "Dr. Zona assumes a 70% market share with three cartel members." (Class Cert. Order at 7.) "The associated overcharge from the PIC data under these assumptions is 35%." (*Id*.) For 2013 through 2019, "the period of time when Synta controls Celestron and Sunny controls Meade," (Zona Report at ¶ 98), "Dr. Zona assumes an 80% market share with [four] cartel members." (Class Cert. Order at 7.) "The associated overcharge from the PIC data under these assumptions is 39.8%." (*Id*.) "After 2019, it appears Dr. Zona applies the 39.8% overcharge as well, again assuming that there has not been a full divestment of Meade." (*Id*.) Based on his Connor PIC model, "Dr. Zona calculates a total overcharge of $238.5 million." (*Id*.)

"Finally, Dr. Zona uses a statistical technique known as a regression analysis using Defendants' transactional data." (*Id*.) In his regression, Dr. Zona attempts to estimate an overcharge resulting from the alleged conspiracy "by comparing the actual prices during the damage period to the benchmark" period. (*Id*.) Dr. Zona's regression includes "two conspiracy indicator variables, one for the period from April 2005 to August 2013, and another from September 2013 forward," which is intended to account for Synta's acquisition of Celestron in 2005 and Sunny's acquisition of Meade in 2013, and "[w]hen calculating the aggregate damages, Dr. Zona adds a 16.7% overcharge to the benchmark to account for his understanding that the anticompetitive conduct began prior to 2005." (*Id*. at 8.) "For the 2005-2013 period, Dr. Zona finds an overcharge of 3.96%." (*Id*.) "It appears that Dr. Zona then adds the 16.7% benchmark for a total overcharge of 20.7%." (*Id*.) "For the 2013-2019 period, Dr. Zona finds an overcharge of 7.16%" and "Dr. Zona then adds the 16.7% benchmark again for a total overcharge of 23.9%." (*Id*.) "After 2019, Dr. Zona assumes that Meade's assets have not been fully transferred to Orion, in which case the overcharge remains at 23.9%." (*Id*.) "Taking into consideration the estimated

CROWELL
& MORING LLP
ATTORNEYS AT LAW

overcharge for pre-2005 conduct, Dr. Zona calculates the overcharges to result in $142.7 million." (*Id.*)

Ultimately, however, the Court assigned "little weight, if any, to Dr. Zona's final regression analysis" because "reducing the benchmark by 16.7% based on an assumption that anticompetitive conduct began prior to the period of damages exceeds the scope of DPPs' complaint [and] is untethered to the DPPs theory of liability" in that DPPs' do not allege that conspiratorial conduct took place before 2005. (*Id.* at 27.)  In other words, this Court found "that the altered 16.7% benchmark moves Dr. Zona's regression analysis outside the scope of this case," making the regression unsustainable under *Comcast*.  (*Id.* at 26.)  Nevertheless, the Court relied on the Cournot and Connor PIC models to grant certification because "Dr. Zona uses evidence of Celestron's acquisition by Synta and Meade's acquisition by Sunny to determine the appropriate number of competitors at a given time" and "uses evidence of Defendants' various acquisitions to determine the number of cartel members" at certain periods of time.  (*Id.* at 28.)

**The Summary Judgment Order.**  On March 23, 2026, the Court granted Defendants' motions for summary judgment as to all claims arising from the 2013 Meade acquisition.  (MSJ Order at 1, 3-7.)  That ruling fundamentally alters the scope of DPPs' liability case and directly cripples Dr. Zona's damages models under *Comcast*.

## LEGAL STANDARD FOR DECERTIFICATION

"An order that grants or denies class certification may be altered or amended before final judgment."  Fed. R. Civ. P. 23(c)(1)(C).  "Even after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation."  *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982); *Ries v. Arizona Beverages USA LLC*, No. 10-01139 RS, 2013 WL 1287416, at *3 (N.D. Cal. Mar. 28, 2013) (citation omitted).  Indeed, "[a] district court may decertify a class at any time."  *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009).  "The standard used by the courts in reviewing a motion to decertify is the same as the standard when it considered Plaintiffs' certification motions."  *Ries*, 2013 WL 1287416, at *3 (citation omitted); *Ross v. Ecolab Inc.*, No. 13-CV-5097-PJH, 2015 WL 5681323, at *12 (N.D.

Cal. Sep. 28, 2015) ("The standards used for determination of class certification" are the same standards that are "applied in determining whether to decertify a class."). Thus, on a motion for decertification, the burden remains on the plaintiff "to demonstrate that Rule 23's class-certification requirements had been met." *Marlo v. United Parcel Serv., Inc.*, 639 F.3d 942, 947-48 (9th Cir. 2011); *Wood v. Marathon Ref. Logistics Servs. LLC*, 2024 WL 4868181, at *1 (N.D. Cal. Oct. 28, 2024) (same).

## ARGUMENT

DPPs' sought certification under Rule 23(b)(3), which requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." "To demonstrate predominance in the context of damages, DPPs must proffer a damages model showing that damages are susceptible of measurement across the entire class for purposes of Rule 23(b)(3)." (Class Cert. Order at 17 (quoting *Vizcarra v. Unilever United States, Inc.*, 339 F.R.D. 530, 553 (N.D. Cal. 2021)).) The predominance requirement of Rule 23(b)(3) also requires plaintiffs to establish through common evidence "that all (or nearly all) members of the class suffered damages as a result of the defendants' alleged anti-competitive conduct." *In re Optical Disk Drive Antitrust Litig.* ("*ODD*"), 303 F.R.D. 311, 319 (N.D. Cal. 2014).

"To meet their obligations under Rule 23, plaintiffs 'must actually prove—not simply plead—that their proposed class satisfies each requirement of Rule 23' by a preponderance of the evidence." (Class Cert. Order at 10-11.) And as the Supreme Court has repeatedly explained, Rule 23(b)'s "predominance criterion is far more demanding" than the commonality requirements of Rule 23(a). *Amchem Prods. v. Windsor*, 521 U.S. 591, 623-24 (1997); *Comcast*, 569 U.S. at 34 ("If anything, Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a).").

DPPs' class, however, must be decertified under *Comcast*. All three of Dr. Zona's damages models estimate damages based on the Meade acquisition, which is no longer part of

-8-

DPPs' liability case. And all three of Dr. Zona's damages models estimate damages based on conduct that has never been alleged to be part of DPPs' liability case; in particular, Synta's lawful acquisition of Celestron in 2005, and Sunny's divestiture of Meade in 2019. Thus, Dr. Zona's models cannot serve as classwide evidence of damages because they are not limited to measuring damages attributable to DPPs' actionable liability theories, and are in fact "untethered" to those theories. Likewise, DPPs can no longer prove classwide injury through common proof because the centerpiece of DPPs' alleged injury – the 2013 Meade acquisition – has been dismissed, leaving Dr. Zona's models woefully deficient and numerous class members uninjured.

## I.    Under *Comcast* And The Court's MSJ Order, The Class Must Be Decertified Because Dr. Zona's Damages Analyses Are Untethered To DPPs' Actionable Theories Of Liability.

All three of Dr. Zona's damages models – the Cournot model, the Connor PIC model, and his regression analysis – expressly rely upon, and derive damages from, Sunny's 2013 acquisition of Meade. That is, in estimating damages, the Cournot model reduces the number of competitors from four[2] to one based on the 2013 Meade acquisition; the Connor PIC model increases the number of cartel members from three to four based on the 2013 Meade acquisition; and the regression analysis adds the second of two "conspiracy indicator variables" to account for the 2013 Meade acquisition. (Class Cert. Order at 8; Zona Report at ¶ 105.) Thus, with dismissal of DPPs' Meade claim, Dr. Zona's damages calculations have become "untethered" to DPPs' actionable theories of liability and fail *Comcast*. *Lytle v. Nutramax Lab'ys, Inc.*, 99 F.4th 557,

---

[2] While Dr. Zona does not actually identify these four competitors in his report, presumably he is myopically referring to Synta, Sunny, Celestron and Meade. It remains unclear, however, why Dr. Zona limited his analysis to these four "competitors" in light of the fact that "Dr. Zona previously identified 29 telescope brands" competing in the market between 2006 and 2022. (Class Cert. Order at 6; Zona Report at ¶¶ 41-42.) This failure to consider all market participants is **an independent reason to decertify** the DPP class. *Heary Bros. Lightning Prot. Co., Inc. v. Lightning Prot. Inst.*, 287 F. Supp. 2d 1038, 1065-1068 (D. Ariz. 2003) (excluding expert report where there was "no evidence at all supporting [expert's] assumption that there were no other serious market competitors" and the expert's economic model did not "fit" the reality of the market at issue), *aff'd in part, rev'd in part on other grounds*, 262 F. App'x 815 (9th Cir. 2008); *In re Florida Cement & Concrete Antitrust Litig.*, No. 09-23187-CIV, 2012 WL 27668, at *16 (S.D. Fla. Jan. 3, 2012) (noting the "significant differences between the markets" at issue and explaining that while "the proposed class seeks to address a common issue—the alleged price-fixing by Defendants—'there are many cross-cutting factual circumstances among the class members that would make the class incoherent.'").

CROWELL
& MORING LLP
ATTORNEYS AT LAW

573 (9th Cir. 2024) ("where an expert's damages model is untethered from the plaintiff's theory of liability . . . a plaintiff may not rely upon it to show that damages are 'capable of measurement on a classwide basis.'").  Put another way, all three of Dr. Zona's damages models compute "aggregate damages" (Class Cert. Order at 4; Zona Report at ¶ 117), based on conduct that is no longer part of DPPs' liability case, just like the expert analysis in *Comcast* that failed to isolate damages associated with the only accepted theory of antitrust harm.  *Comcast*, 569 U.S. at 38; *see also Leyva*, 716 F.3d at 514 ("plaintiffs must be able to show that their damages stemmed from the defendant's actions that created the legal liability."); Class Cert. Order at 26 ("a model purporting to serve as evidence of damages in [a] class action must measure only those damages attributable to that theory. If the model does not even attempt to do that, it cannot possibly establish that damages are susceptible to measurement across the entire class for purposes of Rule 23(b)(3).") (quoting *Comcast*, 569 U.S. at 35).

Numerous courts, facing similar situations, have followed *Comcast* to deny class certification, grant decertification or exclude expert testimony based on a failure to tie a damages model to the actionable theories of liability.  For instance, in *In re Pharmacy Benefit Managers Antitrust Litig.*, No. CV 03-4730, 2017 WL 275398, at *19, 31 (E.D. Pa. Jan. 18, 2017), the court denied class certification on antitrust conspiracy claims because "[the experts] fail to propose a model capable of distinguishing the damages that are attributable to each of the two theories of liability," similar to Dr. Zona's failure to attribute damages to the theories of liability in the case. According to the court:  "The teaching of *Comcast* is that antitrust plaintiffs must match a damages model to their theory of liability.  The failure to do so here may well lead to the same paradox condemned in *Comcast*, i.e., a damages model unattributed to any specific theory of antitrust impact being accepted at class certification with the possibility of one or more of those theories ultimately [being] rejected under Rule 56 or at trial."  *Id.*

Likewise, in *Werdebaugh v. Blue Diamond Growers*, No. 12-CV-02724-LHK, 2014 WL 7148923, at *11 (N.D. Cal. Dec. 15, 2014), the court decertified a class because the expert's proffered damages model conflated the price effects of the defendant's brand name, which was

-10-

CROWELL
& MORING LLP
ATTORNEYS AT LAW

not unlawful, with the effect of the allegedly unlawful misrepresentations – similar to Dr. Zona's blending of actionable and non-actionable conduct – rendering the "model insufficient under *Comcast* because [the expert's] model is incapable of isolating the damages attributable to Defendant's alleged wrongdoing."

In *Ctr. City Periodontists, P.C. v. Dentsply Int'l, Inc.*, 321 F.R.D. 193, 204 (E.D. Pa. 2017), the court excluded the expert's damages report under *Comcast* because the expert's damages calculations were based on claims that had been dismissed – as Dr. Zona's calculations are – making the analysis "now irrelevant for purposes of determining damages that are solely 'the result of the wrong.'"  And there are many others.  *Singh v. Google LLC*, No. 16-CV-03734-BLF, 2022 WL 94985, at *14 (N.D. Cal. Jan. 10, 2022) (declining to certify a class because the plaintiff's expert's damages calculations were "not tethered to his theory of liability and violates *Comcast*."); *Vizcarra*, 339 F.R.D. at 553-54 (denying class certification because plaintiffs' proposed damages analysis did not "measure a price premium consistent with her theory of liability as required by *Comcast*."); *McMorrow v. Mondelez Int'l, Inc.*, No. 3:17-cv-2327-BAS-JLB, 2020 WL 1157191, at *5-9 (S.D. Cal. Mar. 9, 2020) (denying class certification because the proposed damages study did not isolate the price premium resulting from the challenged word "nutritious," meaning the proposed study was not consistent with the plaintiff's theory of liability and, therefore, did not satisfy *Comcast*); *Mohamed v. Kellogg Co.*, No. 14-CV-2449-LMDD, 2019 WL 1330920, at *3 (S.D. Cal. Mar. 23, 2019) (finding that "Plaintiff has failed to carry her burden under Rule 23(b)(3) to show that her proposed method of calculating damages on a class-wide basis will in fact measure damages attributable to her theory of liability"); *Bruton v. Gerber Prods. Co.*, No. 12-CV-02412-LHK, 2018 WL 1009257, at *9 (N.D. Cal. Feb. 13, 2018) (rejecting the expert's damages model because the expert "'has no way of linking the price difference, if any, to the allegedly unlawful or deceptive label statements or controlling for other reasons why allegedly comparable products may have different prices'"); *Opperman v. Kong Techs.*, No. 13-CV-00453-JST, 2017 WL 3149295, at *12-13 (N.D. Cal. July 25, 2017) (denying class certification because the plaintiffs' damages model measured the value consumers attribute

CROWELL
& MORING LLP
ATTORNEYS AT LAW

to security generally, but did not isolate the value of the two alleged security features that formed the basis of liability); *Lanovaz v. Twinings N. Am., Inc.*, No. C-12-02646-RMW, 2014 WL 1652338, at *7 (N.D. Cal. Apr. 24, 2014) (denying class certification under *Comcast* because the plaintiffs did not present a method for proving classwide damages under "the only legally permissible measure of damages"); *Saavedra v. Eli Lilly & Co.*, No. 2:12-CV-9366-SVW, 2014 WL 7338930, at *11 (C.D. Cal. Dec. 18, 2014) (declining to certify a class for failing to satisfy *Comcast* and "produce the evidence required to show that damages could be proved classwide.").

All of these cases underscore the basic premise of *Comcast* and what is now apparent from the Court's dismissal of DPPs' Meade claim:  Each of Dr. Zona's damages measurements conflate and mix any price effects from the 2013 Meade acquisition, which is no longer actionable, with other conduct that may be actionable, meaning Dr. Zona's damages analyses are not tied to DPPs' theory of liability and the analyses cannot be used to calculate damages on a classwide basis.  In other words, Dr. Zona's "aggregate damages" calculations derive damages from conduct that is not actionable and impermissibly aggregates damages between actionable and nonactionable conduct, which not only violates *Comcast*, but also violates the pre-*Comcast* cases requiring plaintiffs to "segregate the losses, if any, caused by acts which were not antitrust violations from those that were."  *City of Vernon*, 955 F.2d at 1371-72; *Image Tech. Servs.*, 125 F.3d at 1224 ("When a § 2 monopolization claim has been dismissed or adjudicated against a plaintiff, damages attributable to that claim must be disaggregated."); *MCI Communications Corp.*, 708 F.2d at 1161 ("It is essential, however, that damages reflect only the losses directly attributable to unlawful competition."); *Litton Sys.*, 1996 WL 634213, at *2 ("Disaggregation is required because the antitrust laws are only intended to compensate plaintiffs for losses fairly caused by a defendant's unlawful anticompetitive behavior.").

Separate and apart from the Court's dismissal of DPPs' Meade claim, all three of Dr. Zona's damages calculations are further deficient under *Comcast* and the disaggregation cases cited above because the analyses derive damages from Synta's 2005 acquisition of Celestron, which is also untethered to DPPs' theory of liability.  For instance, the Cournot model reduces the

CROWELL
& MORING LLP
ATTORNEYS AT LAW

NOT. OF MOTION & MOTION TO DECERTIFY CLASS; MEM. OF P. & A.
CASE NO. 5:20-CV-03642-EJD

number of competitors from four to two based on Synta's 2005 acquisition of Celestron; the Connor PIC model increases the number of alleged cartel members from two to three based on Synta's 2005 acquisition of Celestron; and the regression analysis adds the first of two "conspiracy indicator variables" to account for Synta's acquisition of Celestron in 2005. (Class Cert. Order at 8.) But with regard to Synta's 2005 acquisition of Celestron, this Court has ruled – on at least two occasions – that *"no specific misconduct [is alleged] in connection with that transaction."* (ECF No. 173 at 21) (emphasis added); *Hightower v. Celestron Acquisition*, *LLC*, No. 5:20-CV-03639-EJD, 2021 WL 2224148, *13 (N.D. Cal. June 2, 2021 (ruling that "no specific misconduct" has been alleged with respect to Synta's acquisition of Celestron). Those rulings are supported by the plain language of DPPs' Fourth Amended Complaint and Motion for Class Certification. (Fourth Amended Complaint at ¶ 78 ("In 2005, Synta acquired Celestron."); DPPs' Mot. for Class Cert. at 4 ("Synta purchased Celestron in 2005."), 7-12 (listing Defendants' alleged "anticompetitive conduct," but not mentioning Synta's 2005 acquisition of Celestron).) Thus, Dr. Zona's damages analyses are further infected by his use of Synta's 2005 acquisition of Celestron to calculate damages.

The same is true of Dr. Zona's assumption "in his final calculation that Meade's assets were not completely transferred to Orion" in 2019, which causes Dr. Zona to assign the same overcharge rate for 2005 to 2013 and 2019 onward in his Cournot, Connor PIC and regression models. (Class Cert. Order at 4 (Cournot: "After 2019 . . . the overcharge would remain at 35.7%), *id.* at 7 (Connor PIC: "After 2019, it appears Dr. Zona applies the 39.8% overcharge as well, again assuming that there has not been a full divestment of Meade."), *id.* at 8 (Regression: "After 2019, Dr. Zona assumes that Meade's assets have not been fully transferred to Orion, in which case the overcharge remains at 23.9%.").) But just like Synta's 2005 acquisition of Celestron, there are no allegations in DPPs' complaint that Defendants engaged in unlawful conduct regarding Sunny's 2019 divestiture of Meade to Orion. In fact, DPPs' Fourth Amended Complaint does not even mention the 2019 divestiture or allege any causes of action based on it. (*See generally* Fourth Amended Complaint.) Likewise, nowhere in DPPs' Motion for Class

-13-

CROWELL
& MORING LLP
ATTORNEYS AT LAW

Certification do they allege wrongdoing by Defendants, or anyone else, regarding the 2019 Meade divestiture. (*See generally* DPPs' Mot. for Class Cert.) Instead, DPPs claim in their Motion for Class Certification that Orion became one of the two "key distributors" in the United States "[a]fter Orion's acquisition of Meade," at least suggesting that Sunny did fully divest the Meade assets. (DPPs' Mot. for Class Cert. at 6.) And, of course, Dr. Zona fails to cite any evidence or allegations to support his assumption that Sunny did not fully divest Meade in 2019. (Zona Report at ¶ 93.) Dr. Zona cannot hold overcharge rates steady from 2019 into perpetuity based on an assumption that is not part of DPPs' liability theory.[3]

Comcast simply does not permit an expert to reduce the number of competitors, increase the number of cartel members, employ a "conspiracy indicator variable" or maintain overcharge rates forever based on conduct that is not unlawful, or even alleged to be unlawful. This Court already found as much when it ruled that Dr. Zona's assumption that anticompetitive conduct began prior to 2005 "exceeds the scope of DPPs' complaint [and] is untethered to DPPs' theory or liability" because DPPs' complaint does not allege as much. (Class Cert. Order at 27.)

At bottom, Dr. Zona's calculation of damages based on the 2013 Meade acquisition – which is no longer actionable – Synta's 2005 acquisition of Celestron – which was never actionable – and Sunny's divestiture of Meade – which is not alleged to be actionable – renders all three of Dr. Zona's damages analyses "irrelevant to DPP's legal theory" and deficient under Comcast. (Class Cert. Order at 28.) The DPP class must therefore be decertified. Permitting the DPP class to proceed based on Dr. Zona's flawed analyses would – in the words of the Supreme Court – lead to the erroneous proposition that, "at the class-certification stage, *any* method of measurement is acceptable so long as it can be applied classwide, no matter how arbitrary the measurements may be. Such a proposition would reduce Rule 23(b)(3)'s predominance

---

[3] Another flaw in Dr. Zona's analyses and DPPs' use of them is the idea that the class includes purchasers who bought telescopes outside of the time period studied by Dr. Zona, which was 2005 to 2022. (Zona Report at ¶ 124.) Dr. Zona simply has not studied whether purchasers who bought in 2023, or 2024, or 2025, or 2026 suffered the same overcharge, or even any overcharge, as those who bought between 2005 and 2022. If the class is not decertified, it must at least be limited to the time period analyzed by Dr. Zona, 2005 to 2022.

-14-

CROWELL
& MORING LLP
ATTORNEYS AT LAW

requirement to a nullity." *Comcast*, 569 U.S. at 35-36 (emphasis in original).

## II.   DPPs Also Can No Longer Establish Classwide Injury Through Common Evidence.

As set forth above, predominance also requires DPPs to show through common evidence "that all (or nearly all) members of the class suffered damages as a result of the defendants' alleged anti-competitive conduct." *ODD*, 303 F.R.D. at 319; Class Cert. Order at 15 (the antitrust injury "inquiry examines whether DPPs can present common evidence to show that Defendants' 'collusion had a common, supra-competitive impact on a class-wide basis.'"); *In re High-Tech Emp. Antitrust Litig.*, 289 F.R.D. 555, 566 (N.D. Cal. 2013) (noting that "at least five circuit courts and at least two district courts within this district have held that, for cases involving antitrust violations, common issues do not predominate unless the issue of impact is also susceptible to class-wide proof"). While the Court previously found that there was some evidence that "can be used to at least infer a class-wide impact," that is no longer the case following dismissal of DPPs' Meade claim. (Class Cert. Order at 16.)

As an initial matter, DPPs cannot rely on Dr. Zona's damages models to support their claim that "all or substantially all members of the Class incurred an overcharge" as they did previously because Dr. Zona's analysis is now irrelevant under *Comcast*. (DPPs' Mot. for Class Cert. at 12, 18-19 (relying on Dr. Zona's "regression analysis using Celestron's transactional data to determine whether Defendants' anticompetitive conduct had a measurable class-wide impact on the prices Celestron charged to class members for their purchase of telescopes and telescope accessories."); Class Cert. Order at 14 ("DPPs introduce Dr. Zona's expert report here to show how class-wide injury and damages can be proven using common evidence."); Zona Report at ¶ 123 ("Impact and injury would be proven based on showing transactions were subject to overcharge. Under the Cournot and PIC models, the same overcharge would be applied to each and every transaction. The models involve common, class-wide evidence.").)[4] The Court already

---

[4] Notably, even if Dr. Zona's damages analysis were not completely undercut by *Comcast*, **another, independent reason to decertify** the DPP class lies in the fact that Dr. Zona only analyzed Celestron's transactional data. (Zona Report at § IV.A.3 ("Regression Model Based on Celestron's Transactions Data"), ¶ 100 (running regression on "Celestron's wholesale telescope prices"); ¶ 107 ("I limited the analysis to Synta/Celestron's sales of telescopes products."), ¶ 110

-15-

CROWELL
& MORING LLP
ATTORNEYS AT LAW

assigned "little weight, if any, to Dr. Zona's final regression analysis" based on his tampering with the benchmark period (Class Cert. Order at 27), but that analysis, along with the Cournot and Connor PIC models, are now even more deficient under *Comcast* based on the dismissal of the Meade claims.  Courts routinely deny certification on this basis.  *In re Graphics Processing Units Antitrust Litig.*, 253 F.R.D. 478, 490-97 (N.D. Cal. 2008) (denying class certification motion because their proffered econometric models were incapable of proving class-wide impact); *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-MD-2420 YGR, 2017 WL 1391491, at *16-18 (N.D. Cal. Apr. 12, 2017) (same); *ODD*, 303 F.R.D. at 322 (N.D. Cal. 2014) (same); *Sidibe v. Sutter Health*, 333 F.R.D. 463, 493 (N.D. Cal. 2019) (finding that deficiencies in the expert's model "prevent the plaintiffs from relying on it to demonstrate that they can prove antitrust injury or calculate antitrust damages on a class-wide basis"); *Blades v. Monsanto Co.*, 400 F.3d 562, 575 (8th Cir. 2005) (affirming denial of class certification motion for the same reason).  As the D.C. Circuit saw it:  "No damages model, no predominance, no class certification."  *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d at 253.

Likewise, a vast majority of the evidence DPPs have relied upon in stating their antitrust

---

("The overcharges calculated in this section are based only on Celestron's transactional data . . ."); DPPs' Mot. for Class Cert. at 12, 18-19 (noting that Dr. Zona's regression analysis only utilizes Celestron's transactional data in attempting to measure classwide impact).)  In other words, Dr. Zona did not at all evaluate the Meade transactional sales data to determine whether there existed an overcharge or classwide impact for those purchasers, meaning Dr. Zona's analysis does not represent purchases of the entire class and thus is incapable of supporting any classwide impact or damages analysis.  *Sidibe v. Sutter Health*, 333 F.R.D. at 494 (rejecting an overcharge model that only incorporated the data of two of the five relevant health plans as "insufficient to demonstrate a method for proving antitrust impact or calculating damages on a class-wide basis across the entire class."); *In re Lithium Ion Batteries Antitrust Litig.*, 2017 WL 1391491, at *17-18 ("large gaps in the evidence supporting the ability to demonstrate impact and damages on a class-wide basis" "d[id] not satisfy the Court that a showing of antitrust impact . . . can be extrapolated as a measure of impact" for the class as a whole.); *Food Lion, LLC v. Dean Foods Co.*, 312 F.R.D. 472, 489-90 (E.D. Tenn. 2016) (expert improperly assumed impact on all class members by extrapolating results obtained from a subset of data); *In re Class 8 Transmission Indirect Purchaser Antitrust Litig.*, 140 F. Supp. 3d 339, 353 (D. Del. 2015) (no common proof of impact where expert analyzed incomplete data), *aff'd in part, vacated in part on other grounds*, 679 F. App'x 135 (3d Cir. 2017).  Moreover, DPPs cannot escape their burden of showing classwide impact by claiming that complete date was not available.  *In re Graphics Processing Units Antitrust Litig.*, 253 F.R.D. at 497 (rejecting argument that the expert had only "'limited information' to account for all the variables"); *In re Lithium Ion Batteries Antitrust Litig.*, 2017 WL 1391491, at *17 (same).

-16-

CROWELL
& MORING LLP
ATTORNEYS AT LAW

claims and pressing them in their Motion for Class Certification relates to the Meade acquisition. (Fourth Amended Complaint at ¶¶ 94-111; Mot. for Class Cert. at 6-11.)  The same goes for Dr. Zona's analysis.  (Zona Report at ¶¶ 77-79, 84-88, 91-93, 98, 103.)  Indeed, the Meade acquisition has always been a centerpiece of DPPs' alleged injury.  But now that DPPs' Meade claim is no longer part of DPPs' liability theory, DPPs cannot rely on it to show classwide injury. This means that there is now an unknown percentage of the class that may have once been able to show an alleged injury based on the Meade acquisition that no longer can.  Yet DPPs have no way of quantifying this group of uninjured class members, let alone a methodology for identifying and excluding them from the class.  *In re Intuniv Antitrust Litig.*, No. 1:16-CV-12396-ADB, 2019 WL 3947262, at *8 (D. Mass. Aug. 21, 2019) (denying certification when an estimated 8% of a putative class was unharmed and when there is no "reasonable and workable plan to weed out uninjured class members"); *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 292 F. Supp. 3d 14, 140 (D.D.C. 2017), *aff'd sub nom. In re Rail Freight Fuel Surcharge Antitrust Litig. - MDL No. 1869*, 934 F.3d 619 (D.C. Cir. 2019) ("plaintiffs have proposed no method for identifying and removing uninjured shippers from the class through the use of common evidence.  As such, there would need to be individualized inquiries to determine which of at least 2,037 (and possibly more) class members were actually injured by the alleged conspiracy — the central issue of each plaintiff's claim.").  If more than a *de minimis* number of class members "in fact suffered no injury," then the "need to identify those individuals will predominate" over any common class questions.  *In re Asacol Antitrust Litig.*, 907 F.3d 42,53-54 (1st Cir. 2018); *Mazza* v. *Am. Honda Motor Co.*, 666 F.3d 581, 594-96 (9th Cir. 2012) (holding that predominance requirement was not met because many class members were not injured); *see also Andrews* v. *Plains All Am. Pipeline, L.P.*, 777 Fed. App'x 889, 892-93 (9th Cir. 2019) (citing *Mazza* and reversing certification where "many employees within the class likely were not injured").

Finally, the non–Meade evidence DPPs are left with simply cannot establish classwide injury.  The handful of documents that remain, at best, speak to isolated instances of alleged price

-17-

CROWELL
& MORING LLP
ATTORNEYS AT LAW

fixing or customer allocation, but even if those isolated instances could be proven at trial, DPPs cannot show that these instances could cause a classwide injury to all direct purchasers, particularly given the differences in the size and influence of class members (from Costco and Amazon to individuals) and differences in the types of telescopes they purchased (from entry level to sophisticated, commercial grade telescopes).  Numerous courts have found that instances of collusion that may affect one set of class members, but not another, do not establish an injury to all, or virtually all, class members.  *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 326 (3d Cir. 2008) ("Applying a presumption of impact based solely on an unadorned allegation of price-fixing would appear to conflict with the 2003 amendments to Rule 23, which emphasize the need for a careful, fact-based approach, informed, if necessary, by discovery."); *Burkhalter Travel Agency v. Macfarms International Inc.*, 141 F.R.D. 144, 154 (N.D. Cal. 1991) (ruling that common issues did not predominate as to injury because of "crucial differences in how defendants set prices for different purchasers."); *In re Industrial Diamonds Antitrust Litigation*, 167 F.R.D. 374, 384 (S.D.N.Y. 1996) (denying certification given "that individual issues of impact would predominate over common questions concerning the existence and scope of the alleged conspiracy."); *In re Polypropylene Carpet Antitrust Litig.*, 178 F.R.D. 603, 619 (N.D. Ga. 1997) (predominance "fails if the evidence of Defendants' conduct can be grouped into categories in which certain conduct affects only certain class members."

A prime example of this is found in *ODD*.  In that case, there was evidence of certain "instances of alleged 'bid rigging' involving procurements of ODDs by Dell, HP, and Microsoft," although the plaintiffs alleged "that the bid rigging was merely one part of a vast industry-wide price-fixing conspiracy, also involving inter-competitor agreements, and exchanges on price, output, and other types of confidential information."  *ODD*, 303 F.R.D. at 314.  On class certification, however, Judge Seeborg found that "plaintiffs have not proffered evidence or allegations that there were one or more instances in which the defendants' executive decision-makers entered into express agreements to fix prices across the board on an ongoing basis."  *Id*. at 315.  Judge Seeborg also noted that "even though the named plaintiffs have strong evidence of

-18-

bid-rigging involving some of the largest purchasers, they are struggling to find a way to prove that list prices paid by ordinary purchasers such as them were fixed." *Id*. at 318.  Thus, the court ruled that "[w]hether the conspiracy is seen as an overarching one carried out through many wrongful acts, or one centered on the bid-rigging, with alleged industry-wide consequences, the DPPs simply have not shown they possess a viable methodology for proving with generalized evidence, that all, or nearly all members of the class suffered damage as a result of defendants' alleged anti-competitive conduct." *Id*. at 322.

*Blades* is another example.  There, the Eight Circuit reviewed a denial of class certification regarding claims of a conspiracy to fix the prices of genetically modified seeds. *Blades*, 400 F.3d at 565-66.  The court first noted the principle that "proof of conspiracy is not proof of common injury," and then found that it was undisputed that defendants' "performance [of the conspiracy] was not across the board, but extended to some list prices and not others," meaning "particularized evidence" of injury would be required for individual class members, thereby defeating predominance.  *Id*. at 572-73.  And just like Dr. Zona, the *Blades* plaintiffs' "expert did not show that other common evidence could fill the gap in proof of classwide injury that is left by [the plaintiffs'] evidence that [the defendants] performed their price-fixing agreement as to some (but not all) list prices."[5]

### CONCLUSION

For the foregoing reasons, Defendants respectfully request that the DPP class be decertified.

---

[5] Nor does Dr. Zona's opinion that "the telescope industry is structurally conducive to supracompetitive pricing," (Class Cert. Order at 17), by itself, demonstrate classwide impact. *ODD*, 303 F.R.D. at 322 ("As defendants correctly argue, however, while such industry characteristics may be preconditions for any colorable case of class-wide impact, they do not establish such impact."); *Graphics Processing Units*, 253 F.R.D. at 502 ("Even if Dr. Meyendorff's description of the industry is accurate, it does not suffice on its own as a method of demonstrating impact to the specific direct purchasers at issue here through common proof. Plaintiffs must show not that 'market conditions are favorable for impact' . . . but that there is a common, formulaic method of proving that if defendants conspired to raise prices, the direct purchasers plaintiffs bought from paid an overcharge.").

-19-

CROWELL & MORING LLP
ATTORNEYS AT LAW

Dated:  April 29, 2026

RESPECTFULLY SUBMITTED,

CROWELL & MORING LLP

By: */s/ Eric P. Enson*
    Eric P. Enson

*Attorneys for Defendants*

Corey Lee, Joseph Lupica, and Dave Anderson

By: */s/ Jeffrey E. Faucette*
    Jeffrey E. Faucette (SBN: 193066)
    Martin R. Glick (SBN: 40187)
    SKAGGS FAUCETTE LLP
    505 Montgomery Street, 11th Floor
    San Francisco, CA 94111
    jeff@skaggsfaucette.com
    marty@skaggsfaucette.com

*Attorneys for Defendants*

Sylvia Shen, Suzhou Synta Optical Technology Co., Ltd., SW Technology Corp., Nantong Schmidt Opto-Electrical Technology Co. Ltd., Synta Technology Corp., Synta Canada Int'l Enterprises Ltd., David Shen, and Jack Chen

CROWELL
& MORING LLP
ATTORNEYS AT LAW

NOT. OF MOTION & MOTION TO DECERTIFY CLASS; MEM. OF P. & A.
CASE NO. 5:20-CV-03642-EJD

By: */s/ Christopher L. Frost*

Christopher L. Frost (SBN: 200336)
John Maatta (SBN: 83683)
Kristopher Rossfeld (SBN: 234288)
Lawrence Liu (SBN: 312115)
FROST LLP
10960 Wilshire Boulevard, Suite 1260
Los Angeles, CA 90024
Telephone: (424) 254-0441
chris@frostllp.com
john@frostllp.com
josh@frostllp.com
lawrence@frostllp.com

By: */s/ Shauna A. Izadi*

Shauna A. Izadi (SBN: 24041170)
IZADI LEGAL GROUP, PLLC
13155 Noel Road, Suite 900
Dallas, TX 75240
Telephone: (972) 918-5134
sizadi@izadilegal.com

*Attorneys for Defendants*

Celestron Acquisition, LLC, Suzhou Synta Optical Technology Co., Ltd., Synta Canada Int'l Enterprises Ltd., SW Technology Corp., Olivon Manufacturing Co. Ltd., Olivon USA, LLC, Nantong Schmidt Opto-Electrical Technology Co. Ltd., Pacific Telescope Corp., David Shen, Sylvia Shen, Jack Chen, Jean Shen, and Laurence Huen

-21-

CROWELL
& MORING LLP
ATTORNEYS AT LAW

NOT. OF MOTION & MOTION TO DECERTIFY CLASS; MEM. OF P. & A.
CASE NO. 5:20-CV-03642-EJD

**ATTESTATION**

Pursuant to Local Rule 5-1(i)(3), the undersigned counsel for Defendants hereby attests that each of the other signatories have concurred in the filing of this document.

Dated: April 29, 2026

Respectfully submitted,

CROWELL & MORING LLP


By: */s/ Eric P. Enson*
    Eric P. Enson

*Attorneys for Defendants*

Corey Lee, Joseph Lupica, Dave Anderson

CROWELL
& MORING LLP
ATTORNEYS AT LAW

NOT. OF MOTION & MOTION TO DECERTIFY CLASS; MEM. OF P. & A.
CASE NO. 5:20-CV-03642-EJD